COMPOSITE EXHIBIT NO. 1 - PART 4

considerado como qualquer dia que não seja sábado, domingo ou feriado declarado nacional.

1.1.73. "Edital": Edital a ser publicado pela OGX, substancialmente na forma do **Anexo 1.1.73**, para informar aos interessados acerca do processo competitivo para alienação judicial da UPI Parnaíba Gás Natural, nos termos dos Artigos 60 e 142 da Lei de Falências.

1.1.74. "Edital Bondholders": Edital disponibilizado no Diário de Justiça Eletrônico do Tribunal de Justiça do Estado do Rio de Janeiro em 02.05.2014 contendo o regramento estabelecido pelo Juízo da Recuperação a respeito da segregação e individualização do direito de participação, petição, voz e voto dos Bondholders na Recuperação Judicial e em qualquer Assembleia de Credores do Grupo OGX.

1.1.75. "Efeito Adverso Relevante": É qualquer efeito adverso relevante sobre (a) o negócio, a condição (financeira, econômica, operacional ou outra), as perspectivas ou os resultados das operações da OGX, dos Acionistas, dos Garantidores e/ou de suas respectivas subsidiárias ou afiliadas, inclusive qualquer efeito adverso relevante sobre a capacidade de produção esperada do campo de exploração de petróleo de Tubarão Martelo; (b) a capacidade da OGX e/ou de qualquer dos Garantidores em implementar, consumar e/ou cumprir (incluindo o efetivo descumprimento de) qualquer de suas obrigações nos termos deste Plano, da Escritura de Emissão de Debêntures, do Empréstimo Adicional, dos Contratos de Garantia DIP e/ou do Contrato de Subscrição; (c) a legalidade, a validade, o efeito vinculante ou a exequibilidade contra a OGX e/ou qualquer dos Garantidores deste Plano, da Escritura de Emissão de Debêntures, do Empréstimo Adicional, dos Contratos de Garantia DIP e/ou do Contrato de Subscrição; (d) os direitos de qualquer titular de Debêntures nos termos da Escritura de Emissão de Debêntures, dos Novos Financiadores do Empréstimo Adicional e/ou dos Contratos de Garantia DIP; e/ou das Garantias DIP.

1.1.76. "Eike Batista": Eike Fuhrken Batista, brasileiro, separado judicialmente, engenheiro metalúrgico, residente e domiciliado em Praia do Flamengo, nº 154, 10º andar, Rio de Janeiro – RJ, inscrito no CPF sob nº 664.976.807-30.

1.1.77. "Empréstimo Adicional": É o financiamento extraconcursal super prioritário contraído pela OGX, no valor de US$ 73.170.731,71 (setenta e três milhões cento e setenta mil e setecentos e trinta e um

Página **14** de **66**

dólares norte-americanos e setenta e um centavos), nos termos do Contrato de Pré Pagamento de Exportação, o qual terá o tratamento previsto nos Artigos 67, 84 e 149 da Lei de Falências e demais disposições legais aplicáveis. Para que não haja dúvidas, o Empréstimo Adicional corresponde ao Financiamento Suplementar constante da Escritura de Emissão de Debêntures, Contrato de Compartilhamento e Contratos de Garantias DIP.

1.1.78.   "Empréstimo DIP": É o financiamento extraconcursal super-prioritário já concedido e a ser concedido pelos Backstop Novos Financiadores e os Novos Financiadores, mediante a subscrição das Debêntures nos termos da Escritura de Emissão de Debêntures, o qual terá o tratamento previsto nos Artigos 67, 84 e 149 da Lei de Falências e demais disposições legais aplicáveis, nos termos da **Cláusula 4.3** e seguintes do presente Plano e da Escritura de Emissão de Debêntures.

1.1.79.   "Empréstimos Ponte": São o 1º Empréstimo Ponte e o 2º Empréstimo Ponte, em conjunto.

1.1.80.   "Escritura de Emissão de Debêntures": É o Instrumento Particular de Escritura da 3ª (Terceira) Emissão de Debêntures Simples, Não Conversíveis em Ações, a ser Convolada em Conversível em Ações da Espécie com Garantia Real, em Garantia Fidejussória Adicional, em Três Séries, da OGX Petróleo e Gás S.A., celebrado entre a OGX, o Agente Fiduciário das Debêntures, OGPar e outros, conforme aditada de tempos em tempos. O Terceiro Aditamento da Escritura de Emissão de Debêntures para inclusão das Debêntures 3ª Série e outras disposições específicas deverá refletir materialmente os termos e condições da minuta incluída no **Anexo 1.1.80** deste Plano.

1.1.81.   "Escrituras de Emissão dos Bonds": São as escrituras de emissão dos Bonds 2018 e dos Bonds 2022 denominadas respectivamente: (a) "*Indenture Dated as of June 3, 2011, U.S.$ 2,563,000,000 8,500% Senior Notes Due 2018*"; e (b) "*Indenture Dated as of March 30, 2012, U.S.$ 1,063,000,000 8,375% Senior Notes Due 2022*", emitidas por OGX Áustria, com garantia de OGPar e OGX.

1.1.82.   "Garantias DIP": É o pacote de garantias outorgado pelo Grupo OGX aos Novos Financiadores do Empréstimo DIP e Empréstimo Adicional, conforme descrito na **Cláusula 4.3.5** deste Plano e nos termos dos Contratos de Garantias DIP, da Escritura de Emissão de Debêntures e do Contrato de Compartilhamento.

1.1.83.   "Garantias Ponte": É o pacote de garantias outorgado pelo Grupo OGX aos Novos Financiadores do 2º Empréstimo Ponte, nos termos dos Contratos de Garantias – 2º Empréstimo Ponte, as quais foram integralmente liberadas com o adimplemento do 2º Empréstimo Ponte.

1.1.84.   "Garantidores": São as seguintes sociedades do Grupo OGX, que prestaram todas ou algumas das Garantias Ponte e/ou Garantias DIP, conforme aplicável, aos Novos Financiadores em contrapartida à concessão dos Recursos Novos: OGPar, OGX Áustria, OGX International, OGX Netherlands B.V., OGX Netherlands Holding B.V e Parnaíba B.V.

1.1.85.   "Grupo OGX": Sociedades que são direta ou indiretamente controladas pela OGPar incluindo, mas não se limitando à OGX, OGX Áustria, OGX International e suas respectivas subsidiárias e afiliadas.

1.1.86.   "Grupo OSX": Sociedades que são direta ou indiretamente controladas pela OSX Brasil S.A. – Em Recuperação Judicial, incluindo, mas não se limitando, à OSX Serviços Operacionais Ltda. – Em Recuperação Judicial, OSX Construção Naval S.A. – Em Recuperação Judicial, OSX GmbH, OSX Leasing Group B.V., OSX1 Leasing B.V., OSX2 Leasing B.V., OSX WHP 1&2 Leasing B.V., OSX2 Holding B.V., OSX3 Holdco B.V., OSX3 Holding B.V. e OSX3 Leasing B.V.

1.1.87.   "Homologação Judicial do Plano": É a decisão judicial proferida pelo Juízo da Recuperação que concede a Recuperação Judicial, nos termos do Artigo 58, caput e/ou §1º da Lei de Falências. Para os efeitos deste Plano, considera-se que a Homologação Judicial do Plano ocorre na data da publicação, no Diário de Justiça Eletrônico do Estado do Rio de Janeiro, da decisão concessiva da Recuperação Judicial.

1.1.88.   "IGP-M": Índice Geral de Preços do Mercado, conforme divulgado pela Fundação Getúlio Vargas – FGV.

1.1.89.   "Incorporação": Operação consistente na incorporação da OGPar pela OGX na forma descrita na **Cláusula 10ª** e seguintes deste Plano.

1.1.90.   "IPCA": Índice Nacional de Preços ao Consumidor Amplo.

**1.1.91.** "Juízo da Recuperação": É o Juízo da 4ª Vara Empresarial da Comarca do Rio de Janeiro, Estado do Rio de Janeiro.

**1.1.92.** "Laudos": São os laudos econômico-financeiros que demonstram a viabilidade econômica da OGX, a avaliação dos bens da OGX e atestam que perspectiva de recuperação dos Credores neste Plano é melhor do que as perspectivas de recuperação em caso de falência da OGX, nos termos do Artigo 53, da Lei de Falências, anexos ao presente Plano como **Anexo 1.1.92**.

**1.1.93.** "Lei das Sociedades por Ações": A Lei nº 6.404, de 15 de dezembro de 1976.

**1.1.94.** "Lei de Falências": A Lei nº 11.101, de 9 de fevereiro de 2005.

**1.1.95.** "Lista de Credores": É a lista de credores apresentada pelo Administrador Judicial e publicada em 02.05.2014, respeitadas e observadas eventuais decisões supervenientes, quanto ao valor, classificação e natureza dos Créditos, proferidas pelo Juízo da Recuperação até a data do Aumento de Capital Mediante Capitalização de Crédito; e, posteriormente, a lista de credores consolidada no Quadro Geral de Credores.

**1.1.96.** "Notificação de Interesse de Subscrição das Debêntures 3ª Série": É a notificação a ser encaminhada pelos Credores Qualificados para Subscrição das Debêntures 3ª Série à OGX, ao Agente Fiduciário das Debêntures e ao Administrador Judicial (a) manifestando sua intenção e comprometimento irrevogável e irretratável em subscrever integralmente a sua quota parte das Debêntures 3ª Série, correspondente ao valor proporcional do seu Crédito, por meio de um investimento direto (para o caso de Credores não residentes no Brasil); (b) indicando sua qualificação e os dados de contato, inclusive endereço físico e eletrônico para recebimento do Comunicado de Subscrição de que trata este Plano; (c) na hipótese de pessoa jurídica, cópia dos estatutos e/ou contratos sociais e demais documentos que atestem os poderes do subscritor da Notificação de Interesse de Subscrição das Debêntures 3ª Série para representar e vincular o Credor; e (d) na hipótese do Credor não ter residência no Brasil, as seguintes informações e comprovantes necessários para o registro do investimento perante o Banco Central do Brasil: (i) comprovante de inscrição perante a Secretaria da Receita Federal do Brasil (no Cadastro Nacional de Pessoas Jurídicas – CNPJ ou no Cadastro de Pessoas Físicas – CPF, conforme o caso); e

(ii) comprovante de registro perante o Banco Central do Brasil (Cadastro de Pessoas Físicas e Jurídicas - Capitais Internacionais – CADEMP (conforme instruções contidas no "Cademp - Manual do Declarante", disponível em www.bcb.gov.br » Câmbio e Capitais Estrangeiros » Manuais"). Essas informações e documentos deverão ser disponibilizadas à OGX no prazo estabelecido no **Anexo 4.6**. Ao encaminhar a Notificação de Interesse de Subscrição das Debêntures 3ª Série, os Credores Qualificados para Subscrição das Debêntures 3ª Série declaram e reconhecem, para os devidos fins de direito, em caráter irrevogável e irretratável que (i) não são Partes Relacionadas; e (ii) estão cientes de que a aquisição e investimento nas Debêntures envolve riscos relevantes, tendo em vista, principalmente, o fato de a OGX estar em Recuperação Judicial e o pagamento das Debêntures ser incerto, sendo capazes de individualmente ou por meio de assessores especialmente contratados para este fim, analisar a conveniência e oportunidade desta subscrição à luz de sua própria capacidade financeira. A Notificação de Interesse de Subscrição das Debêntures 3ª Série deverá seguir o modelo constante do **Anexo 1.1.96** e ser enviada na forma do procedimento da **Cláusula 17.5** deste Plano.

1.1.97.   "Notificação de Opção de Recebimento": É a notificação a ser encaminhada pelos Credores à OGX, indicando a opção de recebimento eleita pelo Credor, observadas as opções estabelecidas neste Plano, conforme **Cláusula 5.1.5** e **Cláusula 17.5**. Para aqueles Credores que optarem pela **Opção B**, a Notificação de Opção de Recebimento deverá necessariamente seguir o modelo constante do **Anexo 1.1.97** e ser enviada na forma do procedimento da **Cláusula 17.5** deste Plano.

1.1.98.   "Novo Mercado": É o segmento de listagem da BM&FBOVESPA – Bolsa de Valores, Mercadorias e Futuros ("BM&FBOVESPA") destinado à negociação de ações emitidas por empresas que se comprometem, voluntariamente, com a adoção de práticas de governança corporativa e divulgação de informações adicionais em relação ao que é exigido pela legislação.

1.1.99.   "Novos Financiadores": São os Credores Concursais e/ou Credores Extraconcursais e/ou terceiros, incluindo bancos, intermediários, agentes de financiamento, entre outros, que já emprestaram ou que vierem a emprestar Recursos Novos à OGX, mediante a subscrição do 1º Empréstimo Ponte, 2º Empréstimo Ponte, Empréstimo DIP e/ou do Empréstimo Adicional, conforme estabelecido na **Cláusula 4ª** e

seguintes deste Plano. Os Novos Financiadores são e serão, para todos os fins legais, titulares de créditos extraconcursais e pagos com precedência absoluta aos demais Créditos, inclusive os Créditos Extraconcursais, em hipótese de superveniente falência da OGX ou qualquer sociedade do Grupo OGX, nos termos dos Artigos 67, 84 e 149 da Lei de Falências e demais disposições legais aplicáveis.

1.1.100. "OGPar": Óleo e Gás Participações S.A. – Em Recuperação Judicial, atual denominação de OGX Petróleo e Gás Participações S.A., sociedade por ações com sede na Cidade do Rio de Janeiro, Estado do Rio de Janeiro, na Rua do Passeio, nº 56, 10º, 11º e 12º andares, Centro, inscrita perante o CNPJ/MF sob o nº 07.957.093/0001-96, integrante do Grupo OGX para fins deste Plano.

1.1.101. "OGX": Tem o significado atribuído no preâmbulo acima.

1.1.102. "OGX Áustria": OGX Áustria GmbH – Em Recuperação Judicial, sociedade constituída sob as leis da República da Áustria, com registro comercial na Corte Comercial de Viena sob o nº FN 335512 e sede na Schwarzenbergplatz 5/Top no 2/3, 1030, Viena e inscrita perante o CNPJ/MF sob o nº 16.885.474/0001-06.

1.1.103. "OGX International": OGX International GmbH – Em Recuperação Judicial sociedade constituída sob as leis da República da Áustria, com registro na Corte Comercial de Viena sob n.º FN 335513B, e sede na Schwarzenbergplatz 5/Top Nr. 2/3, 1030, na cidade de Viena.

1.1.104. "OGX Reestruturada": Tem o significado atribuído na **Cláusula 10.2** deste Plano.

1.1.105. "Opção A": É a opção disponível aos Credores Quirografários e Credores Extraconcursais que expressamente aderirem a este Plano, nos termos da **Cláusula 5.1.5.1(i)** deste Plano.

1.1.106. "Opção B": É a opção disponível aos Credores Quirografários e Credores Extraconcursais que expressamente aderirem a este Plano, nos termos da **Cláusula 5.1.5.1(ii)** deste Plano.

1.1.107. "Parnaíba B.V.": Parnaíba B.V., sociedade (Besloten Vennootschap) constituída e existente de acordo com as leis da Holanda, com sede em Haia, na Parkstraat 83, 209 / 210 Office, 2514JG's-Gravenhage.

**1.1.108.** "Parnaíba Gás Natural": Parnaíba Gás Natural S.A., atual denominação de OGX Maranhão Petróleo e Gás S.A., sociedade por ações com sede na Cidade do Rio de Janeiro, Estado do Rio de Janeiro, na Praia do Flamengo, n.º 66, 3º andar, CEP 22210-903, inscrita perante o CNPJ/MF sob o nº 11.230.122/0001-90.

**1.1.109.** "Partes Isentas": São a OGX, o Grupo OGX, os Acionistas, os Novos Financiadores, incluindo os Backstop Novos Financiadores, os Bondholders Aderentes, o Agente Fiduciário dos Bonds e suas respectivas controladas, subsidiárias, afiliadas e coligadas e outras sociedades pertencentes ao mesmo grupo societário e econômico, seus diretores, conselheiros, acionistas, minoritários, sócios, agentes, funcionários, representantes, assessores, consultores e advogados, sucessores e cessionários, para fins deste Plano.

**1.1.110.** "Partes Relacionadas": São (i) as sociedades, direta ou indiretamente, controladas pelo Sr. Eike Batista, inclusive as sociedades do Grupo OSX; e/ou (ii) administradores de qualquer sociedade do Grupo OGX em qualquer tempo e/ou do Grupo OSX; e/ou (iii) familiares até o terceiro grau de qualquer das pessoas indicadas nos itens (i) e (ii) acima.

**1.1.111.** "*Plan Support Agreement*": É o contrato celebrado entre o Grupo OGX e os Bondholders Aderentes, em 24.12.2013, com a finalidade de estabelecer as condições básicas para a reestruturação do Grupo OGX.

**1.1.112.** "Plano": Este plano de recuperação judicial, conforme aditado, modificado ou alterado de tempos em tempos.

**1.1.113.** "Plano OGPar": É o plano de recuperação judicial apresentado pela OGPar, conforme aditado, modificado ou alterado de tempos em tempos.

**1.1.114.** "Plano OGX Áustria": É o plano de recuperação judicial apresentado pela OGX Áustria, conforme aditado, modificado ou alterado de tempos em tempos.

**1.1.115.** "Plano OGX International": É o plano de recuperação judicial apresentado pela OGX International, conforme aditado, modificado ou alterado de tempos em tempos.

**1.1.116.** "Planos Partes Relacionadas OGX": São, em conjunto, o Plano OGPar, Plano OGX Áustria e Plano OGX International, conforme aditados, modificados ou alterados de tempos em tempos.

**1.1.117.** "Poços Iniciais": São os poços 7-TBMT-8HP e 9-OGX-44HP no campo de Tubarão Martelo.

**1.1.118.** "Put Option": É o Instrumento Particular de Outorga de Opção de Subscrição de Ações e Outras Avenças da OGPar, celebrado em 24.10.2012, entre a OGPar e Centennial Asset Mining Fund LLC e Eike Batista.

**1.1.119.** "Recuperação Judicial": Processo de recuperação judicial do Grupo OGX autuado sob nº 0377620-56.2013.8.19.0001, em curso perante o Juízo da Recuperação.

**1.1.120.** "Recursos Novos": São todos os recursos provenientes do 1º Empréstimo Ponte, do 2º Empréstimo Ponte, do Empréstimo DIP e do Empréstimo Adicional, já concedidos ou que venham a ser concedidos pelos Novos Financiadores.

**1.1.121.** "Registro de Companhia Aberta": É o procedimento a ser adotado pela OGX para obtenção de registro, na categoria A, de emissora de valores mobiliários admitidos à negociação em mercados regulamentados de valores mobiliários perante a CVM, nos termos da Instrução CVM nº. 480, de 7 de dezembro de 2009. O Registro de Companhia Aberta é condição essencial para implementação deste Plano, de forma que eventual atraso na obtenção do referido Registro de Companhia Aberta poderá comprometer ou afetar o tempo de verificação das medidas de reestruturação nele previstas.

**1.1.122.** "Rêmora": É o campo localizado na Bacia de Campos, Estado do Rio de Janeiro, onde se encontra o bloco exploratório CM-499, cujos direitos de concessão foram outorgados à OGX nos termos dos Contrato de Concessão BM-C-40.

**1.1.123.** "Resolução do Plano": Efeito decorrente da verificação de qualquer uma das condições resolutivas listadas na **Cláusula 12ª** deste Plano.

**1.1.124.** "Resultado do Procedimento": Conforme definido na **Cláusula 11.1** deste Plano, refere-se ao resultado do procedimento relativo à solução amigável de disputa acerca do Put Option.

1.1.125.   "Tubarão Azul": É o campo localizado na Bacia de Campos, Estado do Rio de Janeiro, onde se encontra o bloco exploratório CM-592, cujos direitos de concessão foram outorgados à OGX através dos Contrato de Concessão BM-C-41.

1.1.126.   "Tubarão Martelo": É o campo localizado na Bacia de Campos, Estado do Rio de Janeiro, onde se encontram os blocos exploratórios CM-466 e CM-499, cujos direitos de concessão foram outorgados à OGX através dos Contratos de Concessão BM-C-39 e BM-C-40, respectivamente.

1.1.127.   "UPI Parnaíba Gás Natural": Unidade Produtiva Isolada, na forma do Artigo 60 da Lei de Falências, correspondente a 245.728.660 (duzentas e quarenta e cinco milhões setecentas e vinte e oito mil e seiscentas e sessenta) ações ordinárias de emissão da Parnaíba Gás Natural de titularidade da OGX.

1.1.128.   "Valor Mínimo": É a quantia de **R$ 199.998.556,37** (cento e noventa e nove milhões novecentos e noventa e oito mil quinhentos e cinquenta e seis reais e trinta e sete centavos), reajustada de acordo com a variação do IPCA a partir de 30.10.2013 até a data de efetivo pagamento, sendo este o valor mínimo para apresentação de lances por interessados em adquirir a UPI Parnaíba Gás Natural, nos termos do Edital.

1.2.   **Cláusulas e Anexos.** Exceto se especificado de forma diversa, todas as Cláusulas e Anexos mencionados neste Plano referem-se a Cláusulas e Anexos deste Plano. Referências a cláusulas ou itens deste Plano referem-se também às respectivas subcláusulas e subitens.

1.3.   **Títulos.** Os títulos dos Capítulos e das Cláusulas deste Plano foram incluídos exclusivamente para referência e não devem afetar sua interpretação ou o conteúdo de suas previsões.

1.4.   **Termos.** Os termos "incluem", "incluindo" e termos similares devem ser interpretados como se estivessem acompanhados da expressão "mas não se limitando a".

1.5.   **Referências.** As referências a quaisquer documentos ou instrumentos incluem todos os respectivos aditivos, consolidações e complementações, exceto se de outra forma expressamente previsto.

**1.6.   Disposições Legais.** As referências a disposições legais e leis devem ser interpretadas como referências a essas disposições tais como vigentes nesta data ou em data que seja especificamente determinada pelo contexto.

**1.7.   Prazos.** Todos os prazos previstos neste Plano serão contados na forma determinada no Artigo 132 do Código Civil, desprezando-se o dia do começo e incluindo-se o dia do vencimento. Quaisquer prazos deste Plano (sejam contados em Dias Úteis ou não) cujo termo final caia em um dia que não seja um Dia Útil, serão automaticamente prorrogados para o Dia Útil imediatamente posterior.

## 2.   Considerações Gerais

**2.1.   Histórico.** A OGX é uma sociedade operacional, pertencente ao Grupo OGX, cujo objeto social consiste, mediante autorização ou concessão da União, na pesquisa, lavra, refino, processamento, comércio e transporte de petróleo proveniente de poço, de xisto ou de outras rochas, de seus derivados, de gás natural e de outros hidrocarbonetos fluidos, bem como atividades de apoio marítimo e portuário para auxílio à exploração e produção de petróleo e gás no mar, além das atividades vinculadas à energia, podendo promover a pesquisa, o desenvolvimento, a produção, o transporte, a distribuição e a comercialização de todas as formas de energia permitidas por lei, bem como quaisquer outras atividades correlatas ou afins.

Atualmente, a OGX é, direta ou indiretamente, através de sociedades por ela controladas, concessionária de campos/blocos exploratórios, dentre os quais os principais são os seguintes:

(i)     Tubarão Martelo;

(ii)    Tubarão Azul;

(iii)   BS-4;

(iv)   Rêmora;

(v)    Blocos BM-PAMA-13, BM-PAMA-14, BM-PAMA-15, BM-PAMA-16, BM-PAMA-17, cujos direitos de exploração foram obtidos na 9ª Rodada de Licitações conduzida pela ANP;

(vi)   Blocos POT-M-762, CE-M-603, CE-M-661, POT-M-475, cujos direitos de exploração foram obtidos na 11ª Rodada;

(vii)  Blocos PN-T-48, PN-T-49, PN-T-50, PN-T-67, PN-T-68, PN-T-84, PN-T-85, cujos direitos de exploração foram adquiridos através de uma parceria entre a Petra Energia S/A e Parnaíba Gás Natural; e Bloco PN-T-102, cujos direitos de exploração foram adquiridos através de uma parceria com as empresas Imetame Energia S.A., Delp Engenharia Mecânica Ltda. e Orteng Equipamentos e Sistema Ltda. A Parnaíba Gás Natural é sociedade na qual a OGX detém 245.728.660 (duzentos e

quarenta e cinco milhões setecentos e vinte e oito mil e seiscentos e sessenta) ações ordinárias, representativas, nesta data, de aproximadamente 36,36% (trinta e seis inteiros e trinta e seis centésimos por cento) de seu capital social, que são objeto do Contrato de Compra e Venda; e

(viii)   Ativos Colômbia, os quais são objeto de alienação na forma do **Anexo 1.1.16**.

Criado em 2007, o Grupo OGX realizou no Brasil, ao longo dos últimos 6 (seis) anos, atividades exploratórias de petróleo e gás nas Bacia de Campos, Santos, Espírito Santo, Parnaíba e Pará-Maranhão. Para consecução dessa inédita campanha exploratória, o Grupo OGX investiu mais de R$ 10 bilhões em suas atividades no Brasil, o que o torna o maior investidor privado no segmento em que atua.

**2.2.   Estrutura societária do Grupo OGX.** O Grupo OGX está estruturado conforme organograma abaixo reproduzido:



**2.3.   Captação de Investimentos.** Uma parte significativa dos investimentos realizados pelo Grupo OGX no estratégico ramo em que atua foi obtida por meio da captação de recursos junto a investidores internacionais, notadamente por meio da emissão dos Bonds 2018 e Bonds 2022.

Nesse sentido, em 26.05.2011, a OGPar emitiu os Bonds 2018, no valor total de US$ 2.563.000.000,00 (dois bilhões quinhentos e sessenta e três milhões de dólares norte-americanos), os quais foram posteriormente assumidos pela OGX Áustria, na qualidade de emissora dos Bonds. Os recursos líquidos obtidos com a emissão dos Bonds 2018 e sua oferta a investidores institucionais qualificados foram integralmente destinados ao caixa do Grupo OGX, mediante a celebração de operação de pré-pagamento à exportação entre OGX e OGX Áustria, para fazer frente à inédita campanha exploratória e ao desenvolvimento da produção nos blocos descobertos até que o Grupo OGX se tornasse autofinanciável.

Da mesma forma, em 30.03.2012, a OGX Áustria emitiu os Bonds 2022, no valor total de US$ 1.063.000.000,00 (um bilhão e sessenta e três milhões de dólares norte-americanos), os quais foram igualmente destinados a investidores institucionais qualificados. Os recursos líquidos da emissão dos Bonds 2022 também foram destinados ao caixa do Grupo OGX, de forma a viabilizar a implementação do plano de negócios do Grupo OGX, mediante a emissão de debêntures pela OGX, as quais foram subscritas pela OGX Áustria.

Em contrapartida aos recursos obtidos em decorrência da emissão dos Bonds 2018 e Bonds 2022, a OGX e OGPar garantem integralmente os Bonds 2018 e Bonds 2022, como principais devedoras e pagadoras solidárias para os fins de direito.

Em que pesem os significativos investimentos realizados pelo Grupo OGX nos projetos de exploração do setor de óleo e gás definidos em seu plano de negócios, uma série de eventos adversos e externos ao Grupo OGX modificou, sensivelmente, a dinâmica das atividades por ele desenvolvidas.

**2.4.    Razões da Crise.** Conforme amplamente exposto no âmbito da Recuperação Judicial, a OGX enfrenta as consequências diretas da ocorrência de uma série de fatos adversos relacionados ao risco da atividade que desenvolve. Embora a investigação técnica empreendida em diferentes campos, cujos direitos de exploração foram concedidos ao Grupo OGX, tenha resultado em previsões de produção muito significativas, a exploração mostrou-se comercialmente inviável em alguns deles. Em que pese a extração de petróleo e gás em determinados blocos concedidos pela União ter correspondido às previsões técnicas, a produção em outros blocos se mostrou insuficiente ou antieconômica, de forma que os resultados financeiros esperados não foram alcançados. Esse fato repercutiu de forma muito negativa nas receitas do Grupo OGX e, por consequência, tornou-o incapaz de honrar com os compromissos assumidos perante fornecedores e instituições financiadoras.

Além disso, o inadimplemento de Petronas Brasil E&P Ltda. em concluir a transação de compra de 40% (quarenta por cento) dos blocos de Tubarão Martelo, conforme contratada no *Farmout Agreement* (Contrato de Farmout), também contribuiu de forma determinante para a crise de liquidez experimentada pelo Grupo OGX, a qual implicou o pedido de Recuperação Judicial.

**2.5.    Objetivo e Considerações Sobre o Plano.** O objetivo do Plano é permitir que a OGX e o Grupo OGX superem sua crise econômico-financeira, implementem as medidas cabíveis para sua reorganização operacional, atendam aos interesses e preservem os direitos dos Credores e demais interessados. Para tanto, o presente Plano busca estabelecer a forma de liquidação de suas dívidas concursais, convertendo-as em capital, e de obtenção de Recursos Novos, viabilizando, dessa

forma, não só a manutenção das atividades do Grupo OGX, mas também a continuidade do crescimento através da retomada da capacidade de investimento.

**2.5.1.** Este Plano estabelece proposta de reestruturação e pagamento dos Credores e respectivos Créditos Concursais em condições mais favoráveis e vantajosas do que aquelas que se verificariam em hipótese de decretação da falência da OGX, mediante capitalização da dívida com a consequente entrega das Ações resultante do Aumento de Capital Mediante Capitalização de Crédito, com a possibilidade de recebimento em dinheiro, resultante da alienação das Ações, para aqueles Credores que assim desejarem. Ademais, todos os Credores Concursais tiveram o direito de (a) apresentar objeções ao Plano nos termos do Artigo 55 da Lei de Falências; e (b) participar da deliberação e votação deste Plano na Assembleia de Credores, em igualdade de condições. Assim o Plano é justo, razoável e equânime sob o ponto de vista material e processual.

**2.6.    Novos Recursos e Investimentos.** Como é notório, o setor de óleo e gás demanda vultosa alocação de recursos financeiros. Diante da série de fatos adversos relacionados ao risco da atividade desenvolvida pela OGX e que a acometeram nos últimos meses, a OGX viu-se sem condições para financiar a extração de petróleo dos campos de Tubarão Martelo e Tubarão Azul (em fase de testes), o que culminou no ajuizamento do pedido da Recuperação Judicial.

Não obstante, desde Agosto de 2013, ou seja, antes da Data do Pedido, o Grupo OGX tem se dedicado a buscar a captação de novos recursos no mercado local e internacional e, para tanto, tem contado com o trabalho conjunto de seus administradores, assessores e consultores altamente qualificados e com ampla experiência em projetos de reestruturação financeira.

Após uma minuciosa análise da situação financeira e operacional do Grupo OGX, concluiu-se que o Grupo OGX precisaria e precisa receber, além das receitas previstas em seu fluxo de caixa e projeções, novos financiamentos para custear o desenvolvimento de suas atividades e a preservação de seus ativos durante o temporário processo de reestruturação em que se encontra. A obtenção de tais recursos financeiros foi acertadamente vista como indispensável para a estabilização do fluxo de caixa do Grupo OGX e, consequentemente, a viabilidade da reestruturação e soerguimento do Grupo OGX, mediante implementação do seu plano de negócios.

Nesse contexto, após um detido processo de captação de investimentos perante vários potenciais investidores, conduzido de boa-fé pelo Grupo OGX e seus administradores, assessores e consultores, a única operação firme de financiamento tempestivamente apresentadas ao Grupo OGX por investidores de inquestionável idoneidade

capacidade financeira, em montante e prazo adequados, foi o Empréstimo DIP, nos termos do Contrato de Subscrição e da Escritura de Emissão de Debêntures.

A segurança da contratação do Empréstimo DIP conferiu à OGX as condições necessárias para dar continuidade ao desenvolvimento de suas atividades, bem como à busca por novos investimentos. Nesse sentido, a OGX rapidamente se tornou mais atrativa para outros investidores, viabilizando a celebração dos instrumentos relativos aos Empréstimos-Ponte e ao Empréstimo Adicional.

**2.7.    Autorização para Outorga de Garantias.** Em razão da necessidade de obtenção dos Recursos Novos e de forma a viabilizar a contratação do Empréstimo DIP e do Empréstimo Adicional, em 27.01.2014, o Juízo da Recuperação autorizou o Grupo OGX a onerar bens do seu ativo permanente para garantia do Empréstimo DIP, a teor dos Artigos 66 e 67 da Lei de Falências. A decisão do Juízo da Recuperação foi integralmente mantida pelo E. Tribunal de Justiça do Rio de Janeiro, nos termos do acórdão da 14ª Câmara de Direito Privado proferido em 30.04.2014. O presente Plano também autoriza o Grupo OGX a onerar outros bens do seu ativo permanente para garantia do Empréstimo DIP e do Empréstimo Adicional, inclusive nos termos dos Contratos de Garantia DIP – 2ª e 3ª Séries, a serem compartilhadas nos termos do Contrato de Compartilhamento.

**3.    Visão Geral sobre as Medidas de Recuperação**

**3.1.    Concessão de Recursos Novos.** Para que a OGX possa recompor o capital de giro necessário para continuidade de suas atividades e preservação de seus ativos, bem como para o desenvolvimento de seu plano de negócios, era e continua sendo essencial que a OGX obtivesse e obtenha junto aos Novos Financiadores os Recursos Novos, nos termos do Empréstimo DIP e, em função deste, dos Empréstimos Ponte e Empréstimo Adicional, com a proteção dos Artigos 67, 84 e 149 da Lei de Falências e demais disposições legais aplicáveis. A OGX esclarece que esses Novos Financiadores foram os únicos dispostos a desembolsar, de maneira firme, os Recursos Novos, dentre as dezenas de outras instituições consultadas pelo Grupo OGX desde Agosto de 2013.

**3.1.1.**    Desta forma, a concessão de Recursos Novos pelos Novos Financiadores é essencial para o sucesso deste Plano, para os quais será dado o tratamento privilegiado e precedência absoluta de recebimento, inclusive em hipótese de superveniente falência da OGX e/ou Garantidores, conforme previsto nos Artigos 67, 84 e 149 da Lei de Falências, bem como o disposto neste Plano, no Empréstimo Ponte, na Escritura de Emissão de Debêntures (Empréstimo DIP), no Contrato de Pré-Pagamento de Exportação (Empréstimo Adicional), nos Contratos de Garantias Ponte e nos Contratos de Garantias DIP.

CONFERE COM O ORIGINAL
O Escrivão
Maria e de Oliveira
01/9151

**3.2.    Reestruturação de Dívidas.** Além da obtenção de Recursos Novos, é igualmente indispensável que o Grupo OGX possa, no âmbito da Recuperação Judicial e dentro dos limites estabelecidos pela Lei de Falências e por este Plano, reestruturar as dívidas contraídas perante seus Credores Concursais. Além disso, dentro dos limites legais aplicáveis, o Grupo OGX também poderá buscar a renegociação de seu endividamento junto aos Credores Extraconcursais, oferecendo as mesmas condições ofertadas aos Credores Concursais, ressalvado, no entanto, que a renegociação com os Credores Extraconcursais somente será concretizada mediante acordos específicos entre o Grupo OGX e referidos Credores Extraconcursais, conforme aplicável (no entanto, para fins de clareza e transparência, tal fato é mencionado neste Plano).

> **3.2.1.**    Observado o quanto estabelecido na **Cláusula 5ª** deste Plano, a reestruturação referida na **Cláusula 3.2** dar-se-á através da conversão dos Créditos em capital social da OGX, nos termos do Artigo 171, §2º da Lei das Sociedades por Ações e demais disposições legais aplicáveis, com a possibilidade de recebimento em dinheiro, resultante da alienação das Ações, para aqueles Credores que assim desejarem e se manifestarem tempestivamente nos termos deste Plano.

**3.3.    Governança.** A OGX, apoiada pelos Acionistas, promoverá alterações nos seus órgãos de administração, buscando aprimorar sua governança corporativa, com gestão profissional e independente, e o aumento de controle e do monitoramento de suas operações, na forma descrita neste Plano.

**3.4.    Alienação de Bens do Ativo Permanente.** A OGX poderá promover a alienação e/ou oneração de bens que integram seu ativo permanente, conforme autorizado expressamente pelo Juízo da Recuperação, na forma do Artigo 66 da Lei de Falências, ou por este Plano, observados em qualquer caso os limites estabelecidos neste Plano, no Contrato de Subscrição, na Escritura de Emissão de Debêntures (Empréstimo DIP), no Contrato de Pré-Pagamento de Exportação (Empréstimo Adicional), nos Contratos de Garantias DIP, de forma a assegurar a execução do presente Plano e o sucesso da Recuperação Judicial.

CARTÓRIO DA 4ª VARA EMPRESARIAL
COMARCA DA CAPITAL
Maria Carmelina de Oliveira
Chefe de Serventia
Matr. 01/9151
DO ESTADO DO RIO DE JANEIRO

CONFERE COM O ORIGINAL
O Escrivão

Maria e. de Oliveira
01/9151

4.     **Empréstimos Extraconcursais de Recursos Novos**

**4.1.     Condições Gerais.** Diante das necessidades de caixa do Grupo OGX para estabilizar seu capital de giro, proteger ativos essenciais e permitir a adoção de medidas visando à sua reestruturação, o Grupo OGX buscou e obteve a captação dos seguintes mútuos extraconcursais na forma dos Artigos 66, 67, 84, inciso V e 149 da Lei de Falências e demais disposições legais aplicáveis, em ordem cronológica: (i) 1º Empréstimo Ponte; (ii) 2º Empréstimo Ponte; (iii) Empréstimo DIP; e (iv) Empréstimo Adicional. Os empréstimos acima referidos são extraconcursais e não se sujeitam aos termos deste Plano.

No entanto, para fins de clareza, transparência e compreensão do Juízo da Recuperação, Administrador Judicial, Credores e demais interessados, inclusive acerca dos procedimentos para participação dos Credores na subscrição das Debêntures 3ª Série e implicações do Aumento de Capital Mediante Conversão das Debêntures na reestruturação final do Grupo OGX, com efeitos imediatos na estrutura de capital do Grupo OGX, faz-se abaixo um sumário executivo dos principais termos, condições e garantias dos empréstimos extraconcursais.

**4.2.     Empréstimos Ponte.** Os Empréstimos Ponte foram integralmente pagos e adimplidos em 13.03.2014 e 14.03.2014, respectivamente, observados todos os termos e condições previstos no 1º Empréstimo Ponte e no 2º Empréstimo Ponte. O 2º Empréstimo Ponte era integralmente garantido pelas Garantias Ponte, conforme autorizado pelo Juízo da Recuperação em decisão proferida em 27.01.2014, as quais foram integralmente liberadas após o adimplemento do 2º Empréstimo Ponte.

**4.3.     Empréstimo DIP – Emissão de Debêntures.** Em 12.02.2014, a OGX emitiu as Debêntures, nos termos e sujeito às condições da Escritura de Emissão de Debêntures e do Contrato de Subscrição, visando à obtenção de Recursos Novos no valor correspondente, em moeda corrente nacional, a **US$ 215.000.000,00** (duzentos e quinze milhões de dólares norte-americanos), que na Data de Emissão correspondia a **R$ 514.624.000,00** (quinhentos e catorze milhões e seiscentos e vinte e quatro mil reais).

4.3.1.     **Séries das Debêntures.** As Debêntures foram emitidas em 3 (três) séries, a saber:

- Debêntures 1ª Série: emitidas, subscritas e integralizadas pelo valor total de **R$ 299.200.000,00** (duzentos e noventa e nove milhões e duzentos mil reais), atualizado monetariamente pelo fator de variação da cotação de fechamento da taxa de venda de câmbio de Reais por Dólares dos Estados Unidos da América, nos termos da Escritura de Emissão de Debêntures, correspondente na Data da Emissão a **US$** ...

125.000.000,00 (cento e vinte e cinco milhões de dólares norte-americanos).

- Debêntures 2ª Série: emitidas com um valor total de até **R$ 215.424.000,00** (duzentos e quinze milhões e quatrocentos e vinte e quatro mil reais), atualizado monetariamente pelo fator de variação da cotação de fechamento da taxa de venda de câmbio de Reais por Dólares dos Estados Unidos da América, nos termos da Escritura de Emissão de Debêntures, correspondente na Data da Emissão a até **US$ 90.000.000,00** (noventa milhões de dólares norte-americanos), a serem oportunamente subscritas e integralizadas pelos Backstop Novos Financiadores (sejam Credores ou não). O valor final das Debêntures 2ª Série corresponderá à porção não subscrita das Debêntures 3ª Série pelos Credores e eventuais sobras de Credores que não integralizem a subscrição das Debêntures 3ª Série, observado o disposto neste Plano e na Escritura de Emissão de Debêntures. As Debêntures 2ª Série poderão ser integralmente canceladas, caso as Debêntures 3ª Série sejam integralmente subscritas, observado o disposto na Escritura de Emissão de Debêntures e neste Plano.

- Debêntures 3ª Série: emitidas com um valor total de até **R$ 215.424.000,00** (duzentos e quinze milhões e quatrocentos e vinte e quatro mil reais), atualizado monetariamente pelo fator de variação da cotação de fechamento da taxa de venda de câmbio de Reais por Dólares dos Estados Unidos da América, nos termos da Escritura de Emissão de Debêntures, correspondente na Data da Emissão a até **US$ 90.000.000,00** (noventa milhões de dólares norte-americanos), a serem oportunamente subscritas e integralizadas pelos Credores, proporcionalmente ao respectivo Crédito. O valor final das Debêntures 3ª Série a serem subscritas por Credores Concursais e/ou Credores Extraconcursais (que aderirem expressamente ao Plano) poderá variar conforme demanda verificada pelas Debêntures 3ª Série. As Debêntures 3ª Série poderão ser canceladas em razão da ausência de Credores interessados na sua subscrição, integralização ou inadimplemento na integralização, conforme descrito na **Cláusula 4.6** e seguintes deste Plano, observado o disposto na Escritura de Emissão de Debêntures.

**4.3.2.** **Outras Características das Debêntures 3ª Série.** Nos termos da Escritura de Emissão de Debêntures, conforme aditada de tempos em tempos, as Debêntures 3ª Série: (a) são materialmente semelhantes às Debêntures 2ª Série e conferem os mesmos direitos;

prerrogativas aos respectivos debenturistas de participar do Empréstimo DIP; (b) possuem *covenants* e hipóteses de vencimento antecipado mais restritos do que aqueles estabelecidos para as Debêntures 1ª Série e no Empréstimo Adicional; (c) terão seu vencimento antecipado automático em caso de declaração de vencimento antecipado das Debêntures 1ª Série e/ou do Empréstimo Adicional; (d) serão automaticamente convertidas em Ações se as Debêntures 1ª Série forem convertidas em Ações, inclusive em caso de dispensa pelos Novos Financiadores das Debêntures 1ª Série das Condições Precedentes para Conversão das Debêntures 1ª Série em Ações estabelecidas na Escritura de Emissão de Debêntures; (e) contemplarão que eventuais deliberações em sede de assembleia de debenturistas serão tomadas observado o quórum conjunto composto pelos subscritores das Debêntures 2ª Série e Debêntures 3ª Série; e (f) assim como as Debêntures 1ª Série, são juniores e subordinadas ao Empréstimo Adicional para fins de cobrança e excussão das Garantias DIP em caso de inadimplemento do Grupo OGX, nos termos do Contrato de Compartilhamento.

4.3.3.   **Destinação dos Recursos Novos do Empréstimo DIP.** Os Recursos Novos do Empréstimo DIP, foram e serão destinados ao pagamento de obrigações extraconcursais, financiamento de determinados investimentos em capital e despesas operacionais para manutenção das atividades da OGX, bem como para o pagamento de despesas relacionadas ao presente processo de Recuperação Judicial, conforme orçamento acordado expressamente previsto na Escritura de Emissão de Debêntures e no Contrato de Subscrição.

4.3.4.   **Extraconcursalidade do Empréstimo DIP.** Nos termos dos Artigos 67, 84, 85 e 149 e demais disposições legais aplicáveis da Lei de Falências, as Debêntures foram emitidas no âmbito da Recuperação Judicial. O crédito correspondente às Debêntures é e sempre será considerado extraconcursal para todos os fins de direito, inclusive em caso de superveniência de falência da OGX, ainda que as Debêntures sejam subscritas pelos Credores e se verifique o Aumento de Capital Mediante Capitalização de Crédito, deverão ser pago com precedência sobre todos os Créditos Concursais e Créditos Extraconcursais, observado o disposto nos Artigos 84, 85, 149 e demais disposições aplicáveis da Lei de Falências.

4.3.5.   **Constituição das Garantias DIP.** Sem prejuízo da senioridade, extraconcursalidade e correspondente proteção que recaem sobre os Recursos Novos, nos termos dos Artigos 67, 84, 85 e 149 e demais

disposições legais aplicáveis da Lei de Falências, a OGX e os Garantidores, conforme aplicável, em garantia ao integral e pontual cumprimento das obrigações sob o Empréstimo DIP e Empréstimo Adicional, com autorização do Juízo da Recuperação a teor do Artigo 66 da Lei de Falências, quando aplicável, outorgaram e outorgarão as Garantias DIP, nos termos dos seguintes Contratos de Garantia DIP (**Anexos 1.1.33 e 1.1.35**):

(i)     alienação fiduciária sobre o petróleo e gás de titularidade da OGX em qualquer dos seguintes campos de produção, respeitadas as respectivas participações da OGX em cada um desses campos de produção: (a) Bloco BS-4; (b) Tubarão Martelo; e (c) Blocos POT-M-762, CE-M-661, POT-M-475 e CE-M-603, nos quais a OGX participa, respectivamente com 50% (cinquenta por cento), 30% (trinta por cento), 65% (sessenta e cinco por cento) e 50% (cinquenta por cento), observado, o direito de outros credores que já detinham garantia sobre quantidade determinada de petróleo, nos termos do "*Instrumento Particular de Alienação Fiduciária de Petróleo e Gás Natural em Garantia*";

(ii)    cessão fiduciária de: (a) todos os direitos creditórios oriundos da comercialização de petróleo e gás de titularidade da OGX, observado o direito de outros credores que já detinham garantia sobre quantidade determinada de petróleo; (b) dos direitos de crédito detidos pela OGX frente à Parnaíba Gás Natural oriundos do *Shared Costs Agreement Termination and Release*, celebrado entre a OGX, a Parnaíba Gás Natural e Eneva S.A., em 30.10.2013, bem como das notas promissórias emitidas pela Parnaíba Gás Natural em favor da OGX relacionadas ao *Shared Costs Agreement Termination and Release*; e (c) da conta vinculada na qual serão depositados os recursos decorrentes dos direitos creditórios acima mencionados, nos termos do "Instrumento Particular de Cessão Fiduciária de Direitos Creditórios e Títulos de Crédito em Garantia (Intercompany e Venda de Produto)" e do Contrato de Depósito em Garantia e Outras Avenças;

(iii)   cessão fiduciária de: (a) direitos creditórios detidos pela OGX contra a União fundados no direito de reembolso pelo recolhimento a maior de Imposto de Renda Pessoa Jurídica, observado, no entanto, o direito de outros credores que tenham preferência com relação a referidos créditos; e (b) da

conta vinculada na qual serão depositados os recursos decorrentes dos direitos creditórios acima mencionados, nos termos do "*Instrumento Particular de Cessão Fiduciária de Direitos Creditórios em Garantia (Direitos Tributários)*" e do Contrato de Depósito em Garantia e Outras Avenças;

(iv)   penhor sobre os direitos emergentes da participação da OGX nos contratos relacionados à concessão sobre BS-4, nos termos do "*Instrumento Particular de Penhor de Direitos Sobre Contrato de Concessão e Outras Avenças (BS4)*";

(v)   cessão fiduciária de, entre outros, (a) direitos de crédito detidos pela OGX contra a Cambuhy decorrentes do Contrato de Compra e Venda, (b) direitos creditórios da OGPar decorrentes de eventual subrogação nos direitos dos respectivos credores do "Instrumento Particular de Escritura de Primeira Emissão Pública de Debêntures Simples, Não Conversíveis em Ações, da Espécie Quirografária, Com Garantia Fidejussória, Em Série Única, da Parnaíba"; "Contrato de Empréstimo (Credit Agreement)", celebrado entre Parnaíba Gás Natural, OGPar, MPX Energia S.A. e Morgan Stanley Bank, N.A.; e do "Instrumento Particular de Alienação Fiduciária de Ações e Outras Avenças", celebrado entre OGPar, MPX Energia S.A., Planner Trustee Distribuidora de Títulos e Valores Mobiliários Ltda. e Paraíba Gás Natural, (c) das contas vinculadas nas quais serão depositados os recursos decorrentes dos direitos creditórios acima mencionados e os demais direitos creditórios objeto da garantia em questão, nos termos do "*Instrumento Particular de Cessão Fiduciária de Direitos Creditórios em Garantia (Parnaíba)*" e do Contrato de Depósito em Garantia e Outras Avenças;

(vi)   cessão fiduciária de direitos de crédito detidos pela OGX e pela OGPar oriundos de: (a) contratos de seguro; (b) litígios judiciais e extrajudiciais (inclusive na hipótese de início de litígio contra Brasil E&P Ltda.); (c) contratos e outros instrumentos; (d) quaisquer outros direitos de crédito que não sejam objeto de outra garantia específica, e (e) cessão fiduciária sobre as contas vinculadas nas quais serão depositados os recursos decorrentes dos direitos creditórios acima mencionados, nos termos do "*Instrumento Particular de Cessão Fiduciária de Direitos Creditórios em Garantia (Geral)*" e do Contrato de Depósito em Garantia e Outras Avenças;

(vii) alienação fiduciária sobre ativos de titularidade de Parnaíba B.V., nos termos "*Instrumento Particular de Alienação Fiduciária de Equipamentos em Garantia*";

(viii) cessão fiduciária sobre: (a) todos e quaisquer direitos creditórios de titularidade da OGX oriundos da integralização da primeira série de Debêntures sob o Instrumento de Crédito, que serão depositados em conta corrente vinculada da OGX e (b) sobre a referida conta, nos termos do "Instrumento Particular de Cessão Fiduciária de Direitos Creditórios em Garantia (Recursos da Integralização da Primeira Série de Debêntures)" e do Contrato de Depósito em Garantia e Outras Avenças;

(ix) penhor sobre a totalidade das ações de emissão da Parnaíba B.V., nos termos do "*Deed of Pledge of Parnaíba B.V. Shares*";

(x) penhor de direitos de crédito detidos pela OGX Netherlands contra a MPX Energia GmbH decorrentes da alienação das ações de emissão da Parnaíba B.V., nos termos do "*Deed of Pledge of Parnaíba MPX Receivables*";

(xi) penhor de direitos de crédito detidos pela OGX Netherlands contra a Parnaíba B.V., nos termos do "*Deed of Pledge of Parnaíba MPX Receivables*";

(xii) penhor de recebíveis, direitos de venda e outros direitos relacionados a contrato de exportação da OGX e dos Garantidores nos termos do "*Security Agreement*";

(xiii) alienação fiduciária de ações da OGX e OGPar, a ser constituída entre as partes após aprovação do Plano;

(xiv) penhor sobre os direitos emergentes da participação da OGX nos contratos de concessão relativos aos contratos de concessão BM-C-39 e BM-C-40 de Tubarão Martelo e nos contratos de concessão da 11ª Rodada a ser constituído entre as partes após aprovação do Plano; e

(xv) penhor sobre ações de emissão da OGX International, OGX Austria, OGX Netherlands B.V. e OGX Netherlands Holding B.V.

observado o disposto na Escritura de Emissão, a ser constituído após aprovação do Plano.

4.3.5.1.   Em adição e sem prejuízo às Garantias DIP, o Empréstimo DIP também conta com a garantia fidejussória, na forma de fiança prestada por todos os Garantidores.

4.3.6.   **Compartilhamento de Garantias.** Sem prejuízo da senioridade, extraconcursalidade e correspondente proteção que recaem sobre os Recursos Novos provenientes do Empréstimo DIP, nos termos dos Artigos 67, 84, 85 e 149 e demais disposições legais aplicáveis da Lei de Falências, as Garantias DIP são e serão compartilhadas para garantia ao integral e pontual cumprimento das obrigações assumidas sob o Empréstimo Adicional nos termos do Contrato de Pré-Pagamento de Exportação, nos termos dos Contratos de Garantia DIP e Contrato de Compartilhamento. O Empréstimo Adicional terá prioridade sobre as Debêntures na excussão das Garantias DIP e na distribuição e recebimento do produto correspondente para quitação do Empréstimo Adicional, nos termos do Contrato de Compartilhamento.

**4.4.   Debêntures 1ª Série.** As Debêntures 1ª Série foram integralmente subscritas e integralizadas pelos Backstop Novos Financiadores (direta ou indiretamente) em 13.02.2014.

**4.5.   Debêntures 2ª Série.** As Debêntures 2ª Série serão oportunamente subscritas e integralizadas pelos Backstop Novos Financiadores (sejam Credores ou não), desde que preenchidos e verificados determinados termos e condições precedentes estabelecidos no Contrato de Subscrição, em valor equivalente às sobras das Debêntures 3ª Série, limitado sempre ao valor máximo correspondente em moeda corrente nacional a **US$ 90.000.000,00** (noventa milhões de dólares norte-americanos) na data da integralização das Debêntures 2ª Série, nos termos da Escritura de Emissão de Debêntures e do Contrato de Subscrição, conforme aplicável.

4.5.1.   **Garantia Firme de Integralização pelos Backstop Novos Financiadores.** Desde que verificadas ou expressamente dispensadas as condições precedentes estabelecidas na Cláusula 3.2 do Contrato de Subscrição para subscrição das Debêntures 2ª Série que incluem a (i) Homologação Judicial do Plano; (ii) concessão e regular constituição das Garantias DIP; (iii) aprovação do CADE da conversibilidade das Debêntures nos termos da Escritura de Emissão de Debêntures; e (iv) verificação de produção de determinada quantidade de petróleo nos campos explorados por OGX sem

Página **35** de 66

prejuízo do direito dos Backstop Novos Financiadores de contestar a verificação das referidas condições precedentes, os Backstop Novos Financiadores estão obrigados a subscrever todas as Debêntures 2ª Série em valor equivalente às Debêntures 3ª Série não integralizadas pelos Credores, no tempo e modo estabelecidos neste Plano e no Contrato de Subscrição, inclusive eventuais sobras decorrentes da perda do direito de subscrição na forma das **Cláusulas 4.6.4 e 4.7** deste Plano, limitados sempre ao correspondente em moeda corrente nacional a **US$ 90.000.000,00** (noventa milhões de dólares norte-americanos) na data da subscrição das Debêntures 2ª Série. As Debêntures 2ª Série serão integralizadas pelos Backstop Novos Financiadores em moeda corrente, na forma e prazo estabelecidos na Escritura de Emissão de Debêntures, observado os termos do Contrato de Subscrição e os termos das **Cláusulas 4.5** e **4.7** deste Plano.

**4.6.    Debêntures 3ª Série.** As Debêntures 3ª Série poderão ser subscritas e integralizadas por Credores Concursais e/ou Credores Extraconcursais (estes últimos desde que tenham aderido expressamente ao presente Plano, conforme aplicável) que se qualificarem como Credores Qualificados para Subscrição das Debêntures 3ª Série, nos termos desta **Cláusula 4.6**, do **Anexo 4.6**, da Escritura de Emissão de Debêntures e do Contrato de Subscrição, conforme aplicável.

4.6.1.   **Alocação *pro rata* das Debêntures 3ª Série.** O direito dos Credores Qualificados para Subscrição das Debêntures 3ª Série de subscrever e integralizar as Debêntures 3ª Série será sempre limitado ao percentual que seu respectivo Crédito representa da soma total dos Créditos constante da Lista de Credores (sem duplicação de Créditos por garantias e/ou coobrigação), sem direito à subscrição adicional de eventuais sobras decorrentes do não exercício e/ou perda do direito de subscrição cabível aos demais Credores na forma da **Cláusula 4.6.4** deste Plano.

4.6.2.   **Notificação de Interesse de Subscrição das Debêntures 3ª Série.** O Credor Concursal e/ou Credor Extraconcursal (este último desde que tenha aderido expressamente ao presente Plano, conforme aplicável) interessado em subscrever a sua quota parte das Debêntures 3ª Série deverá encaminhar para a OGX, com cópia para o Administrador Judicial e para o Agente Fiduciário das Debêntures, a respectiva Notificação de Interesse de Subscrição das Debêntures 3ª Série, nos termos do **Anexo 1.1.96**, **Anexo 4.6** e da **Cláusula 17.5** deste Plano, em até 5 (cinco) Dias Úteis contados da Aprovação do Plano. As Notificações de Interesse de Subscrição das Debêntures

3ª Série recebidas fora do prazo ou que não observem fielmente a forma do **Anexo 1.1.96** poderão ser desconsideradas pela OGX para os fins deste Plano, a seu exclusivo critério, observado que os documentos de suporte constantes do **Anexo 4.6** deste Plano poderão ser entregues à OGX no prazo estabelecido no referido **Anexo 4.6** e no Comunicado de Subscrição.

**4.6.2.1.** **Notificação de Interesse — Credores Não Residentes.** Os Credores não residentes no Brasil deverão encaminhar a Notificação de Interesse de Subscrição das Debêntures 3ª Série acompanhada dos documentos relacionados no **Anexo 1.1.96** deste Plano. A OGX não se responsabiliza pelos Credores não residentes que não puderem subscrever, integralizar ou receber as Debêntures 3ª Série por não atenderem aos requisitos da legislação vigente no prazo estabelecido para formalizar o investimento.

**4.6.3.** **Verificação do Interesse dos Credores e Alocação das Debêntures 3ª Série.** A OGX deverá apurar e consolidar todas as Notificações de Interesse de Subscrição das Debêntures 3ª Série recebidas dos Credores. Após, a OGX encaminhará aos Credores Qualificados para Subscrição das Debêntures 3ª Série, sempre com cópia para o Agente Fiduciário das Debêntures, o respectivo Comunicado de Subscrição, o qual conterá: (i) a identificação do Credor Qualificado para Subscrição das Debêntures 3ª Série destinatário do Comunicado de Subscrição; (ii) a quantidade de Debêntures 3ª Série a ser subscrita por tal Credor e respectivo valor; (iii) a(s) conta(s) para depósito do pagamento do valor equivalente à subscrição e integralização das Debêntures 3ª Série; e (iv) a data para os Credores Qualificados para Subscrição das Debêntures 3ª Série depositarem os recursos necessários para integralização de sua quota parte das Debêntures 3ª Série, a qual não poderá ser superior a 4 (quatro) Dias Úteis contados da data de recebimento, por correio eletrônico, do respectivo Comunicado de Subscrição. O Credor Qualificado para Subscrição das Debêntures 3ª Série estará desobrigado de seu compromisso de subscrever as Debêntures 3ª Série caso (i) não receba o Comunicado de Subscrição até 31.08.2014; e/ou (ii) as Debêntures 2ª Série não tenham sido subscritas e integralizadas até a data de integralização das Debêntures 3ª Série, observadas o disposto nas **Cláusulas 4.5** e **4.7**.

**4.6.4.** **Perda do Direito de Subscrição.** Fica expressamente estabelecido que perderão o direito e não poderão subscrever a sua quota parte

das Debêntures 3ª Série: (i) os Credores que cederem ou transferirem parte ou integralidade dos seus Créditos, bem como os respectivos adquirentes e cessionários de Créditos a qualquer título; e (ii) os Credores Qualificados para Subscrição das Debêntures 3ª Série que não cumprirem, tempestivamente, o quanto disposto no Comunicado de Subscrição, sem prejuízo de responderem pelas perdas e danos causados ao Grupo OGX e demais interessados.

**4.7.    Cancelamento de sobras das Debêntures 3ª Série.** As eventuais sobras de Debêntures 3ª Série decorrentes do não exercício e/ou perda do direito de subscrição e integralização das Debêntures 3ª Série conferido aos Credores serão canceladas. As Debêntures 3ª Série também serão canceladas caso a OGX não receba tempestivamente dos Credores, na forma deste Plano, nenhuma Notificação de Interesse de Subscrição das Debêntures 3ª Série, hipótese em que as Debêntures 2ª Série serão emitidas pelo valor integral correspondente em moeda corrente nacional a **US$ 90.000.000,00** (noventa milhões de dólares norte-americanos). Conforme estabelecido na **Cláusula 4.5.1**, os Backstop Novos Financiadores estão obrigados a subscrever todas as Debêntures 2ª Série em valor equivalente às Debêntures 3ª Série não integralizadas pelos Credores, no tempo e modo estabelecido neste Plano e no Contrato de Subscrição.

**4.8.    Procedimento para Aumento de Capital Mediante Conversão das Debêntures.** As Debêntures serão convertidas automaticamente em Ações, após o integral cumprimento ou dispensa expressa das condições precedentes para sua conversão em Ações, conforme taxativamente estabelecidas na Escritura de Emissão de Debêntures e no Contrato de Subscrição, notadamente as seguintes Condições Precedentes para o Aumento de Capital Mediante Conversão das Debêntures:

(i)     a OGX tenha obtido o Registro de Companhia Aberta;

(ii)    o CADE tenha aprovado a conversibilidade das Debêntures, nos termos da Escritura de Emissão de Debêntures;

(iii)   tenha ocorrido o Aumento de Capital Mediante Capitalização de Crédito, observado o disposto neste Plano;

(iv)    o número de Ações a serem entregues aos titulares das Debêntures 1ª Série corresponda sempre a (a) 41,9767% (quarenta e um inteiros e nove mil setecentos e sessenta e sete décimos de milésimos por cento) das Ações de emissão da OGX, após o Aumento de Capital Mediante Capitalização de Crédito detidos pelos Credores Concursais e os Credores Extraconcursais (estes últimos apenas na medida em que o

Credor Extraconcursal concorde expressamente com tal conversão), nos termos das **Cláusulas 4ª** e **5ª** deste Plano; e (b) 41,9767% (quarenta e um inteiros e novecentos mil e setecentos e sessenta e sete milésimos por cento) das Ações de emissão da OGX Reestruturada, após a Incorporação, nos termos da **Cláusula 10ª** deste Plano;

(v) o número de Ações a serem entregues conjuntamente aos titulares das Debêntures 2ª Série e das Debêntures 3ª Série, de forma *pro rata* por número de Debêntures emitidas em cada série, corresponda sempre a (a) 23,0233% (vinte e três inteiros e duzentos e trinta e três milésimos por cento) das Ações, após o Aumento de Capital Mediante Capitalização de Crédito detidos pelos Créditos Concursais e os Créditos Extraconcursais (estes últimos apenas na medida que o Credor Extraconcursal concorde expressamente com tal conversão), nos termos das **Cláusulas 4ª** e **5ª** deste Plano, bem como após a conversão das Debêntures 1ª Série; e (b) 23,0233% (vinte e três inteiros e duzentos e trinta e três milésimos por cento) das Ações de emissão da OGX Reestruturada, após a Incorporação, nos termos da **Cláusula 10ª** deste Plano;

(vi) o número de Ações a serem entregues por Debênture na hipótese de conversão seja sempre simultânea e proporcionalmente ajustado aos aumentos de capital por bonificação, desdobramentos ou grupamentos de ações que vierem a ocorrer a partir da Data de Emissão, sem qualquer ônus para os debenturistas e na mesma proporção estabelecida para tais eventos. Assim, por exemplo, (a) em caso de grupamento de ações, o número de Ações a serem entregues deverá ser multiplicado pela mesma razão referente ao grupamento das Ações; e (b) em caso de desdobramento de ações ou bonificações, o número de Ações a serem entregues deverá ser dividido pela mesma razão referente ao desdobramento das Ações ou pela mesma razão utilizada para a bonificação; e

(vii) apenas quantidades inteiras de Ações sejam entregues aos Debenturistas. As frações de Ações serão reunidas e distribuídas entre os Credores que houverem subscrito e integralizado as Debêntures, proporcionalmente à participação dos Credores em relação às Debêntures. Caso persistam sobras após o procedimento acima, tais frações serão desprezadas;

4.8.1.  As Debêntures 2ª Série e as Debêntures 3ª Série serão automaticamente convertidas em Ações se as Debêntures 1ª Série forem convertidas em Ações, inclusive em caso de dispensa pelos Novos Financiadores das Debêntures 1ª Série das condições precedentes para conversão dos créditos das Debêntures 1ª Série em Ações estabelecidas na Escritura de Emissão de Debêntures.

4.8.2.  A OGPar, em caráter irrevogável e irretratável, por força deste Plano e do Plano OGPar, obriga-se a votar favoravelmente ao aumento do capital social da OGX, mediante a emissão de novas Ações, para converter a totalidade das Debêntures em Ações, observado o disposto nos Planos Partes Relacionadas OGX e nos Artigos 57 e 171, §3º, da Lei das Sociedades por Ações e demais disposições legais e regulamentares aplicáveis.

**4.9.   Empréstimo Adicional – Contrato de Pré-Pagamento de Exportação.** O Empréstimo Adicional foi contratado em 09.04.2014 e será satisfeito nos termos e condições do Contrato de Pré-Pagamento de Exportação. O Empréstimo Adicional é integralmente garantido pelas Garantias DIP, que são compartilhadas com o Empréstimo DIP, nos termos do Contrato de Pré-Pagamento de Exportação e do Contrato de Compartilhamento. O Empréstimo Adicional tem prioridade sobre as Debêntures na cobrança e excussão das Garantias DIP e no recebimento do respectivo produto.

4.9.1.  **Extraconcursalidade do Empréstimo Adicional.** Nos termos dos Artigos 67, 84, 85 e 149 e demais disposições legais aplicáveis da Lei de Falências, o Empréstimo Adicional é e sempre será considerado extraconcursal, inclusive em caso de superveniência de falência da OGX, devendo ser pago com precedência sobre todos os Créditos Concursais e Créditos Extraconcursais, observado o disposto nos Artigos 84, 85, 149 e demais disposições aplicáveis da Lei de Falências.

**5.   Reestruturação e Liquidação de Dívidas**

**5.1.   Pagamento aos Credores Quirografários.** A OGX pagará os Créditos na forma deste Plano, inclusive em cumprimento às suas obrigações na qualidade de garantidora dos Bonds 2018 e dos Bonds 2022, sem prejuízo do disposto nos Planos Partes Relacionadas OGX.

5.1.1.  Para que a OGX e as demais empresas do Grupo OGX possam equalizar seu passivo por meio do pagamento integral dos Créditos

Concursais, bem como dos Créditos Extraconcursais detidos por Credores Extraconcursais que expressamente adiram a este Plano, os referidos Créditos serão objeto de capitalização da OGX, nos termos e condições estipulados na **Cláusula 5.1.3** abaixo. Os Credores Fornecedores poderão ter seus Créditos pagos, integral ou parcialmente, em dinheiro, limitado ao valor de R$ 30.000,00 (trinta mil reais), nos termos da **Cláusula 5.1.4** deste Plano.

5.1.2.    Após o Aumento de Capital Mediante Capitalização de Crédito, os Credores Quirografários, de acordo com os procedimentos descritos na **Cláusula 5.1.5**, farão jus (i) à entrega de Ações correspondente ao valor proporcional do Crédito na Lista de Credores, observado o disposto nas **Cláusulas 5.1.3** e seguintes e deste Plano, ou (ii) à entrega do produto da venda das referidas Ações pelo Comissário (conforme abaixo definido), observada a **Cláusula 5.1.5.1(ii)**, conforme eleito por cada Credor.

5.1.3.    **Aumento de Capital da OGX Mediante Capitalização de Crédito**

5.1.3.1.    **Condições Precedentes.** O Aumento de Capital Mediante Capitalização de Crédito ocorrerá tão logo quanto possível, mas desde que verificadas as seguintes Condições Precedentes para o Aumento de Capital Mediante Capitalização de Crédito:

(i)     o presente Plano ter sido aprovado pela Assembleia de Credores;

(ii)    ter havido a Homologação Judicial do Plano, desde que (a) não haja recurso interposto contra a decisão de Homologação Judicial do Plano (Artigo 58 da Lei de Falências) ao qual tenha sido atribuído efeito suspensivo e/ou que implique em um Efeito Adverso Relevante; e/ou (b) não haja qualquer ação judicial ou administrativa em que tenha sido pleiteada e concedida medida liminar, antecipação de tutela e/ou qualquer medida ou segurança semelhante que tenha o efeito de suspender ou inviabilizar a Homologação Judicial do Plano e/ou a implementação deste Plano e/ou que implique Efeito Adverso Relevante;

(iii)   tenham sido obtidas todas as autorizações governamentais necessárias para a implementação das operações previstas

neste Plano, inclusive a obtenção do Registro de Companhia Aberta;

(iv) tenha sido nomeado para integrar o Conselho de Administração da OGX ao menos 1 (um) conselheiro profissional independente, cujo nome seja aceitável ou não objetado pelos Backstop Novos Financiadores, em comunicação por escrito, podendo essa condição ser dispensada pelos Backstop Novos Financiadores, em comunicação por escrito;

(v) tenham sido obtidas as autorizações necessárias caso seja requerido qualquer processo auxiliar a esta Recuperação Judicial no exterior, conforme previsto na **Cláusula 17.11** deste Plano;

(vi) tenha havido comprovação satisfatória da verificação de produção de determinada quantidade de petróleo, nos termos da Cláusula 3.1(u) do Contrato de Subscrição;

(vii) não existam ações ou contingências trabalhistas, previdenciárias, tributárias, cíveis e/ou ambientais e/ou de qualquer outra natureza contra a OGX e/ou os Garantidores de que resultem ou possam resultar em um Efeito Adverso Relevante;

(viii) a ANP (a) não tenha contestado em Juízo este Plano ou a reestruturação objeto deste Plano; ou (b) não tenha proferido em sede de processo administrativo decisão definitiva determinando a rescisão, cassação, caducidade, transferência ou atos equivalentes afetando as concessões operadas pelo Grupo OGX ou que possam resultar em um Efeito Adverso Relevante;

(ix) tenha havido a subscrição e integralização das Debêntures 2ª Série na forma deste Plano, Escritura de Emissão de Debêntures e do Contrato de Subscrição.

5.1.3.2.   A OGPar, em caráter irrevogável e irretratável na condição de acionista controladora da OGX, obriga-se por este Plano e pelo Plano OGPar a realizar e fazer com que seja realizada assembleia geral extraordinária da OGX, em até 15 (quinze) dias da data de cumprimento das Condições Precedentes para o Aumento de Capital Mediante Capitalização de Crédito previstas neste Plano, na

qual a OGPar obriga-se a aprovar o aumento do capital social da OGX, mediante a emissão de novas Ações, para capitalizar, a totalidade dos Créditos Concursais, conforme indicado na Lista de Credores (reduzido apenas pelo valor a ser pago nos termos da **Cláusula 5.1.4** abaixo) e a totalidade dos Créditos Extraconcursais que expressamente aderirem ao presente Plano, nos termos da **Cláusula 5.4** abaixo, observado o disposto neste Plano e nos Planos Partes Relacionadas OGX, e itens abaixo nos termos do Artigo 171, §2º, da Lei das Sociedades por Ações e respeitadas todas as demais disposições legais e regulamentares aplicáveis.

**5.1.3.3.** O valor do Aumento de Capital Mediante Capitalização de Crédito será igual ao valor da totalidade dos Créditos Concursais, conforme indicado na Lista de Credores (i) acrescido da totalidade dos Créditos Extraconcursais que expressamente aderirem ao presente Plano, nos termos da **Cláusula 5.4** abaixo; (ii) deduzidos os valores dos Créditos pagos em dinheiro, na forma da **Cláusula 5.1.4** deste Plano; e (iii) quando aplicável, deduzidos os valores correspondentes ao Imposto sobre Serviços a ser recolhido quando da quitação dos Créditos detidos pelos Credores Fornecedores.

**5.1.3.4.** Na hipótese de se verificar eventual majoração na quantidade de Créditos decorrentes de decisão judicial transitada em julgado e retificação da Lista de Credores, a OGX deverá emitir tantas Ações quanto necessário para permitir a capitalização dos novos Créditos na forma da **Cláusula 5.1.3** deste Plano, ao mesmo preço de emissão das Ações verificado na data e para fins de implementação do Aumento de Capital Mediante Capitalização de Crédito, observadas as condições previstas nas **Cláusulas 5.1.3, 5.1.4** e **5.1.5** deste Plano.

**5.1.3.5.** Na hipótese de se verificar eventual redução no valor de Créditos decorrentes de decisão judicial transitada em julgado e retificação da Lista de Credores, o Credor titular do respectivo Crédito deverá restituir à OGX as Ações suficientes correspondentes ao valor do Crédito reduzido, observado o mesmo preço das Ações verificado na data em que o Credor recebeu as Ações em cumprimento deste Plano ou indenizar a OGX em valor correspondente.

**5.1.3.6.** A quantidade de Ações a serem emitidas será calculada de forma que confira aos Credores Concursais e aos Credores Extraconcursais que aderirem ao presente Plano (exceto àqueles que

optarem pelo pagamento em dinheiro nos termos da **Cláusula 5.1.4**), conjuntamente, participação equivalente a 71,43% (setenta e um inteiros e quarenta e três centésimos por cento) das Ações antes do Aumento de Capital Mediante Conversão das Debêntures. A participação final conjunta dos Credores Concursais e dos Credores Extraconcursais que aderirem ao presente Plano (exceto aqueles que optarem pelo pagamento em dinheiro nos termos da **Cláusula 5.1.4**) será sempre de 25% (vinte e cinco por cento) das ações de emissão da OGX Reestruturada, após a ocorrência do Aumento de Capital Mediante Conversão das Debêntures e da Incorporação, observada ainda eventual diluição na forma da **Cláusula 5.1.3.4** acima.

5.1.3.7.      O número de Ações a serem entregues aos Credores e/ou ao Comissário na implementação do Aumento de Capital Mediante Capitalização de Crédito será simultânea e proporcionalmente ajustado aos aumentos de capital por bonificação, desdobramentos ou grupamentos de Ações que vierem a ocorrer a partir da presente data, sem qualquer ônus para os Credores e na mesma proporção estabelecida para tais eventos. Assim, por exemplo, (i) em caso de grupamento de Ações, o número de Ações a serem entregues deverá ser multiplicado pela mesma razão referente ao grupamento das Ações; e (ii) em caso de desdobramento de Ações ou bonificações, o número de Ações a serem entregues deverá ser dividido pela mesma razão referente ao desdobramento das Ações ou pela mesma razão utilizada para a bonificação.

5.1.3.8.      Apenas quantidades inteiras de Ações serão entregues aos Credores e ao Comissário. Para tanto, as frações de Ações serão reunidas e distribuídas entre os Credores titulares dos Créditos capitalizados e ao Comissário, proporcionalmente ao valor do respectivo Crédito em relação à soma total dos Créditos constante da Lista de Credores (sem duplicação de Créditos por garantias e/ou coobrigação). Caso persistam sobras após o procedimento acima, tais frações serão desprezadas.

5.1.3.9.      As Ações emitidas pela OGX no âmbito do Aumento de Capital Mediante Capitalização de Crédito conferirão aos seus titulares os mesmos direitos atribuídos às demais Ações.

5.1.3.10.   O Aumento de Capital Mediante Capitalização de Crédito ocorrerá de forma privada, conferindo, portanto, à OGPar e Eike

Batista o direito de preferência, na forma da Lei das Sociedades por Ações. A OGPar e Eike Batista, de forma irrevogável e irretratável, por força deste Plano, renunciam e desde logo se obrigam a não exercer seu respectivo direito de preferência e a tomar todas as medidas necessárias para este fim, permitindo, portanto, que os Créditos Concursais e/ou Créditos Extraconcursais (cujos Credores Extraconcursais tenham aderido expressamente ao Plano) sejam capitalizados em Ações na forma e em cumprimento a este Plano.

**5.1.3.11.**   A OGX obriga-se a entregar aos Credores Concursais, aos Credores Extraconcursais que expressamente aderirem a este Plano e ao Comissário, nesse último caso em nome próprio, mas em benefício dos Credores que escolherem a **Opção B**, na forma da **Cláusula 5.1.5.1(ii)** abaixo, e proporcionalmente aos respectivos Créditos, na data em que for deliberado o Aumento de Capital Mediante Capitalização de Crédito, Ações livres e desembaraçadas que, em conjunto, representem o percentual indicado na **Cláusula 5.1.3.6** acima, sem que haja qualquer desembolso de recursos ou pagamento de preço por parte dos Credores tendo em vista sua condição de detentores dos Créditos objeto da capitalização.

**5.1.3.12.**   A OGX e OGPar, conforme aplicável, ficam desde já mandatadas e autorizadas, em caráter irrevogável e irretratável, por força deste Plano, a representar os Credores na assinatura de todos os documentos que sejam necessários para viabilizar a entrega das Ações, incluindo, sem limitação, o boletim de subscrição perante a instituição escrituradora das Ações.

**5.1.3.13.**   As Ações a serem emitidas no Aumento de Capital Mediante Capitalização de Crédito serão entregues aos Credores domiciliados nos Estados Unidos da América, em consonância e respeitando os termos da isenção de registro, não exclusiva, prevista e facultada pela Seção 3(a)(10) do *Securities Act of 1933*.

**5.1.3.14.**   A OGX envidará os melhores esforços para criar e registrar um Programa de ADRs Nível 1 perante a CVM e a Comissão de Valores Mobiliários dos EUA – SEC para viabilizar a entrega das Ações aos Bondholders.

**5.1.3.15.**   No caso dos Bondholders, a OGX obriga-se a entregar ao Agente Fiduciário dos Bonds as Ações ou os ADRs, conforme o caso, correspondentes aos Créditos dos Bondholders, nos termos das Escrituras de Emissão dos Bonds ou outro procedimento que venha a

ser acordado entre a OGX e o Agente Fiduciário dos Bonds, de forma a viabilizar a entrega de Ações ou dos ADRs ao Agente Fiduciário dos Bonds para sua ulterior transferência aos Bondholders. A ulterior transferência das Ações ou os ADRs pelo Agente Fiduciário dos Bonds aos respectivos Bondholders, conforme o caso, livres e desembaraçados de quaisquer ônus ou gravames, implicará no cancelamento da Escritura de Emissão dos Bonds, exonerando o Agente Fiduciário dos Bonds de toda e qualquer obrigação adicional.

**5.1.3.16.** Os demais prazos e procedimentos relacionados ao Aumento de Capital Mediante Capitalização de Crédito, além dos já fornecidos por meio do **Anexo 5.1.3**, serão oportunamente divulgados na forma da Lei das Sociedades por Ações e da Lei de Falências, conforme aplicável e se necessário.

**5.1.3.17.** A efetiva entrega das Ações derivadas do Aumento de Capital Mediante Capitalização de Crédito aos respectivos Credores Concursais e Credores Extraconcursais (que expressamente aderirem ao Plano) ou ao Comissário, conforme o caso, nos termos previstos nesta **Cláusula 5ª**, livres e desembaraçadas de quaisquer ônus, representa pagamento dos Créditos Concursais e Créditos Extraconcursais dos Credores Extraconcursais que tenham aderido ao Plano, desobrigando a OGX em relação aos Credores Concursais e Credores Extraconcursais, inclusive por créditos decorrentes de garantias por ela prestadas, subrogando-a perante todos os devedores solidários e obrigados por direito de regresso, notadamente a OGPar e OGX Áustria em razão do pagamento dos Créditos Concursais dos Bondholders.

**5.1.4.** **Credores Fornecedores - Pagamento em Dinheiro.** Os Credores Fornecedores poderão optar pelo recebimento de uma quantia em dinheiro, correspondente a **R$ 30.000,00** (trinta mil reais), limitado ao valor do respectivo Crédito.

**5.1.4.1.** Os Credores Fornecedores que optarem pelo recebimento do valor referido na **Cláusula 5.1.4** acima serão pagos em 3 (três) parcelas fixas e mensais, com pagamentos no dia 30.01.2015, 28.02.2015 e 30.03.2015.

**5.1.4.2.** Não obstante o disposto na **Cláusula 5.1.4.1** acima, o valor mínimo de cada parcela a ser paga a cada Credor é de **R$ 10.000,00** (dez mil reais), salvo se o saldo remanescente de seu Crédito for inferior a esse valor.

**5.1.4.3.** O Credor Fornecedor que optar por receber o pagamento previsto na **Cláusula 5.1.4** acima deverá notificar a OGX, com cópia para o Administrador Judicial, informando sua intenção, no prazo de até 10 (dez) Dias Úteis contados da Homologação Judicial do Plano e será irrevogável e irretratável: Referida notificação deverá incluir, ainda, os dados da conta bancária na qual deverá ser realizado o pagamento e deverá ser efetuada nos termos da **Cláusula 17.5** deste Plano.

**5.1.4.4.** O eventual saldo remanescente em favor do Credor Fornecedor após pagamento previsto na **Cláusula 5.1.4** acima será pago nos termos da **Cláusula 5.1.3** deste Plano.

**5.1.5.** **Eleição da Opção por cada Credor Quirografário.** Sem prejuízo do Aumento de Capital Mediante Capitalização de Crédito previsto na **Cláusula 5.1.3**, os Credores Quirografários (incluindo os Credores Fornecedores) e os Credores Extraconcursais que expressamente aderirem ao presente Plano poderão optar por (i) receber Ações (Opção A); ou (ii) receber os recursos líquidos correspondentes à alienação de tais Ações a que faz jus nos termos deste Plano (Opção B).

**5.1.5.1.** **Notificação de Opção de Recebimento.** Os Credores deverão enviar a Notificação de Opção de Recebimento à OGX, com cópia para o Administrador Judicial, no prazo de até 10 (dez) Dias Úteis contados da Homologação Judicial do Plano, acerca da sua escolha entre as opções abaixo, nos termos da **Cláusula 17.5** abaixo. Para os Credores que optarem pela **Opção B**, a referida Notificação de Opção de Recebimento deverá necessariamente observar a minuta constante do **Anexo 1.1.97** e da **Cláusula 17.5** deste Plano.

**(i) Opção A – Entrega das Ações.** Os Credores que elegerem a Opção A para pagamento de seus Créditos receberão as Ações resultantes do Aumento de Capital Mediante Capitalização de Crédito a que se refere a **Cláusula 5.1.3** acima, proporcionalmente ao valor do respectivo Crédito conforme constante na Lista de Credores (descontado o valor equivalente à eventual opção nos termos da **Cláusula 5.1.4**), observando-se todos termos e condições previstos nas **Cláusulas 5.1.3** e seguintes deste Plano.

**(ii) Opção B – Entrega das Ações ao Comissário para Venda e Recebimento dos Proventos da Venda.** Os Credores que não desejarem se tornar acionistas da OGX mediante o recebimento das Ações oriundas do Aumento de Capital Mediante Capitalização de Crédito, nos termos da **Cláusula 5.1.3** acima, poderão optar por nomear e outorgar os poderes competentes ao Comissário, o qual receberá as Ações a que tais Credores Quirografários teriam direito, realizará a venda de tais Ações e entregará os recursos líquidos provenientes da venda, conforme disposto na **Cláusula 5.1.5.1** e seguintes.

5.1.5.2.    Na hipótese de eleição da Opção B, a Notificação de Opção de Recebimento deverá incluir, ainda, os dados da conta bancária na qual deverá ser realizado o oportuno pagamento do produto da alienação das Ações.

5.1.5.3.    As Notificações de Opção de Recebimento recebidas fora do prazo previsto na **Cláusula 5.1.5.1** acima ou que não observem fielmente a forma do **Anexo 1.1.97** serão desconsideradas pela OGX para os fins deste Plano, aplicando-se o disposto na **Cláusula 5.1.5.5** abaixo.

5.1.5.4.    A escolha manifestada pelo Credor na Notificação de Opção de Recebimento será irrevogável, irretratável e vinculante, não podendo ser alterada ao longo dos prazos de pagamento estabelecidos neste Plano.

5.1.5.5.    Na hipótese do Credor não enviar a Notificação de Opção de Recebimento no prazo e forma estabelecidos neste Plano, referido Credor receberá a quantidade de Ações correspondente ao seu Crédito, na forma da **Cláusula 5.1.3** deste Plano.

5.1.5.6.    **Nomeação de Comissário.** O Credor que desejar receber o produto líquido da alienação das Ações em pagamento de seu Crédito na forma da **Cláusula 5.1.5.1(ii) e seguintes**, e realizar a entrega da correspondente Notificação de Opção de Recebimento, conforme prevista na **Cláusula 5.1.5.1** acima, por força deste Plano, nomeará como Comissário a OGPar (ou quem a OGX indicar), de forma irrevogável e irretratável para fins e efeitos do Artigo 693 do Código Civil, outorgando-lhe mandato e todos os poderes necessários para (i) subscrever as Ações em nome próprio, mas para o benefício do Credor; (ii) alienar as Ações, de forma pública ou privada, em qualquer data; e (iii) a exclusivo critério do

Comissário, tomar toda e qualquer providência necessária ou razoável, inclusive o fechamento de contratos de câmbio e remessa dos recursos líquidos apurados com a venda das Ações para a conta corrente indicada pelo Credor na Notificação de Opção de Recebimento.

**5.1.5.7.    Isenção de Responsabilidade do Comissário.** O Comissário é isento de toda e qualquer responsabilidade derivada da venda das Ações para fins de implementação deste Plano conforme instruções do respectivo Credor na Notificação de Opção de Recebimento. Neste sentido, os Credores que optarem pela Opção B, renunciarão aos direitos previstos nos Artigos 696, 697 e 698 do Código Civil, já que o Comissário realizará a alienação das Ações tendo como objetivo único entregar valores em pecúnia ao Credor, sem qualquer obrigação de buscar a maximização do preço de venda das Ações, não podendo lhe ser imputado qualquer suposto prejuízo derivado do momento, forma e/ou valores apurados com a alienação das Ações, incluindo prejuízo advindo de eventual insolvência do adquirente das Ações, com o qual não se responsabilizará solidariamente.

**5.1.5.8.    Depósito dos Recursos Líquidos em Conta Corrente.** O produto da alienação das Ações deverá ser entregue ao respectivo Credor, na conta corrente por ele indicada, líquido de todos e quaisquer custos e taxas operacionais e tributos em até 3 (três) Dias Úteis após a realização da venda das Ações.

**5.1.5.9.    Quitação.** Para que não haja dúvidas, os Credores Quirografários que optarem pelo pagamento na forma desta Cláusula conferirão, em caráter irrevogável e irretratável, a mais ampla, plena e rasa quitação pelos seus respectivos Créditos, no momento da emissão das Ações oriundas do Aumento de Capital Mediante Capitalização de Crédito ao Comissário, na forma da **Cláusula 5.1.3.17** acima, momento em que passarão a deter o direito de crédito relativo à alienação das Ações.

**5.2.    Credores Trabalhistas.** Na presente data, não há Créditos Trabalhistas sujeitos à Recuperação Judicial. Na hipótese de serem reconhecidos Créditos Trabalhistas, por decisão judicial ou acordo entre as partes, os referidos Créditos Trabalhistas serão pagos em 12 (doze) parcelas mensais iguais e sucessivas, sendo devida a primeira parcela a partir do recebimento, pela OGX, de comunicação, nos termos da **Cláusula 17.5**, enviada pelo Credor Trabalhista detentor do Crédito

Trabalhista reconhecido, a respeito do trânsito em julgado da decisão judicial ou acordo que reconhecer o Crédito Trabalhista.

**5.3.    Credores com Garantia Real.** Na presente data, não há Créditos com Garantia Real sujeitos à Recuperação Judicial. Na hipótese de serem reconhecidos Créditos com Garantia Real, por decisão judicial, arbitral ou acordo entre as partes, os referidos Credores com Garantia Real terão o mesmo tratamento dado aos Créditos Quirografários e seus créditos serão pagos nos mesmos termos ora previstos para pagamento dos Créditos Quirografários, na forma da **Cláusula 5ª** acima. Para tanto, deverá ser observado o quanto disposto na **Cláusula 17.5** abaixo.

**5.4.    Credores Extraconcursais.** Para fins de esclarecimento, a OGX declara e reconhece que os Créditos Extraconcursais não estão sujeitos ao presente Plano, de forma que sua aprovação pela Assembleia de Credores não implica na imediata reestruturação dos Créditos Extraconcursais nos termos e condições aqui descritos. No entanto, a OGX expressamente estende as condições propostas aos Credores Concursais para os Credores Extraconcursais que queiram aderir a este Plano, estando ciente, no entanto, que tais termos e condições somente serão aplicáveis na medida em que haja adesão expressa e voluntária por parte do Credor Extraconcursal a este Plano, nos termos previstos nesta **Cláusula 5ª**. Referida adesão deverá ocorrer por escrito, em caráter irretratável e irrevogável, mediante notificação à OGX, encaminhada até a data da Assembleia de Credores que aprovar este Plano. Desta forma, as condições ora descritas estão incluídas no presente Plano para fins de transparência e conhecimento de todos os Credores, dado que a adesão de Credores Extraconcursais ao presente Plano terá o efeito imediato de aumentar o valor dos Créditos que serão capitalizados na OGX e eventualmente pagos aos Credores Extraconcursais, nos termos da **Cláusula 5ª**.

**6.    Operações com Partes Relacionadas**

**6.1.    Declaração OGX Áustria.** Para fins e por força deste Plano, a OGX Áustria desde logo declara e reconhece ser devedora da OGX dos Créditos Subrogação OGX Áustria, por força da subrogação operada em favor da OGX em decorrência da entrega de Ações em pagamento dos Créditos Concursais dos Bondholders na forma deste Plano, uma vez implementado o Aumento de Capital Mediante Capitalização de Crédito. A OGX Áustria desde logo declara e reconhece que os Créditos Subrogação OGX Áustria (i) poderão ser utilizados pela OGX para satisfação e pagamento dos Créditos OGX Áustria, nos termos da **Cláusula 6.2** abaixo, a critério da OGX, e (ii) sobreviverão ao eventual cancelamento dos Bonds e/ou da Escritura de Emissão dos Bonds.

**6.1.1.**    A OGX Áustria desde logo se obriga com caráter irrevogável e irretratável a conferir mais ampla, plena e rasa quitação pelos

Créditos OGX Áustria após o pagamento referido na **Cláusula 6.2** abaixo, inclusive em caso de compensação, mesmo que haja eventual saldo credor de OGX Áustria contra OGX.

**6.2. Pagamento de Créditos Detidos pela OGX Áustria.** As condições originais dos Créditos OGX Áustria serão preservadas, exceto pelo prazo de amortização e incidência de juros que são reestruturados por este Plano nos termos previstos no Artigo 59 da Lei de Falências, de forma que os Créditos OGX Áustria serão pagos em parcela única de principal devida e exigível em 20 (vinte) anos contados da Aprovação do Plano, ou em 30.07.2034, o que ocorrer por último, sem incidência e capitalização de juros. As partes poderão oportunamente convencionar outra forma de extinção da obrigação de pagamento dos Créditos OGX Áustria, inclusive com a utilização do Crédito Subrogação OGX Áustria detido pela OGX em função de subrogação prevista na **Cláusula 5.1.3.17** derivada do pagamento dos Créditos Concursais devidos pelas demais empresas do Grupo OGX na forma deste Plano, até o valor de referidos Créditos Concursais, observados sempre os procedimentos e legislação aplicáveis e o disposto neste Plano.

**6.3. Pagamentos dos Créditos do Grupo OSX.** Nos termos da transação celebrada entre OGX, OSX 1 Leasing BV, OSX 2 Leasing BV e OSX WHP 1 & 2 Leasing BV, entre outros, referidas partes acordaram que: (i) OSX 2 Leasing BV e OSX WHP 1 & 2 Leasing BV, detentoras de Créditos Extraconcursais, aderiram expressamente ao presente Plano, concordando que seus Créditos Extraconcursais serão liquidados nas mesmas condições dos Credores Concursais mediante conversão em Ações nos termos das **Cláusulas 5.1.3** e seguintes deste Plano; (ii) os Créditos Concursais e os Créditos Extraconcursais do Grupo OSX serão satisfeitos nos termos da **Cláusula 5.1.3** acima; e (iii) os Créditos de OSX 1 Leasing BV, OSX 2 Leasing BV e OSX WHP 1 & 2 Leasing BV, para fins do presente Plano, serão de **US$ 414.012.787,00** (quatrocentos e quatorze milhões e doze mil setecentos e oitenta e sete dólares norte-americanos), **US$ 557.349.243,00** (quinhentos e cinquenta e sete milhões trezentos e quarenta e nove mil duzentos e quarenta e três dólares norte-americanos) e **US$ 528.637.970,00** (quinhentos e vinte e oito milhões e seiscentos e trinta e sete mil e novecentos e setenta dólares norte-americanos), respectivamente, valores com os quais OGX expressamente concorda, conforme estabelecidos na Lista de Credores.

**6.4. Exoneração dos Devedores Solidários dos Bonds.** Em razão (i) da subrogação a que se refere à **Cláusula 5.1.3.17** acima; (ii) os termos e condições de quitação dos Créditos e débitos mutuamente detidos por OGX e OGX Áustria conforme descritos na **Cláusula 6.2** acima; e (iii) as obrigações de garantia e solidariamente assumidas pela OGX no contexto das Escrituras de Emissão dos Bonds, a OGX e OGX Áustria neste ato exoneram, de forma irrevogável e irretratável, a OGPar como devedora solidária nos termos das Escritura de Emissões dos Bonds.

7.    **Governança Corporativa – Observância de Obrigações.**

**7.1.**    A partir da Data de Emissão e até que se verifique a efetiva entrega das Ações aos Credores em razão (i) do Aumento de Capital Mediante Capitalização de Crédito; e (ii) do Aumento de Capital Mediante Conversão das Debêntures na forma deste Plano e da Escritura de Emissão de Debêntures, a administração da OGX deverá observar, na condução das suas atividades, as melhores práticas de governança corporativa, além de todos os termos, condições e limitações e restrições constantes deste Plano, da Escritura de Emissão de Debêntures, do Contrato de Subscrição, do *Plan Support Agreement*, do Contrato de Pré-Pagamento de Exportação, dos Contratos de Garantia DIP e demais instrumentos e contratos relacionados aos instrumentos e contratos acima e/ou sua reestruturação e Recuperação Judicial.

**7.2.**    A OGX deverá formalizar às suas expensas a contratação do Agente de Verificação para prestação dos serviços de monitoramento de suas atividades em benefício dos Backstop Novos Financiadores, o qual permanecerá em vigor até a ocorrência do Aumento de Capital Mediante Conversão das Debêntures, nos termos da Escritura de Emissão de Debêntures e deste Plano. A OGX se compromete a colaborar e conferir livre acesso ao Agente de Verificação a todas as informações requeridas com presteza e diligência.

**7.3.**    Imediatamente após a Data de Emissão, a OGX obriga-se a tomar todas as medidas necessárias para a obtenção do Registro de Companhia Aberta, nos termos da legislação e demais regulamentação aplicáveis, inclusive a alteração de seu estatuto social e estabelecendo a instalação de Conselho de Administração, composto ao menos por 3 (três) integrantes.

8.    **Alienação da UPI Parnaíba Gás Natural**

**8.1.**    **Alienação de Ações da Parnaíba Gás Natural.** A OGX detém 245.728.660 (duzentas e quarenta e cinco milhões e setecentas e vinte e oito mil e seiscentas e sessenta) ações ordinárias de emissão da Parnaíba Gás Natural, que se encontram alienadas fiduciariamente a determinados credores, as quais poderão ser alienadas a um terceiro, mediante anuência e concordância prévia dos credores extraconcursais que possuem garantia sobre referidas ações, na forma de Unidade Produtiva Isolada e garantido a ausência de sucessão pelo adquirente em todas e quaisquer obrigações da OGX, nos termos dos Artigos 60 e 142 da Lei de Falências ("UPI Parnaíba Gás Natural"), a fim de viabilizar a reestruturação operacional da OGX.

**8.1.1.**    **Possível Aquisição por Cambuhy.** Conforme divulgado ao mercado por meio de Fato Relevante, a OGX celebrou, em 30.10.2013, (i) Acordo de Subscrição (*Subscription Agreement*) com Cambuhy e determinadas outras partes, por meio do qual e sujeito

aos termos e condições nele previstos, a Cambuhy e a DD Brazil Holdings S.A. rl ("E.ON") concordaram em investir na Parnaíba Gás Natural um valor total de aproximadamente **R$ 250.000.000,00** (duzentos e cinquenta milhões de reais) ("Aumento de Capital Parnaíba Gás Natural"); (ii) Contrato de Compra e Venda (*Stock Purchase Agreement*), por meio do qual a Cambuhy obrigou-se a adquirir da OGX sua participação na Parnaíba Gás Natural por um preço de compra certo e ajustado de **R$ 199.998.556,37** (cento e noventa e nove milhões novecentos e noventa e oito mil quinhentos e cinquenta e seis reais e trinta e sete centavos), sujeito a certos termos e condições que incluem, mas não se limitam, à aprovação do CADE e da ANP, à implementação do Aumento de Capital Parnaíba Gás Natural e à anuência e concordância prévia dos credores que possuem propriedade fiduciária sobre referidas ações. Além dos documentos acima mencionados, foram também celebrados outros contratos com a finalidade de (a) encerramento de contratos de compartilhamento de serviços; (b) alienação de ações da sociedade Parnaíba B.V., sociedade cuja atividade é integrada à da Parnaíba Gás Natural; e (c) regulamentação do relacionamento das partes enquanto acionistas da Parnaíba Gás Natural.

**8.2.** **Processo Competitivo.** Para fins de transparência e para se assegurar que a OGX obtenha a melhor proposta para alienação da UPI Parnaíba Gás Natural, atingindo, assim, a finalidade dos Artigos 60 e 142 da Lei de Falências, Cambuhy e OGX acordaram que a alienação judicial da UPI Parnaíba Gás Natural deverá ser realizada por meio de procedimento competitivo, a ser conduzido pela OGX, no contexto da Recuperação Judicial e na forma dos Artigos 60 e 142 da Lei de Falências, ficando a Cambuhy desde já dispensada do cumprimento do quanto disposto na **Cláusula 8.2.1.** O processo competitivo deverá ser encerrado em até 30 (trinta) dias contados da Homologação Judicial do Plano.

**8.2.1.** **Procedimento do Processo Competitivo.** Em até 5 (cinco) dias contados da Homologação Judicial do Plano, a OGX fará publicar Edital substancialmente na forma do **Anexo 1.1.73** informando aos interessados a respeito do processo competitivo para alienação da UPI Parnaíba Gás Natural, bem como condições mínimas para participação dos interessados ("Edital"), quais sejam:

**8.2.1.1.** **Condições Mínimas para aquisição da UPI Parnaíba Gás Natural.** Quaisquer propostas de aquisição da UPI Parnaíba Gás Natural deverão refletir, como condições mínimas, além de superar o Valor Mínimo, os termos e condições estipulados no Contrato de Compra e Venda (**Anexo 1.1.34**), obrigando-se o so

proponentes expressamente a observar todos os referidos termos, condições e obrigações estabelecidos no Contrato de Compra e Venda, além da obrigação de alienar fiduciariamente as ações adquiridas para os atuais credores da Parnaíba Gás Natural ou para eventuais novos credores que venham a conceder novo financiamento à Parnaíba Gás Natural ("Condições Mínimas"). Quaisquer alterações propostas aos termos e condições previstos no Contrato de Compra e Venda poderão ser livremente interpretadas pela OGX e pelos Novos Financiadores como condições menos vantajosas e, portanto, poderão ser rejeitadas pela OGX, sem qualquer responsabilidade para a OGX e/ou Novos Financiadores.

8.2.1.2.   **Valor Mínimo.** A alienação da UPI Parnaíba Gás Natural deverá observar o valor mínimo de **R$ 199.998.556,37** (cento e noventa e nove milhões e novecentos e noventa e oito mil e quinhentos e cinquenta e seis reais e trinta e sete centavos), a ser pago em uma única parcela e a ser reajustado de acordo com a variação do IPCA a partir de 30.10.2013 até a data de efetivo pagamento ("Valor Mínimo"), sendo que a Cambuhy, nos termos e condições do Contrato de Compra e Venda, obrigou-se a participar do processo competitivo para aquisição da UPI Parnaíba Gás Natural e apresentar lance não inferior ao Valor Mínimo.

8.2.1.3.   **Comprovação   da   Capacidade   Econômica, Financeira e Patrimonial dos Proponentes.** Para comprovar a capacidade econômica, financeira e patrimonial, os proponentes deverão apresentar a seguinte documentação: (i) comprovantes de existência e regularidade, devidamente emitidos pelos órgãos responsáveis pelo registro de constituição do proponente; (ii) declaração de referência bancária de pelo menos 2 (duas) instituições financeiras de primeira linha; (iii) prova de que possui recursos ou meios suficientes para fazer frente ao pagamento à vista de, pelo menos, o Valor Mínimo; e (iv) demais documentos a serem previstos no Edital a que se refere a **Cláusula 8.2.1**, sob pena de terem suas propostas sumariamente desconsideradas.

8.2.2.   **Participação no Processo Competitivo.** Eventuais proponentes interessados em participar do processo competitivo deverão manifestar seu interesse, no prazo de 5 (cinco) dias contados da publicação do Edital, através de notificação à OGX, com cópia para o Administrador Judicial e protocolo perante o Juízo da Recuperação. Os interessados deverão, em referida notificação, comprovar que têm capacidade econômica, financeira e patrimonial para apresentar

proposta superior ao Valor Mínimo e para atender às Condições Mínimas previstas na **Cláusula 8.2.1.1** e **Anexo 1.1.73**, sob pena de terem suas notificações de intenção de participação do processo competitivo sumariamente desconsideradas pela OGX.

8.2.3.    **Leilão.** O processo competitivo para alienação da UPI Parnaíba Gás Natural deverá ser conduzido através de leilão por lances orais, cujos termos e condições constarão do Edital, nos termos do Artigo 142 da Lei de Falências, devendo o Ministério Público ser previamente intimado. Em qualquer hipótese, o leilão deverá ser realizado no máximo em até 15 (quinze) dias contados da Homologação Judicial do Plano.

8.2.4.    **Aprovação dos Credores à Alienação da UPI Parnaíba Gás Natural para Terceiros.** Na hipótese de terceiro interessado, que não a Cambuhy, vir sagrar-se vencedora do leilão, nos termos da **Cláusula 8.2.3**, a efetiva homologação da alienação da UPI Paranaíba Gás Natural ficará sujeita à prévia (a) aprovação ou não rejeição da maioria simples dos Créditos dos Credores presentes à Assembleia de Credores a ser convocada para essa finalidade; e (b) aprovação ou não rejeição da maioria simples dos créditos das Debêntures detidas pelos debenturistas presentes à assembleia de debenturistas convocada para essa finalidade.

8.2.5.    **Ausência de Sucessão.** Tendo em vista que a alienação da UPI Parnaíba Gás Natural ora estabelecida se dará por meio de processo competitivo previsto no Artigo 142 da Lei de Falências, em nenhuma hipótese haverá sucessão do adquirente da UPI Parnaíba Gás Natural por quaisquer dívidas e obrigações da OGX e de suas subsidiárias, inclusive as de natureza tributária e trabalhista, na forma do Artigo 60 da Lei de Falências.

9.    **Alienação e/ou oneração de Bens do Ativo Permanente**

9.1.    **Alienação de Outros Bens do Ativo.** Salvo as operações de alienação e oneração de bens do ativo permanente do Grupo OGX previstas neste Plano, a OGX somente poderá alienar ou onerar quaisquer bens do seu ativo, financeiro ou intangível que esteja livre e desembaraçado, durante todo o período em que permanecer em Recuperação Judicial, sem necessidade de prévia autorização de qualquer Credor ou da Assembleia de Credores, desde que (i) tenha ocorrido o Aumento de Capital da OGX Mediante Capitalização de Crédito; (ii) respeitadas e atendidas as condições, limitações, restrições e aprovações estabelecidas na Escritura de Emissão de Debêntures, nos Contratos de Garantia DIP, no Contrato de Subscrição e no Contrato

de Pré-Pagamento de Exportação; e (iii) tenham sido obtidas as aprovações das entidades competentes, quando aplicável.

> **9.1.1.** Para todos os devidos fins de direito, a aprovação deste Plano autoriza e ratifica a alienação (i) dos bens relacionados no **Anexo 9.1.1**; e (ii) dos Ativos Colômbia nos termos do **Anexo 1.1.16** deste Plano.

## 10. Incorporação

**10.1.** Após a realização e implementação (i) do Aumento de Capital Mediante Capitalização de Crédito, nos termos deste Plano; e (ii) do Aumento de Capital Mediante Conversão das Debêntures, nos termos da Escritura da Emissão de Debêntures, as administrações da OGPar e OGX obrigam-se a adotar os atos necessários para a incorporação da OGPar pela OGX ("Incorporação"), inclusive o de propor aos respectivos acionistas a Incorporação.

> **10.1.1.** A OGX poderá alterar a ordem dos eventos societários previstos neste Plano, caso não seja tempestivamente obtido o Registro de Companhia Aberta por fato não imputável à OGX e o atraso possa comprometer ou prejudicar a implementação das etapas deste Plano, podendo inclusive antecipar a Incorporação para o mesmo momento ou imediatamente seguinte ao Aumento de Capital Mediante Capitalização de Crédito, de tal forma que os Credores recebam Ações emitidas por uma companhia aberta ou em iminência de obter o registro de companhia aberta, mantendo-se inalterados o resultado final e os benefícios para os Credores nos termos deste Plano, inclusive, sem limitação, as participações finais atribuídas aos Acionistas, Credores e Backstop Novos Financiadores no capital social da OGX Reestruturada, conforme definido na Cláusula 10.3 deste Plano. O disposto nesta Cláusula não altera os termos e condições das Debêntures e direitos conferidos aos respectivos subscritores.

**10.2.** A Incorporação resultará em uma companhia aberta com ações negociadas no segmento de listagem denominado Novo Mercado da BM&FBOVESPA ("OGX Reestruturada").

> **10.2.1.** A OGX Reestruturada utilizará os registros e ticker da OGPar no Novo Mercado da BM&FBOVESPA até que sejam obtidos registros próprios para a negociação das ações, observado sempre o determinado pela BM&FBOVESPA.

**10.3.** A relação de troca a ser proposta aos acionistas de OGPar e OGX para a Incorporação será aquela que resulte na seguinte estrutura societária final da OGX Reestruturada imediatamente após a implementação da Incorporação:

| Acionistas | Participação na OGX Reestruturada |
|---|---|
| Eike Batista | 1 ação |
| Centennial Asset Mining Fund, LLC, e Centennial Asset Brazilian Equity Fund, LLC | 5,02% |
| Outros Acionistas da OGPar (na data da convocação da AGE de Incorporação) | 4,98% |
| Novos Financiadores da 1ª Série de Debêntures | 41,9767% |
| Novos Financiadores da 2ª Série e 3ª Série de Debêntures | 23,0233% |
| Credores Concursais ou Extraconcursais (que aderirem ao Plano ou aos Planos Partes Relacionadas (OGX) e/ou Comissário em benefício dos Credores Concursais ou Extraconcursais (que aderirem ao Plano ou aos Planos Partes Relacionadas (OGX) | 25,00% |

**10.4.** Como vantagem adicional à subscrição das novas Ações de emissão da OGX, os acionistas da OGPar, incluindo os Acionistas, receberão bônus de subscrição a serem emitidos pela OGX Reestruturada na mesma assembleia que for convocada para deliberar sobre a Incorporação com as seguintes principais condições: (i) prazo para exercício de 5 (cinco) anos a contar da data de sua emissão, podendo a OGX Reestruturada definir janelas em que os detentores dos bônus de subscrição poderão exercer seu bônus e subscrever as ações dele resultantes; e (ii) um número de ações ordinárias a serem subscritas que representem, no total agregado, 15% (quinze por cento) das ações da OGX Reestruturada (sujeita a todos os ajustes habituais que constarão do certificado de bônus de subscrição), considerando um preço de exercício por ação, no momento do exercício, baseado no valor da OGX Reestruturada (*equity value*) em moeda corrente nacional equivalente, na data de emissão dos bônus de subscrição, a US$ 1.500.000.000,00 (um bilhão e quinhentos milhões de dólares norte-americanos). O preço fixado em moeda corrente nacional será corrigido pelo IGP-M a partir da data de emissão dos bônus de subscrição.

**10.5.** A Incorporação estará sujeita às aprovações societárias necessárias, de acordo com o previsto na Lei das Sociedades por Ações. As administrações da OGPar e da OGX envidarão os melhores esforços para fazer com que as assembleias gerais extraordinárias de Incorporação sejam realizadas em até 30 (trinta) dias data da ocorrência do Aumento de Capital Mediante Conversão das Debêntures, nos termos da Escritura da Emissão de Debêntures. Os Acionistas, Grupo OGX e Partes Relacionadas

obrigam-se a, em caráter irrevogável e irretratável, por força deste Plano, a aprovar a Incorporação.

**10.6.** O objetivo da Incorporação, após realizadas as operações de capitalização previstas neste Plano que têm a finalidade de buscar o saneamento financeiro do Grupo OGX, é nivelar todos os *stakeholders* em uma mesma companhia e conferir a todos os então acionistas acesso ao mercado de capitais, com a possibilidade de negociarem suas Ações e monetizá-las conforme entenderem adequado, bem como participar de eventual valorização do ativo, se for o caso.

## 11.   *Put Option*

**11.1.** Uma vez aprovado o Plano pela Assembleia de Credores e divulgado aos Credores o resultado do procedimento informado pela OGPar mediante o Comunicado ao Mercado de 11.11.2013, a propósito da discussão do *Put Option*, eventualmente concluindo pela sua invalidade e/ou inexigibilidade ("Resultado do Procedimento"), fica convencionado que na data em que forem efetivamente entregues aos Credores Concursais e Credores Extraconcursais (apenas os Credores Extraconcursais que tiverem expressamente aderido ao Plano) e/ou ao Comissário as Ações correspondentes ao Aumento de Capital Mediante Capitalização de Crédito (conforme definido na **Cláusula 5.1.3** acima), livres e desembaraçadas de quaisquer ônus ou questionamentos, os Credores Concursais e Credores Extraconcursais (apenas os Credores Extraconcursais que tiverem expressamente aderido ao Plano), por força deste Plano, reconhecerão, para todos os fins de direito, a plena validade e eficácia do Resultado do Procedimento.

## 12.   **Condições Resolutivas**

**12.1. Condições Resolutivas.** São condições resolutivas do Plano, cuja superveniência acarretará o cancelamento da aprovação deste Plano e suas respectivas disposições e a convocação de uma Assembleia de Credores para deliberar a respeito de uma alternativa ao Plano ou a falência da OGX:

> (i)   a constatação, até que ocorra o Aumento de Capital Mediante Capitalização de Crédito, de qualquer falsidade ou incorreção quanto a qualquer declaração ou garantia prestada pela OGX neste Plano ou nos seus Anexos que caracterize Efeito Adverso Relevante;

(ii) o descumprimento pelos Acionistas de qualquer obrigação assumida neste Plano ou prática de qualquer ato ou medida incompatível com as disposições deste Plano;

(iii) a não verificação das Condições Precedentes para o Aumento de Capital Mediante Capitalização de Crédito, previstas na **Cláusula 5.1.3.1** em até 120 (cento e vinte) dias contados da Homologação Judicial do Plano ou até 30.09.2014, o que ocorrer primeiro;

(iv) a não realização da assembleia geral extraordinária e demais atos de implementação do Aumento de Capital Mediante Capitalização de Crédito, inclusive entrega das Ações aos Credores Concursais e Credores Extraconcursais (que aderirem ao Plano) em até 140 (cento e quarenta) dias contados da Homologação Judicial do Plano ou até 20.10.2014, o que ocorrer primeiro;

(v) a não adesão ao Plano e/ou aos Planos Partes Relacionadas OGX, conforme aplicável, de Credores Extraconcursais que sejam Partes Relacionadas até a data do Aumento de Capital Mediante Capitalização de Crédito prevista na **Cláusula 5.1.3**; e/ou

(vi) a não Aprovação do Plano pela Assembleia de Credores e/ou resolução de quaisquer dos Planos Partes Relacionadas OGX.

**12.2. Dispensa das Condições Resolutivas.** Os Credores podem, em deliberação dos titulares da maioria simples dos Créditos presentes à Assembleia de Credores convocada para essa finalidade, dispensar a seu exclusivo critério, no todo ou em parte, quaisquer das condições resolutivas descritas na **Cláusula 12.1** acima.

## 13. Efeitos do Plano

**13.1. Vinculação do Plano.** As disposições do Plano vinculam a OGX, o Grupo OGX, os Acionistas e os Credores, e os seus respectivos cessionários e sucessores, a partir da Homologação Judicial do Plano.

**13.2. Novação.** A inexistência de recurso a que tenha sido atribuído efeito suspensivo (ou ação judicial com mesmo efeito) interposto contra a Homologação Judicial do Plano acarretará a novação dos Créditos Concursais e dos Créditos Extraconcursais detidos por Credores Extraconcursais que tenham expressamente aderido ao presente Plano, que serão liquidados na forma estabelecida neste Plano.

Mediante referida novação, todas as obrigações, *covenants*, índices financeiros, hipóteses de vencimento antecipado, bem como outras obrigações e garantias que sejam incompatíveis com as condições deste Plano deixarão de ser aplicáveis.

**13.3.   Extinção de Ações.** Exceto se previsto de forma diversa neste Plano, os Credores não mais poderão, a partir da Aprovação do Plano (i) ajuizar ou prosseguir toda e qualquer ação judicial ou processo de qualquer tipo relacionado ou não a qualquer Crédito contra a OGX; (ii) executar qualquer sentença, decisão judicial ou sentença arbitral contra a OGX; (iii) penhorar quaisquer bens da OGX para satisfazer seus Créditos; (iv) criar, aperfeiçoar ou executar qualquer garantia real sobre bens e direitos de OGX para assegurar o pagamento de seus Créditos; (v) reclamar qualquer direito de compensação contra qualquer crédito devido à OGX; (vi) buscar a satisfação de seus Créditos por quaisquer outros meio; e (vii) sujeito à verificação do Resultado do Procedimento e satisfação dos termos e condições da **Cláusula 11.1** deste Plano, buscar a satisfação de toda e qualquer pretensão, ação ou direito a demandar anulação, execução específica, reparação de danos ou quaisquer outras demandas, a qualquer título, em relação ao *Put Option*. Todas as ações e execuções judiciais em curso contra a OGX, relativas aos Créditos serão extintas, e as penhoras e constrições existentes serão liberadas.

13.3.1.   Verificada a Resolução do Plano, fica assegurado aos Credores o direito de ajuizar e/ou prosseguir em qualquer demanda, judicial ou não, contra a OGX, bem como perseguir a excussão de todo e qualquer bem que lhe tenha sido onerado pela OGX e/ou terceiros em garantia às obrigações sujeitas ou não a esse Plano.

**13.4.   Reconstituição de Direitos.** Verificada a Resolução do Plano e/ou a convolação da Recuperação Judicial em falência, no prazo de supervisão estabelecido no Artigo 61 da Lei de Falências, os Credores terão reconstituídos seus direitos e garantias nas condições originalmente contratadas, deduzidos os valores eventualmente pagos e ressalvados os atos validamente praticados no âmbito da Recuperação Judicial, observado o disposto nos Artigos 61, § 2º e 74, da Lei de Falências.

**13.5.   Quitação.** Exceto na hipótese de Resolução do Plano, o Aumento de Capital Mediante Capitalização de Crédito com a entrega das Ações aos Credores ou ao seu Comissário, conforme aplicável, bem como os pagamentos em dinheiro previstos nas **Cláusulas 5.1.4** e seguintes deste Plano implicarão a quitação plena, irrevogável e irretratável, de todos os Créditos de qualquer tipo e natureza contra a OGPar, OGX Áustria, OGX International, OGX e seus controladores e garantidores, inclusive juros, correção monetária, penalidades, multas e indenizações. Com a ocorrência da quitação, os Credores serão considerados como tendo quitado, liberado e/ou renunciado integralmente todos e quaisquer Créditos, e não mais poderão reclamá-los,

contra a OGX, controladas, subsidiárias, afiliadas e coligadas e outras sociedades pertencentes ao mesmo grupo societário e econômico, e seus diretores, conselheiros, Acionistas, minoritários, sócios, agentes, funcionários, representantes, fiadores, avalistas, garantidores, sucessores e cessionários.

**13.6.   Ratificação de Atos.** A Aprovação do Plano pela Assembleia de Credores representa a concordância e ratificação da OGX, Acionistas, Grupo OGX e dos Credores, inclusive dos Credores Qualificados para Subscrição das Debêntures 3ª Série, de todos os atos praticados e obrigações contraídas pela OGX no curso da Recuperação Judicial, incluindo, mas não se limitando (i) à obtenção e contratação pela OGX e demais empresas do Grupo OGX dos Recursos Novos conforme o disposto no 1º Empréstimo Ponte, no 2º Empréstimo Ponte, no Empréstimo DIP e no Empréstimo Adicional; (ii) aos termos e condições da Escritura de Emissão de Debêntures, do Contrato de Subscrição e do Contrato de Pré-Pagamento de Exportação, conforme aditados de tempos em tempos, inclusive das condições de conversibilidade das Debêntures em Ações; (iii) à contratação e constituição das Garantias Ponte e Garantias DIP em favor dos Novos Financiadores em contrapartida à concessão dos Recursos Novos, nos termos dos Contratos de Garantia Ponte, dos Contratos de Garantia DIP e do Contrato de Compartilhamento, conforme aditados de tempos em tempos; (iv) à alienação dos Ativos Colômbia pela OGX; (v) à celebração do Contrato OSX-1, se aplicável; (vi) à celebração dos Contratos OSX-3, se aplicável; e (vii) aos demais atos e ações necessárias para integral implementação e consumação deste Plano e da Recuperação Judicial, cujos atos ficam expressamente autorizados, validados e ratificados para todos os fins de direito, inclusive e especialmente dos Artigos 66, 74 e 131 da Lei de Falências.

**13.7.   Isenção de Responsabilidades e Renúncia.** Em razão da Aprovação do Plano pela Assembleia de Credores, os Credores expressamente reconhecem e isentam as Partes Isentas de toda e qualquer responsabilidade pelos atos praticados e obrigações contratadas no curso da Recuperação Judicial incluindo a contratação e implementação do Empréstimo DIP nos termos da Escritura de Emissão de Debêntures, do Empréstimo Adicional nos termos do Contrato de Pré-Pagamento de Exportação, e das Garantias DIP e Contrato de Compartilhamento, conferindo às Partes Isentas quitação ampla, rasa, geral, irrevogável e irretratável de todos os direitos e pretensões materiais ou morais porventura decorrentes dos referidos atos a qualquer título. A Aprovação do Plano pela Assembleia de Credores representa igualmente a renúncia expressa e irrevogável dos Credores, inclusive dos Credores Qualificados para Subscrição das Debêntures 3ª Série, a toda e qualquer pretensão, ação ou direito a demandar, perseguir ou reclamar, em Juízo ou fora dele, a qualquer título e sem qualquer reserva ou ressalva, reparação de danos e/ou quaisquer outras ações ou medidas contra as Partes Isentas em relação aos atos praticados e obrigações contraídas pelas Partes Isentas durante a Recuperação Judicial, incluindo a contratação e implementação do 1º Empréstimo Ponte, do 2º Empréstimo Ponte, do Empréstimo

Maria Carmelina
Chefe de Serventia
Matr. 01/9151
DO ESTADO DO RIO DE JANEIRO
CONFERE COM O ORIGINAL
o Escrivão
Maria C. de Oliveir
01/9151

DIP e do Empréstimo Adicional e o procedimento para solução de discussão do *Put Option* mencionado na **Cláusula 11ª**.

**14.    Formalização de Documentos e Outras Providências.** A OGX, OGPar, OGX Áustria e OGX International, e os Acionistas obrigam-se, em caráter irrevogável e irretratável, por força deste Plano, a realizar todos os atos e firmar todos os contratos e outros documentos que, na forma e na substância, sejam necessários ou adequados ao cumprimento e implementação deste Plano e obrigações correlatas.

**15.    Modificação do Plano.** Aditamentos, alterações ou modificações ao Plano podem ser propostas a qualquer tempo após a Homologação Judicial do Plano, desde que tais aditamentos, alterações ou modificações sejam submetidas à votação na Assembleia de Credores, sejam aprovadas pela OGX e que seja atingido o quórum requerido pelos Artigos 45 e 58, caput e §1º, da Lei de Falências.

**15.1.    Efeito Vinculativo das Modificações do Plano.** Os aditamentos, alterações ou modificações ao Plano vincularão a OGX e seus Credores, inclusive os Credores Extraconcursais que a ele aderirem e os Credores dissidentes, e seus respectivos cessionários e sucessores, a partir de sua aprovação pela Assembleia de Credores na forma dos Artigos 45 ou 58 da Lei de Falências.

**16.    Manutenção do Direito de Petição e Voz e Voto em Assembleia de Credores.** Para fins deste Plano e enquanto não verificado o encerramento da Recuperação Judicial, os Credores --- inclusive os que venham a converter seus Créditos em capital na forma do Aumento de Capital Mediante Capitação do Crédito --- preservarão o valor e quantidade de seus Créditos para fins de direito de petição, voz e voto em toda e qualquer Assembleia de Credores posterior à Homologação Judicial do Plano, independentemente da conversão dos Créditos em participação acionária e respectiva quitação.

**17.    Disposições Gerais**

**17.1.    Contratos Existentes e Conflitos.** Na hipótese de conflito entre as disposições deste Plano e as obrigações previstas nos contratos celebrados com qualquer Credor anteriormente à Data do Pedido, este Plano prevalecerá. Na hipótese de conflito entre as disposições deste Plano e da Escritura de Emissão de Debêntures e/ou do Contrato de Subscrição e/ou do Contrato de Pré-Pagamento de Exportação e/ou dos Contratos de Garantia DIP e/ou do Contrato de Compartilhamento, os termos da Escritura de Emissão de Debêntures e/ou do Contrato de Subscrição e/ou do Contrato de Pré-Pagamento de Exportação e/ou dos Contratos de Garantia DIP e/ou do Contrato de Compartilhamento prevalecerão. Na hipótese de conflito entre as disposições deste Plano e dos Planos Partes Relacionadas OGX, os termos deste Plano prevalecerão.

CONFERE COM O ORIGINAL
O Escrivão
*[assinatura]*
01/9151

**17.2.   Aprovação da ANP e CADE.** Todas as disposições deste Plano que dependam de aprovação pela ANP e/ou pelo CADE deverão ser aprovadas pelos referidos órgãos para que surtam seus regulares efeitos. As disposições deste Plano poderão ser adaptadas para cumprir as exigências da ANP e/ou do CADE, aplicando-se, no que for cabível, o disposto na **Cláusula 14ª**.

> 17.2.1.   Em 06.05.2014, foi disponibilizado, no Diário Oficial da União, o despacho n.º 512 da Superintendência-Geral do CADE referente ao Ato de Concentração n.º 08700.002983/2014-47, por meio do qual o CADE aprovou, sem restrições, os termos e condições das operações previstas no presente Plano.

**17.3.   Anexos.** Todos os Anexos a este Plano são a ele incorporados e constituem parte integrante do Plano. Na hipótese de haver qualquer inconsistência entre este Plano e qualquer Anexo, o Plano prevalecerá.

**17.4.   Encerramento da Recuperação Judicial.** O processo de recuperação judicial será encerrado a qualquer tempo após a Homologação Judicial do Plano, a requerimento de OGX, desde que (i) esse encerramento seja aprovado pela maioria simples dos Créditos presentes na Assembleia de Credores; ou (ii) todas as obrigações do Plano que se vencerem até 2 (dois) anos após a Homologação do Plano sejam cumpridas.

**17.5.   Comunicações.** Todas as notificações, requerimentos, pedidos e outras comunicações à OGX, requeridas ou permitidas por este Plano, para serem eficazes, devem ser feitas por escrito e serão consideradas realizadas quando (i) enviadas por correspondência registrada, com aviso de recebimento, ou por *courier*, e efetivamente entregues ou (ii) enviadas por fac-símile, *e-mail* ou outros meios, quando efetivamente entregues e confirmadas por telefone. Todas as comunicações devem ser endereçadas da seguinte forma ou de outra forma que for informada pela OGX, nos autos do processo de recuperação judicial ou diretamente ao Administrador Judicial ou aos Credores:



**OGX Petróleo e Gás S.A. – Em Recuperação Judicial**
Endereço: Rua do Passeio, nº 56, 10º, 11º e 12º andares
Rio de Janeiro, Rio de Janeiro
A/C: Diretor Presidente (Paulo Narcélio Simões Amaral ou seu Substituto)
A/C: Diretor Jurídico (Darwin Corrêa ou seu Substituto)
Telefone: +55 21 3916 - 4600
Fax: +55 21 3916 - 4546
E-mail: rj@ogpar.com.br

**Ao Administrador Judicial** (Deloitte Touche Tohmatsu ou seu Substituto)
Endereço: Av. Presidente Wilson, 231, 22º andar
Rio de Janeiro, Rio de Janeiro
A/C: Luis Vasco Elias (ou seu Substituto)
Telefone: + 55 21 3981 - 0467
E-mail: ajoleoegas@deloitte.com

**Ao Agente Fiduciário das Debêntures** (Oliveira Trust Distribuidora de Títulos e Valores Mobiliários S.A. ou seu Substituto)
Endereço: Avenida das Américas, nº 500, bloco 13, grupo 205, Rio de Janeiro, Estado do Rio de Janeiro
A/C: Sr. Gustavo Dezouzart (ou seu Substituto)
Telefone: + 55 21 3514 - 0000
Fax: +55 21 3514 - 0000
E-mail: gustavo.dezouzart@oliveiratrust.com.br
E-mail: ger3.agente@oliveiratrust.com.br

**17.6.   Meios de Pagamento.** Quando aplicável, os valores devidos aos Credores nos termos deste Plano serão pagos por meio da transferência direta de recursos à conta bancária do respectivo Credor, por meio de documento de ordem de crédito (DOC) ou de transferência eletrônica disponível (TED), sendo que a OGX poderá contratar agente de pagamento para a efetivação de tais pagamentos aos Credores. O comprovante de depósito do valor creditado a cada Credor servirá de prova de quitação do respectivo pagamento.

**17.6.1.**   Para a realização do pagamento mencionado nas **Cláusulas 5.1.4** e **5.1.5.1(ii)** e seguintes, os Credores deverão informar à OGX suas respectivas contas bancárias para esse fim, mediante envio à OGX da Notificação de Opção de Recebimento, nos termos da **Cláusula 17.5**, quando aplicável.

**17.7.   Data do Pagamento.** Na hipótese de qualquer pagamento ou obrigação prevista no Plano estar prevista para ser realizada ou satisfeita em um dia que não seja um Dia Útil, o referido pagamento ou obrigação poderá ser realizado ou satisfeita, conforme o caso, no Dia Útil seguinte.

**17.8.   Encargos Financeiros.** Salvo previsão em contrário no Plano, não incidirão juros e nem correção monetária sobre o valor dos Créditos.

**17.9.   Créditos em Moeda Estrangeira.** Os Créditos em moeda estrangeira serão mantidos na moeda original para todos os fins de direito e serão liquidados, observado o disposto neste Plano, em conformidade com o Artigo 50, §2º da Lei de Falências. Exceto em caso de disposição específica neste Plano, os Créditos em moeda estrangeira serão convertidos em reais com base na cotação de fechamento da taxa de venda de câmbio de Reais por Dólares dos Estados Unidos da América, disponível no SISBACEN – Sistema de Informações do Banco Central do Brasil, transação PTAX-800, opção 5, cotações para a contabilidade, moeda 220, mercado livre, na data imediatamente anterior à data em que a conversão de moeda é necessária, inclusive para fins do Aumento de Capital Mediante Capitalização de Crédito, nos termos deste Plano.

**17.10.   Divisibilidade das Previsões do Plano.** Na hipótese de qualquer termo ou disposição do Plano ser considerada inválida, nula ou ineficaz pelo Juízo da Recuperação, o restante dos termos e disposições do Plano permanecerão válidos e eficazes.

**17.11.   Processos Auxiliares no Exterior.** A OGX poderá ajuizar um processo de falência com base no *Chapter 15* do *Bankruptcy Code* dos Estados Unidos da América, com o objetivo de conferir efeitos ao Plano em território norte-americano, vinculando os Credores ali domiciliados e estabelecidos, bem como outros procedimentos de insolvência, ou de qualquer outra natureza, em outras jurisdições conforme necessário para a implementação deste Plano, incluindo, mas não se limitando, aos processos de insolvência existentes nos termos da legislação austríaca. Os referidos processos não poderão alterar as condições de pagamento e os demais termos deste Plano.

**17.12.   Adesão dos Acionistas, OGX Áustria e OGX International.** Os Acionistas, a OGX Áustria e a OGX International subscrevem o presente Plano, assumindo e concordando com tudo aquilo que se refira às suas respectivas esferas jurídicas, bem como obrigando-se a fazer e praticar todos os atos necessários ou úteis e a assinar todos e quaisquer documentos necessários ao fiel cumprimento das obrigações assumidas neste Plano ou para sua implementação.

**17.13.  Lei Aplicável.** Os direitos, deveres e obrigações decorrentes deste Plano deverão ser regidos, interpretados e executados de acordo com as leis vigentes na República Federativa do Brasil.

**17.14.  Eleição de Foro.** Todas as controvérsias ou disputas que surgirem ou estiverem relacionadas a este Plano serão resolvidas (i) pelo Juízo da Recuperação, até o encerramento do processo de recuperação judicial; e (ii) pelos juízos competentes no Brasil ou no exterior, conforme estabelecido nos contratos originais firmados entre OGX e os respectivos Credores, após o encerramento do processo de recuperação judicial.

O Plano é firmado pelos representantes legais devidamente constituídos da OGX, da OGPar e dos Acionistas. Os Laudos econômico-financeiro e de avaliação dos bens e ativos (**Anexo 1.1.92**) subscritos por empresas especializadas foram apresentados ao Juízo da Recuperação, na forma da Lei de Falências, em 22 de maio de 2014 e são reapresentados nesta data, fazendo parte integrante deste Plano.

Rio de Janeiro, 22 de maio de 2014.

*[Segue página de assinaturas do Plano de Recuperação Judicial da OGX]*



*[Página de assinaturas do Plano de Recuperação Judicial da OGX]*

**OGX Petróleo e Gás S.A. – Em Recuperação Judicial**

**Óleo e Gás Participações S.A. – Em Recuperação Judicial**, atual denominação de OGX
Petróleo e Gás Participações S.A.

**OGX Áustria GMBH – Em Recuperação Judicial**

**OGX International GMBH – Em Recuperação Judicial**

**Centennial Asset Mining Fund LLC.**

**Centennial Asset Brazilian Equity Fund, LLC.**

**Eike Fuhrken Batista**

Exhibit 6

## JUDICIAL REORGANIZATION PLAN OF
## OGX AUSTRIA GMBH – UNDER JUDICIAL REORGANIZATION

**OGX Austria GmbH – Under Judicial Reorganization** ("OGX Austria"), a limited liability company enrolled with the National Corporate Taxpayers' Register (CNPJ) under No. 16.885.474/0001-06, organized under the laws of Austria, registered with the Vienna Commercial Court under No. FN 335512 A, and headquarters at Schwarzenbergplatz 5/Top nº 2/3, 1030, in the City of Vienna, hereby files, in the records of the judicial reorganization proceedings registered under No. 0377620-56.2013.8.19.0001, pending before the 4th Corporate Court of the Judicial District of Rio de Janeiro, State of Rio de Janeiro, the following judicial reorganization plan, pursuant to the provisions of Article 53 of Law No. 11101/2005.

1.      **Definitions and Rules of Construction**

**1.1. Definitions**. The terms and expressions used in capital letters, whenever mentioned in the Plan, shall have the meanings assigned to them in this **Clause 1**. Such defined terms will be used, as appropriate, in singular or plural, masculine or feminine, without thereby losing the meaning assigned to them.

   **1.1.1.**   "1st Series of DIP Loan": The first series of loan corresponding to the DIP Loan, according to 1st Series Debentures, in the amount of **R$ 299,200,000.00** (two hundred and ninety nine million, two hundred thousand Brazilian reais), monetarily adjusted by the variation of the sale exchange rate of Brazilian reais into U.S. dollars, according to the Debentures Indenture, which on the Issue Date was equivalent to **US$ 125,000,000.00** (one hundred and twenty five million U.S. dollars), according to **Clause 4.3** et. seq. of this Plan.

   **1.1.2.**   "1st Bridge Loan": A very short-term loan taken by OGPar, in the amount of **US$15,000,000.00** (fifteen million U.S. dollars ), as set forth in the loan agreement entered into on December 26, 2013, which was fully paid on March 14, 2014.

   **1.1.3.**   "11th Round": The 11th Round of Competitive Biddings of areas for exploration and production of oil and natural gas in sedimentary basins of Barreirinhas, Ceará, Espírito Santo, Foz do Amazonas, Pará-

Maranhão, Parnaíba, Pernambuco-Paraíba, Potiguar, Recôncavo, Sergipe-Alagoas, and Tucano, held by ANP, on May 14, 2013.

**1.1.4.** "2nd Series of DIP Loan": The second series of the loan corresponding to the DIP Loan, according to the terms of the 2nd Series Debentures, in the amount of up to **R$ 215,424,000.00** (two hundred and fifteen million, four hundred and twenty four thousand Brazilian reais), monetarily adjusted by the variation of the sale exchange rate of Brazilian reais into U.S. dollars until the payment date of the 2nd Series Debentures, according to the terms of the Debentures Indenture,

which on the Issue Date corresponded to up to **US$ 90,000,000.00** (ninety million U.S. dollars). The final amount of the 2nd Series Debentures to be subscribed by Backstop – New Lenders (whether they are Creditors or not), shall be equivalent to the unsubscribed portion of the 3rd Series Debentures, observing the provisions of this Plan and the Debentures Indenture. The 2nd Series Debentures may be fully cancelled, if the 3rd Series Debentures are fully subscribed, under the terms of the Debentures Indenture.

**1.1.5.** "2nd Bridge Loan": A very short-term DIP loan taken by OGX, in the amount of up to **US$ 50,000,000.00** (fifty million U.S. dollars), according to the Export Prepayment Agreement entered into with Credit Suisse Brazil (Bahamas), in the capacity of administrative agent, on January 13, 2014, which was fully paid on March 13, 2014.

**1.1.6.** "3rd Series of DIP Loan": The third series of loan corresponding to the DIP Loan, according to 3rd Series Debentures, in the amount of up to **R$ 215,424,000.00** (two hundred and fifteen million, four hundred and twenty four thousand Brazilian reais), monetarily adjusted by the variation of the sale exchange rate of Brazilian reais into U.S. dollars until the payment date of the 3rd Series Debentures, according to the terms of the Debentures Indenture. The final amount of the 3rd Series Debentures to be subscribed by Bankruptcy Creditors and/or First Priority Creditors (which expressly adhere to the Plan) may vary according to the demand for the 3rd Series Debentures. The 3rd Series Debentures may be cancelled due to the absence of Creditors interested in the subscription and payment, as described in **Clause 4.7** of the OGX Plan, under the terms of the Debentures Indenture.

**1.1.7.** "Shareholders": Eike Batista and all other direct and indirect shareholders of OGX under control of Eike Batista, including, but not limited to, OGPar, Centennial Asset Mining Fund LLC., and Centennial Asset Brazilian Equity Fund, LLC.

**1.1.8.** "Shares": Common shares issued by OGX, whether existing on the date hereof, or to be issued pursuant to the provisions of this Plan and of the OGX Plan.

**1.1.9.** "Judicial Administrator": Deloitte Touche Tohmatsu Consultores Ltda., pursuant to appointment by the Reorganization Court, pursuant to

Chapter II, Section III of the Bankruptcy Law, or its substitute from time to time.

**1.1.10.** "Debentures Trustee": Oliveira Trust Distribuidora de Títulos e Valores Mobiliários S.A., as defined by the Debentures Indenture.

**1.1.11.** "Bond Trustee": Deutsche Bank Trust Company Americas, trustee under the terms of the Bond Indenture, as well as the companies under its control, whether directly or indirectly, its directors, managers and employees, or any other agent that may be appointed to replace Deutsche Bank Trust Company Americas, under the terms of the Bond Indenture.

**1.1.12.** "ANP": Brazilian National Agency of Petroleum, Natural Gas and Biofuels.

**1.1.13.** "Approval of the Plan": The approval of the Plan at the Meeting of Creditors. For the purposes of this Plan, the Approval of the Plan is deemed to occur on the date of the Meeting of Creditors that votes and approves the Plan, even if the Plan is not approved by all classes of Creditors pursuant to Articles 45 or 58 of the Bankruptcy Law.

**1.1.14.** "Meeting of Creditors": Any General Meeting of Creditors held pursuant to Chapter II, Section IV of the Bankruptcy Law.

**1.1.15.** "OGX Capital Increase Through Capitalization of Credits": Capital increase of OGX, subscribed to by Bankruptcy Creditors and by First Priority Creditors (the latter if they have expressly adhered to this Plan, as applicable), paid in by capitalization of Bankruptcy Credits and the First Priority Credits (held by First Priority Creditors adhering to the Plan), pursuant to Art. 171, paragraph 2 of the Corporations Act and other applicable legal provisions. The Shares to be issued in OGX Capital Increase Through Capitalization of Credits will be delivered to Creditors domiciled in the United States of America, pursuant to and observing the terms of the non-exclusive exemption from registration set forth by Section 3(a)(10) of the Securities Act of 1933.

**1.1.16.** "OGX Capital Increase Through Conversion of Debentures": OGX's capital increase, subscribed by the holders of Debentures, paid in through the conversion of the Debentures into Shares, as set forth in articles 57 and 171, paragraph 3 of the Corporations Act and other applicable legal provisions, subject to the provisions set forth in the Debentures Indenture.

**1.1.17.** "Backstop – New Lenders": The New Lenders subscribing the Subscription Agreement (or their successors and assignees, for any reason, whether they are Bankruptcy Creditors or not) that, after observing and complying with certain terms and conditions precedent established in the Subscription Agreement, undertook the obligation of subscribing (i) the 1st Series Debentures; and (ii) the 2nd Series Debentures in an amount equivalent to unsubscribed 3rd Series

Debentures, always limited to the maximum amount in national currency equivalent to **US\$ 90,000,000.00** (ninety million U.S. dollars) on the date of the 2nd Series Debentures subscription.

**1.1.18.** "Bondholders": Creditors holding Bonds 2018 and Bonds 2022, whether or not represented by the Bond Trustee.

**1.1.19.** "Supporting Bondholders": Holders of Bonds 2018 and/or Bonds 2022 that jointly hold the majority of the Credits represented by Bonds 2018 and/or Bonds 2022, with which OGX Group has entered into the Plan Support Agreement or that has become a party to the Plan Support Agreement, from time to time. For the purposes of this Clause, Supporting Bondholders are not considered to be those Bondholders that originally signed the Plan Support Agreement and subsequently sold or will sell to third parties all or part of the Bonds 2018 and/or Bonds 2022 held by them, provided that such sale occurs under the terms of the Plan Support Agreement.

**1.1.20.** "Bonds 2018": Bonds in the aggregate amount of US\$ 2,563,000,000.00 (two billion, five hundred sixty-three million U.S. dollars), maturing in 2018, issued by OGX Austria and fully guaranteed by OGPar and OGX, according to the respective Bond Indenture.

**1.1.21.** "Bonds 2022": Bonds in the aggregate amount of US\$ 1,063,000,000.00 (one billion, sixty-three million U.S. dollars), maturing in 2022, issued by OGX Austria and fully guaranteed by OGPar and OGX, according to the respective Bond Indenture.

**1.1.22.** "CADE": Administrative Council for Economic Defense.

**1.1.23.** "CETIP": means CETIP S.A. – Mercados Organizados.

**1.1.24.** "Subscription Notice": Notice to be sent by OGX to the Creditors Qualified for the Subscription of 3rd Series Debentures, whereby the conditions and procedures necessary to implement the subscription and payment of the 3rd Series Debentures as set forth in **Clause 4.6.3** of the OGX Plan will be informed.

**1.1.25.** "Conditions Precedent for the OGX Capital Increase Through Capitalization of Credits": Minimum conditions precedent for the implementation of the OGX Capital Increase Through Capitalization of Credits, as set forth in **Clause 5.1.3.1** of the OGX Plan.

**1.1.26.** "Conditions Precedent for OGX Capital Increase Through Conversion of Debentures": These are minimum conditions precedent to implement the operation of OGX Capital Increase Through Conversion of Debentures, as established in **Clause 4.8** of the OGX Plan, without prejudice to the conditions precedent for conversion, as set forth in the Debentures Indenture and in the Subscription Agreement.

**1.1.27.** "<u>Collateral Sharing Agreement</u>": This is the Sharing Agreement of Guarantees and Rights among Creditors entered into on April 9, 2014, by Oliveira Trust Distribuidora de Títulos e Valores Mobiliários S.A., Wilmington Trust, National Association, Oliveira Trust Servicer S.A. and OGX, as intervening and consenting party, as amended from time to time, ( **Exhibit 1.1.33** of the OGX Plan).

**1.1.28.** "<u>DIP Guarantee Agreements – 1st Series</u>": The instruments below, as amended from time to time: (i) Private Instrument of Fiduciary Sale of Oil and Natural Gas as Guarantee; (ii) Private Instrument of Fiduciary Sale of Equipment as Guarantee; (iii) Private Instrument of Fiduciary Assignment of Credit Rights as Guarantee (General); (iv) Private Instrument of Fiduciary Assignment of Credit Rights and Credit Securities as Guarantee (Intercompany and Product Sale); (v) Private Instrument of Fiduciary Assignment of Credit Rights as Guarantee (Parnaíba); (vi) Private Instrument of Fiduciary Assignment of Credit Rights as Guarantee (Tax Credits); (vii) Private Instrument of Pledge of Rights on the Concession Agreement and Other Covenants (BS-4); (viii) Deposit Agreement as Guarantee and Other Covenants; (ix) Deed of Pledge of Parnaíba MPX Receivables;

(x) Deed of Pledge of Parnaíba Receivables; (xi) Deed of Pledge of Shares of Parnaíba B.V.; and (xii) U.S. Security Agreement, (**Exhibit 1.1.35** of the OGX Plan).

**1.1.29.** "<u>DIP Guarantee Agreements – 2nd and 3rd Series</u>": Besides the DIP Guarantee Agreements – 1st Series, these include the following instruments that may be entered into for the: (i) fiduciary sale of OGX shares; (ii) fiduciary sale of shares issued by OGPar; (iii) pledge of rights on concession relating to the concession agreements of blocks BM-C-39 and BM-C-40 of Tubarão Martelo and the concession agreements of the 11th Round; (iv) pledge of shares of OGX International GmbH; (v) pledge of shares of OGX Austria; (vi) Pledge of Shares of OGX Netherlands B.V.; (vii) pledge of shares of OGX Netherlands Holding B.V.; provided that certain conditions of the Debentures Indenture be verified; (viii) any instrument of guarantee on the funds eventually obtained from the sale of the assets arising from the agreements indicated in items (i) to (vii) above; (ix) any other

guarantees to be created under the terms of the DIP Guarantee Agreements – 1st Series; and (x) any other guarantee agreement needed for the perfection or protection of the guarantees mentioned in items (i) to (ix) above.

**1.1.30.** "<u>DIP Guarantee Agreements</u>": These are the DIP Guarantee Agreements – 1st Series and DIP Guarantee Agreements – 2nd and 3rd Series as full guarantee of the DIP Loan and Additional Loan, subject to the Collateral Sharing Agreement.

**1.1.31.** "<u>Guarantee Agreements – 2nd Bridge Loan</u>": These are the following instruments in guarantee of the 2nd Bridge Loan, which was fully paid on March 13, 2014: (i) Private Instrument of Fiduciary Assignment of Credit Rights as Guarantee nº CSBRA20140100084; (ii) Private Instrument of Fiduciary Assignment of Credit Rights as Guarantee Nº

CSBRA20140100085; (iii) Private Instrument of Fiduciary Assignment of Credit Rights as Guarantee $N^o$ CSBRA20140100086; (iv) Private Instrument of Pledge of Rights on the Concession Agreement and Other Covenants $N^o$ CSBRA20140100087; (v) Private Instrument of Pledge of Oil and Natural Gas as Guarantee $N^o$ CSBRA20140100088; (vi) Private Instrument of Fiduciary Sale of Equipment as Guarantee $N^o$ CSBRA20140100083; (vii) Deed of Pledge of Parnaíba Receivables; (viii) Deed of Pledge of Parnaíba Shares; (ix) Deed of Pledge of Parnaíba MPX Receivables; and (x) Security Agreement $n^o$ CSBBR20140100002. The Guarantee Agreements - 2nd Bridge Loan have already been resolved with the release of corresponding guarantees, due to the payment of the 2nd Bridge Loan on March 13, 2014.

**1.1.32.** "Subscription Agreement": Senior Secured Superpriority Post-Petition Debentures Subscription Agreement entered into among OGX, OGPar, Backstop – New Lenders, Wilmington Trust, National Association and other parties on February 7, 2014, as amended from time to time (**Exhibit 1.1.39** of the OGX Plan).

**1.1.33.** "Export Prepayment Agreement": This is the Export Prepayment Agreement, entered into on April 9, 2014 by OGX, OGPar, OGX Austria, OGX International, OGX Netherlands B.V., OGX Netherlands Holding B.V., Parnaíba B.V., Deutsche Bank A.G., London Branch, Wilmington Trust, National Association, Oliveira Trust Distribuidora de Títulos e Valores Mobiliários S.A. and Oliveira Trust Servicer S.A. (**Exhibit 1.1.40** of the OGX Plan).

**1.1.34.** "Credits": Credits and obligations, whether materialized or contingent, liquid or illiquid, existing on the Filing Date, or which generating fact is previous or simultaneous to the Filing Date, whether or not subject to the effects of Plan, including OSX Group Credits due by OGX Group. When applicable, Credits shall also be interpreted as including the credits and obligations, whether materialized or contingent, liquid or illiquid, existing on the Filing Date, or which generating fact is previous or simultaneous to the Filing Date, whether or not subject to the effects of Plan, and that may be due by OGPar and/or OGX Austria and/or OGX International. For the avoidance of doubt, the credits resulting from DIP Loan and the Additional Loan are not included in above Credits for any purpose, not being subject to the terms, effects, and conditions of this Plan in any aspect.

**1.1.35.** "Secured Credits": Bankruptcy Credits held by Secured Creditors.

**1.1.36.** "Bankruptcy Credits": Credits held by the Bankruptcy Creditors. Where applicable, Bankruptcy Credits shall also be construed as the credits held by the bankruptcy creditors of OGPar and/or OGX and/or OGX International which shall be novated and paid as set forth in OGX Related Parties Plans.

**1.1.37.** "First Priority Credits": Credits held by First Priority Creditors on the Filing Date. When applicable, First Priority Creditors will also be interpreted as the credits held by First Priority Creditors of OGPar and/or OGX Austria and/or OGX International. For the avoidance of doubt, the First Priority Credits above are not to be confused with the first priority credits resulting from operations contracted after the Filing Date, including the DIP Loan and the Additional Loan.

**1.1.38.** " OSX Group Credits": Credits held by companies in the OSX Group and subject to formalized transaction between OGX Group and OSX Group.

**1.1.39.** "OGX Austria Credits": Credits held by OGX Austria against OGX, as well as Credits arising from the OGX Austria PPE Credit and the OGX Austria Debenture Credit.

**1.1.40.** "OGX Austria PPE Credit": Credits arising from the Export Prepayment Agreement entered into on October 4, 2012 between OGX and OGX Austria.

**1.1.41.** "OGX Austria Debenture Credit": Credit deriving from the Debentures related to the 1st Public Issuance of Simple Debentures, Non-Convertible into Shares, Unsecured in one Single Series of OGX issued on September 21, 2012, acquired by OGX Austria, as amended.

**1.1.42.** "Unsecured Credits": Bankruptcy Credits held by Unsecured Creditors.

**1.1.43.** "OGX Austria Subrogation Credits": OGX Austria Subrogation Credits – Bonds 2018 and the OGX Austria Subrogation Credits – Bonds 2022.

**1.1.44.** "OGX Austria Subrogation Credits – Bonds 2018": This is the credit to be held by OGX against OGX Austria due to subrogation operated in favor of OGX for the payment of Bankruptcy Credits of Bondholders holding Bonds 2018, upon the delivery of Shares within the scope of the operation of OGX Capital Increase Through Capitalization of Credits, according to **Clause 5.1.3** and following Clauses of the OGX Plan. For the avoidance of doubt, the OGX Austria Subrogation Credits – Bonds 2018 will survive any eventual cancellation of Bonds, after delivery of the Shares to the Bondholders under the terms of the OGX Plan, and shall remain valid, clear, certain and enforceable according to this Plan and OGX Plan.

**1.1.45.** "OGX Austria Subrogation Credits – Bonds 2022": This is the credit to be held by OGX against OGX Austria due to subrogation operated in favor of OGX for the payment of Bankruptcy Credits of Bondholders holding Bonds 2022, upon the delivery of Shares within the scope of the operation of OGX Capital Increase Through Capitalization of Credits, according to Section 5.1.3 and following of

the OGX Plan. For the avoidance of doubt, the OGX Austria Subrogation Credits – Bonds 2022 will survive any eventual cancellation of Bonds, after delivery of the Shares to the Bondholders under the terms of the OGX Plan, and shall remain valid, clear, certain and enforceable according to this Plan and OGX Plan.

**1.1.46.** "Labor Credits": Credits and rights held by Labor Creditors.

**1.1.47.** "Creditors": Individuals or legal entities holding Credits, whether included or not in the List of Creditors. Where applicable, Creditors shall also be construed as individuals or legal entities holding Credits against the OGX Group, whether included or not in the List of Creditors of OGPar and/or OGX and/or OGX International.

**1.1.48.** "Secured Creditors": Bankruptcy Creditors whose Credits are secured by the provision of security (such as a pledge or a mortgage), up to the value of the respective asset, pursuant to Article 41, II, of the Bankruptcy Law.

**1.1.49.** "Bankruptcy Creditors": Creditors whose Credits and rights can be changed by the Plan, as set forth in the Bankruptcy Law. These Creditors are divided, for the purposes of voting under the Plan or election of the Creditor Committee in a Meeting of Creditors, in three classes (Labor Creditors, Secured Creditors and Unsecured Creditors). Where applicable, Bankruptcy Creditors shall also be construed as the Creditors of OGX Group, whose credits and rights can be changed by the OGX Related Parties Plans, as set forth in the Bankruptcy Law. These Creditors are divided, for the purposes of voting under the OGX Related Parties Plans or election of the Creditor Committee in a Meeting of Creditors of each of the companies comprising the OGX Group, in three classes (Labor Creditors, Secured Creditors and Unsecured Creditors).

**1.1.50.** "First Priority Creditors": For the purposes of this Plan, the Creditors of OGX Austria and of the other companies of the OGX Group, when applicable (i) where its right to credit arises from events subsequent to the Filing Date, but results from an instrument executed before the Filing Date, subject in this case to the condition that the corresponding credit does not qualify as first priority credit for the purposes of Articles 67 and 84, Sections V and 149 of Bankruptcy Law, in case of intervening bankruptcy of OGX Austria or any other company of the OGX group being decreed; or (ii) which right to appropriate assets or execute its rights or guarantees resulting from the agreements entered into before or after the Filing Date cannot be changed by the Plan, according to Article 49, Paragraphs 3 and 4 of Bankruptcy Law.

**1.1.51.** "Financial Creditors": Unsecured Creditors that are holders of Credits resulting from financial or bank operations, including but not limited to Bondholders.

**1.1.52.** "Creditors Qualified for the Subscription of 3rd Series Debentures": These are the Creditors contained in the List of Creditors current on the date of Meeting of Creditors that deliberates about the Plan and/or OGX Related Parties Plans that have (i) submitted to OGX, to the Debentures Trustee and to the Judicial Administrator, within a maximum period of five (5) Business Days from Approval of the Plan, the Notification of Interest in Subscribing 3rd Series Debentures, subject to the conditions set forth in **Clause 4.6.2** of the OGX Plan; and (ii) when Creditors non-resident in Brazil have complied with the arrangements described in **Exhibit 4.6** of the OGX Plan. For the purposes of this Plan, Creditors Qualified for the Subscription of 3rd Series Debentures are considered to be all Bondholders that adopted the procedure to individualize their right to participation, petition, voice and vote, in the Judicial Reorganization and in any Meeting of Creditors, as per the procedure established in the Bondholders Notice, even when their respective Credits are not individually listed in the list of Creditors in force on the date of the Meeting of Creditors that deliberates about the Plan and/or the Plan of the OGX Related Parties and are listed only on the name of Bond Trustee. OGX shall not be liable

for non-residing Creditors that are not able to subscribe, pay or receive 3rd Series Debentures, due to non-compliance with legal requirements in force in the period established for the formalization of the respective investment.

**1.1.53.** "Unsecured Creditors": Bankruptcy Creditors holding unsecured credits, as contained in Articles 41, item III, and 83, item VI, both of the Bankruptcy Law.

**1.1.54.** "Labor Creditors": Bankruptcy Creditors holding credits arising from labor legislation or resulting from occupational accidents, in accordance with Article 41, I of the Bankruptcy Law.

**1.1.55.** "CVM": Brazilian Securities and Exchange Commission.

**1.1.56.** "Issue Date": For purposes of this Plan, February 12, 2014, date when the 1st Series Debentures, the 2nd Series Debentures and the 3rd Series Debentures were issued, under the terms of the Debentures Indenture.

**1.1.57.** "Filing Date": October 30, 2013, date when the petition for judicial reorganization of OGX Group was filed.

**1.1.58.** "Debentures": Debentures of the 1st Series Debentures, the 2nd Series Debentures, and the 3rd Series Debentures, which will be subscribed and paid pursuant to the terms and conditions set forth in this Plan, in the OGX Plan and in the Debentures Indenture.

**1.1.59.** "1st Series Debentures": Debentures relating to the 1st Series of DIP Loan, which have been issued in the form of the Debentures Indenture and already subscribed and paid-in by the Backstop – New Lenders.

**9/35**

**1.1.60.** "2nd Series Debentures": Debentures relating to the 2nd Series of DIP Loan, already issued and that will be subscribed and paid-in by the Backstop – New Lenders (whether they are Creditors or not), in the form of the Debentures Indenture, and provided that the conditions precedent of this Plan and of the Subscription Agreement are observed.

**1.1.61.** "3rd Series Debentures": These are the Debentures relating to the 3rd Series of DIP Loan, already issued, and that will be subscribed, and paid-in by the Creditors according to the Debentures Indenture and this Plan.

**1.1.62.** "Business Day": For the purposes hereof, Business Day shall mean any day, other than Saturday, Sunday or municipal holiday in the Cities of São Paulo, State of São Paulo, or Rio de Janeiro, State of Rio de Janeiro, or which, for any reason whatsoever, is not a banking business day in the City of São Paulo, State of São Paulo, or in the City of Rio de Janeiro, State of Rio de Janeiro, except for the cases where payments are made through the CETIP, in which event Business Day shall mean any day, other than Saturday, Sunday or national holiday.

**1.1.63.** "Bondholders Notice": A notice made available on the Electronic Official Gazette of the Court of Justice of the State of Rio de Janeiro on May 2, 2014 containing the rules established by the Reorganization Court about the segregation and individualization of right of petition, voice and vote of Bondholders in the Judicial Reorganization and in any Meeting of Creditors of OGX Group.

**1.1.64.** "Material Adverse Effect": Means any material adverse effect on (a) the business, condition (financial, economic, operating or other), prospects or results of activities of OGX Austria and OGX, the Shareholders, the Guarantors and/or their respective subsidiaries or affiliates, including any material adverse effect on the expected production capacity of the Tubarão Martelo oil field; (b) the capacity of OGX Austria and/or any of the Guarantors to implement, consummate and/or perform (including the actual non-compliance of) any obligations hereunder, under the Debentures Indenture, the Additional Loan, under the DIP Guarantee Agreements and/or the Subscription Agreement, (c) the legality, validity, binding effect or enforceability against OGX and/or any of the Guarantors hereof, of the Debentures Indenture, of the Additional Loan, of the DIP Guarantee Agreements and/or the Subscription Agreement; (d) the rights of any holder of Debentures under the Debentures Indenture, the New Creditors of the Additional Loan and/or the DIP Guarantee Agreements; and/or the DIP Guarantees.

**1.1.65.** "Eike Batista": Eike Fuhrken Batista, a Brazilian citizen, legally separated, metallurgical engineer, resident and domiciled at Praia do Flamengo, No. 154, 10th floor, Rio de Janeiro - State of Rio de Janeiro, enrolled with the Individual Taxpayers' Register (CPF) under No. 664.976.807-30.

**1.1.66.** "Additional Loan": This is the super-priority DIP loan made by OGX, in the amount of seventy three million, one hundred and seventy thousand, seven hundred and thirty one U.S. dollars and seventy one cents (US$ 73,170,731.71), according to the terms of the Export Prepayment Agreement, which will have the treatment provided for in Articles 67, 84 and 149 of Bankruptcy Law and other legal provisions applicable. For the avoidance of doubt, the Additional Loan corresponds to the Supplementary Financing set out in the Debentures Indenture, Collateral Sharing Agreement and DIP Guarantee Agreements.

**1.1.67.** "DIP Loan": Super-priority DIP loan already granted and to be granted by the Backstop – New Lenders and the New Lenders, through the subscription of Debentures under the terms of the Debentures Indenture, which will be addressed as set forth in articles 67, 84 and 149 of the Bankruptcy Law and other applicable legal provisions, as set forth in **Clause 4.3** et. seq. of the OGX Plan and of the Debentures Indenture.

**1.1.68.** "Bridge Loans": The 1st Bridge Loan and the 2nd Bridge Loan together.

**1.1.69.** "Debentures Indenture": The Private Indenture of the Third (3rd) Issue of Simple Debentures, Non-Convertible into Shares, to be transformed into Convertible into Shares which is Guaranteed, with Additional Personal Guarantee, in three Series, of OGX Petróleo e Gás S.A., entered into between OGX, the Debentures Trustee, OGPar and others, as amended from time to time. The Third Amendment of the Debentures Indenture for the inclusion of the 3rd Series Debentures and other specific provisions shall reflect substantially the terms and conditions of the draft included in **Exhibit 1.1.80** of the OGX Plan.

**1.1.70.** "Bond Indentures": means the indenture of the Bonds 2018 and Bonds 2022 respectively called (a) "Indenture Dated as of June 3, 2011, U.S.$ 2,563,000,000 8.500% Senior Notes Due 2018"; and (b) "Indenture Dated as of March 30, 2012, U.S.$ 1,063,000,000 8.375% Senior Notes Due 2022", issued by OGX Austria, with guarantee by OGPar and OGX.

**1.1.71.** "DIP Guarantees": Package of guarantees granted by OGX Group to the New Lenders of the DIP Loan and the Additional Loan, as described in **Clause 4.3.5** of the OGX Plan and as set forth in the DIP Guarantee Agreements, the Debentures Indenture and the Collateral Sharing Agreement.

**1.1.72.** "Bridge Guarantees": This is the package of guarantees granted by the OGX Group to the New Lenders of the 2nd Bridge Loan, according to the Guarantee Agreements – 2nd Bridge Loan, which were fully released with the performance of the 2nd Bridge Loan.

**1.1.73.** "Guarantors": The following companies of OGX Group, which provided to the New Lenders all or some of the Bridge Guarantees

and/or DIP Guarantees, as applicable, in consideration for the granting of the New Resources: OGPar, OGX Austria, OGX International GmbH, OGX Netherlands B.V. and OGX Netherlands Holding B.V. and Parnaíba B.V.

**1.1.74.** "OGX Group": Companies that are directly or indirectly controlled by OGPar, including, but not limited to, OGX, OGX Austria, OGX International and their respective subsidiaries and affiliates.

**1.1.75.** "OSX Group": Companies that are directly or indirectly controlled by

OSX Brasil S.A. - Under Judicial Reorganization, including, but not limited to, OSX Serviços Operacionais Ltda. – Under Judicial Reorganization, OSX Construção Naval S.A. – Under Judicial Reorganization, OSX GmbH, OSX Leasing Group B.V., OSX1 Leasing B.V., OSX2 Leasing B.V., OSX WHP 1&2 Leasing B.V., OSX2 Holding B.V., OSX3 Holdco B.V., OSX3 Holding B.V. and OSX3 Leasing B.V.

**1.1.76.** "Confirmation Order": means the court order given by the Reorganization Court granting Judicial Reorganization, pursuant to Article 58, head provision and/or paragraph 1, Bankruptcy Law. For the purposes of this Plan, the Confirmation Order is deemed to take place on the date of publication, in the electronic official court gazette of the State of Rio de Janeiro, of the decision granting the Judicial Reorganization.

**1.1.77.** "Merger": Transaction for the merger of OGPar by OGX, as described in **Clause 8** and following of this Plan.

**1.1.78.** "Reorganization Court": means the Court of the 4th Corporate Court of the Judicial District of Rio de Janeiro, State of Rio de Janeiro.

**1.1.79.** "Reports": Means the economic and financial reports that show the economic viability of OGX Austria, as well as the evaluation of the assets of OGX Austria and certify that the prospect of recovery of the Creditors in this Plan is better than the prospect of recovery in case of bankruptcy of OGX Austria, pursuant to Article 53, of the Bankruptcy Law (**Exhibit 1.1.79**).

**1.1.80.** "Corporations Act": Law Nº. 6404, of December 15, 1976.

**1.1.81.** "Bankruptcy Law": Law Nº. 11101, of February 9, 2005.

**1.1.82.** "List of Creditors": This is the list of creditors provided by the Judicial Administrator, and published on May 02, 2014, respecting and observing eventual supervening decisions, regarding the amount, classification and nature of the Credits, issued by the Reorganization Court until the date of the OGX Capital Increase Through Capitalization of Credits; and, subsequently, the list of creditors consolidated in the General Schedule of Creditors.

**1.1.83.** "Notification of Interest in Subscribing 3rd Series Debentures": It is the notification to be sent by the Creditors Qualified for the

Subscription of 3rd Series Debentures, with copy to OGX Austria to the Debentures Trustee and to the Judicial Administrator (a) expressing their intention, as well as their irrevocable and irreducible commitment to fully subscribe their portion of the 3rd Series Debentures, corresponding to the proportional amount of their Credit, by way of direct investment (in case of Creditors not residing in Brazil); (b) indicating their qualification and the contact data, including the physical and electronic address for receipt of the Subscription Notice addressed in this Plan; (c) in case of legal entities, copy of the By-laws and/or Articles of Association and other documents attesting to the powers of the signatory of the Notification of Interest in Subscribing 3rd Series Debentures to represent and bind the Creditor; and (d) for a non-resident Creditor, the following information and proof, required for registration of the investment before the Brazilian Central Bank: (i) proof of registry with the Brazilian Federal Revenue Office (with the Corporate Taxpayers Register– CNPJ or with the Individual Taxpayers Register – CPF, as the case may be); and (ii) proof of enrollment with the Brazilian Central Bank (Individuals and Legal Entities Register - International Capitals – CADEMP (as per instructions contained in the "Cademp – Declarant's Manual", available at www.bcb.gov.br » *Câmbio e Capitais Estrangeiros » Manuais*"). Such information and documents shall be made available to OGX within the term established in **Exhibit 4.6** of the OGX Plan. Upon forwarding the Notification of Interest in Subscribing 3rd Series Debentures, the Creditors Qualified for the Subscription of 3rd Series Debentures represent and warrant, for all purposes of the law, on an irrevocable and irreducible basis, that (i) they are not Related Parties; and (ii) they are aware that the acquisition of and investment in the Debentures involves relevant risks, especially considering the fact that OGX is under Judicial Reorganization and that the payment of the Debentures is an uncertain event, and that they are capable of individually or through assistants especially contracted for such purpose, analyze the convenience and opportunity of this subscription, in the light of their own financial capacity.

1.1.84.   "Novo Mercado": Means the listing segment of BM&FBOVESPA – Bolsa de Valores, Mercadorias e Futuros ("BM&FBOVESPA") for the trading of shares issued by companies that voluntarily commit to the adoption of corporate governance practices and additional disclosure of information in relation to what is required by law.

1.1.85.   "New Lenders": Are the Bankruptcy Creditors and/or First Priority Creditors and/or third parties, including intermediary banks, financing agents, among others, that already granted or that may grant New Resources to OGX, on the terms of this Plan and of the OGX Plan, upon subscription of the 1st Bridge Loan, 2nd Bridge Loan, DIP Loan, and/or the Additional Loan as set forth in **Clause 4** and following of this Plan and the OGX Plan. The New Lenders are and shall be, for all legal purposes, holders of First Priority Credits and paid with absolute precedence over other Credits, including First Priority Credits in the event of subsequent bankruptcy of OGX

Austria, of OGX or any company of Group OGX, under Articles 67, 84 and 149 of the Bankruptcy Law and other applicable legal provisions.

**1.1.86.** "OGPar": Óleo e Gás Participações S.A. – Under Judicial Reorganization, the current name of OGX Petróleo e Gás Participações S.A., a corporation with principal place of business in the City of Rio de Janeiro, State of Rio de Janeiro, at Rua do Passeio, No. 56, 10th, 11th and 12th floors, Centro, enrolled with CNPJ/MF under No. 07.957.093/0001-96, part of the OGX Group for the purposes of this Plan.

**1.1.87.** "OGX": OGX Petróleo e Gás S.A. – Under Judicial Reorganization, a corporation enrolled in the CNPJ/MF under No. 08.926.302/0001-05, with principal place of business in Praça Mahatma Gandhi, No. 14, City and State of Rio de Janeiro.

**1.1.88.** "OGX Austria": Has the meaning given in the preamble of this Plan.

**1.1.89.** "OGX International": OGX International GmbH – Under Judicial Reorganization, a company organized under the laws of the Republic of Austria, registered with the Commercial Court of Vienna under No. FN 335513B, and with head office at Schwarzenbergplatz 5/Top Nr. 2/3, 1030, in the City of Vienna.

**1.1.90.** "Restructured OGX": Has the meaning given in **Clause 8.4** of this Plan.

**1.1.91.** "Parnaíba B.V.": Parnaíba B.V. a company (*Besloten Vennootschap*) organized and existing pursuant to the laws of Holland, with principal place of business in Hague, at Parkstraat 83, 209 / 210 Office, 2514JG's-Gravenhage.

**1.1.92.** "Exempt Parties": OGX Austria, OGX Group, the Shareholders, the New Lenders, the Backstop – New Lenders, the Supporting Bondholders, the Bond Trustee and their respective controlled companies, subsidiaries, affiliates and associates and other companies belonging to the same corporate and economic group, their officers, directors, shareholders, non-controlling shareholders, partners, agents, employees, representatives, advisors, consultants and attorneys, successors and assignees, for the purposes hereof.

**1.1.93.** "Related Parties": (i) companies directly or indirectly controlled by Mr. Eike Batista, including the companies of OSX Group and/or (ii) the directors of any company of OGX Group at any time and/or OSX Group; and/or (iii) relatives to the third degree of any of the persons mentioned in items (i) and (ii) above.

**1.1.94.** "Plan Support Agreement": Agreement entered into among OGX Group and the Supporting Bondholders, on December 24, 2013, with the purpose of establishing the basic conditions for the restructuring of OGX Group.

**14/35**

**1.1.95.** "Plan": This judicial reorganization plan, as amended, modified or changed from time to time.

**1.1.96.** "OGX Plan": The judicial reorganization plan presented by OGX, as amended, modified or changed from time to time.

**1.1.97.** "OGPar Plan": The judicial reorganization plan presented by OGPar, as amended, modified or changed from time to time.

**1.1.98.** "OGX Related Parties Plan": The OGPar Plan, the OGX Plan and the OGX International Plan all together, as amended, modified or changed from time to time.

**1.1.99.** "Judicial Reorganization": Judicial Reorganization case under No. 0377620-56.2013.8.19.0001, pending before the Reorganization Court.

**1.1.100.** "New Resources": means all the resources deriving from the 1st Bridge Loan, the 2nd Bridge Loan, the DIP Loan and the Additional Loan already granted or that may be granted by the New Lenders.

**1.1.101.** "Registration as Publicly Held Company": Procedure to be adopted by OGX to obtain the securities issuer register, category A, for the trading of securities in regulated securities markets before the CVM, as set forth in CVM Instruction 400, of December 7, 2009. The Registration as Publicly Held Company is an essential condition of the OGX Plan and this Plan, in a way that any eventual delay in obtaining such Registration as Listed Company may affect the time of verification of the restructuring measures set forth in the OGX Plan and this Plan.

**1.1.102.** "Resolution of the Plan": Effect arising from the verification of any of the termination conditions listed in **Clause 10** of this Plan.

**1.1.103.** "Tubarão Azul": Is the field located of the Campos Basin, State of Rio de Janeiro, where the CM-592 exploratory block is located, the concession rights of which were granted to OGX through the BM-C-41 Concession Agreement.

**1.1.104.** "Tubarão Martelo": The field located in Campos Basin, State of Rio de Janeiro, where exploratory blocks CM-466 and CM -499 are located, which concession rights were granted to OGX through Concession Agreements BM-C-39 and BM-C-40, respectively.

**1.2.   Clauses and Exhibits.** Unless specified differently, all Clauses and Exhibits mentioned in this Plan refer to Clauses and Exhibits to this Plan. References to clauses or items of this Plan also refer to the respective sub-clauses and sub-items.

**1.3.   Headings**. The headings of the Chapters and Clauses of this Plan have been included for reference purposes only and shall not affect the construction or the contents of their provisions.

**1.4.    Terms**. The terms "include", "including" and similar terms are to be construed as if followed by the words "but not limited to."

**1.5.    References**. References to any documents or instruments include all the respective amendments, consolidations and additions, unless otherwise expressly provided.

**1.6.    Legal Provisions**. References to statutory provisions and laws shall be construed as references to those provisions as in force on that date or on the date that is specifically determined by the context.

**1.7.    Deadlines**. All deadlines in this Plan will be counted as determined by Article 132 of the Civil Code, disregarding the day of the beginning and including the day of maturity. Any deadlines of this Plan (counted as Business Days or otherwise), the final term of which falls on a day other than a Business Day, shall be automatically postponed to the immediately succeeding Business Day.

## 2.    Miscellaneous

**2.1. History.** OGX Austria is a company of the OGX Group, wholly -owned by OGX International, which was created as a vehicle for the sale, abroad, of oil and gas produced by the OGX Group.

Created in 2007, OGX Group held in Brazil, over the past six (6) years, exploration activities of oil and gas in Campos Basin, Santos, Espírito Santo, Parnaíba and Pará - Maranhão. To achieve this unprecedented exploration campaign, OGX Group invested more than R$ 10 billion in its operations in Brazil, making it the largest private investor in the segment in which it operates.

**2.2. Corporate structure of OGX Group**: OGX Group is structured as per organizational chart reproduced below:



**2.3. Fund Raising**. A significant part of investments made by OGX Group in the strategic area where it operates was obtained through fund raising with international investors, particularly through the issuance of Bonds 2018 and Bonds 2022.

In this sense, on May 26, 2011, OGPar issued Bonds 2018 in the total amount of **US$ 2,563,000,000.00** (two billion, five hundred and sixty three million U.S. dollars), which were subsequently assumed by OGX Austria as issuer of the Bonds 2018. Net resources obtained with issuance of Bonds 2018 and its offer to qualified institutional investors were fully destined to OGX Group cash, upon the entering into of the export prepayment transaction between OGX and OGX Austria, to bear the new exploratory campaign and to develop the production in discovered blocks until OGX Group could be self-financing.

Also, on March 30, 2012, OGX Austria issued Bonds 2022, in the total amount of **US$ 1,063,000,000.00** (one billion and sixty three million U.S. dollars), which were equally destined to qualified institutional investors. The net resources of the issuance of the Bonds 2022 were also destined to the cash of OGX Group, in order to help to implement OGX Group business plan, upon issuance of debentures by OGX, which were subscribed by OGX Austria.

In return to the resources obtained as a result of Bonds 2018 and of Bonds 2022 issuance, OGX and OGPar fully guarantee the Bonds 2018 and Bonds 2022, as principal and several debtors and payers, for all legal purposes.

Considering the significant investments made by OGX Group in the projects of oil and gas exploration defined in their business plan, a series of adverse events external to OGX Group has changed significantly the operation of the activities developed by the group.

**2.4 Reasons for the Crisis.** As widely exposed under the Judicial Reorganization, OGX faces the direct consequences of the occurrence of a number of adverse events related to the risk of the activity it develops. Although the technical investigation undertaken in different fields, the exploration of which was granted to OGX Group, has resulted in very significant production forecasts, the exploration proved to be commercially unviable in some of them. Although the extraction of oil and gas in certain blocks granted by the Federal Government has corresponded to the technical forecasts, production in other blocks proved insufficient or uneconomic, thus the expected financial results were not achieved. This fact affected very negatively the revenues of OGX Group and, consequently, made it unable to honor the commitments to suppliers and financial institutions.

In addition, the default by Petronas Brasil E&P Ltda. to conclude the transaction for the purchase of forty per cent (40%) of blocks Tubarão Martelo, as agreed in the Farmout Agreement, was also decisive for the liquidity crisis faced by OGX Group, which resulted in the filing of Judicial Reorganization.

**2.5. Purpose and Considerations about the Plan.** The intention of the Plan is to allow OGX Austria and OGX Group to overcome its economic-financial crisis, implement the necessary measures for its operational reorganization, meet the interests and preserve the rights of Creditors and other interested parties. To this end, this Plan seeks to establish the method of settlement of its debts converting them in capital of OGX, and of contribution of New Resources, thus permitting, not only the maintenance of the activities of OGX Group, but also the development continuity through the resumption of investment capacity.

**2.5.1.** This Plan sets forth the proposal of restructuring and payment of the Creditors and their respective Bankruptcy Credits in more favorable conditions with more advantages than those that would be possible in a proceeding of OGX Austria bankruptcy, upon capitalization of the debt with the consequent delivery of Shares resulting from the OGX Capital Increase Through Capitalization of Credits, with the possibility of receipt in kind, resulting from the sale of the Shares, for the Creditors that so wish, pursuant to the OGX Plan. Also, all Bankruptcy Creditors had the right to (a) present objections to the Plan pursuant to the terms of Section 55 of the Bankruptcy Law; and (b) participate in the resolutions and voting of this Plan at the Meeting of Creditors, with equal conditions. Thus, this Plan is fair, reasonable, and equitable under material and procedural perspectives.

**2.6. New Resources and Investments.** As known, the oil and gas sectors require a huge allocation of financial resources. In view of the series of adverse facts related to the risk of the activity developed by OGX Group, which facts happened to it in the last months, OGX Group found that it was unable to finance oil extraction at the fields of Tubarão Martelo and Tubarão Azul (under test stages), which ended up in filing the request for Judicial Reorganization.

Notwithstanding, since August 2013, i.e., before the Filing Date, OGX Group has been searching for raising new resources in local and international markets and, with that purpose, it has counted on the joint work of its highly qualified managers, advisors and consultants, and with the extensive experience in projects of financial restructuring.

After a detailed analysis of the financial and operational situation of OGX Group, it was concluded that OGX Group would need and needs to receive, in addition to the incomes forecasted in its cash flow and projections, new financing in order to fund the development of its activities and the preservation of its assets during current temporary process of restructuring. The obtainment of such financial resources was considered as indispensable for the stability of OGX Group cash flow and, consequently, the feasibility of restructuring and lifting of OGX Group, upon the implementation of its business plan.

In this context, after a careful process of capture of investments with several potential investors, conducted in good-faith by OGX Group and its managers, advisors and consultants, the only firm operation of financing proposed to the OGX Group by investors of unquestionable responsibility and financial capacity at an appropriate amount and date, was the DIP Loan, according to the terms of the Subscription Agreement, and Debentures Indenture.

The contracting of the DIP Loan granted to OGX Group the conditions required to continue to perform its activities, as well as to seek new investments. In that sense, OGX rapidly became more attractive to other investors, enabling the execution of instruments related to Bridge Loans and to the Additional Loan.

**2.7 Authorization for Granting of Guarantees**. Due to the need of obtaining New Resources, and in order to help with contracting the DIP Loan and the Additional Loan, on January 27, 2014, the Reorganization Court authorized OGX Group to encumber some of its fixed assets as guarantee of DIP Loan, according to Articles 66 and 67 of Bankruptcy Law. The decision of the Reorganization Court was totally upheld by the Court of Justice of Rio de Janeiro, under the terms of decision of the 14th Chamber of

Private Law rendered on April 30, 2014. This Plan also authorizes OGX Group to encumber other fixed assets to guarantee the DIP Loan and the Additional Loan, including under the terms of the DIP Guarantee Agreements – 2nd and 3rd Series, to be shared under the terms of the Collateral Sharing Agreement.

## 3. Overview of Reorganization Measures

**3.1 Granting of New Resources**. To allow OGX Group to recover the working capital needed to continue with its activities and preservation of its assets, as well as to the development of its business plan, it was and continues to be essential for OGX Group to obtain the New Resources from the New Lenders, under the terms of the DIP Loan and, in function thereof, the Bridge Loans and the Additional Loan, according to Articles 67, 84 and 149 of Bankruptcy Law, and other applicable legal provisions. OGX Austria clarifies that these New Lenders are the only ones willing to disburse the New Resources, among dozens of other institutions that have been consulted by OGX Group since August 2013.

> **3.1.1.** Thus, the contribution of New Resources by the New Lenders is essential to the success of this Plan, to which preferential treatment and absolute precedence will be given, even in the event of a bankruptcy liquidation of OGX and/or the Guarantors, as provided in Articles 67, 84 and 149 of the Bankruptcy Law, and the provisions of this Plan, in the 2nd Bridge Loan, in the Debentures Indenture (DIP Loan), the Export Prepayment Agreement (Additional Loan), the Bridge Guarantees, 2nd Bridge Loan and DIP Guarantee Agreements.

> **3.1.2** In view of the direct consequences the obtainment of New Resources will cause to OGX Austria, OGX Austria appears and will continue to appear as the guarantor of the financial operations needed for the granting of the New Resources.

**3.2. Debt Restructuring.** In addition to having access to New Resources, OGX Group must also be able to, under the Judicial Reorganization and within the limits established by the Bankruptcy Law and by the OGX Related Parties Plan, restructure the debts incurred before its Bankruptcy Creditors. Moreover, within the applicable legal limits, OGX Group may also seek to renegotiate its debt with First Priority Creditors, by offering the same terms offered to the Bankruptcy Creditors, provided, however, that the renegotiation with First Priority Creditors will only be achieved through specific agreements between OGX Group and the referred First Priority Creditors, as applicable (however, for purposes of clarity and transparency, this fact is mentioned in this Plan).

> **3.2.1** Subject to **Clause 5** of this Plan, the restructuring referred to in **Clause 3.2** will be through the conversion of Credits into capital of OGX, pursuant to Article 171, paragraph 2 of the Corporations Act and other applicable legal provisions, with the possibility of receipt in kind, due to the sale of the Shares, for those Creditors who wish to do so and manifest themselves, on a timely basis, on the terms of the OGX Plan.

## 4. New Resources by means of First Priority Loans

**19/35**

**4.1. General Conditions**. Considering the cash needs of OGX Group in order to stabilize its working capital, to protect its essential assets and allow the adoption of measures aiming its restructuring, OGX Group searched for and obtained following first priority borrowings, according to Articles 66, 67, 84, item V, and 149 of the Bankruptcy Law and other legal provisions applicable, chronologically as follows: (i) 1st Bridge Loan; (ii) 2nd Bridge Loan; (iii) DIP Loan; and (iv) Additional Loan. The above mentioned loans have a first priority nature and are not subject to the terms of this Plan.

However, with the purposes of being clear, transparent and allow understanding by the Reorganization Court, Judicial Administrator, Creditors and other interested parties, including about the procedures for the participation of Creditors in the subscription of 3rd Series Debentures, and the implications of the OGX Capital Increase Through Conversion of Debentures for the final restructuring of OGX Group, with immediate effects on the capital structure of OGX Group, following is an executive summary of principal terms, conditions and guarantees of loans made after reorganization.

**4.2 Bridge Loans**. The Bridge Loans were fully paid and performed on March 13, 2014 and March 14, 2014, respectively, observing all terms and conditions provided for in the 1st Bridge Loan and 2nd Bridge Loan. The 2nd Bridge Loan was fully guaranteed by Bridge Guarantees, as authorized by the Reorganization Court on a decision issued on January 27, 2014, which were fully released after the performance of the 2nd Bridge Loan.

**4.3 DIP Loan – Debenture Issue**. OGX issued the Debentures on February 12, 2014, according to the terms and subject to the conditions of the Debentures Indenture and the Subscription Agreement, with the purpose of obtaining New Resources corresponding in national currency to the amount of **US$ 215,000,000.00** (two hundred and fifteen million U.S. dollars), that on the Issue Date corresponded to **R$514,624,000.00** (five hundred and fourteen million, six hundred and twenty-four thousand Brazilian reais).

  **4.3.1 Series of Debentures.** The Debentures were issued in three (03) series, as follows:

- 1st Series Debentures: issued, subscribed, and paid-in in a total amount of two hundred and ninety nine million, two hundred thousand Brazilian reais (**R$ 299,200,000.00**), monetarily adjusted by the variation of the sale exchange rate of Brazilian reais into U.S. dollars, according to the terms of the Debentures Indenture, corresponding on the Issue Date to **US$ 125,000,000.00** (one hundred and twenty five million of U.S. dollars).

- 2nd Series Debentures: issued on the total amount of up to two hundred and fifteen million, four hundred and twenty four thousand Brazilian reais (**R$ 215,424,000.00**), monetarily updated by the variation of the sale exchange rate of Brazilian reais into U.S. dollars, according to the terms of the Debentures Indenture, corresponding on the Issue Date up to ninety million U.S. dollars (**US$ 90,000,000.00**), to be timely subscribed and paid-in by the Backstop – New Lenders (whether they are Creditors or not). The final amount of 2nd Series Debentures shall correspond to the unsubscribed portion of 3rd Series Debentures by the Creditors and eventual surplus of Creditors that do not pay for the subscription of the 3rd Series Debentures,

observing the provisions of this Plan, the OGX Plan and the Debentures Indenture. The 2nd Series Debentures may be fully cancelled, if 3rd Series Debentures are fully subscribed, observing the provisions of the Debentures Indenture, in this Plan and in the OGX Plan;

- 3rd Series Debentures: issued in a total amount of up to **R$ 215,424,000.00** (two hundred and fifteen million, four hundred and twenty four thousand Brazilian reais), monetarily adjusted by the variation of the sale exchange rate of Brazilian reais into U.S. dollars, according to the Debentures Indenture, corresponding on the Issue Date of up to US$ 90,000,000.00 (ninety million U.S. dollars), to be timely subscribed, and paid-in by the Creditors, proportionally to the respective Credit. The final value of 3rd Series Debentures to be subscribed by the Creditors Affected by the Plan and/or First Priority Creditors (that expressly adhere to the Plan) may vary according to the demand for 3rd Series Debentures. The 3rd Series Debentures may be cancelled by virtue of the lack of Creditors interested in its subscription, payment or default in payment, as described in **Clause 4.6** et. seq. of the OGX Plan, observing the provisions of the Debentures Indenture;

**4.3.2 Other Characteristics of 3 $^{rd}$ Series Debentures**. According to the Debentures Indenture, as amended from time to time, 3rd Series Debentures:

(a) are materially similar to the 2nd Series Debentures and confer the same rights and prerogatives to respective debenture holders to participate in DIP Loan; (b) have covenants and hypothesis of acceleration more restricted than those established for 1st Series Debentures and the Additional Loan; (c) will have automatic acceleration in the case of a declaration of acceleration of 1st Series Debentures and/or the Additional Loan; (d) will be automatically converted into Shares if 1st Series Debentures are converted into Shares, including in cases of exemption for New Lenders of 1st Series Debentures of Conditions Precedent for the Conversion of 1st Series Debentures into Shares, as set forth in the Debentures Indenture; (e) will consider that any eventual resolution in debenture holder meetings will be made subject to a joint quorum formed by subscribers of 2nd Series Debentures and 3rd Series Debentures; and (f) just like the 1st Series Debentures, are junior and subordinate to the Additional Loan for collection and enforcement purposes of the DIP Guarantees in case of default by the OGX Group, under the terms of the Collateral Sharing Agreement.

**4.3.3. Destination of the New Resources of the DIP Loan.** The New Resources of the DIP Loan have been and shall be destined to the payment of first priority obligations, financing of certain investments in capital and operating expenses for the maintenance of the OGX Group's activities, as well as for the payment of reasonable expenses related to this Judicial Reorganization proceeding, as expressly provided for in the Debentures Indenture and in the Subscription Agreement.

**4.3.4 Priority of the DIP Loan**. According to Articles 67, 84, 85 and 149 and other applicable legal provisions of Bankruptcy Law, the Debentures were issued within the scope of the Judicial Reorganization. The credits corresponding to the Debentures is and should always be considered first

priority credits for all purposes of law, including in the case of supervening bankruptcy of OGX, even when the Debentures are subscribed by Creditors and OGX Capital Increase Through Capitalization of Credits is verified, being that they must be paid with precedence over all Bankruptcy Credits and First Priority Credits, in compliance with Articles 84, 85, 149 and other applicable provisions of Bankruptcy Law.

**4.3.5. Constitution of DIP Guarantees**. Without prejudice to seniority, priority and corresponding protection applicable to New Resources, according to Articles 67, 84, 85 and 149, as well as other applicable legal provisions of Bankruptcy Law, OGX and Guarantors, as applicable, as guarantee to full and timely payment of DIP Loan and Additional Loan, as authorized by the Reorganization Court, according to Article 66 of Bankruptcy Law, as applicable, grant and will grant DIP Guarantees, according to following DIP Guarantee Agreements (**Exhibits 1.1.33 and 1.1.35** of the OGX Plan):

(i)    fiduciary sale on the oil and gas owned by OGX in any of following production fields, subject to the respective interest of OGX in each of these production fields: (a) Block BS-4; (b) Tubarão Martelo; and (c) Blocks POT-M-762, CE-M-661, POT-M-475[1] and CE-M-603, where OGX holds interests, respectively with 50% (fifty per cent), 30% (thirty per cent), 65% (sixty-five per cent) and 50% (fifty per cent), subject to the right of other creditors holding previous guarantee on certain quantity of oil, according to the "Private Instrument of Fiduciary Sale of Oil and Natural Gas as Guarantee";

(ii)   fiduciary assignment of: (a) all credit rights resulting from the commercialization of oil and gas owned by OGX, subject to the right of other creditors that already had a guarantee on the determined quantity of oil; (b) the rights of credits held by OGX against Parnaíba Gás Natural resulting from the Shared Costs Agreement Termination and Release, entered into by OGX, Parnaíba Gás Natural, and Eneva S.A., on October 30, 2013, as well as promissory notes issued by Parnaíba Gás Natural in favor of OGX related to the Shared Costs Agreement Termination and Release; and (c) the blocked account in which the funds deriving from the credit rights mentioned above will be deposited under the terms of the "Private Instrument of Fiduciary Assignment of Credit Rights and Credit Securities as Guarantee (Intercompany and Product Sale)" and the Agreement for Deposit as Guarantee and Other Covenants;

(iii)  fiduciary assignment of (a) credit rights held by OGX against the Federal Government based on the right of reimbursement for the overpayment of Corporate Income Tax, observing, however, the right that other creditors might have priority in relation to such credits, and (b) the blocked account in which the funds deriving from the credit rights mentioned above will be deposited according to the "Private Instrument of Fiduciary  Assignment of

---

[1] On September 23, 2013, OGX signed an Assignment Instrument with EXXONMOBIL Exploração Brasil Ltda., through which it assigned all of its rights and obligations related to thirty-five percent (35%) of its interest in such block. The mentioned assignment has already been approved by CADE and right now is awaiting approval by ANP.

Credit Rights as Guarantee (Tax Rights)" and to the Agreement for Deposit and Guarantee and Other Covenants;

(iv)   pledge on the rights emerging from the participation of OGX in the agreements referring to the concession on BS-4, according to the "Private Instrument of Pledge of Rights on the Concession Agreement and Other Covenants";

(v)   fiduciary assignment of, among others, (a) credit rights held by OGX against Cambuhy Investimentos Ltda., resulting from the Share Purchase Agreement; (b) credit rights of OGPar resulting from an eventual subrogation of the rights of respective creditors of the "Private Instrument of First
Public Issued Simple Debentures Indenture, Non-Convertible into Shares, Unsecured, with Personal Guarantee, in Single Series of Parnaíba"; "Credit Agreement", entered into between Parnaíba Gás Natural, OGPar, MPX Energia S.A. and
Morgan Stanley Bank, N.A.; and "Private Instrument of Fiduciary Sale of Shares and Other Covenants", entered into between OGPar, MPX Energia S.A., Planner Trustee Distribuidora de Títulos e Valores Mobiliários Ltda. and Parnaíba Gás Natural, (c) the blocked account in which the funds deriving from the credit rights mentioned above and other credit rights subject of said guarantee will be deposited according to the "Private Instrument of Fiduciary Assignment of Credit Rights as Guarantee (Parnaíba)" and the Agreement for Deposit as Guarantee and Other Covenants;

(vi)   fiduciary assignment of credit rights held by OGX and by OGPar resulting from: (a) insurance agreements; (b) judicial and extrajudicial litigations (including in the case of litigation against Brasil E&P Ltda.); (c) agreements and other instruments; (d) any other credit rights that are not the object of other specific guarantee, and (e) fiduciary assignment of the blocked accounts in which the funds deriving from the credit rights mentioned above will be deposited, according to the "Private Instrument of Fiduciary Assignment of Credit Rights as Guarantee (General)" and the Agreement for Deposit as Guarantee and Other Covenants, as amended from time to time;

(vii)   fiduciary sale of assets owned by Parnaíba B.V., according to the "Private Instrument of Fiduciary Sale of Equipment as Guarantee";

(viii)   fiduciary assignment on (a) any and all credit rights of OGX resulting from the payment of the first series of Debentures according to the Credit Agreement, that will be deposited in a blocked checking account of OGX and (b) said account, according to the "Private Instrument of Fiduciary Assignment of Credit Rights as Guarantee (Resources of the Payment of the 1st Series Debentures)" and the Agreement for Deposit as Guarantee and Other Covenants;

(ix)   pledge on the entirety of the shares issued by Parnaíba B.V., according to the "Deed of Pledge of Parnaíba B.V. Shares";

(x)   pledge of credit rights held by OGX Netherlands against MPX Energia GmbH, resulting from the sale of shares issued by Parnaíba B.V., according to the "Deed of Pledge of Parnaíba MPX Receivables";

(xi)  pledge of credit rights held by OGX Netherlands against Parnaíba B.V, according to the "Deed of Pledge of Parnaíba MPX Receivables";

(xii)  pledge on receivables, sale rights and other rights related to the export agreement of OGX and the Guarantors according to the "Security Agreement";

(xiii)  fiduciary sale of OGX and OGPar shares, to be entered into by the parties after Plan approval;

(xiv) pledge on the rights emerging from the interest of OGX in the concession agreements referring to blocks BM-C-39 and BM-C-40 of Tubarão Martelo and concession agreements of the 11th Round to be entered into between the parties after Plan approval; and

(xv)  pledge on shares issued by OGX International, OGX Austria, OGX Netherlands B.V. and OGX Netherlands Holding B.V, according to the terms of the Indenture to be entered into after Plan approval.

**4.3.5.1** Additionally and without prejudice of DIP Guarantees, the DIP Loan also has a personal guarantee, in the form of a surety provided by all Guarantors.

**4.3.6. Sharing of Guarantees**: Without prejudice to seniority, priority and corresponding protection applicable to New Resources resulting from DIP Loan, according to Articles 67, 84, 85 and 149, as well as other applicable legal provisions of Bankruptcy Law, DIP Guarantees are and will be shared to guarantee full and timely compliance with the obligations under the Additional Loan, according to the Export Prepayment Agreement, under the DIP Guarantee Agreements and the Collateral Sharing Agreement. The Additional Loan will have priority on Debentures in the foreclosure of DIP Guarantees and in the distribution and receipt of corresponding product to settle the Additional Loan, under the terms of the Collateral Sharing Agreement.

**4.4. 1st Series Debentures**. The 1st Series Debentures were fully subscribed and paid-in by Backstop – New Lenders (directly or indirectly) on February 13, 2014.

**4.5. 2nd Series Debentures**. The 2nd Series Debentures will be timely subscribed and paid-in by Backstop – New Lenders (whether Creditors or not), provided that certain terms and conditions precedent of the Subscription Agreement and **Clause 4.5** of the OGX Plan are complied with.

**4.6.   3rd Series Debentures.** The 3rd Series Debentures may be subscribed and paid-in by the Bankruptcy Creditors and/or First Priority Creditors (for these latter ones, provided that they have expressly adhered to this Plan, as applicable) who have qualified as Creditors Qualified for the Subscription of 3rd Series Debentures, under the terms of the Debentures Indenture, the Subscription Agreement, **Clause 4.6** et. seq. of the OGX Plan, as well as the **Exhibit 4.6**, all of them from the OGX Plan.

**4.7. Procedure for OGX Capital Increase Through Conversion of Debentures**. The Debentures will be automatically converted into Shares, after full compliance or express waiver of conditions precedent for their conversion into Shares, as expressly

established in the Debentures Indenture and Subscription Agreement, especially the following Conditions Precedent for the OGX Capital Increase Through Conversion of Debentures specified in **Clause 4.8** of the OGX Plan.

**4.8. Additional Loan – Export Prepayment Agreement**. The Additional Loan was made on April 09, 2014 and will be paid according to the terms and conditions of the Export Prepayment Agreement. The Additional Loan is fully guaranteed by the DIP Guarantees, which are shared with the DIP Loan, according to the Export Prepayment Agreement and the Collateral Sharing Agreement. The Additional Loan has priority over the Debentures in the collection and enforcement of the DIP Guarantees and in the receipt of the relevant result.

> **4.8.1. Priority of Additional Loan**. According to Articles 67, 84, 85 and 149 and other applicable legal provisions of Bankruptcy Law, the Additional Loan is and will always be considered priority, including in case of supervening bankruptcy of OGX, and must be paid with precedence over all Bankruptcy Credits and First Priority Credits, subject to Articles 84, 85, 149 and other provisions applicable to Bankruptcy Law.

**5.      Restructuring Settlement of Debts**

**5.1 Payment to Unsecured Creditors.** On this date, the Unsecured Creditors holding Bonds 2018 and/or Bonds 2022 which are also OGX Creditors correspond to the entirety of the Unsecured Creditors of OGX Austria and, in view of the joint obligation undertaken by OGX under the terms of the Bond Indenture, they shall be paid pursuant to the terms and conditions provided for in **Clauses 5.1** et. seq. of the OGX Plan, as well as in **Exhibit 5.1.3** of the OGX Plan. Consequently, OGX shall be transferred the subrogation to the credit held by the Unsecured Creditors of OGX Austria, which shall be restructured under the terms of **Clause 6.1** below.

**5.2. Labor Creditors.** On the date hereof, there are no Labor Credits subject to the Judicial Reorganization. In the event Labor Credits are recognized by court order or agreement between the parties, said Labor Credits shall be paid in up to twelve (12) equal and consecutive installments, the first being considered due as from receipt, by OGX Group, of a notification, pursuant to **Clause 14.4**, sent by the Labor Creditor holding the recognized Labor Credit, regarding the unappealable judgment of the court decision or agreement recognizing the Labor Credit.

**5.3. Secured Creditors**. On the date hereof, there are no Secured Credits subject to judicial reorganization of the OGX Group. In the event Secured Credits are recognized, by court order, arbitration or agreement between the parties, such Secured Creditors shall have the treatment set forth in **Clause 5.1** above, in accordance with the provisions of **Clause 14.4** below.

**5.4.      Alteration of the List of Creditors after the OGX Capital Increase Through Capitalization of Credits.** If an increase in the quantity of Credits is verified, deriving from a final and unappealable judicial decision, with the consequent rectification of the List of Creditors, OGX shall also be responsible for the issuance of as many Shares as needed, to allow for the capitalization of new Credits (i) at the same price of issuance of the Shares verified on the date and for purposes of implementation of the OGX Capital Increase Through Capitalization of Credits; and (ii) with due regard for the conditions provided for in **Clauses 5.1.3, 5.1.4** and **5.1.5** of the OGX Plan.

**5.5. First Priority Creditors.** For clarity, OGX Austria hereby declares and acknowledges that the First Priority Credits are not subject to this Plan, so that its approval by the Meeting of Creditors does not imply the immediate restructuring of First Priority Credits under the terms and conditions herein. However, OGX Austria expressly extends the conditions proposed to the Bankruptcy Creditors to the First Priority Creditors wishing to join this Plan, provided, however, that such terms and conditions shall only apply to the extent that the First Priority Creditors expressly and voluntarily adhere to this Plan, pursuant to this **Clause 5**. Such adhesion shall occur in writing, on an irrevocable and unchangeable basis, pursuant to notification to OGX Austria, forwarded by the date of the Meeting of Creditors that adopts this plan. Thus, the conditions herein described are included in this Plan for purposes of transparency and acknowledgement by all the Creditors, as the act of the First Priority Creditors adhering to this Plan will have the immediate effect of increasing the amount of Credits that will be capitalized in OGX, and eventually will be paid to First Priority Creditors, according to **Clause 5** of the OGX Plan.

## 6. Transactions with Related Parties

**6.1. OGX Representation.** For the purposes of this Plan, OGX hereby represents and recognizes that it is a debtor of OGX Austria for the amount equivalent to the OGX Austria Credit. OGX hereby represents and recognizes that the OGX Austria Credit can be used by OGX Austria to pay the OGX Austria Subrogation Credits, according to the terms of **Clause 6.2** below, at the discretion of OGX Austria.

> **6.1.1.** OGX hereby undertakes, irrevocably and irreversibly, to grant full, general, irrevocable and irreversible release for the OGX Austria Subrogation Credits after the payment referred to in **Clause 6.2** below, including in case of compensation, even in case of an eventual credit balance of OGX against OGX Austria.

**6.2**. **Payment of Credits Held by Related Parties**. Unless otherwise expressly provided for in this Plan, the Credits held by Related Parties, including the OGX Austria Subrogation Credits, shall preserve the original conditions, except the term for amortization and application of interest, which are restructured by this Plan, according to the terms provided for in Article 59 of the Bankruptcy Law, in such a way that the OGX Austria Subrogation Credits and other Credits held by Related Parties shall be paid in a single installment of the principal, due and collectible in twenty (20) years from the Approval of the Plan, or on July 30, 2034, whichever comes last, without the application and capitalization of interest. The parties may agree, from time to time, on another form of extinction of the payment obligation related to the Credits held by Related Parties, including the OGX Austria Subrogation Credits held by OGX against OGX Austria in view of the subrogation provided for in **Clause 5.1.3.17** of the OGX Plan, derived from the payment of Bankruptcy Credits owed by the other companies of the OGX Group, including the utilization of OGX Austria Credit held by OGX Austria, up to the amount of the mentioned Bankruptcy Credits, always observing the applicable procedures and legislation, as well as the provisions of this Plan and the OGX Plan.

**6.3**. **Exemption of Joint Debtors from Bonds.** By virtue of (i) the subrogation referred to in **Clause 6.1** of this Plan and **Clause 5.1.3.17.** of the OGX Plan; (ii) the terms and conditions for release of the credits mutually held by OGX and OGX Austria,

as described in **Clause 6.2** above; and (iii) the obligations jointly undertaken in the context of the Bonds Indenture, OGX and OGX Austria exempt, irrevocably and irreversibly, OGPar as a joint debtor, under the terms of Bonds Indenture, as established by **Clause 6.4** of the OGX Plan.

**7. Corporate Governance – Compliance with Obligations.** As of the Issue Date and until the effective delivery of Shares to Creditors is made by virtue of (i) the OGX Capital Increase Through Capitalization of Credits; and (ii) the OGX Capital Increase Through Conversion of Debentures according to this Plan, OGX Plan and the Debentures Indenture, the management of OGX Austria shall observe, when conducting their activities, the best practices of corporate governance, in addition to the terms, conditions and restrictions contained in this Plan, OGX Plan, the Debentures Indenture, the Subscription Agreement, the Plan Support Agreement, the DIP Guarantee Agreements of the Export Prepayment Agreement, and in all other instruments and agreements related to the instruments and agreements mentioned above and/or the restructuring and Judicial Reorganization.

**8. Merger**

**8.1.** As established by **Clause 10** of the OGX Plan and **Clause 9** of the OGPar Plan, upon the occurrence and implementation of (i) the OGX Capital Increase Through Capitalization of Credits, pursuant to this Plan and OGX Plan; and (ii) the Capital Increase Through Conversion of Debentures, under the Debentures Indenture, the managements of OGPar and OGX, irrespectively of whoever may be their administrators, undertake to adopt the necessary actions for the merger of OGPar by OGX ("Merger"), including to propose the Merger to the respective shareholders.

**8.2.** The purpose of the Merger, after the capitalization operations are conducted under this Plan, which aim to seek financial recovery for OGX Group, is leveling all stakeholders in the same company and giving all the then shareholders access to the capital market, with the opportunity to trade their Shares and monetize them as they see fit.

**8.3.** The Merger procedure shall observe certain corporate events detailed in the OGX Plan, the order of which may be altered, so that the implementation of the stages required by this Plan and by the other Related Parties' Plans is not compromised or impaired by facts not under the influence of the OGX Group, as provided for in **Clause 10.1.1** of the OGX Plan.

**8.4** The Merger will result in a publicly held company with shares traded on the listing segment called Novo Mercado of BM&FBOVESPA S.A. ("Restructured OGX").

**8.5**. In view of the corporate structure of the OGX Group, it is a sure fact that the totality of the quotas issued by OGX Austria shall continue to be held by OGX International, which, in turn, shall pass on to the control of the Restructured OGX, with which OGX Austria expressly agrees.

**9. Resolutive Conditions.** The following are resolutive conditions to the Plan, the occurrence of which will result in the cancellation of the approval of this Plan and its respective provisions, and convening of a Meeting of Creditors to decide on an alternative to the Plan or the bankruptcy liquidation of OGX Austria:

(i)     The finding, until the OGX Capital Increase Through Capitalization of Credits, of any falsehood or inaccuracy with respect to any representation or warranty provided by OGX Austria in this Plan or its Exhibits which characterizes Material Adverse Effect;

(ii)    Failure by the Shareholders to comply with any obligation assumed in this Plan or practice of any act or measure incompatible with the provisions of this Plan;

(iii)   Failure to ensure the Conditions Precedent for the OGX Capital Increase Through Capitalization of Credits as provided in **Clause 5.1.3.1** of the OGX Plan within 120 (one hundred and twenty) days from the Confirmation Order or by 9/30/2014, whichever occurs first;

(iv)    Failure to hold a Special Shareholders Meeting and other acts of implementation of the OGX Capital Increase Through Capitalization of Credits, including the delivery of the Shares to Bankruptcy Creditors and First Priority Creditors (who have adhered to the Plan) within 140 (one hundred and forty) days from the Confirmation Order or by 10/20/2014, whichever occurs first;

(v)     Non-adherence to the Plan and/or to OGX Related Parties Plans, as applicable, of First Priority Creditors who are Related Parties before the date of the OGX Capital Increase Through Capitalization of Credits provided in **Clause 5.1.3.** of the OGX Plan; and/or

(vi) the non-Approval of the Plan by the Meeting of Creditors and/or deliberation of any of the OGX Related Parties Plans.

**9.1. Waiver of Resolutive Conditions**. The Creditors may, upon a resolution of the holders of a simple majority of the Credits present at the Meeting of Creditors convened for such purpose, waive, in their sole discretion, in whole or in part, any of the conditions described above.

## 10. Effects of the Plan

**10.1. Binding of the Plan.** The provisions of the Plan bind OGX Austria, OGX , the Shareholders and the Creditors, and their respective successors and assigns, from the Confirmation Order.

**10.2. Novation.** The lack of appeal that were attributed with suspensive effect (or lawsuit with the same effects) filed against the Confirmation Order will result in the novation of the Bankruptcy Credits and of the First Priority Credits held by First Priority Creditors who have expressly adhered to this Plan, which will be settled in the manner established herein. Upon such novation, all obligations, covenants, financial indexes, events of acceleration, as well as other obligations and guarantees which are inconsistent with the terms of this Plan shall cease to apply.

**10.3. Dismissal of Actions.** Unless provided otherwise in this Plan, the Creditors may no longer, from the Approval of the Plan (i) file or pursue any legal action or proceeding of any kind related or not to any Credit against OGX Austria; (ii) enforce any judgment, judicial decision or arbitration award against OGX Austria; (iii) pledge any property of OGX Austria, to satisfy their Credits; (iv) create, perfect or enforce any security interest on assets and rights of OGX Austria to ensure payment of their Credits; (v) claim any right of offset against any claims payable to OGX Austria; and

(vi) seek the satisfaction of their Credits by any other means. All lawsuits and judicial executions pending against OGX Austria, relating to Credits, shall be dismissed, and the existing liens and constrictions will be discharged.

>10.3.1. Once the Resolution of the Plan is verified, the Creditors are assured the right to file and/or pursue any claim, judicial or otherwise, against OGX Austria, as well as pursue foreclosure of any assets that have been encumbered by OGX Austria and/or third parties as guarantee for the obligations, whether or not subject to this Plan.

**10.4. Reconstitution of Rights.** Once the Resolution of the Plan is verified and/or the Judicial Reorganization is converted into bankruptcy liquidation, within the supervision term established in Article 61 of the Bankruptcy Law, the Creditors shall have their rights and guarantees reconstituted under the conditions originally contracted, less the amounts eventually paid and except for the acts validly committed under the Judicial Reorganization, as stated in Article 61, Paragraph 2, and 74 of the Bankruptcy Law.

**10.5. Discharge.** Except in the case of Resolution of the Plan, the payments in cash and the OGX Capital Increase Through Capitalization of Credits made according to this Plan and OGX Plan will result automatically and regardless of any additional formality in full, irrevocable and irreversible discharge of all Credits of any kind and nature against OGPar, OGX Austria, OGX International, OGX and its controlling companies and guarantors, including interest, adjustment for inflation, penalties, fines and damages. With the occurrence of the discharge, the Creditors will be deemed to have fully discharged, released and/or waived any and all Credits, and can no longer claim them against OGX Austria, controlled companies, subsidiaries, affiliates and other companies belonging to the same corporate and economic group, and their officers, directors, Shareholders, minority shareholders, members, agents, employees, representatives, guarantors, sureties, successors and assigns.

**10.6. Ratification of Acts.** The Approval of the Plan by the Meeting of Creditors represents the agreement and ratification of OGX Austria, Shareholders, OGX Group and Creditors, including Creditors Qualified for the Subscription of 3rd Series Debentures, of all acts performed and obligations assumed by OGX Austria during the Judicial reorganization, including, among others (i) the distribution of the Judicial Reorganization before the Reorganization Court and the acknowledgement of its jurisdiction and competence to perform the Judicial Reorganization (ii) the obtainment and contracting by OGPar and other companies of OGX Group of New Resources, according to provisions of the 1st Bridge Loan, 2nd Bridge Loan, DIP Loan and the Additional Loan; (iii) the terms and conditions of Debentures Indenture and the Subscription Agreement and the Export Prepayment Agreement, as amended from time to time, including the conditions of convertibility of Debentures into Shares; (iv) the contracting and constituting of the Bridge Guarantees and DIP Guarantees in favor of New Lenders in consideration of the concession of New Resources, under the terms of the Bridge Guarantees, the DIP Guarantee Agreements and the Collateral Sharing Agreement, as amended from time to time; (v) all other acts and actions necessary for full implementation and performance of this Plan and of the Judicial Reorganization, such acts being hereby expressly authorized, validated and ratified for all legal purposes, including and particularly Articles 66, 74 and 131 of Bankruptcy Law.

**10.7. Exemption from Liabilities and Waiver.** By virtue of Approval of the Plan by the Meeting of Creditors, the Creditors expressly recognize and exempt the Exempt Parties from each and any responsibility for the acts performed and obligations contracted during the Judicial Reorganization, including contracting and implementation of the DIP Loan pursuant to the Debentures Indenture, of the Additional Loan pursuant to the terms of the Export Prepayment Agreement, and the DIP Guarantees and the Collateral Sharing Agreement, granting to the Exempt Parties full, general, irrevocable and irreversible release from all material or moral rights that may result from referred acts for any reason. The Approval of the Plan by the Meeting of Creditors equally represents the express and irrevocable waiver of Creditors, including the Creditors Qualified for the Subscription of 3rd Series Debentures, to each and every intention, action or right to demand, search or claim, in or out of Courts, for any reason and without any reservation, reparation of damages and/or any other actions or measures against the Exempt Parties in reference to the acts performed and obligations assumed by the Exempt Parties during the Judicial Reorganization, including the contracting and implementation of the 1st Bridge Loan, the 2nd Bridge Loan, the DIP Loan, and the Additional Loan.

**11. Formalization of Documents and Other Arrangements.** OGX, OGPar, OGX Austria and OGX International and the Shareholders undertake to, on an irrevocable and irreducible basis, under this Plan, perform all acts and execute all contracts and other documents that, in form and substance, may be necessary or appropriate to fulfillment and implementation of this Plan, the OGX Related Parties Plans, the OGX Plan and the related obligations.

**12. Modification of the Plan.** Amendments, alterations or modifications to the Plan may be proposed at any time after the Confirmation Order, provided that such amendments, alterations or modifications are submitted to a vote at the Meeting of Creditors, are approved by OGX Austria and that the quorum is reached as required by Articles 45 and 58, head provision and paragraph 1 of the Bankruptcy Law.

**12.1. Binding Effect of Modifications of the Plan**: Amendments, alterations or modifications to the Plan shall bind OGX Austria and its Creditors, including First Priority Creditors adhering to it and dissenting Creditors, and their respective assignees and successors, from its adoption by the Meeting of Creditors, according to Article 45 or 58 of the Bankruptcy Law.

**13. Maintenance of the Right of Petition and Voice and Vote in the Meeting of Creditors**. For the purposes of this Plan and while the Judicial Reorganization has not been concluded, the Creditors that may convert their Credits into capital according to the OGX Increase of Capital Through Capitalization of Credit – shall maintain the value and number of their Credits, with the purposes of right of petition, voice and vote in each and every Meeting of Creditors after the Confirmation Order, independently of the conversion of Credits into equity capital and respective release.

**14 General Provisions**

**14.1 Existing Agreements and Conflicts.** In the case of any conflict between provisions of this Plan and obligations contemplated in the agreements entered into with any Creditor prior to the Filing Date, the Plan shall prevail. In case of any conflict between the provisions of this Plan and the Debentures Indenture and/or the Subscription Agreement and/or the Export Prepayment Agreement and/or DIP Guarantee

Agreements, and/or the Collateral Sharing Agreement, the terms of the Debentures Indenture and/or the Subscription Agreements and/or the Export Prepayment Agreement and/or the DIP Guarantee Agreements and/or the Collateral Sharing Agreement shall prevail. In the case of any conflict between the provisions of this Plan, the OGX Plan and of the OGX Related Parties Plans that are under Judicial Reorganization, the terms of the OGX Plan shall prevail.

**14.2. Exhibits.** All Exhibits to this Plan are incorporated herein and are an integral part of the Plan. In the event of any inconsistency between this Plan and any Exhibit, the Plan shall prevail.

**14.3. Conclusion of the Judicial Reorganization.** The Judicial reorganization will be concluded at any time after the Confirmation Order, at the request of OGX Austria, provided that (i) such conclusion is approved by a simple majority of the Creditors attending the Meeting of Creditors; or (ii) all obligations of the Plan that mature within two (2) years after the Approval of the Plan are met.

**14.4. Notices.** All notices, requests, demands and other communications to OGX Austria, required or permitted by this Plan, in order to take effect, must be in writing and shall be deemed delivered when (i) sent by registered mail, return receipt requested, or by courier, and effectively delivered or (ii) sent by facsimile, email or other means, when effectively delivered and confirmed by phone. All communications should be addressed as follows or as otherwise informed by OGX Austria, in the records of the judicial reorganization or directly to the Judicial Administrator or to the Creditors:

**OGX Austria GmbH – Under Judicial Reorganization**
Address: Rua do Passeio, nº 56, 10º, 11º e 12º andares
City of Rio de Janeiro, State of Rio de Janeiro
Att.: Paulo Narcélio Simões Amaral
Att.: Darwin Corrêa
Phone: +55 21 2163-5522
Fax: +55 21 2163-5202
Email: rj@ogpar.com.br

**To the Judicial Administrator** (Deloitte Touche Tohmatsu or its substitute)
Address: Av. Presidente Wilson, 231, 22º andar
City of Rio de Janeiro, State of Rio de Janeiro
Att.: Luis Vasco Elias (or his substitute)
Telephone: + 55 21 3981-0467
Email: ajoleoegas@deloitte.com

**To the Debentures Trustee** (Oliveira Trust Distribuidora de Títulos e Valores Mobiliários S.A. or his substitute)
Address: Avenida das Américas, 500, bloco 13, grupo 205
City of Rio de Janeiro, State of Rio de Janeiro
Att.: Mr. Gustavo Dezouzart (or his substitute)
Telephone: + 55 21 3514-0000
Fax: +55 21 3514-0000
Email: gustavo.dezouzart@oliveiratrust.com.br
Email: ger3.agente@oliveiratrust.com.br

**14.5. Means of Payment**. Where applicable, amounts due to Creditors under this Plan shall be paid by wire transfer of funds to the bank account of the respective Creditor, through credit order (DOC) or wire transfer of immediately available funds (TED), where OGX Austria may retain a Paying Agent to make such payments to the Creditors. The proof of deposit of the amount credited to each Creditor will be proof of discharge of such payment.

**14.5.1.** For the payment mentioned in **Clause 5**, the Creditors must inform OGX Austria their respective bank accounts for this purpose, by communicating in writing to OGX Austria, under **Clause 14.4** and by sending the Notice of Payment Option (as defined in the OGX Plan) according to OGX Plan.

**14.6. Date of Payment.** In the event any payment or obligation under the Plan is scheduled to be made or satisfied on a non-Business Day such payment or obligation may be made or satisfied, as applicable, on the next Business Day.

**14.7. Financial Charges.** Unless otherwise stated in the Plan, no interest or adjustment for inflation shall be levied on the value of the Credits.

**14.8. Credits in Foreign Currency.** Credits in foreign currency shall be kept in the original currency for all legal purposes and shall be settled, subject to the provisions of this Plan, in accordance with Article 50, paragraph 2 of the Bankruptcy Law. Except in the case of a specific provision in this Plan, Credits in foreign currency shall be converted into Brazilian reais at the closing price of sale from Brazilian reais to U.S. dollars, available in SISBACEN - Information System of the Central Bank of Brazil, transaction PTAX-800, option 5, rates for accounting, currency 220, free market, on the date immediately preceding the date when such conversion is required, including for the purposes of the OGX Capital Increase Through Capitalization of Credits, pursuant to this Plan and OGX Plan.

**14.9. Severability of the Provisions of the Plan.** In the event any term or provision of the Plan is deemed invalid, void or unenforceable by the Reorganization Court, the remaining terms and provisions of the Plan should remain valid and effective.

**14.10. Auxiliary Proceeding Abroad**. OGX Austria may file a bankruptcy proceeding based on Chapter 15 of the Bankruptcy Code of the United States of America, in order to give effect to the Plan in U.S. territory, biding the Creditors domiciled and established therein, as well as other procedures of insolvency, or of any other nature, in other jurisdictions as necessary to the implementation of this Plan, including, but not limited to, the existing insolvency procedures under Austrian law. Such cases cannot change the payment terms and the remaining terms of this Plan.

**14.11. Adherence of the Shareholders, OGPar, OGX and OGX International**. The Shareholders, OGPar, OGX and OGX International signed this Plan, assuming and agreeing with everything that relates to their respective legal spheres, as well as undertaking to do and perform all necessary or useful acts and to sign any and all documents necessary for the faithful performance of their obligations in this Plan or reasonably necessary for its implementation.

**32/35**

**14.12. Applicable Law.** The rights, duties and obligations under this Plan shall be governed, construed and enforced in accordance with the applicable laws in the Federative Republic of Brazil.

**14.13. Choice of Jurisdiction.** All disputes arising out of or relating to this Plan shall be resolved by (i) the Reorganization Court, until the conclusion of the judicial reorganization; and (ii) by the competent courts in Brazil or abroad, as established in the original contracts signed with OGX Austria and the respective Creditors, after the conclusion of the judicial reorganization process.

The Plan is signed by the legal representatives duly appointed by OGX Austria. The economic-financial and valuation Reports of the property and assets (**Exhibit 1.1.79**), subscribed by specialized firms, were presented to the Reorganization Court, pursuant to the Bankruptcy Law, on May 28, 2014,, as an integral part of this Plan.

Rio de Janeiro, May 28, 2014.

*[Signature page of the Judicial Reorganization Plan of OGX Austria follows]*

*[Signature page of the Judicial Reorganization Plan of OGX Austria]*

_____

**OGX Austria GmbH – Under Judicial Reorganization**


_____

**Óleo e Gás Participações S.A. – Under Judicial Reorganization**, the current name of OGX Petróleo e Gás Participações S.A.,


_____

**OGX Petróleo e Gás S.A. – Under Judicial Reorganization**


_____

**OGX International GmbH – Under Judicial Reorganization**


_____

**Centennial Asset Mining Fund LLC.,**


_____

**Centennial Asset Brazilian Equity Fund, LLC.**


_____

**Eike Fuhrken Batista**



STATE of NEW YORK       )
                        )              ss:
COUNTY of NEW YORK      )

### *CERTIFICATE OF ACCURACY*

This is to certify that the attached document, *"Exhibit 6 - Plano OGX Austria"* originally written in *Portuguese* is to the best of our knowledge and belief, a true, accurate and complete translation into *English*.

Dated: April 4, 2017

*Allison Carey*
Allison Carey
Consortra Translations

Sworn to and signed before ME this
_____ day of _April_ ,
2017.

Notary Public

JAMES G. MAMERA
Notary Public- State of New York
No. 01MA6157195
Qualified in New York County
My Commission Expires December 4, 2018

Your
legal
translation
partner

**PLANO DE RECUPERAÇÃO JUDICIAL DE**
**OGX AUSTRIA GMBH – EM RECUPERAÇÃO JUDICIAL**

**OGX Austria GmbH – Em Recuperação Judicial** ("OGX Áustria"), sociedade de responsabilidade limitada, inscrita perante o CNPJ sob o nº 16.885.474/0001-06, constituída sob as lei da Áustria, com registro perante a Corte Comercial de Viena sob o nº FN 335512 A, e sede na Schwarzenbergplatz 5/Top nº 2/3, 1030, na Cidade de Viena, apresenta, nos autos do processo de recuperação judicial autuado sob nº 0377620-56.2013.8.19.0001, em curso perante a 4ª Vara Empresarial da Comarca do Rio de Janeiro, Estado do Rio de Janeiro, o seguinte plano de recuperação judicial, em cumprimento ao disposto no Artigo 53 da Lei nº 11.101/2005.

## 1.    Definições e Regras de Interpretação

**1.1.    Definições**. Os termos e expressões utilizados em letras maiúsculas, sempre que mencionados no Plano, terão os significados que lhes são atribuídos nesta **Cláusula 1ª**. Tais termos definidos serão utilizados, conforme apropriado, na sua forma singular ou plural, no gênero masculino ou feminino, sem que, com isso, percam o significado que lhes é atribuído.

**1.1.1.**    "1ª Série do Empréstimo DIP": É a primeira série do financiamento correspondente ao Empréstimo DIP, nos termos das Debêntures 1ª Série, no valor de **R$ 299.200.000,00** (duzentos e noventa e nove milhões e duzentos mil reais), atualizado monetariamente pelo fator de variação da cotação de fechamento da taxa de venda de câmbio de Reais por Dólares dos Estados Unidos da América, nos termos da Escritura de Emissão de Debêntures, que na Data da Emissão correspondia a **US$ 125.000.000,00** (cento e vinte e cinco milhões de dólares norte-americanos), conforme descrita na **Cláusula 4.3** e seguintes deste Plano.

**1.1.2.**    "1º Empréstimo Ponte": É o empréstimo de curtíssimo prazo contraído pela OGPar, no valor de **US$ 15.000.000,00** (quinze milhões de dólares norte-americanos), nos termos do contrato de empréstimo celebrado em 26.12.2013, que foi integralmente pago em 14.03.2014.

**1.1.3.**    "11ª Rodada": É a 11ª Rodada de Licitações de áreas para exploração e produção de petróleo e gás natural nas bacias sedimentares de Barreirinhas, Ceará, Espírito Santo, Foz do Amazonas, Pará-Maranhão, Parnaíba, Pernambuco-Paraíba, Potiguar, Recôncavo, Sergipe-Alagoas e Tucano, realizada pela ANP em 14.05.2013.

**1.1.4.** "2ª Série do Empréstimo DIP": É a segunda série do financiamento correspondente ao Empréstimo DIP, nos termos das Debêntures 2ª Série, no valor de até **R$ 215.424.000,00** (duzentos e quinze milhões e quatrocentos e vinte e quatro mil reais), atualizado monetariamente pelo fator de variação da cotação de fechamento da taxa de venda de câmbio de Reais por Dólares dos Estados Unidos da América até a data da integralização das Debêntures 2ª Série, nos termos da Escritura de Emissão de Debêntures, que na Data da Emissão correspondia a até **US$ 90.000.000,00** (noventa milhões de dólares norte-americanos). O valor final das Debêntures 2ª Série, a ser subscrita pelos Backstop Novos Financiadores (sejam Credores ou não), será equivalente à porção não subscrita das Debêntures 3ª Série, observado o disposto neste Plano e na Escritura de Emissão de Debêntures. As Debêntures 2ª Série poderão ser integralmente canceladas, caso as Debêntures 3ª Série sejam integralmente subscritas, observado o disposto na Escritura de Emissão de Debêntures.

**1.1.5.** "2º Empréstimo Ponte": É o empréstimo extraconcursal de curtíssimo prazo contraído pela OGX, no valor de até **US$ 50.000.000,00** (cinquenta milhões de dólares norte-americanos), nos termos do Contrato de Pré-Pagamento à Exportação (*Export Prepayment Agreement*) celebrado com Credit Suisse Brazil (Bahamas), na qualidade de agente administrativo, em 13.01.2014, que foi integralmente pago em 13.03.2014.

**1.1.6.** "3ª Série do Empréstimo DIP": É a terceira série do financiamento correspondente ao Empréstimo DIP, nos termos das Debêntures 3ª Série, no valor de até **R$ 215.424.000,00** (duzentos e quinze milhões e quatrocentos e vinte e quatro mil reais), atualizado monetariamente pelo fator de variação da cotação de fechamento da taxa de venda de câmbio de Reais por Dólares dos Estados Unidos da América até a data da integralização das Debêntures 3ª Série, nos termos da Escritura de Emissão de Debêntures. O valor final das Debêntures 3ª Série, a serem subscritas por Credores Concursais e/ou Credores Extraconcursais (que aderirem expressamente ao Plano), poderá variar conforme demanda verificada pelas Debêntures 3ª Série. As Debêntures 3ª Série poderão ser canceladas em razão da ausência de Credores interessados na sua subscrição e integralização, conforme descrito na **Cláusula 4.7** do Plano OGX, observado o disposto na Escritura de Emissão de Debêntures.

**1.1.7.** "Acionistas": Eike Batista e todos os demais acionistas diretos e indiretos de OGX sob o controle de Eike Batista, incluindo, mas não se limitando a OGPar, Centennial Asset Mining Fund LLC. e Centennial Asset Brazilian Equity Fund, LLC.

**1.1.8.** "Ações": São ações ordinárias de emissão da OGX, quer existentes na presente data, ou que sejam emitidas em cumprimento do quanto disposto no presente Plano e no Plano OGX.

**1.1.9.** "Administrador Judicial": É a Deloitte Touche Tohmatsu Consultores Ltda., conforme nomeação pelo Juízo da Recuperação, nos termos do Capítulo II, Seção III, da Lei de Falências, ou quem venha a substituí-la de tempos em tempos.

**1.1.10.** "Agente Fiduciário das Debêntures": É a Oliveira Trust Distribuidora de Títulos e Valores Mobiliários S.A., conforme definido na Escritura de Emissão de Debêntures.

**1.1.11.** "Agente Fiduciário dos Bonds": É o Deutsche Bank Trust Company Americas, agente fiduciário nos termos das Escrituras de Emissão dos Bonds, bem como as sociedades que são por ele direta ou indiretamente controladas, seus diretores, administradores e funcionários, ou outro agente que venha a ser indicado em substituição ao Deutsche Bank Trust Company nos termos da Escritura de Emissão dos Bonds.

**1.1.12.** "ANP": Agência Nacional do Petróleo, Gás Natural e Biocombustível.

**1.1.13.** "Aprovação do Plano": É a aprovação do Plano na Assembleia de Credores. Para os efeitos deste Plano, considera-se que a Aprovação do Plano ocorre na data da Assembleia de Credores que votar e aprovar o Plano, ainda que o Plano não seja aprovado por todas as classes de Credores nos termos dos Artigos 45 ou 58 da Lei de Falências.

**1.1.14.** "Assembleia de Credores": É qualquer Assembleia Geral de Credores, realizada nos termos do Capítulo II, Seção IV, da Lei de Falências.

**1.1.15.** "Aumento de Capital da OGX Mediante Capitalização de Crédito": Aumento do capital social da OGX, subscrito pelos Credores Concursais e pelos Credores Extraconcursais (estes últimos desde que tenham aderido expressamente ao presente Plano, conforme aplicável), integralizado mediante capitalização dos Créditos

Concursais e dos Créditos Extraconcursais (detidos pelos Credores Extraconcursais que aderirem ao Plano), na forma do Artigo 171, §2º da Lei das Sociedades por Ações e demais disposições legais aplicáveis. As Ações a serem emitidas no Aumento de Capital da OGX Mediante Capitalização de Crédito serão entregues aos Credores domiciliados nos Estados Unidos da América, em consonância e respeitando os termos da isenção de registro, não exclusiva, prevista e facultada pela Seção 3(a)(10) do *Securities Act of 1933.*

**1.1.16.** "Aumento de Capital da OGX Mediante Conversão das Debêntures": Aumento do capital social da OGX, subscrito pelos detentores das Debêntures, integralizado mediante a conversão das Debêntures em Ações, na forma dos Artigos 57 e 171, §3º da Lei das Sociedades por Ações e demais disposições legais aplicáveis, observado sempre o disposto na Escritura de Emissão de Debêntures.

**1.1.17.** "Backstop Novos Financiadores": São os Novos Financiadores subscritores do Contrato de Subscrição (ou seus sucessores e cessionários, a qualquer título, sejam ou não Credores Concursais) que, observados e satisfeitos certos termos e condições precedentes estabelecidos no Contrato de Subscrição, assumiram a obrigação de subscrever (i) as Debêntures 1ª Série; e (ii) as Debêntures 2ª Série, em valor equivalente às sobras das Debêntures 3ª Série, limitado sempre ao valor máximo em moeda corrente nacional equivalente a **US$ 90.000.000,00** (noventa milhões de dólares norte-americanos) na data da subscrição das Debêntures 2ª Série.

**1.1.18.** "Bondholders": Credores detentores dos Bonds 2018 e dos Bonds 2022, representados ou não pelo Agente Fiduciário dos Bonds.

**1.1.19.** "Bondholders Aderentes": São os titulares de Bonds 2018 e/ou Bonds 2022 que conjuntamente detêm a maioria dos Créditos representados pelos Bonds 2018 e/ou Bonds 2022, com os quais o Grupo OGX celebrou o *Plan Support Agreement* ou que tenham aderido ao *Plan Support Agreement*, de tempos em tempos. Para fins desta cláusula não são considerados Bondholders Aderentes aqueles Bondholders que assinaram originalmente o *Plan Support Agreement* e posteriormente, alienaram ou venham a alienar a terceiros uma parte ou a totalidade dos Bonds 2018 e/ou Bonds 2022 de sua propriedade, desde que tal alienação ocorra nos termos do *Plan Support Agreement*.

**1.1.20.** "Bonds 2018": São os títulos (*Bonds*) no valor total agregado de US$ 2.563.000.000,00 (dois bilhões quinhentos e sessenta e três milhões de dólares norte-americanos), com vencimento em 2018, emitidos pela OGX Áustria e integralmente garantidos por OGPar e OGX, conforme a respectiva Escritura de Emissão dos Bonds.

**1.1.21.** "Bonds 2022": São os títulos (*Bonds*) no valor total agregado de US$ 1.063.000.000,00 (um bilhão e sessenta e três milhões de dólares norte-americanos), com vencimento em 2022, emitidos pela OGX Áustria e integralmente garantidos por OGPar e OGX, conforme a respectiva Escritura de Emissão dos Bonds.

**1.1.22.** "CADE": É o Conselho Administrativo de Defesa Econômica.

**1.1.23.** "CETIP": É a CETIP S.A. – Mercados Organizados.

**1.1.24.** "Comunicado de Subscrição": É o comunicado a ser enviado pela OGX aos Credores Qualificados para a Subscrição das Debêntures 3ª Série, através do qual serão informadas as condições e procedimentos necessários para implementar a subscrição e integralização das Debêntures 3ª Série, na forma da **Cláusula 4.6.3** do Plano OGX.

**1.1.25.** "Condições Precedentes para o Aumento de Capital da OGX Mediante Capitalização de Crédito": São as condições mínimas precedentes para que seja implementada a operação de Aumento de Capital Mediante da OGX Capitalização de Crédito, conforme estabelecidas na **Cláusula 5.1.3.1** do Plano OGX.

**1.1.26.** "Condições Precedentes para o Aumento de Capital da OGX Mediante Conversão das Debêntures": São as condições mínimas precedentes para que seja implementada a operação de Aumento de Capital da OGX Mediante Conversão das Debêntures, conforme estabelecido na **Cláusula 4.8** do Plano OGX, sem prejuízo das condições precedentes para conversão estabelecidas na Escritura de Emissão das Debêntures e no Contrato de Subscrição.

**1.1.27.** "Contrato de Compartilhamento": É o Contrato de Compartilhamento de Garantias e Direitos Entre Credores celebrado, em 09.04.2014, entre Oliveira Trust Distribuidora de Títulos e Valores Mobiliários S.A., Wilmington Trust, National Association, Oliveira Trust Servicer S.A. e OGX, na qualidade de interveniente anuente, conforme aditado de tempos em tempos (**Anexo 1.1.33** do Plano OGX).

**1.1.28.** "Contratos de Garantias DIP – 1ª Série": São os seguintes instrumentos, conforme aditados de tempos em tempos: (i) Instrumento Particular de Alienação Fiduciária de Petróleo e Gás Natural em Garantia; (ii) Instrumento Particular de Alienação Fiduciária de Equipamentos em Garantia; (iii) Instrumento Particular de Cessão Fiduciária de Direitos Creditórios em Garantia (Geral); (iv) Instrumento Particular de Cessão Fiduciária de Direitos Creditórios e Títulos de Crédito em Garantia (Intercompany e Venda de Produto); (v) Instrumento Particular de Cessão Fiduciária de Direitos Creditórios em Garantia (Parnaíba); (vi) Instrumento Particular de Cessão Fiduciária de Direitos Creditórios em Garantia (Créditos Tributários); (vii) Instrumento Particular de Penhor de Direitos Sobre Contrato de Concessão e Outras Avenças (BS-4); (viii) Contrato de Depósito em Garantia e Outras Avenças; (ix) *Deed of Pledge of Parnaíba MPX Receivables*; (x) *Deed of Pledge of Parnaíba Receivables*; (xi) *Deed of Pledge of Shares of Parnaíba B.V.*; e (xii) *U.S. Security Agreement* (**Anexo 1.1.35** do Plano OGX).

**1.1.29.** "Contratos de Garantias DIP – 2ª e 3ª Séries": Além dos Contratos de Garantias DIP – 1ª Série, são os instrumentos que vierem a ser celebrados para: (i) alienação fiduciária de ações de emissão da OGX; (ii) alienação fiduciária de ações de emissão da OGPar; (iii) penhor de direitos de concessão relativos aos contratos de concessão BM-C-39 e BM-C-40 de Tubarão Martelo e aos contratos de concessão da 11ª Rodada; (iv) penhor de ações da OGX International GmbH; (v) penhor de ações da OGX Austria; (vi) penhor de ações da OGX Netherlands B.V.; (vii) penhor de ações da OGX Netherlands Holding B.V., desde que verificadas determinadas condições refletidas na Escritura de Emissão de Debêntures; (viii) qualquer instrumento de garantia sobre os recursos eventualmente obtidos com a venda dos ativos decorrente dos contratos indicados nos itens (i) a (vii) acima; (ix) quaisquer outras garantias a serem constituídas nos termos dos Contratos de Garantias DIP – 1ª Série; e (x) qualquer outro instrumento de garantia necessário para formalizar ou proteger as garantias referidas nos itens (i) a (ix) acima.

**1.1.30.** "Contratos de Garantias DIP": São os Contratos de Garantia – 1ª Série e os Contratos de Garantia – 2ª e 3ª Séries para garantia integral do Empréstimo DIP e do Empréstimo Adicional, observado o disposto no Contrato de Compartilhamento.

**1.1.31.** "Contratos de Garantias– 2ª Empréstimo Ponte": São os seguintes instrumentos que garantiam o 2º Empréstimo Ponte, o qual foi

integralmente pago em 13.03.2014: (i) Instrumento Particular de Cessão Fiduciária de Direitos Creditórios em Garantia N.º CSBRA20140100084; (ii) Instrumento Particular de Cessão Fiduciária de Direitos Creditórios em Garantia N.º CSBRA20140100085; (iii) Instrumento Particular de Cessão Fiduciária de Direitos Creditórios em Garantia N.º CSBRA20140100086; (iv) Instrumento Particular de Penhor de Direitos Sobre Contrato de Concessão e Outras Avenças N.º CSBRA20140100087; (v) Instrumento Particular de Penhor de Petróleo e Gás Natural em Garantia N.º CSBRA20140100088; (vi) Instrumento Particular de Alienação Fiduciária de Equipamentos em Garantia n.º CSBRA20140100083; (vii) *Deed of Pledge of Paranaíba Receivables*; (viii) *Deed of Pledge of Parnaíba Shares*; e (ix) *Deed of Pledge of Paranaíba MPX Receivables*; e (x) *Security Agreement No. CSBBR20140100002*. Os Contratos de Garantias - 2º Empréstimo Ponte já foram todos resolvidos com a liberação das garantias correspondentes, em razão do pagamento do 2º Empréstimo Ponte em 13.03.2014.

**1.1.32.** "Contrato de Subscrição": É o *Senior Secured Superpriority Post-Petition Debentures Subscription Agreement* celebrado entre OGX, OGPar, os Backstop Novos Financiadores, Wilmington Trust, National Association e outros em 07.02.2014, conforme aditado de tempos em tempos (**Anexo 1.1.39** do Plano OGX).

**1.1.33.** "Contrato de Pré-Pagamento de Exportação": É o *Export Prepayment Agreement*, celebrado em 09.04.2014 entre OGX, OGPar, OGX Áustria, OGX International, OGX Netherlands B.V., OGX Netherlands Holding B.V., Parnaíba B.V., Deutsche Bank A.G., London Branch, Wilmington Trust, National Association, Oliveira Trust Distribuidora de Títulos e Valores Mobiliários S.A. e Oliveira Trust Servicer S.A. (**Anexo 1.1.40** do Plano OGX).

**1.1.34.** "Créditos": Créditos e obrigações, sejam materializados ou contingentes, líquidos ou ilíquidos, existentes na Data do Pedido ou cujo fato gerador seja anterior ou coincidente com a Data do Pedido, estejam ou não sujeitos aos efeitos do Plano, inclusive os Créditos Grupo OSX devidos pelo Grupo OGX. Quando aplicável, Créditos também deverá ser interpretado como e incluir os créditos e obrigações, sejam materializados ou contingentes, líquidos ou ilíquidos, existentes na Data do Pedido ou cujo fato gerador seja anterior ou coincidente com a Data do Pedido, estejam ou não sujeitos aos efeitos do Plano e que sejam devidos pela OGPar e/ou OGX Áustria e/ou OGX International. Para que não haja dúvidas, os

créditos decorrentes do Empréstimo DIP e do Empréstimo Adicional não estão incluídos nos Créditos acima para qualquer fim, não estando sujeitos aos termos, efeitos e condições deste Plano em qualquer aspecto.

**1.1.35.** "Créditos com Garantia Real": Créditos Concursais detidos por Credores com Garantia Real.

**1.1.36.** "Créditos Concursais": Créditos detidos pelos Credores Concursais. Quando aplicável, Créditos Concursais também deverá ser interpretado como os créditos detidos pelos credores concursais de OGPar e/ou OGX e/ou OGX International que serão novados e pagos conforme disposições aplicáveis dos Planos Partes Relacionadas OGX.

**1.1.37.** "Créditos Extraconcursais": Créditos detidos pelos Credores Extraconcursais na Data do Pedido. Quando aplicável, Créditos Extraconcursais também deverá ser interpretado como os créditos detidos pelos credores extraconcursais de OGPar e/ou OGX Áustria e/ou OGX International. Para que não haja dúvidas, os Créditos Extraconcursais acima não se confundem com os créditos extraconcursais decorrentes de operações contratadas após a Data do Pedido, inclusive o Empréstimo DIP e o Empréstimo Adicional.

**1.1.38.** "Créditos Grupo OSX": Créditos detidos pelas sociedades do Grupo OSX e objeto de transação formalizada entre o Grupo OGX e o Grupo OSX.

**1.1.39.** "Créditos OGX Áustria": São em conjunto os Créditos detidos pela OGX Áustria contra a OGX e que são decorrentes do Crédito OGX Áustria PPE e do Crédito OGX Áustria Debênture.

**1.1.40.** "Crédito OGX Áustria PPE": É o crédito decorrente do contrato de Pré-Pagamento de Exportações (*Export Prepayment Agreement*) celebrado em 04.10.2012 entre a OGX e a OGX Áustria.

**1.1.41.** "Crédito OGX Áustria Debênture": É o crédito decorrente das Debêntures relativas à 1ª Emissão Pública de Debêntures Simples, Não Conversíveis em Ações, da Espécie Quirografária, em Série Única da OGX emitida em 21.09.2012, adquiridas pela OGX Áustria, conforme aditada.

**1.1.42.** "Créditos Quirografários": Créditos Concursais detidos pelos Credores Quirografários.

**1.1.43.** "Créditos Subrogação OGX Áustria": São os Créditos Subrogação OGX Áustria – Bonds 2018 e os Créditos Subrogação OGX Áustria – Bonds 2022.

**1.1.44.** "Créditos Subrogação OGX Áustria – Bonds 2018": É o crédito a ser detido pela OGX contra a OGX Áustria em razão da subrogação operada em favor da OGX pelo pagamento dos Créditos Concursais dos Bondholders detentores dos Bonds 2018 mediante a entrega de Ações no âmbito da operação de Aumento de Capital da OGX Mediante Capitalização de Crédito, na forma da **Cláusula 5.1.3** e seguintes do Plano OGX. Para que não haja dúvidas, o Crédito Subrogação OGX Áustria – Bonds 2018 sobreviverá ao eventual cancelamento dos Bonds, após a entrega das Ações aos Bondholders nos termos do Plano OGX, permanecendo válido, líquido, certo e exigível na forma deste Plano e do Plano OGX.

**1.1.45.** "Créditos Subrogação OGX Áustria – Bonds 2022": É o crédito a ser detido pela OGX contra a OGX Áustria em razão da subrogação operada em favor da OGX pelo pagamento dos Créditos Concursais dos Bondholders detentores dos Bonds 2022 mediante a entrega de Ações no âmbito da operação de Aumento de Capital da OGX Mediante Capitalização de Crédito, na forma da **Cláusula 5.1.3** e seguintes do Plano OGX. Para que não haja dúvidas, o Crédito Subrogação OGX Áustria – Bonds 2022 sobreviverá ao eventual cancelamento dos Bonds, após a entrega das Ações aos Bondholders nos termos do Plano OGX, permanecendo válido, líquido, certo e exigível na forma deste Plano e do Plano OGX.

**1.1.46.** "Créditos Trabalhistas": Créditos e direitos detidos pelos Credores Trabalhistas.

**1.1.47.** "Credores": Pessoas, físicas ou jurídicas, detentoras de Créditos, estejam ou não relacionadas na Lista de Credores. Quando aplicável, Credores também deverá ser interpretado como sendo as pessoas físicas ou jurídicas detentoras de Créditos contra o Grupo OGX, estejam ou não relacionadas na Lista de Credores de OGPar e/ou OGX e/ou OGX International.

**1.1.48.** "Credores com Garantia Real": Credores Concursais cujos créditos são assegurados por direitos reais de garantia (tal como um penhor ou uma hipoteca), até o limite do valor do respectivo bem, nos termos do Artigo 41, II, da Lei de Falências.

**1.1.49.** "Credores Concursais": Credores cujos Créditos e direitos podem ser alterados pelo Plano nos termos da Lei de Falências. Tais Credores são divididos, para os efeitos de votação do Plano ou eleição do Comitê de Credores em Assembleia de Credores, em três classes (Credores Trabalhistas, Credores com Garantia Real e Credores Quirografários). Quando aplicável, Credores Concursais também deverá ser interpretado como sendo os Credores do Grupo OGX, cujos créditos e direitos podem ser alterados pelos Planos Partes Relacionadas OGX, nos termos da Lei de Falências. Tais Credores são divididos, para os efeitos de votação dos Planos Partes Relacionadas OGX ou eleição do Comitê de Credores em Assembleia de Credores de cada uma das sociedades que compõem o Grupo OGX, em três classes (Credores Trabalhistas, Credores com Garantia Real e Credores Quirografários).

**1.1.50.** "Credores Extraconcursais": Para fins deste Plano são os Credores da OGX Áustria e das demais sociedades do Grupo OGX, quando aplicável (i) cujo fato gerador de seu direito de crédito seja posterior à Data do Pedido, mas decorra de instrumento celebrado antes da Data do Pedido, observado nessa hipótese que o crédito correspondente não se qualifica como crédito extraconcursal para fins dos Artigos 67, 84, inciso V e 149 da Lei de Falências em caso de superveniente decretação da falência da OGX Áustria ou qualquer outra empresa do Grupo OGX; ou (ii) cujo direito de tomar posse de bens ou de executar seus direitos ou garantias derivados de contratos celebrados antes ou após a Data do Pedido não pode ser alterado pelo Plano, de acordo com o Artigo 49, §§ 3º e 4º, da Lei de Falências.

**1.1.51.** "Credores Financeiros": Credores Quirografários que são titulares de Créditos decorrentes de operações financeiras ou bancárias, inclusive, mas sem se limitar, aos Bondholders.

**1.1.52.** "Credores Qualificados para Subscrição das Debêntures 3ª Série": São os Credores que constem da Lista de Credores vigente na data da Assembleia de Credores que deliberar sobre o Plano e/ou Planos Partes Relacionadas OGX que tenham (i) enviado à OGX, ao Agente Fiduciário das Debêntures e ao Administrador Judicial, no prazo de até 5 (cinco) Dias Úteis contados da Aprovação do Plano, a Notificação de Interesse de Subscrição das Debêntures 3ª Série, observando as condições estabelecidas na **Cláusula 4.6.2** do Plano OGX; e (ii) para o caso de Credores não residentes no Brasil,

*7132*

cumprido com as providências descritas no **Anexo 4.6** do Plano OGX. Para fins deste Plano serão considerados Credores Qualificados para Subscrição das Debêntures 3ª Série todos os Bondholders que tenham adotado o procedimento para individualização do seu direito de participação, petição, voz e voto na Recuperação Judicial e em qualquer Assembleia de Credores, conforme procedimento estabelecido no Edital Bondholders, ainda que seus respectivos Créditos não constem individualmente na Lista de Credores vigente na data da Assembleia de Credores que deliberar sobre o Plano e/ou Planos Partes Relacionadas OGX e estejam relacionados apenas em nome do Agente Fiduciário dos Bonds. A OGX não se responsabiliza pelos Credores não residentes que não puderem subscrever, integralizar ou receber as Debêntures 3ª Série por não atenderem aos requisitos da legislação vigente para formalizar o respectivo investimento.

**1.1.53.** "Credores Quirografários": Credores Concursais detentores de créditos quirografários, tal como consta dos Artigos 41, inciso III e 83, inciso VI, ambos da Lei de Falências.

**1.1.54.** "Credores Trabalhistas": Credores Concursais detentores de créditos derivados da legislação do trabalho ou decorrentes de acidente de trabalho, nos termos do Artigo 41, I, da Lei de Falências.

**1.1.55.** "CVM": É a Comissão de Valores Mobiliários.

**1.1.56.** "Data de Emissão": Para fins deste Plano, 12.02.2014, data em que as Debêntures 1ª Série, Debêntures 2ª Série e Debêntures 3ª Série foram emitidas, nos termos da Escritura de Emissão de Debêntures.

**1.1.57.** "Data do Pedido": 30.10.2013, data em que o pedido de recuperação judicial do Grupo OGX foi ajuizado.

**1.1.58.** "Debêntures": São as Debêntures 1ª Série, as Debêntures 2ª Série e as Debêntures 3ª Série, as quais serão subscritas e integralizadas nos termos e condições estabelecidos neste Plano, no Plano OGX e na Escritura de Emissão de Debêntures.

**1.1.59.** "Debêntures 1ª Série": São as Debêntures relativas à 1ª Série do Empréstimo DIP, as quais foram emitidas na forma da Escritura de Emissão de Debêntures e já subscritas e integralizadas pelos Backstop Novos Financiadores.

**1.1.60.** "Debêntures 2ª Série": São as Debêntures relativas à 2ª Série do Empréstimo DIP, já emitidas e que serão subscritas e integralizadas pelos Backstop Novos Financiadores (sejam Credores ou não), na forma da Escritura de Emissão de Debêntures, e desde que observadas as condições precedentes deste Plano e do Contrato de Subscrição.

**1.1.61.** "Debêntures 3ª Série": São as Debêntures relativas à 3ª Série do Empréstimo DIP, já emitidas e que serão subscritas e integralizadas pelos Credores na forma da Escritura de Emissão de Debêntures e deste Plano.

**1.1.62.** "Dia Útil": Para fins deste Plano, Dia Útil será qualquer dia, que não seja sábado, domingo ou feriado municipal nas Cidades de São Paulo, Estado de São Paulo ou Rio de Janeiro, Estado do Rio de Janeiro, ou que, por qualquer motivo, não haja expediente bancário na Cidade de São Paulo, Estado de São Paulo ou na Cidade do Rio de Janeiro, Estado do Rio de Janeiro, ressalvados os casos em que os pagamentos ocorram através da CETIP, hipótese na qual Dia Útil será considerado como qualquer dia que não seja sábado, domingo ou feriado declarado nacional.

**1.1.63.** "Edital Bondholders": Edital disponibilizado no Diário de Justiça Eletrônico do Tribunal de Justiça do Estado do Rio de Janeiro em 02.05.2014 contendo o regramento estabelecido pelo Juízo da Recuperação a respeito da segregação e individualização do direito de participação, petição, voz e voto dos Bondholders na Recuperação Judicial e em qualquer Assembleia de Credores do Grupo OGX.

**1.1.64.** "Efeito Adverso Relevante": É qualquer efeito adverso relevante sobre (a) o negócio, a condição (financeira, econômica, operacional ou outra), as perspectivas ou os resultados das operações da OGX Áustria, da OGX, dos Acionistas, dos Garantidores e/ou de suas respectivas subsidiárias ou afiliadas, inclusive qualquer efeito adverso relevante sobre a capacidade de produção esperada do campo de exploração de petróleo de Tubarão Martelo; (b) a capacidade da OGX Áustria, da OGX e/ou de qualquer dos Garantidores em implementar, consumar e/ou cumprir (incluindo o efetivo descumprimento de) qualquer de suas obrigações nos termos deste Plano, da Escritura de Emissão de Debêntures, do Empréstimo Adicional, dos Contratos de Garantia DIP e/ou do Contrato de Subscrição; (c) a legalidade, a validade, o efeito vinculante ou a exequibilidade contra a OGX e/ou qualquer dos Garantidores deste Plano, da Escritura de Emissão de

Debêntures, do Empréstimo Adicional, dos Contratos de Garantia DIP e/ou do Contrato de Subscrição; (d) os direitos de qualquer titular de Debêntures nos termos da Escritura de Emissão de Debêntures, dos Novos Financiadores do Empréstimo Adicional e/ou dos Contratos de Garantia DIP; e/ou das Garantias DIP.

**1.1.65.** "<u>Eike Batista</u>": Eike Fuhrken Batista, brasileiro, separado judicialmente, engenheiro metalúrgico, residente e domiciliado em Praia do Flamengo, nº 154, 10º andar, Rio de Janeiro – RJ, inscrito no CPF sob nº 664.976.807-30.

**1.1.66.** "<u>Empréstimo Adicional</u>": É o financiamento extraconcursal super-prioritário contraído pela OGX, no valor de **US$ 73.170.731,71** (setenta e três milhões cento e setenta mil e setecentos e trinta e um dólares norte-americanos e setenta e um centavos), nos termos do Contrato de Pré Pagamento de Exportação, o qual terá o tratamento previsto nos Artigos 67, 84 e 149 da Lei de Falências e demais disposições legais aplicáveis. Para que não haja dúvidas, o Empréstimo Adicional corresponde ao Financiamento Suplementar constante da Escritura de Emissão de Debêntures, Contrato de Compartilhamento e Contratos de Garantias DIP.

**1.1.67.** "<u>Empréstimo DIP</u>": É o financiamento extraconcursal super-prioritário já concedido e a ser concedido pelos Backstop Novos Financiadores e os Novos Financiadores, mediante a subscrição das Debêntures, nos termos da Escritura de Emissão de Debêntures, o qual terá o tratamento previsto nos Artigos 67, 84 e 149 da Lei de Falências e demais disposições legais aplicáveis, nos termos da **Cláusula 4.3** e seguintes do Plano OGX e da Escritura de Emissão das Debêntures.

**1.1.68.** "<u>Empréstimos Ponte</u>": São o 1º Empréstimo Ponte e o 2º Empréstimo Ponte, em conjunto.

**1.1.69.** "<u>Escritura de Emissão de Debêntures</u>": É o Instrumento Particular de Escritura da 3ª (Terceira) Emissão de Debêntures Simples, Não Conversíveis em Ações, a ser Convolada em Conversível em Ações da Espécie com Garantia Real, com Garantia Fidejussória Adicional, em Três Séries, da OGX Petróleo e Gás S.A., celebrado entre a OGX, o Agente Fiduciário das Debêntures, OGPar e outros, conforme aditada de tempos em tempos. O Terceiro Aditamento da Escritura de Emissão de Debêntures para inclusão das Debêntures 3ª Série e outras disposições específicas deverá refletir materialmente os termos e condições da minuta incluída no **Anexo 1.1.80** do Plano OGX.

**1.1.70.** "Escrituras de Emissão dos Bonds": São as escrituras de emissão dos Bonds 2018 e dos Bonds 2022 denominadas, respectivamente: (a) "*Indenture Dated as of June 3, 2011, U.S.\$ 2,563,000,000 8,500% Senior Notes Due 2018*"; e (b) "*Indenture Dated as of March 30, 2012, U.S.\$ 1,063,000,000 8,375% Senior Notes Due 2022*", emitidas por OGX Áustria, com garantia de OGPar e OGX.

**1.1.71.** "Garantias DIP": É o pacote de garantias outorgado pelo Grupo OGX aos Novos Financiadores do Empréstimo DIP e Empréstimo Adicional, conforme descrito na **Cláusula 4.3.5** do Plano OGX e nos termos dos Contratos de Garantias DIP, da Escritura de Emissão de Debêntures e do Contrato de Compartilhamento.

**1.1.72.** "Garantias Ponte": É o pacote de garantias outorgado pelo Grupo OGX aos Novos Financiadores do 2º Empréstimo Ponte, nos termos dos Contratos de Garantias – 2º Empréstimo Ponte, as quais foram integralmente liberadas com o adimplemento do 2º Empréstimo Ponte.

**1.1.73.** "Garantidores": São as seguintes sociedades do Grupo OGX, que prestaram todas ou algumas das Garantias Ponte e/ou Garantias DIP, conforme aplicável, aos Novos Financiadores em contrapartida à concessão dos Recursos Novos: OGPar, OGX Áustria, OGX International, OGX Netherlands B.V., OGX Netherlands Holding B.V e Parnaíba B.V.

**1.1.74.** "Grupo OGX": Sociedades que são direta ou indiretamente controladas pela OGPar incluindo, mas não se limitando à OGX, OGX Áustria, OGX International e suas respectivas subsidiárias e afiliadas.

**1.1.75.** "Grupo OSX": Sociedades que são direta ou indiretamente controladas pela OSX Brasil S.A. – Em Recuperação Judicial, incluindo, mas não se limitando, à OSX Serviços Operacionais Ltda. – Em Recuperação Judicial, OSX Construção Naval S.A. – Em Recuperação Judicial, OSX GmbH, OSX Leasing Group B.V., OSX1 Leasing B.V., OSX2 Leasing B.V., OSX WHP 1&2 Leasing B.V., OSX2 Holding B.V., OSX3 Holdco B.V., OSX3 Holding B.V. e OSX3 Leasing B.V.

**1.1.76.** "Homologação Judicial do Plano": É a decisão judicial proferida pelo Juízo da Recuperação que concede a Recuperação Judicial, nos termos do Artigo 58, caput e/ou §1º da Lei de Falências. Para os

efeitos deste Plano, considera-se que a Homologação Judicial do Plano ocorre na data da publicação, no Diário de Justiça Eletrônico do Estado do Rio de Janeiro, da decisão concessiva da Recuperação Judicial.

**1.1.77.** "Incorporação": Operação consistente na incorporação da OGPar pela OGX na forma descrita na **Cláusula 8ª** e seguintes deste Plano.

**1.1.78.** "Juízo da Recuperação": É o Juízo da 4ª Vara Empresarial da Comarca do Rio de Janeiro, Estado do Rio de Janeiro.

**1.1.79.** "Laudos": São os laudos econômico-financeiros que demonstram a viabilidade econômica da OGX Áustria, bem como a avaliação dos bens da OGX Áustria e atestam que a perspectiva de recuperação dos Credores neste Plano é melhor do que as perspectivas de recuperação em caso de falência da OGX Áustria, nos termos do Artigo 53, da Lei de Falências (**Anexo 1.1.79**).

**1.1.80.** "Lei das Sociedades por Ações": A Lei nº 6.404, de 15 de dezembro de 1976.

**1.1.81.** "Lei de Falências": A Lei nº 11.101, de 9 de fevereiro de 2005.

**1.1.82.** "Lista de Credores": É a lista de credores apresentada pelo Administrador Judicial e publicada em 02.05.2014, respeitadas e observadas eventuais decisões supervenientes, quanto ao valor, classificação e natureza dos Créditos, proferidas pelo Juízo da Recuperação até a data do Aumento de Capital da OGX Mediante Capitalização de Crédito; e, posteriormente, a lista de credores consolidada no Quadro Geral de Credores.

**1.1.83.** "Notificação de Interesse de Subscrição das Debêntures 3ª Série": É a notificação a ser encaminhada pelos Credores Qualificados para Subscrição das Debêntures 3ª Série à OGX, com cópia para a OGX Áustria, ao Agente Fiduciário das Debêntures e ao Administrador Judicial (a) manifestando sua intenção e comprometimento irrevogável e irretratável em subscrever integralmente a sua quota parte das Debêntures 3ª Série, correspondente ao valor proporcional do seu Crédito, por meio de um investimento direto (para o caso de Credores não residentes no Brasil); (b) indicando sua qualificação e os dados de contato, inclusive endereço físico e eletrônico para recebimento do Comunicado de Subscrição de que trata este Plano; (c) na hipótese de pessoa jurídica, cópia dos estatutos e/ou contratos

sociais e demais documentos que atestem os poderes do subscritor da Notificação de Interesse de Subscrição das Debêntures 3ª Série para representar e vincular o Credor; e (d) na hipótese do Credor não ter residência no Brasil, as seguintes informações e comprovantes necessários para o registro do investimento perante o Banco Central do Brasil: (i) comprovante de inscrição perante a Secretaria da Receita Federal do Brasil (no Cadastro Nacional de Pessoas Jurídicas – CNPJ ou no Cadastro de Pessoas Físicas – CPF, conforme o caso); e (ii) comprovante de registro perante o Banco Central do Brasil (Cadastro de Pessoas Físicas e Jurídicas - Capitais Internacionais – CADEMP (conforme instruções contidas no "Cademp - Manual do Declarante", disponível em www.bcb.gov.br » Câmbio e Capitais Estrangeiros » Manuais"). Essas informações e documentos deverão ser disponibilizadas à OGX no prazo estabelecido no **Anexo 4.6** do Plano OGX. Ao encaminhar a Notificação de Interesse de Subscrição das Debêntures 3ª Série, os Credores Qualificados para Subscrição das Debêntures 3ª Série declaram e reconhecem, para os devidos fins de direito, em caráter irrevogável e irretratável que (i) não são Partes Relacionadas; e (ii) estão cientes de que a aquisição e investimento nas Debêntures envolvem riscos relevantes, tendo em vista, principalmente, o fato de a OGX estar em Recuperação Judicial e o pagamento das Debêntures ser incerto, sendo capazes de individualmente ou por meio de assessores especialmente contratados para este fim, analisar a conveniência e oportunidade desta subscrição à luz de sua própria capacidade financeira.

**1.1.84.** "Novo Mercado": É o segmento de listagem da BM&FBOVESPA – Bolsa de Valores, Mercadorias e Futuros ("BM&FBOVESPA") destinado à negociação de ações emitidas por empresas que se comprometem, voluntariamente, com a adoção de práticas de governança corporativa e divulgação de informações adicionais em relação ao que é exigido pela legislação.

**1.1.85.** "Novos Financiadores": São os Credores Concursais e/ou Credores Extraconcursais e/ou terceiros, incluindo bancos intermediários, agentes de financiamento, entre outros, que já emprestaram ou que vierem a emprestar Recursos Novos à OGX, nos termos deste Plano e do Plano OGX, mediante a subscrição do 1º Empréstimo Ponte, 2º Empréstimo Ponte, Empréstimo DIP e/ou do Empréstimo Adicional, conforme estabelecido na **Cláusula 4ª** e seguintes deste Plano e do Plano OGX. Os Novos Financiadores são e serão, para todos os fins legais, titulares de créditos extraconcursais e pagos com precedência absoluta aos demais Créditos, inclusive os Créditos Extraconcursais,

em hipótese de superveniente falência da OGX Áustria, da OGX ou qualquer sociedade do Grupo OGX, nos termos dos Artigos 67, 84 e 149 da Lei de Falências e demais disposições legais aplicáveis.

**1.1.86.** "OGPar": Óleo e Gás Participações S.A. – Em Recuperação Judicial, atual denominação de OGX Petróleo e Gás Participações S.A., sociedade por ações com sede na Cidade do Rio de Janeiro, Estado do Rio de Janeiro, na Rua do Passeio, nº 56, 10º, 11º e 12º andares, Centro, inscrita perante o CNPJ/MF sob o nº 07.957.093/0001-96, integrante do Grupo OGX para fins deste Plano.

**1.1.87.** "OGX": OGX Petróleo e Gás S.A. – Em Recuperação Judicial, sociedade anônima inscrita no CNPJ/MF sob o nº 08.926.302/0001-05, com sede na Praça Mahatma Gandhi, n.º 14, Cidade do Rio de Janeiro, Estado do Rio de Janeiro.

**1.1.88.** "OGX Áustria": Tem o significado atribuído no preâmbulo deste Plano.

**1.1.89.** "OGX International": OGX International GmbH – Em Recuperação Judicial sociedade constituída sob as leis da República da Áustria, com registro na Corte Comercial de Viena sob n.º FN 335513B, e sede na Schwarzenbergplatz 5/Top Nr. 2/3, 1030, na cidade de Viena.

**1.1.90.** "OGX Reestruturada": Tem o significado atribuído na **Cláusula 8.4** deste Plano.

**1.1.91.** "Parnaíba B.V.": Parnaíba B.V., sociedade (*Besloten Vennootschap*) constituída e existente de acordo com as leis da Holanda, com sede em Haia, na Parkstraat 83, 209 / 210 Office, 2514JG's-Gravenhage.

**1.1.92.** "Partes Isentas": São a OGX Áustria, o Grupo OGX, os Acionistas, os Novos Financiadores, os Backstop – Novos Financiadores, os Bondholders Aderentes, o Agente Fiduciário dos Bonds, e suas respectivas controladas, subsidiárias, afiliadas e coligadas e outras sociedades pertencentes ao mesmo grupo societário e econômico, seus diretores, conselheiros, acionistas, minoritários, sócios, agentes, funcionários, representantes, assessores, consultores e advogados, sucessores e cessionários, para fins deste Plano.

**1.1.93.** "Partes Relacionadas": São (i) as sociedades, direta ou indiretamente, controladas pelo Sr. Eike Batista, inclusive as sociedades do Grupo OSX; e/ou (ii) administradores de qualquer sociedade do Grupo OGX

em qualquer tempo e/ou do Grupo OSX; e/ou (iii) familiares até o terceiro grau de qualquer das pessoas indicadas nos itens (i) e (ii) acima.

**1.1.94.** *"Plan Support Agreement"*: É o contrato celebrado entre o Grupo OGX e os Bondholders Aderentes, em 24.12.2013, com a finalidade de estabelecer as condições básicas para a reestruturação do Grupo OGX.

**1.1.95.** "Plano": Este plano de recuperação judicial, conforme aditado, modificado ou alterado de tempos em tempos.

**1.1.96.** "Plano OGX": É o plano de recuperação judicial apresentado por OGX, conforme aditado, modificado ou alterado de tempos em tempos.

**1.1.97.** "Plano OGPar": É o plano de recuperação judicial apresentado por OGPar, conforme aditado, modificado ou alterado de tempos em tempos.

**1.1.98.** "Planos Partes Relacionadas OGX": São, em conjunto, o Plano OGPar, Plano OGX e Plano OGX International, conforme aditados, modificados ou alterados de tempos em tempos.

**1.1.99.** "Recuperação Judicial": Processo de recuperação judicial autuado sob nº 0377620-56.2013.8.19.0001, em curso perante o Juízo da Recuperação.

**1.1.100.** "Recursos Novos": São todos os recursos provenientes do 1º Empréstimo Ponte, do 2º Empréstimo Ponte, do Empréstimo DIP e do Empréstimo Adicional, já concedidos ou que venham a ser concedidos pelos Novos Financiadores.

**1.1.101.** "Registro de Companhia Aberta": É o procedimento a ser adotado pela OGX para obtenção de registro, na categoria A, de emissora de valores mobiliários admitidos à negociação em mercados regulamentados de valores mobiliários perante a CVM, nos termos da Instrução CVM nº. 480, de 7 de dezembro de 2009. O Registro de Companhia Aberta é condição essencial para implementação do Plano OGX e deste Plano, de forma que eventual atraso na obtenção do referido Registro de Companhia Aberta poderá comprometer ou afetar o tempo de verificação das medidas de reestruturação previstas no Plano OGX e neste Plano.

**1.1.102.** "<u>Resolução do Plano</u>": Efeito decorrente da verificação de qualquer uma das condições resolutivas listadas na **Cláusula 10ª** deste Plano.

**1.1.103.** "Tubarão Azul": É o campo localizado na Bacia de Campos, Estado do Rio de Janeiro, onde se encontra o bloco exploratório CM-592, cujos direitos de concessão foram outorgados à OGX através dos Contrato de Concessão BM-C-41.

**1.1.104.** "Tubarão Martelo": É o campo localizado na Bacia de Campos, Estado do Rio de Janeiro, onde se encontram os blocos exploratórios CM-466 e CM-499, cujos direitos de concessão foram outorgados à OGX através dos Contratos de Concessão BM-C-39 e BM-C-40, respectivamente.

**1.2.** **Cláusulas e Anexos.** Exceto se especificado de forma diversa, todas as Cláusulas e Anexos mencionados neste Plano referem-se a Cláusulas e Anexos deste Plano. Referências a cláusulas ou itens deste Plano referem-se também às respectivas subcláusulas e subitens.

**1.3.** **Títulos.** Os títulos dos Capítulos e das Cláusulas deste Plano foram incluídos exclusivamente para referência e não devem afetar sua interpretação ou o conteúdo de suas previsões.

**1.4.** **Termos.** Os termos "incluem", "incluindo" e termos similares devem ser interpretados como se estivessem acompanhados da expressão "mas não se limitando a".

**1.5.** **Referências.** As referências a quaisquer documentos ou instrumentos incluem todos os respectivos aditivos, consolidações e complementações, exceto se de outra forma expressamente previsto.

**1.6.** **Disposições Legais.** As referências a disposições legais e leis devem ser interpretadas como referências a essas disposições tais como vigentes nesta data ou em data que seja especificamente determinada pelo contexto.

**1.7.** **Prazos.** Todos os prazos previstos neste Plano serão contados na forma determinada no Artigo 132 do Código Civil, desprezando-se o dia do começo e incluindo-se o dia do vencimento. Quaisquer prazos deste Plano (sejam contados em Dias Úteis ou não) cujo termo final caia em um dia que não seja um Dia Útil, serão automaticamente prorrogados para o Dia Útil imediatamente posterior.

## 2. Considerações Gerais

**2.1. Histórico.** A OGX Áustria é sociedade pertencente ao Grupo OGX, integralmente controlada pela OGX International, a qual foi constituída como veículo de intermediação para a comercialização no exterior de óleo e gás produzidos pelo Grupo OGX.

Criado em 2007, o Grupo OGX realizou no Brasil, ao longo dos últimos 6 (seis) anos, atividades exploratórias de petróleo e gás nas Bacia de Campos, Santos, Espírito Santo, Parnaíba e Pará-Maranhão. Para consecução dessa inédita campanha exploratória, o Grupo OGX investiu mais de R$ 10 bilhões em suas atividades no Brasil, o que o torna o maior investidor privado no segmento em que atua.

**2.2. Estrutura societária do Grupo OGX**: O Grupo OGX está estruturado conforme organograma abaixo reproduzido:



**2.3. Captação de Investimentos.** Uma parte significativa dos investimentos realizados pelo Grupo OGX no estratégico ramo em que atua foi obtida por meio da captação de recursos junto a investidores internacionais, notadamente por meio da emissão dos Bonds 2018 e Bonds 2022.

Nesse sentido, em 26.05.2011, a OGPar emitiu os Bonds 2018, no valor total de US$ 2.563.000.000,00 (dois bilhões quinhentos e sessenta e três milhões de dólares norte-americanos), os quais foram posteriormente assumidos pela OGX Áustria, na qualidade de emissora dos Bonds 2018. Os recursos líquidos obtidos com a emissão dos Bonds 2018 e sua oferta a investidores institucionais qualificados foram integralmente destinados ao caixa do Grupo OGX, mediante a celebração de operação de pré-pagamento à exportação entre OGX e OGX Áustria, para fazer frente à inédita

campanha exploratória e ao desenvolvimento da produção nos blocos descobertos até que o Grupo OGX se tornasse autofinanciável.

Da mesma forma, em 30.03.2012, a OGX Áustria emitiu os Bonds 2022, no valor total de US$ 1.063.000.000,00 (um bilhão e sessenta e três milhões de dólares norte-americanos), os quais foram igualmente destinados a investidores institucionais qualificados. Os recursos líquidos da emissão dos Bonds 2022 também foram destinados ao caixa do Grupo OGX, de forma a viabilizar a implementação do plano de negócios do Grupo OGX, mediante a emissão de debêntures pela OGX, as quais foram subscritas pela OGX Áustria.

Em contrapartida aos recursos obtidos em decorrência da emissão dos Bonds 2018 e dos Bonds 2022, a OGX e a OGPar garantem integralmente os Bonds 2018 e Bonds 2022, como principais devedoras e pagadoras solidárias para os fins de direito.

Em que pesem os significativos investimentos realizados pelo Grupo OGX nos projetos de exploração do setor de óleo e gás definidos em seu plano de negócios, uma série de eventos adversos e externos ao Grupo OGX modificou, sensivelmente, a dinâmica das atividades por ele desenvolvidas.

**2.4.    Razões da Crise.** Conforme amplamente exposto no âmbito da Recuperação Judicial, a OGX enfrenta as consequências diretas da ocorrência de uma série de fatos adversos relacionados ao risco da atividade que desenvolve. Embora a investigação técnica empreendida em diferentes campos, cujos direitos de exploração foram concedidos ao Grupo OGX, tenha resultado em previsões de produção muito significativas, a exploração mostrou-se comercialmente inviável em alguns deles. Em que pese a extração de petróleo e gás em determinados blocos concedidos pela União ter correspondido às previsões técnicas, a produção em outros blocos se mostrou insuficiente ou antieconômica, de forma que os resultados financeiros esperados não foram alcançados. Esse fato repercutiu de forma muito negativa nas receitas do Grupo OGX e, por consequência, tornou-o incapaz de honrar com os compromissos assumidos perante fornecedores e instituições financiadoras.

Além disso, o inadimplemento de Petronas Brasil E&P Ltda. em concluir a transação de compra de 40% (quarenta por cento) dos blocos de Tubarão Martelo, conforme contratada no *Farmout Agreement* (Contrato de Farmout), também contribuiu de forma determinante para a crise de liquidez experimentada pelo Grupo OGX, a qual implicou o pedido de Recuperação Judicial.

**2.5.    Objetivo e Considerações sobre o Plano.** O objetivo do Plano é permitir que a OGX Áustria e o Grupo OGX superem sua crise econômico-financeira, implementem as medidas cabíveis para sua reorganização operacional, atenda aos interesses e preservem os direitos dos Credores e demais interessados. Para tanto, o

presente Plano busca estabelecer a forma de liquidação de suas dívidas concursais, convertendo-as em capital da OGX, e de obtenção de Recursos Novos, viabilizando, dessa forma, não só a manutenção das atividades do Grupo OGX, mas também a continuidade do crescimento através da retomada da capacidade de investimento.

    **2.5.1.** Este Plano estabelece proposta de reestruturação e pagamento dos Credores e respectivos Créditos Concursais em condições mais favoráveis e vantajosas do que aquelas que se verificariam em hipótese de decretação da falência da OGX Áustria, mediante capitalização da dívida com a consequente entrega das Ações resultante do Aumento de Capital da OGX Mediante Capitalização de Crédito, com a possibilidade de recebimento em dinheiro, resultante da alienação das Ações, para aqueles Credores que assim desejarem, nos termos do Plano OGX. Ademais, todos os Credores Concursais tiveram o direito de (a) apresentar objeções ao Plano nos termos do Artigo 55 da Lei de Falências; e (b) participar da deliberação e votação deste Plano na Assembleia de Credores, em igualdade de condições. Assim o Plano é justo, razoável e equânime sob o ponto de vista material e processual.

**2.6.   Novos Recursos e Investimentos.** Como é notório, o setor de óleo e gás demanda vultosa alocação de recursos financeiros. Diante da série de fatos adversos relacionados ao risco da atividade desenvolvida pelo Grupo OGX e que a acometeram nos últimos meses, o Grupo OGX viu-se sem condições para financiar a extração de petróleo dos campos de Tubarão Martelo e Tubarão Azul (em fase de testes), o que culminou no ajuizamento do pedido da Recuperação Judicial.

Não obstante, desde Agosto de 2013, ou seja, antes da Data do Pedido, o Grupo OGX tem se dedicado a buscar a captação de novos recursos no mercado local e internacional e, para tanto, tem contado com o trabalho conjunto de seus administradores, assessores e consultores altamente qualificados e com ampla experiência em projetos de reestruturação financeira.

Após uma minuciosa análise da situação financeira e operacional do Grupo OGX, concluiu-se que o Grupo OGX precisaria e precisa receber, além das receitas previstas em seu fluxo de caixa e projeções, novos financiamentos para custear o desenvolvimento de suas atividades e a preservação de seus ativos durante o temporário processo de reestruturação em que se encontra. A obtenção de tais recursos financeiros foi acertadamente vista como indispensável para a estabilização do fluxo de caixa do Grupo OGX e, consequentemente, a viabilidade da reestruturação e soerguimento do Grupo OGX, mediante implementação do seu plano de negócios.

Nesse contexto, após um detido processo de captação de investimentos perante vários potenciais investidores, conduzido de boa-fé pelo Grupo OGX e seus administradores, assessores e consultores, a única operação firme de financiamento tempestivamente apresentadas ao Grupo OGX por investidores de inquestionável idoneidade e capacidade financeira, em montante e prazo adequados, foi o Empréstimo DIP, nos termos do Contrato de Subscrição e da Escritura de Emissão de Debêntures.

A segurança da contratação do Empréstimo DIP conferiu ao Grupo OGX as condições necessárias para dar continuidade ao desenvolvimento de suas atividades, bem como à busca por novos investimentos. Nesse sentido, a OGX rapidamente se tornou mais atrativa para outros investidores, viabilizando a celebração dos instrumentos relativos aos Empréstimos-Ponte e ao Empréstimo Adicional.

**2.7.   Autorização para Outorga de Garantias.** Em razão da necessidade de obtenção dos Recursos Novos e de forma a viabilizar a contratação do Empréstimo DIP e do Empréstimo Adicional, em 27.01.2014, o Juízo da Recuperação autorizou o Grupo OGX a onerar bens do seu ativo permanente para garantia do Empréstimo DIP, a teor dos Artigos 66 e 67 da Lei de Falências. A decisão do Juízo da Recuperação foi integralmente mantida pelo E. Tribunal de Justiça do Rio de Janeiro, nos termos do acórdão da 14ª Câmara de Direito Privado proferido em 30.04.2014. O presente Plano também autoriza o Grupo OGX a onerar outros bens do seu ativo permanente para garantia do Empréstimo DIP e do Empréstimo Adicional, inclusive nos termos dos Contratos de Garantia DIP – 2ª e 3ª Séries, a serem compartilhadas nos termos do Contrato de Compartilhamento.

**3.      Visão Geral sobre as Medidas de Recuperação**

**3.1.   Concessão de Recursos Novos.** Para que o Grupo OGX possa recompor o capital de giro necessário para continuidade de suas atividades e preservação de seus ativos, bem como para o desenvolvimento de seu plano de negócios, era e continua sendo essencial que o Grupo OGX obtivesse e obtenha junto aos Novos Financiadores os Recursos Novos, nos termos do Empréstimo DIP e, em função deste, dos Empréstimos Ponte e Empréstimo Adicional, com a proteção dos Artigos 67, 84 e 149 da Lei de Falências e demais disposições legais aplicáveis. A OGX Áustria esclarece que esses Novos Financiadores foram os únicos dispostos a desembolsar, de maneira firme, os Recursos Novos dentre as dezenas de outras instituições consultadas pelo Grupo OGX desde Agosto de 2013.

   **3.1.1.**   Desta forma, a concessão de Recursos Novos pelos Novos Financiadores é essencial para o sucesso deste Plano, para os quais será dado o tratamento privilegiado e precedência absoluta de recebimento, inclusive em hipótese de superveniente falência da OGX e/ou Garantidores, conforme previsto nos Artigos 67, 84 e 149 da Lei

de Falências, bem como o disposto neste Plano, no 2º Empréstimo Ponte, na Escritura de Emissão de Debêntures (Empréstimo DIP), no Contrato de Pré-Pagamento de Exportação (Empréstimo Adicional), nos Contratos de Garantias – 2o Empréstimo Ponte e nos Contratos de Garantias DIP.

**3.1.2.** Diante das consequências diretas que a obtenção dos Recursos Novos surtirão na OGX Áustria, a OGX Áustria figura e figurará como garantidora das operações financeiras necessárias à concessão dos Recursos Novos.

**3.2. Reestruturação de Dívidas.** Além da obtenção de Recursos Novos, é igualmente indispensável que o Grupo OGX possa, no âmbito da Recuperação Judicial e dentro dos limites estabelecidos pela Lei de Falências e pelos Planos Partes Relacionadas OGX, reestruturar as dívidas contraídas perante seus Credores Concursais. Além disso, dentro dos limites legais aplicáveis, o Grupo OGX também poderá buscar a renegociação de seu endividamento junto aos Credores Extraconcursais, oferecendo as mesmas condições ofertadas aos Credores Concursais, ressalvado, no entanto, que a renegociação com os Credores Extraconcursais somente será concretizada mediante acordos específicos entre o Grupo OGX e referidos Credores Extraconcursais, conforme aplicável (no entanto, para fins de clareza e transparência, tal fato é mencionado neste Plano).

**3.2.1.** Observado o quanto estabelecido na **Cláusula 5ª** deste Plano, a reestruturação referida na **Cláusula 3.2** dar-se-á através da conversão dos Créditos em capital social da OGX, nos termos do Artigo 171, §2º da Lei das Sociedades por Ações e demais disposições legais aplicáveis, com a possibilidade de recebimento em dinheiro, resultante da alienação das Ações, para aqueles Credores que assim desejarem e se manifestarem tempestivamente nos termos do Plano OGX.

**4.     Empréstimos Extraconcursais de Recursos Novos**

**4.1.     Condições Gerais.** Diante das necessidades de caixa do Grupo OGX para estabilizar seu capital de giro, proteger ativos essenciais e permitir a adoção de medidas visando à sua reestruturação, o Grupo OGX buscou e obteve a captação dos seguintes mútuos extraconcursais na forma dos Artigos 66, 67, 84, inciso V e 149 da Lei de Falências e demais disposições legais aplicáveis, em ordem cronológica: (i) 1º Empréstimo Ponte; (ii) 2º Empréstimo Ponte; (iii) Empréstimo DIP; e (iv) Empréstimo Adicional. Os empréstimos acima referidos são extraconcursais e não se sujeitam aos termos deste Plano.

No entanto, para fins de clareza, transparência e compreensão do Juízo da Recuperação, Administrador Judicial, Credores e demais interessados, inclusive acerca dos procedimentos para participação dos Credores na subscrição das Debêntures 3ª Série e implicações do Aumento de Capital da OGX Mediante Conversão das Debêntures na reestruturação final do Grupo OGX, com efeitos imediatos na estrutura de capital do Grupo OGX, faz-se abaixo um sumário executivo dos principais termos, condições e garantias dos empréstimos extraconcursais.

**4.2.   Empréstimos Ponte.** Os Empréstimos Ponte foram integralmente pagos e adimplidos em 13.03.2014 e 14.03.2014, respectivamente, observados todos os termos e condições previstos no 1º Empréstimo Ponte e no 2º Empréstimo Ponte. O 2º Empréstimo Ponte era integralmente garantido pelas Garantias Ponte, conforme autorizado pelo Juízo da Recuperação em decisão proferida em 27.01.2014, as quais foram integralmente liberadas após o adimplemento do 2º Empréstimo Ponte.

**4.3.   Empréstimo DIP – Emissão de Debêntures.** Em 12.02.2014 a OGX emitiu as Debêntures, nos termos e sujeito às condições da Escritura de Emissão de Debêntures e do Contrato de Subscrição, visando à obtenção de Recursos Novos no valor correspondente em moeda corrente nacional, a **US$ 215.000.000,00** (duzentos e quinze milhões de dólares norte-americanos), que na Data de Emissão correspondia a **R$ 514.624.000,00** (quinhentos e catorze milhões e seiscentos e vinte e quatro mil reais).

**4.3.1.   Séries das Debêntures.** As Debêntures foram emitidas em 3 (três) séries, a saber:

- Debêntures 1ª Série: emitidas, subscritas e integralizadas pelo valor total de **R$ 299.200.000,00** (duzentos e noventa e nove milhões e duzentos mil reais), atualizado monetariamente pelo fator de variação da cotação de fechamento da taxa de venda de câmbio de Reais por Dólares dos Estados Unidos da América, nos termos da Escritura de Emissão de Debêntures, correspondente na Data da Emissão a **US$ 125.000.000,00** (cento e vinte e cinco milhões de dólares norte-americanos).

- Debêntures 2ª Série: emitidas com um valor total de até **R$ 215.424.000,00** (duzentos e quinze milhões e quatrocentos e vinte e quatro mil reais), atualizado monetariamente pelo fator de variação da cotação de fechamento da taxa de venda de câmbio de Reais por Dólares dos Estados Unidos da América, nos termos da Escritura de Emissão de Debêntures, correspondente na Data da Emissão a até **US$ 90.000.000,00** (noventa milhões de dólares norte-americanos), a serem oportunamente subscritas e

integralizadas pelos Backstop Novos Financiadores (sejam Credores ou não). O valor final das Debêntures 2ª Série corresponderá à porção não subscrita das Debêntures 3ª Série pelos Credores e eventuais sobras de Credores que não integralizem a subscrição das Debêntures 3ª Série, observado o disposto neste Plano, no Plano OGX e na Escritura de Emissão de Debêntures. As Debêntures 2ª Série poderão ser integralmente canceladas, caso as Debêntures 3ª Série sejam integralmente subscritas, observado o disposto na Escritura de Emissão de Debêntures, neste Plano e no Plano OGX.

- Debêntures 3ª Série: emitidas com um valor total de até **R$ 215.424.000,00** (duzentos e quinze milhões e quatrocentos e vinte e quatro mil reais), atualizado monetariamente pelo fator de variação da cotação de fechamento da taxa de venda de câmbio de Reais por Dólares dos Estados Unidos da América, nos termos da Escritura de Emissão de Debêntures, correspondente na Data da Emissão a até **US$ 90.000.000,00** (noventa milhões de dólares norte-americanos), a serem oportunamente subscritas e integralizadas pelos Credores, proporcionalmente ao respectivo Crédito. O valor final das Debêntures 3ª Série a serem subscritas por Credores Concursais e/ou Credores Extraconcursais (que aderirem expressamente ao Plano) poderá variar conforme demanda verificada pelas Debêntures 3ª Série. As Debêntures 3ª Série poderão ser canceladas em razão da ausência de Credores interessados na sua subscrição, integralização ou inadimplemento na integralização, conforme descrito na **Cláusula 4.6** e seguintes do Plano OGX, observado o disposto na Escritura de Emissão de Debêntures.

4.3.2. **Outras Características das Debêntures 3ª Série.** Nos termos da Escritura de Emissão de Debêntures, conforme aditada de tempos em tempos, as Debêntures 3ª Série: (a) são materialmente semelhantes às Debêntures 2ª Série e conferem os mesmos direitos e prerrogativas aos respectivos debenturistas de participar do Empréstimo DIP; (b) possuem *covenants* e hipóteses de vencimento antecipado mais restritos do que aqueles estabelecidos para as Debêntures 1ª Série e no Empréstimo Adicional; (c) terão seu vencimento antecipado automático em caso de declaração de vencimento antecipado das Debêntures 1ª Série e/ou do Empréstimo Adicional; (d) serão automaticamente convertidas em Ações se as Debêntures 1ª Série forem convertidas em Ações, inclusive em caso de dispensa pelos Novos Financiadores das Debêntures 1ª Série das Condições Precedentes para Conversão das Debêntures 1ª Série em Ações estabelecidas na Escritura de Emissão de Debêntures; (e)

contemplarão que eventuais deliberações em sede de assembleia de debenturistas serão tomadas observado o quórum conjunto composto pelos subscritores das Debêntures 2ª Série e Debêntures 3ª Série; e (f) assim como as Debêntures 1ª Série, são juniores e subordinadas ao Empréstimo Adicional para fins de cobrança e excussão das Garantias DIP em caso de inadimplemento do Grupo OGX, nos termos do Contrato de Compartilhamento.

4.3.3. **Destinação dos Recursos Novos do Empréstimo DIP**. Os Recursos Novos do Empréstimo DIP foram e serão destinados ao pagamento de obrigações extraconcursais, financiamento de determinados investimentos em capital e despesas operacionais para manutenção das atividades do Grupo OGX, bem como para o pagamento de despesas relacionadas ao presente processo de Recuperação Judicial, conforme orçamento acordado expressamente previsto na Escritura de Emissão de Debêntures e no Contrato de Subscrição.

4.3.4. **Extraconcursalidade do Empréstimo DIP.** Nos termos dos Artigos 67, 84, 85 e 149 e demais disposições legais aplicáveis da Lei de Falências, as Debêntures foram emitidas no âmbito da Recuperação Judicial. O crédito correspondente às Debêntures é e sempre será considerado extraconcursal para todos os fins de direito, inclusive em caso de superveniência de falência da OGX, ainda que as Debêntures sejam subscritas pelos Credores e se verifique o Aumento de Capital da OGX Mediante Capitalização de Crédito, devendo ser pago com precedência sobre todos os Créditos Concursais e Créditos Extraconcursais, observado o disposto nos Artigos 84, 85, 149 e demais disposições aplicáveis da Lei de Falências.

4.3.5. **Constituição das Garantias DIP.** Sem prejuízo da senioridade, extraconcursalidade e correspondente proteção que recaem sobre os Recursos Novos, nos termos dos Artigos 67, 84, 85 e 149 e demais disposições legais aplicáveis da Lei de Falências, a OGX e os Garantidores, conforme aplicável, em garantia ao integral e pontual cumprimento das obrigações sob o Empréstimo DIP e Empréstimo Adicional, com autorização do Juízo da Recuperação a teor do Artigo 66 da Lei de Falências, quando aplicável, outorgaram e outorgarão as Garantias DIP, nos termos dos seguintes Contratos de Garantia DIP (**Anexos 1.1.33** e **1.1.35** do Plano OGX):

(i) alienação fiduciária sobre o petróleo e gás de titularidade da OGX em qualquer dos seguintes campos de produção, respeitadas as respectivas participações da OGX em cada um desses campos de produção: (a) Bloco BS-4; (b) Tubarão Martelo; e (c) Blocos POT-M-762, CE-M-661, POT-M-475 e CE-M-603, nos quais a OGX participa, respectivamente com 50% (cinquenta por cento), 30% (trinta por cento), 65% (sessenta e cinco por cento) e 50% (cinquenta por cento), observado, o direito de outros credores que já detinham garantia sobre quantidade determinada de petróleo, nos termos do "*Instrumento Particular de Alienação Fiduciária de Petróleo e Gás Natural em Garantia*";

(ii) cessão fiduciária de: (a) todos os direitos creditórios oriundos da comercialização de petróleo e gás de titularidade da OGX, observado o direito de outros credores que já detinham garantia sobre quantidade determinada de petróleo; (b) dos direitos de crédito detidos pela OGX frente à Parnaíba Gás Natural oriundos do *Shared Costs Agreement Termination and Release*, celebrado entre a OGX, a Parnaíba Gás Natural e Eneva S.A., em 30.10.2013, bem como das notas promissórias emitidas pela Parnaíba Gás Natural em favor da OGX relacionadas ao *Shared Costs Agreement Termination and Release*; e (c) da conta vinculada na qual serão depositados os recursos decorrentes dos direitos creditórios acima mencionados, nos termos do "Instrumento Particular de Cessão Fiduciária de Direitos Creditórios e Títulos de Crédito em Garantia (Intercompany e Venda de Produto)" e do Contrato de Depósito em Garantia e Outras Avenças;

(iii) cessão fiduciária de: (a) direitos creditórios detidos pela OGX contra a União fundados no direito de reembolso pelo recolhimento a maior de Imposto de Renda Pessoa Jurídica, observado, no entanto, o direito de outros credores que tenham preferência com relação a referidos créditos, e (b) da conta vinculada na qual serão depositados os recursos decorrentes dos direitos creditórios acima mencionados, nos termos do "*Instrumento Particular de Cessão Fiduciária de Direitos Creditórios em Garantia (Direitos Tributários)*" e do Contrato de Depósito em Garantia e Outras Avenças;

(iv) penhor sobre os direitos emergentes da participação da OGX nos contratos relacionados à concessão sobre BS-4, nos termos

do "*Instrumento Particular de Penhor de Direitos Sobre Contrato de Concessão e Outras Avenças (BS4)*";

(v) cessão fiduciária de, entre outros, (a) direitos de crédito detidos pela OGX contra a Cambuhy Investimentos Ltda. decorrentes do Contrato de Compra e Venda, (b) direitos creditórios da OGPar decorrentes de eventual subrogação nos direitos dos respectivos credores do "Instrumento Particular de Escritura de Primeira Emissão Pública de Debêntures Simples, Não Conversíveis em Ações, da Espécie Quirografária, Com Garantia Fidejussória, Em Série Única, da Parnaíba"; "Contrato de Empréstimo (Credit Agreement)", celebrado entre Parnaíba Gás Natural, OGPar, MPX Energia S.A. e Morgan Stanley Bank, N.A.; e do "Instrumento Particular de Alienação Fiduciária de Ações e Outras Avenças", celebrado entre OGPar, MPX Energia S.A., Planner Trustee Distribuidora de Títulos e Valores Mobiliários Ltda. e Paraíba Gás Natural, (c) das contas vinculadas nas quais serão depositados os recursos decorrentes dos direitos creditórios acima mencionados e os demais direitos creditórios objeto da garantia em questão, nos termos do "*Instrumento Particular de Cessão Fiduciária de Direitos Creditórios em Garantia (Parnaíba)*" e do Contrato de Depósito em Garantia e Outras Avenças;

(vi) cessão fiduciária de direitos de crédito detidos pela OGX e pela OGPar oriundos de: (a) contratos de seguro; (b) litígios judiciais e extrajudiciais (inclusive na hipótese de início de litígio contra Brasil E&P Ltda.); (c) contratos e outros instrumentos; (d) quaisquer outros direitos de crédito que não sejam objeto de outra garantia específica, e (e) cessão fiduciária sobre as contas vinculadas nas quais serão depositados os recursos decorrentes dos direitos creditórios acima mencionados, nos termos do "*Instrumento Particular de Cessão Fiduciária de Direitos Creditórios em Garantia (Geral)*" e do Contrato de Depósito em Garantia e Outras Avenças;

(vii) alienação fiduciária sobre ativos de titularidade de Parnaíba B.V., nos termos "*Instrumento Particular de Alienação Fiduciária de Equipamentos em Garantia*";

(viii) cessão fiduciária sobre: (a) todos e quaisquer direitos creditórios de titularidade da OGX oriundos da integralização da primeira série de Debêntures sob o Instrumento de Crédito,

que serão depositados em conta corrente vinculada da OGX e (b) sobre a referida conta, nos termos do "Instrumento Particular de Cessão Fiduciária de Direitos Creditórios em Garantia (Recursos da Integralização da Primeira Série de Debêntures)" e do Contrato de Depósito em Garantia e Outras Avenças;

(ix)   penhor sobre a totalidade das ações de emissão da Parnaíba B.V., nos termos do "*Deed of Pledge of Parnaíba B.V. Shares*";

(x)    penhor de direitos de crédito detidos pela OGX Netherlands contra a MPX Energia GmbH decorrentes da alienação das ações de emissão da Parnaíba B.V., nos termos do "*Deed of Pledge of Parnaíba MPX Receivables*";

(xi)   penhor de direitos de crédito detidos pela OGX Netherlands contra a Parnaíba B.V., nos termos do "*Deed of Pledge of Parnaíba MPX Receivables*";

(xii)  penhor de recebíveis, direitos de venda e outros direitos relacionados a contrato de exportação da OGX e dos Garantidores nos termos do "*Security Agreement*";

(xiii) alienação fiduciária de ações da OGX e OGPar, a ser constituída entre as partes após aprovação do Plano;

(xiv)  penhor sobre os direitos emergentes da participação da OGX nos contratos de concessão relativos aos contratos de concessão BM-C-39 e BM-C-40 de Tubarão Martelo e aos contratos de concessão da 11ª Rodada a ser constituído entre as partes após aprovação do Plano; e

(xv)   penhor sobre ações de emissão da OGX International, OGX Áustria, OGX Netherlands B.V. e OGX Netherlands Holding B.V., observado o disposto na Escritura de Emissão, a ser constituído após aprovação do Plano.

**4.3.5.1.**    Em adição e sem prejuízo às Garantias DIP, o Empréstimo DIP também conta com a garantia fidejussória, na forma de fiança prestada por todos os Garantidores.

**4.3.6.**    **Compartilhamento de Garantias.** Sem prejuízo da senioridade, extraconcursalidade e correspondente proteção que recaem sobre os

Recursos Novos provenientes do Empréstimo DIP, nos termos dos Artigos 67, 84, 85 e 149 e demais disposições legais aplicáveis da Lei de Falências, as Garantias DIP são e serão compartilhadas para garantia ao integral e pontual cumprimento das obrigações assumidas sob o Empréstimo Adicional nos termos do Contrato de Pré-Pagamento de Exportação, nos termos dos Contratos de Garantia DIP e Contrato de Compartilhamento. O Empréstimo Adicional terá prioridade sobre as Debêntures na excussão das Garantias DIP e na distribuição e recebimento do produto correspondente para quitação do Empréstimo Adicional, nos termos do Contrato de Compartilhamento.

**4.4.   Debêntures 1ª Série.** As Debêntures 1ª Série foram integralmente subscritas e integralizadas pelos Backstop Novos Financiadores (direta ou indiretamente) em 13.02.2014.

**4.5.   Debêntures 2ª Série.** As Debêntures 2ª Série serão oportunamente subscritas e integralizadas pelos Backstop Novos Financiadores (sejam Credores ou não), desde que preenchidos e verificados determinados termos e condições precedentes estabelecidos no Contrato de Subscrição e na **Cláusula 4.5** do Plano OGX.

**4.6.   Debêntures 3ª Série.** As Debêntures 3ª Série poderão ser subscritas e integralizadas por Credores Concursais e/ou Credores Extraconcursais (estes últimos desde que tenham aderido expressamente ao presente Plano, conforme aplicável) que se qualificarem como Credores Qualificados para Subscrição das Debêntures 3ª Série, nos termos da Escritura de Emissão de Debêntures, do Contrato de Subscrição, da **Cláusula 4.6** e seguintes do Plano OGX, bem como do **Anexo 4.6**, todos do Plano OGX.

**4.7.   Procedimento para Aumento de Capital da OGX Mediante Conversão das Debêntures**. As Debêntures serão convertidas automaticamente em Ações, após o integral cumprimento ou dispensa expressa das condições precedentes para sua conversão em Ações, conforme taxativamente estabelecidas na Escritura de Emissão de Debêntures e no Contrato de Subscrição, notadamente as seguintes Condições Precedentes para o Aumento de Capital da OGX Mediante Conversão das Debêntures elencadas na **Cláusula 4.8** do Plano OGX.

**4.8.   Empréstimo Adicional – Contrato de Pré-Pagamento de Exportação.** O Empréstimo Adicional foi contratado em 09.04.2014 e será satisfeito nos termos e condições do Contrato de Pré-Pagamento de Exportação. O Empréstimo Adicional é integralmente garantido pelas Garantias DIP, que são compartilhadas com o Empréstimo DIP, nos termos do Contrato de Pré-Pagamento de Exportação e do

Contrato de Compartilhamento. O Empréstimo Adicional tem prioridade sobre as Debêntures na cobrança e excussão das Garantias DIP e no recebimento do recebimento do respectivo produto.

**4.8.1.** **Extraconcursalidade do Empréstimo Adicional.** Nos termos dos Artigos 67, 84, 85 e 149 e demais disposições legais aplicáveis da Lei de Falências, o Empréstimo Adicional é e sempre será considerado extraconcursal, inclusive em caso de superveniência de falência da OGX, devendo ser pago com precedência sobre todos os Créditos Concursais e Créditos Extraconcursais, observado o disposto nos Artigos 84, 85, 149 e demais disposições aplicáveis da Lei de Falências.

## 5. Reestruturação e Liquidação de Dívidas

**5.1.** **Pagamento aos Credores Quirografários.** Na presente data, os Credores Quirografários detentores dos Bonds 2018 e/ou dos Bonds 2022 que também são Credores da OGX, correspondem à integralidade dos Credores Quirografários da OGX Áustria e, em função de obrigação solidária assumida pela OGX nos termos das Escrituras de Emissão dos Bonds, serão pagos nos termos e condições previstos nas **Cláusulas 5.1** e seguintes do Plano OGX, bem como no **Anexo 5.1.3** do Plano OGX. Em consequência, operar-se-á a subrogação da OGX no crédito detido pelos Credores Quirografários da OGX Áustria, o qual será reestruturado nos termos da **Cláusula 6.1** abaixo.

**5.2.** **Credores Trabalhistas.** Na presente data, não há Créditos Trabalhistas sujeitos à Recuperação Judicial. Na hipótese de serem reconhecidos Créditos Trabalhistas, por decisão judicial ou acordo entre as partes, os referidos Créditos Trabalhistas serão pagos em até 12 (doze) parcelas mensais iguais e sucessivas, sendo devida a primeira parcela considerada devida a partir do recebimento, pelo Grupo OGX, de comunicação, nos termos da **Cláusula 14.4**, enviada pelo Credor Trabalhista detentor do Crédito Trabalhista reconhecido, a respeito do trânsito em julgado da decisão judicial ou acordo que reconhecer o Crédito Trabalhista.

**5.3.** **Credores com Garantia Real.** Na presente data, não há Créditos com Garantia Real sujeitos à recuperação judicial do Grupo OGX. Na hipótese de serem reconhecidos Créditos com Garantia Real, por decisão judicial, arbitral ou acordo entre as partes, os referidos Credores com Garantia Real terão o tratamento previsto na **Cláusula 5.1** acima, observado o quanto disposto na **Cláusula 14.4** abaixo.

**5.4.** **Alteração da Lista de Credores após o Aumento de Capital da OGX Mediante Capitalização de Crédito.** Na hipótese de se verificar eventual majoração na quantidade de Créditos decorrentes de decisão judicial transitada em julgado e

retificação da Lista de Credores, a OGX também se responsabilizará pela emissão de tantas Ações quanto necessárias para permitir a capitalização dos novos Créditos (i) ao mesmo preço de emissão das Ações verificado na data e para fins de implementação do Aumento de Capital da OGX Mediante Capitalização de Crédito; e (ii) observadas as condições previstas nas **Cláusulas 5.1.3, 5.1.4 e 5.1.5** do Plano OGX.

**5.5.   Credores Extraconcursais.** Para fins de esclarecimento, a OGX Áustria declara e reconhece que os Créditos Extraconcursais não estão sujeitos ao presente Plano, de forma que sua aprovação pela Assembleia de Credores não implica na imediata reestruturação dos Créditos Extraconcursais nos termos e condições aqui descritos. No entanto, a OGX Áustria expressamente estende as condições propostas aos Credores Concursais para os Credores Extraconcursais que queiram aderir a este Plano, estando ciente, no entanto, que tais termos e condições somente serão aplicáveis na medida em que haja adesão expressa e voluntária por parte do Credor Extraconcursal a este Plano, nos termos previstos nesta **Cláusula 5ª**. Referida adesão deverá ocorrer por escrito, em caráter irretratável e irrevogável, mediante notificação à OGX Áustria, encaminhada até a data da Assembleia de Credores que aprovar este Plano. Desta forma, as condições ora descritas estão incluídas no presente Plano para fins de transparência e conhecimento de todos os Credores, dado que a adesão de Credores Extraconcursais ao presente Plano terá o efeito imediato de aumentar o valor dos Créditos que serão capitalizados na OGX e eventualmente pagos aos Credores Extraconcursais, nos termos da **Cláusula 5ª** do Plano OGX.

**6.     Operações com Partes Relacionadas**

**6.1.   Declaração OGX.** Para fins e por força deste Plano, a OGX desde logo declara e reconhece ser devedora da OGX Áustria pelo valor equivalente ao Crédito OGX Áustria. A OGX desde logo declara e reconhece que o Crédito OGX Áustria poderá ser utilizado pela OGX Áustria para satisfação e pagamento dos Créditos Subrogação OGX Áustria, nos termos da **Cláusula 6.2** abaixo, a critério da OGX Áustria.

**6.1.1.**   A OGX desde logo se obriga em caráter irrevogável e irretratável a conferir mais ampla, plena e rasa quitação pelos Créditos Subrogação OGX Áustria após o pagamento referido na **Cláusula 6.2** abaixo, inclusive em caso de compensação, mesmo que haja eventual saldo credor de OGX contra OGX Áustria.

**6.2.   Pagamento Créditos detidos por Partes Relacionadas.** A não ser que expressamente previsto de forma diversa neste Plano, os Créditos detidos por Partes Relacionadas, inclusive os Créditos Subrogação OGX Áustria, preservarão as condições originais, exceto pelo prazo de amortização e incidência de juros que são reestruturados por este Plano nos termos previstos no Artigo 59 da Lei de Falências, de forma que os Créditos Subrogação OGX Áustria e demais Créditos detidos por

Partes Relacionadas serão pagos em parcela única de principal devida e exigível em 20 (vinte) anos contados da Aprovação do Plano, ou em 30.07.2034, o que ocorrer por último, sem incidência e capitalização de juros. As partes poderão oportunamente convencionar outra forma de extinção da obrigação de pagamento dos Créditos detidos por Partes Relacionadas, incluindo os Créditos Subrogação OGX Áustria detido pela OGX contra a OGX Áustria em função da subrogação prevista na **Cláusula 5.1.3.17** do Plano OGX derivada do pagamento dos Créditos Concursais devidos pelas demais empresas do Grupo OGX, inclusive com a utilização do Crédito OGX Áustria detido pela OGX Áustria, até o valor de referidos Créditos Concursais, observados sempre os procedimentos e legislação aplicáveis e o disposto neste Plano e no Plano OGX.

**6.3.   Exoneração dos Devedores Solidários dos Bonds.** Em razão (i) da subrogação a que se refere a **Cláusula 6.1** deste Plano e **Cláusula 5.1.3.17** do Plano OGX; (ii) os termos e condições de quitação dos créditos mutuamente detidos por OGX e OGX Áustria conforme descritos na Cláusula 6.2 acima; e (iii) as obrigações solidariamente assumidas no contexto das Escrituras de Emissão de Bonds, a OGX e OGX Áustria exoneram, de forma irrevogável e irretratável, a OGPar como devedora solidária nos termos das Escrituras de Emissão de Bonds, conforme estabelece a **Cláusula 6.4** do Plano OGX.

**7.   Governança Corporativa – Observância de Obrigações.** A partir da Data de Emissão e até que se verifique a efetiva entrega das Ações aos Credores em razão (i) do Aumento de Capital da OGX Mediante Capitalização de Crédito; e (ii) Aumento de Capital da OGX Mediante Conversão das Debêntures na forma deste Plano, do Plano OGX, e da Escritura de Emissão de Debêntures, a administração da OGX Áustria deverá observar, na condução das suas atividades, as melhores práticas de governança corporativa, além de todos os termos, condições e limitações e restrições constantes deste Plano, do Plano OGX, da Escritura de Emissão de Debêntures, do Contrato de Subscrição, do *Plan Support Agreement*, dos Contratos de Garantia DIP, do Contrato de Pré-Pagamento de Exportação e dos demais instrumentos e contratos relacionados aos instrumentos e contratos acima e/ou sua reestruturação e Recuperação Judicial.

**8.   Incorporação**

**8.1.**   Conforme descrito pela **Cláusula 10ª** do Plano OGX e **Cláusula 9ª** do Plano OGPar, após a realização e implementação (i) do Aumento de Capital da OGX Mediante Capitalização de Crédito, nos termos deste Plano e do Plano OGX; e (ii) do Aumento de Capital Mediante Conversão das Debêntures, nos termos da Escritura da Emissão de Debêntures, as administrações da OGPar e OGX, independentemente de quem sejam os seus administradores, obrigam-se a adotar os atos necessários para a incorporação da OGPar pela OGX ("Incorporação"), inclusive o de propor aos respectivos acionistas a Incorporação.

**8.2.**   O objetivo da Incorporação, após realizadas as operações de capitalização previstas neste Plano que têm a finalidade de buscar o saneamento financeiro do Grupo OGX, é nivelar todos os *stakeholders* em uma mesma companhia e conferir a todos os então acionistas acesso ao mercado de capitais, com a possibilidade de negociarem suas Ações e monetizá-las conforme entenderem adequado.

**8.3.**   O procedimento da Incorporação deverá observar determinados eventos societários pormenorizados no Plano OGX, cuja ordem poderá ser alterada para que implementação das etapas necessárias a este Plano e aos demais Planos Partes Relacionadas não seja comprometida ou prejudicada por fatos não imputáveis ao Grupo OGX, tal como disposto na **Cláusula 10.1.1** do Plano OGX.

**8.4.**   A Incorporação resultará em uma companhia aberta com ações negociadas no segmento de listagem denominado Novo Mercado da BM&FBOVESPA S.A. ("OGX Reestruturada").

**8.5.**   Tendo em vista a estrutura societária do Grupo OGX, é certo que a totalidade das quotas de emissão da OGX Áustria continuará sob titularidade da OGX International que, por sua vez, passará ao controle da OGX Reestruturada, com o que a OGX Áustria expressamente concorda.

**9.**   **Condições Resolutivas.** São condições resolutivas do Plano, cuja superveniência acarretará o cancelamento da aprovação deste Plano e suas respectivas disposições e a convocação de uma Assembleia de Credores para deliberar a respeito de uma alternativa ao Plano ou a falência da OGX Áustria:

(i)   a constatação, até que ocorra o Aumento de Capital da OGX Mediante Capitalização de Crédito, de qualquer falsidade ou incorreção quanto a qualquer declaração ou garantia prestada pela OGX Áustria neste Plano ou nos seus Anexos que caracterize Efeito Adverso Relevante;

(ii)   o descumprimento pelos Acionistas de qualquer obrigação assumida neste Plano ou prática de qualquer ato ou medida incompatível com as disposições deste Plano;

(iii)   a não verificação das Condições Precedentes para Aumento de Capital da OGX Mediante Capitalização de Créditos previstas na **Cláusula 5.1.3.1** do Plano OGX em até 120 (cento e vinte) dias contados da Homologação Judicial do Plano ou até 30.09.2014, o que ocorrer primeiro;

(iv)    a não realização da assembleia geral extraordinária e demais atos de implementação do Aumento de Capital da OGX Mediante Capitalização de Crédito, inclusive entrega das Ações aos Credores Concursais e Credores Extraconcursais (que aderirem ao Plano) em até 140 (cento e quarenta) dias contados da Homologação Judicial do Plano, ou até 20.10.2014, o que ocorrer primeiro;

(v)    a não adesão ao Plano e/ou aos Planos Partes Relacionadas OGX, conforme aplicável, de Credores Extraconcursais que sejam Partes Relacionadas até a data do Aumento de Capital da OGX Mediante Capitalização de Crédito prevista na **Cláusula 5.1.3** do Plano OGX; e/ou

(vi)    a não Aprovação do Plano pela Assembleia de Credores e/ou resolução de quaisquer dos Planos Partes Relacionadas OGX.

**9.1.   Dispensa das Condições Resolutivas.** Os Credores podem, em deliberação dos titulares da maioria simples dos Créditos presentes à Assembleia de Credores convocada para essa finalidade, dispensar a seu exclusivo critério, no todo ou em parte, quaisquer das condições descritas nos itens acima.

**10.   Efeitos do Plano**

**10.1. Vinculação do Plano.** As disposições do Plano vinculam a OGX Áustria, a OGX, os Acionistas e os Credores, e os seus respectivos cessionários e sucessores, a partir da Homologação Judicial do Plano.

**10.2. Novação.** A inexistência de recurso a que tenha sido atribuído efeito suspensivo (ou ação judicial com mesmo efeito) interposto contra a Homologação Judicial do Plano acarretará a novação dos Créditos Concursais e dos Créditos Extraconcursais detidos por Credores Extraconcursais que tenham expressamente aderido ao presente Plano, que serão liquidados na forma estabelecida neste Plano. Mediante referida novação, todas as obrigações, *covenants*, índices financeiros, hipóteses de vencimento antecipado, bem como outras obrigações e garantias que sejam incompatíveis com as condições deste Plano deixarão de ser aplicáveis.

**10.3. Extinção de Ações.** Exceto se previsto de forma diversa neste Plano, os Credores não mais poderão, a partir da Aprovação do Plano, (i) ajuizar ou prosseguir toda e qualquer ação judicial ou processo de qualquer tipo relacionado ou não a qualquer Crédito contra a OGX Áustria; (ii) executar qualquer sentença, decisão judicial ou sentença arbitral contra a OGX Áustria; (iii) penhorar quaisquer bens da OGX Áustria para satisfazer seus Créditos; (iv) criar, aperfeiçoar ou executar qualquer

garantia real sobre bens e direitos de OGX Áustria para assegurar o pagamento de seus Créditos; (v) reclamar qualquer direito de compensação contra qualquer crédito devido a OGX Áustria; e (vi) buscar a satisfação de seus Créditos por quaisquer outros meios. Todas as ações e execuções judiciais em curso contra a OGX Áustria relativas aos Créditos serão extintas, e as penhoras e constrições existentes serão liberadas.

> **10.3.1.** Verificada a Resolução do Plano, fica assegurado aos Credores o direito de ajuizar e/ou prosseguir em qualquer demanda, judicial ou não, contra a OGX Áustria, bem como perseguir a excussão de todo e qualquer bem que lhe tenha sido onerado pela OGX Áustria e/ou terceiros em garantia às obrigações sujeitas ou não a esse Plano.

**10.4. Reconstituição de Direitos.** Verificada a Resolução do Plano e/ou a convolação da Recuperação Judicial em falência, no prazo de supervisão estabelecido no Artigo 61 da Lei de Falências, os Credores terão reconstituídos seus direitos e garantias nas condições originalmente contratadas, deduzidos os valores eventualmente pagos e ressalvados os atos validamente praticados no âmbito da Recuperação Judicial, observado o disposto no Artigo 61, § 2º, e 74 da Lei de Falências.

**10.5. Quitação.** Exceto na hipótese de Resolução do Plano, os pagamentos em dinheiro e o Aumento de Capital da OGX Mediante Capitalização de Créditos realizados na forma estabelecida neste Plano e no Plano OGX, acarretarão automaticamente e independentemente de qualquer formalidade adicional, a quitação plena, irrevogável e irretratável, de todos os Créditos de qualquer tipo e natureza contra a OGPar, OGX Áustria, OGX International, OGX e seus controladores e garantidores, inclusive juros, correção monetária, penalidades, multas e indenizações. Com a ocorrência da quitação, os Credores serão considerados como tendo quitado, liberado e/ou renunciado integralmente todos e quaisquer Créditos, e não mais poderão reclamá-los, contra a OGX Áustria, controladas, subsidiárias, afiliadas e coligadas e outras sociedades pertencentes ao mesmo grupo societário e econômico, e seus diretores, conselheiros, Acionistas, minoritários, sócios, agentes, funcionários, representantes, fiadores, avalistas, garantidores, sucessores e cessionários.

**10.6. Ratificação de Atos.** A Aprovação do Plano pela Assembleia de Credores representa a concordância e ratificação da OGX Áustria, Acionistas, Grupo OGX e dos Credores, inclusive dos Credores Qualificados para Subscrição das Debêntures 3ª Série, de todos os atos praticados e obrigações contraídas pela OGX Áustria no curso da Recuperação Judicial, incluindo, mas não se limitando, (i) à distribuição da Recuperação Judicial perante o Juízo da Recuperação e o reconhecimento de sua jurisdição e competência para processar a Recuperação Judicial; (ii) à obtenção e contratação pela OGPar e demais empresas do Grupo OGX dos Recursos Novos conforme o disposto no 1º Empréstimo Ponte, no 2º Empréstimo Ponte, no

Empréstimo DIP e no Empréstimo Adicional; (iii) os termos e condições da Escritura de Emissão de Debêntures, do Contrato de Subscrição e do Contrato de Pré-Pagamento de Exportação, conforme aditados de tempos em tempos, incluindo das condições de conversibilidade das Debêntures em Ações; (iv) à contratação e constituição das Garantias Ponte e Garantias DIP em favor dos Novos Financiadores em contrapartida à concessão dos Recursos Novos, nos termos dos Contratos de Garantia Ponte, dos Contratos de Garantia DIP e do Contrato de Compartilhamento, conforme aditados de tempos em tempos; e (v) demais atos e ações necessárias para integral implementação e consumação deste Plano e da Recuperação Judicial, cujos atos ficam expressamente autorizados, validados e ratificados para todos os fins de direito, inclusive e especialmente dos Artigos 66, 74 e 131 da Lei de Falências.

**10.7. Isenção de Responsabilidades e Renúncia.** Em razão da Aprovação do Plano pela Assembleia de Credores, os Credores expressamente reconhecem e isentam as Partes Isentas de toda e qualquer responsabilidade pelos atos praticados e obrigações contratadas no curso da Recuperação Judicial incluindo, a contratação e implementação do Empréstimo DIP nos termos da Escritura de Emissão de Debêntures, do Empréstimo Adicional nos termos do Contrato de Pré-Pagamento de Exportação e das Garantias DIP e do Contrato de Compartilhamento, conferindo às Partes Isentas quitação ampla, rasa, geral, irrevogável e irretratável de todos os direitos e pretensões materiais ou morais porventura decorrentes dos referidos atos a qualquer título. A Aprovação do Plano pela Assembleia de Credores representa igualmente a renuncia expressa e irrevogável dos Credores, inclusive dos Credores Qualificados para Subscrição das Debêntures 3ª Série, a toda e qualquer pretensão, ação ou direito a demandar, perseguir ou reclamar, em Juízo ou fora dele, a qualquer título e sem qualquer reserva ou ressalva, reparação de danos e/ou quaisquer outras ações ou medidas contra as Partes Isentas em relação aos atos praticados e obrigações contraídas pelas Partes Isentas durante a Recuperação Judicial, incluindo a contratação e implementação do 1º Empréstimo Ponte, do 2º Empréstimo Ponte, do Empréstimo DIP e do Empréstimo Adicional.

**11.     Formalização de Documentos e Outras Providências.** A OGX, OGPar, OGX Áustria e OGX International, e os Acionistas obrigam-se em caráter irrevogável e irretratável, por força deste Plano, a realizar todos os atos e firmar todos os contratos e outros documentos que, na forma e na substância, sejam necessários ou adequados ao cumprimento e implementação deste Plano, dos Planos Partes Relacionadas OGX, do Plano OGX e obrigações correlatas.

**12.    Modificação do Plano.** Aditamentos, alterações ou modificações ao Plano podem ser propostas a qualquer tempo após a Homologação Judicial do Plano, desde que tais aditamentos, alterações ou modificações sejam submetidas à votação na Assembleia de Credores, sejam aprovadas pela OGX Áustria e que seja atingido o quórum requerido pelos Artigos 45 e 58, caput e §1º, da Lei de Falências.

**12.1.  Efeito Vinculativo das Modificações do Plano.** Os aditamentos, alterações ou modificações ao Plano vincularão a OGX Áustria e seus Credores, inclusive os Credores Extraconcursais que a ele aderirem e os Credores dissidentes, e seus respectivos cessionários e sucessores, a partir de sua aprovação pela Assembleia de Credores na forma dos Artigos 45 ou 58 da Lei de Falências.

**13.    Manutenção do Direito de Petição e Voz e Voto em Assembleia de Credores.** Para fins deste Plano e enquanto não verificado o encerramento da Recuperação Judicial, os Credores que venham a converter seus Créditos em capital na forma do Aumento de Capital de OGX Mediante Capitalização do Crédito preservarão o valor e quantidade de seus Créditos para fins de direito de petição, voz e voto em toda e qualquer Assembleia de Credores posterior à Homologação Judicial do Plano, independentemente da conversão dos Créditos em participação acionária e respectiva quitação.

**14.    Disposições Gerais**

**14.1. Contratos Existentes e Conflitos.** Na hipótese de conflito entre as disposições deste Plano e as obrigações previstas nos contratos celebrados com qualquer Credor anteriormente à Data do Pedido, o Plano prevalecerá. Na hipótese de conflito entre as disposições deste Plano e da Escritura de Emissão de Debêntures e/ou do Contrato de Subscrição e/ou do Contrato de Pré-Pagamento de Exportação e/ou dos Contratos de Garantia DIP e/ou do Contrato de Compartilhamento, os termos da Escritura de Emissão de Debêntures e/ou do Contrato de Subscrição e/ou do Contrato de Pré-Pagamento de Exportação e/ou dos Contratos de Garantia DIP e/ou do Contrato de Compartilhamento prevalecerão. Na hipótese de conflito entre as disposições deste Plano, do Plano OGX, e dos Planos Partes Relacionadas OGX que estão em Recuperação Judicial, prevalecerão os termos do Plano OGX.

**14.2.  Anexos.** Todos os Anexos a este Plano são a ele incorporados e constituem parte integrante do Plano. Na hipótese de haver qualquer inconsistência entre este Plano e qualquer Anexo, o Plano prevalecerá.

**14.3.  Encerramento da Recuperação Judicial.** O processo de recuperação judicial será encerrado a qualquer tempo após a Homologação Judicial do Plano, a requerimento de OGX Áustria, desde que (i) esse encerramento seja aprovado pela maioria simples dos Créditos presentes na Assembleia de Credores; ou (ii) todas as

obrigações do Plano que se vencerem até 2 (dois) anos após a Homologação do Plano sejam cumpridas.

**14.4. Comunicações.** Todas as notificações, requerimentos, pedidos e outras comunicações a OGX Áustria, requeridas ou permitidas por este Plano, para serem eficazes, devem ser feitas por escrito e serão consideradas realizadas quando (i) enviadas por correspondência registrada, com aviso de recebimento, ou por *courier*, e efetivamente entregues; ou (ii) enviadas por fac-símile, *e-mail* ou outros meios, quando efetivamente entregues e confirmadas por telefone. Todas as comunicações devem ser endereçadas da seguinte forma ou de outra forma que for informada pela OGX Áustria, nos autos do processo de recuperação judicial ou diretamente ao Administrador Judicial ou aos Credores:

> **OGX Austria GmbH – Em Recuperação Judicial**
> Endereço: Rua do Passeio, nº 56, 10º, 11º e 12º andares, Cidade do Rio de Janeiro, Estado do Rio de Janeiro
> A/C: Paulo Narcélio Simões Amaral
> A/C: Darwin Corrêa
> Telefone: +55 21 2163-5522
> Fax: +55 21 2163-5202
> E-mail: rj@ogpar.com.br

> **Ao Administrador Judicial** (Deloitte Touche Tohmatsu ou seu Substituto)
> Endereço: Av. Presidente Wilson, 231, 22º andar
> Rio de Janeiro, Rio de Janeiro
> A/C: Luis Vasco Elias (ou seu Substituto)
> Telefone: + 55 21 3981 - 0467
> E-mail: ajoleoegas@deloitte.com

> **Ao Agente Fiduciário das Debêntures** (Oliveira Trust Distribuidora de Títulos e Valores Mobiliários S.A. ou seu Substituto)
> Endereço: Avenida das Américas, nº 500, bloco 13, grupo 205, Rio de Janeiro, Estado do Rio de Janeiro
> A/C: Sr. Gustavo Dezouzart (ou seu Substituto)
> Telefone: + 55 21 3514 - 0000
> Fax: +55 21 3514 - 0000
> E-mail: gustavo.dezouzart@oliveiratrust.com.br
> E-mail: ger3.agente@oliveiratrust.com.br

**14.5. Meios de Pagamento.** Quando aplicável, os valores devidos aos Credores nos termos deste Plano serão pagos por meio da transferência direta de recursos à conta bancária do respectivo Credor, por meio de documento de ordem de crédito (DOC) ou

de transferência eletrônica disponível (TED), sendo que a OGX Áustria poderá contratar agente de pagamento para a efetivação de tais pagamentos aos Credores. O comprovante de depósito do valor creditado a cada Credor servirá de prova de quitação do respectivo pagamento.

> **14.5.1.** Para a realização do pagamento mencionado na **Cláusula 5ª**, os Credores devem informar à OGX Áustria suas respectivas contas bancárias para esse fim, mediante comunicação por escrito endereçada à OGX Áustria, nos termos da **Cláusula 14.4,** e o envio da Notificação de Opção de Recebimento (conforme definido no Plano OGX) nos termos do Plano OGX.

**14.6. Data do Pagamento.** Na hipótese de qualquer pagamento ou obrigação prevista no Plano estar prevista para ser realizada ou satisfeita em um dia que não seja um Dia Útil, o referido pagamento ou obrigação poderá ser realizado ou satisfeita, conforme o caso, no Dia Útil seguinte.

**14.7. Encargos Financeiros.** Salvo previsão em contrário no Plano, não incidirão juros e nem correção monetária sobre o valor dos Créditos.

**14.8. Créditos em Moeda Estrangeira.** Os Créditos em moeda estrangeira serão mantidos na moeda original para todos os fins de direito e serão liquidados, observado o disposto neste Plano, em conformidade com o Artigo 50, §2° da Lei de Falências. Exceto em caso de disposição específica neste Plano, os Créditos em moeda estrangeira serão convertidos em reais com base cotação de fechamento da taxa de venda de câmbio de Reais por Dólares dos Estados Unidos da América, disponível no SISBACEN – Sistema de Informações do Banco Central do Brasil, transação PTAX-800, opção 5, cotações para a contabilidade, moeda 220, mercado livre, na data imediatamente anterior à data em que tal conversão é necessária, inclusive para fins do Aumento de Capital de OGX Mediante a Capitalização de Créditos, nos termos deste Plano e do Plano OGX.

**14.9. Divisibilidade das Previsões do Plano.** Na hipótese de qualquer termo ou disposição do Plano ser considerada inválida, nula ou ineficaz pelo Juízo da Recuperação, o restante dos termos e disposições do Plano devem permanecer válidos e eficazes.

**14.10. Processo Auxiliar no Exterior**. A OGX Áustria poderá ajuizar um processo de falência com base no *Chapter 15* do *Bankruptcy Code* dos Estados Unidos da América, com o objetivo de conferir efeitos ao Plano em território norte-americano, vinculando os Credores ali domiciliados e estabelecidos, bem como outros procedimentos de insolvência, ou de qualquer outra natureza, em outras jurisdições conforme necessário para a implementação deste Plano, incluindo, mas não se

limitando, aos processos de insolvência existentes nos termos da legislação austríaca. Os referidos processos não poderão alterar as condições de pagamento e os demais termos deste Plano.

**14.11.Adesão dos Acionistas, OGPar, OGX e OGX International.** Os Acionistas, a OGPar, a OGX e a OGX International subscrevem o presente Plano, assumindo e concordando com tudo aquilo que se refira às suas respectivas esferas jurídicas, bem como obrigando-se a fazer e praticar todos os atos necessários ou úteis e a assinar todos e quaisquer documentos necessários ao fiel cumprimento das obrigações assumidas neste Plano ou razoavelmente necessárias para sua implementação.

**14.12.Lei Aplicável.** Os direitos, deveres e obrigações decorrentes deste Plano deverão ser regidos, interpretados e executados de acordo com as leis vigentes na República Federativa do Brasil.

**14.13.Eleição de Foro.** Todas as controvérsias ou disputas que surgirem ou estiverem relacionadas a este Plano serão resolvidas (i) pelo Juízo da Recuperação, até o encerramento do processo de recuperação judicial; e (ii) pelos juízos competentes no Brasil ou no exterior, conforme estabelecido nos contratos originais firmados entre OGX Áustria e os respectivos Credores, após o encerramento do processo de recuperação judicial.

O Plano é firmado pelos representantes legais devidamente constituídos da OGX Áustria. Os Laudos econômico-financeiro e de avaliação dos bens e ativos (**Anexo 1.1.79**) subscritos por empresas especializadas foram apresentados ao Juízo da Recuperação, na forma da Lei de Falências, em 28.05.2014 e fazem parte integrante deste Plano.

Rio de Janeiro, 28 de maio de 2014

*[Segue página de assinaturas do Plano de Recuperação Judicial da OGX Áustria]*

*[Página de assinaturas do Plano de Recuperação Judicial da OGX Austria]*

**OGX Austria GmbH – Em Recuperação Judicial**

**Óleo e Gás Participações S.A. – Em Recuperação Judicial**, atual denominação de OGX Petróleo e Gás Participações S.A.

**OGX Petróleo e Gás S.A. – Em Recuperação Judicial**

**OGX International GmbH – Em Recuperação Judicial**

**Centennial Asset Mining Fund LLC.**

**Centennial Asset Brazilian Equity Fund, LLC.**

**Eike Fuhrken Batista**

Exhibit 7

JUDICIAL REORGANIZATION PLAN OF
OLEO E GAS PARTICIPACOES S.A. - UNDER JUDICIAL REORGANIZATION

Oleo e Gas Participacoes **- Under Judicial Reorganization** ("OGPar"), current corporate name of OGX Petróleo e Gás Participações S.A., a corporation enrolled with the National Corporate Taxpayers' Register of the Ministry of Finance (CNPJ/MF) under No. 07.957.093/0001-96, with headquarters at Rua do Passeio, No. 56, 10th, 11th, and 12th floors, Downtown, City of Rio de Janeiro, State of Rio de Janeiro, hereby files, in the records of the judicial reorganization proceedings registered under No. 0377620--56.2013.8.19.0001, pending before the 4th Corporate Court of the Judicial District of Rio de Janeiro, State of Rio de Janeiro, the following judicial reorganization plan, pursuant to the provisions of Article 53 of Law No. 11101/2005.

**1.      Definitions and Rules of Construction**

**1.1.      Definitions**. The terms and expressions used in capital letters, whenever mentioned in the Plan, shall have the meanings assigned to them in this **Clause 1**. Such defined terms will be used, as appropriate, in singular or plural, masculine or feminine, without thereby losing the meaning assigned to them.

**1.1.1.**      "1st Series of DIP Loan": The first series of loans corresponding to the DIP Loan, according to 1st Series Debentures, in the amount of **R$ 299,200,000.00** (two hundred and ninety nine million, two hundred thousand Brazilian reais), monetarily adjusted by the variation of the sale exchange rate of Brazilian reais into U.S. dollars, according to the Debentures Deed, which on the Issue Date was equivalent to **US$ 125,000,000.00** (one hundred and twenty five million U.S. dollars), according to Clauses **4.3.1** and **4.4** of the OGX Plan.

**1.1.2.**      "1st Bridge Loan": A very short-term loan exempt from bankruptcy taken by OGPar, in the amount of **US$ 15,000,000.00** (fifteen million U.S. dollars), as set forth in the loan agreement entered into on December 26, 2013, which was fully paid on March 14, 2014.

**1.1.3.**      "11th Round": The 11th Round of Competitive Biddings for areas for exploration and production of oil and natural gas in sedimentary basins of Barreirinhas, Ceara, Espirito Santo, Foz do Amazonas, Para-Maranhao, Parnaiba, Pernambuco-Paraiba, Potiguar, Reconcavo, Sergipe-Alagoas, and Tucano, held by ANP, on May 14, 2013.

**1.1.4.**      "2nd Series of DIP Loan": The second series of the loan corresponding to the DIP Loan, according to the terms of the 2nd Series Debentures, in the amount of up to **R$ 215,424,000.00** (two hundred and fifteen million, four hundred and twenty four thousand Brazilian reais), monetarily adjusted by the variation of the sale exchange rate of Brazilian reais into U.S. dollars until the payment date of the 2nd Series Debentures, according to the terms of the Debentures Deed, which on the Issue Date corresponded to up to **US$ 90,000,000.00** (ninety million U.S. dollars). The final amount of the 2nd Series Debentures to be subscribed by Backstop New Lenders (whether they are Creditors or not), shall be equivalent to the unsubscribed portion of the 3rd Series Debentures, observing the provisions of this Plan and the Debentures Deed. The 2nd Series Debentures may be fully cancelled, if the 3rd Series Debentures are fully subscribed, under the terms of the Debentures Deed.

**1.1.5.** "2nd Bridge Loan": A very short-term loan exempt from bankruptcy taken by OGX, in the amount of **US$ 50,000,000.00** (fifty million U.S. dollars), according to the Export Prepayment Agreement entered into with Credit Suisse Brazil (Bahamas), in the capacity of administrative agent, on January 13, 2014, which was fully paid on March 13, 2014.

**1.1.6.** "3rd Series of DIP Loan": The third series of loan corresponding to the DIP Loan, according to 3rd Series Debentures, in the amount of up to **R$ 215,424,000.00** (two hundred and fifteen million, four hundred and twenty four thousand Brazilian reais), monetarily adjusted by the variation of the sale exchange rate of Brazilian reais into U.S. dollars until the payment date of the 3rd Series Debentures, according to the terms of the Debentures Deed. The final amount of the 3rd Series Debentures to be subscribed by Creditors Affected by the Plan and/or First Priority Creditors (which expressly adhere to the Plan) may vary according to the demand for the 3rd Series Debentures. The 3rd Series Debentures may be cancelled due to the absence of Creditors interested in the subscription and payment, as described in **Clause 4** of the OGX Plan, under the terms of the Debentures Deed.

**1.1.7.** "Shareholders": Eike Batista and all other direct and indirect shareholders of OGPar under control of Eike Batista, including, but not limited to, Centennial Asset Mining Fund LLC., and Centennial Asset Brazilian Equity Fund, LLC.

**1.1.8.** "Shares": Common shares issued by OGX, whether existing on the date hereof, or to be issued pursuant to the provisions of this Plan and the OGX Plan.

**1.1.9.** "Judicial Administrator": Deloitte Touche Tohmatsu Consultores Ltda., pursuant to appointment by the Reorganization Court, pursuant to Chapter II, Section III of the Bankruptcy Law, or its substitute from time to time.

**1.1.10.** "Verification Agent": Activity monitoring agent, as set out and agreed upon in the Debentures Deed and in the Subscription Agreement.

**1.1.11.** "Debentures Trustee": Oliveira Trust Distribuidora de Titulos e Valores Mobiliarios S.A., as defined by the Debentures Deed.

**1.1.12.** "Bond Trustee": Deutsche Bank Trust Company Americas, trustee under the terms of the Bond Indenture, as well as the companies under its control, whether directly or indirectly, its directors, managers and employees, or any other agent that may be appointed to replace Deutsche Bank Trust Company Americas, under the terms of the Bond Indenture.

**1.1.13.** "ANP": Brazilian National Agency of Petroleum, Natural Gas and Biofuels.

**1.1.14.** "Approval of the Plan": The approval of the Plan at the Meeting of Creditors. For the purposes of this Plan, the Approval of the Plan is deemed to occur on the date of the Meeting of Creditors that votes and approves the Plan, even if the Plan is not approved by all classes of

Creditors pursuant to Articles 45 or 58 of the Bankruptcy Law.

**1.1.15.** "Meeting of Creditors": Any General Meeting of Creditors held pursuant to Chapter II, Section IV of the Bankruptcy Law.

**1.1.16.** "OGX Capital Increase Through Capitalization of Credits": Capital increase of OGX, subscribed to by Creditors Affected by the Plan and by First Priority Creditors (the latter if they have expressly adhered to this Plan, as applicable), paid in by capitalization of Credits Affected by the Plan and First Priority Credits (held by First Priority Creditors expressly adhering to the Plan), pursuant to Art. 171, paragraph 2 of the Corporations Act and other applicable legal provisions. The Shares to be issued in OGX Capital Increase Through Capitalization of Credits will be delivered to Creditors domiciled in the United States of America, pursuant to and observing the terms of the non-exclusive exemption from registration set forth by Section 3(a)(10) of the Securities Act of 1933.

**1.1.17.** "OGX Capital Increase Through Conversion of Debentures": OGX's capital increase, subscribed by the holders of Debentures, paid in through the conversion of the Debentures into shares, as set forth in articles 57 and 171, paragraph 3 of the Corporations Act and other applicable legal provisions, subject to the provisions set forth in the Debentures Deed.

**1.1.18.** "Backstop New Lenders": The New Lenders subscribing the Subscription Agreement (or their successors and assignees, for any reason, whether they are Creditors Affected by the Plan or not) that, after observing and complying with certain terms and conditions precedent established in the Subscription Agreement, undertook the obligation of subscribing (i) the 1st Series Debentures; and (ii) the 2nd Series Debentures in an amount equivalent to unsubscribed 3rd Series Debentures, always limited to the maximum amount in national currency equivalent to **US$ 90,000,000.00** (ninety million U.S. dollars) on the date of the 2nd Series Debentures subscription.

**1.1.19.** "Bondholders": Creditors holding Bonds 2018 and/or Bonds 2022, whether or not represented by the Bond Trustee.

**1.1.20.** "Supporting Bondholders": Holders of Bonds 2018 and/or Bonds 2022 that jointly hold the majority of the Credits represented by Bonds 2018 and/or Bonds 2022, with which the OGX Group has entered into the Plan Support Agreement or that has become a party to the Plan Support Agreement, from time to time. For the purposes of this Clause, Supporting Bondholders are not considered to be those Bondholders that originally signed the Plan Support Agreement and subsequently alienated or will alienate to third parties all or part of the Bonds 2018 and/or Bonds 2022 held by them, provided that such sale occurs under the terms of the Plan Support Agreement.

**1.1.21.** "Bonds 2018": Bonds in the aggregate amount of **US$ 2,563,000,000.00** (two billion, fivehundred sixty-three million U.S.

3/49

dollars), maturing in 2018,      issued by OGX      Austria and fully guaranteed by OGPar and OGX, according to the respective Bond Indenture.

1.1.22.   "Bonds 2022": Bonds      in the aggregate   amount of **US$ 1,603,000,000.00** (one billion, sixty-three million U.S. dollars), maturing in 2022, issued by OGX Austria and fully guaranteed by OGPar and OGX, according to the respective Bond Indenture.

1.1.23.   "BS-4": The exploration block located in the Santos Basin, State of Sao Paulo, formed by the Atlanta and Oliva fields, whose concession rights were granted by ANP to the consortium formed by Queiroz Galvao Exploracao e Producao S.A., which owns a thirty percent (30%) stake, Barra Energia do Brasil Petroleo e Gas Ltda., which owns a thirty percent (30%) stake, and OGX, which owns the remaining forty percent (40%) stake.

1.1.24.   "CADE": Administrative Council for Economic Defense.

1.1.25.   "CETIP": CETIP S.A. - Mercados Organizados.

1.1.26.   "Receiver": OGPar or a third-party to be appointed in due course by OGX that, according to the terms of Article 693, and those that follow it, of the Civil Code, shall act on its own behalf, but for the benefit of Creditors, at their option, according to **Clause 5.1.5.6** of the OGX Plan, for the exclusive purposes of implementing this Plan and the OGX Plan.

1.1.27.   "Subscription Notice": Notice to be sent by OGX to the Creditors Qualified for the Subscription of 3rd Series Debentures, whereby the conditions and procedures necessary to implement the subscription and payment of the 3rd Series Debentures as set forth in **Clause 4.6** herein will be informed.

1.1.28.   "Conditions Precedent for the OGX Capital Increase Through Capitalization of Credits": Minimum conditions precedent for the implementation of the OGX Capital Increase Through Capitalization of Credits, as set forth in **Clause 5.1.3.1** of the OGX Plan.

1.1.29.   "Conditions Precedent for OGX Capital Increase Through Conversion of Debentures": These are minimum conditions precedent to the implementation of the operation of OGX Capital Increase Through Conversion of Debentures, as established in **Clause 4.7** of this Plan and the OGX Plan, without prejudice of conditions precedent for conversion, as set forth in the Debentures Deed and in the Subscription Agreement.

1.1.30.   "Collateral Sharing Agreement": This is the Sharing Agreement of Guarantees and Rights among Creditors entered into on April 9, 2014, by Oliveira Trust Distribuidora de Titulos e Valores Mobiliarios S.A., Wilmington Trust, National Association, Oliveira Trust Servicer S.A. and OGX, as the intervening and consenting party, as amended from time to time, (**Exhibit 1.1.33** of the OGX Plan).

1.1.31.   "DIP Guarantee Agreements - 1st Series": The instruments below, as

amended and changed from time to time: (i) Private Instrument of Fiduciary Alienation of Oil and Natural Gas as Guarantee; (ii) Private Instrument of Fiduciary Alienation of Equipment as Guarantee; (iii) Private Instrument of Fiduciary Assignment of Credit Rights as Guarantee (General); (iv) Private Instrument of Fiduciary Assignment of Credit Rights and Credit Securities as Guarantee (Intercompany and Product Sale); (v) Private Instrument of Fiduciary Assignment of Credit Rights as Guarantee (Parnaiba); (vi) Private Instrument of Fiduciary Assignment of Credit Rights as Guarantee (Tax Credits); (vii) Private Instrument of Pledge of Rights on the Concession Agreement and Other Covenants (BS-4); (viii) Deposit Agreement as Guarantee and Other Covenants; (ix) Deed of Pledge of Parnaiba MPX Receivables; (x) Deed of Pledge of Parnaiba Receivables; (xi) Deed of Pledge of Shares of Parnaiba B.V.; and (xii) U.S. Security Agreement (**Exhibit 1.1.35** of the OGX Plan).

**1.1.32.**   "DIP Guarantee Agreements - 2nd and 3rd Series": In addition to the DIP Guarantee Agreements - 1st Series, these include the following instruments that may be entered into for the: (i) fiduciary alienation of shares issued by OGX; (ii) fiduciary alienation of shares issued by OGPar; (iii) pledge of rights on concession relating to the concession agreements of blocks BM-C-39 and BM-C-40 of Tubarao Martelo and the concession agreements of the 11th Round; (iv) pledge of shares of OGX International GmbH; (v) pledge of shares of OGX Austria; (vi) Pledge of Shares of OGX Netherlands B.V.; (vii) pledge of shares of OGX Netherlands Holding B.V.; provided that certain conditions of the Debentures Deed be verified; (viii) any instrument of guarantee on the funds potentially obtained from the sale of the assets arising from the agreements indicated in items (i) to (vii) above; (ix) any other guarantees to be created under the terms of the DIP Guarantee Agreements - 1st Series; and (x) any other guarantee agreement needed for the perfection or protection of the guarantees mentioned in items (i) to (ix) above.,

**1.1.33.**   "DIP Guarantee Agreements": These are the DIP Guarantee Agreements - 1st Series and DIP Guarantee Agreements - 2nd and 3rd Series as full guarantee of the DIP Loan and Additional Loan, subject to the Collateral Sharing Agreement.

**1.1.34.**   "Subscription Agreement": Senior Secured Superpriority Post-Petition Debentures Subscription Agreement entered into among OGX, OGPar, Backstop New Lenders, Wilmington Trust, National Association and other parties on February 7, 2014, as amended from time to time (**Exhibit 1.1.34)**.

**1.1.35.**   "Export Prepayment Agreement": This is the Export Prepayment Agreement, entered into on April 9, 2014 by OGX, OGPar, OGX Austria, OGX International, OGX Netherlands B.V., OGX Netherlands Holding B.V., Parnaiba B.V., Deutsche Bank A.G., London Branch, Wilmington Trust, National Association, Oliveira Trust Distribuidora de Titulos e Valores Mobiliarios S.A. and Oliveira Trust Servicer S.A., attached to this Plan as **Exhibit 1.1.35**.

**1.1.36.** "OSX-1 Agreement": This is the Re-delivery Termination and Interim Operation Agreement in respect of the OSX-1 FPSO which can be entered into between the OGX Group and the OSX Group, in order to establish the terms and conditions to temporarily resume the exploratory activity in the Tubarao Azul Field.

**1.1.37.** "OSX-3 Agreements": The agreements that may be entered into between the OGX Group, the OSX Group and others, to set forth new terms and conditions for chartering and operation of the OSX-3 Floating Production Storage Offloading (FPSO) Vessel ("FPSO OSX-3") in the Tubarao Martelo field, including, but not limited to the following instruments: (i) Charter Amendment Agreement; (ii) Charter Agreement; (iii) Charterer Contract Guarantee; (iv) O&M Amendment Agreement; (v) Amended & Restated O&M Agreement; (vi) OGX Buyout Right Agreement; (vii) Charter Termination Agreement; and (viii) OSX-3 LC Agreement.

**1.1.38.** "Credits": Credits and obligations, whether materialized or contingent, net or illiquid, existing on the Filing Date, or which generating fact is previous or simultaneous to the Filing Date, whether or not subject to the effects of Plan, including the OSX Group Credits owed by the OGX Group. When applicable, Credits shall also be interpreted as including the credits and obligations, whether materialized or contingent, net or illiquid, existing on the Filing Date, or which generating fact is previous or simultaneous to the Filing Date, whether or not subject to the effects of the Plan, and that may be owed by OGX and/or OGX Austria and/or OGX International. For the avoidance of doubt, the credits resulting from DIP Loan and the Additional Loan are not included in above Credits for any purpose, not being subject to the terms, effects, and conditions of this Plan in any aspect.

**1.1.39.** "Secured Credits": Credits Affected by the Plan held by Secured Creditors.

**1.1.40.** "Credits Affected by the Plan": Credits held by the Creditors Affected by the Plan. Where applicable, Credits Affected by the Plan shall also be construed as the credits held by the Creditors Affected by the Plan of OGX and/or OGX Austria and/or OGX International which shall be novated and paid as set forth in the OGX Related Parties Plans.

**1.1.41.** "First Priority Credits": Credits held by First Priority Creditors on the Filing Date. When applicable, the term Credits held by First Priority Creditors will also be interpreted as the credits held by First Priority Creditors of OGX and/or OGX Austria and/or OGX International. For the avoidance of doubt, the First Priority Credits above are not to be confused with the first priority credits resulting from operations contracted after the Filing Date, including the DIP Loan and the Additional Loan.

**1.1.42.** "OSX Group Credits": Credits held by companies in the OSX Group and the object of a formalized transaction between the OGX Group and the OSX Group.

**6/49**

**1.1.43.** "Unsecured Credits": Credits Affected by the Plan held by Unsecured Creditors.

**1.1.44.** "Labor Credits": Credits and rights held by Labor Creditors.

**1.1.45.** "Creditors": Individuals or legal entities holding Credits, whether included or not in the List of Creditors. Where applicable, Creditors shall also be construed as individuals or legal entities holding Credits against the OGX Group, whether included or not in the List of Creditors of OGX and/or OGX Austria and/or OGX International.

**1.1.46.** "Secured Creditors": Creditors Affected by the Plan whose Credits are secured by the provision of security (such as a pledge or a mortgage), up to the value of the respective asset, pursuant to Article 41, II, of the Bankruptcy Law.

**1.1.47.** "Creditors Affected by the Plan": Creditors whose Credits and rights can be changed by the Plan, as set forth in the Bankruptcy Law. These Creditors are divided, for the purposes of voting under the Plan or election of the Creditor Committee in a Meeting of Creditors, in three classes (Labor Creditors, Secured Creditors and Unsecured Creditors). Where applicable, Creditors Affected by the Plan shall also be construed as the Creditors of the OGX Group, whose credits and rights can be changed by the OGX Related Parties Plans, as set forth in the Bankruptcy Law. These Creditors are divided, for the purposes of voting under the OGX Related Parties Plans or election of the Creditor Committee in a Meeting of Creditors of each of the companies comprising the OGX Group, in three classes (Labor Creditors, Secured Creditors and Unsecured Creditors).

**1.1.48.** "First Priority Creditors": For the purposes of this Plan, the Creditors of OGPar and of the other companies of the OGX Group, when applicable (i) where its right to credit arises from events subsequent to the Filing Date, but results from an instrument executed before the Filing Date, subject in this case to the condition that the corresponding credit does not qualify as first priority credit for the purposes of Articles 67 and 84, Sections V and 149 of Bankruptcy Law, in case of intervening bankruptcy of OGPar or any other company of the OGX group being decreed; or (ii) its right to appropriate assets or execute its rights or guarantees resulting from the agreements entered into before or after the Filing Date cannot be changed by the Plan, according to Article 49, Paragraphs 3 and 4 of Bankruptcy Law.

**1.1.49.** "Financial Creditors": Unsecured Creditors that are holders of Credits resulting from financial or bank operations, including but not limited to Bondholders.

**1.1.50.** "Creditors Qualified for the Subscription of 3rd Series Debentures": These are the Creditors contained in the List of Creditors current on the date of the Meeting of Creditors that deliberates about the Plan and/or OGX Related Parties Plans that have (i) submitted to OGX, to the Debentures Trustee and to the Judicial Administrator, within a maximum period of five (5) Business Days from Approval of the Plan, the Notification of

Interest in Subscribing 3rd Series Debentures, subject to the conditions set forth in **Clause 4.6.2** of the OGX Plan; and (ii) when Creditors non-resident in Brazil have complied with the arrangements described in **Exhibit 4.6**. For the purposes of this Plan, Creditors Qualified for the Subscription of 3rd Series Debentures are considered to be all Bondholders that adopted the procedure to individualize their right to participation, petition, voice and vote, in the Judicial Reorganization and in any Meeting of Creditors, as per the procedure established in the Bondholders Notice, even when their respective Credits are not individually listed in the list of Creditors in force on the date of the Meeting of Creditors that deliberates about the Plan and/or the Plan of the OGX Related Parties and are listed only on the name of Bond Trustee. OGX and OGPar are not responsible for non-residing Creditors that are not able to subscribe, pay or receive 3rd Series Debentures, due to non-compliance with legal requirements in force in the period established for the formalization of the respective investment.

**1.1.51.** "Unsecured Creditors": Creditors Affected by the Plan holding unsecured credits, as contained in Articles 41, item III, and 83, item VI, both of the Bankruptcy Law.

**1.1.52.** "Labor Creditors": Creditors Affected by the Plan holding credits arising from labor legislation or resulting from occupational accidents, in accordance with Article 41, I of the Bankruptcy Law.

**1.1.53.** "CVM": Brazilian Securities and Exchange Commission.

**1.1.54.** "Issue Date": For the purposes of this Plan, February 12, 2014, date when the 1st Series Debentures, the 2nd Series Debentures and the 3rd Series Debentures were issued, under the terms of the Debentures Deed.

**1.1.55.** "Filing Date": October 30, 2013, date when the petition for judicial reorganization of the OGX Group was filed.

**1.1.56.** "Debentures": Debentures of the 1st Series Debentures, the 2nd Series Debentures, and the 3rd Series Debentures, which will be subscribed and paid pursuant to the terms and conditions set forth in this Plan, in the OGX Plan and in the Debentures Deed.

**1.1.57.** "1st Series Debentures": Debentures relating to the 1st Series of DIP Loan, which have been issued in the form of the Debentures Deed and already subscribed and paid-in by the Backstop New Lenders.

**1.1.58.** "2nd Series Debentures": Debentures relating to the 2nd Series of DIP Loan, already issued and that will be subscribed and paid-in by the Backstop New Lenders (whether they are Creditors or not), in the form of the Debentures Deed, and provided that the conditions precedent of this Plan and of the Subscription Agreement are observed.

**1.1.59.** "3rd Series Debentures": These are the Debentures relating to the 3rd Series of DIP Loan, already issued, and that will be subscribed, and paid-in by the Creditors according to the Debentures Deed and this Plan.

**1.1.60.** "Business Day": For the purposes hereof, Business Day shall mean any day, other than Saturday, Sunday or municipal holiday in the Cities of Sao Paulo, State of Sao Paulo, or Rio de Janeiro, State of Rio de Janeiro, or which, for any reason whatsoever, is not a banking business day in the City of Sao Paulo, State of Sao Paulo, or in the City of Rio de Janeiro, State of Rio de Janeiro, except for the cases where payments are made through CETIP, in which event Business Day shall mean any day, other than Saturday, Sunday or national holiday.

**1.1.61.** "Bondholders Notice": A notice made available on the Electronic Official Gazette of the Court of Justice of the State of Rio de Janeiro on May 2, 2014 containing the rules established by the Reorganization Court about the segregation and individualization of right of petition, voice and vote of Bondholders in the Judicial Reorganization and in any Meeting of Creditors of the OGX Group.

**1.1.62.** "Material Adverse Effect": Any material adverse effect on (a) the business, condition (financial, economic, operating or other), prospects or results of activities of OGPar, OGX, the Shareholders, the Guarantors and/or their respective subsidiaries or affiliates, including any material adverse effect on the expected production capacity of the Tubarao Martelo oil field; (b) the capacity of OGPar, OGX and/or any of the Guarantors to implement, consummate and/or perform (including the actual non-compliance of) any obligations hereunder, under the Debentures Deed, the Additional Loan, under the DIP Guarantee Agreements and/or the Subscription Agreement, (c) the legality, validity, binding effect or enforceability against OGX and/or any of the Guarantors hereof, of the Debentures Deed, of the Additional Loan, of the DIP Guarantee Agreements and/or the Subscription Agreement; (d) the rights of any holder of Debentures under the Debentures Deed, the New Creditors of the Additional Loan and/or the DIP Guarantee Agreements; and/or the DIP Guarantees.

**1.1.63.** "Eike Batista": Eike Fuhrken Batista, a Brazilian citizen, legally separated, metallurgical engineer, resident and domiciled at Praia do Flamengo, No. 154, 10th floor, Rio de Janeiro - State of Rio de Janeiro, enrolled with the Individual Taxpayers' Register (CPF) under No. 664.976.807-30.

**1.1.64.** "Additional Loan": This is the superpriority post-petition loan made by OGX, in the amount of **US$ 73,170,731.71** (seventy three million, one hundred and seventy thousand, seven hundred and thirty one U.S. dollars and seventy one cents), according to the terms of the Export Prepayment Agreement, which will have the treatment provided for in Articles 67, 84 and 149 of Bankruptcy Law and other legal provisions applicable. For the avoidance of doubt, the Additional Loan corresponds to the Supplementary Financing set out in the Debentures Deed, Collateral Sharing Agreement and DIP Guarantee Agreements.

**1.1.65.** "DIP Loan": Superpriority post-petition loan already granted and to be granted by the Backstop New Lenders and the New Lenders, through the subscription of Debentures under the terms of the Debentures Deed, which will be addressed as set forth in articles 67, 84 and 149 of the

Bankruptcy Law and other applicable legal provisions, as set forth in **Clause 4.3** et seq. hereof and of the Debentures Deed.

**1.1.66.** "Bridge Loans": Together, the 1st Bridge Loan and the 2nd Bridge Loan.

**1.1.67.** "Debentures Deed": The Private Indenture of the Third (3rd) Issue of Simple Debentures, Non-Convertible into Shares, to be transformed into Convertible into Shares which is Guaranteed, with Additional Personal Guarantee, in three Series, of OGX Petroleo e Gas S.A., entered into between OGX, the Debentures Trustee, OGPar and others, as amended from time to time. The Third Amendment of the Debentures Deed for the inclusion of the 3rd Series Debentures and other specific provisions shall reflect substantially the terms and conditions of the draft included in **Exhibit 1.1.67** of this Plan.

**1.1.68.** "Bond Indentures": The indenture of the Bonds 2018 and Bonds 2022 respectively called (a) "Indenture Dated as of June 3, 2011, U.S.$ 2,563,000,000 8.500% Senior Notes Due 2018"; and (b) "Indenture Dated as of March 30, 2012, U.S.$ 1,063,000,000 8.375% Senior Notes Due 2022", issued by OGX Austria, with guarantee by OGPar and OGX.

**1.1.69.** "DIP Guarantees": Package of guarantees granted by the OGX Group to the New Lenders of the DIP Loan and the Additional Loan, as described in **Clause 4.3.5** hereof and as set forth in the DIP Guarantee Agreements, the Debentures Deed and the Collateral Sharing Agreement.

**1.1.70.** "Bridge Guarantees": This is the package of guarantees granted by the OGX Group to the New Lenders of the 2nd Bridge Loan, according to the Guarantee Agreements - 2nd Bridge Loan, which were fully released with the performance of the 2nd Bridge Loan.

**1.1.71.** "Guarantors": The following companies of the OGX Group, which provided to the New Lenders all or some of the Bridge Guarantees and/or DIP Guarantees, as applicable, in consideration for the granting of the New Resources: OGX, OGPar, OGX Austria, OGX International, OGX Netherlands B.V. and OGX Netherlands Holding B.V. and Parnaiba B.V.

**1.1.72.** "OGX Group": Companies that are directly or indirectly controlled by OGPar, including, but not limited to, OGX, OGX Austria, OGX International and their respective subsidiaries and affiliates.

**1.1.73.** "OSX Group": Companies that are directly or indirectly controlled by OSX Brasil S.A. - Under Judicial Reorganization, including, but not limited to, OSX Servicos Operacionais Ltda. - Under Judicial Reorganization, OSX Construcao Naval S.A. - Under Judicial Reorganization, OSX GmbH, OSX Leasing Group B.V., OSX1 Leasing B.V., OSX2 Leasing B.V., OSX WHP 1&2 Leasing B.V., OSX2 Holding B.V., OSX3 Holdco B.V., OSX3 Holding B.V. and OSX3 Leasing B.V.

**1.1.74.** "Confirmation Order": The court order given by the Reorganization Court granting Judicial Reorganization, pursuant to Article 58, head provision and/or paragraph 1, Bankruptcy Law. For the purposes of this Plan, the Confirmation Order is deemed to take place on the date of publication, in

the electronic official court gazette of the State of Rio de Janeiro, of the
decision granting the Judicial Reorganization.

**1.1.75.** "Merger": Corporate transaction for the merger of OGPar by OGX, as
described in **Clause 9,** and those that follow it, of this Plan.

**1.1.76.** "Reorganization Court": The Court of the 4th Corporate Court of the
Judicial District of Rio de Janeiro

**1.1.77.** "Reports": The economic and financial reports that show the economic
viability of OGPar, the evaluation of the assets of OGX and certify that
the prospect of recovery of the Creditors in this Plan is better than the
prospect of recovery in case of the bankruptcy of OGPar, pursuant to
Article 53, of the Bankruptcy Law (**Exhibit 1.1.77**).

**1.1.78.** "Corporations Act": Law N°. 6404, of December 15, 1976.

**1.1.79.** "Bankruptcy Law": Law N°. 11101, of February 9, 2005.

**1.1.80.** "List of Creditors": This is the list of creditors as provided by the Judicial
Administrator, and published on May 02, 2014, respecting and observing
possible supervening decisions, regarding the amount, classification and
nature of the Credits, issued by the Reorganization Court until the date of
the OGX Capital Increase Through Capitalization of Credits and,
subsequently, the list of creditors consolidated in the General Schedule
of Creditors.

**1.1.81.** "Notification of Interest in Subscribing 3rd Series Debentures": It is the
notification to be sent by the Creditors Qualified for the Subscription of
3rd Series Debentures, to the Debentures Trustee and to the Judicial
Administrator (a) expressing their intention, as well as their irrevocable
and irreducible commitment to fully subscribe their portion of the 3rd
Series Debentures, corresponding to the proportional amount of their
Credit, by way of direct investment (in case of Creditors not residing in
Brazil); (b) indicating their qualification and the contact data, including
the physical and electronic address for receipt of the Subscription Notice
addressed in this Plan; (c) in case of legal entities, copy of the By-laws
and/or Articles of Association and other documents attesting to the
powers of the signatory of the Notification of Interest in Subscribing 3rd
Series Debentures to represent and bind the Creditor; and (d) for a
non-resident Creditor, the following information and proof, required for
registration of the investment before the Brazilian Central Bank: (i) proof
of registry with the Brazilian Federal Revenue Office (with the Corporate
Taxpayers Register- CNPJ or with the Individual Taxpayers Register -
CPF, as the case may be); and (ii) proof of enrollment with the Brazilian
Central Bank (Individuals and Legal Entities Register - International
Capitals - CADEMP (as per instructions contained in the "Cademp -
Declarant's Manual", available at www.bcb.gov.br » *Cambio e Capitais
Estrangeiros » Manuais")*. Such information and documents shall be made
available to OGX within the term established in **Exhibit 4.6**. Upon
forwarding the Notification of Interest in Subscribing 3rd Series
Debentures, the Creditors Qualified for the Subscription of 3rd Series
Debentures represent and warrant, for all purposes of the law, on an

irrevocable and irreducible basis, that (i) they are not Related Parties; and (ii) they are aware that the acquisition of and investment in the Debentures involves relevant risks, especially considering the fact that OGPar and OGX are under Judicial Reorganization and that the payment of the Debentures is an uncertain event, and that they are capable of individually or through assistants especially contracted for such purpose, analyze the convenience and opportunity of this subscription, in the light of their own financial capacity. The Notification of Interest in Subscribing 3rd Series Debentures shall follow the model contained in **Exhibit 1.1.81** and shall be sent according to the procedure described in **Clause 16.5** of this Plan.

**1.1.82.** "New Market": The listing segment of BM&FBOVESPA - Bolsa de Valores, Mercadorias e Futuros ("BM&FBOVESPA") for the trading of shares issued by companies that voluntarily commit to the adoption of corporate governance practices and additional disclosure of information in relation to what is required by law.

**1.1.83.** "New Lenders": Are the Creditors Affected by the Plan and/or First Priority Creditors and/or third parties, including intermediary banks, financing agents, among others, that already granted or that may grant New Resources to OGX, upon subscription of the 1st Bridge Loan, 2nd Bridge Loan, DIP Loan, and/or the Additional Loan as set forth in **Clause 4,** and those that follow it, of this Plan. The New Lenders are and shall be, for all legal purposes, holders of First Priority Credits and paid with absolute precedence over other Credits, including First Priority Credits in the event of subsequent bankruptcy of OGPar, OGX or any company of Group OGX, under Articles 67, 84 and 149 of the Bankruptcy Law and other applicable legal provisions.

**1.1.84.** "OGPar": Holds the meaning given in the preamble of this Plan.

**1.1.85.** "OGX": OGX Petroleo e Gas S.A. - Under Judicial Reorganization, a corporation enrolled with the Corporate Taxpayers Register of the Ministry of Finance (CNPJ/MF) under No. 08.926.302/0001-05, headquartered at Praca Mahatma Gandhi, No. 14, the City of Rio de Janeiro, State of Rio de Janeiro

**1.1.86.** "OGX Austria": OGX Austria GmbH - Under Judicial Reorganization, a company incorporated under the laws of the Republic of Austria, with business registration with the Commercial Court in Vienna under FN 335512 and headquartered at Schwarzenbergplatz 5/Top 2/3, 1030, Vienna, and enrolled under CNPJ No. 16.885.474/0001-06.

**1.1.87.** "OGX International": OGX International GmbH - Under Judicial Reorganization, a company organized under the laws of the Republic of Austria, registered with the Commercial Court of Vienna under No. FN 335513B, and headquartered at Schwarzenbergplatz 5/Top Nr. 2/3, 1030, in the City of Vienna.

**1.1.88.** "Restructured OGX": Holds the meaning given in **Clause 9.2** of this Plan.

**1.1.89.** "Parnaiba B.V.": Parnaiba B.V. a company *(Besloten Vennootschap)* organized and existing pursuant to the laws of Holland, headquartered at Hague, at Parkstraat 83, 209 / 210 Office, 2514JG's-Gravenhage.

**1.1.90.** "Exempt Parties": OGPar, the OGX Group, the Shareholders, the New Lenders, including the Backstop New Lenders, the Supporting Bondholders, the Bond Trustee and their respective controlled companies, subsidiaries, affiliates and associates and other companies belonging to the same corporate and economic group, their officers, directors, shareholders, non-controlling shareholders, partners, agents, employees, representatives, advisors, consultants and attorneys, successors and assignees, for the purposes hereof.

**1.1.91.** "Related Parties": (i) companies directly or indirectly controlled by Mr. Eike Batista, including the companies of the OSX Group and/or (ii) the directors of any company from the OGX Group at any time and/or the OSX Group; and/or (iii) relatives to the third degree of any of the persons mentioned in items (i) and (ii) above.

**1.1.92.** "Plan Support Agreement": Agreement entered between the OGX Group and the Supporting Bondholders, on December 24, 2013, with the purpose of establishing the basic conditions for the restructuring of the OGX Group.

**1.1.93.** "Plan": This judicial reorganization plan, as amended, modified or changed from time to time.

**1.1.94.** "OGX Plan": The judicial reorganization plan presented by OGX, as amended, modified or changed from time to time.

**1.1.95.** "OGX Austria Plan": The judicial reorganization plan presented by OGX Austria, as amended, modified or changed from time to time.

**1.1.96.** "OGX International Plan": The judicial reorganization plan presented by OGX International, as amended, modified or changed from time to time.

**1.1.97.** "OGX Related Parties Plan": The OGX Plan, the OGX Austria Plan and the OGX International Plan all together, as amended, modified or changed from time to time.

**1.1.98.** "Initial Wells": 7-TBMT-8HP and 9-OGX-44HP wells in Tubarao Martelo field.

**1.1.99.** "Put Option": The Private Instrument of Granting of Subscription Option of Shares and Other Covenants of OGPar, entered into on October 24, 2012, between OGPar and Centennial Asset Mining Fund LLC and Eike Batista.

**1.1.100.** "Judicial Reorganization": Judicial Reorganization case filed under No. 0377620-56.2013.8.19.0001, pending before the Reorganization Court.

**1.1.101.** "New Resources": All the resources deriving from the 1st Bridge Loan, the 2nd Bridge Loan, the DIP Loan and the Additional Loan already granted or

that may be granted by the New Lenders.

**1.1.102.** "Registration as a Listed Company": Procedure to be adopted by OGX to obtain securities issuer registration, in category A, for the trading of securities in regulated securities markets before the CVM, as set forth in CVM Instruction 480, of December 7, 2009. The Registration as a Listed Company is an essential condition of the OGX Plan and this Plan, in such a way that any potential delay in obtaining such Registration as a Listed Company may affect the time of verification of the restructuring measures set forth in the OGX Plan and this Plan.

**1.1.103.** "Resolution of the Plan": Effect arising from the verification of any of the termination conditions listed in **Clause 11** of this Plan.

**1.1.104.** "Result of the Proceeding": As defined in **Clause 10.1** of this Plan, it refers to the proceeding result related to the amicable dispute resolution concerning the Put Option.

**1.1.105.** "Tubarao Azul": Field located at the Campos Basin, State of Rio de Janeiro, where the CM-592 exploratory block is located, the concession rights of which were granted to OGX through the BM-C-41 Concession Agreement.

**1.1.106.** "Tubarao Martelo": Field located at the Campos Basin, State of Rio de Janeiro, where exploratory blocks CM-466 and CM-499 are located, the concession rights of which were granted to OGX through Concession Agreements BM-C-39 and BM-C-40, respectively.

**1.2.    Clauses and Exhibits.** Unless specified differently, all Clauses and Exhibits mentioned in this Plan refer to the Clauses and Exhibits of this Plan. References to clauses or items of this Plan also refer to the respective sub-clauses and sub-items.

**1.3.    Headings**. The headings of the Chapters and Clauses of this Plan have been included for reference purposes only and shall not affect the construction or the contents of their provisions.

**1.4.    Terms**. The terms "include", "including" and similar terms are to be construed as if followed by the words "but not limited to."

**1.5.    References**. References to any documents or instruments include all the respective amendments, consolidations and additions, unless otherwise expressly provided.

**1.6.    Legal Provisions**. References to statutory provisions and laws shall be construed as references to those provisions as in force on that date or on the date that is specifically determined by the context.

**1.7.    Deadlines**. All deadlines in this Plan will be counted as determined by Article 132 of the Civil Code, disregarding the day of the beginning and including the day of maturity. Any deadlines of this Plan (counted as Business Days or otherwise), the final term of which falls on a day other than a Business Day, shall be automatically postponed to the immediately succeeding Business Day.

## 2.    General Conditions

**2.1.    History**. OGPar is a publicly-held holding corporation, with its shares traded on the Novo Mercado of BM&FBOVESPA, owned by the OGX Group, whose corporate purpose is to hold equity interest in other companies of the OGX Group, including OGX, which is one of the operating companies under Judicial Reorganization.

Created in 2007, the OGX Group has held in Brazil, over the past six (6) years, exploration activities of oil and gas in Campos, Santos, Espirito Santo, Parnaiba and Para-Maranhao Basins. To achieve this unprecedented exploration campaign, the OGX Group invested more than R$ 10 billion in its operations in Brazil, making it the largest private investor in the segment in which it operates.

**2.2.    Corporate structure of the OGX Group**: The OGX Group is structured as per organizational chart reproduced below:



**2.3. Fund Raising**. A significant part of investments made by the OGX Group in the strategic area where it acts was obtained through fund raising with international investors, particularly through the issuance of Bonds 2018 and Bonds 2022.

In this sense, on May 26, 2011, OGPar issued Bonds 2018 in the total amount of **US$ 2,563,000,000.00** (two billion, five hundred and sixty three million U.S. dollars), which were subsequently assumed by OGX Austria as issuer of the Bonds 2018. Net resources obtained with issuance of Bonds 2018 and its offer to qualified institutional investors were fully destined to the OGX Group available funds, upon the entering into of the export prepayment transaction entered into between OGX and OGX Austria, to bear the new exploratory campaign and to develop the production in discovered blocks until the OGX

Group could be self-financing.

Also, on March 30, 2012, OGX Austria issued Bonds 2022, in the total amount of **US$ 1,063,000,000.00** (one billion and sixty three million U.S. dollars), which were equally destined to qualified institutional investors. The net resources of the issuance of the Bonds 2022 were also destined to the available funds of the OGX Group, in order to help to implement the OGX Group business plan, upon issuance of debentures by OGX, which were subscribed by OGX Austria.

In return to the resources obtained as a result of Bonds 2018 and of Bonds 2022 issuance, OGX and OGPar fully guarantee the Bonds 2018 and Bonds 2022, as principal and several debtors and payers, for all legal purposes.

Considering the significant investments made by the OGX Group in the projects of oil and gas exploration defined in their business plan, a series of adverse events external to the OGX Group has changed significantly the operation of the activities developed by the group.

**2.4.    Reasons for the Crisis.** As widely exposed under the Judicial Reorganization, the OGX Group faces the direct consequences of the occurrence of a number of adverse events related to the risk of the activity it develops. Although the technical investigation undertaken in different fields, the exploration of which was granted to the OGX Group, has resulted in very significant production forecasts, the exploration proved to be commercially unviable in some of them. Although the extraction of oil and gas in certain blocks granted by the Federal Government has corresponded to the technical forecasts, production in other blocks proved insufficient or uneconomic, thus the expected financial results were not achieved. This fact affected very negatively the revenues of the OGX Group and, consequently, made it unable to honor the commitments to suppliers and financial institutions.

In addition, the default by Petronas Brasil E&P Ltda. to conclude the transaction for the purchase of forty per cent (40%) of blocks Tubarao Martelo, as agreed upon in the Farmout Agreement, was also decisive for the liquidity crisis faced by the OGX Group, which resulted in the filing of Judicial Reorganization.

**2.5.    Purpose and Considerations about the Plan.** The intention of the Plan is to allow OGPar, as holding company of the OGX Group as a whole, to overcome its economic-financial crisis, implement the necessary measures for its operational reorganization, meet the interests and preserve the rights of Creditors and other interested parties. To this end, this Plan seeks to establish the method of settlement of its debts converting them into OGX capital, and of contribution of New Resources, thus permitting, not only the maintenance of the activities of the OGX Group, but also to continue the development through the resumption of investment capacity.

> **2.5.1.** This Plan sets forth the proposal of restructuring and payment of the Creditors and their respective Credits Affected by the Plan in more favorable conditions with more advantages than those that would be possible in a proceeding of OGX bankruptcy of the <u>OGX Group,</u> upon capitalization of the debt with the consequent delivery of Shares resulting from the OGX Capital Increase Through Capitalization of Credits, with the possibility of receipt in kind, resulting from the sale of the Shares, for the Creditors that so wish, pursuant to the OGX Plan. Also, all Bankruptcy Creditors had the right to (a) present objections to the Plan pursuant to the terms of Section 55 of the Bankruptcy Law; and (b) participate

in the resolutions and voting of this Plan at the Meeting of Creditors, with equal conditions. Thus, this Plan is fair, reasonable, and equitable under material and procedural perspectives.

**2.6. New Resources and Investments.** As known, the oil and gas sectors require a huge allocation of financial resources. In view of the series of adverse facts related to the risk of the activity developed by the OGX Group, facts which occurred in the last months, the OGX Group found that it was unable to finance oil extraction at the Tubarao Martelo and Tubarao Azul fields (under testing stages), which ended in the filing of the request for Judicial Reorganization.

Notwithstanding, since August 2013, i.e., before the Filing Date, the OGX Group has dedicated its time to raising new resources in the local and international markets and, with that purpose, it has counted on the joint work of its highly qualified managers, advisors and consultants, and with the extensive experience in projects of financial restructuring.

After a detailed analysis of the financial and operational situation of the OGX Group, it was concluded that the OGX Group would need and needs to receive, in addition to the incomes forecasted in its financial flow and projections, new financing in order to fund the development of its activities and the preservation of its assets during the current temporary process of restructuring. The obtainment of such financial resources was considered as indispensable for the stability of the OGX Group financial flow and, consequently, the feasibility of restructuring and lifting of the OGX Group, upon the implementation of its business plan.

In this context, after a careful process of capturing investments with several potential investors, conducted in good-faith by the OGX Group and its managers, advisors and consultants, the only firm operation of financing proposed to the OGX Group by investors of unquestionable responsibility and financial capacity at an appropriate amount and date, was the DIP Loan, according to the terms of the Subscription Agreement, and Debentures Deed.

The contracting of the DIP Loan granted to the OGX Group the conditions required to continue to perform its activities, as well as to seek new investments. In that sense, OGX rapidly became more attractive to other investors, enabling the execution of instruments related to Bridge Loans and to the Additional Loan.

**2.7 Authorization for Granting of Guarantees**. Due to the need of obtaining New Resources, and in order to help with contracting the DIP Loan and the Additional Loan, on January 27, 2014, the Reorganization Court authorized the OGX Group to encumber some of its fixed assets as guarantee for the DIP Loan, according to Articles 66 and 67 of Bankruptcy Law. The decision of the Reorganization Court was totally upheld by the Court of Justice of Rio de Janeiro, under the terms of decision of the 14th Chamber of Private Law rendered on April 30, 2014. This Plan also authorizes the OGX Group to encumber other fixed assets to guarantee the DIP Loan and the Additional Loan, including under the terms of the DIP Guarantee Agreements - 2nd and 3rd Series, to be shared under the terms of the Collateral Sharing Agreement.

## 3. Overview of Reorganization Measures

**3.1.     Granting of New Resources**. To allow OGPar and its subsidiaries to recover the working capital needed to continue with its activities and preservation of its assets, as well as for the development of its business plan, it was and continues to be essential for OGPar and its subsidiaries to obtain the New Resources, under the terms of the DIP Loan and, in function thereof, the Bridge Loans and the Additional Loan, according to Articles 67, 84 and 149 of Bankruptcy Law, and other applicable legal provisions. OGX clarifies that these New Lenders are the only ones willing to disburse the New Resources, among the dozens of other institutions that have been consulted by the OGX Group since August 2013.

> **3.1.1.** Thus, the contribution of New Resources by the New Lenders is essential to the success of this Plan, to which preferential treatment and absolute precedence will be given, even in the event of a bankruptcy liquidation of OGX and/or the Guarantors, as provided in Articles 67, 84 and 149 of the Bankruptcy Law, and the provisions of this Plan, in the 2nd Bridge Loan, in the Debentures Deed (DIP Loan), the Export Prepayment Agreement (Additional Loan), the Bridge Guarantees and DIP Guarantee Agreements.

**3.2. Debt Restructuring.** In addition to having access to New Resources, the OGX Group must also be able to, under the Judicial Reorganization and within the limits established by the Bankruptcy Law and by the OGX Related Parties Plan, restructure the debts incurred before its Creditors Affected by the Plan. Moreover, within the applicable legal limits, the OGX Group may also seek to renegotiate its debt with First Priority Creditors, by offering the same terms offered to the Creditors Affected by the Plan, provided, however, that the renegotiation with First Priority Creditors will only be achieved through specific agreements between the OGX Group and the referred First Priority Creditors, as applicable (however, for purposes of clarity and transparency, this fact is mentioned in this Plan).

> **3.2.1** Subject to **Clause 5** of this Plan, the restructuring referred to in **Clause 3.2** will be through (i) the conversion of Credits of Financial Creditors into OGX capital, pursuant to Article 171, paragraph 2 of the Corporations Act and other applicable legal provisions, with the possibility of receipt in kind, due to the sale of the Shares, for those Creditors who wish to do so and manifest themselves on the terms of the OGX Plan; and (ii) payment in cash, according to terms and conditions set forth in **Clause 5.2,** of this Plan.

**3.3 Governance.** OGPar, supported by the Shareholders, will cause changes to its managing bodies, seeking to improve its corporate governance, with professional and independent management, and increased control and monitoring of their operations, as described in this Plan.

**3.4 Alienation of Fixed Assets.** The OGX Group may cause the alienation and/or encumbrance of its fixed assets, as expressly authorized by the Reorganization Court in accordance with Article 66 of the Bankruptcy Law, or this Plan, subject in any case to the limits established herein, in the Subscription Agreement, in the Debentures Deed (DIP Loan), the Export Prepayment Agreement (Additional Loan), DIP Guarantees, to ensure the implementation of this Plan and the success of the Judicial Reorganization.

## 4. New Resources by means of First Priority Loans

**4.1. General Conditions**. Considering the financial needs of the OGX Group in order to stabilize its working capital, protect its essential assets and allow the adoption of measures aimed at its restructuring, the OGX Group searched for and obtained the following first

priority borrowings, according to Articles 66, 67, 84, item V, and 149 of the Bankruptcy Law and other legal provisions applicable, chronologically as follows: (i) 1st Bridge Loan; (ii) 2nd Bridge Loan; (iii) DIP Loan; and (iv) Additional Loan. The above mentioned loans have a first priority nature and are not subject to the terms of this Plan.

However, with the purposes of being clear, transparent and allowing understanding by the Reorganization Court, Judicial Administrator, Creditors and other interested parties, including regarding the procedures for the participation of Creditors in the subscription of 3rd Series Debentures, and the implications of the OGX Capital Increase Through Conversion of Debentures for the final restructuring of the OGX Group, with immediate effects on the capital structure of the OGX Group, the following is an executive summary of principal terms, conditions and guarantees of loans made after reorganization.

**4.2 Bridge Loans**. The Bridge Loans were fully paid and performed on March 13, 2014 and March 14, 2014, respectively, observing all terms and conditions provided for in the 1st Bridge Loan and 2nd Bridge Loan. The 2nd Bridge Loan was fully guaranteed by Bridge Guarantees, as authorized by the Reorganization Court on a decision issued on January 27, 2014, which were fully released after the performance of the 2nd Bridge Loan.

**4.3 DIP Loan - Debenture Issue**. OGX issued the Debentures on February 12, 2014, according to the terms and subject to the conditions of the Debentures Deed and the Subscription Agreement, with the purpose of obtaining New Resources corresponding in national currency to the amount of **US$ 215,000,000.00** (two hundred and fifteen million U.S. dollars), that on the Issue Date corresponded to **R$ 514,624,000.00** (five hundred and fourteen million, six hundred and twenty-four thousand Brazilian reais).

    **4.3.1 Series of Debentures.** The Debentures were issued in three (03) series, as follows:

- 1st Series Debentures: issued, subscribed, and paid-in in a total amount of two hundred and ninety-nine million, two hundred thousand Brazilian reais (**R$ 299,200,000.00**), monetarily adjusted by the variation of the sale exchange rate of Brazilian reais into U.S. dollars, according to the terms of the Debentures Deed, corresponding on the Issue Date to **US$ 125,000,000.00** (one hundred and twenty five million of U.S. dollars).

- 2nd Series Debentures: issued on the total amount of up to two hundred and **R$ 215,424,000.00** (fifteen million, four hundred and twenty four thousand Brazilian reais ), monetarily updated by the variation of the sale exchange rate of Brazilian reais into U.S. dollars, according to the terms of the Debentures Deed, corresponding on the Issue Date up to **US$ 90,000,000.00**(ninety million U.S. dollars), to be timely subscribed and paid-in by the Backstop New Lenders (whether they are Creditors or not). The final amount of 2nd Series Debentures shall correspond to the unsubscribed portion of 3rd Series Debentures by the Creditors and possible surplus of
Creditors that do not pay for the subscription of the 3rd Series Debentures, observing the provisions of this Plan, the OGX Plan and the Debentures Deed. The 2nd Series Debentures may be fully cancelled, if 3rd Series Debentures are fully subscribed, observing the provisions of the Debentures Deed, in this Plan and in the OGX Plan;

- 3rd Series Debentures: issued in a total amount of up to **R$ 215,424,000.00**

215.424.0.        (two hundred and fifteen million, four hundred and twenty four thousand Brazilian reais), monetarily adjusted by the variation of the sale exchange rate of Brazilian reais into U.S. dollars, according to the Debentures Deed, corresponding on the Issue Date of up to **US$ 90,000,000.00**

**90.0.**        (ninety million U.S. dollars), to be timely subscribed, and paid-in by the Creditors, proportionally to the respective Credit. The final value of 3rd Series Debentures to be subscribed by the Creditors Affected by the Plan and/or First Priority Creditors (that expressly adhere to the Plan) may vary according to the demand for 3rd Series Debentures. The 3rd Series Debentures may be cancelled by virtue of the lack of Creditors interested in its subscription, payment or default in payment, as described in **Clause 4.6** et seq. of this Plan and the OGX Plan, observing the provisions of the Debentures Deed;

**4.3.2 Other Characteristics of 3rd Series Debentures**. According to the Debentures Deed, as amended from time to time, 3rd Series Debentures: (a) are materially similar to the 2nd Series Debentures and confer the same rights and prerogatives to respective debenture holders to participate in DIP Loan; (b) have covenants and hypothesis of acceleration more restricted than those established for 1st Series Debentures and the Additional Loan; (c) will have automatic acceleration in the case of a declaration of acceleration of 1st Series Debentures and/or the Additional Loan; (d) will be automatically converted into Shares if 1st Series Debentures are converted into Shares, including in cases of exemption for New Lenders of 1st Series Debentures of Conditions Precedent for the Conversion of 1st Series Debentures into Shares, as set forth in the Debentures Deed; (e) will consider that any eventual resolution in debenture holder meetings will be made subject to a joint quorum formed by subscribers of 2nd Series Debentures and 3rd Series Debentures; and (f) just like the 1st Series Debentures, are junior and subordinate to the Additional Loan for collection and enforcement purposes of the DIP Guarantees in case of default by the OGX Group, under the terms of the Collateral Sharing Agreement.

**4.3.3. Destination of the New Resources of the DIP Loan.** The New Resources of the DIP Loan have been and shall be destined to the payment of first priority obligations, financing of certain investments in capital and operating expenses for the maintenance of OGX's activities, as well as for the payment of reasonable expenses related to this Judicial Reorganization proceeding, as expressly provided for in the Debentures Deed and in the Subscription Agreement.

**4.3.4 Priority of the DIP Loan**. According to Articles 67, 84, 85 and 149 and other applicable legal provisions of Bankruptcy Law, the Debentures were issued within the scope of the Judicial Reorganization. The credits corresponding to the Debentures is and should always be considered first priority credits for all purposes of law, including in the case of supervening bankruptcy of OGX, even when the Debentures are subscribed by Creditors and OGX Capital Increase Through Capitalization of Credits is verified, being that they must be paid with precedence over all Credits Affected by the Plan and First Priority Credits, in compliance with Articles 84, 85, 149 and other applicable provisions of Bankruptcy Law.

**4.3.5. Constitution of DIP Guarantees**. Without prejudice of seniority, priority and

corresponding protection applicable to New Resources, according to Articles 67, 84, 85 and 149, as well as other applicable legal provisions of Bankruptcy Law, OGX and Guarantors, as applicable, as guarantee to full and timely payment of DIP Loan and Additional Loan, as authorized by the Reorganization Court, according to Article 66 of Bankruptcy Law, as applicable, grant and will grant DIP Guarantees, according to following DIP Guarantee Agreements (**Exhibits 1.1.33 and 1.1.35** of the OGX Plan):

(i)     fiduciary alienation on the oil and gas owned by OGX in any of following production fields, subject to the respective interest of OGX in each of these production fields: (a) Block BS-4; (b) Tubarao Martelo; and (c) Blocks POT-M- 762, CE-M-661, POT-M-475 [A1] and CE-M-603, where OGX holds interests, respectively with 50% (fifty per cent), 30% (thirty per cent), 65% (sixty-five per cent) and 50% (fifty per cent), subject to the right of other creditors holding previous guarantee on certain quantity of oil, according to the "Private Instrument of Fiduciary Alienation of Oil and Natural Gas as Guarantee";

(ii)    fiduciary assignment of: (a) all credit rights resulting from the commercialization of oil and gas owned by OGX, subject to the right of other creditors that already had a guarantee on the determined quantity of oil; (b) the rights of credits held by OGX against Parnaiba Gas Natural resulting from the Shared Costs Agreement Termination and Release, entered into by OGX, Parnaiba Gas Natural, and Eneva S.A., on October 30, 2013, as well as promissory notes issued by Parnaiba Gas Natural in favor of OGX related to the Shared Costs Agreement Termination and Release; and (c) the blocked account in which the funds deriving from the credit rights mentioned above will be deposited under the terms of the "Private Instrument of Fiduciary Assignment of Credit Rights and Credit Securities as Guarantee (Intercompany and Product Sale)" and the Agreement for Deposit as Guarantee and Other Covenants;

(iii)   fiduciary assignment of: (a) credit rights held by OGX against the Federal Government based on the right of reimbursement for the overpayment of Corporate Income Tax, observing, however, the right that other creditors might have priority in relation to such credits, and (b) the blocked account in which the funds deriving from the credit rights mentioned above will be deposited according to the "Private Instrument of Fiduciary Assignment of
Credit Rights as Guarantee (Tax Rights)" and to the Agreement for Deposit and Guarantee and Other Covenants;

(iv)    pledge on the rights emerging from the participation of OGX in the agreements referring to the concession on BS-4, according to the "Private Instrument of Pledge of Rights on the Concession Agreement and Other Covenants";

---

[1] On September 23, 2013, OGX signed an Assignment Instrument with EXXONMOBIL Exploragao Brasil Ltda., through which it assigned all of its rights and obligations related to thirty-five percent (35%) of its interest in such block. The mentioned assignment has already been approved by CADE and right now is awaiting approval by ANP.

(v)   fiduciary assignment of, among others, (a) credit rights held by OGX against Cambuhy Investimento Ltda., resulting from the Share Purchase Agreement; (b) credit rights of OGPar resulting from an potential subrogation of the rights of respective creditors of the "Private Instrument of Deed of First Public Issue of Simple Debentures, Non-Convertible into Shares, Unsecured, with Personal Guarantee, in Single Series of Parnaiba"; "Credit Agreement", entered into between Parnaiba Gas Natural, OGPar, MPX Energia S.A. and Morgan Stanley Bank, N.A.; and "Private Instrument of Fiduciary Alienation of Shares and Other Covenants", entered into between OGPar, MPX Energia S.A., Planner Trustee Distribuidora de Titulos e Valores Mobiliarios Ltda. and Parnaiba Gas Natural, (c) the blocked account in which the funds deriving from the credit rights mentioned above and other credit rights subject of said guarantee will be deposited according to the "Private Instrument of Fiduciary Assignment of Credit Rights as Guarantee (Parnaiba)" and the Agreement for Deposit as Guarantee and Other Covenants;

(vi)   fiduciary assignment of credit rights held by OGX and by OGPar resulting from: (a) insurance agreements; (b) judicial and extrajudicial litigations (including in the case litigation against Brasil E&P Ltda.); (c) agreements and other instruments; (d) any other credit rights that are not the object of other specific guarantee, and (e) fiduciary assignment of the blocked accounts in which the funds deriving from the credit rights mentioned above will be deposited, according to the "Private Instrument of Fiduciary Assignment of Credit Rights as Guarantee (General)" and the Agreement for Deposit as Guarantee and Other Covenants;

(vii)  fiduciary alienation of assets owned by Parnaiba B.V., according to the "Private Instrument of Fiduciary Alienation of Equipment as Guarantee";

(viii) fiduciary assignment on (a) any and all credit rights of OGX resulting from the payment of the first series of Debentures according to the Credit Agreement, that will be deposited in a blocked checking account of OGX and (b) said account, according to the "Private Instrument of Fiduciary Assignment of Credit Rights as Guarantee (Resources of the Payment of the 1st Series Debentures)" and the Agreement for Deposit as Guarantee and Other Covenants;

(ix)   pledge on the entirety of the shares issued by Parnaiba B.V., according to the "Deed of Pledge of Parnaiba B.V. Shares";

(x)    pledge of credit rights held by OGX Netherlands against MPX Energia GmbH, resulting from the sale of shares issued by Parnaiba B.V., according to the "Deed of Pledge of Parnaiba MPX Receivables";

(xi)   pledge of credit rights held by OGX Netherlands against Parnafba B.V, according to the "Deed of Pledge of Parnafba MPX Receivables";

(xii)  pledge on receivables, sale rights and other rights related to the export agreement of OGX and the Guarantors according to the

"Security Agreement";

(xiii) fiduciary alienation of OGX and OGPar shares, to be entered into by the parties after Plan approval;

(xiv) pledge on the rights emerging from the interest of OGX in the concession agreements referring to blocks BM-C-39 and BM-C-40 of Tubarao Martelo and concession agreements of the 11th Round to be entered into between the parties after Plan approval; and

(xv) pledge on shares issued by OGX International, OGX Austria, OGX Netherlands B.V. and OGX Netherlands Holding B.V, according to the terms of the Indenture to be entered into after Plan approval.

**4.3.5.1** Additionally and without prejudice of DIP Guarantees, the DIP Loan also has a personal guarantee, in the form of a surety provided by all Guarantors.

**4.3.6.** **Sharing of Guarantees**: Without prejudice of seniority, priority and corresponding protection applicable to New Resources resulting from DIP Loan, according to Articles 67, 84, 85 and 149, as well as other applicable legal provisions of Bankruptcy Law, DIP Guarantees are and will be shared to guarantee full and timely compliance with the obligations under the Additional Loan, according to the Export Prepayment Agreement, under the DIP Guarantee Agreements and the Collateral Sharing Agreement. The Additional Loan will have priority on Debentures in the foreclosure of DIP Guarantees and in the distribution and receipt of corresponding product to settle the Additional Loan, under the terms of the Collateral Sharing Agreement.

**4.4 The 1st Series Debentures**. The 1st Series Debentures were fully subscribed and paid-in by Backstop New Lenders (directly or indirectly) on February 13, 2014.

**4.5. 2nd Series Debentures**. The 2nd Series Debentures will be timely subscribed and paid by Backstop New Lenders (whether Creditors or not), provided that certain terms and conditions precedent of the Subscription Agreement and **Clause 4.5** of the OGX Plan are complied with.

**4.6.    3rd Series Debentures.** The 3rd Series Debentures may be subscribed and paid-in by the Creditors Affected by the Plan and/or First Priority Creditors (for these latter ones, provided that they have expressly adhered to this Plan, as applicable) who have qualified as Creditors Qualified for the Subscription of 3rd Series Debentures, under the terms of the Debentures Deed, the Subscription Agreement, **Clause 4.6** and the following, as well as **Exhibit 4.6,** all of them from the OGX Plan.

**4.7.  Procedure for OGX Capital Increase Through Conversion of Debentures**.
The Debentures will be automatically converted in OGX Shares, after full compliance or express waiver of conditions precedent for their conversion in OGX Shares, as explicitly established in the Debentures Deed and Subscription Agreement, and also subject to the conditions established in the **Clause 4.8** of the OGX Plan.

**4.7.1.** OGPar, irrevocably and irreversibly, undertakes to vote in favor of the increase of capital stock of OGX, through the issuance of new Shares, for the conversion, according to Articles 57 and 171, paragraph 3 of the Corporations Act, of all

Debentures into Shares, according to the provisions of the other OGX Related Parties Plan and items below, and in accordance with all the other legal and regulatory provisions applicable.

**4.8. Additional Loan - Export Prepayment Agreement**. The Additional Loan was made on April 09, 2014 and will be paid according to the terms and conditions of the Export Prepayment Agreement. The Additional Loan is fully guaranteed by the DIP Guarantees, which are shared with the DIP Loan, according to the Export Prepayment Agreement and the Collateral Sharing Agreement. The Additional Loan has priority over the Debentures in the collection and enforcement of the DIP Guarantees and in the receipt of the relevant result.

> **4.8.1. Priority of Additional Loan**. According to Articles 67, 84, 85 and 149 and other applicable legal provisions of Bankruptcy Law, the Additional Loan is and will always be considered priority, including in case of supervening bankruptcy of the OGX Group, and must be paid with precedence over all Credits Affected by the Plan and First Priority Credits, subject to Articles 84, 85, 149 and other provisions applicable to Bankruptcy Law.

**5. Restructuring and Settlement of Debts**

**5.1 Payment of Financial Creditors.** The Credits held by the Financial Creditors, including, among others, the Credits Affected by the Plan held by the Bondholders, related to Bonds 2018 and Bonds 2022 shall be fully paid by OGX under the terms and conditions provided for the OGX Capital Increase Through Capitalization of Credits, as described in **Clauses 5.1.3** and **5.1.4** of the OGX Plan.

> **5.1.1. OGX Capital Increase through Capitalization of Credits.** OGPar, irrevocably and irreversibly, as a controlling shareholder of OGX, undertakes, by this Plan and by the OGX Plan, to hold, and cause to be held, a special shareholders meeting of OGX, within fifteen (15) days from the date of fulfillment of the Conditions Precedent for the OGX Capital Increase Through Capitalization of Credits set forth in the OGX Plan, in which OGPar undertakes to approve the capital increase of OGX, through the issuance of new Shares, to capitalize, the total Credits Affected by the Plan, as indicated in the List of Creditors (reduced only by the amount paid pursuant to **Clause 5.1.4** of the OGX Plan) and all the First Priority Credits that expressly adhere to this Plan, pursuant to **Clause 5.5** below, subject to the provisions of this Plan and the OGX Related Parties Plan, and the items below under the terms of Article 171, paragraph 2 of the Corporations Law and in compliance with all applicable legal and regulatory provisions.

**5.2. Payment of the Unsecured Creditors who are not Financial Creditors.**

The Credits Affected by the Plan of the Unsecured Creditors, except the Financial Creditors, shall be paid in forty-eight (48) fixed, equal and monthly installments, and the first payment shall happen on January 30, 2015, with the following payments being set to the 30th day of each month, until December 30, 2018. After the Merger, the payments shall be made by the Restructured OGX.

> **5.2.1.** The Unsecured Creditor shall notify OGPar, with copy to the Judicial Administrator, informing its intent, within up to ten (10) Business Days, counted from the Confirmation Order, which shall be irrevocable and irreversible. Said notification shall further include the current account information, to which the

payment shall be made, under the terms of **Clause 16.5** of this Plan.

    **5.2.2.** The minimum amount of each installment to be paid to each Unsecured Creditor is **R$ 2,500.00** (two thousand and five hundred Brazilian reais), except if the remaining balance of its Credit is lower than this amount.

**5.3. Labor Creditors.** On the date hereof, there are no Labor Credits subject to the OGPar Judicial Reorganization. In the event Labor Credits are recognized by court order or agreement between the parties, said Labor Credits shall be paid in twelve (12) equal and consecutive installments, the first being due as from receipt, by OGPar, of a notification, pursuant to **Clause 16.5**, sent by the Labor Creditor holding the recognized Labor Credit, regarding the non-appealable judgment of the court decision or agreement recognizing the Labor Credit.

**5.4. Secured Creditors**. On the date hereof, there are no Secured Credits subject to OGPar Judicial Reorganization. In the event Secured Credits are recognized, by court order, arbitration or agreement between the parties, such Secured Creditors shall have the same treatment given to the Unsecured Credits. To do so, the provisions of **Clause 16.5** below shall be complied with.
**16.5** below shall be complied with.

**5.5   Alteration of the List of Creditors after OGX Capital Increase Through Capitalization of Credits**. Executed as provided for in **Clause 5.3** above, if an increase in the quantity of Credits is verified, deriving from a final and unappealable judicial decision, with the consequent rectification of the List of Creditors, OGX shall also be responsible for the issuance of as many Shares as needed, to allow for the capitalization of new Credits (i) with issuance value equal to the issuance value of the Shares, at the time of the OGX Capital Increase Through Capitalization of Credits, and
(ii)  with due regard for the conditions provided for in **Clauses 5.1.3, 5.1.4** and **5.1.5** of the OGX Plan.

**5.6. First Priority Creditors.** For clarity, OGPar hereby declares and acknowledges that the First Priority Credits are not subject to this Plan, so that its approval by the Meeting of Creditors does not imply the immediate restructuring of First Priority Credits under the terms and conditions herein. However, OGPar expressly extends the conditions proposed to the Creditors Affected by the Plan to the First Priority Creditors wishing to join this Plan, provided, however, that such terms and conditions shall only apply to the extent that the First Priority Creditors expressly and voluntarily adhere to this Plan, pursuant to this **Clause 5**. Such adhesion shall occur in writing, on an irrevocable and unchangeable basis, pursuant to notification to OGPar, forwarded by the date of the Meeting of Creditors that adopts this plan. Thus, the conditions herein described are included in this Plan for purposes of transparency and acknowledgement by all the Creditors, as the act of the First Priority Creditors adhering to this Plan will have the immediate effect of increasing the amount of Credits that will be capitalized inOGX, and possibly will be paid to First Priority Creditors, according to **Clause 5** of the OGX Plan.

**6. Transactions with Related Parties**

**6.1. OGPar Representation.** For the purposes of this Plan and the OGX Plan, OGPar hereby represents and recognizes that it is a debtor of OGX, due to the subrogation operated in favor of OGX, resulting from the delivery of Shares in payment of the Credits Affected by the Plan of the Financial Creditors pursuant to the OGX Plan, through OGX Capital Increase Through Capitalization of Credits.

**6.2.  Payment of Credits Owed to Related Parties.** OGX, by reason of this Plan and of the OGX Plan, for all purposes of the Law, hereby agrees, on an irrevocable and irreducible basis, to release OGPar from the payment obligation deriving from the subrogation in favor of OGX against OGPar and OGX Austria, by reason of the payment, by OGX, of the Credits Affected by the Plan of the Financial Creditors, including the Credits Affected by the Plan held by the Bondholders, related to Bonds 2018 and Bonds 2022, under the terms of **Clause 5.1.3.17** of the OGX Plan.

**7.  Corporate Governance - Compliance with Obligations.** As of the Issue Date and until the effective delivery of Shares to Creditors is made by virtue of (i) the OGX Capital Increase Through Capitalization of Credits; and (ii) the OGX Capital Increase Through Conversion of Debentures according to this Plan, the OGX Plan and the Debentures Deed, the management of OGX shall observe, when conducting their activities, the best practices of corporate governance, in addition to the terms, conditions and restrictions contained in this Plan, the OGX Plan, the Debentures Deed, the Subscription Agreement, the Plan Support Agreement, the Export Prepayment Agreement, the DIP Guarantee Agreements and in all other instruments and agreements related to the instruments and agreements mentioned above and/or the restructuring and Judicial Reorganization.

**8.  Sale and/or encumbrance of Fixed Assets.**

With the exception of the sale and encumbrance transactions of the fixed assets of the OGX Group set forth in this Plan and in the OGX Plan, OGPar shall only be able to sell or encumber any of its assets, financial or intangible that is free and clear, during the entire period in which it remains in Judicial Reorganization, with no need of previous authorization from any Creditor, or of the Meeting of Creditors, provided that (i) the OGX Capital Increase Through Capitalization of Credits has occurred; (ii) the conditions, limitations, restrictions and approvals set forth in the Debentures Deed, in the DIP Guarantee Agreements, in the Subscription Agreement and in the Export Prepayment Agreement have been observed; and (iii) approvals of the competent entities have been obtained, when applicable.

**9.  Merger**

**9.1.** Upon the occurrence and implementation of (i) the OGX Capital Increase Through Capitalization of Credits, pursuant to this Plan and the OGX Plan; and (ii) the OGX Capital Increase Through Conversion of Debentures, under the Debentures Deed, the managements of OGPar and OGX undertake to adopt the necessary actions for the merger of OGPar by OGX ("Merger"), including to propose the Merger to the respective shareholders.

**9.1.1.** OGPar and OGX may change the order of the corporate events provided for in this Plan, if the Registration as Listed Company is not timely obtained, by reasons beyond OGX's control, and the resulting delay may compromise or hinder the implementation of the stages of this Plan; OGX may even implement the Merger at the same time or immediately after the OGX Capital Increase Through Capitalization of Credits, in such a way that the Creditors receive Shares issued by listed company or in escalation of obtaining the registration of the listed company, with no change of the final outcome and the benefits to Creditors pursuant to the terms of this Plan, including, among others, the final shares assigned to the Shareholders, Creditors and Backstop New Lenders in the capital stock of the Restructured OGX, as defined in **Clause 9.3** of this Plan.

The provisions of this Clause shall not alter the terms and conditions of the Debentures nor the rights granted to the respective subscribers.

**9.2.** The Merger will result in a publicly held company with shares traded on the listing segment called Novo Mercado of BM&FBOVESPA S.A. ("Restructured OGX").

    **9.2.1.** The Restructured OGX will use the records and ticker of OGPar in Novo Mercado of BM&FBOVESPA S.A. - *Bolsa de Valores, Mercadorias e Futuros* until its own records are obtained for the trading of the shares, subject always to what is determined by BM&FBOVESPA S.A.

**9.3.** The exchange ratio to be proposed to shareholders of OGPar and OGX for the Merger will be one which results in the following end corporate structure of Restructured OGX immediately after the implementation of the Merger:

| Shareholders | Stake in the Restructured OGX |
|---|---|
| Eike Batista | 1 share |
| Centennial Asset Mining Fund, LLC. and Centennial Asset Brazilian Equity Fund, LLC | 5.02% |
| Other shareholders of OGPar (on the date of convening the EGM of Merger) | 4.98% |
| New Lenders of the 1st Series Debentures | 41.9767% |
| New Lenders of the 2nd Series Debentures and 3rd Series Debentures | 23.0233% |
| Creditors Affected by the Plan or First Priority Creditors (which have adhered to the Plans or to the OGX Related Parties Plans) and/or Receiver to the benefit of Creditors Affected by the Plan or First Priority Creditors (which adhere to the Plan or to the Plans Related Parties OGX) | 25.00% |

**9.4.** As an additional advantage to the subscription of the new Shares issued by OGX, the shareholders of OGPar, including the Shareholders, will receive warrants to be issued by the Restructured OGX at the same meeting that is convened to decide upon the Merger with the following main conditions: (i) term for exercise of five years as of the date of its issue, and the Restructured OGX may define windows in which the holders of the warrants may exercise their warrants and subscribe the shares resulting thereof; and (ii) a number of common shares to be subscribed to, representing, in the aggregated total, 15% (fifteen percent) of the shares of the Restructured OGX (subject to every habitual adjustments that will constitute the warrant certificate), considering an exercise price, at the moment of exercise, based on the amount of the Restructured OGX (equity value) in national currency equivalent, on the date of issuance of the subscription bonus, to **US$ 1,500,000,000.00** (one billion, five hundred million U.S. dollars). The price established in national currency shall be adjusted by the IGP-M as of the date of issuance of the subscription bonus.

**9.5.** The Merger is subject to the necessary corporate approvals in accordance with the provisions of the Corporations Act. The managements of OGPar and of OGX will make its best efforts to cause special shareholder meetings of Merger to be held within thirty (30) days of the date of the OGX Capital Increase Through Conversion of Debentures, under the Debentures Deed. The Shareholders, the OGX Group and Related Parties undertake to, on an irrevocable and irreducible basis, pursuant to this Plan, approve the Merger.

**9.6.** The purpose of the Merger, after the capitalization operations are conducted under this Plan, which aim to seek financial recovery for the OGX Group, is leveling all stakeholders in the same company and giving all the then shareholders access to the capital market, with the opportunity to trade their Shares and monetize them as they see fit, as well as to participate in the eventual asset valorization, if the case may be.

## 10. Put Option

**10.1** Once the Plan is approved by the Meeting of Creditors, and the results of the procedure informed by OGPar are disclosed to Creditors, upon the Communication to Market from November 11, 2013, the purpose of the discussion about the Put Option, eventually concluding with its invalidity and/or unenforceability ("Result of the Proceeding"), it is agreed that on the date when they are effectively delivered to the Creditors Affected by the Plan or to the First Priority Creditors (only the First Priority Creditors that have expressly adhered to the Plan) and/or the Receiver of Shares corresponding to the OGX Capital Increase Through Capitalization of Credits (as defined in **Clause 5.1.3** of the OGX Plan), free and disencumbered of any liens or questions, the Creditors Affected by the Plan and First Priority Creditors (only the First Priority Creditors that have expressly adhered to the Plan), by force of this Plan, will recognize, for all due purposes of law, the full validity and efficacy of the Result of the Proceeding.

**11. Termination Conditions.** The following are termination conditions to the Plan, the occurrence of which will result in the cancellation of the approval of this Plan and its respective provisions, and convening of a Meeting of Creditors to decide on an alternative to the Plan or the bankruptcy liquidation of OGPar:

(i)   The finding, until the OGX Capital Increase Through Capitalization of Credits, of any falsehood or inaccuracy with respect to any representation or warranty provided by OGPar in this Plan or its Exhibits which characterizes Material Adverse Effect;

(ii)   Failure by the Shareholders to comply with any obligation assumed in this Plan and the OGX Plan or practice of any act or measure incompatible with the provisions of this Plan and/or the OGX Plan;

(iii)   Failure to ensure the Conditions Precedent for the OGX Capital Increase Through Capitalization of Credits, as provided in **Clause 5.1.3.1** of the OGX Plan within 120 (one hundred and twenty) days from the Confirmation Order or by September 30, 2014, whichever occurs first;

(iv)   Failure to hold a Special Shareholders Meeting and other acts of implementation of the OGX Capital Increase Through Capitalization of Credits, including the delivery of the Shares to Creditors Affected by the Plan or First Priority Creditors (who have adhered to the Plan) within 140 (one hundred and forty) days from the Confirmation Order or by October 20, 2014, whichever occurs first;

(v)   Non-adherence to the Plan and/or to OGX Related Parties Plans, as applicable, of First Priority Creditors who are Related Parties before the date of the OGX Capital Increase Through Capitalization of Credits provided in **Clause 5.1.3.** of the OGX Plan; and/or

     (vi)   the non-Approval of the Plan by the Meeting of Creditors and/or deliberation of any of the OGX Related Parties Plans.

**11.2. Waiver of Termination Conditions**. The Creditors may, upon a resolution of the holders of a simple majority of the Credits present at the Meeting of Creditors convened for such purpose, waive, in their sole discretion, in whole or in part, any of the termination conditions described in **Clause 11** above.

## 12. Effects of the Plan

**12.1. Binding of the Plan.** The provisions of the Plan bind OGPar, OGX, the Shareholders and the Creditors, and their respective successors and assigns, from the Confirmation Order.

**12.2. Novation.** The lack of appeal that were attributed with suspensory effect (or judicial suit with the same effects) brought against the Confirmation Order will result in the novation of the Credits Affected by the Plan and of the First Priority Credits held by First Priority Creditors who have expressly adhered to this Plan, which will be settled in the manner established herein. Upon such novation, all obligations, covenants, financial indexes, events of acceleration, as well as other obligations and guarantees which are inconsistent with the terms of this Plan shall cease to apply.

**12.3.   Dismissal of Actions.** Unless provided otherwise in this Plan, the Creditors may no longer, from the Approval of the Plan, (i) file or pursue any legal action or proceeding of any kind related or not to any Credit against OGPar; (ii) enforce any judgment, judicial decision or arbitration award against OGPar; (iii) pledge any property owned by OGPar, to satisfy their Credits; (iv) create, perfect or enforce any security interest on assets and rights of OGPar to ensure payment of their Credits; (v) claim any right of offset against any claims payable to OGPar; (vi) seek the satisfaction of their Credits by any other means; And (vii) subject to the verification of the Result of the Proceeding and compliance with the terms and conditions of **Clause 10.1** hereof, seek the satisfaction of any and all intention, action or right to demand the annulment, specific performance, compensation for damages or any other demands, for any reason, in relation to the Put Option. All lawsuits and judicial executions pending against OGPar, relating to Credits, shall be dismissed, and the existing liens and constrictions will be discharged.

    **12.3.1.** Once the Resolution of the Plan is verified, the Creditors are assured the right to file and/or pursue any claim, judicial or otherwise, against OGPar, as well as pursue foreclosure of any assets that have been encumbered by OGPar and/or third parties as guarantee for the obligations, whether or not subject to this Plan.

**12.4. Reconstitution of Rights.** Once the Resolution of the Plan is verified and the Judicial Reorganization is converted into bankruptcy liquidation, within the supervision term established in Article 61 of the Bankruptcy Law, the Creditors shall have their rights and guarantees reconstituted under the conditions originally contracted, less the amounts potentially paid and except for the acts validly committed under the Judicial Reorganization, as stated in Article 61, Paragraph 2 of the Bankruptcy Law.

**12.5. Discharge.** Except in the case of Resolution of the Plan, the payments and the OGX Capital Increase Through Capitalization of Credits made according to this Plan and the OGX Plan will result, automatically and regardless of any additional formality, in full, irrevocable and irreversible discharge of all Credits of any kind and nature against OGPar, OGX Austria,

OGX International, OGX and its controlling companies and guarantors, including interest, adjustment for inflation, penalties, fines and damages. With the occurrence of the discharge, the Creditors will be deemed to have discharged, released and/or waived any and all Credits, and can no longer claim them against OGPar, controlled companies, subsidiaries, affiliates and other companies belonging to the same corporate and economic group, and their officers, directors, Shareholders, minority shareholders, members, agents, employees, representatives, sureties, guarantors, successors and assigns.

**12.6.  Ratification of Acts.** The Approval of the Plan by the Meeting of Creditors represents the agreement and ratification of OGPar, Shareholders, the OGX Group and Creditors, including Creditors Qualified for the Subscription of 3rd Series Debentures, of all acts performed and obligations assumed by OGPar during the Judicial Reorganization, including, but not limited to (i) the obtaining and contracting by OGPar and other companies of the OGX Group of New Resources, according to provisions of the 1st Bridge Loan, 2nd Bridge Loan, DIP Loan and the Additional Loan; (ii) the terms and conditions of Debentures Deed and the Subscription Agreement and the Export Prepayment Agreement, as amended from time to time, including the conditions of convertibility of Debentures into Shares; (iii) the contracting and constituting of the Bridge Guarantees and DIP Guarantees in favor of New Lenders in consideration of the concession of New Resources, under the terms of the Bridge Guarantees, the DIP Guarantee Agreements and the Collateral Sharing Agreement, as amended from time to time; and (iv) all other acts and actions necessary for full implementation and performance of this Plan, the OGX Plan and of the Judicial Reorganization, such acts being hereby expressly authorized, validated and ratified for all legal purposes, including and particularly Articles 66, 74 and 131 of Bankruptcy Law.

**12.7.  Exemption from Liabilities and Waiver.** By virtue of Approval of the Plan by the Meeting of Creditors, the Creditors expressly recognize and exempt the Exempt Parties from each and any responsibility for the acts performed and obligations contracted during the Judicial Reorganization, including contracting and implementation of the DIP Loan pursuant to the Debentures Deed, of the Additional Loan pursuant to the terms of the Export Prepayment Agreement, and the DIP Guarantees and the Collateral Sharing Agreement, granting to the Exempt Parties full, general, irrevocable and irreversible release from all material or moral rights that may result from referred acts for any reason. The Approval of the Plan by the Meeting of Creditors equally represents the express and irrevocable waiver of Creditors, including the Creditors Qualified for the Subscription of 3rd Series Debentures, to each and every intention, action or right to demand, search or claim, in or out of Courts, for any reason and without any reservation, reparation of damages and/or any other actions or measures against the Exempt Parties in reference to the acts performed and obligations assumed by the Exempt Parties during the Judicial Reorganization, including the contracting and implementation of the 1st Bridge Loan, the 2nd Bridge Loan, the DIP Loan, and the Additional Loan and the procedure for the solution of discussion of the Put Option mentioned in **Clause 10**.

**13.  Formalization of Documents and Other Arrangements.** OGPar, OGX, OGX Austria, OGX International and the Shareholders undertake to, on an irrevocable and irreducible basis, under this Plan, perform all acts and execute all contracts and other documents that, in form and substance, may be necessary or appropriate to the fulfillment and implementation of this Plan, OGX Related Parties Plan and the related obligations.

**14.  Modification of the Plan.** Amendments, alterations or modifications to the plan may be proposed at any time after the Confirmation Order, provided that such amendments, alterations or modifications are submitted to a vote at the Meeting of Creditors, are approved by OGPar and that the quorum is reached as required by Articles 45 and 58, head

provision and paragraph 1 of the Bankruptcy Law.

**14.1. Binding Effect of Modifications of the Plan**: Amendments, alterations or modifications to the Plan shall bind OGPar and its Creditors, including First Priority Creditors adhering to it and dissenting Creditors, and their respective assignees and successors, from its adoption by the Meeting of Creditors, according to Article 45 or 58 of the Bankruptcy Law.

**15.  Maintenance of the Right of Petition and Voice and Vote in the Meeting of Creditors**. For the purposes of this Plan and while the Judicial Reorganization has not been concluded, the Creditors that may convert their Credits into capital according to the OGX Increase of Capital Through Capitalization of Credit pursuant to the OGX Plan shall maintain the value and number of their Credits, with the purposes of right of petition, voice and vote in each and every Meeting of Creditors after the Confirmation Order, regardless of the conversion of Credits into equity capital and respective release.

**16. General Provisions**

**16.1. Existing or Conflicting Agreements.** In the case of any conflict between provisions of this Plan and obligations contemplated in the agreements entered into with any Creditor prior to the Filing Date, the Plan shall prevail. In case of any conflict between the provisions of this Plan and the Debentures Deed and/or the Subscription Agreement and/or the Export Prepayment Agreement and/or DIP Guarantee Agreements, and/or the Collateral Sharing Agreement, the terms of the Debentures Deed and/or the Subscription Agreements and/or the Export Prepayment Agreement
and/or the DIP Guarantee Agreements and/or the Collateral Sharing Agreement shall prevail. In the case of any conflict between the provisions of this Plan and of the OGX Related Parties Plans, the terms of the OGX Plan shall prevail.

**16.2.  Approval by ANP and CADE.** All provisions of this Plan that depend on approval by ANP and/or CADE must be approved by such bodies in order to take effect. The provisions of this Plan may be adapted to meet the requirements of ANP and/or CADE, by applying, as applicable, the provisions of **Clause 13**.

**16.2.1.** On May 6, 2014, decision No. 512 of the general Superintendency of the CADE was made available in the Federal Official Gazette, referring to Concentration Act No. 08700.002983/2014-47, through which the CADE approved, without restrictions, the terms and conditions of the operations provided for in the present Plan.

**16.3.  Exhibits.** All Exhibits to this Plan are incorporated herein and are an integral part of the Plan. In the event of any inconsistency between this Plan and any Exhibit, the Plan shall prevail.

**16.4.  Conclusion of the Judicial Reorganization.** The Judicial reorganization will be concluded at any time after the Confirmation Order, at the request of OGPar, provided that (i) such conclusion is approved by a simple majority of the Credits attending the Meeting of Creditors; or (ii) all obligations of the Plan that mature within two (2) years after the Approval of the Plan are met.

**16.5.  Notices.** All notices, requests, demands and other communications to OGPar, required or permitted by this Plan, in order to take effect, must be in writing and shall be deemed delivered when (i) sent by registered mail, return receipt requested, or by courier,

and effectively delivered or (ii) sent by facsimile, e-mail or other means, when effectively delivered and confirmed by phone. All communications should be addressed as follows or as otherwise informed by OGPar, in the records of the judicial reorganization or directly to the judicial administrator or to the Creditors:

> **Oleo e Gas Participacoes S.A. - Under Judicial Reorganization**
> Address: Rua do Passeio, n° 56, 10°, 11° e 12° andares
> City of Rio de Janeiro, State of Rio de Janeiro
> C/o: Chief Executive Officer (Paulo Narcelio Simoes Amaral or his substitute)
> C/o: General Counsel (Darwin Correa or his substitute)
> Telephone: +55 21 3916-4600
> Fax: +55 21 3916-4546
> E-mail: rj@ogpar.com.br

> **To the Judicial Administrator** (Deloitte Touche Tohmatsu or his substitute)
> Address: Av. Presidente Wilson, 231, 22° andar
> City of Rio de Janeiro, State of Rio de Janeiro
> C/o: Luis Vasco Elias (or his substitute)
> Telephone: + 55 21 3981-0467
> E-mail: ajoleoegas@deloitte.com

> **To the Debentures Trustee** (Oliveira Trust Distribuidora de Titulos e Valores Mobiliarios S.A. or his substitute)
> Address: Avenida das Americas, 500, bloco 13, grupo 205
> City of Rio de Janeiro, State of Rio de Janeiro
> C/o: Mr. Gustavo Dezouzart (or his substitute)
> Telephone: + 55 21 3514-0000
> Fax: +55 21 3514-0000
> E-mail: gustavo.dezouzart@oliveiratrust.com.br
> E-mail: ger3.agente@oliveiratrust.com.br

**16.6. Means of Payment**. Where applicable, amounts due to Creditors under this Plan shall be paid by wire transfer of funds to the bank account of the respective Creditor, through credit order (DOC) or wire transfer of immediately available funds (TED), where OGPar may retain a Paying Agent to make such payments to the Creditors. The proof of deposit of the amount credited to each Creditor will be proof of discharge of such payment.

   **16.6.1** To make the payment mentioned in **Clause 5.2**, the Creditors shall inform OGPar of their respective bank accounts for such a purpose, through written communication addressed to OGPar, under the terms of **Clause 16.5**. For the payment mentioned in Clause 5.1 of this Plan and in Clause 5.1.5.1(ii) and others of the OGX Plan, the Creditors shall inform OGX of their respective bank accounts for such a purpose, by sending OGX the Notice of Payment Option (as defined in the OGX Plan), under the terms of Clause 17.5 of the OGX Plan. The payments not made because the Creditors did not inform their bank accounts at least thirty (30) days before the scheduled date of payment shall not be considered as an event of default of the Plan. In this case, at OGPar's discretion, the payments due to the creditors who did not inform their bank accounts may be made through judicial deposit. There shall be no application of interest, fine or default charges if the payments have not been made because the Creditors failed to timely inform their bank accounts.

**16.7. Date of Payment.** In the event any payment or obligation under the Plan is

scheduled to be made or satisfied on a non-Business Day such payment or obligation may be made or satisfied, as applicable, on the next Business Day.

**16.8. Financial Charges.** Unless otherwise stated in the Plan, no interest or adjustment for inflation shall be levied on the value of the Credits.

**16.9. Credits in Foreign Currency.** Credits in foreign currency shall be kept in the original currency for all legal purposes and shall be settled, subject to the provisions of this Plan, in accordance with Article 50, paragraph 2 of the Bankruptcy Law. Except in the case of a specific provision in this Plan, Credits in foreign currency shall be converted into Brazilian reais at the closing price of sale from Brazilian reais to U.S. dollars, available in SISBACEN - Information System of the Central Bank of Brazil, transaction PTAX-800, option 5, rates for accounting, currency 220, free market, on the date immediately preceding the date when such currency conversion is required, including for the purposes of the OGX Capital Increase Through Capitalization of Credits, pursuant to this Plan and the OGX Plan.

**16.10. Severability of the Provisions of the Plan.** In the event any term or provision of the Plan is deemed invalid, void or unenforceable by the Reorganization Court, the remaining terms and provisions of the Plan should remain valid and effective.

**16.11. Auxiliary Proceeding Abroad**. OGPar may file a bankruptcy proceeding based on Chapter 15 of the Bankruptcy Code of the United States of America, in order to give effect to the Plan in U.S. territory, biding the Creditors domiciled and established therein, as well as other procedures of insolvency, or of any other nature, in other jurisdictions as necessary to the implementation of this Plan, including, but not limited to, the existing insolvency procedures under Austrian law. Such cases cannot change the payment terms and the remaining terms of this Plan.

**16.12. Adherence of the Shareholders, OGX, OGX Austria and OGX International**. The Shareholders, OGX Austria and OGX International signed this Plan, assuming and agreeing with everything that relates to their respective legal spheres, as well as undertaking to do and perform all necessary or useful acts and to sign any and all documents necessary for the faithful performance of their obligations in this Plan or for its implementation.

**16.13. Applicable Law.** The rights, duties and obligations under this Plan shall be governed, construed and enforced in accordance with the applicable laws in the Federative Republic of Brazil.

**16.14. Choice of Jurisdiction.** All disputes arising out of or relating to this Plan shall be resolved by (i) the Reorganization Court, until the conclusion of the judicial reorganization; and (ii) by the competent courts in Brazil or abroad, as established in the original contracts signed with OGPar and the respective Creditors, after the conclusion of the judicial reorganization process.

The Plan is signed by the legal representatives duly appointed by OGPar. The economic-financial and valuation Reports of the property and assets (**Exhibit 1.1.77**), subscribed by specialized firms, were presented to the Reorganization Court, pursuant to the Bankruptcy Law, on May 28, 2014 as an integral part of this Plan.

Rio de Janeiro, May 28, 2014.

*[Signature page of the Judicial Reorganization Plan of OGPar below]*

*[Signature page of the Judicial Reorganization Plan of OGPar]*

**Oleo e Gas Participacoes S.A. – Under Judicial Reorganization,** the current name of OGX Petroleo e Gas Participacoes S.A.


**OGX Petroleo e Gas S.A. – Under Judicial Reorganization**


**OGX Austria GMBH – Under Judicial Reorganization**


**OGX International GMBH – Under Judicial Reorganization**


**Centennial Asset Mining Fund LLC.,**


**Centennial Asset Brazilian Equity Fund, LLC.**


**Eike Fuhrken Batista**

**LIST OF EXHIBITS ATTACHED TO THE REORGANIZATION PLAN OF OGPar**

| | | |
|---|---|---|
| **Exhibit** | **1.1.34** | Subscription Agreement |
| **Exhibit** | **1.1.35** | Export Prepayment Agreement |
| **Exhibit** | **1.1.67** | Debentures Deed |
| **Exhibit** | **1.1.77** | Reports |
| **Exhibit** | **1.1.81** | Notification of Interest in Subscribing 3rd Series Debentures |
| **Exhibit** | **4.6** | 3rd Series Debentures Subscription Procedure |

**EXHIBIT 1.1.34**

**Subscription Agreement Senior Secured Superpriority Post-Petition Debentures**

**EXHIBIT 1.1.35**

**Export Prepayment Agreement**

**EXHIBIT 1.1.67**

**Debentures Deed**

**EXHIBIT 1.1.77**

**Economic-financial and Asset Assessment Reports**

**EXHIBIT 1.1.81**

**Notice Of Interest In The Subscription Of 3rd Series Debentures**

| [Place] [date] | [Local] [data] |
|---|---|
| [MODEL OF NOTICE OF INTEREST IN THE SUBSCRIPTION OF 3RD SERIES DEBENTURES] | [MODELO DE NOTIFICAÇAO DE INTERESSE DE SUBSCRIÇAO DAS DEBENTURES 3ª SERIE] |

To

**OGX PETROLEO E GAS S.A. – UNDER JUDICIAL REORGANIZATION**

Rua do Passeio, n° 56, 10°, 11° e 12° andares,

Rio de Janeiro, RJ

C/o: Paulo Narcelio Simoes Amaral and Darwin Correa

Telephone: +55 21 2163-5522

Fax: + 55 21 2163-5202

Emails: rj@ogpar.com.br

A

**OGX PETROLEO E GAS S.A. - EM RECUPERACAO JUDICIAL**

Rua do Passeio, n° 56, 10°, 11° e 12° andares,

Rio de Janeiro, RJ

A/C: Paulo Narcelio Simoes Amaral e Darwin Correa

Telefone: +55 21 2163-5522 Fax: +

55 21 2163-5202 Emails:

rj@ogpar.com.br

C/C:

**OLIVEIRA TRUST DISTRIBUIDORA DE TITULOS E VALORES MOBILIARIOS S.A. ("Debentures Trustee")**

Avenida das Americas, n°. 500, bloco 13, grupo 205, Barra da Tijuca

Rio de Janeiro, RJ

C/o: Monique Garcia and

Antonio Amaro

Telephone: +55 21 3514 0000 Fax:

+55 21 3514 0099 Email:

C/C:

**OLIVEIRA TRUST DISTRIBUIDORA DE TITULOS E VALORES MOBILIARIOS S.A. ("Agente Fiduciario das Debentures")**

Avenida das Americas, n°. 500, bloco 13, grupo 205, Barra da Tijuca

Rio de Janeiro, RJ

A/C: Monique Garcia e

Antonio Amaro

Telefone: + 55 21 3514 0000 Fax: + 55 21 3514 0099

ger3.agente@oliveiratrust.com.br;
antonio.amaro@oliveiratrust.com.br

Email:
ger3.agente@oliveiratrust.com.br;
antonio.amaro@oliveiratrust.com.br

**DELOITTE TOUCHE TOHMATSU CONSULTORES LTDA. ("TRUSTEE IN BANKRUPTCY")**

Avenida Presidente Wilson, 231, 22° andar

Rio de Janeiro, RJ

C/o: Luis Vasco Elias (or his substitute)

Telephone: +55 21 3981-0467 Email:

ajoleoegas@deloitte.com

**DELOITTE TOUCHE TOHMATSU CONSULTORES LTDA. ("ADMINISTRADOR JUDICIAL")**

Avenida Presidente Wilson, 231, 22° andar

Rio de Janeiro, RJ

A/C: Luis Vasco Elias (ou seu substituto)

Telefone: +55 21 3981-0467 Email:

ajoleoegas@deloitte.com

Ref.: Notice of Interest in the Subscription of 3rd Series Debentures concerning the Judicial Reorganization Plan of OGX PETROLEO E GAS S.A. - UNDER JUDICIAL REORGANIZATION,

Ref.: Notificagao de Interesse de Subscrigao das Debentures 3ª Serie concernente ao Plano de Recuperagao Judicial de OGX PETROLEO E GAS S.A. - EM RECUPERAQAO JUDICIAL,

Dear Sirs,

Prezados Senhores,

We make reference to the Judicial Reorganization Plan of OGX PETROLEO E GAS S.A. - EM RECUPERAQAO JUDICIAL ("OGX" or "Company"), approved at the General Meeting of Creditors dated as of 6.3.2014 ("Plan"). Capitalized terms not defined in this Notice of Interest in the Subscription of 3rd Series Debentures ("Notice") will have the meaning applied to them in the Plan.

Fazemos referenda ao Plano de Recuperagao Judicial de OGX PETROLEO E GAS S.A. - EM RECUPERAQAO JUDICIAL ("OGX" ou "Companhia"), aprovado em Assembleia Geral de Credores realizada em 3.6.2014 ("Plano"). Os termos iniciados em letra maiuscula nao definidos nesta Notificagao de Interesse de Subscrigao das Debentures 3ª Serie ("Notificagao") terao o significado a eles atribuido no Plano.

In compliance with Clauses 1.1.64,

Em atendimento ao disposto nas Clausulas 1.1.64, 1.1.97 e 4.6.2 do Plano, o Credor abaixo identificado e

1.1.97 and 4.6.2 of the Plan, the undersigned Creditor ("Creditor") hereby notifies the Company about its commitment, on an irrevocable and irreversible basis, to fully subscribe for its share in the 3rd Series Debentures, corresponding to a ratable amount of its Credit, i.e. *[INSERT CREDIT AMOUNT],* as set forth in the List of Creditors.

*[IF A NONRESIDENT CREDITOR IN BRAZIL:* In compliance with Clause 1.1.97 *of the Plan, the following documents [are attached to this Notice] [will be provided to the Company in due course* as per the terms of the Plan and in any case no later than three (3) business days in advance of the subscription date of the 3rd Series Debentures]: (i) evidence of enrollment before the Brazilian Federal Revenue Office [(National Register of Legal Entities - CNPJ/Individual Taxpayer's Register - CPF)]; (ii) evidence of registration before the Central Bank of Brazil (Register of Legal Entities and Individuals - International Capital - CADEMP); (iii) copy of the screen of Electronic Declaratory Registration with the Information System of the Central Bank (Sisbacen) - RDE] [SE *CREDOR NAO RESIDENTE NO BRASIL: Em cumprimento a Clausula*

[IF *BONDHOLDER WHOSE CREDITS ARE LISTED ONLY ON BEHALF OF THE TRUSTEE OF THE BONDS:* In compliance with Clause 1.1.97 of the Plan, [also are attached to this Notice] [also will be provided to the Company in due course as per the terms of the Plan and in any case no later than three (3) business days in advance of the subscription date of the 3rd Series Debentures] the documents presented by the Creditor [SE *BONDHOLDER CUJOS CREDITOS ESTEJAM RELACIONADOS APENAS EM NOME DO AGENTE FIDUCIARIO DOS BONDS:* Em cumprimento a Clausula 1.1.97 do Plano [seguem tambem

Creditor hereby represents and agrees with the Company, for all legal

assinado ("Credor") notifica a Companhia acerca de seu compromisso, em carater irrevogavel e irretratavel, de subscrever integralmente a sua quota parte das Debentures 3ª Serie, correspondente ao valor proporcional de seu Credito, i.e. *[INSERIR VALOR DO CREDITO],* conforme relacionado na Lista de Credores.

1.1.97 do Plano, os seguintes documentos [seguem anexos a presente Notificacao] [serao entregues a Companhia em tempo habil, nos termos previstos no Plano, e em qualquer caso, com no minimo 3 (tres) Dias Uteis de antecedencia a data de subscrigao das Debentures 3a Serie]: (i) comprovante de inscrigao perante a Secretaria da Receita Federal do Brasil [(Cadastro Nacional de Pessoas Juridicas - CNPJ/Cadastro Nacional de Pessoas Fisicas - CPF)]; (ii) comprovante de registro perante o Banco Central do Brasil (Cadastro de Pessoas Fisicas e Juridicas - Capitais Internacionais - CADEMP); (iii) copia da tela do Registro Declaratorio Eletronico no Sistema de Informagoes do Banco Central (Sisbacen) - RDE]

anexos a esta Notificagao] [serao entregues a Companhia em tempo habil, nos termos previstos no Plano, e em qualquer caso, com no minimo 3 (tres) Dias Uteis de antecedencia a data de subscrigao das Debentures 3a Serie], os documentos apresentados pelo Credor para fins de petigao, voz e for purposes of petition, voice and vote, pursuant to the rules established by the Reorganization Court in the Bondholders Notice.] voto, conforme regramento estabelecido pelo Juizo da Recuperagao no Edital Bondholders.]

purposes, that (i) is not an "affiliate" of the Company; (ii) the purchase of the

3rd Series Debentures involves various risks, including the fact that OGX is currently under Judicial Reorganization, and that the payment of the Debentures is uncertain, (iii)Creditor has conducted its own independent investigation and analysis of OGX and the terms and conditions of the Debentures, under the Debentures Deed and other documents related to the investment in the Debentures; (iv) Creditor has not based its investment decision in any analysis or recommendation from OGX, Creditors, Backstop - New Lenders and/or any of its advisors; and (v) Creditor has knowledge, skill and experience in business, financial and investment matters in a manner that the Creditor is fully capable of evaluating the merits and risks inherent to the investment in the Debentures.

e Parte Relacionada; (ii) a aquisigao e seu investimento nas Debentures 3ª Serie envolve uma serie de riscos, incluindo o fato da OGX estar em Recuperagao Judicial e o pagamento das Debentures ser incerto; (iii) conduziu de maneira propria e independente investigagao e analise da OGX e dos termos e condigoes das Debentures, da Escritura da Emissao de Debentures e demais documentos relacionados ao investimento nas Debentures; (iv) nao se baseou em qualquer analise ou recomendagao da OGX, Credores, Backstop Novos Financiadores e/ou quaisquer de seus assessores para realizagao dos investimentos nas Debentures; e (v) possui conhecimento, experiencia em negocios, finangas e investimentos de forma que e plenamente capaz de analisar o merito e riscos inerentes ao investimento nas Debentures.

O Credor declara e reconhece a Companhia e quem possa interessar, para todos os fins de direito, que (i) nao

[IF THE CREDITOR IS NOT A BRAZILIAN RESIDENT: Creditor hereby further represents and agrees with the Company and to whom it may concern, that the Debentures will be purchased for its own account or to an account with respect to which it exercises sole investment discretion and that it(A) is a Qualified Institutional Buyer as defined in Rule 144A under the US Securities Act of 1933 ("33 Act"); or (B) is not a U.S. Person as defined in Regulation S under the 33 Act and is acquiring the Debentures in an offshore transaction [SE CREDOR NAO RESIDENTE NO BRASIL: O Credor ainda declara e reconhece a Companhia e a quem possa interessar que as Debentures serao adquiridas por conta propria ou para conta de quem exerce discrigao independente de investimento e que (A) e um Investidor Qualificado Institucional (Qualified Institutional Buyer), conforme definido na Regra 144A da Lei de Valores Mobiliarios Americana - US Securities Act of 1933 ("33 Act"); ou (B) nao e uma Pessoa residente nos Estados Unidos da

America, conforme definido na Regulagao S (Regulation S) do 33 Act e que esta adquirindo as Debentures in accordance with Regulation S.

The Creditor ratifies and agrees with all acts practiced and obligations contracted by OGX Group in the course of the Judicial Reorganization. The Creditor expressly recognizes and exempts the Exempt Parties of all and any responsibility for the acts practiced and obligations contracted in the course of the Judicial Reorganization, conferring to the Exempt Parties broad, flat, general, irrevocable and irretrievable release of all rights and material or moral claims for any reason derived from the referred acts in any form. The Creditor equally waives expressly and irrevocably to any and all claim, action or right to demand, pursue

or complain, within or outside Court, in any form, and without reservations or exemptions, any compensation for damages and/ or any other actions against Exempt Parties with respect to the acts practiced and obligations contracted by the Exempt Parties during the Judicial Reorganization.

Finally, we request that any notices, notifications and communiques including the Subscription Notice be forwarded by means of the following contact data: no ambito de uma transagao internacional nos termos da Regulagao S *(Regulation S).*

O Credor concorda e ratifica todos os atos praticados e obrigagoes contraidas pelo Grupo OGX no curso da Recuperagao Judicial. O Credor expressamente reconhece e isenta as Partes Isentas de toda e qualquer responsabilidade pelos atos praticados e obrigagoes contratadas no curso da

Recuperagao Judicial, conferindo as Partes Isentas quitagao ampla, rasa, geral, irrevogavel e irretratavel de todos os direitos e pretensoes materiais ou morais porventura decorrentes dos referidos atos a qualquer titulo. O Credor igualmente renuncia de maneira expressa e irrevogavel toda e qualquer pretensao, agao ou direito a demandar, perseguir ou reclamar, em Juizo ou fora dele, a qualquer titulo e sem qualquer reserva ou ressalva, reparagao de danos e/ou quaisquer outras agoes ou medidas contra as Partes Isentas em relagao aos atos praticados e obrigagoes contraidas pelas Partes Isentas durante a Recuperagao Judicial.

Por fim, solicitamos que quaisquer avisos, notificagoes e comunicagoes, incluindo o Comunicado de Subscrigao, sejam encaminhados atraves dos seguintes dados de contato:

*[TELEPHONE]*

*[PHYSICAL ADDRESS]*

*[ELECTRONIC ADDRESS]*
*[Co] [TELEFONE]*

*[ENDEREO FISICO] [ENDEREO*

*ELETRONICO] [A/C]*

Very truly yours,                          Atenciosamente,


_[CREDITOR]_                               _[CREDOR]_

Legal Representative:                      Representante Legal:

CPF/CNPJ:                                  CPF/CNPJ:

**EXHIBIT 4.6**

**Procedure for Subscription of the 3rd Series Debentures by Creditors**

General Information

- Creditors interested in subscribing the 3rd Series Debentures, in the proportion of their respective Credits, shall prove themselves as Creditors Qualified for the Subscription of 3rd Series Debentures by sending a Notification of Interest in Subscribing 3rd Series Debentures.

- Creditors Qualified for the Subscription of 3rd Series Debentures shall receive, at the addresses indicated in the Notification of Interest in Subscribing 3rd Series Debentures, the Subscription Notice, to be sent by OGX, which shall include the information and procedures required for the subscription of the 3rd Series Debentures, including the documents to be signed and the payment instructions.

- Upon subscribing the 3rd Series Debentures, the Creditors Qualified for the Subscription of 3rd Series Debentures shall be fully adhering to the terms and conditions of the Debentures Deed.

General Procedure for Proving Oneself as an Eligible Creditor

- Be part of the List of Creditors and other lists of creditors of the OGX Group in effect on the date of the Meeting of Creditors that decides on the Plan and/or OGX Related Parties Plans.

- For Creditors whose credits are listed in the List of Creditors only on behalf of the Bond Trustee, having adopted the procedure for individualization of their right to petition, to the floor and to vote, pursuant to the regulation established by the Reorganization Court under the terms of the Bondholders Notice.

- Send to OGX, to the Debentures Trustee and to the Judicial Administrator, within up to five (5) Business Days, from the Approval of the Plan, the Notification of Interest in Subscribing 3rd Series Debentures, as per model attached to the present Plan, duly filled in and signed. The Notification shall be sent to both physical and electronic addresses contained in the attached model.

Additional Procedure for 3rd Series Creditors who are Non-Residents of Brazil

- In order to make the payment of the Debentures, the non-resident Creditor must be enrolled with the Brazilian Federal Revenue Office (with the Corporate Taxpayers Register- CNPJ or with the Individual Taxpayers Register - CPF, as the case

may be), and have a registration with the Brazilian Central Bank (Individuals and Legal Entities Register - International Capitals - CADEMP (as per instructions contained in the "Cademp - Declarant's Manual", available at www.bcb.gov.br » Cambio e Capitais Estrangeiros » Manuais") and Declaratory Electronic Registration with the System of Information of the Central Bank (Sisbacen) - RDE). The obtainment of such registrations may be requested by the Creditors to any bank or brokerage firm, and requires: (i) the appointment of a representative in Brazil with representation powers before the Federal Revenue Office and to be served with summons in actions related to the investment in the shares; and (ii) the submission of the articles of association, with the identification of the shareholders and administrators of the company in question.

- Each institution adopts a procedure of its own to make such registrations, in such a way that documents and additional information may be requested. It is estimated that the obtainment of such registrations takes approximately ten (10) Business Days.

- If the Creditor already has the information above listed, he shall supply them together with the Notification of Interest in Subscribing 3rd Series Debentures, otherwise said information shall be supplied in up to three (3) Business Days before the date of subscription of the 3rd Series Debentures.

- With said information, OGX shall make the registration of the operation in the ROF module of the RDE, indicating, in the mentioned registration, that the person responsible for the Creditor's manifestation are the legal representatives who signed the Notification of Interest in Subscribing 3rd Series Debentures, and it shall inform the Creditor, in due time, of the respective identification number for binding to the exchange contract that will be signed for payment of the 3rd Series Debentures.



STATE of NEW YORK       )
                         )          ss:
COUNTY of NEW YORK      )

### CERTIFICATE OF ACCURACY

This is to certify that the attached document, "*Exhibit 7 - Plano OGPar*" originally written in *Portuguese* is to the best of our knowledge and belief, a true, accurate and complete translation into *English*.

Dated: April 4, 2017

*Allison Carey*
Allison Carey
Consortra Translations

Sworn to and signed before ME this
4th day of April,
2017.

Notary Public

JAMES G. MAMERA
Notary Public- State of New York
No. 01MA6
Qualified in New York County
My Commission Expires December 4, 2018

Your
legal
translation
partner

*6687*

## PLANO DE RECUPERAÇÃO JUDICIAL DE
## ÓLEO E GÁS PARTICIPAÇÕES S.A. – EM RECUPERAÇÃO JUDICIAL

**Óleo e Gás Participações – Em Recuperação Judicial** ("OGPar"), atual denominação de OGX Petróleo e Gás Participações S.A., sociedade anônima inscrita no CNPJ/MF sob o nº 07.957.093/0001-96, com sede na Rua do Passeio, nº 56, 10º, 11º e 12º andares, Centro, Cidade do Rio de Janeiro, Estado do Rio de Janeiro, apresenta, nos autos do processo de recuperação judicial autuado sob nº 0377620-56.2013.8.19.0001, em curso perante a 4ª Vara Empresarial da Comarca do Rio de Janeiro, Estado do Rio de Janeiro, o seguinte plano de recuperação judicial, em cumprimento ao disposto no Artigo 53 da Lei nº 11.101/2005.

### 1.    Definições e Regras de Interpretação

**1.1.    Definições.** Os termos e expressões utilizados em letras maiúsculas, sempre que mencionados no Plano, terão os significados que lhes são atribuídos nesta **Cláusula 1ª**. Tais termos definidos serão utilizados, conforme apropriado, na sua forma singular ou plural, no gênero masculino ou feminino, sem que, com isso, percam o significado que lhes é atribuído.

> **1.1.1.**    "1ª Série do Empréstimo DIP": É a primeira série do financiamento correspondente ao Empréstimo DIP, nos termos das Debêntures 1ª Série, no valor de **R$ 299.200.000,00** (duzentos e noventa e nove milhões e duzentos mil reais), atualizado monetariamente pelo fator de variação da cotação de fechamento da taxa de venda de câmbio de Reais por Dólares dos Estados Unidos da América, nos termos da Escritura de Emissão de Debêntures, que na Data da Emissão correspondia a **US$ 125.000.000,00** (cento e vinte e cinco milhões de dólares norte-americanos), conforme descrita nas **Cláusulas 4.3.1 e 4.4** do Plano OGX.

> **1.1.2.**    "1º Empréstimo Ponte": É o empréstimo extraconcursal de curtíssimo prazo contraído pela OGPar, no valor de **US$ 15.000.000,00** (quinze milhões de dólares norte-americanos), nos termos do contrato de empréstimo celebrado em 26.12.2013, que foi integralmente pago em 14.03.2014.

> **1.1.3.**    "11ª Rodada": É a 11ª Rodada de Licitações de áreas para exploração e produção de petróleo e gás natural nas bacias sedimentares de Barreirinhas, Ceará, Espírito Santo, Foz do Amazonas, Pará-Maranhão, Parnaíba, Pernambuco-Paraíba, Potiguar, Recôncavo, Sergipe-Alagoas e Tucano, realizada pela ANP em 14.05.2013.

*6688*

**1.1.4.** "2ª Série do Empréstimo DIP": É a segunda série do financiamento correspondente ao Empréstimo DIP, nos termos das Debêntures 2ª Série, no valor de até **R$ 215.424.000,00** (duzentos e quinze milhões e quatrocentos e vinte e quatro mil reais), atualizado monetariamente pelo fator de variação da cotação de fechamento da taxa de venda de câmbio de Reais por Dólares dos Estados Unidos da América até a data da integralização das Debêntures 2ª Série, nos termos da Escritura de Emissão de Debêntures, que na Data da Emissão correspondia a até **US$ 90.000.000,00** (noventa milhões de dólares norte-americanos). O valor final das Debêntures 2ª Série, a ser subscrita pelos Backstop Novos Financiadores (sejam Credores ou não), será equivalente à porção não subscrita das Debêntures 3ª Série, observado o disposto neste Plano e na Escritura de Emissão de Debêntures. As Debêntures 2ª Série poderão ser integralmente canceladas, caso as Debêntures 3ª Série sejam integralmente subscritas, observado o disposto na Escritura de Emissão de Debêntures.

**1.1.5.** "2º Empréstimo Ponte": É o empréstimo extraconcursal de curtíssimo prazo contraído pela OGX, no valor de **US$ 50.000.000,00** (cinquenta milhões de dólares norte-americanos), nos termos do Contrato de Pré-Pagamento à Exportação (*Export Prepayment Agreement*) celebrado com Credit Suisse Brazil (Bahamas), na qualidade de agente administrativo, em 13.01.2014, que foi integralmente pago em 13.03.2014.

**1.1.6.** "3ª Série do Empréstimo DIP": É a terceira série do financiamento correspondente ao Empréstimo DIP, nos termos das Debêntures 3ª Série, no valor de até **R$ 215.424.000,00** (duzentos e quinze milhões e quatrocentos e vinte e quatro mil reais), atualizado monetariamente pelo fator de variação da cotação de fechamento da taxa de venda de câmbio de Reais por Dólares dos Estados Unidos da América até a data da integralização das Debêntures 3ª Série, nos termos da Escritura de Emissão de Debêntures. O valor final das Debêntures 3ª Série, a serem subscritas por Credores Concursais e/ou Credores Extraconcursais (que aderirem expressamente ao Plano), poderá variar conforme demanda verificada pelas Debêntures 3ª Série. As Debêntures 3ª Série poderão ser canceladas em razão da ausência de Credores interessados na sua subscrição e integralização, conforme descrito na **Cláusula 4ª** do Plano OGX, observado o disposto na Escritura de Emissão de Debêntures.

**1.1.7.** "Acionistas": Eike Batista e todos os demais acionistas diretos e indiretos da OGPar sob o controle de Eike Batista, incluindo, mas não se limitando a Centennial Asset Mining Fund LLC e Centennial Asset Brazilian Equity Fund, LLC.

**1.1.8.** "Ações": São as ações ordinárias de emissão da OGX, quer existentes na presente data, ou que sejam emitidas em cumprimento do quanto disposto no presente Plano e no Plano OGX.

**1.1.9.** "Administrador Judicial": É a Deloitte Touche Tohmatsu Consultores Ltda., conforme nomeação pelo Juízo da Recuperação, nos termos do Capítulo II, Seção III, da Lei de Falências, ou quem venha a substituí-la de tempos em tempos.

**1.1.10.** "Agente de Verificação": É o agente de verificação de atividades, conforme definido na Escritura de Emissão de Debêntures e no Contrato de Subscrição.

**1.1.11.** "Agente Fiduciário das Debêntures": É a Oliveira Trust Distribuidora de Títulos e Valores Mobiliários S.A., conforme definido na Escritura de Emissão de Debêntures.

**1.1.12.** "Agente Fiduciário dos Bonds": É o Deutsche Bank Trust Company Americas, agente fiduciário nos termos das Escrituras de Emissão dos Bonds, bem como as sociedades que são por ele direta ou indiretamente controladas, seus diretores, administradores e funcionários, ou outro agente que venha a ser indicado em substituição ao Deutsche Bank Trust Company nos termos da Escritura de Emissão dos Bonds.

**1.1.13.** "ANP": Agência Nacional do Petróleo, Gás Natural e Biocombustível.

**1.1.14.** "Aprovação do Plano": É a aprovação do Plano na Assembleia de Credores. Para os efeitos deste Plano, considera-se que a Aprovação do Plano ocorre na data da Assembleia de Credores que votar e aprovar o Plano, ainda que o Plano não seja aprovado por todas as classes de Credores nos termos dos Artigos 45 ou 58 da Lei de Falências.

**1.1.15.** "Assembleia de Credores": É qualquer Assembleia Geral de Credores, realizada nos termos do Capítulo II, Seção IV, da Lei de Falências.

**1.1.16.** "Aumento de Capital da OGX Mediante Capitalização de Crédito":
Aumento do capital social de OGX, subscrito pelos Credores
Concursais e pelos Credores Extraconcursais (estes últimos desde que
tenham aderido expressamente ao presente Plano, conforme
aplicável), integralizado mediante capitalização dos Créditos
Concursais e dos Créditos Extraconcursais (detidos pelos Credores
Extraconcursais que aderirem expressamente ao Plano), na forma do
Artigo 171, §2º da Lei das Sociedades por Ações e demais
disposições legais aplicáveis. As Ações a serem emitidas no Aumento
de Capital da OGX Mediante Capitalização de Crédito serão entregues
aos Credores domiciliados nos Estados Unidos da América, em
consonância e respeitando os termos da isenção de registro, não
exclusiva, prevista e facultada pela Seção 3(a)(10) do *Securities Act
of 1933*.

**1.1.17.** "Aumento de Capital da OGX Mediante Conversão das Debêntures":
Aumento do capital social de OGX, subscrito pelos detentores das
Debêntures, integralizado mediante a conversão das Debêntures em
ações, na forma dos Artigos 57 e 171, §3º da Lei das Sociedades por
Ações e demais disposições legais aplicáveis, observado sempre o
disposto na Escritura de Emissão de Debêntures.

**1.1.18.** "Backstop Novos Financiadores": São os Novos Financiadores
subscritores do Contrato de Subscrição (ou seus sucessores e
cessionários, a qualquer título, sejam ou não Credores Concursais)
que, observados e satisfeitos certos termos e condições precedentes
estabelecidos no Contrato de Subscrição, assumiram a obrigação de
subscrever (i) as Debêntures 1ª Série; e (ii) as Debêntures 2ª Série,
em valor equivalente às sobras das Debêntures 3ª Série, limitado
sempre ao valor máximo em moeda corrente nacional equivalente a
**US$ 90.000.000,00** (noventa milhões de dólares norte-americanos)
na data da subscrição das Debêntures 2ª Série.

**1.1.19.** "Bondholders": Credores detentores dos Bonds 2018 e/ou dos Bonds
2022, representados ou não pelo Agente Fiduciário dos Bonds.

**1.1.20.** "Bondholders Aderentes": São os titulares de Bonds 2018 e/ou Bonds
2022 que conjuntamente detêm a maioria dos Créditos representados
pelos Bonds 2018 e/ou Bonds 2022, com os quais o Grupo OGX
celebrou o *Plan Support Agreement* ou que tenham aderido ao *Plan
Support Agreement*, de tempos em tempos. Para fins desta cláusula
não são considerados Bondholders Aderentes aqueles Bondholders
que assinaram originalmente o *Plan Support Agreement* e,

posteriormente, alienaram ou venham a alienar a terceiros uma parte ou a totalidade dos Bonds 2018 e/ou Bonds 2022 de sua propriedade, desde que tal alienação ocorra nos termos do *Plan Support Agreement*.

**1.1.21.** "Bonds 2018": São os títulos (*Bonds*) no valor total agregado de US$ 2.563.000.000,00 (dois bilhões quinhentos e sessenta e três milhões de dólares norte-americanos), com vencimento em 2018, emitidos pela OGX Áustria e integralmente garantidos por OGPar e OGX, conforme a respectiva Escritura de Emissão dos Bonds.

**1.1.22.** "Bonds 2022": São os títulos (*Bonds*) no valor total agregado de US$ 1.063.000.000,00 (um bilhão e sessenta e três milhões de dólares norte-americanos), com vencimento em 2022, emitidos pela OGX Áustria e integralmente garantidos por OGPar e OGX, conforme a respectiva Escritura de Emissão dos Bonds.

**1.1.23.** "BS-4": É o bloco exploratório localizado na Bacia de Santos, Estado de São Paulo, formado pelos campos Atlanta e Oliva, cujos direitos de concessão foram outorgados pela ANP ao consórcio formado por Queiroz Galvão Exploração e Produção S.A., que detém 30% (trinta por cento) de participação, Barra Energia do Brasil Petróleo e Gás Ltda., que detém 30% (trinta por cento) de participação, e OGX, que detém a participação remanescente de 40% (quarenta por cento).

**1.1.24.** "CADE": É o Conselho Administrativo de Defesa Econômica.

**1.1.25.** "CETIP": É a CETIP S.A. – Mercados Organizados.

**1.1.26.** "Comissário": É a OGPar ou terceiro que venha a ser oportunamente indicado por OGX que, nos termos dos Artigos 693 e seguintes do Código Civil, deverá atuar em nome próprio, mas em benefício dos Credores que assim optarem, nos termos e condições da **Cláusula 5.1.5.6** do Plano OGX, para fins exclusivos de implementação das disposições deste Plano e do Plano OGX.

**1.1.27.** "Comunicado de Subscrição": É o comunicado a ser enviado pela OGX aos Credores Qualificados para Subscrição das Debêntures 3ª Série, através do qual serão informadas as condições e procedimentos necessários para implementar a subscrição e integralização das Debêntures 3ª Série, na forma da **Cláusula 4.6** deste Plano.

**1.1.28.** "Condições Precedentes para o Aumento de Capital da OGX Mediante Capitalização de Crédito": São as condições mínimas precedentes para que seja implementada a operação de Aumento de Capital da OGX Mediante Capitalização de Crédito, conforme estabelecidas na **Cláusula 5.1.3.1** do Plano OGX.

**1.1.29.** "Condições Precedentes para o Aumento de Capital da OGX Mediante Conversão das Debêntures": São as condições mínimas precedentes para que seja implementada a operação de Aumento de Capital da OGX Mediante Conversão das Debêntures, conforme estabelecido na **Cláusula 4.7** deste Plano e no Plano OGX, sem prejuízo das condições precedentes para conversão estabelecidas na Escritura de Emissão de Debêntures e no Contrato de Subscrição.

**1.1.30.** "Contrato de Compartilhamento": É o Contrato de Compartilhamento de Garantias e Direitos Entre Credores celebrado em 09.04.2014 entre Oliveira Trust Distribuidora de Títulos e Valores Mobiliários S.A., Wilmington Trust, National Association, Oliveira Trust Servicer S.A. e OGX, na qualidade de interveniente-anuente, conforme aditado de tempos em tempos (**Anexo 1.1.33** do Plano OGX).

**1.1.31.** "Contratos de Garantias DIP – 1ª Série": São os seguintes instrumentos, conforme aditados e modificados de tempos em tempos: (i) Instrumento Particular de Alienação Fiduciária de Petróleo e Gás Natural em Garantia; (ii) Instrumento Particular de Alienação Fiduciária de Equipamentos em Garantia; (iii) Instrumento Particular de Cessão Fiduciária de Direitos Creditórios em Garantia (Geral); (iv) Instrumento Particular de Cessão Fiduciária de Direitos Creditórios e Títulos de Crédito em Garantia (Intercompany e Venda de Produto); (v) Instrumento Particular de Cessão Fiduciária de Direitos Creditórios em Garantia (Parnaíba); (vi) Instrumento Particular de Cessão Fiduciária de Direitos Creditórios em Garantia (Créditos Tributários); (vii) Instrumento Particular de Penhor de Direitos Sobre Contrato de Concessão e Outras Avenças (BS-4); (viii) Contrato de Depósito em Garantia e Outras Avenças; (ix) *Deed of Pledge of Parnaíba MPX Receivables*; (x) *Deed of Pledge of Parnaíba Receivables;* (xi) *Deed of Pledge of Shares of Parnaíba B.V.*; e (xii) *U.S. Security Agreement* (**Anexo 1.1.35** do Plano OGX).

**1.1.32.** "Contratos de Garantias DIP – 2ª e 3ª Séries": Além dos Contratos de Garantias DIP – 1ª Série, são os instrumentos que vierem a ser celebrados para: (i) alienação fiduciária de ações de emissão da OGX; (ii) alienação fiduciária de ações de emissão da OGPar; (iii) penhor de

direitos de concessão relativos aos contratos de concessão BM-C-39 e BM-C-40 de Tubarão Martelo e aos contratos de concessão da 11ª Rodada; (iv) penhor de ações da OGX International GmbH; (v) penhor de ações da OGX Áustria; (vi) penhor de ações da OGX Netherlands B.V.; (vii) penhor de ações da OGX Netherlands Holding B.V., desde que verificadas determinadas condições refletidas na Escritura de Emissão de Debêntures; (viii) qualquer instrumento de garantia sobre os recursos eventualmente obtidos com a venda dos ativos decorrente dos contratos indicados nos itens (i) a (vii) acima; (ix) quaisquer outras garantias a serem constituídas nos termos dos Contratos de Garantias DIP – 1ª Série; e (x) qualquer outro instrumento de garantia necessário para formalizar ou proteger as garantias referidas nos itens (i) a (ix) acima.

**1.1.33.** "Contratos de Garantias DIP": São os Contratos de Garantia – 1ª Série e os Contratos de Garantia – 2ª e 3ª Séries para garantia integral do Empréstimo DIP e do Empréstimo Adicional, observado o disposto no Contrato de Compartilhamento.

**1.1.34.** "Contrato de Subscrição": É o *Senior Secured Superpriority Post-Petition Debentures Subscription Agreement* celebrado entre OGX, OGPar, os Backstop Novos Financiadores, Wilmington Trust, National Association e outros em 07.02.2014, conforme aditado de tempos em tempos (**Anexo 1.1.34**).

**1.1.35.** "Contrato de Pré-Pagamento de Exportação": É o *Export Prepayment Agreement*, celebrado em 09.04.2014 entre OGX, OGPar, OGX Áustria, OGX International, OGX Netherlands B.V., OGX Netherlands Holding B.V., Parnaíba B.V., Deutsche Bank A.G., London Branch, Wilmington Trust, National Association, Oliveira Trust Distribuidora de Títulos e Valores Mobiliários S.A. e Oliveira Trust Servicer S.A., anexo ao presente Plano como **Anexo 1.1.35**.

**1.1.36.** "Contrato OSX-1": É o *Re-delivery Termination and Interim Operation Agreement in respect of the OSX-1 FPSO* que poderá ser celebrado entre o Grupo OGX e o Grupo OSX, para estabelecer os termos e condições de retomada temporária da atividade exploratória no campo de Tubarão Azul.

**1.1.37.** "Contratos OSX-3": São os contratos que poderão ser celebrados entre o Grupo OGX, o Grupo OSX e outros, para estabelecer os novos termos e condições para afretamento e operação do *OSX-3 Floating Production Storage Offloading (FPSO) Vessel* ("FPSO OSX-3") no

campo de Tubarão Martelo, inclusive, mas não se limitando aos seguintes instrumentos: (i) *Charter Amendment Agreement*; (ii) *Charter Agreement*; (iii) *Charterer Contract Guarantee*; (iv) *O&M Amendment Agreement*; (v) *Amended & Restated O&M Agreement*; (vi) *OGX Buyout Right Agreement*; (vii) *Charter Termination Agreement*; e (viii) *OSX-3 LC Agreement*.

**1.1.38.** "Créditos": Créditos e obrigações, sejam materializados ou contingentes, líquidos ou ilíquidos, existentes na Data do Pedido ou cujo fato gerador seja anterior ou coincidente com a Data do Pedido, estejam ou não sujeitos aos efeitos do Plano, inclusive os Créditos Grupo OSX devidos pelo Grupo OGX. Quando aplicável, Créditos também deverá ser interpretado como e incluir os créditos e obrigações, sejam materializados ou contingentes, líquidos ou ilíquidos, existentes na Data do Pedido ou cujo fato gerador seja anterior ou coincidente com a Data do Pedido, estejam ou não sujeitos aos efeitos do Plano e que sejam devidos pela OGX e/ou OGX Áustria e/ou OGX International. Para que não haja dúvidas, os créditos decorrentes do Empréstimo DIP e do Empréstimo Adicional não estão incluídos nos Créditos acima para qualquer fim, não estando sujeitos aos termos, efeitos e condições deste Plano em qualquer aspecto.

**1.1.39.** "Créditos com Garantia Real": Créditos Concursais detidos por Credores com Garantia Real.

**1.1.40.** "Créditos Concursais": Créditos detidos pelos Credores Concursais. Quando aplicável, Créditos Concursais também deverá ser interpretado como os créditos detidos pelos credores concursais de OGX e/ou OGX Áustria e/ou OGX International que serão novados e pagos conforme disposições aplicáveis dos Planos Partes Relacionadas OGX.

**1.1.41.** "Créditos Extraconcursais": Créditos detidos pelos Credores Extraconcursais na Data do Pedido. Quando aplicável, Créditos Extraconcursais também deverá ser interpretado como os créditos detidos pelos credores extraconcursais de OGX e/ou OGX Áustria e/ou OGX International. Para que não haja dúvidas, os Créditos Extraconcursais acima não se confundem com os créditos extraconcursais decorrentes de operações contratadas após a Data do Pedido, inclusive o Empréstimo DIP e o Empréstimo Adicional.

6695

**1.1.42.** "Créditos Grupo OSX": Créditos detidos pelas sociedades do Grupo OSX e objeto de transação formalizada entre o Grupo OGX e o Grupo OSX.

**1.1.43.** "Créditos Quirografários": Créditos Concursais detidos pelos Credores Quirografários.

**1.1.44.** "Créditos Trabalhistas": Créditos e direitos detidos pelos Credores Trabalhistas.

**1.1.45.** "Credores": Pessoas, físicas ou jurídicas, detentoras de Créditos, estejam ou não relacionadas na Lista de Credores. Quando aplicável, Credores também deverá ser interpretado como sendo as pessoas físicas ou jurídicas detentoras de Créditos contra o Grupo OGX, estejam ou não relacionadas na Lista de Credores de OGX e/ou OGX Áustria e/ou OGX International.

**1.1.46.** "Credores com Garantia Real": Credores Concursais cujos créditos são assegurados por direitos reais de garantia (tal como um penhor ou uma hipoteca), até o limite do valor do respectivo bem, nos termos do Artigo 41, II, da Lei de Falências.

**1.1.47.** "Credores Concursais": Credores cujos Créditos e direitos podem ser alterados pelo Plano nos termos da Lei de Falências. Tais Credores são divididos, para os efeitos de votação do Plano ou eleição do Comitê de Credores em Assembleia de Credores, em três classes (Credores Trabalhistas, Credores com Garantia Real e Credores Quirografários). Quando aplicável, Credores Concursais também deverá ser interpretado como sendo os Credores do Grupo OGX, cujos créditos e direitos podem ser alterados pelos Planos Partes Relacionadas OGX, nos termos da Lei de Falências. Tais Credores são divididos, para os efeitos de votação dos Planos Partes Relacionadas OGX ou eleição do Comitê de Credores em Assembleia de Credores de cada uma das sociedades que compõem o Grupo OGX, em três classes (Credores Trabalhistas, Credores com Garantia Real e Credores Quirografários).

**1.1.48.** "Credores Extraconcursais": Para fins deste Plano são os Credores da OGPar e das demais sociedades do Grupo OGX, quando aplicável (i) cujo fato gerador de seu direito de crédito seja posterior à Data do Pedido, mas decorra de instrumento celebrado antes da Data do Pedido, observado nessa hipótese que o crédito correspondente não se qualifica como crédito extraconcursal para fins dos Artigos 67, 84,

inciso V e 149 da Lei de Falências em caso de superveniente decretação da falência da OGPar ou qualquer outra empresa do Grupo OGX; ou (ii) cujo direito de tomar posse de bens ou de executar seus direitos ou garantias derivados de contratos celebrados antes ou após a Data do Pedido não pode ser alterado pelo Plano, de acordo com o Artigo 49, §§ 3º e 4º, da Lei de Falências.

**1.1.49.** "Credores Financeiros": Credores Quirografários que são titulares de Créditos decorrentes de operações financeiras ou bancárias, inclusive, mas sem se limitar, aos Bondholders.

**1.1.50.** "Credores Qualificados para Subscrição das Debêntures 3ª Série": São os Credores que constem da Lista de Credores vigente na data da Assembleia de Credores que deliberar sobre o Plano e/ou Planos Partes Relacionadas OGX que tenham (i) enviado à OGX, ao Agente Fiduciário das Debêntures e ao Administrador Judicial, no prazo de até 5 (cinco) Dias Úteis contados da Aprovação do Plano, a Notificação de Interesse de Subscrição das Debêntures 3ª Série, observando as condições estabelecidas na **Cláusula 4.6.2** do Plano OGX; e (ii) para o caso de Credores não residentes no Brasil, cumprido com as providências descritas no **Anexo 4.6**. Para fins deste Plano serão considerados Credores Qualificados para Subscrição das Debêntures 3ª Série todos os Bondholders que tenham adotado o procedimento para individualização do seu direito de participação, petição, voz e voto na Recuperação Judicial e em qualquer Assembleia de Credores, conforme procedimento estabelecido no Edital Bondholders, ainda que seus respectivos Créditos não constem individualmente na Lista de Credores vigente na data da Assembleia de Credores que deliberar sobre o Plano e/ou Planos Partes Relacionadas OGX e estejam relacionados apenas em nome do Agente Fiduciário dos Bonds. A OGX e a OGPar não se responsabilizam pelos Credores não residentes que não puderem subscrever, integralizar ou receber as Debêntures 3ª Série por não atenderem aos requisitos da legislação vigente para formalizar o respectivo investimento.

**1.1.51.** "Credores Quirografários": Credores Concursais detentores de créditos quirografários, tal como consta dos Artigos 41, inciso III e 83, inciso VI, ambos da Lei de Falências.

**1.1.52.** "Credores Trabalhistas": Credores Concursais detentores de créditos derivados da legislação do trabalho ou decorrentes de acidente de trabalho, nos termos do Artigo 41, I, da Lei de Falências.

**1.1.53.** "CVM": É a Comissão de Valores Mobiliários.

**1.1.54.** "Data de Emissão": Para fins deste Plano, 12.02.2014, data em que as Debêntures 1ª Série, Debêntures 2ª Série e Debêntures 3ª Série foram emitidas, nos termos da Escritura de Emissão de Debêntures.

**1.1.55.** "Data do Pedido": 30.10.2013, data em que o pedido de recuperação judicial do Grupo OGX foi ajuizado.

**1.1.56.** "Debêntures": São as Debêntures 1ª Série, as Debêntures 2ª Série e as Debêntures 3ª Série, as quais serão subscritas e integralizadas nos termos e condições estabelecidos neste Plano, no Plano OGX e na Escritura de Emissão de Debêntures.

**1.1.57.** "Debêntures 1ª Série": São as Debêntures relativas à 1ª Série do Empréstimo DIP, as quais foram emitidas na forma da Escritura de Emissão de Debêntures e já subscritas e integralizadas pelos Backstop Novos Financiadores.

**1.1.58.** "Debêntures 2ª Série": São as Debêntures relativas à 2ª Série do Empréstimo DIP, já emitidas e que serão subscritas e integralizadas pelos Backstop Novos Financiadores (sejam Credores ou não), na forma da Escritura de Emissão de Debêntures, e desde que observadas as condições precedentes deste Plano e do Contrato de Subscrição.

**1.1.59.** "Debêntures 3ª Série": São as Debêntures relativas à 3ª Série do Empréstimo DIP, já emitidas e que serão subscritas e integralizadas pelos Credores na forma da Escritura de Emissão de Debêntures e deste Plano.

**1.1.60.** "Dia Útil": Para fins deste Plano, Dia Útil será qualquer dia, que não seja sábado, domingo ou feriado municipal nas Cidades de São Paulo, Estado de São Paulo ou Rio de Janeiro, Estado do Rio de Janeiro, ou que, por qualquer motivo, não haja expediente bancário na Cidade de São Paulo, Estado de São Paulo ou na Cidade do Rio de Janeiro, Estado do Rio de Janeiro, ressalvados os casos em que os pagamentos ocorram através da CETIP, hipótese na qual Dia Útil será considerado como qualquer dia que não seja sábado, domingo ou feriado declarado nacional.