UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:17-cv-23051-KMW

MERIDIAN TRUST COMPANY, as
Trustee, and AMERICAN ASSOCIATED
GROUP, LTD.

       Plaintiffs,

vs.

EIKE BATISTA, ELIEZER BATISTA, WERNER BATISTA,
THOR BATISTA, PAULO MENDONCA, FLAVIO GODINHO,
PAULO GOUVEA, MARCUS BERTO, LUIZ CARNEIRO,
AZIZ BEN AMMAR, ERICK MAGNO, ERICK MAGNO, PL,
BANCO ITAU INTERNATIONAL, EFG CAPITAL INTERNATIONAL CORP.,
EFG BANK AG, 63X INVESTMENTS LTD., 63X MASTER FUND,
63X FUND, CENTENNIAL ASSET MINING FUND, LLC,
CENTENNIAL ASSET BRAZILIAN EQUITY FUND, LLC,
CENTENNIAL ASSET LTD., WRM1 LLC, WRM2 LLC,
3BX INVESTMENTS, LLC, 3BX INVESTMENT FUND I, LLC,
AUX LUXEMBOURG SARL, AUX LLC, OLIN BATISTA,
FLAVIA SAMPAIO and LUMA DE OLIVEIRA,

       Defendants.

_____/

### MARCUS BERTO'S, ERICK MAGNO'S AND
### ERICK MAGNO, PL'S MOTION TO DISMISS AMENDED
### COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Defendants, Marcus Berto ("Berto"), Erick Magno ("Magno") and Erick Magno, PL

("Magno PL," and, collectively with Magno, the "Magno Defendants") pursuant to Federal Rule

of Civil Procedure 12(b)(6), move to dismiss Plaintiffs' First Federal Amended Complaint  and

Demand for Jury Trial (the "Federal Complaint") [D.E. 75] for failure to state a claim upon

which relief can be granted, and in support thereof state as follows:

## I. **BACKGROUND**

This case is ostensibly about Eike Batista's fraud on the international investment market in relation to the issuance of bonds in OGX, a Brazilian, publicly-traded, oil exploration company.  Plaintiffs accuse Eike Batista ("Batista") of making materially misleading statements or omissions to the international market at large concerning OGX, and Defendants generally of conspiring with Batista to mislead investors.

The Federal Complaint fails to allege that Plaintiffs were influenced by any particular statement of any particular defendant.  Instead, Plaintiffs allege that their investment advisor purchased $21 million of OGX bonds on the secondary market based "on the aggregate spin disseminated by BATISTA and his co-conspirators and accomplices to the international financial market via the usual 'lay' internet sources such as Google, telephone conferences with others and, most importantly, the Bloomberg terminal on her desk[.]"  ([D.E. 75] at ¶¶ 421, 427, 428, 445, 447, 465, 474).

Despite being more than 100 pages long, the Federal Complaint contains relatively few allegations about Berto or the Magno Defendants.  Plaintiffs do not allege that Berto or the Magno Defendants actively participated in the fraud.  Rather, Plaintiffs allege that, years after Batista consummated the alleged fraud, Berto and the Magno Defendants helped Batista by covering up and then funneling the proceeds of the fraud to bank accounts which Batista and his family members controlled throughout the world.  ([D.E. 75] at ¶¶ 482, 604-607).

As to Berto, Plaintiffs allege that he acted as the CEO of LLX, a Brazilian, publicly-traded, logistics company in which Batista held an unspecified interest.  ([D.E. 75] at ¶¶ 48, 72, 120, 413).  Plaintiffs allege that Berto breached an unspecified duty to the investing public at large by not disclosing OGX's dire financial condition, and by "cash[ing] Batista out" of LLX in

anticipation of OGX's crash. ([D.E. 75] at ¶¶ 121, 415, 493). Plaintiffs also allege that Berto

helped set up the Batista family trust to assist in funneling tens of millions of dollars from

Florida to Switzerland. ([D.E. 75] at ¶¶ 122, 172).

Although the length and prolixity of the Federal Complaint make summarizing the

Plaintiffs' baseless allegations about Berto difficult, the gravamen of those allegations is

contained in paragraphs 120 through 124 of the Amended Complaint as follows:

> Defendant, MARCUS BERTO, was a long-standing BATISTA confidant who
> was, in December 2012, appointed CEO and Investor Relations Officer of EBX
> Group member LLX, BATISTA's allied port-logistics company, to help secretly
> sell off the company ahead of the crash of OGX.  ([D.E. 75] at ¶ 120).

> BERTO knew that OGX was insolvent by the end of 2012 and conspired with
> BATISTA and the other co-conspirators in the EBX Group to sell off LLX
> without disclosing the dire straits of the port's anchor tenant. This he managed to
> do, and was fined by the Brazilian regulators for having failed to make timely
> disclosure of the deal.  ([D.E. 75] at ¶ 121).

> MARCUS BERTO also helped set up the BATISTA family trust in Miami
> through MAGNO . . . to assist in funneling tens of millions of dollars of
> BATISTA's personal wealth out from Florida to Switzerland and acted as its
> trustee.  ([D.E. 75] at ¶ 122).

> After OGX collapsed, BERTO left Rio de Janeiro for Key Biscayne, Florida,
> where he is believed to have invested part of the proceeds he realized from his
> part in the fraud, which was at least $10 million, in a $9.5 million mansion.
> ([D.E. 75] at ¶ 123).

> BERTO was, at all material times from late 2012 onwards, a formal and *de facto*
> managing agent, co-conspirator and accomplice in the EBX Group. The
> fraudulent misrepresentations generated between late 2012 and 2013, as are
> detailed below, were generated with his knowledge, approval, participation and
> consent.  ([D.E. 75] at ¶ 124).

The Federal Complaint alleges the following counts against Berto: (1) Fraud; (2)

Conspiracy to Defraud; (3) Aiding and Abetting Fraud; (4) Florida Civil Remedies for Criminal

Practices Act; (5) Florida Civil Remedies for Criminal Practices Act Conspiracy; (6) False and

Misleading Advertising; (7) Conspiracy to Commit False and Misleading Advertising; (8) Civil

Theft; (9) Conspiracy to Commit Theft; (10) Aiding and Abetting Theft; (11) Florida Uniform Fraudulent Transfers Act; and (12) Conspiracy to Commit Fraudulent Transfers.

As to the Magno Defendants, Plaintiffs also do not allege that they participated in the fraud. Instead, the entire basis of Plaintiffs' claims against the Magno Defendants is that Magno formed and acted as the trustee of a Batista family trust, ([D.E. 75] at ¶ 175), and allowed Batista and his family members to "park" $33 million in its trust account purportedly for the purpose of obscuring from creditors the whereabouts of those funds. ([D.E. 75] at ¶ 175). Based on these allegations, Plaintiffs have named the Magno Defendants in two counts for fraudulent transfer (Count XI) and conspiracy to commit fraudulent transfers (Count XII).

## II. MEMORANDUM OF LAW

### A. <u>The Relevant Standard</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S.Ct. at 1950 (citing *Twombly*, 550 U.S. at 556).

To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556).   "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca–Cola Co.*, 578 F.3d 1252, 1261 (11th Cir.2009) (citing *Iqbal*, 129 S.Ct. at 1949).

When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).  But pleadings that "are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 129 S.Ct. at 1950; *see also Sinaltrainal*, 578 F.3d at 1260 ("'[U]nwarranted deductions of fact' in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations.").

### B.  Plaintiffs Have Failed to Sufficiently Allege a Fraud Claim Against Berto

"The essential elements of the common law action for fraud are 1) a representation made by a defendant with the intent to induce the plaintiff to act, 2) the representation was false and that the defendant knew that fact, and 3) the plaintiff's reliance on the representation caused him injury." *Tourismart of America, Inc. v. Gonzalez*, 498 So. 2d 469, 471 (Fla. 3d DCA 1986).  Rule 9(b) of the Federal Rules of Civil Procedure requires that, "[i]n alleging fraud . . . , a party must state with particularity the circumstances constituting fraud[.]"  Fed. R. Civ. P. 9(b).  Thus, in order to sufficiently allege fraud, Plaintiffs must not only identify Berto's misrepresentation of fact, but also identify when, where and the manner in which it was made.  *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1357 (11th Cir. 2006) ("Particularity means that 'a plaintiff must plead 'facts as to time, place, and substance of the defendant's alleged fraud,' specifically 'the details

of the defendant['s] allegedly fraudulent acts, when they occurred, and who engaged in them.'"). Plaintiffs have failed to do so.

Like the prior versions of the complaint, the Federal Complaint is entirely devoid of any allegations concerning a representation by Berto that could constitute fraud.  In fact, Plaintiffs do not allege that Berto made any misrepresentations at all.  Rather, Plaintiffs contend that Berto committed fraud by omission, by failing to disclose "to the investing public" the purported "dire financial straits that OGX and OSX were in or that he was helping find a buyer so that BATISTA could dump LLX."  ([D.E. 75] at ¶ 415).  Noticeably absent are any allegations regarding how Berto supposedly knew of Batista's bad acts, how Plaintiffs were misled by Berto's alleged material omissions, and, importantly, what Berto gained by making these omissions.  Such pleading omissions require dismissal.

Notably, Plaintiffs fail to allege what duty Berto owed as the CEO of LLX to disclose information to the public at large regarding OGX and OSX.  A "duty to disclose arises when a party has information 'that the other [party] is entitled to know because of a fiduciary or other similar relation of trust and confidence between them." *Chiarella v. U.S.*, 445 U.S. 222, 228, 100 S.Ct. 1108, 1114, 63 L.3d.2d 348 (1980).  A duty to disclose, however, does not arise from the mere possession of nonpublic market information.  *Id*. at 234-35 ("Formulation of such a broad duty, which departs radically from the established doctrine that duty arises from a specific relationship between two parties, . . . , should not be undertaken absent some explicit evidence of congressional intent.").

No duty with respect to Berto can possibly be established by the facts alleged in the Federal Complaint.  The only access which Plaintiffs allege Berto had with respect to information derives from Berto's position as CEO and Investor Relations Officer of LLX, an

entirely separate entity from OGX and OSX.  ([D.E. 75] at ¶ 415).  Plaintiffs allege that, "[i]n breach of his duty to the investing public, throughout his tenure, BERTO failed to report anything about the dire financial straits that OGX and OSX were in[.]"  *Id*.  Plaintiffs do not allege, as required to state a viable fraud claim, any facts to support their conclusory allegations that Berto actually knew of OGX's and OSX's "dire" situation so as to create in him a duty to report that situation to the investing public at large.  *See Lawrence v. Bank of America, N.A.*, No. 8:09-cv-2162-T-33 TGW, 2010 WL 3467501, *3 ("'[W]hile the element of actual knowledge may be alleged generally, the plaintiff still must accompany that general allegation with allegations of specifics [sic] 'facts that give rise to a strong inference of actual knowledge regarding the underlying fraud.'").

More importantly, Plaintiffs do not allege any relation between Berto and Plaintiffs that would give rise to a fiduciary or other similar relation of trust and confidence between them:  he was not their agent, he was not a fiduciary, he was not a person in whom Plaintiffs had placed their trust and confidence, he was not someone with whom Plaintiffs contracted.  Berto was, in fact, a complete stranger who had no connection with the OGX bond sale.  Because Plaintiffs have failed to allege any kind of relationship between Berto and Plaintiffs, no duty to disclose exists, and therefore no action for fraud can be maintained against him.

The Federal Complaint also does not allege that Defendants, and Berto in particular, intended to induce Plaintiffs to act, or that Plaintiffs relied on any of the Defendants' omissions.  Instead, Plaintiffs allege that their investment advisor, Judith Neiwirth, relied on her interpretation of "the aggregate information" Batista disseminated to the market at large, as reflected on her Bloomberg terminal, in directing the purchase of OGX bonds in the secondary

market.  ([D.E. 75] at ¶¶ 421, 423, 463).  Thus, Plaintiffs have failed to adequately allege the essential elements of intent and reliance.

Further, Plaintiffs do not allege that Ms. Neiwirth actually relied on any particular statement of any particular Defendant, which itself warrants dismissal.  *See Rogers v. Nacchio*, 241 Fed. Appx. 602, 608-09 (11th Cir. 2007) (fraud claims failed to satisfy Rule 9(b) "[b]ecause . . . the complaint failed to allege that [plaintiffs] were influenced by any particular statement by any particular defendant[.]").  Rather, Plaintiffs appear to invoke a unique "fraud on the market" theory by alleging Ms. Neiwirth's general reliance on Defendants' representations to the market as a whole.  *See* ([D.E. 75] at ¶¶ 289, 296, 418, 421, 423, 428, 434, 456, 457, 458, 464, 504).  For example, Plaintiffs allege:

> On January 15, 2013, **in reliance on the overall picture painted by BATISTA and his co-conspirators and accomplices, his intentional misstatements made via his publications on the internet and material omissions**, reinforced in her decision to invest by BATISTA'S announcement of the Put Option, and not suspecting that OGX was just a colossal fraud, Judith Neiwirth at Gables Capital, in Miami, Florida, directed the purchase of 6,000 OGX bonds for the sum of $5,849,354.17 on the secondary market on behalf of its client, MERIDIAN, and 3,500 OGX bonds for the sum of $3,412,123.26 on behalf of its client, AMERICAN.

([D.E. 75] at ¶ 427) (emphasis added).

The fraud on the market theory allows a plaintiff to establish a rebuttable presumption of reliance based upon the premise that "the market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations." *Basic Inc. v. Levinson*, 485 U.S. 224, 246, 108 S.Ct. 978, 991, 99 L.Ed.2d 194 (1988).  The fraud on the market theory only applies, however, in federal securities fraud cases brought under Section 10(b) of the Securities and Exchange Act of 1934 and the Securities and Exchange Commission's Rule 10b–5.  *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1369 n. 39 (11th

Cir. 1997) (refusing to extend the fraud on the market theory beyond a federal securities fraud action); *Basic Inc. v. Levinson*, 485 U.S. at 246 (holding that securities fraud plaintiffs can in certain circumstances satisfy the reliance element of a Rule 10b–5 action by invoking a rebuttable presumption of reliance, under a fraud on the market theory, rather than proving direct reliance on a misrepresentation).  Therefore, it is unavailable here to satisfy the reliance element of Plaintiffs' fraud claim.  *See In re Cascade Intern. Securities Litigation*, 840 F.Supp 1558, 1571 (S.D. Fla. 1993) (holding that Florida does not recognize a "fraud on the market" theory to establish reliance, but instead requires allegations of actual reliance); *Pelletier v. Zweifel,* 921 F.2d 1465 (11th Cir. 1991) (RICO plaintiffs cannot rely on a fraud on the market theory to prove reliance)*; accord Kahler v. E.F. Hutton & Co., Inc.,* 558 So. 2d 144, 145 (Fla. 3d DCA 1990); *see also In re GlenFed, Inc. Securities Litigation*, 60 F.3d 591, 592, Fed. Sec. L. Rep. (CCH) P 98806, 32 Fed. R. Serv. 3d 144 (9th Cir. 1995) (affirming the dismissal of common law fraud claims in securities action for failure to plead actual reliance); *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 783, 31 Fed. R. Serv. 3d 845 (3d Cir. 1995); *In re Pfizer Inc. Securities Litigation*, 584 F. Supp. 2d 621 (S.D. N.Y. 2008) ("courts in this district have generally refused to allow plaintiffs to use the fraud-on-the-market theory to support common law fraud claims").

Turning back, then, to the proper standard under Rule 9(b), Plaintiffs must demonstrate actual reliance by specifically alleging "the content of [the fraudulent] statements [or omissions] and the manner in which they misled" them.  *Grills v. Philip Morris USA, Inc*., 645 F.Supp.2d 1107, 1124 (M.D. Fla. 2009) (quoting *Ziemba v. Cascade Int'l, Inc*., 256 F.3d 1194, 1202 (11th Cir.2001)).  Plaintiffs must also explain "precisely what statements were made in what documents or oral representations or what omissions were made" and "the time and place of each

such statement and person responsible for making (or, in the case of omissions, not making) same." *Phillip Morris*, 645 F.Supp.2d at 1124 (quoting *Ziemba*, 256 F.3d at 1202).

Merely alleging, as Plaintiffs have, Ms. Neiwirth's general reliance "on the overall picture painted by BATISTA and his co-conspirators and accomplices, his intentional misstatements made via his publications on the internet and material omissions," is insufficient to satisfy Rule 9's strict pleading requirements.  The only statements Plaintiffs describe in the Federal Complaint with any particularity are numerous public disclosure statements (or "Statements of Material Fact") that OGX, not Berto, allegedly made to the public at large, which either contained immaterial information or failed to disclose material information, *see* ([D.E. 75] at ¶¶ 206-208, 222, 224-226, 239, 245, 257, 262, 265, 273, 275, 334).  Plaintiffs allege that "[t]he promulgation of these statements to investors internationally and the continuing failure to retract them constituted fraudulent misrepresentations that were intended to induce and did successfully induce a belief in and among investors that OGX, and the satellite entities that depended on its success, had huge intrinsic commercial value." ([D.E. 75] at ¶ 251).  Plaintiffs do not allege that Ms. Neiwirth ever read those Statements, explain how those Statements actually misled Ms. Neiwirth in any way, or describe how the alleged omissions in those Statements affected Ms. Neiwirth's decision to invest in OGX bonds.  *See Phillip Morris*, 645 F.Supp.2d at 1124.  Indeed, Plaintiffs do not allege that Ms. Neiwirth based her investment decisions at all on such Statements, but instead generally "on the vaunted future profitability of OGX as aforesaid and on BATISTA's commitment to inject a billion dollars if and when needed[.]" ([D.E. 75] at ¶¶ 428, 445, 447, 465, 474).

Because Plaintiffs cannot rely on the Defendants' alleged misrepresentations to the market in general to establish the reliance element of their fraud claim, and otherwise have failed

to allege actual reliance, they have failed to state a claim for fraud.  *In re Cascade*, 840 F.Supp at 1571; *see also Chudasama*, 123 F.3d at 1369 n. 39 (explaining that a plaintiff cannot rely on representations to the market as a whole to establish reliance element of a fraud claim).

    C.   **Plaintiffs Have Failed to State a Claim under Florida's RICO Act Because They Suffered No Direct Injury from Berto's Alleged Acts**

      In Count IV of the Federal Complaint, Plaintiffs allege that several Defendants, including Berto[1], engaged in securities fraud, federal wire fraud, federal money laundering, false advertising, civil theft and communications fraud as a pattern of criminal activity in violation of Fla. Stat. § 772.103, the Florida Civil Remedies for Criminal Practices Act ("Florida RICO"). Fla. Stat. § 772.104, which creates the civil cause of action for Florida RICO violations, states, "[a]ny person who proves by clear and convincing evidence that he or she has been injured **by reason of** any violation of the provisions of s. 772.103 shall have a cause of action for threefold the actual damages sustained. . . ."  Fla. Stat. § 772.104(1) (emphasis added).

      "Because the Florida RICO Act is patterned after the federal act, Florida looks to federal authorities in construing its own RICO statute."  *Bortell v. White Mountains Ins. Group, Ltd.*, 2 So. 3d 1041, 1047 (Fla. 4th DCA 2009).  "Looking to similar language in 18 U.S.C. § 1964(c) requiring a plaintiff to prove injury **'by reason of'** a RICO violation, the Supreme Court concluded that the phrase required application of common law proximate cause requirements and the '**demand for some direct relation between the injury asserted and the injurious conduct alleged**.'"  *Bortell*, 2 So. 3d at 1047 (*quoting Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992)) (emphases added).  Put simply, the "by reason of" language requires the Plaintiffs to demonstrate that their injury directly relates to the Defendants' alleged racketeering activity.  *Bortell*, 2 So. 3d at 1047 (*quoting Sedima, S.P.R.L. v. Imrex Co.*,

---

[1] The Magno Defendants are not named in Count IV.  They are only named in Counts XI and XII.

473 U.S. 479, 497, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)); *Levitan v. Patti*, No. 3:09cv321/MCR/MD, 2011 WL 1299947, *7 (N.D. Fla. Feb. 8, 2011) ("Courts strictly interpret 'by reason of' to mean 'as a direct result of' the defendant's racketeering activity."); *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1349 (11th Cir. 2016) ("[P]leading a civil RICO claim requires that plaintiffs plead facts sufficient to give rise to a reasonable inference that the claimed racketeering activity . . . was the but-for *and* proximate cause of the plaintiffs' injuries").

Plaintiffs have failed altogether to allege any specific injury they suffered as a direct result of Berto's actions. At most, Plaintiffs allege that Berto knew Batista's misrepresentations regarding the "vaunted future profitability of OGX" to be false, but failed to disclose the falsity of those statements to the public at large. (D.E. 75, ¶ 124). However, Plaintiffs' only identifiable injury - the loss in value of their investment in OGX - allegedly arose from Ms. Neiwirth's reliance on "the aggregate spin disseminated by BATISTA and his co-conspirators and accomplices to the international financial market," ([D.E. 75] at ¶ 421), which Plaintiffs do not attribute to Berto. Therefore, by their own allegations, the proximate cause of Plaintiffs' injuries was the purported misrepresentations associated with the OGX bond sale, and not Berto's alleged knowledge of the falsity of any such statements. Plaintiffs' failure to plead an injury which Berto proximately caused them precludes any claim against Berto under Florida RICO. *Palmas y Bambu, S.A. v. E.I. DuPont de Nemours & Co.,* 881 So. 2d 565, 570 (Fla. 3d DCA 2004) ("As this court has confirmed, 'indirect injuries, that is injuries sustained not as a direct result of predicate acts . . . will not allow recovery under Florida RICO.'"); *O'Malley v. St. Thomas University, Inc.*, 599 So. 2d 999, 1000 (Fla. 3d DCA 1992) (holding that "indirect injuries, that is, injuries sustained not as a direct result of predicate acts under the Florida [RICO] will not allow recovery under Florida RICO.").

Further, Plaintiffs cannot rely on Batista's alleged misrepresentations to the market in general to establish the "direct relation" element of their RICO claim.  Courts across the country have consistently held that the "direct relation" requirement cannot be met where, as here, plaintiff is relying on representations made to the market as a whole to establish causation.

For example, in *Lawrie v. Ginn Development Co., LLC*, No. 3:09-cv-446-J-32JBT, 2013 WL 222258 (M.D. Fla. Jan. 9, 2013), the trial court found that the plaintiffs had failed to sufficiently plead that their injuries were proximately caused by defendant's alleged scheme to defraud where the plaintiffs were relying on a fraud-on-the-market theory of causation.  *Id*. at, *5-6.   In *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, Master File No. 2:06-cv-5774, 2009 WL 2043604, *20-21 (D. N.J. July 10, 2009), the court rejected the plaintiff's federal and state RICO claims because its alleged injuries were based on fraudulent representations made to the market.  *Id*. at, *20-21.  In *Appletree Square I, Ltd. P'ship v. W.R. Grace & Co*., 29 F.3d 1283, 1287 (8th Cir. 1994), the Court similarly held that a building owner could not use fraud perpetrated on the market as a whole to show that it was injured "by reason of" asbestos manufacturer's alleged misrepresentations, as required to demonstrate standing to pursue RICO claim against the manufacturer.  In *CGC Holding Co., LLC v. Broad and Cassel*, 773 F.3d 1076, 1095 (10th Cir. 2014), the court found that the rebuttable presumption of causation applicable to securities fraud cases based on the fraud on the market theory does not extend to RICO fraud cases.  *See also Southeast Laborers Health and Welfare Fund v. Bayer Corp*., 444 Fed. Appx. 401, n. 4 (11th Cir. 2011) ("[Plaintiff] may not rely on a fraud-on-the-market or fraud-on-the-FDA theory of causation for its RICO claim.").

Here, Plaintiffs do not contend that Berto (or any of the Defendants, for that matter), directed any misstatements or misrepresentations about OGX specifically toward them, or that

they relied on any particular misrepresentation in purchasing the OGX bonds.  Again, Plaintiffs

do not allege that Berto made any representations at all.   Instead, Plaintiffs allege that

"BATISTA and his co-conspirators" disseminated their misrepresentations "to the international

financial market" at large, "buil[ding] an impression in the minds of money managers and

investors across the United States and worldwide, that OGX was sitting on enormous reserves of

recoverable oil when in reality there was virtually none."  ([D.E. 75] at ¶ 54).  Plaintiffs further

describe the alleged fraudulent scheme as follows:

> Between 2008 and 2013 BATISTA and his father, ELIEZER, his brother,
> WERNER, and other co-conspirators and accomplices in the EBX Group . . .
> raised close to $10 billion dollars from investors in stocks and bonds,
> overwhelmingly in the U.S., on the basis of an international press campaign
> **barraging the international investing public with false promises of a trillion**
> **dollars of recoverable oil off the coast of Brazil** pursuant to drilling leases from
> the Brazilian government owned by BATISTA's oil exploration company, EBX
> Group member, OGX.

([D.E. 75] at ¶ 46) (emphasis added).

Plaintiffs do not allege that **they** relied on those misrepresentations to the market, but

rather that their financial advisor, Judith Neiwirth, generally relied on "the aggregate spin

disseminated by BATISTA and his co-conspirators and accomplices to the international financial

market via the usual 'lay' internet sources such as Google, telephone conferences with others

and, most importantly, the Bloomberg terminal on her desk[.]"  ([D.E. 75] at ¶¶ 421, 423).  Thus,

according to the Federal Complaint, Defendants allegedly perpetrated their fraud on the

"international investment market" at large, not on Plaintiffs individually.  As a matter of well-

established federal and Florida law, such an indirect theory of causation is insufficient to satisfy

the proximate cause element of Plaintiffs' Florida RICO claims.  *Palmas y Bambu, S.A.* 881 So.

2d at 570.

**D. Plaintiffs Have Failed to State a Claim for False and Misleading Advertising Against Berto Because Berto is not Alleged to Have Made Any Statement At All**

In Count VI of the Federal Complaint, Plaintiffs attempt to state a claim for "False and Misleading Advertising" under section 817.41 of the Florida Statutes.

Florida law is clear**: in order to state a claim under section 817.41, the plaintiff must allege that it relied on some identifiable misleading statement or advertisement**. *Third Party Verification, Inc. v. Signaturelink, Inc.*, 492 F.Supp.2d 1314, 1322 (M.D. Fla. 2007). "The pleader must also allege that the representor's representation was made with the intent or purpose, either directly or indirectly, of selling or disposing of real or personal property, services of any nature whatever, professional or otherwise, or to induce the public to enter into any obligation relating to such property or services." *Third Party Verification*, 492 F.Supp.2d at 1322 (citing *Samuels v. King Motor Company of Fort Lauderdale,* 782 So.2d 489, 496 (Fla. 4th DCA 2001)).

Plaintiffs have failed to state a claim for relief under Section 817.41 for two reasons. First, Plaintiffs have failed to allege their reliance on Berto's misleading statements. The statute on its face requires an affirmative statement as a basis for a misleading advertising claim:

> The phrase 'misleading advertising' includes **any statements made, or disseminated**, in oral, written, or printed form or otherwise, to or before the public, or any portion thereof, which are known, or through the exercise of reasonable care or investigation could or might have been ascertained, to be untrue or misleading, and which are or were so made or disseminated with the intent or purpose, either directly or indirectly, of selling or disposing of real or personal property, services of any nature whatsoever, professional or otherwise, or to induce the public to enter into any obligation relating to such property or services.

*Id*. (emphasis added).

The Federal Complaint fails to point to any specific advertisement on which Plaintiffs allegedly relied.  Again, Plaintiffs do not allege that Berto made any statements at all.  The sum

total of Plaintiffs' allegations against Berto is that, years after Batista's misrepresentations to the market, Berto helped Batista by "cash[ing] Batista out" of LLX in anticipation of OGX's crash, ([D.E. 75] at ¶ 415), and by introducing him to 'international asset protection' attorney, Erick Magno, who helped Batista and his family "shield assets from creditors."  ([D.E. 75] at ¶ 169). In the absence of any allegations concerning an actionable statement by Berto upon which Plaintiffs allegedly relied, the claim for misleading advertising fails as a matter of law.

Second, section 817.41 does not apply to securities such as the OGX bonds.  Chapter 817 of the Florida Statutes "was enacted to grant to consumers a stronger remedy for redress against fraudulent commercial practices than already existing legal remedies." *Miami Lincoln Mercury, Inc. v. Kramer*, 399 So. 2d 1003, 1005 (Fla. 3d DCA 1981) (Ferguson, J., dissenting).  Securities are purchased as investments, however, not as goods to be "consumed" or "used."  By its own clear terms, section 817.41 applies only to "real or personal property, services of any nature whatever . . . [or] any obligation relating to such property or services."  *Id*.  The securities markets already are subject to pervasive federal and state regulation.  Florida's legislature could not have intended to give securities investors a redundant measure of protection beyond that already provided by the securities acts and, indeed, by Florida's Securities and Investor Protection Act.  *See* Fla. Stat. § 517.301.  As a matter of law, therefore, section 817.41 does not apply to this case.

### E.  **Plaintiffs Have Failed to State a Claim for Civil Theft Against Berto**

"To establish a claim for civil theft, a party must prove that a conversion has taken place and that the accused party acted with criminal intent."  *Gasparini v. Pordomingo*, 972 So. 2d 1053 (Fla. 3d DCA 2008) (citing *Gersh v. Cofman*, 769 So.2d 407, 408 (Fla. 4th DCA 2000)).  A conversion is defined, in turn, as "an act of dominion inconsistent with his ownership of it." *Belford Trucking Co. v. Zagar*, 243 So.2d 646, 648 (Fla. 4th DCA 1970).

"To be a proper subject of conversion each coin or bill need not be earmarked, but there must be an obligation to keep intact or deliver the specified money in question so that the money can be identified."  *Belford Trucking*, 243 So. 2d at 648.  "Money is capable of identification where it is delivered at one time, by one act and in one mass."  *Id.*  Further, an action for conversion of money can only be maintained where the money at issue has been kept separate. *Id.*  In other words, "'there must be an obligation to keep intact or deliver the specific money in question, so that money can be identified.'" *Gasparini*, 972 So. 2d at 1056 (quoting *Futch v. Head*, 511 So.2d 314, 320 (Fla. 1st DCA 1987)); *see also Masvidal v. Ochoa*, 505 So.2d 555, 556 (Fla. 3d DCA 1987) (specifying that civil theft and conversion can be asserted where a party embezzles funds from an escrow account).

Here, Plaintiffs do not allege that the parties ever gave Berto, or any of the Defendants an identifiable sum of money to keep in a separate account, or that Defendants were obligated to hold any funds they received from Plaintiffs in a trust or escrow account.  Plaintiffs also fail to allege that Defendants were required to keep Plaintiffs' investment intact, or deliver the money for a particular purpose, precluding the money's identification.  Instead, Plaintiffs allege that Ms. Neiwirth directed the purchase of OGX bonds **in the secondary market** on Plaintiffs' behalf. ([D.E. 75] at ¶¶ 427, 428, 445, 447, 465, 474).

Thus, as a matter of law, Plaintiffs have failed to allege a factual basis to support a conversion claim. *See Gasparini*, 972 So. 2d at 1056 (finding no conversion as a matter of law where the parties did not contemplate that defendant would keep plaintiff's $300,000 in a separate account, nor that defendant would be obligated to hold the funds that it received from plaintiff in a trust or escrow account). And, because there is no factual basis to support a conversion claim, there also is no factual basis for a civil theft claim. *Id*. ("Since we have found that there was no factual basis to support a claim for conversion, it stands to reason therefore, that there can be no cause of action for civil theft.").

### F.  Plaintiffs Have Failed to Allege a Fraudulent Transfer Claim Against Berto or the Magno Defendants

Under the Florida Uniform Fraudulent Transfers Act ("FUFTA"), Fla. Stat. § 726.101, *et seq.*, fraudulent transfers may be recovered by a creditor under two theories: (1) actual fraud, pursuant to Fla. Stat. § 726.105(1)(a) and § 726.106; and (2) constructive fraud, pursuant to Fla. Stat. § 726.105(1)(b).

The Federal Complaint does not identify a particular subsection of "Florida Statute 726.101, *et seq.*" upon which the action is based, which itself merits dismissal. Plaintiffs do not allege that the Defendants were insolvent at the time of the transfer, or became insolvent as a result of the transfer or obligation, as required to state a claim of actual fraud under Fla. Stat. 726.106(1). Instead, Plaintiffs appear to track verbatim the language of § 726.105 by alleging that Defendants "made fraudulent transfers of assets, cash, and property," with actual intent to "hinder, delay, or defraud creditors," without receiving reasonably equivalent value in return. ([D.E. 75] at ¶ 583). Thus, it appears that Plaintiffs' fraudulent transfer claims are based on both § 726.105(1)(a) and § 726.105(1)(b).

### 1.   **Plaintiffs Have Failed to Identify Any Particular Transfer to Be Avoided**

FUFTA provides creditors with a remedy directed at a particular transfer made, or particular obligation incurred by a debtor "with actual intent to hinder, delay, or defraud any creditor," or "without receiving a reasonably equivalent value in exchange for the transfer or obligation[.]" *See* Fla. Stat. §§ 726.105(1)(a), (b) (2016).

In *Feldkamp v. Long Bay P'ners, LLC*, 773 F. Supp. 2d 1273 (M.D. Fla. 2011), the court dismissed a claim brought under FUFTA because the "[p]laintiffs ha[d] failed to identify [the] specific transfer they [sought] to set aside; rather they [had] allude[d] generally to the alleged looting of the defendant in an amount exceeding $473 million . . . ." *Id.* at 1287.  The Court explained that the only relief a court can provide to remedy a fraudulent transfer is to set aside a particular transfer.   *Id.* (citing Fla. Stat. § 726.108(1)(a)).   Thus, generally alleging that defendants "looted" unspecified millions of dollars, without identifying the particular transaction or transactions sought to be avoided, was insufficient to support a claim for fraudulent transfer. *Id.*

As in *Feldkamp*, Plaintiffs have failed to identify any specific transfer to Berto or the Magno Defendants (or to any of the other Defendants) which they seek to set aside as fraudulent. In fact, Plaintiffs do not allege that Berto or the Magno Defendants received any transfer of any kind.  Instead, Plaintiffs allude generally to an unspecified "hundreds of millions of dollars" that Batista and his alleged co-conspirators and accomplices took and kept for themselves.  ([D.E. 75] at ¶¶ 86, 100, 105, 180, 524).

Plaintiffs allege generally that Batista made fraudulent transfers to a number of companies he "set up for the primary purpose of being the name on a bank account for the transmission of funds to accomplish the fraudulent scheme," ([D.E. 75] at ¶ 137),  and to certain

of his family members.  ([D.E. 75] at ¶¶ 480, 481).  However, Plaintiffs fail to identify any particulars concerning such transfers - i.e., when they were made, to whom they were made, in what amounts they were made, etc.  These are the very types of generalized allegations which the court in *Feldkamp* held cannot support a fraudulent transfer claim.  Plaintiffs' lack of specificity in their pleading requires dismissal of Count XI.

Indeed, Florida's Third District Court of Appeal already determined that Plaintiffs' FUFTA claims were lacking when it vacated an injunction entered against Berto (and co-defendant Werner Batista) premised on the same FUFTA allegations contained in the Federal Complaint.  *Berto v. Meridian Tr. Co.*, 221 So. 3d 757 (Fla. 3d DCA 2017).  Thus, in the absence of any allegations concerning a particular transfer to, or from Berto which the Court may set aside, Plaintiffs have failed to state a claim under FUFTA.

## 2. Plaintiffs Have Failed to Allege Actual Fraud Under Fla. Stat. § 726.105(1)(a)

"To state a claim for actual fraud under [Fla. Stat. § 726.105(1)(a)], a plaintiff must 'allege (1) there was a creditor sought to be defrauded; (2) a debtor intending fraud; and (3) a conveyance or property which could have been available to satisfy the debt.'"  *Oginsky v. Paragon Properties of Costa Rica LLC*, 784 S.Supp.2d 1353, 1369-70 (S.D. Fla. 2011); *Nationsbank, N.A. v. Coastal Utils. Inc.*, 814 So.2d 1227, 1229 (Fla. 4th DCA 2002).  Here, as in *Oginsky*, Plaintiffs have not alleged the second element:  a debtor intending fraud.

First, Plaintiffs have failed to identify the "debtor."  The Federal Complaint merely alleges: "The foregoing Defendants, in ways, upon dates and in places that are unknown before discovery, beyond what is set forth herein, made fraudulent transfers of assets, cash, and property[.]"  ([D.E. 75] at ¶ 583).  The "Defendants" are 20 separate entities and individuals.  Plaintiffs fail to explain which Defendants are "debtors," as defined by the statute, which

Plaintiffs are creditors of which Defendant, and which of the Defendants made the transfers to which recipients.  With respect to the Magno Defendants in particular, Plaintiffs lump both defendants together, without identifying which allegedly made or received any fraudulent transfer.  These vague assertions do not give Defendants "fair notice of what the claim is and the grounds upon which it rests."  *Oginsky v. Paragon Properties of Costa Rica, LLC*, 784 F.Supp.2d 1353, 1370 (S.D. Fla. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

Second, Plaintiffs have failed to adequately allege intent.   "Because of the difficulty of proving actual intent, past statutory law, existing case law and the UFTA look to indicia of intent commonly known as 'badges of fraud.'" *Amjad Munim, M.D., P.A. v. Azar*, 648 So.2d 145, 152 (Fla. 4th DCA 1994); *In re XYZ Options, Inc.*, 154 F.3d 1262, 1271 (11th Cir.1998) ("In determining whether the circumstantial evidence is sufficient to establish fraudulent intent, the court should investigate the transfer for the existence of badges of fraud.").  FUFTA lists eleven nonexclusive "badges of fraud" that may be considered in determining actual intent. Fla. Stat. § 726.105(2).

Plaintiffs have not alleged facts to support the existence of any of these badges of fraud in Count XI, or anywhere in their Federal Complaint for that matter.  In fact, Plaintiffs admit that they cannot identify any particular transfer they claim was fraudulent.  The only allegation of Defendants' intent is contained in paragraph 583, which states as follows:

> The foregoing Defendants, **in ways, upon dates, and in places that are unknown before discovery,** beyond what is set forth herein, made fraudulent transfers of assets, cash, and property: (a) with actual intent to hinder, delay, or defraud creditors; or (b) without receiving a reasonably equivalent value in exchange for the transfer or obligation, when BATISTA and each of the other liable Defendants were engaged in or were about to; engage in a business or a transaction for which his and their remaining assets were unreasonably small in relation to the business or transaction; or intended to incur, or believed or

reasonably should have believed that he or they would incur, debts beyond his or their ability to pay as they became due, contrary to Fla. Stat. § 726.101, *et seq.*

This is the very type of "formulaic recitation of a cause of action's elements" which courts interpreting FUFTA have found to be insufficient to state a claim for relief. *See Oginsky*, 784 F.Supp.2d at 1371 (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). Like the plaintiff in *Oginsky*, Plaintiffs merely parrot the statutory language, but fail to allege any facts to support an actual fraud theory. Thus, Plaintiffs have failed to show that they are entitled to relief. *Iqbal*, 556 U.S. at 679 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'").

### 3. Plaintiffs Have Failed to Allege Constructive Fraud Under Fla. Stat. § 726.105(1)(b)

Florida Statute § 726.105(1)(b) addresses transfers made by a debtor without receiving reasonably equivalent value in exchange for the obligation while the debtor was insolvent, or intended to incur, or believed or should have believed that he would incur, debts beyond his ability to pay as they became due. *See In Re Goldberg*, 229 B.R. 877, 884 (Bankr. S.D. Fla. 1998). Concerning the elements of a "constructively fraudulent" transfer under 726.105(1)(b), *Oginsky* instructs:

> To state a claim for constructive fraud under section 726.105(1)(b), a plaintiff must allege that a debtor made a transfer or incurred an obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation, ***and*** the debtor:
>
> (1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>
> (2) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his ability to pay as they became due.

*Oginsky*, 784 F. Supp. 2d at 1371 citing Fla. Stat. § 726.105(1)(b) (emphasis in original).

Plaintiffs have failed to allege any facts to support either of the alternative second elements under section 726.105(1)(b), and it is impossible to do so without identifying a particular debtor or a single "fraudulent" transfer. Plaintiffs' failure to identify a debtor also prevents them from alleging when any such debtor: (1) was about to engage in a business or transaction that would leave its remaining assets unreasonably small; (2) should have believed it would incur debts beyond its ability to pay; or (3) became insolvent. *See* Fla. Stat. § 726.105(1)(b). Additionally, Plaintiffs fail to support their allegation that the alleged transfers were made without receiving a reasonably equivalent value with any facts.

As with their actual fraud claim, therefore, Plaintiffs have failed to allege any facts to support the critical elements of their constructive fraud theory under section 726.105(1)(b).

### 4. **<u>Plaintiffs' Allegations Otherwise Preclude a Claim Against Berto or the Magno Defendants</u>**

Plaintiffs otherwise have failed to state a fraudulent transfer claim against Berto or the Magno Defendants because Plaintiffs do not actually seek to reach any assets in their possession. Plaintiffs do not allege that Berto or the Magno Defendants were the intended recipients of the transferred funds, or that Berto or the Magno Defendants controlled the funds. Even though Plaintiffs label Berto and the Magno Defendants "transferees," the Federal Complaint's other allegations demonstrate that Plaintiffs seek to recover against Berto and the Magno Defendants as transferors of Batista's funds.

Plaintiffs allege that "BERTO agreed to act as the trustee of a trust set up by MAGNO for the benefit of EIKE BATISTA, THOR BATISTA and their family members." ([D.E. 75] at ¶ 589). Plaintiffs further allege that, as the trustee, "BERTO then transferred or permitted the transfer of such funds abroad, out of Florida, to Switzerland, for the purpose of fraudulently avoiding creditors of the beneficiaries of the trust, EIKE BATISTA, THOR BATISTA and their

family members." ([D.E. 75] at ¶ 591). Thus, Plaintiffs apparently seek to compel Berto to pay Plaintiffs the equivalent value of the funds he allegedly transferred at Batista's direction.

Similarly, Plaintiffs allege that Magno allowed Batista to "park" his money in Magno PL's trust account, and, at Batista's instructions, distributed the money to Batista as well as his family members and confidants. ([D.E. 75] at ¶¶ 598, 601). Plaintiffs allege that Magno should thus be compelled to pay Plaintiffs the equivalent value of the funds he transferred at Batista's direction. ([D.E. 75] at ¶ 600). FUFTA, however, does not provide for such relief.

In *Yusem v. South Fla. Water Mgmt. Dist.*, 770 So.2d 746, 749 (Fla. 4th DCA 2000), the Court explained as follows:

> A fraudulent conveyance action is simply another creditors' remedy. It is either an action **by a creditor against a transferee** directed against a particular transaction, which, if declared fraudulent, is set aside thus leaving the creditor free to pursue the asset, or it is an action **against the transferee** who has received an asset by means of a fraudulent conveyance and should be required to either return the asset or pay for the asset (by way of a judgment and execution).

*Id.* at 749 (emphases added). Although the Act authorizes broad relief against a recipient or transferee of assets or property, the Act does not provide a remedy against a transferor. *Id.*; *Edwards v. Airline Support Group, Inc.*, 138 So.3d 1209, 1212 (Fla. 4th DCA 2014) ("In general, actions under section 726.108 are brought against a recipient or transferee of assets or property, and not a transferor.").

Similarly, in *Freeman v. First Union Nat. Bank*, 865 So. 2d 1272 (Fla. 2004), Florida's Supreme Court confirmed that FUFTA was not intended to serve as a vehicle by which a creditor may bring a suit against a non-transferee for monetary damages. *Id.* at 1276-77. Here, Plaintiffs allege that Berto and the Magno Defendants acted as mere transferees based on Batista's instructions. Thus, to allow Plaintiffs to pursue a damages claim against Berto or the Magno Defendants under a fraudulent transfer theory would allow Plaintiffs to improperly expand

FUFTA beyond its intended reach.  *Id*. at 1277 ("We simply can see no language in FUFTA that suggests an intent to create an independent tort for damages.").

> **5.  Plaintiffs Cannot be Allowed to Proceed With Their Fraudulent Transfer Claim Subject to Discovery**

Plaintiffs admit that they do not know the specifics of the alleged fraudulent transfers which they hope to uncover through later discovery.  ([D.E. 75] at ¶ 583) ("The foregoing Defendants, **in ways, upon dates, and in places that are unknown before discovery**, beyond what is set forth herein, made fraudulent transfers of assets, cash, and property[.]").  But the legal sufficiency of the fraudulent transfer claims must be established, not by what Plaintiffs hope to uncover through later discovery, but instead by what Plaintiffs actually allege in the Federal Complaint.

The Court in *Special Purpose Accounts Receivable Co-op. Corp. v. Prime One Capital Co., L.L.C.*, No. 00-06410-CIV-MARRA, 2008 WL 2245726, *2 (S.D. Fla. May 29, 2008) rejected a similar attempt to "pursue discovery to find out if a fraudulent transfer claim exists." The Court explained that "the purpose of discovery is to find out additional facts about a well-pleaded claim, not to find out whether such a claim exists." *Id.* (citing *Abrahams v. Young & Rubicam*, 979 F. Supp. 122, 129 (D. Conn. 1997)); *see also Court-Appointed Receiver of Lancer Offshore, Inc. v. Citco Group Ltd*, No. 05-60055-CIV-MARRA, 2011 WL 1232986, *2 (S.D. Fla. Mar. 30, 2011) (citing *Prime One* with approval).

Plaintiffs' conclusory allegations do not support a fraudulent transfer claim and, therefore, should be dismissed as a matter of law.

**G.  Plaintiffs Have Failed to State a Claim for Conspiracy to Commit Fraudulent Transfers Against Berto and the Magno Defendants**

In Count XII, Plaintiffs attempt to assert a claim against the Defendants for civil conspiracy to commit a fraudulent transfer.  Florida law does not recognize such a claim.

In *Freeman*, the Court recognized that "[t]here simply is no language in FUFTA that suggests the creation of a distinct cause of action for aiding-abetting claims against non-transferees," such as Berto and the Magno Defendants.  *Freeman*, 865 So. 2d at 1276.  Although the claims in *Freeman* were for aiding and abetting a fraudulent transfer, the Court in *In re Ernie Haire Ford, Inc.* subsequently extended *Freeman's* holding to claims for conspiracy to commit fraudulent transfer.  *In re Ernie Haire Ford, Inc.*, 459 B.R. 824, 841 (Bankr. M.D. Fla. 2011).

The Court also held that, because a civil conspiracy claim requires a viable underlying tort, there could be no claim for conspiracy unless "[t]he underlying tort . . . [is] recognized by Florida law."  *Id*. at 842.  Count XII of Plaintiffs' Federal Complaint is based on the Defendants' alleged making of fraudulent transfers.  Plaintiffs' failure to state a fraudulent transfer claim precludes a claim for conspiracy to commit the fraudulent transfers.

**H.  Plaintiffs Otherwise Have Failed to State a Claim For Conspiracy**

In Counts II, V, VII, IX and XII, Plaintiffs attempt to state claims against Defendants for civil conspiracy to commit a number of the torts discussed above.  "In Florida, '[a] civil conspiracy requires: (a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to the plaintiff as a result of the acts done under the conspiracy.'"  *Eagletech Communications, Inc. v. Bryn Mawr Inv. Group, Inc.*, 79 So. 3d 855, 863 (Fla. 4th DCA 2012) (*quoting Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997)).  "'General allegations of conspiracy are inadequate.'"  *Eagletech*, 79 So. 3d at 863 (quoting *World Class*

*Yachts, Inc. v. Murphy*, 731 So. 2d 798, 799 (Fla. 4th DCA 1999)).  "A complaint must 'set forth clear, positive, and specific allegations of civil conspiracy.'"  *Eagletech*, 79 So. 3d at 863 (*quoting World Class Yachts*, 731 So. 2d at 799).

Plaintiffs fail altogether to allege any specific facts concerning the purported conspiracy to commit any of the underlying acts upon which the various civil conspiracy claims are based. Indeed, Plaintiffs admit that they know no such facts by alleging variously, "[t]he foregoing Defendants in ways, upon dates, and in places that **are unknown before discovery, beyond what is set forth above**, conspired with BATISTA and others among themselves, to make fraudulent transfers of assets, cash, and property[.]"  ([D.E. 75] at ¶ 605).    Alternatively, Plaintiffs allege that the facts which support the various conspiracy counts supposedly are "detailed above," in the preceding allegations of the Federal Complaint, ([DE 75] at ¶ 544, 579). None of those allegations actually contain any such details, particularly with respect to Berto or the Magno Defendants.  Thus, all of Plaintiffs' civil conspiracy claims are legally deficient because the Federal Complaint "makes only the barest allegations about the alleged conspiracy, with no details as to the unlawful scheme or the actual agreement of the parties."  *Eagletech*, 79 So. 3d at 863.

The conspiracy counts also are deficient because none of the underlying torts are actionable.  "The gist of a civil action for conspiracy is not the conspiracy itself, but the civil wrong which is done pursuant to the conspiracy and which results in damage to the plaintiff."  *Blatt v. Green, Rose, Kahn & Piotrkowski*, 456 So. 2d 949, 950 (Fla. 3d DCA 1984).  "Thus, a cause of action for civil conspiracy exists . . . only if 'the basis for the conspiracy is an independent wrong or tort which would constitute a cause of action if the wrong were done by one person.'"  *Id.* (quoting *American Diversified Ins. Servs., Inc. v. Union Fidelity Life Ins. Co.*,

439 So. 2d 904 (Fla. 2d DCA 1983)); *Raimi v. Furlong*, 702 So.2d 1273, 1284 (Fla. 3d DCA 1997) ("[A]n actionable conspiracy requires an actionable underlying tort or wrong.").

Thus, in *Rogers v. Nacchio*, 241 F. App'x 602, 609 (11th Cir. 2007) (per curiam) (unpublished), the Court affirmed the dismissal of conspiracy and aiding and abetting claims where the complaint failed to state a claim on the underlying counts.  Similarly, in *Behrman v. Allstate Life Ins. Co.*, 178 F. App'x 862, 863 (11th Cir. 2006) (per curiam) (unpublished), the Court affirmed the dismissal of civil conspiracy claims where the predicate claims were properly dismissed.

Accordingly, Plaintiffs' conspiracy claims as contained in Counts II, V, VII, IX and XII fail for lack of a supporting underlying claim.

### I.   Plaintiffs Have Failed to State a Claim for Aiding and Abetting Against Berto

Plaintiffs attempt to assert claims against the Defendants for aiding and abetting fraud (Count III) and aiding and abetting civil theft (Count X).  Plaintiffs cannot maintain either of these claims.

Florida courts have presumed that a tort claim for aiding and abetting fraud has three elements: (1) the existence of an underlying fraud; (2) the defendant had actual knowledge of the fraud; and (3) the defendant substantially assisted the commission of the fraud.  *ZP No. 54 Ltd. P'ship v. Fid. & Deposit Co.*, 917 So.2d 368, 372 (Fla. 5th DCA 2005) (explaining that aiding and abetting fraud "may well be a valid cause of action in Florida.").  Because Plaintiffs have failed to state a claim for fraud, however, the count for aiding and abetting fraud also must fail.

Turning to the aiding and abetting civil theft count, there is no legal authority in Florida which recognizes such a claim.  Plaintiffs have contrived this claim from thin air.  Because

Plaintiffs have failed to state a cognizable claim for relief, their claim for "aiding and abetting civil theft" must be dismissed.

IV.

**CONCLUSION**

For the reasons set forth herein, Plaintiffs' Federal Complaint must be dismissed with prejudice.

Respectfully submitted,

**BILZIN SUMBERG BAENA PRICE**
**& AXELROD LLP**
*Attorneys for Defendant Marcus Berto, Erick*
*Magno and Erick Magno, PL*
1450 Brickell Avenue, Suite 2300
Miami, Florida 33131-3456
Telephone:  (305) 374-7580
Facsimile:  (305) 374-7593

By:   */s/ José M. Ferrer*
**JOSÉ M. FERRER**
Florida Bar No. 173746
jferrer@bilzin.com
**YASMIN FERNANDEZ-ACUÑA**
Florida Bar No. 117372
yfernandez-acuna@bilzin.com
eservice@bilzin.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 2nd day of February 2018 I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system. I further certify that the foregoing is being served this day upon all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By   */s/ José M. Ferrer*
**José M. Ferrer**