UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.: 17-CV-23051-KMW/WILLIAMS/TURNOFF

MERIDIAN TRUST COMPANY, as
trustee, and AMERICAN ASSOCIATED
GROUP, LTD.,

      Plaintiffs,

v.

EIKE BATISTA, ELIEZER BATISTA, WERNER BATISTA,
THOR BATISTA, PAULO MENDONÇA, FLAVIO GODINHO,
PAULO GOUVEA, MARCUS BERTO, LUIZ CARNEIRO,
AZIZ BEN AMMAR, ERICK MAGNO, ERICK MAGNO, PL,
BANCO ITAÚ INTERNATIONAL, EFG CAPITAL INTERNATIONAL CORP.,
EFG BANK AG, 63X INVESTMENTS LTD., 63X MASTER FUND,
63X FUND, CENTENNIAL ASSET MINING FUND, LLC,
CENTENNIAL ASSET BRAZILIAN EQUITY FUND LLC,
CENTENNIAL ASSET LTD., WRM1 LLC, WRM2 LLC,
3BX INVESTMENTS, LLC, 3BX INVESTMENT FUND I, LLC,
AUX LUXEMBOURG SARL, AUX LLC, OLIN BATISTA,
FLAVIA SAMPAIO and LUMA DE OLIVEIRA,

      Defendants.

_____/

### EFG CAPITAL INTERNATIONAL CORP.'S AND BANCO ITAÚ INTERNATIONAL'S MOTION TO DISMISS THE FIRST FEDERAL AMENDED COMPLAINT WITH PREJUDICE

Tracy Nichols
Louise McAlpin
**HOLLAND & KNIGHT LLP**
701 Brickell Avenue, Suite 3300
Miami, Florida 33131

*Counsel for EFG Capital International Corp. and
Banco Itaú International*

Jay B. Kasner, Esq.
Scott D. Musoff, Esq.
**SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP AND AFFILIATES**
4 Times Square
New York, New York 10036

*Counsel for Banco Itaú  International*

**Table of Contents**

                                                                                                                  **Page**

I.      PRELIMINARY STATEMENT .................................................................................1

II.     BACKGROUND ......................................................................................................3

    A.      THE OGX BOND SALES .................................................................................3

    B.      BATISTA TRANSFERS AFTER THE OGX BOND SALES ........................................4

III.    MEMORANDUM OF LAW ......................................................................................5

    A.      APPLICABLE STANDARDS FOR MOTION TO DISMISS REVIEW ............................5

    B.      CLAIMS AGAINST THE BANKS MUST BE DISMISSED WITH PREJUDICE .................6

        1.      Aiding and Abetting Fraud and Civil Theft (Counts 3 and 10 against Itaú
                Miami)................................................................................................................6

            a)      There is no Underlying Tort of Fraud or Civil Theft Involving Itaú Miami ..............6
            b)      Plaintiffs do not Allege Actual Knowledge of the Alleged Fraud or Civil Theft........8
            c)      Plaintiffs Cannot Allege That the Bank Engaged in Substantial Assistance of the
                    Alleged Fraud or Civil Theft.........................................................................12

        2.      Conspiracy to Defraud and Commit Theft (Counts 2 and 9 against Itaú Miami)......14

        3.      RICO and RICO Conspiracy (Counts 4 and 5 against Itaú Miami)..........................17

            a)      Plaintiffs Cannot Allege Predicate Criminal Acts as to Itaú Miami ........................17
            b)      Plaintiffs Lack Standing to Bring a RICO Claim Because They Suffered no
                    Direct Injury from the Acts of Itaú Miami.......................................................19

        4.      Conspiracy to Violate FUFTA (Count 12 against Itaú Miami and EFG Capital) .....21

            a)      No Private Cause of Action Under FUFTA Against a Non-Transferee ...................22
            b)      Transactions Between Batista and his Entities' Accounts are not "Transfers"
                    Under FUFTA ...........................................................................................25
            c)      No Private Cause of Action for Money Laundering ................................................26
            d)      Conspiracy Allegations are Non-Specific, Conclusory and Insufficient .................29

Pursuant to Federal Rules of Civil Procedure 8(a), 9(b) and 12(b)(6), Defendant EFG Capital International Corp. ("EFG Capital") moves to dismiss Count 12, and Banco Itaú International (individually "Itaú Miami" or "the Bank", collectively with EFG Capital, "the Banks") moves to dismiss Counts 2, 3, 4, 5, 9, 10 and 12, of the First Federal Amended Complaint ("Amended Complaint") filed by Plaintiffs Meridian Trust Company and American Associated Group (ECF No. 75), which asserts claims against them and others for purported statutory and common law violations under Florida law. [1]

## I.   PRELIMINARY STATEMENT

Plaintiffs improperly seek to hold the Banks civilly liable for investment losses from an earlier purported fraud that the Banks had no role in or knowledge of. Instead, the sole foundation on which Plaintiffs rest their serious accusations of statutory and common law fraud-based claims are allegations regarding the routine opening of accounts by the Banks and their following customer instructions regarding transfers of money in customer accounts.  While Plaintiffs repeatedly label these acts as "money laundering" or actionable failures to detect and halt the movements of money out of the reach of would-be creditors, the Eleventh Circuit has repeatedly upheld the dismissal, as a matter of law, of similar claims against banks.  *See, e.g.*, *Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 947–50 (11th Cir. 2014).  As this Court has held, and the Eleventh Circuit has repeatedly affirmed, banks owe no duty to non-customers, such as these Plaintiffs, including any duty to investigate suspicious transactions by customers.  *See, e.g.*, *Megaval Enters., Ltd. v. Bank of Am., N.A.*, No. 14-20909-CIV-WILLIAMS, 2014 WL 12609318, at *4 (S.D. Fla. Oct. 8, 2014) (bank owes no duty to non-customers).  Absent

---

[1] EFG Capital disagrees with the Amended Complaint's allegations that it is a private bank.  *See, e.g.*, Am. Compl. ¶ 19.  However, for purposes of this motion to dismiss, EFG Capital recognizes that this Court must accept Plaintiffs' allegations as true.

allegations of substantial assistance in the scheme coupled with *actual* — not constructive, red flags waving, or should have known — knowledge, banks simply cannot be liable for carrying out the banking activities directed by their customers.  If, as Plaintiffs suggest here, banks were deputized as prosecutors and regulators with the responsibility to ferret out and stop fraud, and they had to investigate any unsubstantiated accusation alleging customer wrongdoing, the financial system would come to a grinding halt.

Plaintiffs do not state a claim for aiding and abetting fraud or civil theft because they fail to allege an underlying tort of fraud or theft and the Amended Complaint includes insufficient allegations regarding Itaú Miami's supposed actual knowledge of, or substantial assistance in, any purported fraud or theft.  The Amended Complaint also fails to state any claim for conspiracy to defraud or to commit theft for similar reasons.  The RICO and RICO conspiracy claims are likewise subject to dismissal because there are no specific facts concerning Itaú Miami's purported involvement in the predicate criminal acts and there is no showing that Plaintiffs suffered a direct injury from any acts by Itaú Miami.

As for the only non-fraud based claim, the conspiracy to violate a Florida statute prohibiting transfers to evade creditors, the Florida Supreme Court in *Freeman v. First Union Nat'l Bank*, 865 So. 2d 1272, 1277 (Fla. 2004) made it clear that there is no independent tort action for damages against non-transferees such as the Banks for assisting fraudsters who make such transfers.  That statute only provides equitable relief to undo the transfer.  Because the Banks never controlled or received the money, they cannot be held liable for a tort not provided for in the statute.  In addition, FUFTA does not apply to the alleged fraudulent transfers because they are not "transfers" within the meaning of the statute.  Finally, the allegations Plaintiffs do state are insufficiently specific to state a claim.

Because Plaintiffs have no fraud claim against the Banks and this Court and the Eleventh Circuit have repeatedly held that non-customers cannot sue banks for failing to detect or prevent the alleged fraud of its customers, this case should be dismissed with prejudice as to the Banks.

## II.    BACKGROUND

### A.    The OGX Bond Sales

According to the Amended Complaint, Plaintiffs were victims of a multi-billion dollar fraud conducted from 2009 to 2013 by Eike Batista, a prominent Brazilian national, and certain of his family members, friends and controlled companies.   The essence of the alleged foundational fraud was that Batista and his accomplices induced investors to invest in the oil exploration company, OGX, and its satellite companies in the EBX Group (a group of companies whose success depended on the success of OGX) on the basis of fraudulent misrepresentations which they knew were not true ("OGX Bond Sales"), including, among others, that OGX had discovered very large volumes of recoverable oil within its exploratory fields.  Am. Compl. (ii). After the truth regarding the lack of oil was discovered, OGX and two of its satellite EBX Group companies declared bankruptcy in Brazil in 2013, and Plaintiffs' investments of more than $21 million in OGX bonds became virtually worthless.  *Id.* ¶¶ 58–59.

The Amended Complaint does not allege that the Banks had any involvement in the OGX Bond Sales or any of the Plaintiffs' investments.  Nor could it.  The Banks were not underwriters in the bond offering, they made no representations about OGX or the bonds, and they had no interaction whatsoever with the Plaintiffs.   As a result, Plaintiffs have not alleged (nor can they allege) that the Banks had anything to do with the core fraud which consumes the vast majority of the allegations in the Amended Complaint.

**B.**    **Batista Transfers After the OGX Bond Sales**

According to the Amended Complaint, Batista and his accomplices supposedly benefitted from the alleged fraud underlying the OGX Bond Sales by transferring millions of dollars of the ill-gotten funds out of Brazil to bank accounts controlled by Batista in Miami and elsewhere for the purpose of avoiding their creditors ("Customer Transfers").  *Id.* ¶¶ 482, 604–607.  Plaintiffs unsuccessfully try to pin civil liability on the Banks, not for their involvement in the OGX Bond Sales, but instead for allowing Batista and other participants in the alleged OGX Bond Sales fraud to thereafter secret their allegedly ill-gotten gains away from creditors and potential creditors, like the Plaintiffs, who hope to someday obtain a judgment against the purported fraudsters.  At bottom, Plaintiffs fault the Banks for following their customers' directives and allowing the customers to transfer money into or out of their own bank accounts.

Specifically, Plaintiffs allege that EFG Capital opened an account for a trust "of which the beneficiaries were to be BATISTA and his family members"; and that the opening of the account "raised all sorts of red flags."  Plaintiffs "believe" an unnamed amount of monies were booked at EFG Capital's affiliated bank, EFG Bank AG, in Switzerland. Am. Compl.  ¶¶ 161–168.  As to Itaú Miami, Plaintiffs allege there were large transfers of money by Batista or his privies in and out of bank accounts allegedly controlled by Batista.  Am. Compl. ¶¶ 154(f)-(h); 395(h)-(n); 396(a)-(d).  The amount of the transfers is not surprising given that Batista was one of the world's richest men at the time. Am. Compl. ¶ 285. The other "Itaú" allegations (mostly of loans made to Batista or his entities) concern non-party banks, which are separate and distinct entities, not interchangeable with Itaú Miami, whose conduct cannot be imputed to Itaú Miami.

As we will explain, these Customer Transfers which post-date the OGX Bond Sales are the only "wrongs" alleged against the Banks and are non-tortious and not actionable under Florida or federal law.  Regardless of how the Customer Transfers are couched in the Amended

4

Complaint — as a conspiracy to violate a fraudulent transfer statute, money laundering, a supposed tort underlying a common law claim for aiding and abetting or conspiracy, or a RICO predicate act, the Customer Transfers do not give rise to a claim for money damages against non-transferee financial services firms, like EFG Capital or Itaú Miami.  Therefore, all of the claims against the Banks must be dismissed with prejudice.

## III.   MEMORANDUM OF LAW

### A.   <u>Applicable Standards For Motion to Dismiss Review</u>

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must view the complaint in the light most favorable to plaintiffs, accept the factual allegations in the complaint as true, and draw all reasonable inferences in favor of Plaintiffs. *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000).  Although Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," to survive a motion to dismiss, a complaint must provide more than "a formulaic recitation of the elements of a cause of action" and its allegations must "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  A claim is plausible when the complaint includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[A] complaint [does not] suffice if it tenders naked assertion[s] devoid of further factual enhancement.") (internal quotations and citations omitted).  Although "legal conclusions can provide the framework for a complaint," the court is not required to accept such conclusions in deciding a motion to dismiss unless they are supported by factual allegations.  *Id.*

Moreover, where, as here, the allegations are premised on an alleged fraud, the heightened pleading requirements of Rule 9(b) apply.  *See Begualg Inv. Mgmt. Inc. v. Four*

*Seasons Hotel Ltd.*, No 10-22153-CIV, 2011 WL 4434891, at *6 (S.D. Fla. Sept. 23, 2011) (holding that where the "Plaintiffs' civil conspiracy is based on fraud, the heightened pleading standards in Rule 9(b) apply"); *Roberts v. Balasco (In re Ernie Haire Ford, Inc.)*, 459 B.R. 824 (Bankr. M.D. Fla. 2011) (finding that if the alleged wrongdoing is fraud-based, the heightened pleading requirement of Rule 9(b) must be satisfied to state a claim).

**B.    Claims Against The Banks Must Be Dismissed With Prejudice**

The sole cause of action in the Amended Complaint against EFG Capital, to which Itaú Miami (as well as other defendants), are also named, is for conspiracy to violate the Florida Uniform Fraudulent Transfers Act ("FUFTA") (count 12).  The remaining claims against Itaú Miami fall into three categories:  aiding and abetting fraud and theft (counts 3 and 10); conspiracy to defraud and commit theft (counts 2 and 9); and RICO (counts 4 and 5).  For the reasons stated below, all counts against both Banks should be dismissed with prejudice.[2]

**1.    Aiding and Abetting Fraud and Civil Theft (Counts 3 and 10 against Itaú Miami)**

Aiding and abetting requires an underlying tort; the defendant's actual knowledge of the underlying tort; and substantial assistance by the defendant to advance the commission of the underlying tort. *ZP No. 54 Ltd. P'ship v. Fid. & Deposit Co.*, 917 So. 2d 368, 373 (Fla. 5th DCA 2005).  Plaintiffs' allegations cannot, as a matter of law, satisfy any of these three elements.

*a)    There is no Underlying Tort of Fraud or Civil Theft Involving Itaú Miami*

The Amended Complaint includes no allegations that Itaú Miami acted as a primary violator in the purported fraud.  The only purported wrongful conduct by Itaú is execution of the Customer Transfers, which do not constitute a tort under Florida law.  *Beta Real Corp. v.*

---

[2] The Banks adopt and incorporate by reference the motions and arguments of all other Defendants as to Counts 2, 3, 4, 5, 9, 10 and 12.

*Graham*, 839 So. 2d 890, 891–92, 892 n. 3 (Fla. 3d DCA 2003) (creditor does not have a cause of action in tort for an alleged fraudulent transfer; instead the only relief is to undo the transfer); *Danzas Taiwan, Ltd. v. Freeman*, 868 So. 2d 537, 538 (Fla. 3d DCA 2003) (alleged fraudulent transfer does not constitute commission of a tortious act); *Brown v. Nova Info. Sys., Inc.*, 903 So. 2d 968, 969 (Fla. 5th DCA 2005) (fraudulent conveyance is not a tort; only remedy is to set aside the transfer); *Edwards v. Airline Support Grp., Inc.*, 138 So. 3d 1209, 1212 (Fla. 4th DCA 2014) (fraudulent transfer is not a tort and does not give rise to a claim for money damages); *Clement v. Lipson*, 999 So. 2d 1072, 1074–76 (Fla. 5th DCA 2008) (fraudulent transfer is not a tort); *Burris v. Green*, No. 3:12cv521-MCR-CJK, 2016 WL 5844165, at *4 (N.D. Fla. Aug. 26, 2016) (alleged fraudulent movement of assets is not a tort); *see also Freeman*, 865 So. 2d at 1277 (holding there can be no claim for damages under the fraudulent transfer act); *Crystallex Int'l Corp. v. Petróleos De Venez., S.A.*, 879 F.3d 79, 89–90 (3d Cir. 2018) (rejecting claim for aiding and abetting or conspiring to commit a fraudulent transfer).

But even if the Transfers did amount to a "tort," the allegations in the Amended Complaint are insufficient to plead the particular torts — fraud or theft — supposedly underlying the aiding and abetting claims against Itaú Miami in counts 3 and 10, respectively.   There is no false statement of fact, no reliance, and none of the other elements of a fraud alleged in the Amended Complaint.   *Finney v. Frost*, 228 So. 2d 617, 618 (Fla. 4th DCA 1969).   And the money that was allegedly improperly transferred by the Bank does not belong to Plaintiffs, so there can be no theft.   *Balcor Prop. Mgmt. v. Ahronovitz*, 634 So. 2d 277, 280 (Fla. 4th DCA 1994) (mere expectation that property could be used to satisfy judgment the plaintiff might ultimately obtain is not considered "property" that can be the subject of theft); *United States v. Bailey*, 419 F.3d 1208, 1212 (11th Cir. 2005) (no claim for civil theft where complaining party

does not have immediate right to possession of property); *Seropian v. Wachovia Bank, N.A.*, No. 10-80397-CIV, 2010 WL 2949658, *3–4 (S.D. Fla. July 26, 2010) (same; mere expectation is not enough for civil theft). Without these essential underlying torts, there can be no claim against Itaú Miami for aiding and abetting liability.

b)   *Plaintiffs do not Allege Actual Knowledge of the Alleged Fraud or Civil Theft*

Another critical, but missing, element to Plaintiffs' aiding and abetting claims is a showing that Itaú Miami had ***actual*** knowledge of the fraud or theft.  To state a cognizable aiding and abetting claim against a bank, there must be specific and detailed facts of actual knowledge.  Suspicious bank activities, atypical transactions, red flags, deviation from policies and procedures, or a close business relationship between the bank and the fraudster are insufficient to satisfy this element and courts in this Circuit have repeatedly dismissed similar claims.  *See, e.g.*, *Anderson v. Branch Banking & Tr. Co.*, No. 13-62381-CIV-ROSENBAUM/HUNT, 2014 WL 11706453, at *6–7 (S.D. Fla. May 19, 2014) (dismissing aiding and abetting claims against bank where its close business relationship with fraudster, along with red flags, atypical activities and other suspicious bank transactions did not demonstrate bank's actual knowledge that customer transactions were fraudulent);  *Isaiah v. JPMorgan Chase Bank, N.A.*, No. 16-CIV-21771, 2017 WL 5514370, at *2–3 (S.D. Fla. Nov. 14, 2017) (bank's disregard of red flags and atypical activities not sufficient to demonstrate "actual knowledge"; aiding and abetting claims dismissed); *Abel & Buchheim, P.R., Inc. v. Citibank Nat'l Ass'n*, No. 1:16-cv-24664-KMM, 2017 WL 3731002, at *2–3 (S.D. Fla. Aug. 28, 2017) (bank's knowledge of corporate resolutions and injunction order that showed third party's improper conduct did not demonstrate bank's actual knowledge that third party's bank transactions were unlawful); *Platinum Estates, Inc. v. TD Bank, N.A.*, No. 11-60670-CIV, 2012

8

WL 760791, at *3 (S.D. Fla. Mar. 7, 2012) (finding that conclusory allegations of knowledge were insufficient to state a cognizable aiding and abetting claim against bank "where the facts in the complaint only suggest the defendant should have known" about the alleged fraud).

This is so because even in the face of suspicious business transactions and "red flags," "Florida law does not require banking institutions to investigate transactions" and they will not be deemed to have actual knowledge of facts they had no duty to learn. *Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904, 907 (11th Cir. 2012) (affirming order granting motion to dismiss aiding and abetting fraud claim against bank; allegedly atypical transactions were insufficient to demonstrate that bank was on notice of alleged Ponzi scheme); *Lamm*, 749 F.3d at 950 ("Alleging that a bank disregarded 'red flags' such as 'atypical activities' on a customer's account is insufficient to establish knowledge"; bank had no duty to monitor the transactions made by authorized representative of account holder or to scrutinize the form in which transactions were submitted); *Perlman v. Wells Fargo Bank, N.A.*, 559 F. App'x 988, 993 (11th Cir. 2014) ("Florida does not require banking institutions that conduct routine banking services to investigate transactions involving its demand deposit accounts;  therefore, merely alleging that a bank should have known of a Ponzi scheme based solely on a series of purportedly atypical transactions is not sufficient to survive *Twombly*."); *Mukamal v. BMO Harris Bank N.A. (In re Palm Beach Fin. Partners, L.P.)*, 488 B.R. 758, 774 (Bankr. S.D. Fla. 2013) (no showing of actual knowledge from "should have known" allegations); *see also In re Rollaguard Sec., LLC*, 570 B.R. 859, 886 (Bankr. S.D. Fla. 2017) (bank has no duty to investigate customer transactions even where there are "red flags"); *Isaiah*, 2017 WL 5514370, at *2–3 (even if bank detected suspicious activity or disregarded red flags, it does not give rise to liability).

At the same time, blanket allegations, such as those alleged by the Plaintiffs here, that the Bank "had knowledge" are insufficient as a matter of law. *See Arbitrajes Financieros, S.A. v. Bank of Am., N.A.*, 605 F. App'x 820, 824–25 (11th Cir. 2015) (blanket allegation that the bank "had knowledge" is insufficient to plead "actual knowledge"); *Abel & Buchheim, P.R., Inc.*, 2017 WL 3731002, at *2–3 (same); *Platinum Estates, Inc.*, 2012 WL 760791, at *3 (blanket statement that bank had "actual knowledge" insufficient).

Here, the Plaintiffs allege that because Batista transferred large amounts of money among accounts he controlled, Itaú Miami purportedly "had knowledge" that he was engaged in a fraud and trying to avoid creditors. There are no allegations that the transactions were unauthorized or that anyone ever notified Itaú Miami of any fraud or that the transfers were illegal. Instead, Plaintiffs ask this Court to infer actual knowledge of a purported fraud by virtue of sizable transfers to and from a Bank customer, which this Court may not do. *See Lawrence*, 455 F. App'x at 907. Indeed, inasmuch as Batista was one of the world's richest men whose companies engaged in multi-million dollar projects for which working capital was required, these transfers among Batista-controlled accounts were neither suspicious nor atypical, much less indicative of any actual knowledge by Itaú Miami of an underlying fraud.

Compare the bare-boned knowledge allegations in this case with those in *Anderson*. There, plaintiffs alleged that (a) they entered into agreements with the financial management company Pro Sports, which had a close business relationship with Bank Atlantic; (b) millions of dollars of plaintiffs' money was deposited into accounts at Bank Atlantic which had a special service division dedicated to plaintiffs' accounts and (c) the bank had copies of the plaintiffs' client services agreement, and thus would know whether transactions were authorized and within the scope of the investment and bank relationship. *See Anderson*, 2014 WL 11706453, at *7.

10

Ultimately Pro Sports stole the plaintiffs' money, through unauthorized bank transactions and illegal investments. *Id.* at *3, *7. Plaintiffs sued Bank Atlantic for aiding and abetting the fraud, alleging the bank had actual knowledge of the fraud and helped to facilitate it. *Id.* at *6–7. To that end, plaintiffs argued that "actual knowledge is shown by the allegations that Bank Atlantic had a close business relationship with Pro Sports, Bank Atlantic knew that the accounts were to be used 'strictly for concierge or bill pay services' and that Pro Sports was withdrawing the money for other purposes, Bank Atlantic had documentation that showed that the Pro Sports employees who opened the [accounts] were not the . . . Plaintiffs, Bank Atlantic knew that Pro Sports directed the account statements to be delivered to Pro Sports instead of to Plaintiffs, Bank Atlantic received transfer requests from Pro Sports employees who were not attorneys in fact on the accounts, and Bank Atlantic knew that Pro Sports requested to open the power-of-attorney accounts without providing powers of attorney for all the accounts." *Id.* at *7. The court, however, found these allegations insufficient to establish the bank's "actual knowledge" of the fraud. *Id.* (dismissing aiding and abetting claims).

Plaintiffs' allegations in the present case regarding Itaú Miami's supposed knowledge of an underlying fraud are far less specific than those that were rejected in *Anderson.* The blanket allegations in the Amended Complaint therefore fail to demonstrate the necessary actual knowledge of a fraud or theft to state an aiding and abetting claim against the Bank. *See also Lawrence*, 455 F. App'x at 907 (rejecting argument that allegations that bank authorized numerous deposits, withdrawals and wire transfers involving large sums of money from which bank representatives received substantial commissions were sufficient to allege actual knowledge of bank in Ponzi scheme involving bank accounts).

Nor do the allegations in the Amended Complaint of purported knowledge by non-party Itaú banks in Brazil and Nassau carry the day.  According to the Plaintiffs, these non-party banks were supposedly made aware of the purported fraud by Batista as a result of sizable loans they made to him.  This allegation is simply implausible — it would have been nonsensical for the non-party Itaú banks to have made large loans to Batista or his entities if, as Plaintiffs claim, the non-party banks knew he was a fraudster who intended to hide his ill-gotten gains away from them and other creditors.  *Lawrence*, 455 F. App'x at 907.  But even assuming *arguendo* that the non-party Itaú banks knew of the alleged fraud, they are separate and distinct legal entities whose conduct and knowledge cannot be imputed to Itaú Miami as a matter of law.  *See Am. Int'l Grp., Inc. v. Cornerstone Businesses, Inc.*, 872 So. 2d 333, 336 (Fla. 2d DCA 2004) (conduct of parent or subsidiary cannot be imputed to another distinct corporate entity); *Molenda v. Hoechst Celanese Corp.*, 60 F. Supp. 2d 1294, 1300–01 (S.D. Fla. 1999) (holding that under Florida law, subsidiary and related companies are separate legal entities and the corporate form cannot be disregarded; defendant could not be liable for acts of employees of related Brazilian and Colombian entities); *Ordonez v. Chubb & Son, Inc.*, No. 11-24552-CIV-GRAHAM, 2012 WL 13014694, at *2 (S.D. Fla. Feb. 9, 2012) (separate corporations must be treated separately and are not liable for the acts of the other); *Reynolds Am., Inc. v. Gero*, 56 So. 3d 117, 120 (Fla. 3d DCA 2011) (parent is not liable for the acts of its subsidiary and the corollary is true; the same is also true as to sister subsidiaries).  Plaintiffs' imputation allegations do not create a plausible inference of actual knowledge by Itaú Miami.

> c)  *Plaintiffs Cannot Allege That the Bank Engaged in Substantial Assistance of the Alleged Fraud or Civil Theft*

In essence, the Plaintiffs fault Itaú Miami for failing to stop the purported fraudulent transactions.  However, such inaction constitutes substantial assistance only if the bank had some

**duty** to protect the Plaintiffs from the underlying wrongdoing. *ZP No. 54 Ltd. P'ship*, 917 So. 2d at 373 (there can be no substantial assistance for purposes of aiding and abetting in Florida where defendant owes no duty to plaintiff); *Platinum Estates, Inc.*, 2012 WL 760791, at *4 (holding that there could be no substantial assistance of fraud where defendant had no duty to disclose alleged fraud to plaintiff and granting defendant bank's motion to dismiss claim of aiding and abetting); *Groom v. Bank of Am.*, No.8:08-cv-2567-JDW-EAJ, 2012 WL 50250, at *4 (M.D. Fla. Jan. 9, 2012) ("[A]n allegation of the 'failure to act, absent a duty to act, is not substantial assistance.'"); *see also TransPetrol, Ltd. v. Radulovic*, 764 So. 2d 878, 880 (Fla. 4th DCA 2000) (explaining that there can be no liability for "participating" in a fraud where defendants had no confidential, contractual or fiduciary relationship with plaintiff and thus had no duty).

Under Florida law, a bank owes no duty to non-customers regarding the maintenance of a customer's account. *See Megaval Enters., Ltd.*, 2014 WL 12609318, at *4 (bank owes no duty to non-customers); *Carl v. Republic Sec. Bank*, 282 F. Supp. 2d 1358, 1372 (S.D. Fla. 2003) (same); *Sroka v. Bank*, No. 2006-CA-001117, 2006 WL 2535656, at *1 (Fla. Cir. Ct. Aug. 31, 2006) (same). Nor do banks owe "non-customers a duty to protect them from fraud perpetrated by customers." *See Megaval*, 2014 WL 12609318, at *4; *O'Halloran v. First Union Nat'l Bank of Fla.*, 205 F. Supp. 2d 1296, 1302 (M.D. Fla. 2002) (same); *MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 431 F. App'x 17 (2d Cir. 2011) (same); *Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 224–27 (4th Cir. 2002) (same).

Thus, without any such duty, there can be no showing of the necessary substantial assistance element to state an aiding and abetting claim. *ZP No. 54 Ltd. P'ship*, 917 So. 2d at 373; *Platinum Estates, Inc.*, 2012 WL 760791, at *4.[3]

### 2. Conspiracy to Defraud and Commit Theft (Counts 2 and 9 against Itaú Miami).

In Florida, "[a] civil conspiracy requires: (a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to the plaintiff as a result of the acts done under the conspiracy." *Eagletech Commc'ns, Inc. v. Bryn Mawr Inv. Grp., Inc.*, 79 So. 3d 855, 863 (Fla. 4th DCA 2012) (internal citations and quotations omitted). In addition, a "claim for civil conspiracy requires the existence of an underlying tort." *In re Ernie Haire Ford*, 459 B.R. at 840; *see also In re Gosman*, No. 01-30953-BKC-SHF, 2007 WL 776262, at *3 (Bankr. S.D. Fla. Mar. 9, 2007) (dismissing conspiracy to defraud creditors and conspiracy to commit fraudulent asset conversion claims because "the underlying factual basis advanced by the Plaintiff" — aiding and abetting of fraudulent transfers — "does not create a cause of action" under Florida law). "General allegations of conspiracy are inadequate." *Corbett v. Transp. Sec. Admin.*, 968 F. Supp. 2d 1171, 1190 (S.D. Fla. 2012) (quoting *Eagletech*). Instead, any such purported claim,

---

[3] Instead of owing a duty to stop the Customer Transfers because of Plaintiffs' speculative claim to the funds, Itaú Miami was actually required to honor its customers' transfer directives. *See* Fla. Stat. §655.83 (providing that bank is not obligated to recognize any adverse claim to funds in an account unless the party making the claim "procures a restraining order, injunction, or other appropriate process having specific application to the institution issued by a court of competent jurisdiction" or "[o]btains in favor of the institution . . . a bond indemnifying the institution form any and all liability . . . should it act to give effect to the adverse claim."; *see also Barnett Bank of Jacksonville, N.A. v. Jacksonville Nat'l Bank*, 457 So. 2d 535, 538 (Fla. 1st DCA 1984) (purpose of §655.83 is to relieve banks from having to decide, at their peril, whether an adverse claim is valid and, further, to protect banks against financial responsibility for making the wrong determination).

"must set forth clear, positive and specific allegations of civil conspiracy." *Id.* (quoting *Eagletech*).

The acts underlying the conspiracy claims against Itaú Miami in count 2 and 9 fail for the same reasons as those involving the aiding and abetting claims: there is no cognizable tort underlying the purported conspiracy.   Because there is no actionable wrong underlying Plaintiffs' conspiracy claims, these claims "ha[ve] no leg . . . to stand on." *Rebman v. Follett Higher Educ. Grp., Inc.*, 575 F. Supp. 2d 1272, 1280 (M.D. Fla. 2008) (under Florida law, where underlying claims have been dismissed, civil conspiracy claim "has no leg left to stand on"); *Rivers v. Dillards Dep't Store*, 698 So. 2d 1328, 1333 (Fla. 1st DCA 1997) ("since all the underlying claims failed, there could be no conspiracy"); *Romero v. Campoamor Modern Dairy, Inc.*, 133 So. 2d 570, 570 (Fla. 2d DCA 1961) (where complaint fails to allege an actionable wrong, civil conspiracy claim must be dismissed); *Balcor Prop. Mgmt.*, 634 So. 2d at 280 (plaintiff could not prove conspiracy claim where he could not sustain underlying claim).

Moreover, the conspiracy allegations against Itaú Miami also fall short of the particularity pleading requirements necessary to state a civil conspiracy claim.   The Amended Complaint fails to specify the Bank's supposed role in the conspiracy and includes only conclusory allegations reciting the elements of a conspiracy that do not satisfy *Twombly's* plausibility standard, much less the heightened pleading requirement of Rule 9(b).  *See, e.g.*, *Iqbal*, 556 U.S. at 679 (holding that in deciding a motion to dismiss, court is not obligated to accept conclusory allegations, unwarranted factual deductions, or legal conclusions masquerading as facts;  *Eagletech*, 79 So. 3d at 862–63 (rejecting fraud-based claims which lumped all defendants together and did not specify role played by each); *Pettinga v. Metabolic*

*Research Inst., Inc.*, No. 13-CV-80077-RYSKAMP/HOPKINS, 2013 WL 12084991, at *2 (S.D. Fla. Aug. 21, 2013) (dismissing conspiracy claim); *Cottam v. City of Wildwood*, No. 5:16-cv-413-Oc-30PRL, 2017 WL 119736, at *6 (M.D. Fla. Jan. 12, 2017) (same).

The allegations underlying the conspiracy claims are also insufficient because they include no well-pled facts demonstrating an ***agreement*** between Itaú Miami and any other defendant to engage in any unlawful act.  The unlawful act that purportedly caused Plaintiffs' investment losses was the supposed core fraud involving the OGX Bond Sales, which Itaú Miami had nothing to do with and which is not attributable to it.  Moreover, as explained above, there has been no showing that Itaú Miami actually knew of any wrongdoing by Batista or his cohorts, much less that it affirmatively agreed to participate in a conspiracy of which it was unaware.  Certainly if Itaú Miami had formed an "agreement," as is alleged, Plaintiffs would have been able to list at least some such communications.  But not once in the Amended Complaint do they identify any specific communication between Itaú Miami and any of the alleged co-conspirators, nor do they provide any of the other requisite particulars for stating a civil conspiracy.  *Corbett*, 968 F. Supp. 2d at 1191 (granting motion to dismiss civil conspiracy claim where allegations were "too nonspecific and insufficient to sustain any inference that [the defendants] reached an agreement to act unlawfully"); *Cottam*, 2017 WL 119736, at *6 (dismissing conspiracy claim with prejudice).

Tellingly, Plaintiffs admit that they do not know the specifics of the alleged conspiracies and that they hope to uncover, through later discovery, some facts that might help to substantiate their claims.  *See, e.g.*, Am. Compl. ¶ 605 ("The foregoing Defendants, in ways, upon dates, and in places that are unknown before discovery, beyond what is set forth above, conspired with BATISTA and others among themselves, to make fraudulent transfers of assets, cash, and

property"); *Id.* ¶ 608 ("[U]pon information and belief, [the Banks] . . . and other Defendants <u>as discovery may reveal</u>, agreed and conspired together to defraud creditors by assisting in the transfer of funds out of accounts held in their names to accounts in other names at BANCO ITAÚ MIAMI and further to accounts outside Florida . . ."). But the viability of the conspiracy claims must rise or fall, not on what Plaintiffs hope to uncover in a later discovery fishing expedition, but rather on what is pleaded in the Amended Complaint. *See Special Purpose Accounts Receivable Coop. Corp. v. Prime One Cap. Co., L.L.C.*, No. 00-06410-CIV, 2008 WL 2245726, at *2 (S.D. Fla. May 29, 2008) (rejecting plaintiffs' attempt "to pursue discovery to find out if a fraudulent transfer claim exists" and noting that "the purpose of discovery is to find out additional facts about a well-pleaded claim, not to find out whether such a claim exists."). The conclusory allegations in the operative complaint do not support any cognizable claim for conspiracy and, therefore, should be dismissed as a matter of law.

### 3.      RICO and RICO Conspiracy (Counts 4 and 5 against Itaú Miami)

The RICO claims require allegations demonstrating that Itaú Miami engaged in a pattern of criminal activity and that Plaintiffs were injured by reason of that activity. *Ginsberg v. Lennar Fla. Holdings, Inc.*, 645 So. 2d 490, 501 (Fla. 3d DCA 1994). Accordingly, Florida's RICO "simply cannot apply where there has been no criminal activity." *Id.* These claims, like the other fraud-based claims, also fail to satisfy the stringent pleading requirements many courts require before plaintiffs can assert such serious allegations predicated on criminal acts.

#### a)      *Plaintiffs Cannot Allege Predicate Criminal Acts as to Itaú Miami*

In purely conclusory fashion, Plaintiffs allege that Itaú Miami engaged in three predicate acts: federal wire fraud, Florida communications fraud and money laundering.[4]

---

[4] Plaintiffs do not allege that Itaú Miami participated in the three other purported predicate acts — securities fraud, false advertising, or theft. *See* Am. Compl. ¶¶ 556–58, 561–62.

Federal wire fraud:  "[W]ire fraud occurs when a person (1) intentionally participates in a scheme to defraud another of money or property and (2) uses the mails or wires in furtherance of that scheme."  *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010).

Florida communications fraud:  Florida communications fraud occurs when a person "engages in a scheme to defraud" and either (a) "obtains property thereby" or (b) "communicates with [a] person with the intent to obtain property from that person."  Fla. Stat. § 817.034(4).

Federal money laundering:  Money laundering occurs when a person "knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity," and does so either in the United States or being a "United States person," 18 U.S.C. § 1957(a), (d).

Plaintiffs provide no factual allegations to establish any of these acts as to Itaú Miami. There are no allegations of any wire or communications fraud as to the Bank.  The only fraud alleged in the Amended Complaint (*i.e.*, a false statement of fact) was in connection with the OGX Bond Sales and Itaú Miami is not alleged to have had anything to do with those bond sales. The money laundering allegations are conclusory and apparently based on the Customer Transfers which do not constitute an actionable tort under Florida or federal law.  And the Bank had no duty to take action to protect the Plaintiffs from the Transfers.  Also, as we explain *infra* (Section III.B.4.(a)), the Bank never had title to, nor control over, any of the transferred funds.

Additionally, each of the three predicate acts alleged against Itaú Miami requires a showing of criminal intent.  Am. Compl. ¶¶ 559, 560, 563.  Because, as explained in Section II.A(2) above, there are no well-plead facts demonstrating that Itaú Miami actually knew about the purported OGX Bond Sales fraud or any plan by Batista or others to secret money away from creditors, the Bank could not possibly have acted with the necessary criminal intent for any of

the alleged predicate acts and Plaintiffs' RICO claims fail as a matter of law.  *See Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1068 (11th Cir. 2007) (RICO claim fails where alleged predicate acts are not actionable); *Betts v. Advance Am*, 213 F.R.D. 466, 482 (M.D. Fla. 2003) (dismissing Florida RICO claim where the underlying transactions "were not unlawful and thus cannot serve as predicate acts under RICO"); *Ginsberg*, 645 So. 2d at 501–02 (dismissing Florida RICO and conspiracy claims where "there has been no criminal activity"); *Sullivan & Long, Inc. v. Scattered Corp.*, 47 F.3d 857, 864 (7th Cir. 1995) (dismissing RICO after concluding that short selling activities alleged were not illegal).  Moreover, there are no allegations that Itaú Miami had any connection with the OGX Bond Sales.  The alleged predicate acts, therefore, are insufficient to sustain a RICO claim against the Bank.

> b)      *Plaintiffs Lack Standing to Bring a RICO Claim Because They Suffered no Direct Injury from the Acts of Itaú Miami*

Plaintiffs lack standing to bring a RICO claim.  The test for pursuing a civil RICO claim entails two requirements.  Fla. Stat. §772.104(1) ("Any person who proves . . . that he or she has been injured by reason of any violation of the provisions of §772.103 shall have a [civil] cause of action [for a RICO violation]").  The plaintiff must have suffered a tangible, non-speculative injury.  *See Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 279 (1992) (holding that RICO civil remedies are available only "to those who have suffered injury in fact"); *Price v. Pinnacle Brands*, 138 F.3d 602, 607 (5th Cir. 1998) ("Injury to mere expectancy interests or to an 'intangible property interest' is not sufficient to confer RICO standing.").[5]   And the plaintiff must establish that his injury was proximately caused by the defendant.  *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1349 (11th Cir. 2016) ("[P]leading a civil RICO claim requires that

---

[5] Because of the similarities between Florida and federal RICO statutes, Florida courts look to federal authority and should accord it "great weight" when interpreting and applying the state statute.  *O'Malley v. St. Thomas Univ.*, 599 So. 2d 999, 1000 (Fla. 3d DCA 1992).

plaintiffs plead facts sufficient to give rise to a reasonable inference that the claimed racketeering

activity . . . was the but-for *and* proximate cause of the plaintiffs' injuries").

   This requirement necessitates a showing that the alleged injury was directly caused by the

defendant's challenged conduct.  *Id.* ("The connection between the racketeering activity and the

injury can be neither remote, purely contingent, nor indirect."); *Virdis Corp. v. TCA Glob. Credit

Master Fund LP*, 155 F. Supp. 3d 1344, 1355 (S.D. Fla. 2015) ("In considering whether a

plaintiff has sufficiently pleaded proximate cause, the central question that [the court] must ask is

whether the alleged violation led directly to the plaintiff's injuries . . . . Thus, proximate

causation requires some direct relation between the injury asserted and the injurious conduct

alleged."); *Joseph v. Bernstein*, No. 13-24355-CIV, 2014 WL 4101392, at *7 (S.D. Fla. Aug. 19,

2014) ("Proximate cause requires some direct relation between the injury asserted and injurious

conduct alleged. A link that is too remote, purely contingent or indirect is insufficient.") (internal

quotation marks and citation omitted).

   Here, Plaintiffs have failed altogether to allege any non-speculative injury that was

caused by Itaú Miami.  The Amended Complaint infers that as a result of the challenged money

transfers flowing through the Bank, the ill-gotten funds obtained by Batista and his co-

conspirators were secreted to foreign  jurisdictions and will be unavailable if Plaintiffs were ever

to obtain a judgment against them.  Such a contingent, unrealized potential injury, however, is

insufficient to confer RICO standing.  *See Levitan v. Patti*, No. 3:09cv321/MCR/MD, 2011 WL

1299947, at *14 (N.D. Fla. Feb. 8, 2011) (rejecting RICO claim premised on "future harm of a

speculative judgment"; allegations that defendants improperly "transferred deeds and mortgages

to hide assets" and, thereby avoid paying any future judgment against them amounted to "threat

of future injury" that was "unquantifiable" and did not satisfy RICO injury requirement) (*adopted by* 2011 WL 1215364 (N.D. Fla. Mar. 31, 2011)).

Moreover, the only concrete injury allegedly suffered by Plaintiffs — the loss in value of their investment in OGX — was caused by purported misrepresentations in the OGX Bond Sales, which the Plaintiffs have not, and cannot, attribute to Itaú Miami.  This failure to plead any injury in fact that was directly caused by Itaú Miami independently deprives them of RICO standing and requires the dismissal with prejudice of Counts 4 and 5 against Itaú Miami.  *See Viridis Corp.*, 155 F. Supp. 2d at 1357 (granting motion to dismiss civil RICO claim for lack of standing where alleged injury was indirect and attenuated); *Levitan*, 2011 WL 1299947, at *15 (recommending dismissal of RICO claims because "[t]here is no nexus between an injury based on a fraudulent contract and the conduct of using interstate wires to transfer assets out of defendants' control . . . The activity related to that injury is the fraud in the contract itself, not the transfer . . .") (*adopted by* 2011 WL 1215364 (N.D. Fla. Mar. 31, 2011)); *O'Malley v. St. Thomas Univ.*, 599 So. 2d 999, 1000 (Fla. 3d DCA 1992) (holding that "indirect injuries, that is, injuries sustained not as a direct result of predicate acts . . . will not allow recovery under Florida RICO").

### 4.    Conspiracy to Violate FUFTA (Count 12 against Itaú Miami and EFG Capital)

Count 12 attempts to plead a conspiracy to violate the Florida statute, FUFTA.  That statute gives creditors (or would-be creditors like Plaintiffs) the right to sue a transferee who has received a wrongful transfer and force disgorgement of that transfer.  Count 12 fails to state a claim against the Banks for the following reasons:  First, the Florida Supreme Court in *Freeman* found there is no cause of action under FUFTA for independent torts unless set out in the statute.  Second, the transfers to and from Batista's accounts or those he allegedly controlled are not

transfers under FUFTA.   Third, there is no civil private right of action against financial institutions for money laundering.   Fourth, Plaintiffs' vague and generalized conspiracy allegations fail to satisfy the bare minimum of pleading requirements.

> a)      *No Private Cause of Action Under FUFTA Against a Non-Transferee*

Numerous courts, including Florida's Supreme Court, have held that FUFTA does not create a private cause of action for money damages against non-transferee parties, like the Banks here, who allegedly assisted others, and/or conspired with them, to make fraudulent transfers. *See, e.g.*, *Freeman*, 865 So. 2d at 1277 (holding that FUFTA does not create a cause of action against a non-transferee bank for aiding and abetting a fraudulent transfer); *Danzas Taiwan, Ltd.*, 868 So. 2d at 538 (there is no tort cause of action for conspiracy to engage in a fraudulent transfer); *Super Vision Int'l, Inc. v. Mega Int'l Commercial Bank Co., Ltd.*, 534 F. Supp. 2d 1326, 1344 (S.D. Fla. 2008) ("Under Florida law, there is no cause of action under the FUFTA against a party who assists or aids and abets a fraudulent transfer, where that party does not come into possession of the property."); *Groom*, 2012 WL 50250, at *6 (granting motion to dismiss because "Florida law does not permit a claim for aiding and abetting a violation of the Uniform Fraudulent Transfer Act."); *see also Crystallex Int'l Corp.*, 879 F.3d at 89 (statutory fraudulent transfer claim "based on a theory of non-principal liability is not cognizable under the statute").

In analyzing the legislative intent and the plain language of FUFTA, the Florida Supreme Court found that the remedies for fraudulent transfers were limited to those expressly enumerated in the Act, such as the setting aside of fraudulent transfers, and that the Act did not provide for "an independent tort for damages."   *Freeman*, 865 So. 2d at 1277.   Specifically, the Court held "that FUFTA was not intended to serve as a vehicle by which a creditor may bring suit against a non-transferee party . . .  for monetary damages arising from the non-transferee

party's alleged aiding-abetting of a fraudulent money transfer." *Id.*  The Court concluded that to hold otherwise and allow creditors to assert independent tort claims for damages arising from fraudulent transfers "would be to expand the FUFTA beyond its facial application and in a manner that is outside the purpose and plain language of the statute." *Id*.

To the extent there was any doubt regarding whether the broad holding in *Freeman* extended to bar claims for conspiracy to commit fraudulent transfers, it was eliminated by *In re Ernie Haire Ford, Inc.*, wherein the court expressly held that "Florida law does not recognize a cause of action against a non-transferee for conspiracy to commit a fraudulent transfer."  459 B.R. at 841; *see also Danzas Taiwan, Ltd.*, 868 So. 2d at 538 (rejecting claim for conspiracy to commit fraudulent transfers against non-transferee freight forwarder).  In *In re Ernie Haire Ford,* the court analyzed *Freeman*'s holding that FUFTA "was limited to setting aside fraudulent transfers, and did not serve to create distinct causes of actions for damages against non-transferees."  459 B.R. at 841.  In so doing, the court found that, although the claim at issue in *Freeman* was for aiding and abetting fraudulent transfers, *Freeman*'s holding, that independent tort claims are not countenanced under FUFTA, applied to bar claims against non-transferees for conspiracy to commit fraudulent transfers.  *Id*. at 841–42.  In addition, the court found that because a civil conspiracy claim requires a viable underlying tort, there could be no claim for conspiracy unless "[t]he underlying tort . . . [is] recognized by Florida law." *Id.* at 842.

Based on *Freeman* and its progeny, the Banks are non-transferees which simply carried out their customers' account directives and cannot be held liable for an independent tort — conspiracy to commit fraudulent transfers —  that is non-existent under FUFTA.  It is well settled that a financial institution which receives money solely as a deposit does not exercise actual control of those funds and, therefore, is not a transferee for fraudulent transfer purposes.

*See In re Chase & Sanborn Corp.*, 848 F.2d 1196, 1200 (11th Cir. 1988) (holding that "[w]hen banks receive money for the sole purpose of depositing it into a customer's account . . . the bank never has actual control of the funds and is not a . . . transferee."); *Super Vision Int'l*,  534 F. Supp. 2d at 1344 (dismissing claim against a bank which allegedly assisted or aided and abetted a fraudulent transfer in violation of FUFTA by accepting transfers of customer's funds into its account because the bank was, at best, a mere conduit and was not the intended recipient of the transferred funds); *In re Rollaguard Sec., LLC*, 570 B.R. at 875 ("The Eleventh Circuit has repeatedly pointed to the depository bank as the ultimate example of a conduit for purposes of transferee analysis."); *In re Colombian Coffee Co., Inc.*, 75 B.R. 177, 179 (Bankr. S.D. Fla. 1987) ("[I]t would be both problematical and preposterous were courts" to find a bank a transferee for fraudulent transfer purposes when the bank "possessed no discretion with respect to the disposition of the funds – it was constrained to follow the debtor's instructions."); *see also Isaiah*, 2017 WL 5514370, at *2 ("There does not appear to be any set of facts that could support a FUFTA claim against a bank, particularly if that bank was only providing routine banking services to an alleged FUFTA debtor and not taking control and dominion over the funds in question.").

That is exactly what the Banks did here — they followed their customers' directives regarding the transfer of funds but did not take control over any such funds.  The Amended Complaint does not allege otherwise.  Nowhere in the Amended Complaint is there any allegation that the Banks had title to or control over any of those funds.  On the contrary, the Amended Complaint alleges that others did.  *See, e.g.*, Am. Compl. ¶ 586 ("The funds were received into the MAGNO PL trust account which was owned and controlled by MAGNO and over which he had a responsibility as trustee to his firm's clients."); *id.* ¶ 590 ("As trustee [of the

24

Batista Family Trust] BERTO was vested with legal title to the funds placed in his name and was a transferee."). Because the Banks never exercised control over the funds at issue, they are non-transferees against which an independent tort for a purported violation of FUFTA, such as Count 12 here, cannot be maintained.[6] *See Freeman*, 865 So. 2d at 1277.

b)  *Transactions Between Batista and his Entities' Accounts are not "Transfers' Under FUFTA*

It is axiomatic that there can be no secondary claim founded upon a purported violation of FUFTA — such as the conspiracy claim raised in Count 12 here — unless there is a showing that the challenged transactions were "transfers" as defined in FUFTA. Section 726.102(14) of the Florida Statutes provides that a "transfer" occurs only if the creditor's assets have been "dispos[ed] of or part[ed] with." Plaintiffs' own allegations make it clear that many of transactions they challenge are not transfers under FUFTA. Given the allegations in the Amended Complaint that Batista controlled 63X Master Fund, the source of funding for the Batista Family Trust account, as well as several of the other entities involved in the challenged transactions, he or those he controlled never relinquished control over funds the Plaintiffs contend were wrongfully transferred by the Banks. *See Wiand v. Wells Fargo Bank, N.A.*, 86 F. Supp. 3d 1316, 1328–29 (M.D. Fla. 2015). Thus, the majority of transactions Plaintiffs challenge are not actionable under FUFTA and cannot support any conspiracy to violate FUFTA against the Banks, because Batista, who was essentially round-tripping the funds to and from

---

[6] To try to sidestep the direct authority gutting their conspiracy to violate FUFTA claims, Plaintiff may try to recast Count 12 from a conspiracy claim based on the FUFTA statute (as they pled it) to a common law conspiracy claim (which they did not plead). Such a change in tack will prove futile. As we have explained in more detail *supra* at Section III.B.1(a), an alleged fraudulent transfer, regardless of the label, is not a tort and does not give rise to a claim for money damages. Instead, the creditor's remedy is limited to avoidance of the transfer.

himself (and the entities he controlled), never disposed of or parted with the funds.[7] *See Wiand*, 86 F. Supp. 3d at 1329 (holding that movement of funds between the alleged mastermind of a Ponzi scheme and entities he controlled were not fraudulent transfers under FUFTA because he never disposed of or parted with the funds.); *In re Rollaguard*, 570 B.R. at 872–73 (holding that "Debtors were not disposing of or parting with the funds [when they made deposits in their own bank accounts], and so no avoidable transfers took place."); *Isaiah*, 2017 WL 5514370, at *2 (dismissing FUFTA claims for failure to "allege that a FUFTA transfer took place" where "the only entities alleged to have controlled the assets were the Ponzi Schemers themselves"). Because there was no underlying transfer of funds as defined by FUFTA for these challenged Customer Transfers, there can be no claim against the Banks for conspiring to commit them.

c)      *No Private Cause of Action for Money Laundering*

Additionally, in Count 12 and throughout the Amended Complaint, Plaintiffs contend the Banks are guilty of money laundering for facilitating the Customer Transfers. For example, the Amended Complaint faults EFG Capital for opening the Batista Family Trust account and suggests that if EFG Capital had followed applicable anti-money laundering ("AML")

---

[7] All of the purportedly fraudulent transfers alleged in Paragraphs 154(f)-(h), 395 and 396 of the Amended Complaint were executed between Batista entities. Two transfers (395(a) and (g)) were made out of Batista's 63X Master Fund accounts at Itaú to "TMF," purportedly the group of financial advisors known as TMF Consultoria Financeira, Ltda., that Plaintiffs state acted as an internal money management "family office" and was controlled by Batista. Am. Compl. ¶ 141. Four transfers noted in paragraph 395 (395(b)-(e)) were made out of Itaú to accounts at various institutions in the name of 63(X) Master Fund, which was indisputably controlled by Batista. *See* Am. Compl. ¶¶ 74, 135. Several other transfers were made out of Itaú Miami to Aux accounts (195(h), 395(f), (k), & (l)). The AUX companies were also Batista owned or controlled. *See* Am. Compl. ¶¶ 74, 135. Other transfers (395(h)-(j)) & (n) were made to bank accounts purportedly belonging to Centennial entities, similarly controlled by Batista. (195(f), 395(g)-(j), (n). One transfer, (395(m)), was made to an account held by Thor Batista, Eike's son. The four transfers alleged in Paragraph 396 were also made from Batista controlled accounts in the Cayman Islands (Centennial and 63X Master Fund) directly to other Batista controlled accounts at Itaú Miami (Centennial and Aux LLC).

regulations it would not have opened the account that was allegedly used to defraud creditors and those, like the Plaintiffs, who hope to obtain a judgment against Batista and his accomplices. *See* Am. Compl. ¶ 162 ("[N]o bank in the US that actually followed its Know Your Customer rules and the law" would have opened the new account because "Batista and his associates were radioactive in banking circles" and should have set off money laundering concerns). The Amended Complaint further alleges that, having onboarded the new account in purported disregard of its AML duties, EFG Capital is liable to Plaintiffs for civil damages for assisting Batista and his accomplices in money laundering. Similarly, the Amended Complaint seeks to impose civil liability against Itaú Miami for its acceptance of deposits into customer accounts in Miami and its fulfillment of customer transfer requests — actions which Plaintiffs also improperly characterize as money laundering. *See* Am. Compl. ¶¶ 159–60, 604.

However, even assuming Plaintiffs are correct that the Banks' activities amount to money laundering (which they do not), there is no civil remedy for any such conduct. Although couched otherwise, the conclusory allegations of money laundering scattered throughout the Amended Complaint are nothing more than a thinly disguised attempt to state a private cause of action for purported violations of federal criminal laws and banking regulations, including the Bank Secrecy Act,[8] that are enforceable by the government, not private citizens. Indeed, "it is now well settled that the anti-money-laundering obligations of banks, as established by the Bank

---

[8] The Bank Secrecy Act, 31 U.S.C. §5311 *et seq.*, and its implementing regulations at 31 C.F.R. Chapter X, govern AML compliance and require financial institutions to have policies and procedures in place to attempt to counter money laundering and to report suspicious activity to the government. *See Spitzer Mgmt., Inc. v. Interactive Brokers*, No. 1:13 CV 2184, 2013 WL 6827945, at *2 (N.D. Ohio Dec. 20, 2013) ("[T]he Bank Secrecy Act obligate[s] financial institutions to monitor their accounts for suspicious activity indicative of money laundering and other criminal or terrorist activities" and to report any such activity to the government); *Bottom v. Bailey*, 767 S.E. 2d 883, 888 (N.C. Ct. App. 2014) ("[T]he purpose of the Bank Secrecy Act is to require banks to produce reports where they may be of value in federal criminal investigations.").

Secrecy Act, obligate banks to report certain customer activity to the government but do not create a private cause of action permitting third parties to sue for violations of the statute." *El Camino Res., Ltd. v. Huntington Nat'l Bank, Inc.*, 722 F. Supp. 2d 875, 923 (W.D. Mich. 2010) *aff'd*, 712 F.3d 917 (6th Cir. 2013); *see also SFS Check, LLC v. First Bank of Del.*, 990 F. Supp. 2d 762, 775 (E.D. Mich. 2013) (denying leave to file amended complaint as futile because there is no private right of action under the Bank Secrecy Act and the "essence of the Plaintiff's . . . claim is that [the bank] carelessly allowed an account to be opened" without the proper due diligence required under the Act); *Public Serv. Co. of Okla. v. A Plus, Inc.*, No. CIV-10-651-D, 2011 WL 3329181, at *8 (W.D. Okla. Aug. 2, 2011) ("Courts have repeatedly rejected . . . claims based on a bank's duty arising under the [Bank Secrecy] Act, concluding a bank's duty created by the Act is owed <u>only</u> to the government and not to private parties.") (emphasis in original); *Wiand*, 86 F. Supp. 3d at 1322 (recognizing there is "no private cause of action under Bank Secrecy Act").  Contrary to Plaintiffs' theory here, there is simply "no private cause of action for money laundering or for aiding and abetting money laundering." *El Camino Res., Ltd.*, 722 F. Supp. 2d at 923.

Plaintiffs, who were not customers of either of the Banks and thus were owed no duty by them, and who, in essence, seek to act as private prosecutors, have no private cause of action against the Banks for any such violations.  *See El Camino Res., Ltd.*, 722 F. Supp. 2d at 923 ("If the [Bank] did violate its obligations under the Bank Secrecy Act, it may be accountable to the United States government for its failures, but no duty arises to plaintiffs for any such failure."); *Spitzer Mgmt., Inc.*, 2013 WL 6827945, at *2 (rejecting plaintiffs' claim that they may sue to enforce a duty owed to the United States under the Bank Secrecy Act); *Wiand*, 86 F. Supp. 3d at 1322 ("To the extent federal banking statutes such as the Bank Secrecy Act impose duties on

banks, those duties extend to the United States, not a bank's customers."). Consequently, any allegations of money laundering in Count 12 and elsewhere in the Amended Complaint are insufficient to give rise to any private cause of action against the Banks.

d)      *Conspiracy Allegations are Non-Specific, Conclusory and Insufficient*

The allegations underlying the conspiracy to violate FUFTA claims against the Banks are also insufficient for the same lack of particularity as noted *supra* in Section II.B.  Plaintiffs' allegations are simply too conclusory and insufficient to sustain a plausible inference that either of the Banks agreed to participate in a fraud of any kind.[9]  Without this and the other requisite elements of a conspiracy, Count 12 fails as a matter of law.

Based on the foregoing, EFG Capital and Itaú Miami request that all counts against them be dismissed with prejudice.

Respectfully submitted this 2nd day of February, 2018.

HOLLAND & KNIGHT LLP
701 Brickell Avenue
Suite 3300
Miami, Florida 33131
Tel:  305-384-8500
Fax: 305-789-7799

By: s/ Tracy A. Nichols
        Tracy A. Nichols, Esq.
        Florida Bar No.: 454567
        tracy.nichols@hklaw.com
        Jose A Casal, Esq.
        Florida Bar No.: 767522

---

[9] The Amended Complaint insinuates that both Itaú Miami and EFG Capital should have been aware of "red flags" had they conducted the appropriate customer due diligence.  Am. Compl. ¶¶ 158–59, 162–63.  But, as discussed *supra* (Section III.B.4.(c)), the Banks had no duty to the non-customer Plaintiffs to conduct any due diligence, investigate red flags or react to suspicious or atypical activities, so Plaintiffs' constructive agreement theory is insufficient to demonstrate that the Banks ***agreed*** to assist the Batista defendants in a purported fraud of which they had no knowledge.

Jose.Casal@hklaw.com
Louise McAlpin, Esq.
Florida Bar No.: 983810
Louise.mcalpin@hklaw.com
Christopher N. Bellows, Esq.
Florida Bar No.: 512745
christopher.bellows@hklaw.com

*Attorneys for EFG Capital International
Corp. and Banco Itaú International*


Jay B. Kasner, Esq.
Jay.kasner@skadden.com
Scott D. Musoff, Esq.
Scott.musoff@skadden.com
**SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP AND AFFILIATES**
4 Times Square
New York, New York 10036
Tel: 212-735-3000
Fax: 212-735.2000

*Counsel for Banco Itaú International*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 2, 2018 I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document

is being served this day on all counsel of record in the State court via email and U.S. Mail.


s/ Tracy A. Nichols
Tracy A. Nichols, Esq**.**


#55230958_v8