UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 17-CV-23051-KMW

MERIDIAN TRUST COMPANY, as
trustee, and AMERICAN ASSOCIATED
GROUP, LTD.,

    Plaintiffs,

v.

EIKE BATISTA, *et al.*

    Defendants.

_____/

**BATISTA DEFENDANTS' AND PAULO MENDONÇA'S**
**MOTION TO DISMISS ON *FORUM NON CONVENIENS* GROUNDS**

**REED SMITH LLP**
1001 Brickell Bay Drive, 9th Floor
Miami, FL 33131
Telephone: (786) 747-0200
Facsimile: (786) 747-0299

Edward M. Mullins (FBN 863920)
emullins@reedsmith.com
Ana M. Barton (FBN 85721)
abarton@reedsmith.com
Sujey S. Herrera (FBN 92445)
sherrera@reedsmith.com

*Counsel for Batista Defendants*

**DLA PIPER LLP**
200 S. Biscayne Blvd., Suite 2500
Miami, FL 33131
Telephone: (305) 423-8500
Facsimile: (305) 437-8131

Craig Rasile (FBN 613691)
Craig.rasile@dlapiper.com
Harout Samra (FBN 70523)
harout.samra@dlapiper.com

*Counsel for Paulo Mendonça*

Defendants Werner Batista ("Werner"), Eliezer Batista ("Eliezer"), Eike Batista ("Eike"), Thor Batista ("Thor"), Olin Batista ("Olin"), Luma de Oliveira ("Luma"), Flavia Sampaio ("Flavia"), Centennial Asset Mining Fund ("Centennial Mining"), Centennial Asset Brazilian Equity Fund ("Centennial Brazilian"), Centennial Asset Ltd. ("Centennial Asset"),[1] WRM1 LLC ("WRM1"), WRM2 LLC ("WRM2"),[2] 3BX Investments, LLC ("3BX Investments"), 3BX Investment Fund I, LLC ("3BX Fund"),[3] Aux Luxembourg Sarl ("Aux Luxembourg"), Aux LLC ("Aux"),[4] 63X Master Fund, 63X Investment Ltd., and 63X Fund[5] (collectively, "Batista Defendants"), and Paulo Mendonça ("Mendonça") (Batista Defendants and Mendonça are collectively "Moving Defendants"), move to dismiss the First Federal Amended Complaint filed by Plaintiffs Meridian Trust Company and American Associated Group, Ltd. (collectively "Plaintiffs") [D.E. 75] on *forum non conveniens* grounds.[6] [7] While the Moving Defendants are the formal defendants, as noted in the certification, no defendant opposes this motion.

---

[1] Centennial Mining, Centennial Brazilian and Centennial Asset will be referred to collectively as "Centennial Entities".

[2] WRM1 and WRM2 will be referred to collectively as "WRM Entities".

[3] 3BX Investments and 3BX Fund will be referred to collectively as "3BX Entities".

[4] Aux Luxembourg and Aux will be referred to collectively as "Aux Entities".

[5] 63X Master Fund, 63X Investment Ltd., and 63X Fund will be referred to collectively as "63X Entities".

[6] Werner, Centennial Mining, Centennial Brazilian, and the 63X Entities moved for dismissal on *Forum non conveniens* grounds previously in state court, but that motion was mooted by Plaintiffs' filing of an Amended Complaint, the removal of the case to Federal Court, and this Court's August 16, 2017 order staying deadlines for responsive pleadings. Movants hereby renew their motion. None of the defendants that had been served at the time opposed the original motion to dismiss, and no defendant opposes this Motion.

[7] The Moving Defendants do not waive any other defense that each may have to this litigation, including improper service, lack of personal jurisdiction, and failure to state a cause of action. *See Lane v. XYZ Venture Partners, L.L.C.*, 322 Fed. Appx. 675, 678 (11th Cir. 2009) (finding no waiver in context of filing a motion to stay before personal jurisdiction motion because motion to stay was neither a responsive pleading nor a motion made under Rule 12); *see also Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texa*s, 134 S. Ct. 568, 580 (2013) (*forum non conveniens motion* was different from a Rule 12(b)(3) motion because Rule 12(b)(3) relates to "improper venue," specifically a forum that does not satisfy federal venue laws).

*Forum non conveniens* dismissal is warranted where "(1) an adequate, alternative forum is available and (2) the public and private factors weigh in favor of dismissal." *Kolawole v. Sellers*, 863 F.3d 1361, 1369 (11th Cir. 2017).  As further set out below, here, Brazil is an adequate and available alternative forum, and the public and private factors (*e.g.*, the vast majority of the witnesses live in Brazil and speak Portuguese, a great number of the documents are in Portuguese, Brazil has a public interest in investigating and convicting alleged corruption in its territory and resolving effects of an insolvency of a major Brazilian corporation, and there is no meaningful connection to the United States) weigh in favor of dismissal.  *See Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1328 (11th Cir. 2011) (affirming *forum non conveniens* dismissal of suit brought on behalf of estate of a United States citizen, amongst others, because Brazil was an adequate and available forum and the private-public factors favored Brazil).

Thus, this motion should be granted for the reasons set forth in the following memorandum of law.

## MEMORANDUM OF LAW

"A district court has discretion to dismiss a case on forum non conveniens grounds 'when trial in the chosen forum would establish ... oppressiveness and vexation to a defendant ... out of all proportion to plaintiff's convenience, or when the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems.'"  *McLane v. Marriott Intern., Inc.*, 960 F. Supp. 2d 1351, 1356 (S.D. Fla.), *aff'd*, 547 Fed. Appx. 950 (11th Cir. 2013) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56 (1981)).  This action lacks any significant relationship to the United States; it simply does not belong here.  Instead, it belongs in Brazil.  This is a lawsuit, according to Plaintiffs' *own* First Federal Amended Complaint, about a fraud that allegedly was perpetrated in Brazil that led to "**Latin America's**

largest corporate default, ever", by a "**Brazilian** con man", regarding **Brazilian** natural resources, involving **Brazilian** companies, and in which **Brazilian** authorities, politicians, banks, and other private and public institutions are alleged to have been complicit.  1st Fed. Am. Compl., p. ii (emphasis added).

Moreover, this case was brought by foreign plaintiffs seeking to recover sums they allegedly invested in Brazil and claim to have lost years ago because Brazilian indentures were discharged in a Brazilian judicial reorganization.  Plaintiffs allege that they bought bonds of a Brazilian oil exploration company, OGX, which filed for judicial reorganization almost five years ago, in 2013, in Brazil.  *Id.* ¶¶ 58; 511, 514-16.  Plaintiffs admit they were among the investors who "were basically wiped out" as part of the bankruptcy.  *Id.* ¶ 513.[8]  Bondholders such as Plaintiffs were represented by the trustee of the bonds, Deutche Bank Trust Company Americas.[9]  Plaintiffs, however, did not petition to participate individually in the judicial reorganization and did not oppose the reorganization and discharge in Brazil.  Now, having failed to raise their claims in the Brazilian insolvency proceeding, which they admit "wiped" them out, they attempt to bring them here in this inconvenient forum.

Plaintiffs are Meridian Trust Company, a trust company incorporated under the laws of Nevis and located in Nevis, and American Associated Group, Ltd., a Cayman corporation.  1st Fed. Am. Compl. ¶¶ 3, 5.  Plaintiffs have brought fraud, RICO, conspiracy, and theft claims

---

[8]  As part of OGX's judicial reorganization, the Brazilian bankruptcy court approved a restructuring plan pursuant to which "OGX, controlled companies, subsidiaries, affiliates and other companies belonging to the same corporate and economic group, and their officers, directors, Shareholders, minority shareholders, members, agents, employees, representatives, guarantors, sureties, successors and assigns," were discharged.  *See* Ex. D, Judicial Reorganization Plan of OGX, *Capital Ventures International v. Deutsche Bank Trust Co.* (Index no. 651673/2014).

[9]  *See* Ex. E, Memorandum of Law in Support of Motion to Dismiss at 5, *Capital Ventures International v. Deutsche Bank Trust Co.* (Index no. 651673/2014).

against 30 Defendants—14 individuals, almost all of whom are Brazilian nationals and lack any connection to Florida (save for three individuals, yet two of whom also are alleged to be Brazilian citizens), and 16 corporate entities, six (6) of which are from foreign countries and an additional seven (7) of which are incorporated outside of Florida, and most of which are not registered to do business in Florida:[10]

| | Defendants | Nationality/Incorporation Alleged in Complaint & First Federal Amended Complaint |
|---|---|---|
| | **Individual Defendants** | |
| 1. | Eike | Brazil[11] |
| 2. | Eliezer | Brazil[12] |
| 3. | Thor | Brazil[13] |
| 4. | Olin | Brazil[14] |
| 5. | Flavia | Brazil[15] |
| 6. | Luma | Brazil[16] |
| 7. | Mendonça | Brazil[17] |
| 8. | Flavio Godinho | Brazil[18] |
| 9. | Paulo Gouvea | Brazil[19] |
| 10. | Luiz Carneiro | Brazil[20] |
| 11. | Aziz Ben Ammar | Tunisia[21] |
| 12. | Werner | Brazil & Florida[22] |

---

[10]  Composite Exhibit F (results of search for entity names in sunbiz.org).

[11]  1st Fed. Am. Compl. ¶ 6.

[12]  *Id.* ¶ 7.

[13]  *Id.* ¶ 9.

[14]  *Id.* ¶ 33.

[15]  *Id.* ¶ 34.

[16]  *Id.* ¶ 35.

[17]  *Id.* ¶ 10.

[18]  F. Godinho Aff. ¶ 3.

[19]  1st Fed. Am. Compl. ¶ 12.

[20]  *Id.* ¶ 14.

[21]   Mr. Ammar has presented a declaration in this action in support of his motion to quash service, explaining that he is a resident of Tunisia.  A. Ben Ammar ¶ 2.

[22]  *Id.* ¶ 8.  In a transparent attempt to plead into Florida as a convenient forum, Plaintiffs deleted from their First Federal Amended Complaint any of the Werner's connections to Brazil which were asserted in the original Complaint.  Compl. ¶ 7 (alleging that Werner "is and was at all material times" a "resident in Florida **and Brazil**" and that he was believed to "hold dual nationality between U.S. **and Brazil**…") (emphasis added).

| 13. | Marcus Berto | Brazil & Florida[23] |
|-----|--------------|---------------------|
| 14. | Erick Magno | Florida[24] |
| **Corporate Entity Defendants** | | |
| 15. | EFG Bank AG | Switzerland[25] |
| 16. | 63X Investments Ltd. | Cayman Islands[26] |
| 17. | 63X Master Fund | Cayman Islands[27] |
| 18. | 63X Fund | Cayman Islands[28] |
| 19. | Centennial Asset | British Virgin Islands[29] |
| 20. | Aux Luxembourg | Luxembourg[30] |
| 21. | 3BX Fund | Nevada[31] |
| 22. | Centennial Mining | Nevada[32] |
| 23. | Centennial Brazilian | Delaware[33] |
| 24. | WRM1 | Delaware[34] |
| 25. | WRM2 | Delaware[35] |
| 26. | 3BX Investments | Delaware[36] |
| 27. | Aux LLC | Delaware[37] |
| 28. | EFG Capital International Corp. | Delaware and Florida[38] |
| 29. | Erick Magno, PL | Florida[39] |
| 30. | Banco Itau International | Florida[40] |

It is well-established in the Southern District of Florida that cases which fit this profile,

where not only the plaintiffs, but virtually all defendants, are foreign should be dismissed on

---

[23] *Id.* ¶ 13.  In a transparent attempt to plead into Florida as a convenient forum, Plaintiffs deleted from their First Federal Amended Complaint any of the Marcus Berto's connections to Brazil which were asserted in the original Complaint.  Compl. ¶ 12 (alleging that Marcus Berto "is and was at all material times" a "resident in Florida **and Brazil**") (emphasis added).

[24] 1st Fed. Am. Compl. ¶ 16.

[25] *Id.* ¶ 20.

[26] *Id.* ¶ 21.

[27] *Id.* ¶ 22.

[28] *Id.* ¶ 23.

[29] *Id.* ¶ 26.

[30] *Id.* ¶ 31.

[31] *Id.* ¶ 30.

[32] *Id.* ¶ 24.

[33] *Id.* ¶ 25.

[34] *Id.* ¶ 27.

[35] *Id.* ¶ 28.

[36] *Id.* ¶ 29.

[37] *Id.* ¶ 32.

[38] *Id.* ¶ 19.

[39] *Id.* ¶ 17.

[40] *Id.* ¶ 18.

*forum non conveniens* grounds. *In re Banco Santander Sec.-Optimal Litig.*, 732 F. Supp. 2d 1305, 1336 (S.D. Fla. 2010) (no convenience in suing in the United States when the investment funds were foreign entities and the majority of the defendants were also foreign), *aff'd sub nom. Inversiones Mar Octava Limitada v. Banco Santander S.A.*, 439 Fed. Appx. 840 (11th Cir. 2011).

Plaintiffs' only purported substantiation for this Court's jurisdiction is: (i) the location of the beneficiary of the Chrisly Trust; (ii) the fact that the foreign Plaintiffs' investments were executed by an agent based in Florida; and (iii) that a subset of the worldwide non-party investors who also invested in OGX were from Florida as well. 1st Fed. Am. Compl. ¶¶ 4-5, 63. None of these limited contacts justifies this Court spending its limited resources to adjudicate a dispute among 32 parties, 21 of whom are foreign plaintiffs and defendants, half of which are based in Brazil. Indeed, the underlying factual premise of the litigation is an investment by two foreign plaintiffs in Brazil, involving the exploration for **Brazilian** oil by a **Brazilian** exploration and production company that was liquidated in a **Brazilian** bankruptcy proceeding three years ago. Ironically, Plaintiffs intentionally ignored the Brazilian bankruptcy proceeding where they could have filed and protected their claims. Instead, they are seeking relief before this Court which, if granted, would essentially reward their dilatory and procedurally deficient litigation strategy.

## THE ALLEGATIONS OF THE COMPLAINT

The lawsuit is premised upon an alleged fraud purportedly perpetrated by a Brazilian—Defendant Eike Batista—involving off shore oil drilling leases in Brazil. 1st Fed. Am. Compl. ¶ 46. His company obtained offshore oil development rights from an auction conducted by the Brazilian government. *Id.* ¶¶ 189-93. Plaintiffs contend that the oil reserves were overstated and that Eike Batista and other Defendants conspired with Brazilian bankers, politicians, and others

to hide proceeds of the alleged fraud. *Id.* ¶¶ 50-53. Plaintiffs further contend that Eike's company, OGX (traded on the Brazilian stock exchange (*id.* ¶ 456)), commissioned multi-million dollar oil production platforms from his Brazilian satellite ship-building company, OSX, as part of his "trumpeted plans for a satellite port city in Brazil" via another Brazilian company, LLX. *Id.* ¶ 48. Plaintiffs note that Batista, and others, were criminally indicted in Brazil, *id.* ¶ 64, and it is undisputed that Batista is currently under house arrest pending his criminal trial on issues emulating from allegations raised herein involving bribery and hiding illegal funds offshore. 1st Fed. Am. Compl. ¶ 65; Ex. G, Composite Exhibit of Articles.

Plaintiffs further allege that Eike did not accomplish this single-handedly, but rather, conspired with his eldest son, Thor, and certain OGX directors and officers, namely Defendants Mendonça, Eliezer, Werner, Flavio Godinho, and Paulo Gouvea, whom Plaintiffs allege are either Brazilian citizens and/or dual citizens of Brazil and Florida. *See infra.*[41] Plaintiffs also assert that all of the Brazilian Board members of OGX, several directors of OSX and LLX, as well as other Brazilian insiders all failed to inform investors of the alleged fraud. *Id.* ¶¶ 75-77, 92.

While Plaintiffs attempt to artificially connect this lawsuit to the United States through vague allegations regarding other non-party U.S. investors, *id.* ¶¶ 203-13, it is clear from the Plaintiffs' First Federal Amended Complaint that the core of the alleged fraud—and the home of key witnesses Plaintiffs will need to prove their case and for the defendants to defend it—is in

---

[41] As noted, in amending its complaint, and to hide the multiple ties to Brazil, Plaintiffs removed references to certain defendants also being citizens of Brazil. *Compare* Compl. ¶ 7 (alleging that Werner "is and was at all material times" a "resident in Florida **and Brazil**" and that he was believed to "hold dual nationality between U.S. **and Brazil**...") *with* 1st Fed. Am. Compl. ¶ 8 (alleging that Werner "is and was at all material times an individual who is resident in Palm Beach, Florida and the brother of EIKE BATISTA, doing business directly and through agents in Miami-Dade County, Florida").

Brazil.  Hence, Brazil has the primary interest in the case.  For example, Plaintiffs contend that, after OGX allegedly misrepresented the value of an oil strike, Defendant Eike allegedly became close to Brazilian politicians who he allegedly bribed and are now under investigation by Brazilian authorities.  *Id.* ¶¶ 233-34.  Plaintiffs further assert that the alleged corruption extended to the highest levels of the Brazilian government including former Brazilian President Dilma Rousseff (now impeached), Rio de Janeiro Governor Sergio Cabral (under arrest in Brazil for corruption), and the Mines and Energy Minister, Edison Labao (under investigation for corruption in Brazil).  *Id.* ¶¶ 235-37, 353.

Plaintiffs contend that the Brazilian board members of other corporate Defendants such as the 63X Entities, 3BX Entities, and Centennial Entities, knew of the alleged fraud.  *Id.* ¶ 379.  According to Plaintiffs, in 2011, OGX commissioned a Joint Task Force to prepare a status report to the OGX Executive Committee.  *Id.* ¶ 376.  The Committee purportedly found that the company had a negative net value of $1 billion.  *See id.* ¶ 378.  Plaintiffs allege that despite this, OGX and its supposed conspirators were still touting the value of the offshore reserves.  *Id.* ¶¶ 379-83.

Plaintiffs contend that two years later in 2013, they, along with many hundreds of investors from around the world, invested in the OGX bonds, the same year the OGX entities sought bankruptcy relief in Brazil.  Plaintiffs, both foreign entities, identify a single true material third-party witness in Florida—Judith Neiwirth, a co-founder of the investment company, Gables Capital, as the independent investment advisor who steered them toward this investment.  *Id.* ¶ 420.  They contend that Ms. Neiwirth invested "in reliance on the overall picture painted by Batista and his co-conspirators and accomplices" and the fact that high-profile investors had

invested.  *Id.* ¶¶ 421-28.[42]  She is not alleged to have, nor would she likely have, personal knowledge of the allegations of fraud, conspiracy, and theft.

In fact, Pedro de Moraes Borba, the current Chairman of OGX, explains that OGX's documents are "written in the Portuguese language," and although some have been translated to English, "internal documents, and technical information about drilling, including reports that have been filed before the National Oil and Gas Regulatory Agency (Agencia Nacional de Petroleo, Gas Natural e Biocumbustiveis –ANP) are in Portuguese."  P. Borba Aff. ¶ 5.  Further, Mr. Borba states that as a result of the reorganization of OGX, "many employees were discharged" and the "majority of these former employees are Brazilian citizens who primarily speak Portuguese and lived in Brazil as of the date of their termination."  *Id.* ¶ 8.  OGX has no control over these former employees and would not be able to "compel their appearance or to respond to discovery requests from the United States."  *Id.* ¶ 9.

This is also confirmed by Mendonça, who states that "[v]irtually all the documents regarding the technical exploration and production efforts undertaken by OGX are in Portuguese and all of these documents are located in Brazil."  Ex. C, Mendonça Aff. ¶ 23.  Mr. Mendonça also identifies more than 20 Brazilians who were employed in connection with the oil drilling and exploration activities which are no longer with OGX and, for the most part, only speak Portuguese.  *Id.* ¶¶ 15-22.

Furthermore, Plaintiffs' contentions demonstrate that, even after they invested, the core of the dispute remains in Brazil.  Plaintiffs allege that non-party Andre Esteves, the President of BTG Pactual, a major financial institution in Brazil, misrepresented to the public in March 2013

---

[42] As shown in the various motions to dismiss being filed concurrently herewith, based on the Florida law sued upon, Plaintiffs' entire claim is based upon a "fraud on the market" theory that is non-actionable outside of the context of a 10(b) action.

that Eike's companies "were in no danger of failing and that Batista remained one of the best capitalized business men in Brazil."  1st Fed. Am. Compl. ¶¶ 429, 440.  Later, in April 2013, Plaintiffs allege Eike had Defendant Centennial Brazilian pay a $2.3 million "kickback" to Brazilian officials relating to an OSX shipbuilding contract.  *Id.* ¶ 452.  And, they allege, Luciano Coutinho, the President of the Brazilian development bank, BNDES, continued to tout the assets of OGX speculating that he "must have done due diligence that showed otherwise." *Id.* ¶ 491.

As Plaintiffs admit, the OGX group of companies filed bankruptcy in Brazil in 2013, as did satellite companies MMX and OSX.  *Id.* ¶¶ 511, 514-15.  Plaintiffs claim that they were among the horde of investors "wiped out" by this bankruptcy.  *Id.* ¶ 513.

In a thinly veiled attempt to circumvent the allegations in their own First Federal Amended Complaint, Plaintiffs ignore the fact that this was allegedly a Brazilian fraud by Brazilians, and boldly allege without any substantiating facts, that all of the Defendants do business directly and through agents in Miami.  *Id.* ¶¶ 6-35.  Yet, Plaintiffs plead that the alleged proceeds of the supposed fraud are located all over the world, including the Cayman Islands, the Bahamas, Panama, and Switzerland.  *Id.* ¶¶ 385, 448-52.  Again, the source of these alleged transfers of funds is always Brazil.  *Id.* ¶ 481 (for example, Eike allegedly transferred funds from a Brazilian Citibank account to his son's Brazilian Citibank account); *id.* ¶¶ 179-81, 481-82 (Eike allegedly transferred a Brazilian building and millions of dollars to families in Brazil).

## **APPLICABLE LAW**

"*Forum non conveniens* is a common law doctrine that provides district courts with 'inherent power to decline to exercise jurisdiction' with the 'central purpose' being 'to ensure that the trial is convenient.'"  *Kolawole*, 863 F.3d at 1369.  "To successfully move for dismissal

based upon *forum non conveniens*, a defendant must demonstrate both that (1) an adequate, alternative forum is available and (2) the public and private factors weigh in favor of dismissal." *Id.* (internal citations omitted).  The Supreme Court in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947), identified the following non-exhaustive list of private and public factors for the court to consider:

> An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility [*sic*] of a judgment if one is obtained. …

> Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

"These factors are not exhaustive or dispositive, and courts are free to be flexible in responding to cases as they are presented. A trial court will look at the private interests first and then, if the balance of the private interests are found 'to be in equipoise or near equipoise,' it will 'determine whether or not factors of *public* interest tip the balance in favor of a trial in a foreign forum.'"  *King v. Cessna Aircraft Co.,* 562 F.3d 1374, 1381–82 (11th Cir. 2009); *see also Kolawole*, 863 F.3d at 1369 ("There is not an exhaustive list of public and private factors, and courts are free to be flexible.") (internal punctuation omitted).

Significantly, "[a]lthough domestic plaintiffs enjoy a presumption that their choice of forum is convenient, **foreign plaintiffs are not entitled to the same presumption**." *Lopez v. Rica Foods, Inc.*, 333 Fed. Appx. 462, 465 (11th Cir. 2009) (emphasis added); *see also Piper*, 454 U.S. at 255–56 ("Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, **a foreign plaintiff's choice deserves less deference**.") (bold added).

In the case at bar, Brazil provides an adequate alternate forum. Both the private and public factors favor trial of this civil action in Brazil. Further, Plaintiffs' choice of forum is not entitled to a presumption of deference because Plaintiffs are foreign entities. Dismissal for *forum non conveniens* is thus appropriate in this case.

### A. <u>Brazil Is an Adequate and Available Alternate Forum.</u>

"Demonstrating the availability of a forum is not an especially onerous burden for a defendant seeking dismissal for *forum non conveniens*. A forum is generally deemed available if the defendant is amenable to process in the other jurisdiction." *Kolawole*, 863 F.3d at 1369; *Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1282 (11th Cir. 2001) (same). The Eleventh Circuit and many other courts have found Brazil to be adequate and available. *See, e.g., Tazoe*, 631 F.3d at 1328.

Here, all of the parties are subject to suit in Brazil. First, according to the First Federal Amended Complaint, Eike is a Brazilian citizen (1st Fed. Am. Compl. ¶ 6), accused of criminal acts in Brazil and thus subject to suit there. Ex. A, 2d Carpenter Aff. ¶¶ 10-11; *see also* Exhibit H, Affidavit Filed by Marcello Augusto Lima de Oliveira on Behalf of Plaintiffs in Cayman ¶ 39. This equally applies to all of the other individual defendants whom have Brazilian citizenship, such as Thor, Werner, Eliezer, Olin, Luma, Flavia, Mendonça, Luiz Carneiro, Flavio

Godinho, and Marcus Berto.  Ex. A, 2d Carpenter Aff. ¶¶ 10-11.

All of the Defendants (even those which are not Brazilian) would also be subject to suit in Brazil because the facts underlying the claims against them are based on events that occurred in Brazil.  *Id.* ¶¶ 13-17.  Indeed, courts routinely have granted motions to dismiss on *forum non conveniens* grounds even when the Defendants are not Brazilian residents or entities.  *See, e.g., Tazoe*, 631 F.3d at 1328 (granting *forum non conveniens* motion, determining Brazil as an adequate alternative forum, when defendants were French, Swiss, and American); *Manela v. Garantia Banking Ltd.*, 940 F. Supp. 584, 586 (S.D.N.Y. 1996) (complaint for securities fraud dismissed on *forum non conveniens* grounds, determining Brazil is an adequate alternative forum when one of defendants was American); *Da Rocha v. Bell Helicopter Textron, Inc.*, 451 F. Supp. 2d 1318, 1321 (S.D. Fla. 2006) (same, American defendants); *WEG Industrias, S.A. v. Compania de Seguros Generales Granai*, 937 So. 2d 248, 253 (Fla. 3d DCA 2006) (same, American and Brazilian defendants); *Iberoamerican Elecs., S.R.L. v. Moore Bus. Forms, Inc.*, 679 So. 2d 295, 295 (Fla. 3d DCA 1996) (same, American defendant).[43]

---

[43]  Based on the status hearing held on January 3, 2018, Defendants anticipate that Plaintiffs will cite to *EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro S.A.*, 246 F. Supp. 3d 52 (2017) to argue that Brazil is not adequate and available.  However, that case is distinguishable because the Court ultimately ruled based on the balancing of the public-private factors not on the adequacy or availability of the forum.  *Id.* at 75-76 ("If the court were to find that the public-private balancing weighs in favor of dismissal, the court could dismiss the case contingent upon the satisfaction of certain conditions that would ensure Plaintiffs a forum in Brazil.").  Further, unlike here, when balancing the private factors, the Court found that there were "several facts **unique** to [that] case," including that the government-owned Petrobras already was defending against a securities fraud class action in the United States arising from Operation Car Wash in Brazil and thus Petrobras had "already confronted and addressed" its evidence problems there, "ameliorating any difficulties that might arise from litigating this case in a U.S. Court." *Id.* at 79-80 (emphasis added).  The court in *EIG* concluded that Petrobras's difficulties were "ameliorated by the fact of ongoing litigation and investigations relating to the Operation Car Wash scandal in the United States; Petrobras' previous access to at least one key player in the bribe scheme through the Brazilian criminal proceedings; and the availability of the letters rogatory process to obtain evidence located in Brazil." *Id.* at 81.  Even with these facts, which

Brazil therefore is an available forum.

Similarly, Brazil is an adequate forum. "An adequate forum need not be a perfect forum." *Satz*, 244 F.3d at 1283. "An alternative forum is 'presumed 'adequate' unless the **plaintiff** makes some showing to the contrary.'" *Da Rocha*, 451 F. Supp. 2d at 1322 (emphasis added); *Jiangsu Hongyuan Pharm. Co., Ltd. v. DI Glob. Logistics Inc.*, 159 F. Supp. 3d 1316, 1329 (S.D. Fla. 2016) (same); *J.C. Renfroe & Sons, Inc. v. Renfroe Japan Co., Ltd.*, 515 F. Supp. 2d 1258, 1268 (M.D. Fla. 2007) (same). Movants need to demonstrate only that Plaintiffs have *some* potential remedy in the alternate forum. A forum is inadequate only "if the remedy provided by th[at] alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." *See Tazoe*, 631 F.3d at 1330–31. The "[a]dequacy of forum does not require the availability of identical causes of action." *Seguros Universales, S.A. v. Microsoft Corp.*, 32 F. Supp. 3d 1242, 1249 (S.D. Fla. 2014); *see also Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 951–52 (11th Cir. 1997) (unavailability of RICO claim in Cayman Islands, England, and Luxembourg did not make Panama an inadequate forum).[44]

Here, Plaintiffs already have ***admitted*** that there are adequate remedies for them in Brazil. In the Cayman Islands proceeding, Plaintiffs' expert, Marcello Augusto Lima de

---

are largely not present here, the Court found the private factors still slightly favored a Brazilian forum. *Id. Forum non conveniens* dismissal was ultimately denied because the private interest factors only narrowly favored Brazil, and the public factors were found at equipoise. Here, as shown *infra*, the private factors overwhelmingly favor dismissal and the public factors also favor a Brazilian forum.

[44] *See also Piper Aircraft*, 454 U.S. at 255 ("Although the relatives of the decedents may not be able to rely on a strict liability theory, and although their potential damages award may be smaller, there is no danger that they will be deprived of any remedy or treated unfairly."); *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 831 (6th Cir. 2009) ("Less favorable law in the alternative forum will not, on its own, make the forum inadequate."); *Lockman Found. v. Evangelical All. Mission*, 930 F.2d 764, 768 (9th Cir. 1991) ("Even if the RICO and Lanham Act claims were unavailable in Japan, that would not furnish a sufficient reason to preclude dismissal. The 'possibility of an unfavorable change in the law' is not to be given conclusive or substantial weight in a forum non conveniens inquiry.").

Oliveira, attested that he had reviewed the proposed complaint that eventually was filed in Florida and that Plaintiffs would have claims against Eike for violations of his duties as a director or administrator (officer) pursuant to Article 59 of the Brazilian Civil Code, for compensation of an injured party when there has been crime under Brazilian law pursuant to Article 63 of the Brazilian Civil Code, and for "damages in a broader sense whenever a person owes a duty and that person fails to comply with their duty" pursuant to Articles 389 and 402 of the Brazilian Civil Code.  Ex. H, Oliveira Aff. ¶ 39.  All Defendants are being sued for the same claims as Eike, and thus Plaintiffs have *some* remedy, by their own admission, against all of them.  Plaintiffs thus already have admitted adequacy.

Further, for example, Plaintiffs have the following remedies available in Brazil:  (1) an action for damages under Article 927 of the Brazilian Civil Code; (2) an action for unjust enrichment under Section 884 of the Brazilian Civil Code; or (3) misappropriation under Sections 166 and 168 of the Brazilian Civil Code.  Ex. A, 2d Carpenter Aff. ¶¶ 25.

Further, to the extent Plaintiff contends the amount of time this case may take in Brazil should be considered, this is not sufficient to deny a *forum non conveniens* motion on the basis of adequacy.  *Banco Latino v. Gomez Lopez*, 17 F. Supp. 2d 1327, 1332 (S.D. Fla. 1998) ("The Court also rejects plaintiffs contention that Venezuela is an inadequate forum because the legal system is rampant with delays. Delay is an unfortunate but pervasive aspect of the legal process.").[45]  This factor has been applied to actions to be sent to Brazil.  *O'Keefe v. Noble Drilling Corp.*, 347 Fed. Appx. 27, 31 (5th Cir. 2009) (four-year period to resolve dispute at trial

---

[45] *Ciba-Geigy Ltd. v. Fish Peddler, Inc.*, 691 So. 2d 1111, 1117 (Fla. 4th DCA 1997) ("A delay of 'many, many' years is a legally insufficient standard on which to judge a foreign forum's remedy as inadequate in a highly complex case such as this."); *Abeid-Saba v. Carnival Corp.*, 184 So. 3d 593, 601 (Fla. 3d DCA 2016) (same; Italy not inadequate simply because litigation will take longer there); *Hilton Int'l Co. v. Carrillo*, 971 So. 2d 1001, 1005 (Fla. 3d DCA 2008) (Egypt not inadequate simply because the courts might take 5-10 years to render final judgment).

court level in Brazil "was not an unacceptable level of delay").[46]

Indeed, courts routinely have found Brazil to be an adequate forum, even in cases involving fraud claims. *Tazoe*, 631 F.3d at 1330–31 (dismissing complaint on *forum non conveniens* grounds and finding that Brazil is an adequate and available forum); *Da Rocha*, 451 F. Supp. 2d at 1322 (same); *WEG Industrias*, 937 So. 2d at 254 (same); *Reingruber v. Dennison Int'l Co., Inc.*, 97 CIV. 7023 (DC), 1998 WL 760229, at *3-4 (S.D.N.Y. Oct. 30, 1998) (same, involved fraud claim); *Manela*, 940 F. Supp. at 590-91 (same, involved fraud claim); *Moskovits v. Moskovits*, 150 Fed. Appx. 101, 103 (2d Cir. 2005) (same, involved fraud claim).[47]

In response to the original motion to dismiss for *forum non conveniens* filed in State Court (which was mooted when Plaintiffs amended their complaint herein),[48] Plaintiff's elected to attack the Brazilian Judiciary as universally corrupt and thus unable to hear their claims

---

[46] *See also Brazilian Inv. Advisory Services, Ltda. v. United Merchants & Mfg., Inc.*, 667 F. Supp. 136, 139 (S.D.N.Y. 1987) ("We acknowledge that delays and backlog may exist in Brazilian courts, but United States courts are also subject to delays and backlog."); *In re Air Crash Near Peixoto De Azeveda, Brazil, on Sept. 29, 2006*, 574 F. Supp. 2d 272, 284 (E.D.N.Y. 2008) ("'[D]elay alone is rarely considered sufficient to deprive a plaintiff of an adequate forum.' The Court therefore finds that any delay in Brazil is sufficiently minimal, relative to the U.S., that Brazil should be considered an adequate forum.") (internal citation omitted), *aff'd sub nom. Lleras v. Excelaire Servs. Inc.*, 354 Fed. Appx. 585 (2d Cir. 2009); *see Panama Processes, S.A. v. Cities Serv. Co.*, 500 F.Supp. 787, 800 (S.D.N.Y.1980) (absence of pre-trial discovery or adversarial trial does not render Brazil an inadequate forum), *aff'd*, 650 F.2d 408 (2d Cir. 1981).

[47] *See also O'Keefe*, 347 Fed. Appx. at 31 (Brazil adequate forum); *de Melo v. Lederle Labs., Div. of Am. Cyanamid Corp.*, 801 F.2d 1058, 1061 (8th Cir. 1986) (same); *Indusoft, Inc. v. Taccolini*, 560 Fed. Appx. 245, 249 (5th Cir. 2014), *as revised* (Mar. 20, 2014) (same); *Da Rocha*, 451 F. Supp. 2d at 1321 (same); *Camejo v. Ocean Drilling & Expl.*, 838 F.2d 1374, 1380 (5th Cir. 1988) (same); *Platypus Wear, Inc. v. Clarke Modet & Co., Inc.*, No. 06-20976-Civ, 2008 WL 186637, at *2 (S.D. Fla. 2008) (same).

[48] In April 2017, the Batista Defendants filed a *forum non conveniens* motion before this matter was removed to federal court aimed at Plaintiffs' original complaint. Without seeking fact or expert discovery, Plaintiffs responded to this *forum non conveniens* motion in July 2017. Shortly before the motion would have been fully briefed, Plaintiffs amended their complaint, mooting the motion and necessitating its being refiled here. This Motion will address some of the arguments raised in Plaintiffs' initial opposition under the assumption that Plaintiffs will continue with these failed points.

despite the overwhelming case authority on the adequacy of Brazilian courts on civil fraud claims.  Many courts have rejected similar arguments.  *Lisa, S.A. v. Gutierrez Mayorga*, 441 F. Supp. 2d 1233, 1238 (S.D. Fla. 2006) (opposition to adequacy of Guatemalan courts on basis of corruption rejected), *aff'd*, 240 Fed. Appx. 822 (11th Cir. 2007); *Jiangsu*, 159 F. Supp. 3d at 1331 (same, China); *Kolawole*, 863 F.3d at 1371-72 (same, Nigeria); *Banco Latino*, 17 F. Supp. 2d at 1332) (same, Venezuela).

Indeed, the litigation in Brazil that recently has befallen Eike and some of his business colleagues actually supports the contrary.  For example, Eike was arrested and detained at the Bangu penitentiary for months, sharing an ordinary cell with six other inmates.  Ex. G, Comp. Ex.  He was not provided special treatment or privileges.  Eike is currently under house arrest and is not allowed to leave the country.  *Id.*[49]  He already has been convicted and fined US$6 million.  *Id.*  Sergio Cabral, who Plaintiffs cite as one of Eike's supposed central co-conspirators, 1st Fed. Am. Compl. ¶ 236, was sentenced to 14 years in prison for corruption and money laundering.  Ex. G, Comp. Ex.  Clearly, the Brazilian legal system has been, and continues to be, aggressively at the forefront of investigating allegations such as those presented in this case.[50]  It is untrue and unsubstantiated that a Brazilian court could not timely and impartially adjudicate this civil case.

Courts also have rejected arguments raised by plaintiffs concerning limitations in evidence-gathering mechanisms available in the alternate forum.  *Satz*, 244 F.3d at 1283 ("The plaintiffs' concerns about Argentine filing fees, the lack of discovery in Argentine courts, and their fear of delays in the Argentine courts do not render Argentina an inadequate forum.");

---

[49] That the main defendant accused of orchestrating a massive fraud cannot leave Brazil alone mandates that this case be sent to Brazil as a matter of due process for all the Defendants.
[50] *Id.*

*Lockman*, 930 F.2d at 768 (Japan was adequate although discovery procedures are not identical to those in the United States).   In any event, Brazilian courts have all the evidence gathering tools necessary for this dispute.   Ex. A, 2d Carpenter Aff. ¶ 28.   Here, the nucleus of the action is Brazil – as that is where both the witnesses and evidence are located.   Ex. B, P. Borba Aff. ¶¶ 6, 8-9; Ex. C, Mendonça Aff. ¶¶ 15-23.   Brazilian courts also have plenary authority to compel evidence from the witnesses.   Ex. A, 2d Carpenter Aff. ¶ 28.   Consequently, the availability of U.S. discovery procedures is a non-issue to the adequacy of Brazil as a forum.   *O'Keefe*, 347 Fed. Appx. at 32 ("inability of Brazilian courts to compel extraterritorial discovery was likely inconsequential" because cause of action arose in Brazil and witnesses were in Brazil).[51]

Plaintiffs previously contended in their first opposition to the Batista Defendants' *forum non conveniens* motion directed at their original complaint that the existence of filing fees made the forum inadequate.   Opp. To State FNC Motion at 18.   But "the mere presence of filing fees, that are common in many civil law countries, does not render a forum inadequate."   *Warter v. Boston Sec., S.A.*, 380 F. Supp. 2d 1299, 1313 (S.D. Fla. 2004) (Argentina filing fee did not render forum inadequate); *Aerolineas Argentinas, S.A. v. Gimenez*, 807 So. 2d 111, 114 (Fla. 3d DCA 2002) (same).[52]   "Although the plaintiff may be forced to seek less damages [to lower the filing fee], 'the prospect of a lesser recovery does not justify refusing a motion to dismiss on the

---

[51] Here, there will not be much, if any, evidence in the United States concerning the alleged fraudulent misrepresentations.   To the extent there is evidence located in the United States, Plaintiffs can utilize 28 U.S.C. § 1782 to obtain such evidence that is truly necessary.   *J.C. Renfroe*, 515 F. Supp. 2d at 1273 (dismissing on *forum non conveniens* grounds and finding that plaintiffs could compel testimony and documents from U.S. pursuant to 28 U.S.C. § 1782); *Warter*, 380 F. Supp. at 1313 (same)

[52] *See also Stroitelstvo Bulgaria Ltd. v. Bulgarian-Am. Enter. Fund*, 598 F. Supp. 2d 875, 883 (N.D. Ill. 2009) (4% filing fee did not render Bulgaria inadequate, explaining that the "mere existence of filing fees, which are required in many civil law countries, does not render a forum inadequate as a matter of law"), *aff'd*, 589 F.3d 417 (7th Cir. 2009); *Mercier v. Sheraton Int'l, Inc.*, 981 F.2d 1345, 1353 (1st Cir. 1992) (15% cost bond not "considered excessive").

ground of forum non conveniens.'"  *Aerolineas Argentinas*, 807 So. 2d at 114; *see also Satz*, 244

F.3d at 1283 ("The plaintiffs' concerns about Argentine filing fees . . . do not render Argentina

an inadequate forum. '[S]ome inconvenience or the unavailability of beneficial litigation

procedures similar to those available in the federal district courts does not render an alternative

forum inadequate.'").[53]

Therefore, the threshold question of whether Brazil is available and adequate clearly is

satisfied.

## B.  Private Interest Factors Favor Brazil

When, as here, a plaintiff is an out-of-state entity, plaintiff's choice of forum is not given

any deference.  *Lopez*, 333 Fed. Appx. at 465.[54]  Here, Plaintiffs are out-of-state entities,

incorporated in Nevis and the Cayman Islands.  Accordingly, their choice of forum is not entitled

to any special weight.

Plaintiffs nonetheless contend that they should be considered domestic because their

beneficiaries are U.S. residents.  Opp. To State FNC Motion at 16.  Yet, the courts have not

accepted that ruse.  First, Plaintiffs have admitted that their action was initially filed on behalf of

a "foreign beneficiary," Paul Tien.  Opp. To State FNC Motion at 15.  Mr. Tien, specifically, was

---

[53] Plaintiffs are far from destitute.  They have spent countless resources here in this action, as well as in litigating in the Cayman Islands, including through the posting of a $1.5 million bond in the Cayman Islands.  Ex. A to Motion for Temporary Injunction Filed in State Court; see also Ex. B to Motion for Temporary Injunction Filed in State Court ¶¶ 121-22 ("Meridian and American jointly support the Application with an undertaking in damages to compensate the Respondents or any third party for any damage caused by the orders if ordered to do so upon inquiry. . . The financial assets held by Meridian as trustee of the Trust and American are stated to be approximately USD 97 million as of 9 September 2016.").

[54] *See also EIG*, 246 F. Supp. 3d at 78 ("Plaintiffs are sophisticated investors that chose to invest in Brazil through Luxembourg-based overseas investment vehicles.  Surely, it was reasonably foreseeable to them that, if a dispute arose, its resolution might not take place in a U.S. forum. Accordingly, while the court finds that Plaintiffs' choice of forum is entitled to some deference, that deference is diminished in light of Plaintiffs' decision to engage in international commerce.").

born in China and, since 2003 (and at the time of the Trust's investment), had been living in Taiwan.  E. Dover Aff., Ex. A.  It is without question, then, that at the time this action was filed and while defendants already had filed their first *forum non conveniens* motion, the **only** beneficiary was a foreign individual.  Thus, even if this court were to look beyond the nationality of the trust, which Defendants contend it should not do, the party in interest would still not be a U.S. resident.

To escape this glaring nexus problem, Plaintiffs now allege that Mr. Tien died on May 31, 2017, and the Court should instead examine the residency of the **new** beneficiaries.  Opp. to State FNC Motion at 15.  However, even if this mattered, that the trust was set up for a deceased individual (1st Fed. Am. Compl. ¶¶ 4-5), only dilutes the presumption of deference.  *Sussman v. Bank of Israel*, 801 F. Supp. 1068, 1072 (S.D.N.Y. 1992) (co-plaintiff was suing in representative capacity for a deceased individual, "[a]rguably … dilut[ing] the deference accorded to a home state plaintiff" although the estate was being administered in New York), *aff'd*, 990 F.2d 71 (2d Cir. 1993).  When a plaintiff chooses to invest in a foreign entity it will not be allowed to circumvent the legal formality of its choice.  *Tradex Glob. Master Fund SPC Ltd. v. Palm Beach Capital Mgmt., LLC*, 09-21622-CIV, 2010 WL 717686, at *6 (S.D. Fla. Mar. 1, 2010) ("Thus, it can be argued that Plaintiffs who knowingly invested in a Cayman fund in order to avoid the reach of U.S. taxes now turn to an American court to seek remedy for the fund's alleged fraudulent behavior. Public policy does not favor such an outcome.").  In any event, it is further irrelevant who the beneficiaries have now become.  *See Grupo Dataflux v. Atlas Glob. Group, L.P.*, 541 U.S. 567, 570 (2004) ("It has long been the case that 'the jurisdiction of the court depends upon the state of things at the time of the action brought.'").

Further, even if the residency of successor beneficiaries *were* taken into account, here,

Plaintiffs seek redress for an investment in a foreign country based on alleged fraudulent acts which occurred in that country, so, any normal presumption is diminished. *J.C. Renfroe*, 515 F. at 1274 ("Although courts usually afford deference to a Plaintiff's choice of forum, when 'an American plaintiff chooses to invest in a foreign country and then complains of fraudulent acts occurring primarily in that country, the plaintiff's ability to rely upon citizenship as a talisman against forum non conveniens dismissal is diminished.'"); *Warter*, 380 F. Supp. at 1314 (same); *Sussman*, 801 F. Supp. at 1073 (same); *LaSala v. UBS, AG*, 510 F. Supp. 2d 213, 224 (S.D.N.Y. 2007) (same).

The remaining private interest factors also favor Brazil as the more convenient forum. "Although there is not an exhaustive list of criteria, the private interests courts may weigh include the 'ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing [ ] witnesses ... and all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Kolawole*, 863 F.3d at 1371–72.

Here, the vast majority – indeed, virtually all – of the documents and witnesses are located in Brazil. Ex. B, P. Borba Aff. ¶¶ 5, 8-9; Ex. C, Mendonca Aff. ¶¶ 15-23. The documents located in Brazil are not within the custody or control of the parties to this action, and thus would not be within the subpoena power of this court. This is also evident from a reading of the First Federal Amended Complaint, as shown above. *Banco Latino*, 17 F. Supp. 2d at 1332 (granting *forum non conveniens* motion when "[a]llegations in the complaint implicate the Venezuelan government, Venezuelan banks and companies, and the citizens of Venezuela as victims and perpetrators").

Plaintiffs' fraud allegations are all premised on acts alleged to have occurred in Brazil among Brazilian residents acting as conspirators; alleged bribes and cover-ups by Brazilian insiders, bankers, and politicians; and alleged misrepresentations concerning oil exploration possibilities in Brazil that ultimately induced investors to invest in OGX, a Brazilian oil exploration and production company. For example, the First Federal Amended Complaint alleges that Eike's company, OSX, obtained a shipbuilding contract by bribing "Brazilian officials" through another related entity. 1st Fed. Am. Compl. ¶ 128. These Brazilian officials are not parties to this litigation and are located in Brazil, requiring that these non-party witnesses travel to Miami for trial, assuming they are willing, which is unlikely. The First Federal Amended Complaint is replete with references to witnesses in Brazil, including directors of various companies, bankers, politicians, and others. In addition, a number of relevant witnesses include former OGX employees located in Brazil to understand what knowledge Eike and his alleged co-conspirators supposedly had or did not have of the oil production capabilities. These employees are not within any of the Defendants' control as they were OGX employees and virtually none of them are still employed by OGX. *See* Ex. B, P. Borba Aff. ¶¶ 8-9; Ex. C, Mendonca Aff. ¶¶ 15-22. Indeed, in January 2016, OGX issued a Material Fact Statement reporting that it had reduced its workforce by 40%. Ex. I, Material Fact Statement. Again, to maintain this case in this jurisdiction, these witnesses would have to willingly travel to the United States for trial at an exorbitant cost, which makes their voluntary attendance highly unlikely.[55]

---

[55] *See* 1st Fed. Am. Compl. ¶¶ 234-35 (witnesses include alleged corrupt Brazilian politicians and bankers who allegedly assisted with fraud); *id.* ¶¶ 307 (OGX, LLX, OSX, 63X entities, Centennial entities, WRM entities, 3BX entities and Aux entities insiders and directors in Brazil knew of fraud); *id.* ¶¶ 189-93 (OGX wins bid for exploratory blocks from Brazilian government); *id.* ¶¶ 236-38, 448-52 (Brazilian politicians allegedly bribed in supposed cover-up); *id.* ¶¶ 355-56 (Brazilian high-ranking officials (including former president Rousseff) allegedly corrupted by Defendants); *id.* ¶¶ 376-78 (Brazilian OGX Joint Task Force); *id.* ¶¶ 429-

Fundamentally, this forum lacks adequate access to witnesses as well as documents. Here, as the oil exploration business was in Brazil and the purported fraud is alleged to have been committed in Brazil among Brazilian officials, Brazilian family members, and other Brazilians, Movants anticipate that there will be substantial evidence that will be in Portuguese.  *See* Ex. B, P. Borba Aff. ¶ 6.  A United States forum would implicate significant costs for the parties to bring witnesses here, and hire interpreters and translators for witnesses that only speak Portuguese. Having to interpret the testimony of virtually every witness from Portuguese to English for the judge and jury will essentially double the time necessary for trial and will bog down the trial. The Parties' due process rights will also be impacted because the use of an interpreter will by its very nature change the tone and atmosphere of any direct or cross-examination.  This favors *forum non conveniens* dismissal.  *Da Rocha*, 451 F. Supp. 2d at 1321 (granting *forum non conveniens* motion where, amongst other things, there would be inefficiency due to the need to have translated every document in Portuguese to English).

Further, non-party witnesses cannot be compelled to come to the United States.  Thus, the only real possibility of ensuring their attendance at a trial is for the trial to occur in Brazil.  Non-party witnesses also cannot be compelled to appear in Brazil for depositions because they are illegal in Brazil.[56]  As a result, deposition testimony cannot be obtained from any third-party witness residing in Brazil.  Indeed, the difficulty in obtaining foreign discovery in local cases

---

3155 (Esteves of Brazilian BTG Pactual allegedly made fraudulent announcement); *id.* ¶ 491 (Coutinho, President of the Brazilian development bank, BNDES makes fraudulent announcement).

[56]   Ex. J, U.S. Dep't of State, *Legal Considerations: Brazil*, available at https://travel.state.gov/content/travel/en/legal-considerations/judicial/country/brazil.html, last visited: Aug. 3, 2017 ("Brazilian authorities do not permit persons, such as American attorneys, to take depositions for use in a court in the United States before a U.S. consular officer, with the assistance of a Brazilian attorney, or in any other manner. … Such action potentially could result in the arrest, detention, expulsion, or deportation of the American attorney or other American participants.").

involving primarily foreign litigants has been recognized as a significant private factor in granting, not denying, a motion to dismiss premised upon *forum non conveniens* grounds. *O'Keefe*, 347 Fed. Appx. at 27 (affirming granting of renewed motion to dismiss for *forum non conveniens* when defendant had been unable to obtain evidence in Brazil).

For example, in *Tazoe*, like here, a case involving overwhelming connection with Brazil, the Eleventh Circuit determined that the availability of proof and witnesses favored dismissing the action on *forum non conveniens* grounds to Brazil:

> The record supports the determination that Brazil offers superior "access to sources of proof." The flight wreckage is in Brazil, including the digital flight data recorder and the cockpit voice recorder. The results of five governmental investigations of the accident are also in Brazil. These investigations are likely valuable sources of proof related to the claims and defenses of the parties. The parties will also likely find evidence in Brazil about the measure of damages. These sources of proof comprise a body of relevant evidence, located in Brazil, that is pertinent to both the claims and defenses. … The superior access that Brazil offers to sources of proof favors dismissal.
>
> The Southern District of Florida lacks the authority to compel certain witnesses to attend proceedings in that jurisdiction. The manufacturers have listed dozens of possible witnesses who are citizens of Brazil and outside of the subpoena power of the district court. … [T]he Southern District of Florida lacks "a compulsory process for the attendance of [these] unwilling ... witnesses."

631 F.3d at 1331–32.

Here, in addition, the main Defendant and witness, Eike, is not available to come to the United States to respond to the allegations against him as he is currently under house arrest in Brazil, and this Court does not have the authority to compel the Brazilian government to make Eike appear in this litigation.

In all likelihood, none of these third-party witnesses will appear for trial in Miami and thus the only way to obtain evidence from them is through discovery. Yet, because Brazil is not a party to the Hague Service Convention, 1st Fed. Am. Compl. ¶ 42, this Court would have to issue letters rogatory to obtain evidence from non-party witnesses. *Urban Glob. v. Dibbsbarker*,

10-12615, 2011 WL 2802904, at *6 (E.D. Mich. July 18, 2011); *J.C. Renfroe*, 515 F. Supp. 2d at

1272 (discussing the necessity of obtaining letters rogatory to obtain evidence from non-party

witnesses).  In *Da Rocha*, 451 F. Supp. at 1325, the Southern District of Florida held that:

> [M]any of the most important witnesses and documents are located in Brazil and
> beyond the subpoena power of this court. . . Additionally, the necessity of
> employing translators for the witnesses and to translate every document in
> Portuguese to English will be inefficient, costly and time consuming.  The Court
> also agrees that compelling local jurors to sit on what undoubtedly will be lengthy
> trials to resolve these cases that have no connection whatsoever to this community
> (other than the Plaintiffs' counsel) would impose an unfair burden.

Further, the ability to enforce a judgment is neutral or slightly in favor of Brazil.  A

judgment rendered in Brazil would be enforceable abroad.  Specifically, Florida has a

mechanism to domesticate and enforce foreign judgments from other jurisdictions, including

Brazil.  Fla. Stat. § 55.604.  Courts have held that this is a sufficient consideration in determining

to grant a *forum non conveniens* motion in favor of the alternate forum.  *Del Istmo Assur. Corp.

v. Platon*, 11-61599-CIV, 2011 WL 5508641, at *6 (S.D. Fla. Nov. 9, 2011) ("Some courts have

described the fourth public interest factor as 'enforceability of a judgment.' This public interest

factor also supports trial of this case in Panama.  As Plaintiff points out in its opposition, there is

a Florida statute which permits plaintiffs to domesticate and execute foreign judgments.  Thus,

enforceability of a judgment also weighs in favor of Panama because Florida law explicitly

provides a mechanism to enforce a Panamanian judgment against Florida residents.") (internal

citations omitted).[57]

---

[57] *See also In re Union Carbide Corp. Gas Plant Disaster at Bhopal, India in Dec., 1984*, 809
F.2d 195, 204 (2d Cir. 1987) ("Under New York law, which governs actions brought in New
York to enforce foreign judgments, a foreign-country judgment that is final, conclusive and
enforceable where rendered must be recognized and will be enforced."); *DTEX, LLC v. BBVA
Bancomer, S.A.*, 508 F.3d 785, 801 (5th Cir. 2007) (enforceability of judgment factor did not
weigh against dismissal when plaintiff had not shown why a future judgment from a Mexican
court would not be enforceable in the United States).  Further, even when neither party addresses
this issue, federal courts have determined that the factor is neutral.  *Perez-Lang v. Corp. de*

For the foregoing reasons, the private interest factors favor Brazil as an alternative adequate forum.

## C.  Public Interest Favors Brazil

Similar to the private interest factors, the public interest factors overwhelmingly favor dismissal of this case in favor of Brazil.  "The final prong of *forum non conveniens* is the public factors, which include: (1) the administrative difficulties stemming from court congestion; (2) the interest in having localized controversies decided at home; (3) the interest in having the trial of a diversity case in a forum that is familiar with the law that must govern the action; (4) the avoidance of unnecessary problems of conflict of laws, or the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty."  *Kolawole*, 863 F.3d at 1372.

All of the public factors favor dismissal.  This case lacks any significant connection to the United States.  All of the alleged fraudulent acts arose in Brazil and are related to the Brazilian oil and gas industry sector.  The United States has no interest in resolving a dispute between foreign plaintiffs and almost two-dozen foreign defendants involving a dispute arising from the alleged acts of Brazilian persons in Brazil, particularly where the dispute is already the subject of an insolvency proceeding in Brazil.

Furthermore, the wrongful acts alleged against many of the Defendants currently are under investigation in Brazil.  During the past few years, Brazil has been aggressively investigating and prosecuting corruption.[58]  Its public interest in this case, particularly concerning those allegations involving alleged corruption, unquestionably outweighs that of the

---

*Hoteles, S.A.*, 575 F. Supp. 2d 1345, 1351 (S.D. Fla. 2008) ("Neither the Defendants nor the Plaintiff address this factor. Thus, this Court finds that it neither weighs in favor nor against dismissal of the instant action."), *aff'd*, 325 Fed. Appx. 900 (11th Cir. 2009).

[58] *See* Comp. Ex. G.

United States. *Seguros Universales*, 32 F. Supp. 3d at 1251 (public interest factors favored dismissal when relief requested related to allegations of fraud on the Guatemalan judicial system and extortion of Guatemalan companies); *Connolly v. Kinay*, 11 CIV. 606 RJS, 2012 WL 1027231, at *11 (S.D.N.Y. Mar. 27, 2012) (The Turks and Caicos Islands had strong interest in resolving particular dispute "because it involves allegations of corruption and bribery among TCI government officials … which go to the heart of the TCI government's public function").[59]

In contrast, if this Court were to exercise jurisdiction, it would waste taxpayers' resources for the benefit of foreign Plaintiffs to determine whether a group of Brazilian citizens engaged in fraudulent acts and bribery of Brazilian officials in Brazil.

Clearly, the sheer complexity of this case, as reflected in the 129-page First Federal Amended Complaint filed by Plaintiffs against 30 defendants with 12 counts, would unduly burden this Court and jurors with a dispute with no real connection to the United States. *See Proyectos Orchimex de Costa Rica, S.A. v. E.I. du Pont de Nemours & Co.*, 896 F. Supp. 1197, 1203 (M.D. Fla. 1995) ("The burden, delays and inconvenience to the other civil and criminal litigants in this forum would be enormous. This court's docket would be thrown into chaos. The litigation of these costly cases in this court also would impose a tremendous burden on the citizens of the Middle District of Florida. Scores of citizens from this community would be inconvenienced by being called to serve as jurors in cases involving parties and events having no connection to this forum. The burden of imposing jury duty on citizens to decide a case with no connection to the forum is a significant factor in performing a forum non conveniens analysis. . .

---

[59] *Online Payment Sols. Inc. v. Svenska Handelsbanken AB*, 638 F. Supp. 2d 375, 392 (S.D.N.Y. 2009) (Sweden had particularly strong interest in resolving dispute about Swedish bank's bribes and kickbacks); *MBI Group, Inc. v. Credit Foncier Du Cameroun*, 616 F.3d 568, 576 (D.C. Cir. 2010) ("United States's interest in seeing domestic companies made whole for injuries sustained abroad outweighed by Cameroon's superior interest in a matter involving a development project and official corruption in that country.").

In these cases, the jury duty burden weighs heavily in favor of dismissal.") (internal citations omitted).[60]

In addition, as previously mentioned, the investment entity, OGX, filed bankruptcy and almost all of the Defendants are discharged. The effect of that discharge order should be litigated in the forum where it was entered: Brazil. There is no question that Brazilian law controls the effect of the discharge provision in the Brazilian bankruptcy reorganization plans, which also favors dismissal. *MBI Group*, 616 F.3d at 576 (district court's "unfamiliarity with Cameroonian law" favored dismissal); *Perez-Lang*, 575 F. Supp. at 1353-54 (dismissal proper when Dominican Republic law would have to be considered); *Banco-Latino*, 17 F. Supp. 2d at 1333 ("the possibility that foreign law will apply as to the claims of the other plaintiffs, favors the Venezuelan forum").[61]

Because each of the public factors favors the Brazilian forum, the Court should dismiss this case based on the balance of public factors, in addition to the private factors discussed above.

## CONCLUSION

Movants respectfully request that this Court grant this Motion, dismiss the First Federal Amended Complaint, and grant such other and further relief as is just and proper under the circumstances.

---

[60] *See also McLane*, 960 F. Supp. 2d at 1362 (public factors favored dismissal when trial in this District "would create an unfair burden to potential jurors by asking them to apply foreign law" and because a "South Florida jury would have a minor interest in a litigation stemming from a boating accident involving U.S. citizens in Costa Rica, in which almost all defendants are Costa Rican entities"); *Horberg v. Kerzner Int'l Hotels Ltd.*, 744 F. Supp. 2d 1284, 1295 (S.D. Fla. 2007) ("Compelling local jurors to sit on a trial to resolve this case that has no connection to this community would impose an unfair burden.").

[61] In addition, here, since all of the alleged wrongful actions arose in Brazil and were committed by Brazilians, it is likely that Brazilian law applies to the action.

## <u>CERTIFICATE OF GOOD FAITH CONFERENCE</u>

Pursuant to Local Rule 7.1(a)(3), counsel for Movants hereby certifies that the undersigned has conferred with counsel for Plaintiffs, Hendrik G. Milne, by email and telephone while preparing the joint status report, and counsel for Plaintiffs advised that his clients oppose the relief requested herein.  No defendant opposes this motion.

*/s/ Sujey S. Herrera*　　　　　　
Sujey S. Herrera

February 2, 2018

| | |
|---|---|
| REED SMITH LLP | DLA PIPER LLP |
| 1001 Brickell Bay Drive, 9th Floor | 200 S. Biscayne Blvd., Suite 2500 |
| Miami, FL 33131 | Miami, FL 33131 |
| Telephone: (786) 747-0200 | Telephone: (305) 423-8500 |
| Facsimile: (786) 747-0299 | Facsimile: (305) 437-8131 |

Respectfully submitted,

By: */s/  Sujey S. Herrera*　　　　　
Edward M. Mullins (FBN 863920)
emullins@reedsmith.com
Ana M. Barton (FBN 85721)
abarton@reedsmith.com
Sujey S. Herrera (FBN 92445)
sherrera@reedsmith.com

*Counsel for Batista Defendants*

By: */s/        Harout Samra*　　　　　
Craig Rasile (FBN 613691)
Craig.rasile@dlapiper.com
Harout Samra (FBN 70523)
harout.samra@dlapiper.com

*Counsel for Paulo Mendonça*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed via electronic filing using the CM/ECF filing system with the Clerk of the Court, which sent email notification of such filing to all CM/ECF participants in this case listed on the Service List on February 2, 2018.

*/s/ Sujey S. Herrera*　　　　　　
Sujey S. Herrera
