UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.: 17-CV-23051-KMW/WILLIAMS/TURNOFF

MERIDIAN TRUST COMPANY, as
trustee, and AMERICAN ASSOCIATED
GROUP, LTD.,

    Plaintiffs,

v.

EIKE BATISTA, ELIEZER BATISTA, WERNER BATISTA,
THOR BATISTA, PAULO MENDONÇA, FLAVIO GODINHO,
PAULO GOUVEA, MARCUS BERTO, LUIZ CARNEIRO,
AZIZ BEN AMMAR, ERICK MAGNO, ERICK MAGNO, PL,
BANCO ITAÚ INTERNATIONAL, EFG CAPITAL INTERNATIONAL CORP.,
EFG BANK AG, 63X INVESTMENTS LTD., 63X MASTER FUND,
63X FUND, CENTENNIAL ASSET MINING FUND, LLC,
CENTENNIAL ASSET BRAZILIAN EQUITY FUND LLC,
CENTENNIAL ASSET LTD., WRM1 LLC, WRM2 LLC,
3BX INVESTMENTS, LLC, 3BX INVESTMENT FUND I, LLC,
AUX LUXEMBOURG SARL, AUX LLC, OLIN BATISTA,
FLAVIA SAMPAIO and LUMA DE OLIVEIRA,

    Defendants.

_____/

**EFG CAPITAL INTERNATIONAL CORP.'S AND BANCO ITAÚ
INTERNATIONAL'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO
DISMISS THE FIRST FEDERAL AMENDED COMPLAINT WITH PREJUDICE**

Tracy Nichols
Louise McAlpin
**HOLLAND & KNIGHT LLP**
701 Brickell Avenue, Suite 3300
Miami, Florida 33131

*Counsel for EFG Capital International
Corp. and Banco Itaú International*

Jay B. Kasner, Esq.
Scott D. Musoff, Esq.
**SKADDEN, ARPS, SLATE,**
 **MEAGHER & FLOM LLP**
4 Times Square
New York, New York 10036

*Counsel for Banco Itaú International*

## TABLE OF CONTENTS

**Page**

I.  PLAINTIFFS FAIL TO STATE AIDING AND ABETTING FRAUD AND CIVIL THEFT, CONSPIRACY TO DEFRAUD AND COMMIT THEFT, RICO OR RICO CONSPIRACY CLAIMS AGAINST ITAÚ MIAMI ........................................................2

II. THERE IS NO PRIVATE CAUSE OF ACTION FOR ALLEGED REGULATORY VIOLATIONS ................................................................................................................7

III. THE CONSPIRACY TO COMMIT FUFTA CLAIM IS FATALLY FLAWED...............8

In their Opposition Memorandum, Plaintiffs ignore virtually every case and argument raised by the Banks.[1]  Instead, Plaintiffs tell two "stories" -- a "public" and a "secret" one. Plaintiffs posit, without any facts, that EFG Capital and Itaú Miami willingly turned a blind eye to the alleged OGX Bond Sales,[2] failed to stop gains from those sales from moving out of Brazil, and so were accomplices in the "secret story."  Plaintiffs do not contest the fact that neither Bank had any involvement in the sale of the OGX Bonds.

Plaintiffs are indeed storytellers.  They have spun a tall tale of innuendo and speculation that is long on hyperbole[3] but short on the well-pled allegations required to state any claim against either of the Banks.  Nowhere in the 129-page Amended Complaint are there facts that show either bank had "<u>actual knowledge</u>" of the alleged OGX fraud.  Instead, the Opposition is replete with "could have," "should have," and "must have" speculations that fall well short of establishing actual knowledge of the "secret story."  Plaintiffs do not even address the overwhelming authority in the Eleventh Circuit that banks generally have no duty to non-customers and, even when faced with red flags, no duty to investigate suspicious transactions.

---

[1] Of the 70 cases cited in the Motion to Dismiss (the "Motion"), the Opposition Memo ("Opp.") mentions only four, two of which are *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) dealing with the applicable pleading standard.

[2] This Reply Memorandum uses the same short-hand terms as defined in the Banks' Motion.

[3] Perhaps the most telling example of Plaintiffs' "never let the facts get in the way of a good story" approach is their silly contention that Itaú Miami admitted in the Motion that it engaged in money laundering.  Opp. at 1-2, 18, 46.  Citing to a supposed internet address from Ireland, a foreign jurisdiction whose laws are not applicable here, Plaintiffs claim that "round-tripping" is a form of money-laundering and that by using the short-hand term to describe the Customer Transfers as alleged in the Amended Complaint -- transfers by and between Batista and entities he allegedly controlled -- the Bank admitted to a criminal violation.  Nonsense.  By <u>assuming</u> the truth of Plaintiffs' allegations (as is required at the motion to dismiss stage), Itaú Miami did not <u>admit</u> the alleged facts were true.  On the contrary, in the Motion, Itaú Miami expressly <u>denied</u> that it engaged in money laundering.  Motion at 27 ("[E]ven assuming Plaintiffs are correct that the Banks' activities amount to money laundering (<u>which they do not</u>), there is no civil remedy for any such conduct.") (emphasis added).  The purported "admission" concocted by Plaintiffs is more fictional storytelling.

1

The one Eleventh Circuit case they rely on, *Chang v. JPMorgan Chase Bank, N.A.,* 845 F.3d 1087 (11th Cir. 2017), shows the high pleading hurdle they have and cannot overcome to show actual knowledge.

Moreover, the assertion that the Banks should have discovered the fraud if they had been following regulatory obligations is speculative at best. Plaintiffs allege no instance of communication between either bank and any third-party that would support a plausible inference that either entered into an agreement to defraud the Plaintiffs. And Plaintiffs fail to distinguish *Freeman v. First Union Nat'l Bank*, 865 So. 2d 1272, 1277 (Fla. 2004)*,* the Florida Supreme Court precedent that guts their FUFTA conspiracy claim against the non-transferee Banks here.

It is time to write the conclusion of the fictional tale against the Banks. Even assuming the truth of the non-conclusory allegations in the Amended Complaint, and drawing all reasonable inferences from those allegations in Plaintiffs' favor, the Amended Complaint falls short of the demanding standards imposed by the Eleventh Circuit for non-customers to state a claim against a bank for carrying out routine financial duties.

I. **PLAINTIFFS FAIL TO STATE AIDING AND ABETTING FRAUD AND CIVIL THEFT, CONSPIRACY TO DEFRAUD AND COMMIT THEFT, RICO OR RICO CONSPIRACY CLAIMS AGAINST ITAÚ MIAMI**

Itaú Miami argued for dismissal of claims against it for aiding and abetting fraud and civil theft, conspiracy to defraud and commit theft, RICO and RICO conspiracy. Plaintiffs conceded the insufficiency of those claims by ignoring all of those arguments but one, and that single argument goes to only one of the multiple elements of aiding and abetting liability.[4] Plaintiffs insist that Itaú Miami "should have known" about the underlying alleged OGX Bond Sales and should have taken action (that it was not allowed to take under Florida law) to help

---

[4] Plaintiffs fail to address and therefore admit that they cannot allege that the Bank engaged in substantial assistance. Inaction, or failing to stop a fraud, can only be substantial assistance when a bank owes a duty to the plaintiff. *See* Motion at 12-13.

2

unidentified strangers collect on a possible future judgment. As a matter of Florida law, that insistence does not suffice to support an aiding and abetting claim, because banks generally have no duty to non-customers, nor do they have any duty to investigate suspicious transactions, even in the face of red flags. Motion at 9-12.[5] In addition, an aiding and abetting claim against a bank must be dismissed unless it is supported with specific facts demonstrating the bank's actual knowledge of the underlying fraud. *Id.* at 8-10.[6]

Ignoring these rules of law, Plaintiffs contend that they have stated a cognizable aiding and abetting claim against Itaú Miami through allegations that: there was a private banking relationship between Batista and the Bank; the Bank had regulatory duties to know its customers ("KYC") and to monitor customer accounts for suspicious activity; large sums of money were transferred by, or on behalf of, Batista to or from "foreign secrecy jurisdictions;" non-party affiliates of the Bank made loans to Batista; and an OGX Joint Task Force issued an internal report in September 2012 allegedly revealing there was virtually no oil at OGX. Opp. at 13-15.

In support of these contentions, the Opposition cites to a single case, *Chang*, in which the Eleventh Circuit recognized an exception to the general rule that banks owe no duties to non-customers and found the non-customer's allegations supported a plausible inference that the bank actually knew of the underlying fraud. 845 F.3d at 1094. The complaint in that case alleged that a specific bank officer was paid off to conceal the fraud and so participated in it.

---

[5] *See e.g., Megaval Enters., Ltd. v. Bank of America, N.A.,* No. 14-20909-CIV-WILLIAMS, 2014 WL 12609318, at *4 (Oct. 8, 2014) (bank owes no duty to non-customers); *Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 947-50 (11th Cir. 2014) (holding that despite red flags or suspicious activity, bank had no duty to monitor challenged transactions).

[6] For their suggestion that the standard should be relaxed here, Plaintiffs cite to cases giving courts discretion in complex fraud actions to marginally relax Rule 9(b)'s standard for pleading the "who, what, where and when" of allegedly false statements. Opp. at 22-23. Because none of the claims against the Banks are premised upon any fraudulent misrepresentation (*i.e.*, any allegedly false statements by the Banks), those cases do not apply.

3

*Chang* undermines, rather than supports, Plaintiffs' aiding and abetting claim. *Chang* involved a fraudulent scheme by the owner of a title company who stole money from his clients' escrow funds. Plaintiff Chang sued the bank which custodied the escrowed funds for aiding and abetting the fraud. On appeal, the Eleventh Circuit recognized the rule that banks owe no duties to non-customers. The Court also recognized an exception to the rule, holding a bank may be liable to a non-customer when: 1) a fiduciary relationship existed between the customer and the noncustomer; 2) the bank knew or should have known of the fiduciary relationship, and 3) the bank actually knew of its customer's wrongdoing. *Id.* at 1094-95. All three elements were satisfied in that case. The Eleventh Circuit found that a plausible inference of actual knowledge by the bank was established by allegations that a specifically identified bank officer had:

- opened and labelled the account as an "escrow account" even though the title company fraudster had not complied with procedures for opening an escrow account;

- written a letter on bank letterhead saying the escrow account had "seven figures" when she knew the balance was less than $100,000; and

- she received an apparent *quid pro quo* payment of $100,000 from the fraudster

*Id.* at 1091.[7]

This case does not resemble *Chang*, not even remotely. Plaintiffs have not identified a single person at Itaú Miami, much less alleged what she knew and when she knew it.[8] There are

---

[7]Because of the demanding actual knowledge standard, courts in this Circuit closely scrutinize aiding and abetting claims and have allowed only a few that were founded upon an alleged plausible inference of actual knowledge to proceed past the pleading stage. *See Perlman v. Wells Fargo Bank, N.A.,* 559 F. App'x 988, 996 (11th Cir. 2014) (finding proposed amended complaint demonstrated a plausible inference that bank had actual knowledge of Ponzi scheme and failed to timely close affected accounts based on allegations that: the bank had opened an internal investigation into suspicious activity in the account; a bank vice president's testimony that shortly after the investigation was assigned to her she concluded that the account activity was so unusual that it "raise[d] the hair on the back of [her] neck;" bank employees contacted law enforcement and the IRS about the suspected unlawful activity; and there was an internal report documenting suspicious activity and concluding that the accounts should be closed immediately).

4

no specific allegations that anyone at Itaú Miami actually knew about the alleged OGX Bond Sales fraud or that any Customer Transfers were allegedly fraudulent.[9]

Only one allegation purports to allege actual knowledge, and that allegation is implausible for at least three reasons. Plaintiffs nonsensically assert that Itaú Miami actually knew of the internal OGX Joint Task Force report that was concealed from all but Batista's inner circle. It is implausible to speculate that a private bank having custody of Batista's personal accounts would have access to a (deeply secret) corporate document of a company with no account at Itaú Miami. It is implausible to speculate that knowledge alleged to be held by separate corporate entities (here, Itaú banks in Brazil and Nassau) found its way (in some unalleged manner) to Itaú Miami.[10] And it is implausible to speculate that Itaú Miami's affiliates, allegedly having knowledge of this secret report, would loan millions to Batista and his companies. This Court need not accept such implausible allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Plaintiffs also ask the Court to infer actual knowledge from Itaú Miami's KYC and other regulatory obligations.[11] Several courts have rejected making that exact inferential leap, holding

---

[8] Nowhere have Plaintiffs alleged that Batista or his personal companies had a fiduciary relationship with these Plaintiffs. They certainly do not allege that Itaú Miami knew or should have known of any such fiduciary relationship.

[9] At best, the allegations support an inference that the Bank knew only that it was making transfers of large sums of money to and from Batista-related accounts -- unremarkable events given that Batista was one of the richest men in the world at the time. There are no well-pled facts suggesting that any Bank personnel knew those funds did not rightfully belong to Batista or that they were somehow tainted by an earlier underlying fraud.

[10] Even if the Complaint had specific allegations of knowledge by another Itaú entity (which we do not concede it does), Plaintiffs fail to address and therefore concede the argument that it is not legally permissible to impute such knowledge to Itaú Miami. Motion at 12.

[11] Although actual knowledge is not an element of the one claim against EFG Capital - conspiracy to commit FUFTA – in an apparent attempt to impugn EFG Capital and to show it was a conspirator which somehow agreed to participate in the OGX Bond Sales fraud, Plaintiffs also conclude, without any underlying facts, that "[i]t is impossible that EFG [Capital] did not

that "Know Your Customer Rules and . . . [other] monitoring requirements . . . at most speak to whether [a financial institution] should have known of the fraud; <u>they do not reflect actual knowledge of fraud</u>." *Berman v. Morgan Keegan & Co. Inc.*, No. 10 Civ. 5866 (PKC), 2011 WL 1002683, at *10 (S.D.N.Y. March 14, 2011) (emphasis added).[12] To hold otherwise would result in finding financial institutions "liable for aiding and abetting fraud every time a fraudster used … accounts in service of its fraud in a detectable manner. That is not the law." *Id.* at 95-6.

Moreover, Plaintiffs' contention that actual knowledge should be imputed to Itaú Miami because it had a private banking relationship with Batista and significant funds were transferred to or from "foreign secrecy jurisdictions" would imply civil liability against most banks servicing wealthy customers worldwide, including most banks in South Florida.[13] Courts repeatedly have rejected such "red flag" allegations as insufficient to allege a bank's actual

---

understand that they were being asked to hide money from Batista creditors." Opp. at 20. But where, as here, Plaintiffs admit EFG Capital had no prior relationship with Batista and they include no facts to support their specious assumption that EFG Capital was aware of the underlying fraud, the inferential leap they suggest this Court take is akin to bounding the Grand Canyon.

[12] *See also Liu Yao-Yi v. Wilmington Trust Co.*, 6:14-CV-06631, at *10 (W.D.N.Y. Sept. 27, 2017) (finding KYC obligations, "at most could only create a plausible inference of <u>constructive</u> knowledge of potential misconduct," not the actual knowledge to necessary to state an aiding and abetting fraud claim) (emphasis in original); *Berman v. Morgan Keegan & Co.,* 455 F. App'x 92, 95 (2d Cir. 2012) (holding KYC "obligations are, standing alone, far from sufficient to support a strong inference that" a brokerage firm obliged to monitor an account holder pursuant to regulatory rules "had actual knowledge of [the account holder's] fraud.").

[13] Financial transactions are not suspect merely because they are executed on behalf of a client incorporated in what some have called a secrecy jurisdiction. For example, Plaintiffs are incorporated in Nevis and Cayman Islands. Am. Compl. at ¶¶ 3, 5. The U.S. State Department has reported that Nevis has "unusually strong secrecy laws" which are "problematic" and "remains susceptible to corruption and money laundering," U.S. Dep't of St., Bureau of Int'l Narcotics & Law Enforcement Affairs, 2014 Int'l Narcotics Control Strategy Rpt., Countries/Jurisdictions of Primary Concern - St. Kitts and Nevis, https://www.state.gov/j/inl/rls/nrcrpt/2014/supplemental/228005.htm, and that the Cayman Islands attracts "those seeking to evade taxes in their home jurisdictions". Countries/Jurisdictions of Primary Concern – Cayman Islands, https://www.state.gov/j/inl/rls/nrcrpt/2014/supplemental/227750.htm.

6

knowledge of an underlying fraud.[14] Because the Amended Complaint relies on mere "should have known" allegations, it is no different than, and should face the same result as, those cases: dismissal for failure to allege actual knowledge.

In addition, Plaintiffs have ignored the many other elements essential to stating claims for aiding and abetting fraud and civil theft, conspiracy to defraud and commit theft, RICO and RICO conspiracy. For the reasons set forth in the Motion, those claims against Itaú Miami must be dismissed.

## II. THERE IS NO PRIVATE CAUSE OF ACTION FOR ALLEGED REGULATORY VIOLATIONS

Plaintiffs admit there is no private right of action under the Bank Secrecy Act for a bank's failure to comply with KYC and other regulatory monitoring requirements. Opp. at 15 n.15. In a futile attempt to salvage their claims against the Banks, Plaintiffs now claim they are not seeking to impose civil liability against the Banks for non-compliance with regulatory monitoring obligations. Instead, Plaintiffs contend that the repeated references in the Amended Complaint to the Banks' alleged non-compliance with their regulatory obligations were included only to support an inference that, as a result of the Banks' regulatory duties to inquire and monitor customer accounts, the Banks actually knew of the OGX Bond Sales fraud. *Id.*

However, try as Plaintiffs might to re-characterize the Amended Complaint, their claims against the Banks should be dismissed as a matter of law because they seek to hold the Banks liable for failing to comply with regulatory obligations. The single claim asserted against EFG Capital – Conspiracy to Violate FUFTA – improperly accuses a financial institution of not complying with its KYC obligations and improperly onboarding the Batista Family Trust as a

---

[14] Motion at 8-11 (citing, *e.g.*, *Isaiah v. JPMorgan Chase Bank, N.A.*, No. 16-CIV-21771-MARTINEZ, 2017 WL 5514370, at *2-3 (S.D. Fla. Nov. 14, 2017) (holding that bank's close business relationship with fraudster, red flags, and suspicious bank activity did not satisfy actual knowledge standard).

customer. Am. Compl. ¶ 162. And Plaintiffs' conclusory allegations of money laundering and willful blindness of the fraud by Itaú Miami attempt to state a private cause of action for purported violations of federal laws and banking regulations that are enforceable only by the government, not private citizens. This Court should not countenance Plaintiffs' back-door attempt to plead a private cause of action where none exists. *See* Motion at 26-29.

### III. THE CONSPIRACY TO COMMIT FUFTA CLAIM IS FATALLY FLAWED[15]

*Freeman* prohibits a private cause of action for money damages against non-transferee parties, like the Banks here, who allegedly assist others in making fraudulent transfers.[16] 865 So. 2d at 1277. Despite this Florida Supreme Court precedent, Plaintiffs nevertheless claim that Count 12 should not be dismissed because "a cause of action for FUFTA conspiracy exists" in Florida. Opp. at 50. The majority of cases, however, disagree with Plaintiffs' contention.[17]

The two cases Plaintiffs cite in support of their position are clearly distinguishable on their facts. *Landmark Bank v. Community Choice Fin., Inc.*, No. 17-60974-CIV-ALTONAGA, 2017 WL 4310754, *18-19 (S.D. Fla. Sept. 28, 2017), involved defendants who, unlike the non-transferee Banks here, were transferees. In *Canon Latin America, Inc. v. Lantech,* No. 08-

---

[15] The Amended Complaint clearly does not name either of the banks in Count 11, the primary FUFTA claim. But the Opposition implies otherwise. *See* Opp. at 43-46. This results either from a mistake, a misimpression, or another application of "don't let the facts get in the way of a good story." Plaintiffs never pled the primary FUFTA count against either bank.

[16] Plaintiffs' recently-filed Notice of Supplemental Authority (citing to cases that are more than 10 years old) [ECF 93], proves the point that only transferees and transferors may be liable for money damages under FUFTA, not non-transferee banks.

[17] *See Danzas Taiwan, Ltd.*, 868 So. 2d 537, 538 (Fla. 3rd DCA 2003) (holding there is no cause of action against non-transferee for conspiracy to engage in a fraudulent transfer); *In re Ernie Haire Ford, Inc.*, 459 B.R. 824, 841-41 (M.D. Fla. Bankr. 2011) (interpreting *Freeman* as barring conspiracy to commit fraudulent transfer claim against non-transferees); *Bankfirst v. UBS Paine Webber, Inc.*, 842 So. 2d 155 (Fla. 5th DCA 2003) (rejecting cause of action against non-transferee who allegedly conspired with others to hinder and delay bank's collection of its debt by fraudulently transferring assets); *see also Crystallex Int'l Corp. v. Petroleos De Venezuela, S.A.*, 879 F.3d 79, 89 (3rd Cir. 2018) (holding there is no viable claim for conspiring to commit a fraudulent transfer under DUFTA, the Delaware equivalent to FUFTA).

8

21518-CIV-JORDAN, 2009 WL 10664392, *4 (S.D. Fla. April 29, 2009), there was no claim against a bank. Instead, the claim was against individuals (the alter ego of the fraudster and the fraudster's lawyer) who personally effected fraudulent transfers.

But even assuming *arguendo* that such a FUFTA conspiracy claim exists under Florida law,[18] Plaintiffs have failed to allege facts to support a plausible inference that either of the Banks affirmatively agreed with anyone to assist in the movement of ill-gotten gains away from creditors. As explained *supra* and in the Motion, there has been no showing that the Banks actually knew of the underlying fraud, so there certainly can be no plausible inference that they agreed to participate in a fraudulent scheme of which they had no knowledge. Motion at 8-12. Moreover, where, as here, the Banks were required under Florida law, absent a restraining or other court order instructing otherwise, to follow their customers' transfer directives, *see id.* at 14 n.3, they did not, as a matter of law, "agree" to make the Customer Transfers or to engage in any other supposedly wrongful conduct. Without additional allegations that the Banks did something other than execute Customer Transfers which they were obligated to make, there is no showing of any agreement or overt act upon which a conspiracy claim may be founded.

Nor does EFG Capital's alleged disregard of Batista's high-risk status during the onboarding of the Batista Family Trust account relationship form the basis of a conspiracy claim. Plaintiffs have pointed to no case law, nor have we found any, that supports any claim that a

---

[18] Even if Florida recognized a FUFTA conspiracy claim, Count 12, as pled, must be dismissed. The underlying wrong upon which the alleged conspiracy in Count 12 is predicated is the Bank's alleged aiding and abetting a FUFTA violation. *See* Am. Comp. at ¶608 (stating the Banks "agreed and conspired" with the other Defendants "by assisting in the transfer of funds" in and out of accounts in Florida and elsewhere). Because, pursuant to *Freeman*, there is no viable cause of action in Florida for aiding and abetting a FUFTA violation, Plaintiffs have failed to allege the necessary underlying wrong to support a cognizable conspiracy claim. *See In re Ernie Haire Ford,* 49 B.R. at 842 (holding there can be no claim for conspiracy unless "[t]he underlying tort . . . [is] recognized by Florida law.").

9

financial institution's alleged deficient onboarding of a customer – even a high risk one – can serve as the basis for any civil conspiracy. This absence of authority further supports the notion that the policing of a financial institution's onboarding procedures is within the exclusive purview of the government, not private parties, like the Plaintiffs here.

Finally, as demonstrated in the Motion (and not refuted in the Opposition),[19] Plaintiffs' own allegations make it clear that most of the transactions challenged by them are not actionable under FUFTA because Batista, who was supposedly transferring funds to and from himself and entities he controlled, never relinquished control over the funds.[20] Without any underlying transfer of funds as defined by FUFTA, and thus no overt act by the Banks, there can be no claim against them for conspiring to make the Customer Transfers.

Based on the arguments herein and in the Motion, the Banks respectfully request that all counts in the Amended Complaint against them be dismissed with prejudice.[21]

---

[19] Plaintiffs' silence on this and many other legal arguments raised in the Motion speaks volumes of their inability to successfully refute the Banks' legal arguments. In addition to those noted *supra*, the Opposition also does not address the following arguments in the Motion which provide additional grounds for the dismissal of any remaining claims against the Banks: there is no underlying tort of fraud or civil theft to support an aiding and abetting claim against Itaú Miami (Motion at 6-8); Itaú Miami's inaction in not stopping the Challenged Transfers does not amount to substantial assistance because the Bank had no underlying duty to the non-customer Plaintiffs (*Id.* at 12-14); and Plaintiffs lack RICO standing because they suffered no direct injury from any acts by Itaú Miami (*Id.* at 19-21).

[20] *Id.* at 25-26; *see also Isaiah*, 2017 WL 5514370 at *2 (dismissing FUFTA claim against bank with prejudice because "[t]here does not appear to be any set of facts that could support a FUFTA claim against a bank, particularly if that bank was only providing routine banking services to an alleged FUFTA debtor and not taking control and dominion over the funds in question.").

[21] There should be no sequel to Plaintiffs' fictional tale. Despite the benefit of discovery from proceedings in the Bahamas and Cayman Islands (Am. Compl. at 533-35) and an amendment to their initial Complaint in this Court, Plaintiffs are still unable to state a cognizable claim against the Banks and any future attempts to do so would be futile. *See Lawrence v. Bank of America, N.A.*, 455 F. App'x 904, *3 (11th Cir. 2012) (affirming dismissal with prejudice of aiding and abetting claims against bank because amendment would have been futile).

Respectfully submitted this 3rd day of May, 2018.

                HOLLAND & KNIGHT LLP
                701 Brickell Avenue
                Suite 3300
                Miami, Florida 33131
                Tel:  305-384-8500
                Fax: 305-789-7799

By: s/ Tracy A. Nichols
      Tracy A. Nichols, Esq.
      Florida Bar No.: 454567
      tracy.nichols@hklaw.com
      Jose A Casal, Esq.
      Florida Bar No.: 767522
      Jose.Casal@hklaw.com
      Louise McAlpin, Esq.
      Florida Bar No.: 983810
      Louise.mcalpin@hklaw.com
      Christopher N. Bellows, Esq.
      Florida Bar No.: 512745
      christopher.bellows@hklaw.com

*Attorneys for EFG Capital International Corp. and Banco Itaú International*

Jay B. Kasner, Esq.
Jay.kasner@skadden.com
Scott D. Musoff, Esq.
Scott.musoff@skadden.com
**SKADDEN, ARPS, SLATE,**
**MEAGHER & FLOM LLP**
4 Times Square
New York, New York 10036
Tel: 212-735-3000
Fax: 212-735.2000

*Counsel for Banco Itaú International*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 3, 2018 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record in the State court via email and U.S. Mail.

s/ Tracy A. Nichols
Tracy A. Nichols, Esq**.**

#56675352_v6