UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 17-CV-23051-KMW

MERIDIAN TRUST COMPANY, as
trustee, and AMERICAN ASSOCIATED
GROUP, LTD.,

          Plaintiffs,

v.

EIKE BATISTA, *et al.*

          Defendants.

_____/

**BATISTA DEFENDANTS' AND PAULO MENDONÇA'S REPLY IN
SUPPORT OF MOTION TO DISMISS ON *FORUM NON CONVENIENS* GROUNDS**

**REED SMITH LLP**
1001 Brickell Bay Drive, 9th Floor
Miami, FL 33131
Telephone: (786) 747-0200
Facsimile: (786) 747-0299

Edward M. Mullins (FBN 863920)
emullins@reedsmith.com
Ana M. Barton (FBN 85721)
abarton@reedsmith.com
Sujey S. Herrera (FBN 92445)
sherrera@reedsmith.com

*Counsel for Batista Defendants*

**DLA PIPER LLP**
200 S. Biscayne Blvd., Suite 2500
Miami, FL 33131
Telephone: (305) 423-8500
Facsimile: (305) 437-8131

Craig Rasile (FBN 613691)
Craig.rasile@dlapiper.com
Harout Samra (FBN 70523)
harout.samra@dlapiper.com

*Counsel for Paulo Mendonça*

It is now clear that the most convenient forum to establish whether Plaintiffs were defrauded is Brazil, which is the jurisdiction in which Plaintiffs invested, where the oil exploration business at issue was located, and where the alleged fraud arises.  In their response (DE 97) to the Motion to Dismiss for Forum Non Conveniens (DE 85) (the "Motion"), Plaintiffs have failed to show that Brazil is not an adequate or available forum for this litigation, and further, that the private and public interest factors favor this Court's consideration of a Brazilian dispute.

Rather, Plaintiffs initially contend that not all the defendants have joined in the Motion and thus FNC dismissal is somehow improper.  (DE 97 at 1-2).  Yet, under Local Rule 7.1(c) of this Court, the failure to oppose any motion is grounds for granting the motion by default for those defendants.[1]  The non-moving Defendants have consented to the Motion by not opposing.[2]

Plaintiffs next undermine their own arguments by admitting that this case has two **interlocking** parts: "(1) racketeering and other 'fraud-based claims,' and (2) claims under FUFTA."  (DE 97 at 1).  Movants agree that these claims are interlocking insofar as Plaintiffs do not have FUFTA claims at all unless they can establish their other merits claims.  Further undermining the Plaintiffs' assertions regarding the convenience of Brazil, since the Motion was filed, the principal defendant, Eike Batista, has been sentenced to prison in Brazil for alleged bribery of a Governor in connection with other projects.[3]  A number of the Moving Defendants also reside in Brazil.  Hence, it would deprive the Defendants of their due process rights if the main

---

[1] *Rollaguard Security, LLC v. Piedmont Hawthorne Aviation, LLC*, 2016 WL 7431258, at *1 (S.D. Fla. Jan. 20, 2016) ("[F]ailure to respond to Defendant's Motion within the time permitted may be deemed sufficient cause for granting the Motion by default.")

[2] It is likewise unavailing that certain Batista Defendants did not file an FNC motion in State court.  (DE 97 at 2).  Certain defendants (Werner, the Centennial Entities, and the 63X Entities) timely filed a FNC Motion on April 5, 2017.  There was no need for all the defendants to join.  In any event, there is no time limit to move to dismiss on FNC grounds in federal court.  *See Lopez v. Rica Foods, Inc.*, 333 Fed. Appx. 462, 464 (11th Cir. 2009) (district court did not abuse its discretion in granting FNC motion filed two and a half years after the initial complaint).

[3] *See* Ex. A, Eike Batista; Brazilian ex-billionaire jailed for bribery (BBC News July 3, 2018).

alleged instigator of the purported fraud cannot defend himself and explain his version of what happened.  In contrast, a Brazilian court would be able to compel Eike Batista and other Brazilian defendants to appear in court.[4]  The Motion should thus be granted.[5]

## MEMORANDUM OF LAW

I. **Plaintiffs Have Failed to Show that Brazil is Not Adequate or Available.**

"To successfully move for dismissal based upon forum non conveniens, a defendant must demonstrate both that (1) an adequate, alternative forum is available and (2) the public and private factors weigh in favor of dismissal."  *Kolawole v. Sellers*, 863 F.3d 1361, 1369 (11th Cir. 2017).  "Demonstrating the availability of a forum **is not an especially onerous burden** for a defendant seeking dismissal for forum non conveniens.  A forum is generally deemed available if the defendant is amenable to process in the other jurisdiction."  *Id.* (emphasis added).  Thus, Plaintiffs have failed to overcome this exceedingly low burden.  Brazil already has been deemed adequate and available in multiple proceedings,[6] while Plaintiffs fail to cite a single case finding Brazil to be inadequate or unavailable.[7]

---

[4] DE 85-1 ¶ 28.

[5] Plaintiffs cite a number of cases where US-based defendants seek to go to a foreign country.  DE 97 at 4.  Movants are either foreigners and former Brazilian residents, or holding companies for foreigners.  The defendants need to be in Brazil to defend the case.

[6] *Tazoe v. Airbus S.A.S.*, 631 F. 3d 1321 (11th Cir. 2011) (Brazil adequate and available); *O'Keefe v. Noble Drilling Corp.*, 347 F. App'x 27 (5th Cir. 2009) (same); *Moskovits v. Moskovits*, 150 F. App'x 101 (2d Cir. 2005) (same); *Da Rocha v. Bell Helicopter Textron, Inc.*, 451 F. Supp. 2d 1318 (S.D. Fla. 2006) (same); C*roesus EMTR Master Fund L.P. v. Federative Republic of Brazil*, 212 F. Supp. 2d 30 (D.D.C. 2002) (same); *In re Air Crash Near Peixoto De Azeveda, Brazil*, 574 F. Supp. 2d 272 (E.D.N.Y. 2008) (same); *Indusoft, Inc. v. Taccolini*, 560 F. App'x 245 (5th Cir. 2014) (same); *Construtora Norbeto Oderbrecht S.A. v. General Elec. Co.*, 2007 WL 3025699 (S.D.N.Y. Oct. 12, 2007) (same); *Platypus Wear, Inc. v. Clarke Modet & Co., Inc.*, 2008 WL 186637 (S.D. Fla. Jan. 18, 2008) (same); *Kyla Shipping Co. v. Shanghai Zhenhua Heavy Indus. Co., Ltd.*, 2012 WL 1565634, at *8 (S.D. Ala. Apr. 30, 2012) (same).

[7] Plaintiffs principally cite one case where a matter was not transferred to Brazil, *EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro S.A.*, 246 F. Supp. 3d 52 (D.D.C. 2017), but this case was **not** decided on the adequacy or availability of the forum, but rather "unique" private factors,

Plaintiffs raise the following meritless arguments in support of their contention that Brazil is not adequate or available: 1) there are "[n]o reasonably similar claims available"; 2) there exists "[n]o jurisdiction over most defendants"; 3) "[a]ll claims are probably statute barred"; 4) "[a]ll claims are allegedly barred by the OGX Reorganization Plan"; 5) "[i]nadequate evidentiary processes"; and 6) Brazil is "[a] grossly corrupt and inefficient forum."  Each fails.

### A.  **Plaintiffs Have Reasonably Similar Claims in Brazil That They Could Bring.**

In their Response, Plaintiffs argue that "what would be theoretically available in Brazil would be nothing like the case plead in Florida."  (DE 97 at 20).  Yet, Plaintiffs admit that they would at least have a fraud claim in Brazil against "officers and directors of OGX".  *Id.*  Plaintiffs thus concede the availability and adequacy of Brazil as U.S. law does not require identical causes of action or even relief.[8]

Moreover, it is not true that fraud is the only claim available to Plaintiffs in Brazil.  Marcelo Carpenter, Movants' Brazilian law expert and international litigator, testified under cross-examination that the following causes of action were available to Plaintiffs based on the

---

including, that Petrobras already was defending a securities class action in the United States and the evidentiary issues were already ameliorated by Petrobras as a result.  *Id.* at 79-81. Even with these facts, which are not present here, the Court found the private factors slightly favored Brazil.  *Id.*  FNC dismissal ultimately was denied because the narrow favoring of Brazil on the private factors and the public factors being found at equipoise.  *Shonac Corp. v. Marquesa Intern. Corp.*, 1988 WL 50601, at *1 (D.N.J. May 19, 1988), and *City Pension Fund for Firefighters & Police Officers v. Aracruz Cellulose S.A.*, 41 F. Supp. 3d 1369, 1410 (S.D. Fla. 2011), likewise were not decided based on the adequacy or availability of Brazil, but rather on weighing the private and public factors, in light of claims brought by American plaintiffs.  *See also Manela v. Garantia Banking Ltd.*, 940 F. Supp. 584, 597 (S.D.N.Y. 1996) (based on weighing of public and private factors and consideration that principal defendant was a New York resident).  Here, as shown in the Motion and *infra*, there are no American plaintiffs, the principal alleged wrongdoers are Brazilian, the private interest factors overwhelmingly favor dismissal and the public interest factors also favor a Brazilian forum.

[8] *Seguros Universales, S.A. v. Microsoft Corp.*, 32 F. Supp. 3d 1242, 1249 (S.D. Fla. 2014) ("Adequacy of forum does not require the availability of identical causes of action."); *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 951–52 (11th Cir. 1997) (unavailability of RICO claim did not make Panama an inadequate forum).

allegations in the First Federal Amended Complaint:  1) a claim under Article 927 of the Brazilian Civil Code arising from any unlawful or illicit act which causes loss to another;[9] 2) fraud against creditors under article 158 of the Brazilian Civil Code, which he explained applies "when a person transfer[s] assets to [an]other person without remaining with enough assets to pay the outstanding debt, the existing debt, that transfer can be considered null and void, and the creditors can try to put aside the transfer and take the asset back";[10] 3) article 145 of the Brazilian Civil Code for willful misconduct or "dolo";[11] 4) article 884 of the Brazilian Civil Code related to unjust enrichment;[12] and 5) use of the Corporation Act (6404 of 1976) which addresses "false advertisement, dealing with the obligation of the management to act in good faith, responsible" to establish a wrong under Article 927.[13]  Carpenter also explained that Plaintiffs could bring a claim against conspirators for aiding in the commission of an illicit act, which is itself illicit.[14]

Plaintiffs' Brazilian law "expert," transactional lawyer[15] Marcelo Augusto de Oliveira, does not dispute that these causes of action exist in Brazil.  Instead, he simply claims, wrongly, that a Brazilian court would lack jurisdiction over non-residents and that while "rough equivalent[s]" of Plaintiffs' claims exist in Brazil, their "definitions" are different. [DE 97-16 ¶¶ 43, 51].  Accordingly, Oliveira admitted in his deposition that there are in fact available claims in Brazil: "what would be theoretically available in Brazil would be some basic civil claim for

---

[9] Ex. B, Dep. Tr., M. Carpenter, 3/15/18, at 90:13-16 ("Carpenter Dep."); DE 85-1, 2d Carpenter Aff. ¶ 22.
[10] Ex. B, Carpenter Dep. at 89:25-90:9; *id.* at 91:12-14.
[11] *id.* at 92:15-20.
[12] *Id.* at 93:2-9.
[13] *Id.* at 106:4-17-109:21 (explaining the Brazilian law equivalents to Florida RICO and how in Brazil, the Brazilian SEC can act as amicus curiae to provide interpretation in aid of the court).
[14] *See id.* at 99:21-101:20.
[15] Although Oliveira is a Brazilian lawyer, he does not have the experience to serve as an expert on Brazilian civil litigation.  He admitted that he "principally consider[s] [him]self to be a transactional lawyer". Ex. C, Dep. Tr., M. Oliveira, 7/11/18 at 29:11-14 ("Oliveira Dep.").

indemnifying damages that are consequent from fraud, as defined under Brazilian law, and against certain Brazilian residents who were officers and directors of OGX, only, for not complying with their duties and harming the creditors by taking part of a fraudulent scheme." *Id.* at ¶ 53. Hence, Plaintiffs indisputably have available and viable causes of action in Brazil.

**B.  A Brazilian Court Would Have Jurisdiction Over All of the Defendants.**

Plaintiffs contend that "the only defendants who could be sued in Brazil for some form of fraud would be the ex-managers of OGX." (DE 97 at 21). In support, they cite to Oliveira who concludes that a number of defendants (even if Brazilian citizens) could not be sued in Brazil on the basis of the fraudulent transfer claims, which he contends are "territorial as to Florida," as well as other non-Brazilian defendants who are alleged to be part of the fraud but which Mr. Oliveira contends are guilty of "carrying out various aspects of the alleged fraud outside of Brazil." [DE 97-16 ¶ 56]; *see also* Ex. C, Oliveira Dep. at 138:17-23 (Brazilian court would only exercise jurisdiction over someone that "directly affected someone in Brazil or that fact occurred in Brazil"). He is wrong.

Oliveira's opinion as a transactional lawyer was based on his interpretation of Article 21 of the Brazilian Code of Civil Procedure which provides:[16]

| | |
|---|---|
| **Art. 21.** Compete à autoridade judiciária brasileira processar e julgar as ações em que:<br><br>I – o réu, qualquer que seja a sua nacionalidade, estiver domiciliado no Brasil;<br><br>II – no Brasil tiver de ser cumprida a obrigação;<br><br>III – o fundamento seja fato ocorrido ou ato praticado no Brasil.<br><br>Parágrafo único. Para o fim do disposto no inciso I, considera-se domiciliada no Brasil a pessoa jurídica estrangeira que nele tiver agência, filial ou sucursal. | **Art. 21.** Brazilian courts have jurisdiction to try actions in which:<br><br>I – the defendant, regardless of nationality, is domiciled in Brazil;<br><br>II – the obligation has to be performed in Brazil;<br><br>III – the grounds are facts that occurred, or acts that were performed, in Brazil.<br><br>Sole paragraph. For the purposes of item I, it is deemed that a foreign legal entity that has a branch, subsidiary or affiliate in Brazil is domiciled in the country. |

The referenced article clearly states that a Brazilian court has jurisdiction to try actions based on "facts that occurred" in Brazil. Here, Plaintiffs themselves admitted in their Response

---

[16] Exhibit D, Brazilian Code of Civil Procedure, article 21.

that all their claims are "interlocking."  (DE 97 at 1).  Plaintiffs cannot have a fraudulent transfer claim without establishing their fraud-based claims.  It is indisputable that the fraud-based claims Plaintiffs have alleged arose from facts that occurred in Brazil.  *See, e.g.*, DE 75 ¶ 482 ("Upon information and belief, BATISTA, his co-conspirators, and accomplices had by this time moved the bulk of his and their liquid assets out of Brazil and off to secrecy jurisdictions.")  This is consistent with Carpenter's testimony which explained that the claims arose from Brazil and thus any fraudulent transfer claim required proof of a fraud originating from Brazil.  Ex. B, Carpenter Dep. at 65:14-66:5 ("[I]f there is a fraud case, you have to demonstrate the fraud. . . . And you have to demonstrate the fraud[ulent] transfer of the money that was illegal[ly] taken out of the company. . . . So in a way, even if you're dealing with the transfer here, you can't get rid of going into facts related to the fraud itself.  And the fraud occurred in Brazil.").  Carpenter's testimony is more logical, and he has better, more relevant credentials.

Article 22 of the Brazilian Civil Procedure Code provides yet another basis for jurisdiction.  This article establishes that a Brazilian court can exercise jurisdiction when the parties have expressly or implicitly subjected themselves to Brazilian jurisdiction:

| **Art. 22.** Compete, ainda, à autoridade judiciária brasileira processar e julgar as ações: | **Art. 22.** Brazilian courts also have jurisdiction to preside over and try actions: |
|---|---|
| I – de alimentos, quando: | I – for support orders, when: |
| a) o credor tiver domicílio ou residência no Brasil; | a) the creditor is domiciled or resident in Brazil; |
| b) o réu mantiver vínculos no Brasil, tais como posse ou propriedade de bens, recebimento de renda ou obtenção de benefícios econômicos; | b) the defendant maintains a connection with Brazil, such as the possession or ownership of property, the receipt of income or attainment of economic benefits; |
| II – decorrentes de relações de consumo, quando o consumidor tiver domicílio ou residência no Brasil; | II – arising from consumer transactions, when the consumer is domiciled or resident in Brazil; |
| III – em que as partes, expressa ou tacitamente, se submeterem à jurisdição nacional. | III – in which the parties, expressly or tacitly subjecting themselves to Brazilian jurisdiction, refer their dispute to Brazilian jurisdiction. |

Here, all of the defendants have consented to Brazilian jurisdiction for this case, either expressly or implicitly, by joining in the Motion or by not opposing it.  That thus includes the fact

that no non-movant has contested jurisdiction if sued in Brazil.[17]

## C.  Plaintiffs Have Not Established That Their Claims Are Statute Barred.

Plaintiffs allege that the Brazilian three-year statute of limitations has "probably" run.  (*See* DE 97 at 21-22).[18]  Their Brazilian law expert likewise is equivocal, "advising" the Plaintiffs that they should consider the 2013 dates as the starting point for the running of the statute of limitations.  [DE 97-16 ¶¶ 20, 25]; *see also id.* ¶ 53 ("all claims appear to be time-barred").

First, if, in fact, Plaintiffs' claims are time-barred in Brazil, then they are also barred in Florida.  Under Florida law, if the cause of action arose in another country, and that country's "laws forbid the maintenance of the action because of lapse of time, no action shall be maintained in" Florida.  Fla. Stat. § 95.10; *Bates v. Cook, Inc.*, 509 So. 2d 1112 (Fla. 1987) (court applies statute of limitations of forum with most significant relationship).  Here, as mentioned, Plaintiffs' claims arise out of an alleged fraud in Brazil, and thus Brazil's statute of limitations applies.  If Plaintiffs are correct, and the statute of limitations began to run in July 2013, their claims also are barred in Florida because they did not file until January 2017, more

---

[17] *See Rollaguard*, 2016 WL 7431258, at *1 (motion can be granted by default if party failed to respond).

[18] Plaintiffs cite *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1234-35 (9th Cir. 2011) and *Chang v. Baxter Healthcare Corp.*, 599 F.3d 728, 736 (7th Cir. 2010) for the proposition that a case should not be dismissed when the claim is time-barred in the alternative jurisdiction.  They are wrong however.  For example, in *Carijano*, the Ninth Circuit determined that the district court should have imposed conditions on any dismissal where the plaintiff requested that defendant waive "any statute of limitations defenses that would not be available in California."  643 F.3d 1216 at 1234-35.  Defendants do not oppose such a condition.  *Chang* actually supports Defendants.  There, the court determined the limitations defense was insufficient to make the forum inadequate because the exception about adequacy does not apply where "plaintiff seeks to defeat dismissal by waiting until the statute of limitations in the alternative forum has expired and then filing suit in his preferred forum (with the longer limitations period) and arguing that the alternative forum is inadequate."  599 F.3d at 736 (statute of limitations argument was unavailing because if the claim was time-barred in Taiwan when filed, then it is also time-barred in California because "California courts would apply the Taiwanese limitations period to a tort claim by a Taiwanese injured in Taiwan.").

than 3 years later.  It would be better for Brazil to address the application of the statute of limitations as opposed to Florida.

In any event, Plaintiffs' own expert admits that the statute may not have run because Plaintiffs' "damages were a consequence of a criminal act still under investigation by Brazilian courts and that [the] statute of limitation would not start to run until a definitive decision is issued."  [DE 97-16 ¶ 23].  Carpenter likewise testified that he did not "think [a Brazilian fraud claim] would [be barred by the Brazilian statute of limitations]."  Ex. B, Carpenter Dep. at 127:9-18.  He explained that there are events which "suspend or interrupt the statutes of limitation, according to Brazilian law," and one of those instances involves whether the facts underlying the civil claim "are also deemed investigated in a criminal case." *Id.* at 127:20-129:14 (filing of the Florida action could interrupt the running of the limitations period).

Despite admitting this tolling exception could apply, Oliveira testified that, although the tolling could apply to a named criminal defendant, it could not apply to any defendants here who were not a defendant.  Ex. C, Oliveira Dep. at 87:24-89:1.  Oliveira is wrong.  Under Article 204 of the Brazilian Civil Code, the tolling extends to all persons involved in the criminal acts even if they are not criminal defendants.[19]  Thus, if the claims are tolled as to Eike Batista, they would also be tolled as to all alleged co-conspirators, aiders and abettors.

In any event, Oliveira could not even admit when the statute even would start to run on these claims. Ex. C, Oliveira Dep. at 86:12-87:11.

### D. Whether Plaintiffs' Claims Are Barred by the OGX Reorganization Plan Favors *Forum Non Conveniens* Dismissal.

Plaintiffs next contend that Movants' expert, Carpenter, testified that Brazil is not an adequate forum because their claims are barred as a result of the OGX Reorganization Plan.  (DE

---

[19] Ex. E, Extracts Brazilian Civil Code.

97 at 23).  As Carpenter explained, however, this is just a defense that could be raised and does not prevent the filing of the claim. Ex. B, Carpenter Dep. at 151:9-152:3.  Further, even if Plaintiffs are right, their claims would be barred here, too, not just Brazil, which is exactly the basis of a comity motion that Defendants will present here if this case is not dismissed on FNC grounds.  Whether here or in Brazil, a court will have to decide the effect of the Brazilian Reorganization Plan and whether it bars Plaintiffs' claims.  And, even Plaintiffs' expert admitted that a Brazilian court would be best suited to rule on this issue of Brazilian law: "Q: And a Brazilian court would be the best place to interpret this [reorganization or bankruptcy] law? … THE WITNESS: **Yes.  I mean it would be the only place**."  Ex. C, Oliveira Dep. at 106:15-107:1 (emphasis added).

### E. The Availability of Discovery in Brazil is Irrelevant to Whether Brazil is Adequate and Available.

Plaintiffs also contend that Brazil has "inadequate evidentiary processes" because there is no discovery or a method to obtain relevant foreign evidence.  (DE 97 at 23-24).  This argument similarly fails as several courts have rejected this argument concerning the extent of discovery available in an alternate forum.[20]  Furthermore, Brazilian courts have all the evidence gathering tools necessary for this dispute.  DE 85-1 ¶ 28.  Here, the nucleus of the action is Brazil – as that is where both the witnesses and evidence are located.  DE 85-2 ¶¶ 6, 8-9; DE 85-3 ¶¶ 15-23.  Brazilian courts also have plenary authority to compel evidence from the witnesses.  DE 85-1 ¶ 28.  Plaintiffs' expert did not contest this.[21]

---

[20] *Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1283 (11th Cir. 2001) ("The plaintiffs' concerns about Argentine filing fees, **the lack of discovery in Argentine courts**, and their fear of delays in the Argentine courts do not render Argentina an inadequate forum.") (emphasis added); *Lockman Found. v. Evangelical All. Mission*, 930 F.2d 764, 768 (9th Cir. 1991) (Japan was adequate although discovery procedures are not identical to those in the United States).

[21] Here, even if there is evidence in the United States concerning the alleged fraudulent misrepresentations, Plaintiffs can utilize 28 U.S.C. § 1782 to obtain such evidence that is truly

**F.  Plaintiffs Have Not Established that Brazil's Judiciary is so Corrupt That They Cannot Obtain a Fair Trial.**

Plaintiffs' blanket contention that Brazil is "grossly corrupt," (DE 97 at 24-26), purportedly supported by the expert reports of Keith Henderson and Professor Manuel A. Gomez, are wholly inadequate. *Id.* at 25-26. "[G]eneralized, anecdotal complaints of corruption are not enough for a federal court to declare" a nation's legal system is "so corrupt that it can't serve as an adequate forum." *Stroitelstvo Bulgaria Ltd. v. Bulgarian-Am. Enter. Fund*, 589 F.3d 417, 421 (7th Cir. 2009); *Zeevi Holdings Ltd. v. Republic of Bulgaria*, 2011 WL 1345155, at *8 (S.D.N.Y. Apr. 5, 2011) (same), *aff'd*, 494 Fed. Appx. 110 (2d Cir. 2012); *Wilmot v. Marriott Hurghada Mgmt., Inc.*, 712 Fed. Appx. 200, 204 (3d Cir. 2017) (same, Egypt); *Harp v. Airblue Ltd.*, 879 F. Supp. 2d 1069, 1073 (C.D. Cal. 2012) (Pakistan, "Because Plaintiffs provide no evidence of corruption relevant to their specific claims, they fail to make the 'powerful showing' necessary to support a finding that Pakistan is an inadequate legal forum.").

For example, in *Stroitelstvo*, the court acknowledged that it was "true that all of the experts lamented a public perception of corruption in the Bulgarian courts, and Skochev, Stroitelstvo's expert, even claimed that the Bulgarian legal system was incapable of providing a fair hearing. Still, the experts made no attempt to quantify this purported corruption or document particular plaintiffs or claims that were treated unfairly."  589 F.3d at 421.

Similarly, in *Jiangsu Hongyuan Pharm. Co., Ltd. v. DI Glob. Logistics Inc.*, 159 F. Supp. 3d 1316, 1330 (S.D. Fla. 2016), the Plaintiff argued that China was not an adequate forum because "the Chinese legal system's 'potential for excessive trial delays, obstructive legal counsel, corruption, lack of legal safeguards, [and] undue influence by political leadership.'" *Id.*

---

necessary. *J.C. Renfroe & Sons, Inc. v. Renfroe Japan Co., Ltd.*, 515 F. Supp. 2d 1258, 1273 (M.D. Fla. 2007*)* (dismissing on *forum non conveniens* grounds and finding that plaintiffs could compel testimony and documents from U.S. pursuant to 28 U.S.C. § 1782); *Warter v. Boston Sec., S.A.*, 380 F. Supp. 2d 1299, 1313 (S.D. Fla. 2004) (same).

Judge Gayles in *Jiangsu* found that similar allegations had been made in California where the "plaintiff proffered a declaration from a law professor in support of its opposition to the defendant's forum non conveniens motion seeking dismissal in favor of a Chinese forum. The professor argued that the Chinese government could easily control the outcome of a judicial proceeding, meaningful judicial independence does not exist in China, and political authorities could interfere in any lawsuit in which they took an interest." *Id.* at 1331.  Judge Gayles agreed with the California court's conclusions that these "allegations were to[o] 'speculative' to convince it that China would not provide an adequate forum." *Id.*

Likewise, here, neither of Plaintiffs' two experts analyze whether the Brazilian judiciary is too corrupt to independently and impartially adjudicate this case in particular.  Further, Plaintiffs' conclusion that Brazil is generally too corrupt to properly adjudicate this case is entirely speculative and unsubstantiated.

Henderson, in fact, explains that his "key finding" is "that corruption and its criminal counterparts, money laundering and financial fraud, is an endemic problem in Brazil that extends across institutions, sectors and the corporate community – including the banks and financial sector."  DE 97-18 ¶ 7.  In fact, Henderson's second affidavit does not even mention Eike Batista, the principal defendant in this case.  Instead, it focuses generally on alleged corruption in the country, and also alleged money laundering activities by Brazilian banks, which in no way evidence that Plaintiffs would not get a fair trial in Brazil.  *See generally* DE 97-18.[22]

Similarly, Gomez's contentions of corruption in Brazil making it an inadequate forum are

---

[22] Henderson's first declaration is just as general, and only summarily mentions that the Batista family is "socially and politically omnipresent."  DE 97-18, Ex. B at 20.  However, in this same discussion, Henderson admits that Eike Batista is also under criminal investigations, indictments and was already found guilty of "insider trading".  *Id.*  All of this belies, however, that Mr. Batista or his family has any influence on the judiciary with such a degree to deprive Plaintiffs of a fair trial.

generalized, speculative, and unavailing.[23]  First, Gomez admitted he has never practiced law in Brazil.  Ex. F, M. Gomez Dep. Tr., 12:20-22 ("Gomez Dep.").  His opinion on corruption in Brazil is based on reading the state court complaint, his "generalized knowledge about the Brazilian judiciary," and internet articles he found about Brazil and the parties named in the state court complaint.  *Id.* at 58:14-59:19.  He admitted he never had testified about judicial corruption in Brazil or in any country, and any presentation given only "touched upon" the subject.  *Id.* at 21:10-13, 22:7-25.

Notwithstanding his limited knowledge of Brazilian law and the Brazilian judiciary, Gomez ventured to surmise that Brazil was "too corrupt" because of allegations of Batista being released on house arrest[24] and conflicts of interest with judges he found on the internet.[25] However, during this deposition, Gomez admitted that he "can't speculate on what's going to happen in Brazil" because he does not know "which judge is going to have [the case]."  *Id.* at 100: 2-5.  This is fatal for Plaintiffs; particularly, their experts cannot establish that the Brazilian judiciary is too corrupt to handle *this* case.  Hence, the forum is adequate.

In any event, Gomez's conclusion that Brazil is "too corrupt" is dubious because he

---

[23] Indeed, the expert report submitted on behalf of Gomez was prepared in relation to the first state court complaint and not the operative complaint.  *See* DE 97-19; Ex. F, Gomez Dep. at 50:1-8.

[24] Mr. Gomez failed to disclose in his report that Mr. Eike Batista was forced to post a US$16.5 Million bond before being released on house arrest, and admitted he was not familiar with Brazilian criminal law and whether he would be released on bond.  *Id.* at 98:8-99:1.  He also admitted that he does not have personal information about Mr. Batista using undue influence.  *Id.* at 93:16-23.

[25] When criticizing a Brazilian Supreme Court judge's failure to recuse himself, Prof. Gomez was unaware of the facts surrounding the allegations found in the article he cited.  *Id.* at 97:13-15 (admitting he did not know whether the lawyer married to the judge was appearing before him). Had he investigated this, he would have seen that there were reports that although Sergio Bermudes has represented Eike and OGX in commercial and bankruptcy matters, the law firm is not involved in criminal cases and thus were not representing Eike in the criminal proceedings before Supreme Court Justice Gilbert Mendes.  *See* Ex. G, Bermudes defends Gilmar Mendes' performance against Eike (May 8, 2017).

previously testified that Venezuela, a country undeniably more corrupt than Brazil and which he characterized as a "failed state," was adequate.  *Id.* at 36:13-37:8 (Gomez testified twice that Venezuela was adequate).  Transparency International, a source Gomez admitted was reliable (*id.* at 63:19-64:2) and cited by both of Plaintiffs' corruption experts, lists Brazil as 96th on the corruption index, while Venezuela is 169th.  *Id.* at 68:1-69:7; Ex. H, 2017 Corruption Index.[26]

As established, absent an actual showing that Brazil would not provide a fair trial due to judicial corruption, general allegations of corruption are insufficient to deem a forum inadequate. Neither of Plaintiffs' corruption experts is a Brazilian lawyer, and neither has actual knowledge of any alleged influence the defendants could have on the Brazilian judiciary.  Gomez admitted that he does not know which Brazilian judicial districts are supposedly corrupt or where this case even would be re-filed.  Ex. F, Gomez Dep. at 78:3-80:1.  Any conclusion of the outcome of the case would be speculative and wholly unsupported.  *Stroitelstvo*, 589 F.3d at 421.  Meanwhile, Eike Batista, identified as the main defendant able to influence the judiciary, was not able to avoid being convicted of insider trading and other criminal charges just this month.  *See* Ex. A.

## II.   The Private Interest Factors Favor Brazil.

In its Response, Plaintiffs contend their choice of forum is entitled to "great deference" because Paul Tien, the beneficiary at the time the action was filed in state court, was incapacitated and his affairs were managed from Miami by contingent beneficiaries of his offshore Nevis and Cayman Island trusts.  Response at 16-17.  However, when a plaintiff is an out-of-state entity, as in this case, its choice of forum is not given great deference.  *Lopez*, 333 Fed. Appx. at 465.

---

[26] Mr. Gomez in fact stated he was not engaged to conduct a comparison of "whether one country is more corrupt than the other one."  Gomez Dep. at 27:20-28:5; *id.* at 62:9-19.  Without such a showing, the corruption argument is meaningless.

Nevertheless, Plaintiffs contend that they should be considered domestic entities because their *current* beneficiaries are U.S. residents.  First, when a plaintiff chooses to invest in a foreign entity it will not be allowed to circumvent the legal formality of its choice.[27]  To facilitate their forum shopping exercise, Plaintiffs contend that in trust cases, courts look at nationality of the beneficiaries, not the trusts in diversity jurisdiction contexts.  Diversity jurisdiction is not at issue here and is thus inapplicable.  Plaintiffs are wrong on the law in any event.[28]

Second, even if the citizenship of the beneficiaries mattered (it does not), Plaintiffs **have not disputed** that the beneficiary at the time this action was filed and when the investment was made, was Paul Tien, "a foreign beneficiary" who was born in China and had been living in Taiwan since 2003.  DE 36-42, E. Dover Aff., Ex. A.  It is without question, then, that at the time

---

[27] *Tradex Glob. Master Fund SPC Ltd. v. Palm Beach Cap. Mgmt., LLC*, 2010 WL 717686, at *6 (S.D. Fla. Mar. 1, 2010) ("Plaintiffs who knowingly invested in a Cayman fund in order to avoid the reach of U.S. taxes now turn to an American court to seek remedy for the fund's alleged fraudulent behavior.  Public policy does not favor such an outcome."); *see also EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro S.A.*, 246 F. Supp. 3d 52, 78 (D.D.C. 2017) ("Plaintiffs are sophisticated investors that chose to invest in Brazil through Luxembourg-based overseas investment vehicles. Surely, it was reasonably foreseeable to them that, if a dispute arose, its resolution might not take place in a U.S. forum. Accordingly, while the court finds that Plaintiffs' choice of forum is entitled to some deference, that deference is diminished in light of Plaintiffs' decision to engage in international commerce.").

[28] For a traditional trust, as here, citizenship is gauged by the trustee.  *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 465 (1980) (real parties to controversy were trustees who had legal title and managed the assets).  "If the trustee possess[es] [trust] powers, **the citizenship of the trustee is controlling** for purposes of diversity jurisdiction."  *Westgate Resort, Ltd. v. Sussman*, 617CV1467ORL37DCI, 2017 WL 3524315, at *1–2 (M.D. Fla. Aug. 16, 2017) (emphasis added).  Here, Plaintiffs are traditional trusts that possessed the ability to hold, manage, invest and dispose of assets for the benefit of others.  DE 75 ¶¶ 4-5, 427-28 (bonds were bought on behalf of Plaintiffs).  Plaintiffs' citizenship, and not that of their members or beneficiaries, control even under Plaintiffs' analysis.  Plaintiffs' case is inapposite.  *In Ventures Tr. 2013-I-H-R Shores Villas Condomimium Ass'n, Inc.*, 2016 WL 4542160, at *2 (S.D. Fla. Aug. 31, 2016), the Court was faced with a statutory business trust which was created by operation of Delaware law as an unincorporated association.  Here, Plaintiffs are not statutory business trusts, but traditional trusts created under foreign laws.  *See Honua Sec. Corp., Inc. v. SMI Hyundai Corp.*, 2010 WL 11565898, at *4 (E.D. Va. Oct. 21, 2010) ("Plaintiffs HREF and HCPF are foreign investment trusts formed pursuant to the Cayman Islands; they are juridical foreign citizens.").

this action was filed and while Defendants already had filed their first *forum non conveniens* motion, the **only** beneficiary was a foreign individual.  Thus, even ignoring the trusts who sued, the supposed real party in interest *still* would not be a U.S. resident.  Without legal support, Plaintiffs suggest that the Court should instead examine the residency of the **new** beneficiaries because the original beneficiary since has died.  It is irrelevant who the beneficiaries now have become because "the jurisdiction of the court depends upon the state of things at the time of the action brought."  *Grupo Dataflux v. Atlas Glob. Group, L.P.*, 541 U.S. 567, 570 (2004).

The remaining private interest factors also favor Brazil as the more convenient forum. Plaintiffs have identified the following private interest factors as favoring denial of the Motion: (1) the evidence they claim to need is in the United States; (2) injunctions would vanish; (3) the requirement of a cost bond; (4) *ex parte* communications with judges; and (5) problems with enforcement of a Brazilian judgment.

### A.   The Location of the Evidence Favors Brazil, Not the United States.

Plaintiffs have dedicated significant time to enumerating the evidence they claim they will need. (DE 97 at 8-14) (discussing the U.S.-based evidence Plaintiffs plan to use to establish fraud and fraudulent transfers, citing to representations allegedly made in the United States and money wire transfer information).

Although Plaintiffs claim that they intend only to use evidence from the United States, Defendants have a right to obtain evidence located anywhere which would support any defenses they may assert at the appropriate time.  As set forth in the Motion, Plaintiffs' fraud allegations are all premised on acts alleged to have occurred in Brazil among Brazilian residents acting as conspirators; alleged bribes and cover-ups by Brazilian insiders, bankers, and politicians; and alleged misrepresentations concerning oil exploration possibilities in Brazil that ultimately induced investors to invest in OGX, a Brazilian oil exploration and production company.  Defendants have

a right and intend to seek evidence from Brazilian witnesses and documents to demonstrate that the statements were not in fact fraudulent.  DE 85-2 ¶¶ 5, 8-9; DE 85-3 ¶¶ 15-23.  The documents located in Brazil are not within the custody or control of the parties to this action, and thus would not be within the subpoena power of this Court.  (DE 85-2 ¶ 9; DE 85-3 ¶¶ 21, 27).[29] Likewise, in order to maintain this case in Florida, all Brazilian witnesses would have to willingly travel to the United States for trial at an exorbitant cost, which makes their voluntary attendance highly unlikely.  Thus, the trial must occur in Brazil to ensure the attendance of these critical witnesses.  Additionally, as noted earlier, the primary defendant in this case, Eike Batista, has been convicted of criminal charges against him in Brazil, making it unlikely he will be able to appear for trial in Florida.  Plaintiffs cannot foreclose Defendants' right to obtain evidence simply by stating in conclusory form – and contrary to every indication – that, in its opinion, there is supposedly no relevant evidence in Brazil.[30]

Thus, while any U.S. evidence could be obtained by Plaintiffs for use in Brazil through a section 1782 proceeding, Defendants will not have an equivalent discovery process in Brazil to obtain evidence for their defense, and would be forced to rely on letters rogatory, which Plaintiffs themselves admit are inadequate.  (DE 97 at 23-24).

### B. The FUFTA Injunction Has Been Dissolved and Plaintiffs Have Not Shown Why the Caymans Injunction Would Vanish While Case Pending in Brazil.

Plaintiffs contend that they would be prejudiced if this case were transferred to Brazil because its FUFTA injunction and Cayman injunction would vanish.  (DE 97 at 18).

---

[29] *New Life Management Company v. Sandy Lane Hotel Company, Ltd.*, 2013 WL 12152494 at *6 (S.D. Fla. 2013) does not help Plaintiffs because there the defendant had control over the records it needed for its case, which is not the case here.

[30] That Plaintiffs will seek only evidence from the United States is simply absurd reading their own Federal Complaint.  Tellingly, part of their Brazilian law expert's engagement involved "assistance with obtaining evidence and interviewing witnesses in Brazil."  Ex. C, Oliveira Dep. at 53:21-54:16; DE 106-4 at 2 (setting forth scope of work of engagement).

***First***, the FUFTA injunction *already* has dissolved.  The Third District determined that the injunction was facially invalid and thus unenforceable.  *Berto v. Meridian Tr. Co.*, 221 So. 3d 757 (Fla. 3d DCA June 14, 2017) ("Appellees have conceded, and we agree, that the trial court's order must be reversed and remanded because it is facially deficient.").  Moreover, under *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439-40 (1974), "[a]n ex parte temporary restraining order issued by a state court prior to removal remains in force after removal no longer than it would have remained in effect under state law, but in no event does the order remain in force longer than the time limitations imposed by Rule 65(b), measured from the date of removal."  The Middle District of Florida recently has affirmed this principle.  *Estate of Sally Ann Cochran v. Lacey Marshall et al.*, 2018 WL 2688784, at *2 (M.D. Fla. Apr. 19, 2018) (citing *Granny Goose*, 415 U.S. at 439-40) ("in no event does [a state-court temporary restraining order] remain in force longer than the time limitations imposed by Rule 65(b), measured from the date of removal," *i.e.*, 14 days) (internal citations omitted).

Here, the case was removed to this Court on August 11, 2017.  Thus, even if the FUFTA injunction survived the Third District's Order, it expired by operation of law on August 25, 2017.

***Second***, Plaintiffs contend summarily and without legal support that if this case is transferred to Brazil, its Cayman injunction would be "attacked."  (DE 97 at 18).  Plaintiffs do not allege that such "attack" would be successful, nor what a Cayman Court would do in light of this case being litigated in Brazil.  Plaintiffs also provide no legal support for the proposition that a Cayman Court would not uphold the injunction in support of proceedings in Brazil.  In light of the various expert reports and exhibits which ***were*** submitted by Plaintiff, the only logical conclusion from their failure to file a Cayman legal affidavit on the effect of a FNC dismissal is

that they have concluded any such attack would not be successful.

### C. Plaintiffs Have Not Shown That Paying a Cost Bond Would Impede Their Access to Brazilian Courts.

Plaintiffs argue that they would be required to pay a non-resident cost bond of between 10% and 20% of their claimed damages in Brazil.  (DE 97 at 19).  In support of their having to pay 20% (or US$4.2 Million), Plaintiffs cite to conclusory statements from their legal expert that a complex case like this one would require the higher percentage.  *Id.*  Oliveira, however, admitted that he has never represented a foreign party in litigation and thus has no experience in such cases. Ex. C, Oliveira Dep. at 19:25:20:3.  He also did not cite a case or law for this conclusion.  On the contrary, Brazilian cases found by Movants demonstrate that, at most, a 10% bond would be applied. Ex. I, Braz. Dec.  In one such case, the defendants sought a cost bond of 20% and alleged that the dispute warranted this higher amount because it was highly complex, required expert and technical evidence, and required obtaining evidence abroad, among other things.  *Id.*  The court denied the request.  *Id.*  It is speculative for Oliveira to conclude that a Brazilian court would apply a higher cost bond here.

In any event, Plaintiffs' expert admitted in deposition that these Plaintiffs have the funds to post the bond: "[**n**]**obody would think** that someone that has invested [ ] 20 million in bonds . . . **would not have money available to pay the bond**."  Ex. C, Oliveira Dep. at 129:16-130:4; *id.* at 129:24-130:1 (emphasis added).[31]  Oliveira also did not analyze whether Plaintiffs could rely on any exceptions to the application of a cost bond, such as waiver.  *Id.* at 125:10-126:10.

### D. Ex Parte Communications With Judges Does Not Weigh Against Dismissal.

Plaintiffs also take issue with the right in Brazil to have *ex parte* communications with

---

[31] *Henderson v. Metropolitan Bank & Trust Co.*, 502 F. Supp. 2d 372 (S.D. N.Y. 2007), is distinguishable as the Plaintiff did not have the resources to pay a $5 million filing fee and the court noted that this was a case-by-case issue.

judges.  (DE 97 at 19).  Plaintiffs contend that such communications are "completely antithetical to any notion of a fair judicial system".  *Id.*  Again, Plaintiffs imply that a case **never** could be brought in Brazil because of this practice.  However, their *own* Brazilian law expert admitted that he and his firm routinely conduct *ex parte* judicial communications, that it is a legal right of the attorneys in Brazilian legal proceedings, and that it certainly does not mean that the attorneys or judges involved are corrupt.  Ex. C, Oliveira Dep. at 34:4:25, 107:3-24, 110:19-112:15.  That Brazil has different litigation mechanisms does not mean its system is unfair.

### E. Plaintiffs' Objections to Difficulties with Enforcement of a Brazilian Judgment are Illusory.

Plaintiffs further contend that the enforcement of a judgment in Brazil would be impossible because the assets are in the United States (an unsupported allegation) and defendants would be able to object to enforcement of the judgment because they are "non-movants."  This argument misses the mark on both counts.

First, Plaintiffs' First Federal Amended Complaint does not allege that funds are in the United States.  On the contrary, they simply allege that funds supposedly were funneled *through* the United States to secrecy jurisdictions.  DE 75 ¶¶ 156, 390, 482, 588, 591, 599.  What Plaintiffs actually seek is to obtain an order from the Court ordering the defendants to "return" funds to Florida.  *See, e.g.*, *id.* ¶ 602 ("transferees should be bound to return them to Florida, or an equivalent value").  If anything, Plaintiffs could obtain the same order in Brazil, Ex. B, Carpenter Dep. at 89:25-90:9 ("transfer can be considered null and void, and the creditors can try to put aside the transfer and take the asset back"), and, if successful, the funds would actually be returned to the jurisdiction from where the funds were initially transferred.

Second, as set forth above, whether Defendants are classified as "movants" or "non-movants" is irrelevant.  By not opposing the Motion, they have acceded to it and will be bound

by any terms of dismissal, including not contesting judgment enforcement, as ordered in cases.

## III.    **The Public Interest Factors Favor Brazil.**

Plaintiffs' public interest arguments similarly fail.  (DE 97 at 28-29).  The case law is consistent – the United States "local" interest in investigating a fraud to its own resident (which is not even true here) or money laundering does not trump the foreign interest of the country where the cause of action accrued.  *Seguros Universales*, 32 F. Supp. 3d at 1251–52 ("Guatemala's 'local interest' far exceeds that of the United States: the fraud alleged in the Complaint was perpetrated upon the Guatemalan attorney general's office and courts, and the extortion alleged in the Complaint occurred in Guatemala to major Guatemalan insurance and surety companies, while the United States has no comparable interest"; "many of Plaintiffs' claims in this action must be decided under Guatemalan law"; "As such, there is little in this case which would support the Court taking on the administrative burden of trying this case, or of placing the burden of trying this case upon jurors of this community who have no connection to, or interest in, the underlying dispute.").[32]

**CONCLUSION**

Movants respectfully request that this Court grant the Motion, dismiss the First Federal Amended Complaint, and grant such other and further relief as is just and proper under the circumstances.

---

[32] *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 76 (2d Cir. 2003) (New York's interest in overseeing New York bank is not a "strong local interest" compared to England's interest where plaintiffs purchased the investments at issue and the alleged fraud occurred); *LaSala v. Bank of Cyprus Pub. Co. Ltd.*, 510 F. Supp. 2d 246, 262 (S.D.N.Y. 2007) (U.S. interest in money laundering and protecting U.S. investors pales in comparison to the interest of Cyprus where the banks accounts were opened and the allegedly improper transfers were authorized).

July 25, 2018                              Respectfully submitted,

REED SMITH LLP                            DLA PIPER LLP
1001 Brickell Bay Drive, 9th Floor       200 S. Biscayne Blvd., Suite 2500
Miami, FL 33131                          Miami, FL 33131
Telephone: (786) 747-0200               Telephone: (305) 423-8500
 Facsimile: (786) 747-0299               Facsimile: (305) 437-8131


By: */s/  Sujey S. Herrera*              By: */s/          Harout Samra*
Edward M. Mullins (FBN 863920)          Craig Rasile (FBN 613691)
emullins@reedsmith.com                  Craig.rasile@dlapiper.com
Ana M. Barton (FBN 85721)               Harout Samra (FBN 70523)
abarton@reedsmith.com                   harout.samra@dlapiper.com
Sujey S. Herrera (FBN 92445)
sherrera@reedsmith.com

*Counsel for Batista Defendants*         *Counsel for Paulo Mendonça*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed via electronic filing using the CM/ECF filing system with the Clerk of the Court, which sent email notification of such filing to all CM/ECF participants in this case listed on the Service List on July 25, 2018.


                                        */s/ Sujey S. Herrera*
                                        Sujey S. Herrera