# EXHIBIT "B"

```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE SOUTHERN DISTRICT OF FLORIDA
                  MIAMI DIVISION

            CASE NO. 1:17-CV-23051-KMW


  MERIDIAN TRUST COMPANY, as trustee,
  and AMERICAN ASSOCIATED GROUP, LTD.,

              Plaintiffs,
  vs.

  EIKE BATISTA, ET AL.,

              Defendants.
  _____X



                    Miami, Florida
                    March 15th, 2018
                    10:14 A.M. - 4:05 P.M.



          _____


              VIDEOTAPED DEPOSITION

                         OF

           MARCELO LAMEGO CARPENTER


          _____



              Taken Before Ronni M. Kugler
         Notary Public in and for the State of Florida
       at Large, pursuant to Notice of Taking Deposition
                 in the above cause.
```

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

```
 1                   - A P P E A R A N C E S -
 2        On behalf of the Plaintiffs:
             ABALLI MILNE KALIL, P.A.
 3           BY:  JOSHUA D. POYER, ESQUIRE
             BY:  HENDRIK G. MILNE, ESQUIRE
 4           One Southeast Third Avenue, Suite 2250
             Miami, Florida 33131
 5           (305) 373-6600
                jpoyer@aballi.com
 6
 7        On behalf of the Witness:
             REEDSMITH
 8           BY:  EDWARD MULLINS, ESQUIRE
             BY:  SUJEY S. HERRERA, ATTORNEY-AT-LAW
 9           1001 Brickell Bay Drive, Suite 900
             Miami, Florida 33131
10           (786) 747-0207
                emullins@reedsmith.com
11
12        On behalf of Banco Itau and EFG Capital:
             HOLLAND & KNIGHT
13           BY:  LOUISE McALPIN, ATTORNEY-AT-LAW
             701 Brickell Avenue, Suite 3000
14           Miami, Florida 33131
             (305) 789-7715
15              louise.mcalpin@hklaw.com
16
          On behalf of Paulo Mendonca:
17           DLA PIPER
             BY:  HAROUT J. SAMRA, ESQUIRE
18           BY:  CRAIG V. RASILE, ESQUIRE
             200 South Biscayne Boulevard, Suite 2500
19           Miami, Florida 33131
             (305) 423-8534
20              harout.samra@dlapiper.com
21
          On behalf of Flavio Godinho:
22           SANTINI LAW
             BY:  SEAN R. SANTINI, ESQUIRE
23           1001 Brickell Bay Drive, Suite 2650
             Miami, Florida 33131
24           (305) 372-7307
                ssantini@santinilawfirm.com
25
```

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)                                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

1

2                          I-N-D-E-X

3

4    M A R C E L O    L A M E G O    C A R P E N T E R

5      Direct Examination by Mr. Poyer        Page   6

6      Cross Examination by Mr. Mullins       Page 149

7

8

9                    -----------------------

10                     E X H I B I T S

11

12     EXHIBIT            DESCRIPTION            PAGE

13        A     Statement of Prior Testimony      7

14        B    First Federal Amended Complaint  15

15        C   Second Affidavit of M. Carpenter  49

16        D      Affidavit of M. Carpenter     143

17        E     Defendants' Motion to Dismiss  144

18

19

20

21

22

23

24

25

Worldwide Reporting Service 305-377-3376

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)
8d2f7eb9-56ee-45d4-9b96-842d7015438f

```
 1                Videotaped deposition of MARCELO LAMEGO

 2           CARPENTER, a witness of lawful age, taken by

 3           the Plaintiffs for the purpose of discovery

 4           and use as evidence in the above-entitled

 5           cause, wherein MERIDIAN TRUST, ET AL., are

 6           the Plaintiffs and EIKE BATISTA, ET AL., are

 7           the Defendants, pending in the United States

 8           District Court for the Southern District of

 9           Florida, pursuant to notice heretofore

10           filed, before RONNI M. KUGLER, a Certified

11           Shorthand Reporter and Notary Public in and

12           for the State of Florida at Large, on the

13           15th day of March, 2018, at 1001 Brickell

14           Bay Drive, Miami, Florida, commencing at

15           10:14 A.M.

16                     _____

17     THEREUPON; the following proceedings were had:

18                THE VIDEOGRAPHER:  Good morning.  My

19           name is Eddy Ugueto.  I'm here on behalf of

20           Action Video Productions.  Time is

21           approximately 10:15 a.m.  Today's date is

22           March 15th, 2018.

23                This videotape deposition is taking

24           place at ReedSmith, location in Miami.

25           We're here to take the videotape deposition
```

Worldwide Reporting Service 305-377-3376

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)                                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

```
 1          of Mr. Marcelo Lamego Carpenter in the

 2          matter of Meridian Trust, et al. versus Eike

 3          Batista, et al., under the Case Number

 4          1:17-CV-23051-KMW.

 5               Counsels, can you please voice identify

 6          yourself and state from who you represent.

 7               MR. POYER:  Joshua Poyer of Aballi

 8          Milne Kalil.  We represent the Plaintiffs,

 9          Meridian Trust Company and American

10          Associated Group Limited.  And with me is

11          Hendrik Milne.

12               THE VIDEOGRAPHER:  Your side.

13               MR. MULLINS:  Edward Mullins and Sujey

14          Herrera of ReedSmith.  We represent what

15          we've called the Batista Defendants.

16               MR. SAMRA:  Harout Samra of DLA Piper.

17          We represent Paulo Mendonca.

18               MS. McALPIN:  Louise McAlpin of Holland

19          & Knight representing Banco Itau

20          International and EFG Capital International

21          Corporation.

22               MR. SANTINI:  Sean Santini on behalf of

23          Defendant, Flavio Godinho.

24               ---------------

25
```

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)                                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

1             MARCELO LAMEGO CARPENTER, a witness

2         named in the notice heretofore filed, being

3         of lawful age, and being first duly sworn in

4         the above cause, testified on his oath as

5         follows:

6                   DIRECT EXAMINATION

7    BY MR. POYER:

8         Q.   Good morning, Mr. Carpenter.

9         A.   Good morning.

10        Q.   Could you please state your full name.

11        A.   Marcelo Lamego Carpenter Fajia.

12        Q.   You're fluent in English, Mr. Carpenter?

13        A.   That's some kind subjective concept.  But I

14   think I can understand the questions you are about to

15   make and give you a proper answer.

16             If I don't understand, I will let you know

17   and ask you for clarifications.  I might not

18   understand all the words.  My terms might not be --

19   legal terms might not be familiar for me.  But I

20   think, yes, I -- I pretty much understand what you're

21   saying.  If that is what you're...

22        Q.   Exactly.  You answered my next couple

23   questions, which is if you don't agree, or if you

24   don't understand with -- if you don't understand

25   something I say, please ask -- please ask me to

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

1   clarify.

2           Could we agree that you won't answer a

3   question unless you understand it?

4       A.   Okay.

5       Q.   And you have to -- you have to say yes or no

6   audibly for the -- for the record.

7       A.   Okay.  Understood.

8       Q.   Thank you.

9           You are -- Do you live in Rio,

10  Mr. Carpenter?

11      A.   I do.

12      Q.   Okay.  When were you born?

13      A.   I was born in 1974.  16 of April.

14           MR. POYER:  Okay.  Hand you what we'll

15          mark as Exhibit A.

16           (Whereupon, Plaintiffs' Exhibit A

17          was marked for identification.)

18           (Whereupon, the above-referenced

19          exhibit was handed to the witness.)

20           MR. POYER:  I didn't bring copies for

21          everybody.  I apologize.  I didn't know who

22          would be here.

23           THE WITNESS:  Thank you.

24           MR. MULLINS:  Is this Exhibit A you

25          said?

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)                                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

```
 1                   MR. POYER:  Exhibit A, yes.

 2   BY MR. POYER:

 3       Q.   Could you go ahead and -- Excuse me,

 4   Mr. Carpenter.  Could you have a look at Exhibit A,

 5   all the -- all pages of Exhibit A, and let me know

 6   when you're done.

 7       A.   Sure.

 8                   MR. MULLINS:  I --

 9                   THE WITNESS:  Yes.

10                   MR. MULLINS:  I only object to the

11             point that I don't know if this is a

12             complete exhibit.  It mentions A and B, and

13             I don't see all the attachments here.

14             Unless there's something missing here.

15                   MR. POYER:  What -- What paragraph are

16             you referring to?

17                   MR. MULLINS:  It says A and B.

18                   MS. McALPIN:  Five, yeah --

19   BY MR. POYER:

20       Q.   Exhibit A I believe is -- Let me ask the

21   question, Mr. Carpenter.  So you've got Exhibit A in

22   your hand.

23       A.   I do.

24       Q.   And could you just tell me what the -- tell

25   me what the first page of it is.
```

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

1        A.    What are these?

2        Q.    Yes.

3        A.    It's a page of Prior Testimony and

4    Compensation, information or declaration, in which I

5    give you previous -- information about previous

6    experience and testifying in US and outside of Brazil.

7              And with another item talking about the fees

8    that I -- At that time I gave these -- a declaration,

9    the fees were not agreed.  We didn't have an agreement

10   about the fees about this -- this case.

11       Q.    You have an agreement now, though.  Correct?

12       A.    I do.  Correct.

13       Q.    Could you look at Page 2, Paragraph 3 of

14   Exhibit A, please.

15       A.    Sure.

16       Q.    Paragraph 3 states attached hereto as

17   Exhibit A is my Curriculum Vitae, which includes my

18   qualifications, and a list of all publications

19   authored by me in the past 10 years.  Correct?

20       A.    Correct.  It says so.

21       Q.    And the document, could you look at the

22   document, the next page.

23       A.    Yes.

24       Q.    Is that -- Is that Exhibit A, your

25   Curriculum Vitae?

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 10

1       A.   Yes.

2            MR. POYER:  Okay.

3            MR. MULLINS:  My only point is

4       Exhibit B is not attached here.  Just only

5       for the record.  I'm fine with going

6       forward.

7            MR. POYER:  No, I understand.

8       Exhibit B is -- it was very voluminous.

9            MR. MULLINS:  I understand.  That's

10      fine.  I just want to make sure the record

11      was clear.

12           MR. POYER:  Absolutely.

13           MR. MULLINS:  Yeah.

14  BY MR. POYER:

15      Q.   Mr. Carpenter, could you look at your

16  Curriculum Vitae.

17      A.   Sure.

18      Q.   I mean, you're obviously qualified as an

19  expert, so I don't want to spend a lot of time on your

20  background, but it says you graduated in 1996 at the

21  Rio de Janeiro State School of Law.  Right?

22      A.   Correct.

23      Q.   Prior to that -- Did you have any schooling

24  prior to that?

25      A.   Any what?

Worldwide Reporting Service 305-377-3376

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)                                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 11

```
 1        Q.   Any -- Do you have any education, formal

 2    education --

 3        A.   Yes, I did.

 4        Q.   -- prior to that?

 5        A.   Yes, I did.

 6        Q.   Could you describe the prior -- Do you have

 7    any other degrees or diplomas?

 8        A.   What kind of degrees are you making

 9    reference to me?

10        Q.   Do you have any other college degrees?

11        A.   I graduated from what we call in Brazil we

12    have a mid high school degree.  And then I studied in

13    the -- we call it pre-school called Santo

14    International School.  It's a Jesuit school in Rio de

15    Janeiro.  And then I admitted to ask what we call a

16    visual audit.  In Brazil, you go into the law school

17    through a test, a public -- a public quiz.  And then I

18    went to the public school, to the Rio de Janeiro State

19    Law School, and I graduated there.

20        Q.   The high school, the Jesuit school that you

21    went to, did you get a diploma or a degree from there?

22        A.   Yes, I did.

23        Q.   What -- What was it called?  Was it called

24    just a diploma, or was it called a degree, or what?

25        A.   I don't remember how was it called.
```

Worldwide Reporting Service 305-377-3376

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)                                              8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 12

1      Q.   Do you remember what year that was that you

2  -- that you earned that?

3      A.   1991.  I guess.  Yes.  Sorry.  1990 I

4  graduated from the high school.  In '90 and '91 was my

5  first year in law school.

6      Q.   Other than -- Other than law school, do you

7  have any -- Have you ever attended law school in any

8  other -- Have you ever attended any other law school

9  other than the Rio de Janeiro State Law School?

10     A.   No.

11     Q.   Have you ever attended any other college?

12     A.   No.

13          MR. MULLINS:  Let the record reflect

14      that Craig Rasile just joined us.

15          MR. RASILE:  Sorry I'm late.

16  BY MR. POYER:

17     Q.   Do you -- Are you a member of any bar -- Let

18  me start over.

19          You're qualified -- You are qualified to

20  practice law in Brazil.  Correct?

21     A.   Correct.

22     Q.   Are you qualified to practice law in the

23  entire nation of Brazil, the entire country?

24     A.   Yes, I am.

25

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 13

 1        Q.   Do you have -- Prior to -- Prior to becoming

 2   qualified to practice in Brazil, do you have to take

 3   any test?

 4        A.   Yes.

 5        Q.   What do you have to take?

 6        A.   A Bar exam.

 7        Q.   Is it -- And that's a Bar exam for the

 8   entire -- to practice in any court in Brazil.

 9   Correct?

10        A.   Correct.

11        Q.   What year did you take that?

12        A.   What year?

13        Q.   What year did you take that Bar exam?

14        A.   Well, I don't remember precisely, but most

15   likely 1996.  The year I graduated.  Maybe beginning

16   of 1997.  Maybe the end of 1996.  But around this.

17        Q.   That's good enough.  That's fine.

18             Do you -- Are you -- Are you qualified to

19   practice law in any other country?

20        A.   No, I am not.

21        Q.   What is -- What is the -- What is the name,

22   if any, of the sanctioning body in Brazil that grants

23   you your authority to practice law in Brazil?

24        A.   The Bar Association you mean?

25        Q.   Yes.

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 14

1        A.    It's -- In Portuguese it's called Ordem dos

2   Advogados do Brasil.   In the literal translation would

3   be Brazilian Bar -- Brazilian Bar Association.   Maybe

4   that's more, you know, close.

5        Q.    Are you a member of -- Are you a member of

6   any other Bar associations?

7        A.    Bar, no.

8        Q.    Are you qualified to practice before any

9   court in Brazil?

10        A.    I'm not sure I understood your question.   If

11   I am qualified?

12        Q.    Okay.   So let's say -- let's say you're

13   going to file a lawsuit in Rio.

14        A.    Okay.

15        Q.    Where would you file that lawsuit?

16        A.    In Rio.

17              MR. MULLINS:   Objection to form.

18              THE WITNESS:   In Rio.

19   BY MR. POYER:

20        Q.    What court would you file the lawsuit in?

21        A.    It depends on the lawsuit.

22        Q.    Okay.   You understand -- You've reviewed --

23   In this case you've reviewed the First Federal Amended

24   Complaint.   Correct?

25        A.    Correct.

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)                                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 15

1      Q.   If you were going to file that lawsuit in

2   Brazil, where would you file that lawsuit?

3      A.   Probably -- No.  Sorry.  I would file the

4   lawsuit -- I'm assuming there is no Federal -- May I

5   -- May I give a quick review on the names of the

6   Defendants in the --

7      Q.   Yeah.  Let me -- Give me one second.

8      A.   Yeah.

9           Just because the jurisdiction might depend

10  on the Defendants.  So just want to be sure that I'm

11  not giving you any improper answer.

12           MR. POYER:  I understand.

13           So we all know what we're looking at,

14           let's mark the First Federal Amended

15           Complaint as Exhibit B.

16           (Whereupon, Plaintiffs' Exhibit B

17           was marked for identification.)

18           (Whereupon, the above-referenced

19           exhibit was handed to the witness.)

20           MR. POYER:  Again, I apologize, I

21           didn't bring copies for everybody.  I didn't

22           know how many people were going to be here.

23           THE WITNESS:  May I?

24           Thank you.

25           Okay.  Having reviewed the names of the

Worldwide Reporting Service 305-377-3376

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 16

```
 1              Defendants, I would -- if I were -- if I
 2              were to file with similar lawsuit in Rio, I
 3              would file in the State Court, Rio de
 4              Janeiro State Court.   Lower State Court.
 5    BY MR. POYER:
 6         Q.   When you say Rio de Janeiro State Court,
 7    Rio de Janeiro is a state, is that correct, in Brazil?
 8         A.   Rio de Janeiro is a state and the city.
 9    It's the same name.
10         Q.   Okay.
11         A.   Like New York, New York.
12         Q.   Where is the court located that you would
13    file this?
14         A.   In the --
15         Q.   Where is --
16         A.   In the City of Rio de Janeiro.
17         Q.   How many states are there in Brazil?
18         A.   23.
19         Q.   Okay.
20         A.   23.
21         Q.   Does each -- Each state has its own court of
22    first instance?
23         A.   Each state has its own state courts.   Yes.
24         Q.   Okay.  If you were -- If you were to receive
25    an adverse -- an adverse ruling in this case, in this
```

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)                                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 17

1    theoretical case that you filed in Rio de Janeiro,

2    would you have a right to appeal?

3         A.    Yes.

4         Q.    Where would you appeal it to?

5         A.    I would appeal to the Rio de Janeiro Court

6    of Appeals.  And then there is a State Court of

7    Appeals.

8         Q.    I'm sorry --

9         A.    Rio de Janeiro State Court of Appeals.

10        Q.    Okay.  There is one Court of Appeals.

11        A.    One Court of Appeals, yes.

12        Q.    Is that the ultimate Court of Appeal, or is

13   there a court above that, that court?

14        A.    There is a court above that.

15        Q.    What is that court called?

16        A.    Well, you have two courts above that.  But

17   for a case like this, you have many what we call the

18   Superior Tribunal of Justice.  Which is the STJ, as we

19   frequently call it.

20        Q.    And then is that the -- is that the final

21   Court of Appeals?  Is that the highest court in

22   Brazil?

23        A.    No.  The highest Court of Appeal in Brazil

24   is the Supreme Court, the Brazilian Supreme Court.

25

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)                                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 18

```
 1        Q.   In Brazil does -- Are bankruptcy -- Are
 2   bankruptcy courts -- If you were to file a bankruptcy
 3   or a reorganization action in Brazil -- In Brazil you
 4   have a concept of bankruptcy.  Right?
 5        A.   Right.
 6        Q.   And you have a concept of reorganization in
 7   bankruptcy.  Is that right?
 8        A.   That's right.  Since 2005.  Yes.
 9        Q.   If you were to file an action -- If you were
10   going to file a reorganization action in Brazil, where
11   would you file that action?
12        A.   In a state court.
13        Q.   Would you file it in the same court that you
14   would file -- that you had filed the First Federal
15   Amended Complaint?
16        A.   Well, then it depends a little bit on the
17   relief.  But within the State Court you have some
18   specialized judges.  Like you have family judges, you
19   have commercial judges, and you have civil judges.
20             So I'm assuming, looking at the relief you
21   sought here, and again, I will --
22             MR. MULLINS:  Make sure you understand.
23             He's asking a different question.  He's
24             talking about reorganization.  I think.
25             Right.
```

Worldwide Reporting Service 305-377-3376

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

1          THE WITNESS:  He asked if this lawsuit

2     will be filed in the same --

3          MR. MULLINS:  No, no.

4          MR. POYER:  No.

5          MR. MULLINS:  No.  He switched around.

6     Make sure you understand.

7  BY MR. POYER:

8     Q.   Let me start over.  Let me ask you a new

9  question.

10    A.   Yes.

11    Q.   If you were to file a reorganization

12 proceeding --

13    A.   Okay.

14    Q.   -- in Brazil, where would you file that

15 action?

16    A.   In the Rio de Janeiro Commercial Lower

17 Courts.  State Commercial Lower Court.

18    Q.   Okay.

19    A.   We have commercial courts, specialized in

20 commercial issues, among others, reorganizations and

21 insolvency in Rio de Janeiro.

22    Q.   Okay.  So when you say among others, what

23 else?

24    A.   Arbitrations is also part of the

25 jurisdictions of those court.  Dispute between

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 20

```
 1    shareholders is also something that's basically the --
 2    the items that incompat -- oh, and intellectual
 3    property also.  But that's not my -- my practice so...
 4              But again, that's basically the
 5    jurisdictions of the commercial courts in Rio de
 6    Janeiro Janeiro.
 7         Q.   Okay.  So just let me be clear, the
 8    jurisdiction of the -- of the state court in Rio is --
 9    Let me ask this question; would -- would the
10    commercial court -- You mentioned the commercial
11    court.  Right?
12         A.   Right.
13         Q.   Would that be different from where would
14    file the First Federal Amended Case?
15         A.   It depends on the relief you're asking.  But
16    it may be a civil court instead of a commercial court.
17              You're dealing with the relief -- According
18    to my recollection of the relief you sought here,
19    you're asking for damages.  And damages are something
20    that is dealt with -- dealt by, sorry, civil courts.
21    Not necessarily commercial court.
22              You might have damage in commercial courts
23    if it's -- it's in a result of, for instance,
24    litigation among shareholders.  Because then you have
25    specific rules within that shareholder's litigation,
```

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 21

1    so you go to commercial court.

2          But you have here trust -- bondholders'

3    litigation, or former bondholders' litigation, so then

4    you might -- maybe you'll -- you'll -- your case will

5    be -- will go to a civil court.

6          But they're all part of the Rio de Janeiro

7    State Courts.  And you have some specialized courts.

8    So there might be -- Depending on the relief you're

9    asking and the condition of the parties, you might go

10   to a commercial court or to a receiver court.

11        Q.   Okay.  Just help me understand, what's the

12   difference between civil court and commercial court.

13        A.   Well, the commercial court will have

14   jurisdiction to analyze litigation between

15   shareholders of a company, to rule insolvency cases.

16          In insolvency I mean reorganization, in

17   liquidation bankruptcy proceedings, will also have

18   jurisdiction to decide about intellectual property

19   this, and also about arbitration issues.

20          I mean, if there is a dispute, let's say, if

21   you want where no arbitration award, or if there is a

22   pre-arbitration proceedings that someone wants an

23   injunction, or anti-suit arbitration, then this also

24   will go to commercial court.  This is a state rule, a

25   local rule that will divide the jurisdiction of lower

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)                                      8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 22

1    courts.

2         Q.   Okay.  So what -- what kind of a case would

3    go to the civil court then?

4         A.   Well, if you have damages -- asking for

5    damages for -- for -- if you have -- if I have an

6    agreement, a lease agreement, a contract, those are

7    not considered shareholders' disputes.  So that will

8    go to a civil court.

9              If I have a car accident, and I have damage

10   because I had a car accident, it will go to civil

11   court.  If I have an agreement, lease agreement, and

12   I'm asking damages based on that lease agreement.  Or

13   if I'm asking damages based on violation of the law,

14   which I understand it's -- It's my understanding

15   that's your case here based on violation of the law,

16   and that you would -- so I would -- your case might be

17   assigned for a civil court in Rio.

18        Q.   Okay.  So you would take -- you would take

19   your lawsuit.  What would -- What would the name be --

20   In Florida in the federal system or in the state

21   system we call this a Complaint.  Our initial document

22   is a Complaint.  Do you understand that?

23        A.   Yes.

24        Q.   What would you call your initial document

25   in -- in Brazil?

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)                                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 23

1        A.    You mean in Portuguese?

2        Q.    Sure.  In Portuguese, yeah.

3        A.    It's called Petições iniciais.

4        Q.    What does that translate to roughly in

5   English?

6        A.    Initial pleadings.

7        Q.    Okay.  So --

8              MR. MILNE:  Initial petition.

9              THE WITNESS:  Initial petition.

10   BY MR. POYER:

11       Q.    I'm sorry, initial petition?

12       A.    Initial pleadings, initial petitions.

13             I'm using petition and pleadings as similar.

14   Again, I'm not familiarized with legal concepts, US

15   legal concepts, so -- But the initial motion you

16   prepare when you file a case.

17       Q.    So where would you take that initial

18   document?  The initial petition, where would you take

19   that to file it?

20       A.    You will file it electronically in the

21   website.  The court website.

22       Q.    On which court website?

23       A.    The Rio de Janeiro State Court website.

24       Q.    Okay.

25             So for any action, for a commercial action,

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)                          8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 24

```
 1    a civil action, or a bankruptcy action, you would file

 2    it at the same court's website.

 3         A.   Correct.

 4         Q.   Is that right?

 5         A.   Is that right.

 6         Q.   And then what happens after that?  Does

 7    the -- Would the -- Would the website -- Would a web

 8    administrator, or would somebody assign it to a

 9    different division?

10         A.   No.

11              In the beginning of your initial motion,

12    initial petition, you indicate to which court you

13    are -- How can I say -- You are asking the -- the

14    petition to go to a specific court.

15              So you say the Honorable Judge of the

16    Commercial Court of Rio de Janeiro State Court, or the

17    Honorable Judge of -- Because you have more than one

18    commercial court, so you have more than one civil

19    court.  So they don't -- The system will randomly pick

20    up one court, one judge, among -- I mean, depending on

21    if you have -- if it's a civil court, you have, I

22    guess if I'm not mistaken, 50 civil courts in Rio.  If

23    it's a commercial court, you have seven.  So if

24    family, it's different.

25              So the system will randomly pick one of
```

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 25

1    those.  But you will indicate if you are asking this

2    case to be addressed, to be assigned to a civil court

3    or to a commercial court.  And the system will pick up

4    one of the civil courts or commercial courts.

5          Q.   When you --

6          A.   And the judge will receive it.

7          Q.   When you say it will pick one of the civil

8    courts, do you mean a separate judge, or do you mean a

9    completely separate -- or do you mean a division in a

10   court?

11         A.   So, I mean, what we call -- And again, maybe

12   you're somehow lost in translations here, but you

13   have, for instance, 15 -- 50, sorry, 50 civil courts

14   in Rio de Janeiro.  Right.

15         Q.   I'm sorry.  Can I interrupt you?

16         A.   Yeah.

17         Q.   Just so we can take it piece by piece, just

18   so I understand, when you say 50 civil courts --

19         A.   Lower courts, yes.

20         Q.   -- do you mean separate courthouses?

21         A.   Yes.  Separate offices.  Separate spaces,

22   rooms within the same building.

23         Q.   Okay.

24         A.   Okay.

25

Worldwide Reporting Service 305-377-3376

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 26

1      Q.   So 50 civil courts, that means 50 civil

2   judges.

3      A.   Exactly.

4           Even sometimes a court might have what we

5   call a main judge.  The word is Chipula.  It's the

6   main judge for that court.  And then an assistant

7   judge.

8           So even sometimes the court might have even

9   more than one judge deciding cases on that court,

10  because it might have more than one.

11          So I would say that you have at least 50

12  judges -- Well, yes, at least -- you're going to have

13  pretty much 50 judges.  Some might be on vacation,

14  some might be not there at that time, but that...

15     Q.   I'm not going to hold you to the number of

16  it.

17     A.   No, no.

18     Q.   I'm just trying to understand the structure

19  of it more than anything.

20     A.   Sure.

21     Q.   So you've got 50 civil judges or so, and

22  then you have different commercial judges.

23     A.   Yes.

24     Q.   And you have different bankruptcy judges.

25     A.   Commercial and bankruptcy is the same.  The

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)                                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 27

```
 1   commercial court are the court of jurisdiction to

 2   decide, among other things, insolvency cases.

 3        Q.   Okay.

 4        A.   So bankruptcy, commercial, you're talking

 5   about the same thing.

 6        Q.   Okay.  And you said intellectual property

 7   cases would be filed in the same court.

 8        A.   Could you please repeat the question.

 9        Q.   Intellectual property cases, they would be

10   filed with the same court.  Is that right?

11             MR. MULLINS:  Objection to form.

12             THE WITNESS:  I really don't

13        understand.  I'm missing...

14   BY MR. POYER:

15        Q.   Sure.  You said that -- I believe earlier

16   you said that -- that the Rio State Court is

17   authorized to hear cases involving intellectual

18   property?

19        A.   Intellect property, yes, also.

20        Q.   Okay.  I apologize for my pronunciation.

21        A.   Yeah.  No.  Sometimes the language is not

22   so --

23        Q.   Sure.

24        A.   -- fluid.

25
```

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 28

1     Q.   No problem.

2         But you don't practice intellectual

3 property.

4     A.   No, I don't.

5     Q.   But you're -- are you qualified -- are you

6 permitted in Rio to practice intellectual property --

7     A.   I -- I --

8     Q.   -- if you wanted?

9     A.   I am.

10    Q.   And you're --

11         MR. MULLINS:  Make sure he finishes his

12         question.  You're -- You're overtalking him

13         a couple times.  You're doing great.  Just

14         let him finish the question.

15         THE WITNESS:  Okay.  Sorry for that.

16         MR. MULLINS:  It will make her mad.

17         MR. POYER:  No worries.  I just --

18         MR. MULLINS:  I just want to make sure

19         it was clear.  You've only done it a couple

20         of times.

21         THE WITNESS:  Sure, sure, sure.

22 BY MR. POYER:

23    Q.   So you -- And you're authorized to practice

24 bankruptcy law in Brazil.

25    A.   I am.

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

1      Q.   Okay.

2           Do you -- What area of practice do you

3      concentrate on?  What area of practice do you -- Let

4      me start over.

5           In what area do you practice the most?

6      A.   Commercial litigation.  What -- Well, at

7      least from what I would say commercial litigation.

8      Q.   Okay.  Would that be cases involving

9      damages?

10     A.   Also.

11     Q.   Would that include cases similar to our case

12     here that I handed you, Exhibit B, the First Federal

13     Amended Complaint?

14     A.   Yes.

15     Q.   Okay.  How often do you handle damages

16     cases?

17     A.   Well, it's hard to assess.  I handle it many

18     times.

19          More recently I have been focusing in

20     insolvency cases.  Because of Brazil faced the huge

21     economic crisis in the past recent years.  So there's

22     more insolvency cases going on.  So brought my

23     attention.

24          But I am -- I am familiar with damages

25     cases.  I mean, if that...

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 30

```
 1      Q.   Sure.
 2           When is the last time -- When is the last
 3   time you handled a damages case?
 4      A.   Oh.  I am probably still handling it.  A few
 5   cases -- Let me see if I can remember.  So many cases.
 6   Damages cases.  Let me just think a little bit.
 7           Okay, I just can remember some.  We -- I
 8   worked for a local electric distribution company from
 9   the State of Sao Paulo.  And then I still go -- I have
10   still cases in which people are asking for damages
11   against them.  Damage cases.
12      Q.   How many?  How many cases?
13      A.   For that client, I would say three or four
14   cases right now.
15      Q.   How many cases total are you handling right
16   now involving damages where -- where you are asking
17   for damages?
18      A.   I don't -- I don't remember.  I don't have
19   this information here with me.  Honestly.
20      Q.   So let's talk a little bit about your -- I
21   think you said you represent an entity from Sao Paulo.
22      A.   Energy company.  Distribution -- Electric --
23   Energy distribution.  The guy that, you know -- Energy
24   distribution company that -- Power.  How can -- How
25   can I say that?  It's -- It's an electric company.
```

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 31

1    The guy that, you know --

2                  MR. MULLINS:  Utility?

3                  THE WITNESS:  Uh?

4                  MR. MULLINS:  Utility.

5                  THE WITNESS:  Utility.  I mean, the guy

6            that provide energy, light for your house,

7            your housing.

8                  MR. MULLINS:  Utility.

9                  THE WITNESS:  Yeah.

10                 MR. MULLINS:  Sorry.

11                 THE WITNESS:  Sao Paulo Electric --

12           Electricity Company.

13                 Sorry for that.

14   BY MR. POYER:

15       Q.   No.  No.  No worries at all.

16            So it's the company that provides

17   electricity to an entire city.

18       A.   Yes.  More than one, yes.

19       Q.   Okay.  And you said you're handling three or

20   four cases for them.

21       A.   Yes.  Right.

22       Q.   What are -- If you know, what are -- what

23   are the -- Let's just take one of the cases.  What

24   are -- What are the amounts you are -- in damages

25   you're asking for?

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 32

1        A.   No.   I meant --

2                  MR. MULLINS:   Objection to form.

3                  THE WITNESS:   Sorry.

4                  MR. MULLINS:   You can answer.

5   BY MR. POYER:

6        Q.   You can answer if you understood the

7   question.   If you don't understand the question, I can

8   rephrase it.

9        A.   I'm not asking for damages.   I'm -- I am

10  acting for the Defendant.   The -- The electric company

11  is the Defendant in those cases.

12       Q.   Okay.   How much?   How much is the plaintiff

13  asking for in damages?

14       A.    It's hard to assess, because it's an

15  association of consumers that have suffered losses.

16  So there is a dispute about the merits of the case.

17  But we don't know the amount until we reach a final --

18  a more advanced stage of the case.

19       Q.   In general, what are the claims that the

20  plaintiffs are asserting in that case against your

21  client?

22       A.   As I said, in that case there's no amount

23  yet to be established.   I mean, I can't tell you,

24  because we are discussing the responsibility, and then

25  only after we're going to discuss about the amounts.

Electrically signed by ronni Kugler (101-355-781-7186)
Electrically signed by ronni Kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

1           The amount are not at issue at the time of

2     the proceedings, at this time.

3        Q.    Okay.  So what is -- Let me ask a different

4     question then; what is the basis of the claim that the

5     electric company, that the utility company is

6     asserting against your client?

7                 MR. MULLINS:  Objection to form.

8     BY MR. POYER:

9        Q.   Is it -- Is it a breach of contract case?

10    Is it a damages case?  Is it a tort case?  What --

11    What kind of a case is it?

12                MR. MULLINS:  Objection to form.

13                THE WITNESS:  I'm not -- Maybe there's

14          not clear, but my client is the Defendant.

15          Is that clear?

16                MR. POYER:  Yes.  No.  Absolutely, yes.

17                MR. MULLINS:  You asked what --

18                THE WITNESS:  Yeah.

19                MR. MULLINS:  He's representing the

20          utility company.

21                THE WITNESS:  Yes.

22                MR. MILNE:  You asked if the utility

23          company suing for his client.

24                THE WITNESS:  Yeah.

25                MR. POYER:  Oh.

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 34

1              MR. MULLINS:  These are all -- This is

2        a consumer suing the utility company.

3              THE WITNESS:  Yes.

4   BY MR. POYER:

5        Q.   I'm sorry.  I apologize.

6              What are the basis of those claims?

7        A.   Well, the basis are people are complaining

8   about unduly charges on -- on the electric bill.

9   Electric bill?  I mean, the payments.

10              They were overcharged, and that created a

11  lot of problems for many consumers.  And there's a

12  huge dispute around this issue.

13       Q.   Are you the lead lawyer in the case?

14       A.   One of.

15       Q.   How many --

16       A.   Not the only one.

17       Q.   I apologize.  I'm sorry.  I didn't mean to

18  -- I'll let you finish your answer.

19              Are you the lead lawyer in the case?  Could

20  you --

21       A.   One of the leading lawyers.

22       Q.   How many other lawyers are involved?

23       A.   Four.  Three.  With me, four.

24       Q.   Are they all from your firm?

25       A.   Yes, they are.

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)                                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 35

1      Q.    What's the name of your firm?

2      A.    Sergio Bermudes Law Firm.

3      Q.    Do you have any -- Are you involved in any

4  cases now where you represent a plaintiff who's

5  requesting damages?

6      A.    I don't remember.  Honestly.  I have to -- I

7  -- I would need to go through the cases.  I have many

8  different cases.  I don't remember.

9      Q.    Have you ever acted in a case where you

10  represented the plaintiff in a damages case?

11      A.    Yes.

12      Q.    When was the most recent one that you

13  remember?

14      A.    I remember a case in 2005.  It's a big case.

15  Because, remember -- Of course, remember the biggest

16  case, sometimes it's easier to remember.

17            We have a national -- one of the biggest

18  bank in Brazil.  And it's called the National Bank.

19  Went into liquidation.  At the Central Bank

20  transferred assets to another bank to avoid, you

21  know -- to avoid damages to consumer.  And there is a

22  big damage claim against -- from the former

23  shareholders of the National Bank against the Central

24  Bank and the bank that received the assets.

25            May I?  Sorry.  Asking for damages, because

Worldwide Reporting Service 305-377-3376

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)                                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

1    of these deal, operation.  Whatever.

2            So this is one I remember right now by

3    heart.  I mean...

4        Q.   And that -- is that case over?

5        A.   Yes, it is.

6        Q.   When was that case concluded?

7        A.   I don't remember, but -- I don't remember.

8    I will not guess.  I don't remember by heart.

9        Q.   Okay.  No problem.

10           Where did that case take place?  Was that in

11   Rio?

12       A.   Yes.

13       Q.   Was that in the commercial or the civil

14   court?

15       A.   No.

16       Q.   Which court was it in?

17       A.   It was in the Federal Court.

18       Q.   The Federal Court.

19       A.   Right.

20       Q.   In Rio de Janeiro?

21       A.   In Rio de Janeiro.

22       Q.   Okay.  And you're qualified to practice in

23   the Federal Court.

24       A.   Yes, I am.

25

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

1        Q.    So I guess my question then is, so you've

2    got a state system and a federal system.  Is that

3    right?

4        A.    That's right.

5        Q.    Okay.  Real very briefly what's -- what's

6    the difference between the two?

7        A.    I'm not sure I understand the many

8    difference, but what specifically are you asking

9    about?

10       Q.    What kind of cases -- Is there any kind of

11   case the Federal Court can hear that the State Court

12   can't hear?

13       A.    Yes.

14       Q.    What kind -- What is an example of a case

15   that the Federal Court could hear that the State Court

16   could not hear?

17       A.    A case in which a federal party, government

18   party is a -- is a party that as plaintiff or

19   defendant.

20       Q.    Why was the case that you described, why was

21   that case filed in Federal Court?

22       A.    Because the Brazilian Central Bank was a

23   Defendant in that case.

24       Q.    What was the outcome of the case?  Was

25   your -- Was your lawsuit successful?

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)                                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 38

1      A.   It was settled.

2      Q.   You settled the case.

3      A.   (Nodding.)

4      Q.   What were the amounts -- What was the amount

5  of damages that you asked for in that case?

6      A.   To be in the safe side, I would say over a

7  billion Reais at that time.  I not -- I don't remember

8  the exact figures.  Figures.  But it was over a

9  billion.  Because we were discussing assets -- the

10  value of assets that were transferred.

11           In that time the Banco National, which was

12  in liquidation, was the fifth Brazilian bank at the

13  time.  It was reasonably big.  At least for Brazilian

14  standards.  So it's a big case.

15      Q.   Okay.  What year was that?

16           MR. MULLINS:  Objection to form.

17  BY MR. POYER:

18      Q.   What year did you file the action?

19           MR. MULLINS:  Objection to form.  Asked

20           and answered.

21           THE WITNESS:  I really -- Again, it

22           was -- I don't remember exactly.  I would

23           say -- I will not guess.  I don't remember

24           exactly.

25           But it's a public filing.  And if

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

```
 1          you -- if it's important, we can provide the

 2          information.

 3               I really don't remember.  And I want to

 4          -- I don't want to guess.

 5               Oh -- I'm sorry.  Go ahead.  I just

 6          remember another one.

 7  BY MR. POYER:

 8      Q.   No.  Please.  Go ahead.

 9      A.   No.  Please do the questions.  Do the

10  questions.

11      Q.   What case were you about to describe?

12      A.   I'm sorry.

13               MR. MULLINS:  That's what you knew.

14          You knew that.

15               Go ahead.

16               THE WITNESS:  I'm sorry.

17               We have also a case against a Brazilian

18          bank.  It's a case related to an investment

19          made through a fund.  It's -- We call in

20          Brazil a FIDIC.  Which is a fund that's used

21          to buy credits.  To invest in distressed

22          credits in the market.  So there is a fund.

23               So the guys that invested, they

24          suffered a certain loss with that fund,

25          because the credit they bought were not, you
```

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 40

```
 1              know -- did not perform as they think it

 2              should.  The plaintiff.  And they filed a

 3              lawsuit against many different parties,

 4              including the Brazilian bank that would --

 5              that used to be the custodian of the funds,

 6              which is -- And we represent the custodian.

 7              And it's also a big case.  I mean, you're

 8              asking for 800 million Reais of damages

 9              against different parties, including the

10              bank.

11   BY MR. POYER:

12       Q.    Who do you represent?

13       A.    The Brazilian bank.

14       Q.    Is that case still going on?

15       A.    Yes, it is.

16       Q.    Do you do breach of contract cases?

17       A.    I do, yes.

18       Q.    Are you involved in any now?

19       A.    I don't remember by heart.

20       Q.    Okay.  Where would a breach of contract case

21   be filed?

22              I'm sorry.  Let me ask another question.

23              In what court would a breach of contract

24   case be filed?

25                   MR. MULLINS:  Objection to form.
```

Worldwide Reporting Service 305-377-3376

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 41

```
 1                    THE WITNESS:  It depends.  I mean, as I
 2           said, if there is -- just to give you an
 3           example, you just mentioned that if there is
 4           a federal party involved in it, it would be
 5           a federal court.  If there's no federal
 6           party involved, it's probably a state court.
 7           Civil state court.  If it's a breach of
 8           agreement between -- and there is related to
 9           an arbitration, it goes to commercial court.
10           So the answer is it depends.  The different
11           rules applicable.  I can't give you an
12           answer that general.
13  BY MR. POYER:
14       Q.   Okay.  Do you do any fraud cases?
15       A.   What do you mean by fraud?
16       Q.   Do you have a concept of fraud in Brazil
17  under Brazilian law?
18       A.   We do.
19            The reason I'm asking is that if you asking
20  fraud on a criminal aspect of it, I don't.  If you
21  asking fraud on a civil aspect of the fraud -- Fraud,
22  we have a whole section of the Brazilian Civil Code
23  dealing with fraud and fraud against creditors.  And
24  we have done cases in which fraud was raised as an
25  argument.  But civil cases.
```

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 42

1              I'm just asking.  Again, I just don't want

2    to be lose in translation in relation to if it's

3    criminal.  Sometimes you're asking me fraud, I don't

4    know what exactly you have in mind.

5         Q.   Do you do criminal case?

6         A.   No, I don't.  Never did.

7         Q.   So you only do civil cases then.  Is that

8    right?

9         A.   Yeah.  Meaning, my concept of civil is

10   including commercial cases, arbitration.  Just again,

11   to be -- so that you understand what I'm -- what --

12   what my practice is.

13        Q.   So let me ask you a question about our case

14   here, the First Federal Amended Complaint; would there

15   be a basis for a federal court jurisdiction over that

16   Complaint?

17        A.   Could you please ask it again.  I'm not

18   sure --

19        Q.   Would it --

20        A.   -- I understand the question.

21        Q.   Would it be possible to file the First

22   Federal Amended Complaint in Federal Court in Brazil?

23        A.   No.  No.  No.  To the best of my knowledge,

24   no.  This would be a state court case.

25

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)                                                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 43

1        Q.    Why?   Why would there be no federal

2    jurisdiction?

3        A.    Because there's no federal parties here.

4    They're all private parties.   At least my

5    understanding from reading the -- the list of

6    Defendants here.   They're all private parties.   So I

7    don't think we're going to have any federal

8    jurisdiction here.

9        Q.    So the sole -- So the basis for federal

10   jurisdiction is whether there's a federal party

11   involved?

12       A.    It's one of them.

13            You can also have if you have discussing the

14   validity of a treaty -- international treaty.   So then

15   federal courts would also apply.

16            But I don't see any of those arguments here.

17   Any -- Of course, you have -- federal court has

18   jurisdiction for certain and specific types of crimes.

19            But as I said, I don't do criminal

20   litigation, so I would not be able to which crimes are

21   not part of the federal jurisdiction.

22       Q.    Have you ever represented a plaintiff who

23   has sued a party, who has sued a defendant foreign to

24   Brazil?

25       A.    Could you please repeat again.

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 44

 1      Q.   Sure.

 2           Have you ever represented a party who has

 3  sued a foreigner?

 4      A.   Have I ever represented a party that has

 5  sued a foreign party.  If I ever filed a lawsuit

 6  against a foreign party in Brazil?

 7      Q.   Yes.

 8      A.   I don't remember.  I really don't.

 9      Q.   Have you ever represented a foreign

10  plaintiff in a lawsuit in Brazil?

11      A.   Yes.

12      Q.   How many?  Approximately.

13      A.   How many?  Well, right at this moment, I am

14  representing at least six American hedge funds in

15  litigation against Brazilian companies.  So they're

16  foreign parties that we are representing in litigation

17  in Brazil.

18      Q.   What kind of a case is that?

19      A.   Insolvency cases.

20      Q.   Do you deal with those kind of cases often?

21      A.   What kind of cases?

22      Q.   Foreign insolvency cases.  Do you deal with

23  foreign insolvency cases often?

24      A.   Yes, I do.

25      Q.   Is it a Brazilian insolvency case?

Worldwide Reporting Service 305-377-3376

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 45

```
 1        A.    Is it a Brazilian insolvency cases, yes,
 2   with international -- How can I say -- international
 3   aspects.
 4        Q.    Are you involved in any reorganization cases
 5   right now?
 6        A.    Yes, I am.
 7        Q.    How many?
 8        A.    As -- Well, acting for the debtor, I would
 9   say -- I would say four.  Acting for the creditors, I
10   would say -- Well, acting for the creditors, many.
11   But the major one, more relevant, maybe three.  Yeah.
12   Many.
13        Q.    Okay.  So let's get back to -- let's get
14   back to our case.
15        A.    Okay.
16        Q.    The federal -- The First Federal Amended
17   Complaint.
18        A.    Okay.
19        Q.    Okay.  So you have your initial document,
20   right, and you would file that in -- you said you'd
21   file that in State Court.
22        A.    Right.
23        Q.    In the First Federal -- In the -- In the
24   document, in the initial pleading, would you list --
25   you'd list the plaintiff, obviously.  Right?
```

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 46

1        A.   I didn't understand what you said.

2        Q.   You would list in the first -- If you're

3   going to file a damages case in the Commercial Court

4   in Rio --

5        A.   Uh-huh.

6             MR. MULLINS:  Objection to form.

7             MR. MILNE:  Civil Court.

8   BY MR. POYER:

9        Q.   I'm sorry.  Let me start over.

10            If you were going to file a damages case in

11   the State Court in Rio --

12       A.   Correct.

13       Q.   -- in your initial pleading you'd list the

14   plaintiff.  Is that right?

15       A.   That's right.

16       Q.   And you would list all of the defendants

17   that the plaintiff was suing.  Is that right?

18       A.   That's right.

19       Q.   Okay.  Would you have to list -- In the

20   initial pleading would you have to list a basis for

21   jurisdiction?

22       A.   No.  It's not mandatory.

23       Q.   Would you do it as a matter of your

24   practice?

25       A.   We don't do it when it's obvious on our

Worldwide Reporting Service 305-377-3376

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 47

```
 1    part.  So if you have a -- a defendant that is in

 2    Brazil, domiciled in Rio, it's a damage case, I don't

 3    need -- I wouldn't do it, because it's obvious.

 4         Q.   What are the --

 5         A.   I wouldn't lose time of the judge with

 6    unnecessary information.

 7         Q.   The judge wouldn't want to know that

 8    information?

 9         A.   Well, because he will look -- Well, you

10    talking about in the example about this case.  Right?

11         Q.   Correct.

12         A.   So he will look that many defendants are

13    domiciled in Rio, I guess.  Because you're going to

14    list them, as you said, and you indicate an address

15    when you listed them.  So he will understand that most

16    of them are domiciled or resident in Rio.

17              And when we read the facts, they will

18    understand that the facts occurred in Rio.  Most of

19    them, at least.  So his jurisdiction -- he's not -- in

20    my previous experience he will not have any doubt

21    about his own jurisdiction.  So I wouldn't take time

22    with that.  It's a little bit obvious.  Using this

23    case as an example.

24         Q.   If you were suing a foreign defendant, how

25    would you explain that jurisdiction to the court?
```

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

1      A.   Well, if a foreign defendant -- you suing

2  for X that occurred in Brazil, then when you -- you

3  talk about the facts, of course, you -- you going to

4  explain the judge the facts of the case.  And they

5  will -- he will understand that the facts occurred

6  in -- in Rio.  And so he will see that he has

7  jurisdiction to rule the case.

8           Of course that doesn't mean that the

9  defendant cannot argue that this is not a proper court

10 for any reason.  But I wouldn't lose any time with

11 something that it's somehow obvious.

12     Q.   And it would be obvious -- Let me ask a

13 different question.

14          You submitted an Affidavit in this case.

15 Right?

16     A.   Right.

17          Do you mind if I take some water.

18               MR. POYER:  Absolutely not.

19               THE WITNESS:  Thank you.

20               MR. MULLINS:  I'll get it for you.  You

21          can take a break whenever, you know.

22               THE WITNESS:  Yeah, no, I'm fine.

23               MR. MILNE:  Can we take a one minute

24          bathroom break.

25               MR. MULLINS:  Sure.

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)                                   8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 49

1              THE VIDEOGRAPHER:  Going off the

2         record.  The time is 11:07.

3              (Thereupon, a recess was taken after

4         which the following proceedings were had:)

5              THE VIDEOGRAPHER:  Back on video

6         record, beginning of DVD Number 2.  Time is

7         11:22 a.m.

8   BY MR. POYER:

9      Q.   Okay.  Mr. Carpenter, you -- you submitted

10  an Affidavit in this case.  Right?

11     A.   Right.

12     Q.   You submitted more than one Affidavit

13  actually I think.  Is that correct?

14     A.   Is that correct.

15             MR. POYER:  Okay.  So let me give you

16        your Second Affidavit submitted in this

17        case.  We'll call it Exhibit C.

18             (Whereupon, Plaintiffs' Exhibit C

19        was marked for identification.)

20             (Whereupon, the above-referenced

21        exhibit was handed to the witness.)

22             THE WITNESS:  Thank you.

23  BY MR. POYER:

24     Q.   Could you go ahead and turn to Page 8 of the

25  Affidavit.

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 50

1       A.   Yes.

2       Q.   Is that your signature at the bottom of the

3  page?

4       A.   Yes, it is.

5       Q.   Could you turn to Page 3 of the Affidavit.

6       A.   Okay.

7       Q.   Do you see on Page 3, Paragraph 8 the

8  Affidavit talks about Article 21 of the Brazilian

9  Civil Procedure Code?  Is that right?

10       A.   Yes.  This is right.

11       Q.   What is Article 21 of the Brazilian Civil

12  Procedure Code?

13       A.   What do you mean what is?  What is in it?

14       Q.   What does Article 21 of the Brazilian Civil

15  Procedure Code provide for?

16       A.   Oh.

17            It provides for -- It defines -- Article 21

18  defines the rules in -- in the cases in which a

19  Brazilian court will have jurisdiction.

20       Q.   That's a Brazilian State Court.  Is that

21  right?

22       A.   The Brazilian -- In Brazil we don't have

23  state procedural rules.  Only dealing with

24  jurisdiction internal rules of the court.  So the

25  Civil Procedure Code will be applicable either to

Worldwide Reporting Service 305-377-3376

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)                                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 51

1    state court or to federal court.

2        Q.   I thought you said -- I'm sorry, I thought

3    you said earlier that federal court jurisdiction was

4    predicated upon the identity of a federal party.

5        A.   Also.  Yes.

6        Q.   Is that listed in Article 21?

7        A.   No.

8             It is listed in the Brazilian Constitution.

9    Article -- I don't remember.  But 109.  I will not

10   guess.  But 109.

11       Q.   Are there any other -- In the Brazilian

12   Civil Procedure Code are there any other articles that

13   apply to jurisdiction of the court?

14       A.   Yes.

15       Q.   How many?  Do you know offhand how many?

16       A.   I don't know by heart.  I can -- I have the

17   Civil Procedure Code here.  I can look at it if you

18   want.

19       Q.   We might -- We might get there, but for now

20   we'll just -- let's concentrate on Article 21.

21       A.   Okay.

22       Q.   So let's say you are going to draft the

23   equivalent of the First Federal Amended Complaint to

24   file in Brazil.  Right.  Is it fair to say that

25   Article 21 provides the bases for jurisdiction of the

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)                                8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 52

```
 1   court over -- over your -- Let me -- Let me start that

 2   question over.

 3             Let's say you were going to sue Aziz Ben

 4   Ammar.  Do you know who Aziz Ben Ammar is?

 5        A.   I've heard his -- I don't -- I don't have

 6   any personal knowledge of him, but I -- I -- I read

 7   about him in your -- in the documents of the case.  In

 8   the specific Complaint.  The Amended Complaint.  Is

 9   that correct?

10        Q.   The First Federal Amended Complaint.

11        A.   Yes.  Yes.

12        Q.   Right.

13             Let's say you were going to file the

14   equivalent of the First Federal Amended Complaint --

15        A.   Uh-huh.

16        Q.   -- in Brazilian Court --

17        A.   Uh-huh.

18        Q.   -- and you were going to sue Aziz Ben Ammar

19   --

20        A.   Uh-huh.

21        Q.   -- what would be the basis for the Brazilian

22   Courts' jurisdiction over Aziz Ben Ammar?

23        A.   Do you mind if I look again to the facts

24   alleged against Aziz Ben Ammar?

25        Q.   Sure.
```

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)                8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 53

1      A.   Federal you're speaking?

2      Q.   I -- I don't mind.

3      A.   I don't remember all of them by heart.  I

4  know that you listed -- Role played by Defendants.

5      Q.   And you also -- you talk about it in

6  Paragraphs 17, 18 and 19 I think of your -- of your

7  Affidavit --

8      A.   Uh-huh.

9      Q.   -- as well.

10     A.   Yeah.

11     Q.   I'm not telling you what to look at.  I'm

12  just trying to help out a little.  It's a lot of

13  documents.

14     A.   Here.

15          Okay.  Could you please -- I have already

16  read your facts in relation to Mr. Ammar, so could you

17  please repeat the question.

18     Q.   Sure.

19          What would be the basis for the Brazilian

20  Courts' jurisdiction over Aziz Ben Ammar?

21     A.   Well, according to what I read in the

22  Federal First Amended Complaint, Ammar has been -- is

23  being accused, charged, I don't know exactly the word,

24  precise word, but he's a Defendant because of his

25  participation in the X group companies, and the fact

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 54

1    that he was a member of the board of OGX.  And in his

2    capacity, he made -- it said that he, to quote, the

3    prime architect of the fraudulent billion-dollar "Put

4    Option" and the cover story regarding the fictitious

5    $850 million "sale".

6              So all those facts occurred in Brazil.  So

7    the basis for his responsibility or liability in

8    Brazil for -- I'm sorry.  The basis -- We would asking

9    his -- They asked him to be -- I was asking the court

10   to convict him to pay damages because of facts that

11   occurred in Brazil as his -- in his capacity as

12   manage -- part of the management of a Brazilian

13   company.

14             So that would fit in Item III of Article 21

15   of the Brazilian Civil Procedure Code; the grounds are

16   facts that occurred, or acts that were performed, in

17   Brazil.

18        Q.   In coming to your opinion, what -- what

19   actions did you assume that Aziz Ben Ammar did in

20   Brazil?

21        A.   I'm not --

22             MR. MULLINS:  Objection to form.

23             THE WITNESS:  I'm not assuming.

24             You're asking me about if I was to

25        repeat these motion in Brazil.  I'm just

Worldwide Reporting Service 305-377-3376

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)                          8d2f7eb9-56ee-45d4-9b96-842d7015438f

1            reading exactly what -- I am using the facts

2            that you put in your Complaint.  And the

3            fact -- those facts occurred in Brazil.  As

4            I read it.  So those would be the

5            jurisdiction basis for filing the case

6            against Aziz Ammar in Brazil.

7    BY MR. POYER:

8        Q.   Could you go to Paragraph -- Page 5,

9    Paragraph 17 of your -- of your Affidavit, your Second

10   Affidavit.

11       A.   17.

12       Q.   Uh-huh.

13       A.   Do you mind if I re-read it.

14       Q.   Absolutely not.  Go ahead.

15       A.   Okay.

16       Q.   So you say in Paragraph 17, it reads in

17   regard to defendants Aziz Ben Ammar, Erick Magno,

18   Erick Magno PL, Banco Itau International, EFG Capital

19   International Corp., and EFG Bank AG, I believe

20   Brazilian Courts have jurisdiction to adjudicate the

21   causes of action alleged against the Defendants by

22   Plaintiffs since the facts underlying their claims are

23   based on events that occurred in Brazil.

24       A.    Right.

25

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 56

1       Q.   It says again, Article 21, item III of the

2    Brazilian Code of Civil Procedure also states that

3    Brazilian courts have jurisdiction when: "the case

4    arises out of a fact that occurred, or an act that was

5    performed, in Brazil."

6       A.   Right.

7       Q.   So my question is, for the Defendant, Aziz

8    Ben Ammar, what fact in the Complaint -- If you're --

9    If you were going to file the equivalent of this

10   action in Brazil, what fact would you allege that he

11   did in Brazil?

12              MR. MULLINS:  Objection.  Asked and

13          answered.

14              THE WITNESS:  Again, I'm not making the

15          exercise of what would I have against those

16          persons.  I'm just making the exercise as

17          you ask of if I were to file this specific

18          lawsuit according to the facts provided

19          herein why I believe a Brazilian court would

20          have jurisdiction against Aziz Ben Ammar.

21          Right.

22              So what it says here that you were

23          suing --

24              MR. MULLINS:  I'm sorry.  For the

25          record, can you tell what paragraph you're

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

1          reading from.

2                 THE WITNESS:  I'm reading from

3          Paragraph 130 up to 144 of the Federal First

4          Amended Complaint, Page 27.

5                 MR. MULLINS:  Thank you.

6                 THE WITNESS:  So it says here in

7          Paragraph 131 that in 2012, BEN AMMAR was

8          elected to the boards of OGX, LLX, OSX, CCX,

9          MMX and MMX by a cadre of unsuspicion

10         victims, including a number of Americans --

11         So those are all Brazilian companies with

12         headquarters in Brazil.  So his activity as

13         a board member necessarily took place in

14         Brazil as a board member of these companies.

15                And it says further, BEN AMMAR was

16         intimately involved in generating story for

17         a press during 2013, regarding the supposed

18         massive capitalization of OGX and the fact

19         that it was impossible for it to fail.

20                Many of the press information we have

21         in the case also used press in Brazil.  I

22         know that used press -- international press,

23         but also used -- So these stories were also

24         created in Brazil.

25                He was a primary architect of the

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)                                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 58

1      fraudulent billion-dollar "Put Option".

2          The Put Option was Put Option made with

3      OGX, which is a Brazilian listed company,

4      and OSX, which is also a Brazilian company.

5      And the Put Option most certainly was done

6      and negotiated in Brazil.

7          So if Brazil was the -- the -- if he

8      was the prime architect of the fell in these

9      facts, most likely occurred in Brazil.

10     These are Brazilian companies in the Put --

11     And Eike, the guy that give the Put, is a

12     Brazilian citizen.

13         So we have -- So reading the facts of

14     your Complaint, I have -- my understanding,

15     if I were to file a Complaint of Ben --

16     Mr. Ammar, there were plenty of facts in

17     Brazil.

18         And those are the facts out of which

19     you are asking damages of.  These are the

20     fact that he does -- I'm not reading all of

21     it, but just giving examples, that according

22     to the Complaint, those are facts that give

23     rise to his responsibility.

24         I'm not saying that I'd agree that it

25     will raise responsibility.  I'm just saying

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)                              8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 59

```
 1              that those facts were -- occurred in Brazil.

 2              So if that is the fact that you use in your

 3              case, that would -- So that Article 21 of

 4              the Brazilian Civil Procedure Code would be

 5              applicable, and Brazilian Court would have

 6              jurisdiction.

 7   BY MR. POYER:

 8        Q.   Going to the next Defendant, Erick Magno.

 9        A.   Okay.

10        Q.   And I'm sorry, I'm going back to Paragraph

11   17 of your Affidavit.

12        A.   Okay.

13        Q.   The next Defendant, Erick Magno.  I'm not

14   going to read the entire paragraph again into the

15   record --

16        A.   Uh-huh.

17        Q.   -- but based on your knowledge of the case,

18   what would the -- if you were going to file the

19   equivalent of the First Federal Amended Complaint --

20        A.   Uh-huh.

21        Q.   -- in Rio --

22        A.   Uh-huh.

23        Q.   -- what would be the basis for jurisdiction

24   over Erick Magno?

25        A.   Do you mind if I --
```

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 60

1     Q.   No.  Go ahead.  Absolutely not.

2     A.   Okay.  Here we go.  Okay.

3          Could you please repeat the question.

4               MR. POYER:  Sure.

5               I'm sorry, Ronni, could you read the

6          question back.

7               (Thereupon, the referred to question

8          was read back by the Court Reporter as

9          recorded above.)

10              THE WITNESS:  So according to the --

11         the facts, and I'm reading from our Item 169

12         until 177 of the Amended Federal First --

13         First Federal Amended Complaint, Page 37 and

14         38, it says here basically that Magno helped

15         the Batista family to receive money from the

16         Brazilian companies and to hide, may use it,

17         the money abroad.

18              So I think that those are all facts

19         that are -- the money, the -- the -- the --

20         the activities of those guys may also came

21         from resources from a Brazilian company.  So

22         they receive money from this Brazilian

23         company and helped -- if, of course, I'm

24         assuming this is all true.

25              So I think that also fact that has a

Worldwide Reporting Service 305-377-3376

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 61

1        lot of connections with Brazil, because the

2        money came out of Brazilian companies, and

3        were used to go for the country.

4              So it says here, it helps --

5              MR. MULLINS:  Remember, please tell us

6        where you're reading.

7              THE WITNESS:  I'm reading from

8        Article 175.

9              MR. MULLINS:  Thank you.

10             THE WITNESS:  Using the Magno Citibank

11       trust account in Miami between 2013 and '15,

12       to hold, park and distribute in excess of

13       70 million from Eike and Thor and the 63X

14       Companies; providing an introduction, to

15       persuade it to move funds from Magno --

16       acting -- in letter (d), Magno was acting

17       personally as a trustee, friends, close

18       beneficiary for Eike, Thor and the X3

19       Companies to lend 15 million to OGPar at

20       120 percent.

21             So this is a loan made after the filing

22       of the reorganization case in Brazil.  So I

23       think that also connections with -- with

24       Brazil.  The facts that were considered, and

25       the facts that the proceeds they used were

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 62

1              allegedly taken from a Brazilian company.

2    BY MR. POYER:

3         Q.   You said that the money came from a

4    Brazilian company.   Which company are you referring

5    to?

6         A.   OGPar.

7              That's the -- the money that you -- the

8    company that you quote, used in this Item 175 of your

9    Complaint.

10        Q.   And what paragraph are you referring to?

11        A.   175.

12             It says Magno was acting personally as a

13   trustee for undisclosed beneficiaries, to enable Eike,

14   Thor and the 63X to lend 15 million to OGPar at

15   120 interest, repaid within three months with

16   3 million in interest as a way to further looting the

17   corpse of OGX and further defrauding creditors.

18             So my understanding that you -- the

19   Complaint said that you're taking money out of OGPar

20   and OGX in Fraud against Creditors if you -- if I were

21   use an expression that we have in Brazil.

22        Q.   Do you know of any other act that Erick

23   Magno did in Brazil?

24             MR. MULLINS:   Objection to form.

25             THE WITNESS:   I -- I am based only the

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 63

1              facts in the Complaint.

2    BY MR. POYER:

3         Q.    You represent Eike Batista.  Right?

4         A.    Right.

5         Q.    You represent him in -- You're his

6    bankruptcy lawyer.  Is that right?

7         A.    I'm sorry?

8         Q.    Do you represent Eike in a bankruptcy case?

9         A.    Eike, himself, in a bankruptcy case, no.  I

10   guess Eike companies.  But not himself.

11        Q.    So who did you represent in the bankruptcy?

12        A.    I represent OGX.  I represent MMX in

13   insolvency proceedings.

14        Q.    Going to the next Defendant in the list, in

15   Paragraph 17 of your Affidavit --

16        A.    Uh-huh.

17        Q.    -- Erick Magno, PL --

18        A.    Uh-huh.

19        Q.    -- again, the same question, what would be

20   the basis for jurisdiction in Brazil if you were going

21   to file the equivalent of the First Federal Amended

22   Complaint in Brazil, what would be the basis of

23   jurisdiction over Erick Magno, PL?

24        A.    I think I would use the same paragraph.  I

25   just quote the same question, the same answer that

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 64

1   both Erick Magno and Magno PL were dealt with in the

2   same chapter of the Complaint.

3         So I'm assuming -- My understanding is that

4   the facts here related to all of them.  So my

5   understanding that the same reason I gave you to Magno

6   to jurisdiction in Brazil, would also be applicable to

7   PL.

8       Q.   And you know of no other acts that Erick

9   Magno PL took in Brazil.

10              MR. MULLINS:  Objection to form.

11              THE WITNESS:  I base myself only on the

12         facts, given facts, in the Complaint.

13  BY MR. POYER:

14      Q.   In coming to your opinion in Paragraph 17,

15  did you assume that Erick Magno PL had done any other

16  acts in Brazil?

17      A.   Again, I base my opinion on the facts listed

18  in the Complaint.

19      Q.   But my question is -- my question is a

20  little bit different.  My question is did you assume

21  any other facts?

22         Did you assume that Erick Magno PL committed

23  anything else in Brazil from anything other than the

24  First Federal Amended Complaint?

25      A.   I didn't assume anything other than what is

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)                                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 65

1    in the Federal Complaint.

2        Q.   Okay.  And the same question for Erick

3    Magno, did you -- did you assume any other facts other

4    than what is given in the First Federal Amended

5    Complaint?

6        A.   No.

7        Q.   If you go back to Paragraph 17 --

8        A.   Uh-huh.

9        Q.   -- of your -- Paragraph 17 of your --

10       A.   Yes.  Yes.

11            Let me just --

12       Q.   Sure.

13       A.   -- I give you an explanation, and I just to

14   Brazilian, if there is a fraud case, you have to

15   demonstrate the fraud.  I assume that would be the

16   same in Brazil.  And you have to demonstrate the fraud

17   transfer of the money that was illegally taken out of

18   the company.

19            I think that those are two different

20   allegations in your Complaint, if I understood

21   correctly your Complaint.

22            So even if you want to deal with the Magno

23   and the transfers, you going to have to -- to

24   demonstrate the fraud in itself.  So in a way, even if

25   you're dealing with the transfer here, you can't get

Worldwide Reporting Service 305-377-3376

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)                          8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 66

1    rid of going into facts related to the fraud itself.

2    And the fraud occurred in Brazil.

3           So I think that -- that's also reason why we

4    have Brazilian jurisdiction against those persons in a

5    lawsuit filed in Brazil.

6    Q.   Okay.  So going back to Paragraph 17 of your

7    Affidavit --

8    A.   I think you understand what I meant.

9    Q.   Yeah.

10   A.   Good.

11   Q.   Going back to Paragraph 17 of your --

12   A.   Okay.

13   Q.   -- your Affidavit, going to the next

14   Defendant, Banco Itau International.

15   A.   Okay.

16   Q.   If you were going to file -- Again, the same

17   question is if you were going to file the equivalent

18   of the First Federal Amended Complaint against Banco

19   Itau in Rio, what would the basis for jurisdiction

20   over Banco Itau International be?

21   A.   If I may read it again.

22   Q.   Sure.  Yeah.  Absolutely.

23   A.   So first of all, Banco Itau, not this Itau

24   Miami, but Banco Itau is a major Brazilian bank.

25   Maybe the biggest private Brazilian bank nowadays.

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 67

1    Not -- If not the first, the second one.  Okay.

2    And -- And here we have a branch in Miami.

3            And so as you said in 19 -- 150, typically,

4    private banks are divisions or subsidiaries of major

5    -- major international banks, which trade on the brand

6    recognition and substantially on the parent entity or

7    the group as a whole, and its global ties and entrees,

8    to attract this high-net-worth client base.

9            So it's -- I think that I'm assuming from

10   the Complaint that you agree that Banco Itau Miami is

11   part of a branch, it's a part of a bigger network.

12   But that's the way I read it.

13           Banco Itau Miami is part of Banco Itau,

14   which is one of the biggest Brazilian banks.

15           And then read the Complaint, my reading is

16   that most -- many, many facts related to Banco Itau

17   here occurred in Brazil.  And my understanding is that

18   what you're saying here is that because Banco Itau had

19   the deep relationship with Batista family, they

20   allowed them to do things that causes damages to your

21   client, because of this big relationship.

22           And what relationship is this?  Those are

23   the items listed in Paragraph 154 of the Complaint.

24   And it says here, for instance, in June 2008 Banco

25   Itau served a "Global Coordinator and Joint booker --

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 68

1    Bookrunner" for OGX IPO.

2            OGX IPO occurred in Brazil.  It's a listed

3    company.

4            Also, in connection with OGX IPO, Itau USA

5    served "international agent" appointed by OGX, which

6    again, it's a Brazilian company, to facilitate

7    placement of shares outside of Brazil.

8            It also says here on September -- Sorry.  It

9    says also here -- It lists here many different deals

10   made using Brazilian company assets or shares as

11   guarantee, as pledged, it's relating to Centennial

12   Nevada.

13           It's also mentioned that OSX borrowed

14   850 million from an international syndicate led by

15   Itau.  This loan probably was made in Brazil.  OSX is

16   a Brazilian company.

17           Or at least the same in -- granted a

18   separate loan -- in item (e) 250 million to OSX.

19   Which is a Brazilian company.

20           So I have no reason to suspect that this

21   loan was made abroad.  Itau is a Brazilian bank, OSX

22   is a Brazilian company, so this deal was probably done

23   in Brazil.

24           And there's many other examples here that we

25   could cull.  But headquarters of it, though, is in

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 69

1    Brazil, as the way as headquarters of the Batista's

2    company.

3            So I think that all the facts -- most of the

4    facts you're using in this Complaint to justify the

5    inclusion of Itau in this lawsuit occurred in Brazil

6    according to what I read in the Complaint.  So that

7    would justify the jurisdiction of the Brazilian Court.

8        Q.   You mentioned Centennial Nevada in your

9    answer.  Right?

10       A.   I did mention that.

11       Q.   Is Centennial Nevada a Brazilian entity?

12       A.   No.  But it's used -- it pledged additional

13   OGX shares as collateral.  So I think that somehow it

14   has some connection to Brazil.  It's using a pledge of

15   a listed Brazilian company.

16           In order for this pledge to be effective in

17   Brazil, you need to go to a public registry.  So these

18   deals necessarily has to go through Brazil in a

19   certain way.  It's a pledge.  It needs -- has some

20   public registry, otherwise it's ineffective against

21   third-parties.  So if there is a pledge of a listed

22   company in Brazil, it certainly goes to Brazil.  And

23   it will be registered in the -- in the -- in the books

24   of that company.

25

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)                                8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 70

1       Q.   Do you know in this instance if that

2   happened?

3       A.   I have no particular knowledge of these

4   deals specifically.

5       Q.   Referring to -- Referring back to Banco Itau

6   and --

7       A.   Uh-huh.

8       Q.   -- Centennial Nevada.

9       A.   Okay.

10      Q.   Again, I'm just trying to be clear, what did

11  those two entities do, to your knowledge, in Brazil --

12      A.   Banco --

13               MR. MULLINS:  Objection to form.

14               MS. McALPIN:  Objection to form.

15  BY MR. POYER:

16      Q.   -- together?

17               MR. MULLINS:  Objection to form.

18               THE WITNESS:  Could you please rephrase

19          it.  Or I'm not sure if I understand.

20  BY MR. POYER:

21      Q.   Sure.

22      A.   If I understood.  Sorry.

23      Q.   Sure.

24           Let me -- Let me ask you this question; I

25  think you said earlier that Banco Itau is one of the

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 71

1    biggest Brazilian banks.  Is that right?

2         A.   Is that -- That is right.

3         Q.   So I'm --

4         A.   Private bank, yeah.

5         Q.   One of the biggest private banks.

6         A.   Yeah.

7              You have public banks that are bigger than

8    him.

9         Q.   To your knowledge, where is Banco Itau

10   chartered?

11        A.   What is Banco Itau what?  Sorry.  I didn't

12   understand the word -- the last word you said.

13        Q.   Chartered.

14        A.   Headquarters, you mean?  What is mean

15   charter?  I don't understand this question.  Sorry.

16        Q.   Okay.  Let's --

17              MR. RASILE:  Object to the form.  I

18         don't think he understands what charter

19         means.  It might not be a common concept in

20         Brazil.

21   BY MR. POYER:

22        Q.   So I'm -- I'm just trying to be clear here.

23   You're talking about the Defendant in this case, Banco

24   Itau International.  Right?

25        A.   Correct.

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)                                      8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 72

1      Q.    Okay.

2            To your knowledge, what country is Banco

3    Itau International an entity of?  Where -- Where is --

4    Where was the bank formed?

5                  MS. McALPIN:  Object to the form.

6                  THE WITNESS:  I really -- I'm not sure

7            if I understood your question.

8                  My reading is that -- From what I read

9            here, is that Banco Itau is a major private

10           Brazilian bank.  And this, Itau -- How you

11           say Banco Itau?  How you say -- I'm going to

12           use precisely the name.  Banco Itau Miami,

13           that's the -- How you call it on Page 31.

14           I'm assuming it's a branch or part of the

15           Itau Group.  It's some how controlled or

16           part of the Banco Itau Group.  It's not a

17           standalone bank.  And that's -- that's

18           what -- basically what -- according to what

19           you said, you said that private banks or

20           divisions or subsidiaries of major

21           international banks, so I'm assuming that

22           you're using this concept to explain what --

23                 MR. MULLINS:  Where are you -- What

24           paragraph are you reading -- where you

25           described that?

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 73

1            THE WITNESS:  150 of Page 31 of the

2       Complaint.

3            Says typically, private banks are

4       divisions or subsidiaries of major --

5            MR. MULLINS:  I'm sorry.  I apologize.

6       Where are you reading again?

7            THE WITNESS:  Page 31.

8            MR. MULLINS:  41?

9            THE WITNESS:  Thirty.

10           MR. MULLINS:  31.  I'm sorry.

11           THE WITNESS:  31.

12           MR. MULLINS:  That's where I got

13      confused.  Go ahead.

14           THE WITNESS:  So typically, private

15      banks are divisions or subsidiaries of major

16      international banks, which -- Immediately

17      after a few paragraphs after you mention

18      Banco Itau Miami, which means you all know

19      that Banco Itau is not an American bank.

20      It's a Brazilian bank.

21           So I'm assuming that you're making this

22      explanation to explain the role of Banco

23      Itau Miami.  That's my understanding of the

24      Complaint.

25

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 74

```
 1   BY MR. POYER:

 2        Q.   Thank you.

 3             Okay.  So going on, if we can go back to

 4   Paragraph 17 of your Affidavit --

 5        A.   Uh-huh.

 6        Q.   -- let's go to the next entity listed there,

 7   which is EFG Capital International Corp.

 8             So it's the same question, if you were going

 9   to file in Brazil the equivalent of the First Federal

10   Amended Complaint, what would be the basis of

11   jurisdiction over EFG Capital International Corp.?

12        A.   Do you mind if I revisit?

13        Q.   Absolutely not.

14        A.   EFG you said.  Right?

15        Q.   EFG Capital International Corp.

16        A.   It's EFG Miami.  Right?  'Cause it's in the

17   -- In the Complaint it's Item -- Page 34, Item 161.

18   It says EFG Miami and EFG Switzerland.  I assuming

19   that's EFG Capital International and EFG Bank AG.

20   Right?

21        Q.   Yes.  That's right.

22        A.   That's right?

23        Q.   Yep.

24        A.   Okay.  Just to be sure I'm reading the --

25        Q.   Sure.
```

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 75

```
 1      A.    -- right part of it.

 2            Okay.  Again, could you please repeat the

 3      question.

 4      Q.    Sure.

 5            If you were going to file the equivalent of

 6      the First Federal Amended Complaint in Brazil, what

 7      would be the basis of Brazilian jurisdiction over

 8      EFG Capital International Corp.?

 9      A.    Okay.  So according to what I read in the

10      Complaint, the plaintiff says that those -- these two

11      institution, meaning EFG Miami and EFG Switzerland,

12      agree to open accounts for the Batista's family or

13      Batista, or Eike in the end of -- it says here, at the

14      end of 2013 or early 2014, when all the problems in

15      Brazil were notorious, and that if they have done a

16      proper -- due diligence is not the proper word in

17      English.  But I mean, a lot -- a lot of red flags

18      should have been raised, and the company should not be

19      open.

20            So what are those facts that they are --

21      that would call the red flags?  Well, that it says in

22      Article 165, thus, EFG MIAMI gambled that BATISTA's

23      problems were all in Brazil.

24            So as it says here, the problems that --

25      those two entities should not, according to the
```

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 76

 1    initial pleadings -- I don't know if that's right, but

 2    if they could have not open -- agree to open Batista's

 3    accounts because of problems that occurred in Brazil.

 4            So if that is true, in order to -- to

 5    demonstrate they act unproperly or illegally, if you

 6    may, you should go through facts that occurred in

 7    Brazil.

 8            So according to that facts, they should not

 9    be allowed -- or they shouldn't agree to open account

10    for that family.

11            So I think that you have plenty of reasons

12    to justify what happened in Brazil.

13            And again, the evidence that you're going to

14    need to produce is going to be about facts that

15    occurring in Brazil, and that those facts should

16    have -- should have been enough for them not to open

17    the account.

18            I think you have a lot of things going on in

19    Brazil.  A lot of connections with the Brazilian --

20    with Brazil, and therefore, jurisdiction for the

21    Brazilian Court.

22    Q.   Were the accounts that you reference, were

23    they -- do you know where they were opened?  Were they

24    opened in Brazil?

25    A.   I only know what's in the Complaint.  And

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 77

1    according to the Complaint it says here -- it says

2    here -- it says EFG MIAMI did the deal at its offices

3    in Brickell Avenue, where the account was actually

4    opened, but the funds were "booked" as if in

5    Switzerland with its Swiss parent.

6            So what I read from the information I read

7    is that the account was opened in Miami but booked as

8    if in Switzerland.  That's what it says here.

9        Q.   So based on your knowledge of that, what

10   Brazilian laws were broken?

11               MR. MULLINS:  Objection to form.

12               MR. RASILE:  Objection.

13               THE WITNESS:  Again, you're asking

14           about jurisdiction.  Because you're talking

15           about that something of the merits of the

16           case, or what laws were broken, and if --

17           the other thing is if a Brazilian Court

18           would have jurisdiction to hear the case.

19           So what you're --

20   BY MR. POYER:

21       Q.   Sure.

22       A.   Let me rephrase it.  The fact that you file

23   a lawsuit in Brazil because it had facts that occurred

24   in Brazil, that gives the Brazilian judge jurisdiction

25   to analyze the case.  That doesn't mean that a

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)                                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 78

1    Brazilian law was broken.  That will be decided in the

2    merits of the case.

3        Q.   Okay.  But I think you were -- you were just

4    referring to Paragraph 165 of the Complaint.  Is that

5    right?

6        A.   Right.  Right.

7        Q.   Okay.

8        A.   And then I'm referring to the fact that you

9    asked me where the accounts were opened.  And I said

10   according to what is in the Complaint, it was the

11   deal -- the deal was done at -- off -- Brickell's

12   office -- Avenue office, the deal, the account was

13   actually opened -- where the account was actually

14   opened, but the funds booked as if in Switzerland with

15   its Swiss parent.

16       Q.   So based on that -- of those acts, what act

17   actually occurred in Brazil then?

18       A.   No --

19              MR. MULLINS:  Objection to the form.

20              MS. McALPIN:  Objection to the form.

21              THE WITNESS:  I'm not saying -- I

22          apologize if it was not clear.

23              I'm not saying that those acts occurred

24          in Brazil.  But what I'm saying is that from

25          what I read from your Complaint, you're not

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 79

1          saying that because they opened an account

2          in Miami and booked the account in

3          Switzerland, EFG should be -- should be held

4          responsible for damages.  What you're saying

5          is that because of a number of different

6          facts that occurred in Brazil, EFG could

7          never open that account and receive funds

8          from the Batista family without

9          investigation -- investigating the facts

10          that occurred in Brazil.

11               They -- They have the responsibility or

12          the duty to -- to -- to know, because they

13          were public -- It says here in the beginning

14          at the time, what time, end of 2013 or in

15          early '14.  The crash of OGX, OSX and MMX in

16          October of '13 has already happened.  It was

17          notorious that BATISTA and his group had

18          debts in the millions of dollars that they

19          were unable to pay.  So --

20               MR. MULLINS:  Which paragraph are you

21          reading?

22               THE WITNESS:  I'm reading for Paragraph

23          161, Page 35.  Three five.

24               MR. MULLINS:  Thank you.

25               THE WITNESS:  So my understanding from

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 80

1          your Complaint against EFG is that you're

2          not complaining the fact that they opened

3          the account, is the fact that they used

4          money coming from Brazil, or from a fact

5          that occurred in Brazil should be -- Because

6          of the facts that occurred in Brazil, EFG

7          should not open the accounts in Eike

8          Batista's name or in the Batista's family,

9          or using -- I don't know if the account was

10         opened in his name.  But should not open the

11         account.

12              It says here that it was introduced by

13         Magno, in Magno.

14              So the accounts shouldn't be opened

15         because of what happened in Brazil.  And

16         because -- because of what happened in

17         Brazil, the money that came to the accounts

18         should probably illegal, fraud.  I don't

19         know what would be the -- the -- the proper

20         English word for it, the technical term.

21         But the fact is that those facts, the

22         opening of the account occurred here, but

23         the problem is not -- at least as I read, is

24         not just opening account.  It's opening

25         account for receiving proceeds that came

Worldwide Reporting Service 305-377-3376

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 81

1            from facts occurred in Brazil.

2                    So the basis would be the facts

3            occurred in Brazil.  That's how I understand

4            it.

5    BY MR. POYER:

6        Q.   You mentioned -- In one of your earlier

7    answers you mentioned evidence that would be in

8    Brazil.  Right?

9        A.   Right.

10       Q.   What evidence, to your knowledge, would

11   EFG Miami have in Brazil?

12                   MR. MULLINS:  Objection to form.

13                   MS. McALPIN:  Objection to form.

14                   THE WITNESS:  You don't -- Again, I

15           read the Complaint.  So you said here that

16           --

17                   MR. MULLINS:  I'm sorry.  That was

18           complete mischaracterization of his

19           testimony.  I mean, it's not -- I mean, you

20           can ask -- Don't say he said that, because

21           that's not anywhere what he said.

22                   You can ask a difference question, but

23           I just want the record clear he didn't say

24           that at all.  It's not what he said.  But

25           you can ask your question.

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)                                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 82

1             MR. POYER:  That's fair.  Let me ask a

2        new question.

3             MR. MULLINS:  Okay.

4   BY MR. POYER:

5        Q.   To your knowledge, would EFG Miami have any

6   evidence in Brazil?

7        A.   To my knowledge would --

8             MS. McALPIN:  Object to the form.

9             THE WITNESS:  Again, it's a little bit

10             a broad question.  But I'll try to help.

11             If you're filing a lawsuit against a

12             defendant based on facts that occurred in

13             Brazil, yes, they would have evidence in

14             Brazil.

15             In my reading is that your -- your

16             Complaint is based on money that -- facts

17             that occurred in Brazil also against EFG

18             Miami.  Not because of the account itself,

19             but the fact that they should have known

20             what was happening in Brazil.

21             So probably they will have to

22             investigate in the lawsuit what was public

23             in Brazil at that time, what kind of reports

24             were public at that time.

25             All the documents that they used in the

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

1            initial pleadings, in my initial pleadings,

2            if I -- I'm just trying to think as a

3            Defendant in this case.  Were the documents

4            public, the reports and making reference?

5            So it was reasonable for me to have access

6            to that information, which information,

7            facts that occurred in Brazil.  So yes, I

8            think there is plenty of evidence in Brazil.

9            Probably.  Depends on what you're -- relief

10           you're asking.

11  BY MR. POYER:

12      Q.   If you represented EFG Miami on these set of

13  facts, let's assume that EFG Miami was sued in Brazil

14  on these facts --

15      A.   What facts?

16      Q.   On the facts in the First Federal Amended

17  Complaint.

18      A.   Uh-huh.

19      Q.   What if EFG Miami didn't want to be there?

20  Would they have any defense?

21      A.   I don't --

22           MR. MULLINS:  Objection to form.

23           THE WITNESS:  I don't understand.  I

24           mean, any kind of defense?  Of course, they

25           have many defenses.  What -- What -- What

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 84

```
1              specifically -- Could you be a little bit

2              more specific.

3   BY MR. POYER:

4        Q.   Would they have a defense to lack of the

5   Brazilian Courts' jurisdiction?

6              MR. MULLINS:  Objection to form.

7              THE WITNESS:  Again, most of the facts

8              listed in the Complaint occurred in Brazil.

9              So in theory, yes, they could raise the

10             question of the Brazilian Court doesn't have

11             jurisdiction.

12             But it seems to me, based on these

13             facts, unlikely that the Brazilian Court

14             would not consider itself with jurisdiction

15             to rule the case.  Because all the facts --

16             Not all.  Sorry.  But most of -- of the

17             facts in the Complaint occurred in Brazil.

18  BY MR. POYER:

19       Q.   Okay.  Going back to then Paragraph 17 of

20  your Affidavit, the next -- the next entity, EFG Bank

21  AG.

22       A.   Well, again, these entities, also part of

23  the same chapter of your Complaint.  Chapter -- From

24  Paragraph 161 to 168.  So I'm assuming that this

25  description is applicable to both of them.  And the
```

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 85

1    same reasons I gave you in relation to EFG Miami would

2    also be applicable to EFG Bank AG for jurisdiction.

3            I don't see a clear -- really -- a really

4    distinction of the facts in the description in -- in

5    the Complaint.

6        Q.   So, to your knowledge, are EFG Capital

7    International Corp -- In your knowledge how are EFG

8    Capital International Corp. and EFG Bank AG related?

9        A.   I only have knowledge of what is in -- in

10   the -- in the Complaint.  It says here that the

11   account -- I -- I -- Well, because they have the same

12   name, I might be assuming that part of the same group.

13           And it says here that -- And also not only

14   because of the name, but because as the account was

15   actually opened in Miami, but the funds were bought as

16   if in Switzerland with its Swiss parents.  So it says

17   here that EFG Bank is a parent to EFG Miami.  So

18   that's the relationship I can make between those two

19   companies.

20       Q.   To your knowledge, is EFG -- To your -- To

21   your knowledge does EFG Bank AG do any business in

22   Brazil?

23       A.   I don't know.  I don't have this

24   information.

25

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 86

1        Q.   How about EFG Capital International Corp.,

2   to your knowledge, did they do any business in Brazil?

3        A.   I don't have any knowledge related to this.

4        Q.   In Paragraph -- In Paragraph 18 of your

5   Affidavit --

6        A.   Yep.

7        Q.   -- you say that moreover, the sole paragraph

8   of said Article states expressly that "a foreign legal

9   entity that has a branch, subsidiary or affiliate in

10  Brazil is (deemed) domiciled in the country".  Right?

11       A.   Right.

12       Q.   To your knowledge, do any of the entities

13  listed in Paragraph 17 have a branch, subsidiary or

14  affiliate in Brazil?

15                MR. MULLINS:  Objection to form.

16                THE WITNESS:  I don't -- I don't

17            remember this.  I don't remember this

18            information -- having this information.

19  BY MR. POYER:

20       Q.   If we look at Paragraph 16 --

21       A.   My Paragraph 16?

22       Q.   Of your Affidavit.  Yeah.

23                MR. MILNE:  Is it convenient to break

24            for two minutes.

25

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)                                      8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 87

1            MR. POYER:  It is for me.  You want to

2       take a -- take a break?

3            THE WITNESS:  I'm sorry?

4            MR. MULLINS:  We're going to take a

5       break.

6            MR. POYER:  Take a break.

7            THE WITNESS:  10 minutes.

8            MR. MILNE:  Yes.

9            THE VIDEOGRAPHER:  Going off the

10      record, DVD Number 2.  Time is 12:15.

11           (Whereupon a luncheon recess was

12      taken from 12:15 p.m. to 1:43 p.m.)

13           -              -              -

14           THE VIDEOGRAPHER:  Back on video

15      record.  Beginning of DVD Number 3.  And the

16      time is 1:43 p.m.

17               AFTERNOON      SESSION

18  CONTINUED  EXAMINATION

19  BY MR. POYER:

20      Q.   Could you look at Exhibit B, Page 123,

21  please.

22      A.   123?

23      Q.   Yes, sir.

24      A.   Okay.

25

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 88

1      Q.   You see that in about the middle of the page

2   it says COUNT XI, FLORIDA UNIFORM FRAUDULENT TRANSFER

3   ACT.  Do you see that?

4      A.   I see that.

5      Q.   I understand you're not a Florida attorney.

6   I understand you're a Brazilian attorney.  But do

7   you -- what is your understanding of that claim?

8      A.   This claim here?

9      Q.   Yes.

10     A.   The claim --

11     Q.   COUNT XI.

12     A.   -- claim written in COUNT XI.  Do you mind

13  if I read it?

14     Q.   Sure.  Not at all.

15     A.   Just for my information, the claim goes

16  until page -- to the last page, 129?  Is that what I

17  should be considered as the claim you're asking?

18          Because there is different name, different

19  titles in the chart.  No, sorry.  127.  I'm sorry, I

20  just skipped a page.

21          So it's from 123 until 127 --

22     Q.   That's right.

23     A.   -- when begins the XII.  Right?

24     Q.   Correct.

25     A.   Thank you.  Okay.  I have read it again

Worldwide Reporting Service 305-377-3376

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)                                   8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 89

1    back.

2              My understanding is that -- is that

3    Plaintiffs are saying that a fraud occurred in Brazil.

4    And due to that fraud, money was transferred from

5    Brazil to abroad.  Using, by collaboration, I know if

6    that is the word of some of the Defendants; Eike,

7    Magno PL, Berto, and the bank for the benefit of the

8    Batista family and in prejudice and harm -- It's not

9    prejudice.  It's harm of the creditors and of the

10   Brazilian companies, including the -- the Plaintiffs.

11             So that's -- that's -- And that's what I

12   understand from this claim.

13             So there was a fraud, money was taken from

14   Brazil to abroad.  And all those persons, they either

15   helped the money to get out of the country, or were

16   the beneficial -- final beneficiary of the money that

17   was taken out of the country.

18             That's my understanding, you know, roughly.

19        Q.    Sure.

20             What were the Brazilian -- Is there -- Let

21   me start over.  Is there a Brazilian equivalent of

22   this cause of action in -- in Brazil?

23        A.    Yes.  I think it did does.

24        Q.    What would that be?

25        A.    Well, we have the concept of Fraud against

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)                                8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 90

1    Creditors in the Brazilian Civil Code.  We have a

2    title to deal with that.  That means that whenever the

3    idea -- the basically -- basically idea is when a

4    person transfer assets to other person without

5    remaining with enough assets to pay the outstanding

6    debt, the existing debt, that transfer can be

7    considered null and void, and the creditors can try to

8    put aside the transfer and take the asset back, if I

9    may, to use for the payment of his debt.

10          It also has -- There's a lot of allegations

11   here about misconduct of -- of people doing this to

12   avoid the payment of debts using illegal aspect.

13          So there is the general rule I mentioned in

14   my Affidavit, it's the 927 of the Brazilian Civil Code

15   that whoever -- Let me quote it properly.  I think I

16   have it.  I think we would call it.

17          Anyone who, through an unlawful act -- And

18   unlawful is defined in our code, 186 and 187, causes

19   loss to another, is under a duty to make redress.

20          So I think it is the general cause for

21   damages.  And you have -- You might have other

22   Articles of Law to use.  Certainly Fraud against

23   Creditors is one of them.

24      Q.   What other Articles of Law would be

25   available?

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)                                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 91

```
 1       A.   Oh.  Well, you can use Fraud against

 2  Creditors.

 3            Well, it depends.  Well, for instance, if

 4  you have -- if you are insolvency proceedings, you

 5  might have specific rules of insolvency law.  If you

 6  were in civil proceedings, like this one, we are

 7  always referring, making reference to this one.  You

 8  have the Civil Code.

 9            Do you mind if I -- This is the Civil

10  Code -- if I just take a look at it?

11       Q.   Sure.  Yeah.  Go ahead.

12       A.   So you have in Section Article 158, all the

13  articles related to Fraud against Creditors, from

14  Article 158 to 155.  65.  Sorry.

15            We have also articles related to when a deal

16  is -- it's considered elicit and can be annulled and

17  void.  And what is elicit, the definition of elicit?

18  It's in Article 186.  It says, whoever by act or

19  omissions, negligence, in prudence and violate or

20  cause harm to third parties, even it's only moral

21  damages, commit an elicit act.

22            So when you combine all those rules, I am --

23  I -- I pretty much -- I am pretty much confident that

24  you have similar -- I don't -- I don't -- I don't want

25  to use the word remedy, because I don't know if the
```

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 92

1   remedy is exactly the same thing.  But you would be

2   allowed to file basically the same lawsuit in Brazil

3   based on the same facts, and ask for probably similar

4   damages.

5            I don't know -- About the calculations of

6   damages, I'm not sure how you calculate here, so I can

7   -- But you certainly could have a lawsuit filed in

8   Brazil dealing with these -- with -- dealing with this

9   claim.  Making something very similar to this claim.

10      Q.   Are there any other sections that might

11  apply?

12      A.   Oh.  Again, that might be.  Depending I was

13  -- I just -- The general rule I think would be the

14  927.  Might be others like 158.

15           145 they've got -- How can I translate,

16  da lou?  It's support of this willful -- willful

17  misconduct, when it deliberately do something knowing

18  that it's wrong.  There's a word, it's da lou.  It's

19  something that you know that's wrong and you wanted to

20  do it any way.

21           So there's a bunch of articles dealing with

22  this.  And I think that you talking about misconduct,

23  that people deliberately decided to do it.  So I think

24  it would be also applicable.

25           The article about what we call elicit also

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 93

1    might be applicable.

2           Oh, there's also one that I quote in my

3    Affidavit, which is the 884, whoever without fear

4    cause enrich -- and it's in cause -- How can I say

5    that?  I will -- I will become enriched because you

6    will become poor.  You understand the relationship --

7                   MR. RASILE:  Unjust enrichment.

8                   THE WITNESS:  Unjust enrichment, yes.

9           Thank you.  So --

10                  MR. MILNE:  Your Brazilian scholarship

11          is rocketing.

12                  MR. RASILE:  Thank you.

13                  MR. MULLINS:  It's in his Affidavit.

14                  THE WITNESS:  Yeah, it's in the

15          Affidavit.

16          So that's also a cause of action.

17          You can also rely -- There is

18          Article 42.  That article that defines what

19          kind of damages you can ask.  Not only what

20          you lost, but what you reasonably lose

21          profits that you reasonably would be

22          reasonably expecting from that situation.

23          So I can also ask for that in Brazil.

24          So yeah, I think that's basically

25          those.  I'm not here -- I don't want to give

Worldwide Reporting Service 305-377-3376

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 94

1            you the idea that's giving you all the

2            possible arguments you might have.  I think

3            those are certainly ones that I think would

4            be suitable for a lawsuit like this.

5    BY MR. POYER:

6        Q.   So you mentioned -- In your answer you

7    mentioned remedies.  What remedies would be available?

8        A.   Again, I mentioned, and I did say I don't

9    want to use the wrong words, to give wrong concepts to

10   you.  What exactly do you understand by remedies?

11   What should I understand?  What is a remedy?

12            Is it what you ask?  What's the amount of

13   the damage?  What's the remedy that you -- What is the

14   remedy?

15       Q.   Well, what --

16       A.   What's the concept of remedy?

17       Q.   When I say -- When I say to you -- Well,

18   what does it mean to you?  What does remedy mean to

19   you?

20       A.   It means nothing, because I'm not an

21   American expert in American law.  I mean, that's my

22   question.  I can have a similar concept in Brazilian

23   law.  I just asking you what is the concept in US law,

24   so that I can check if there is a similar concept in

25   the Brazilian law.

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 95

1      Q.   I understand.  I just wanted to get clear

2  your understanding of the word remedy.  That's --

3      A.   Okay.  No.

4      Q.   Yeah.

5           So what can the court do?  What relief --

6  What relief can the court afford a plaintiff who has

7  asserted this cause of action in Brazil?

8      A.   Well, the court can order the payment of

9  damages.  And we consider damages in a very broad way.

10 It means you -- the fact -- the money that you

11 actually lose -- the profit, we all consider that

12 damages.  It's not something specific.  That the

13 profit that you could have received and you did not.

14          So you're talking about bonds here.  Right?

15 Bondholders.  So let's assume then you have the more

16 obvious damages would be the amount you should have

17 received if the bonds were paid, fully paid -- fully

18 paid in due time.  Right?  That certain option is

19 damage.

20          But let's assume you have any how made a

21 swap, and you have an X obligation with the bond, and

22 you can demonstrate in court, maybe depending on the

23 facts, you will be able to ask the court to include

24 that amount also in -- in the calculation of the

25 damages.

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 96

1            I saw here that you ask for an injunction.

2    At the very end it says here avoidance --

3            MR. MULLINS:  Will you tell us where

4            you're reading.

5            THE WITNESS:  I'm sorry.  Article 604,

6            Page 126 of the Complaint.  So it says

7            Plaintiffs demand:  Avoidance of such

8            transfers or obligations to the extent

9            necessary to satisfy their claims.

10            The way I read it, it's exactly the

11            same of a Fraud against Creditors.

12            So I understanding that when you say

13            avoidance of such transfers, the transfer

14            will not be effective in relation to you,

15            and you will be able -- So if I transfer

16            this glass and transfer will not be -- you

17            will be able to use the glass to pay your --

18            to pay you.  So the transfer is not

19            effective.

20            So that's exactly the same concept of

21            Fraud against Creditors.  And you have

22            similar remedies, for instance, in the -- in

23            the insolvency law.  We call it revocatory

24            lawsuit.  But that's a different concept.

25            But any way, talking about civil law.

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 97

1          And you also ask here an attachment or

2          other provisional remedy against the assets

3          transferred or -- Again, I'm reading on

4          Page 126 -- or other property of the

5          transferees in accordance with applicable

6          law.

7          We also have injunctions to attach

8          assets in Brazil.  So you could also ask the

9          judge, including an export and on a

10         preliminary basis even before the Defendants

11         are served and offer an answer, the judge

12         can grant an injunction freezing assets if

13         he understands you have a good case, you

14         have a good case, and you have the chance

15         that the money will, you know, disappear, he

16         can render injunctions freezing assets of

17         the Defendants.

18         So we have similar -- I don't know if

19         that's the remedy, but I think that's the

20         outcome, what would you ask for the judge.

21         That's what I understand you when you say

22         remedy.

23         So I think that pretty much what you're

24         asking, we would have something similar in

25         Brazil.  Not necessarily -- I don't know if

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 98

1           the name would be the same, but I think we

2           would have something similar in Brazil.

3           Either in form or amount, or whatever.

4   BY MR. POYER:

5      Q.   Could you please turn to Page 127.

6      A.   Yes.

7      Q.   And you can see that there's -- and near the

8   top of the page in bold letters, COUNT XII, CONSPIRACY

9   TO COMMIT FRAUDULENT TRANSFERS.

10     A.   Yes, I see it.

11     Q.   So again, my question is similar question as

12  the last Count, what does this count mean to you?

13          MR. MULLINS:  Objection to form.

14  BY MR. POYER:

15     Q.   Let me ask a different question.

16     A.   Okay.

17     Q.   What is your understanding of Count XII.

18     A.   May I re-read it?

19     Q.   Absolutely.

20     A.   Thank You.

21          Okay.  So what's the question again?

22     Q.   What's your understanding of Count XII?

23     A.   Count XII, it's more -- again, it's

24  asking -- I may use the word that's more criminal in

25  the US considered guilty or for assisting.

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

1             I think the -- the -- the word that is

2     more -- I see more repeated here in relation to the

3     other one is that they are assisting, giving

4     assistance to the commission -- to the commitment of a

5     fraud.  So they are agreeing and being used -- or

6     being used -- deliberately being used, agreeing to be

7     used to participate in the fraud, assisting the fraud.

8     Without them the fraud maybe would not occur.  Because

9     that's what it's saying here.

10            So -- And because of that, you're asking

11    them to be convicted, to be, you know -- asking the

12    judge to award them -- No.  You're asking actually to

13    avoid such transfer, attachment of revisional assets,

14    injunction.  That's kind of stuff.

15            But I -- I think the difference between the

16    first one I read, I think it's more -- here that the

17    focus is more in the assistance, giving assistance to

18    someone that's committing a fraud.  That's how I read

19    it.

20    BY MR. POYER:

21        Q.   So is there an equivalent in Brazil to this

22    cause of actual action?

23        A.   Oh, definitely.  They're the same.

24    Basically, I think that the question is pretty much

25    similar to the other one.  So I think the answer would

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

1    also be all those rules.

2              In relation to the system it says here it's

3    also -- It says here in others -- I'm reading out 605,

4    to make fraudulent transfers of assets, cash, and

5    property:  With actual intent to hinder -- That's an

6    elicit undoubtedly, so would fit in the 186 of the

7    Brazilian Civil Code; without receiving a reasonably

8    equivalent value in exchange for the transfer or

9    obligation.

10             You might have here what we call a

11   simulation.  And that will depend on the details.

12   When you have a simulation, when you apparently are

13   making a deal, but underneath there is something --

14   another deal that's underneath, that's hidden.  So you

15   have the concept in Brazil, and have Articles in

16   Brazilian Civil Codes dealing with that.

17             So to give a very plain example, I will

18   make -- I will sell my apartment, if I were one of

19   them, or I would sell my car, my apartment to my son

20   by a thousand dollars.  $1,000.  So apparently it's a

21   sale, but, of course, as donation.  Apparently there's

22   a donation underneath.  That's the real business,

23   you're donating and getting rid of your asset to hide

24   it.  So you also have this concept of simulation that

25   we call.  It's an also very strong legal aspect,

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 101

```
 1   Article in Brazil.
 2           So again -- and it could also ask you for
 3   injunctions.  And that's it.
 4           And I would add in relation to the -- to
 5   damages, if you look at Article -- Sorry.  So
 6   Article 942 of the Brazilian Civil Code says that --
 7   And I will, you know, in a literal and free
 8   translation says, the assets of the person responsible
 9   of the offense, of the act that you're challenging in
10   the lawsuit, or the violation of the right of someone
11   else will be subject to damages.  To the damage --
12   It's not in a literal sense reparation.  When you --
13   When you give back the money to the person.  So it's
14   subject to that enforcement of the decision.  And if
15   the offense has more than one offer, one more, all
16   will answer jointly for the damage.
17           So I think that since you're talking about
18   assistance here, I think that Article 942 would be,
19   you know, specifically used for here.  Of the
20   Brazilian Civil Code.
21       Q.   Go ahead and turn to Page 112.
22       A.   112.
23       Q.   Uh-huh.
24       A.   Yes.
25
```

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 102

```
 1         Q.   I apologize to you ahead of time, but this

 2    is a long one.  Talking about COUNT IV, FLORIDA CIVIL

 3    --

 4         A.   I don't have any other appointments today.

 5         Q.   Good.

 6              FLORIDA CIVIL REMEDIES FOR CRIMINAL

 7    PRACTICES ACT.

 8         A.   Huh-huh.

 9         Q.   F/k/a, formally known as Florida Rico.

10    Count IV.  Do you see that?

11         A.   Abbreviation Rico for Florida Remedies of

12    Criminal Practice Act.

13         Q.   Abbreviation Florida Rico, yes.

14         A.   Yeah.

15              MR. MULLINS:  No.

16              THE WITNESS:  No?

17    BY MR. POYER:

18         Q.   I'm sorry.  I'm sorry.  Say again.

19         A.   I asked if Rico is an abbreviation of

20    Remedies of Criminal Practices Act?

21              MR. RASILE:  No.

22              MR. MILNE:  No.

23              MR. MULLINS:  No.

24    BY MR. POYER:

25         Q.   Oh.  No.
```

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

1      A.   No.  Sorry.  I misunderstood.  Sorry.

2      Q.   I was -- I'm sorry.  I was just reading

3   here.  Let me -- Let me start that whole thing over

4   again.

5      A.   Okay.

6      Q.   Okay.  So on Page 112, you see we've got

7   COUNT IV, FLORIDA CIVIL REMEDIES FOR CRIMINAL

8   PRACTICES ACT, formally known as -- formally known as

9   Florida Rico.

10     A.   Okay.

11     Q.   Okay.

12     A.   Now I understand.

13     Q.   So, and it's the same question, what -- what

14   is your understanding of -- of this Count?

15     A.   Okay.

16          For my benefit goes until 118.  Right.

17     Q.   That is correct.

18     A.   Okay.  I have read it.

19     Q.   So my question then is, what is your

20   understanding of Count IV?

21     A.   My understanding is that, according to the

22   Complaint, some of the acts described in Complaint can

23   -- are considered crimes in Florida.  And different

24   kinds of crimes.

25          And if I understand correctly, there is --

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 104

1    it said even the pattern of criminal activity.  If I

2    understand, each chapter you mentioned is one specific

3    crime.  So Florida securities fraud should be a kind

4    of crime, one kind of crime.  Wire fraud would be

5    another crime, federal money laundering would be

6    another, false advertising would be another.  Theft

7    would be another.  Communication fraud, the other one.

8           And in as a consequence of those -- those

9    crimes, you asked for a civil remedy against them in

10   the amount of 60 million.  61 million.  $60 million.

11   More or less.  Is that the last paragraph of Page 118.

12   Damages, statutory whatever, in the amount of

13   $60,932,547.  That's my understanding of what you

14   saying here.

15       Q.   So could -- could the Florida Plaintiffs --

16   could the Plaintiffs in this action bring this cause

17   of action under Brazilian law?

18              MR. MULLINS:  Objection to form.

19              THE WITNESS:  Okay.  What do you

20           understand by cause of action?  If you want

21           to say they can you use the same law?  The

22           Florida law?

23   BY MR. POYER:

24       Q.   Let me ask a different question.

25       A.   Okay.

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 105

1        Q.   Same question that I actually asked for the

2    other ones.  Is there a Brazilian equivalent to --

3        A.   Definitely.

4        Q.   -- if you know about it?

5        A.   Sorry.

6             MR. MULLINS:  Let him ask the question.

7             THE WITNESS:  Sure.  Sure.

8             He mentioned that it was the same

9        question.

10             MR. MULLINS:  I understand.

11             THE WITNESS:  I apologize.

12             MR. MULLINS:  But she's going to get

13        really mad at you.

14             THE WITNESS:  Yeah.

15             MR. MULLINS:  She's really nice, but

16        let's make sure we keep her happy.

17             THE WITNESS:  Sorry.  Go ahead.

18             MR. MILNE:  I know Ronni.

19    BY MR. POYER:

20        Q.   Is there a Brazilian equivalent?

21             MR. MULLINS:  Why don't you ask your

22        question completely.  I cut you off.  So

23        we're clear, just ask your question

24        completely so we have the record.

25

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 106

```
 1                  MR. POYER:  Okay.  All right.  Let's do
 2           that.
 3  BY MR. POYER:
 4      Q.   Is there a Brazilian equivalent to the
 5  Florida Civil Remedies for Criminal Practices Act?
 6      A.   Is there -- The answer is yes.  We have the
 7  same figures, not necessarily in the same act.  I
 8  mean, the same piece of law.  We have a secured law
 9  that also have rules dealing specifically with false
10  advertisement, dealing with the obligation of the
11  management to act in good faith, responsible.  That's
12  all is in -- in the security -- what we call a
13  Corporation Act, or Security Act.  Whatever.
14           It's not securities, because our law
15  specific for shares, and that's all kind of
16  securities.  We have different law for other kind of
17  securities, like bonds.
18           But, any way, so I will call it Corporation
19  Act.  In the Corporation Act you can have rules
20  similar to those you describing in the Florida
21  securities fraud.  And in Brazil -- And, in fact, I
22  guess some of these facts already been investigated by
23  the Brazilian SEC, the CDM, which is also mentioned in
24  the Complaint.  And so you do -- you could have
25  similar remedy for this one in Brazil.
```

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)                8d2f7eb9-56ee-45d4-9b96-842d7015438f

1           And in Brazil you could also have the

2    Brazilian -- the CDM, which is Brazilian SEC, can act

3    as what you call a micu scurty.  It's a figure that is

4    not a party, but the judge can ask the affortitude to

5    provide advice to the court -- Since there is -- the

6    CDM is an expert, he can give -- The court can ask the

7    system like micu scurity what's your interpretation of

8    this?  Is this -- He can ask the opinions about the

9    Brazilian law, or something that you were able to ask

10   in the Brazilian proceedings about this.

11           So I think it's very similar to this.  Wire

12   fraud and money laundering, we have laws dealing with

13   money laundry, is a crime.  I'm not a crime expert,

14   but I know that there is a law dealing with money

15   laundering.

16           And in Brazil false advertising -- All of

17   these items would fall within Article 927 at the end

18   of the day, and Article 186 of the Brazilian Civil

19   Code.  Because you are illicitly causing harm to

20   someone else.  So that's basically what we need.

21           We don't have in Brazil for -- for each

22   specific remedy one rule specific for that specific

23   remedy and that -- and only that rule for that remedy.

24   You have general rules in the Civil Code that you

25   apply when you are analyzing a situation like this.

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

1          In Brazil the criminal what we call

2    responsibility is separated than the civil.  So you

3    can have both going parallel.  So the fact that

4    something -- the -- the -- the -- if something is a

5    crime, you can -- you -- you can -- How can I say, use

6    this in your motion.  Because if it's a crime, it's by

7    the definition elicit.  Right.  So can give cause of

8    action against -- You can ask damages against those

9    who committed a crime if the -- if that crime harmed

10   you and created losses to you.

11          So I think that all of those; false

12   advertising, money laundering, theft, they're all

13   elicit.  So we could also be sued.

14          You have a civil remedy.  Understanding

15   remedy as you have, you can ask the court to receive

16   damages and compensations for that misconduct, if you

17   can, based on the Civil Code.  So we have all of it.

18        Q.   Okay.  So would the government have to

19   investigate the criminal misconduct --

20        A.   No.

21        Q.   -- first?

22        A.   Sorry.

23        Q.   Let me ask -- Let me ask the question again.

24   Would the Brazil -- Would the government have to --

25   Would the government have to investigate the criminal

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

1   misconduct first prior to asserting the civil cause of

2   action?

3        A.   No.

4        Q.   And you mentioned the Corporation Act.  What

5   code section is the Corporation Act found at?

6        A.   It's a law called 6404 of 1976, with numbers

7   of amendments since '76.  But it's a -- it's a -- it's

8   a law.  It's a segregated law.

9        Q.   Okay.  So could you list for me all the code

10  sections that would be applicable to the Brazilian --

11  Brazilian equivalent to this cause of action?

12       A.   Oh, by heart, I'm -- I'm not sure.  I will

13  -- I will certainly quote the Brazilian Corporation

14  Act in the -- in the sections that deals with the --

15  the rights and duties of management and shareholders.

16  You have specific.  I don't, by heart, know all of

17  them.

18            I would say the Civil Code, the same I just

19  mentioned to you, about fraud against creditors.  927,

20  186.  You know, all those I just mentioned to you

21  would be applicable same way here.

22       Q.   Did you -- You didn't list the Corporation

23  Act in your Affidavit.  Did you?

24       A.   No.

25            May I re-read it?

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 110

1      Q.   You may.  Yes.

2      A.   I did mention it.

3      Q.   Where at?

4      A.   To respond Mr. Oliveira Affidavit in

5   Articles -- Items 20 and 21.

6                MR. MULLINS:  Where are you reading?

7                THE WITNESS:  My Second Affidavit --

8                MR. POYER:  Okay.

9                THE WITNESS:  -- dated January 3rd.

10               MR. MULLINS:  Yeah.  But where in your

11          Second Affidavit?

12               THE WITNESS:  Items 20 and 21.

13               MR. MULLINS:  Okay.  Thank you.

14   BY MR. POYER:

15      Q.   But in Paragraph 21 of your Affidavit, don't

16   you say that the proper lawsuit that Plaintiffs would

17   file in Brazil is not an action under Article 159 of

18   the Law of Corporations?

19      A.   I said that --

20               MR. MULLINS:  Objection to form.

21          Mischaracterizes the Affidavit.

22               THE WITNESS:  What I'm saying -- Well,

23          I will re-read it again to explain.  Just a

24          moment.

25               So what is the question again?

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)                              8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 111

1  BY MR. POYER:

2      Q.   Well, the question was in Paragraph 21 of

3  your Affidavit, don't you say that the proper lawsuit

4  the Plaintiffs would file in Brazil is not an action

5  under Article 159 of the Law of Corporations?

6      A.   I did say that.  That's what's written in my

7  Affidavit.

8      Q.   So in describing the Florida equivalent of

9  the Florida Civil Remedies for Criminal Procedures

10  Act -- I'm sorry.  In describing the Brazilian

11  equivalent of the Florida Civil Remedies for Criminal

12  Procedures Act, does Article 159 apply?

13      A.   Article 159 deals with filing -- the company

14  filing lawsuits or third-parties against the

15  management.  They don't harm by company of by them

16  specifically.

17          What I am telling you -- I was answering

18  Mr. Oliveira Affidavit, and it said that these Article

19  would bar the filing of the lawsuit.  I said no, it

20  wouldn't never, because there is a general Civil Code

21  Rule in Article 927 and 186 that would always allow

22  you to file a similar lawsuit.

23          And then I make reference to the -- to the

24  -- to the Corporations Act.  I was not making

25  reference to the Article 159.  159 deals with filing

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 112

1   of lawsuits, specific kind of lawsuits against

2   management or controlling shareholders.

3           There are other parts of the law that deals

4   with the rights and duties of the management.  So you

5   have the rights to tell -- I won't remember by heart,

6   so I don't want to quote.  But as material aspects of

7   the law in comparison with these procedural aspects of

8   the corporation law.

9           So if you violate some rules in the Security

10  Act, not these rules necessarily, it will consider

11  elicit, and then we will be entitled to file a lawsuit

12  according to Article 927.

13          I'm just calling your attention to the fact

14  that there is some specific rule that might be

15  applicable.  But at the end of the day, they're going

16  to all go through the 927, the Article Codes.

17      Q.   I'm sorry, they're all going to go through

18  what?

19      A.   The Article 927.

20          It's a civil damage.  So you have to

21  demonstrate the elicit, and you have to demonstrate

22  the damage.  And then Article 925 will be applicable.

23  You have -- In Brazil you have the -- the

24  responsibility, you have to demonstrate the elicit,

25  the damage, and the relationship between them.

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 113

1   There's the three pillars of the civil responsibility

2   in Brazil.

3           So you can use the Corporation Act to

4   demonstrate the elicit.  That's what I tried to

5   explain.

6       Q.   I'm sorry.  Didn't mean to -- I didn't mean

7   to cut you off.

8       A.   No, sir.

9       Q.   In Paragraph 21, though, don't you -- you

10  say, don't you, that the absence of direct harm is a

11  bar to the filing of the lawsuit referred to in

12  Article 159 of the Law of Corporations?

13      A.   In which part I was saying that?

14      Q.   It's in Paragraph 21.  It's the second to

15  last full sentence before a block quote.  Near the

16  bottom of Page 6.

17      A.   It says -- Yes, I did say that.  That's

18  right.  It's what's written there.

19      Q.   So are you saying that -- I'm sorry.  Let me

20  start over.

21          Is that correct?

22      A.   Yes.

23      Q.   Well, the good news is, is that -- that was

24  the longest one of those that I'm going to have to ask

25  you to read.

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)                                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 114

1    A.    Do you mind if I take a coffee?

2              MR. POYER:  No, not at all.

3              MR. MULLINS:  Want to go off the

4         record?

5              MR. POYER:  Yeah.  Let's go off the

6         record.

7              THE VIDEOGRAPHER:  All right.  Going

8         off the record.  Tape Number 3.  Time is

9         2:32.

10              (Thereupon, a recess was taken after

11         which the following proceedings were had:)

12              THE VIDEOGRAPHER:  Time on the video

13         record -- Tape Number 4, the time is 2:45.

14    BY MR. POYER:

15    Q.    Go ahead and go to Page 119 of the First

16    Federal Amended Complaint.  Page 119.

17    A.    Okay.

18    Q.    And I think you mentioned false and

19    misleading advertising in one of your previous

20    answers, but just to be clear, is there a Brazilian

21    equivalent to false and misleading advertising?

22    A.    Do you mind if I read?

23    Q.    Absolutely not.

24    A.    Okay.  So what is the question?

25

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)                                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 115

1       Q.   The question is, under Brazilian law is

2   there an equivalent to a cause of action for false and

3   misleading advertising?

4       A.   Yes.

5            Because you said here, reading from the

6   Complaint, that the acts committed by the Defendants

7   are false and misleading advertising, and disseminated

8   or caused to be made or disseminated before the

9   general public, misleading advertising, which were

10  fraudulent and unlawful.  And so -- And while

11  participated in this false and misleading advertise

12  that had actual knowledge that the wrongfulness of the

13  scheme and the high probability that the scheme would

14  damage plaintiff and despite that knowledge

15  intentionally pursued the false and misleading

16  advertising scheme.

17           So that's -- for me, it fits perfectly in

18  the concept of elicit in Article 186 of the Brazilian

19  Civil Code.  And, therefore, you'll be entitled to

20  damage according to a hundred -- 927, not only against

21  those who directly, but those also participated or

22  assisted, to use the word that you used in your

23  Complaints, according to Article nine hundred and --

24  Sorry -- forty-two of the Brazilian Civil Code.

25           So yes, I think you would have -- you could

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)                                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 116

```
 1    file something similar in Brazil.

 2         Q.   I don't think you mentioned Article 942

 3    before.  What is --

 4         A.   I did.

 5         Q.   -- Article 942?

 6         A.   Yes, I did, before.

 7              It's the Article that says that whoever --

 8    The assets of those that committed the offense,

 9    violated the rights will be subject to the -- to the

10    damage, can be used for the payment of the damages.

11    And if the offense has more than one person, one

12    author, all will respond or answer jointly for the

13    damage.

14              I think I did before.  So those are -- when

15    we made -- talked about the assistance, fraudulent

16    assistance, and then I think I did mention this 944 --

17    942.  Sorry.

18         Q.   And within Article 927 it references

19    Articles 186 and 187.  Is that right?

20         A.   Is that right.

21         Q.   So what is -- what is Article 187?

22         A.   Article I87 is a concept that -- that --

23    although it has -- for a while in Brazilian legal

24    system has only been incorporated in this code which

25    was enacted in 2002, this is abusive of a right.
```

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

1          When you exercise your right abusively, even

2     if it's a right that you have, but the exercise of

3     your right are made abusively, you also can be held

4     liable for damages for exercising abusively the rights

5     you have.  It's a concept.  So that's -- So that's --

6     So -- And that's -- that's -- Well, that's what it

7     says.

8          Q.   And how about Article 186?

9          A.   It says that whoever by action or omission,

10    negligence or impruduncy violate other -- someone else

11    rights, causing harm to someone else, even that's harm

12    it's only moral damages, will commit an elicit.

13          So it's -- it's -- it's a kind of a

14    definition what would be an elicit act in the legal

15    system.

16          Q.   What would a moral damage be?

17          A.   We have this concept of material damages,

18    which is something more concrete.  So I -- because I

19    lost this mug, so I want a mug, another mug equal to

20    this, it will cost $10.  So this is something material

21    that you can calculate or suffer a loss in my -- in my

22    company.  And -- And you have the moral damage it with

23    something more subjective, I was personally offended,

24    I was exposed to ridiculous in public situation.  I

25    was offended.  My -- My good name was put at stake to

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)                                        8d2f7eb9-56ee-45d4-9b96-842d7015438f

1    a certain reason.

2            It's better you -- to give you a very -- on

3    a daily basis example, when you have -- courts in

4    Brazil usually give damages, and you were unduly

5    listed in black in credit control list.  And you --

6    black list.  Like when you have black list for

7    credits.

8            So if you were put in one of those lists,

9    and -- illicitly, you will be allowed to receive moral

10   damages, because your name was put in the black list.

11   Or something like that.  Or creditor restriction list.

12       Q.   Now Article 927, you reference it in

13   Paragraph 22 of your Affidavit, on Page 7.  It says

14   anyone who, through an unlawful act, (Articles 186 and

15   187) causes loss to another, is under a duty to make

16   redress.  Right?

17       A.   Right.

18       Q.   So the clause causes loss to another, does

19   it matter where the loss is caused or where the loss

20   happens?

21       A.   I don't think so.  I don't think so.  For

22   that purpose, no.

23            That will be relevant for jurisdiction, as

24   we have been talking about.  I mean, if the acts were

25   -- occurred in Brazil, it happens in Brazil, it might

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 119

 1    have relevance for jurisdiction.

 2             For the definition of your responsibility,

 3    the fact that the act occurred abroad, I don't think

 4    it's relevant.

 5        Q.   But I'm talking about the loss.  So would

 6    the fact that the loss occurred abroad be relevant?

 7                 MS. McALPIN:  Object to the form.

 8                 THE WITNESS:  Yeah.  Could you

 9             please -- I didn't understand your question.

10    BY MR. POYER:

11        Q.   Sure.  Let's just go back.

12             Article 927 references, or it says, anyone

13    who, through an unlawful act, causes loss to another,

14    is under a duty to make redress.  Right?

15        A.   Right.

16        Q.   What if the loss occurs in Florida?

17                 MR. MULLINS:  Object to the form.

18    BY MR. POYER:

19        Q.   Let me ask it this way; would Article 927

20    apply if the loss occurred in Florida?

21                 MR. MULLINS:  Objection to form.

22                 THE WITNESS:  Again, let me use the

23             example to make it easier for me of our case

24             here, if that's what you're talking about.

25                 The fact that the plaintiff are foreign

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 120

```
 1              is irrelevant.  And the fact that they
 2              bought bonds in the international market is
 3              irrelevant for that purpose.  If you bought
 4              bonds in New York, in Florida, using
 5              local -- How can I say assistant --
 6              assistance, is irrelevant for that purpose.
 7                   I'm just trying to, you know, to attach
 8              to the facts we are discussing here in this
 9              case.
10   BY MR. POYER:
11        Q.   Sure.  No.  I understand, and I appreciate
12   that.  But you -- you referenced buying bonds.  But
13   what I'm asking is would it matter if the loss occurs
14   in Florida?
15              That's my specific question.  Does it --
16   Does it matter for purposes of --
17        A.   Can you please -- What would you consider
18   where the loss occurred?
19        Q.   Where --
20        A.   Where the person comes out, the -- the
21   author of the loss?
22        Q.   Well, let me ask you a question; where -- in
23   this case, to your knowledge, where did the loss of
24   the Plaintiffs as we allege it occur?
25                   MR. MULLINS:  Object to the form.
```

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 121

```
 1              MS. McALPIN:  Object to the form.
 2              THE WITNESS:  Again, I think if there
 3         is a loss -- the -- the -- the -- Let me
 4         rephrase it.
 5              Plaintiffs says they have a loss.  And
 6         that loss is -- is result of an elicit act.
 7         Illegal act, if you may.  Okay.  Something
 8         against the law.
 9              I'm not saying that it occurred, it
10         doesn't.  That -- The merits will -- Someone
11         will decide it on the merits.
12              But assuming that has occurred,
13         Plaintiffs are foreign persons.  Some of
14         them.  Foreign meaning in relation to
15         Brazil.  Some entities are not incorporated
16         in Brazil, and you have, I guess -- Or Aziz,
17         I guess, is not Brazilian.  You know, have
18         foreign -- foreign Defendants.
19              So what will be relevant is where the
20         facts occurred.  The facts that give rise to
21         the -- to the lawsuit.  That's where -- I
22         don't think it's -- We can have a huge
23         debate whether where the loss occurred.  I
24         can say the loss occurred where I am living.
25         I am -- Where Aziz is living, because he's
```

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 122

```
 1              not Brazilian.  He lives -- Give me an

 2              example, New York.  So since I'm living in

 3              New York, and I considered -- and I bought

 4              the bonds, the loss in New York.  No.  But

 5              this is bonds issued by a Brazilian company.

 6              So the loss occurred in Brazil, because the

 7              place of payment would be Brazil.

 8                  So you can have a huge debate where the

 9              loss occurred.  But that's not any how

10              relevant for -- for here.

11                  You understand.  And -- And I'm just

12              trying to -- I don't -- When you ask me

13              where the loss occurs is relevant, I don't

14              think it is.  And to be honest, I don't

15              think we could even -- there isn't a legal

16              definition of the place of the loss.

17              It's -- I couldn't -- We couldn't, you know,

18              have a huge debate where the loss occurred.

19              But that didn't take us anywhere.  I think.

20              In my opinion.  My best opinion.

21   BY MR. POYER:

22       Q.  Does it matter that the -- Let me ask it --

23   Let me start over.  Would it matter if the bonds at

24   issue were Austrian?

25       A.  No.
```

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 123

1            They are, in fact, in this case.  So they

2     are an Austrian entity.  But all the relevant facts

3     occurred in Brazil, I guess.

4            The Austrian entity was a holding company

5     that were used for tax purpose.  There's no activity

6     there.  There's no relevant issue in Austria.

7            That's why the Brazilian courts accepted

8     jurisdiction to restrict an Austrian entity when we

9     filed for reorganization.  That was a leading case --

10    first one, first time we filed on behalf of a foreign

11    entity asking the court to reorganize that so a

12    foreign company in Brazil.

13           And I mention that in my first Affidavit.

14    The -- The -- The judge initially was surprised.  He

15    said no, no, it's not a Brazilian company.  But then

16    we appealed, and the Court of Appeals granted leave to

17    proceedings to the Austrian.

18           Because -- And why is that, because they

19    said there's nothing in Austria here.  Austria is just

20    a holding company used to -- for tax purpose.

21           So the fact that the bond was issued in

22    Austria, in fact, issued by an Austrian company

23    it's -- I don't think it's relevant here.

24        Q.   Would it matter to the jurisdiction of the

25    Brazilian courts if the loss occurred entirely in

Worldwide Reporting Service 305-377-3376

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)                                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 124

1    Florida?

2                 MR. MULLINS:  Objection to form.

3                 THE WITNESS:  Again, it's hard to

4            define what loss occurred.

5                 What matter for the jurisdiction,

6            again, going back to Article 21 where the

7            facts that's going to be analyzed by the

8            judge occurred, where the witnesses are,

9            where the documents are, where the facts

10           occurred.  So that's more or less -- Where

11           the companies are.  How to -- If I need to

12           calculate something, I have access to the

13           documents of the companies.  So that's the

14           facts, is not the loss.

15                And to be honest, I don't think we have

16           a definition of where the loss occurs.  It's

17           not -- It's not relevant.  And to be honest

18           I don't think we have a definition in the

19           law.

20   BY MR. POYER:

21        Q.   But wouldn't loss be -- But wouldn't -- Let

22   me start over.

23                Wouldn't loss be a fact?

24                MR. MULLINS:  Objection to form.  Asked

25           and answered.

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 125

```
 1                 THE WITNESS:  Yes.  What is the

 2           question again?

 3   BY MR. POYER:

 4      Q.   Wouldn't loss be a fact that the judge would

 5   consider?

 6                 MR. MULLINS:  Same objection.

 7                 THE WITNESS:  The loss is when -- from

 8           Brazilian law, of course using, is one of

 9           the three elements of any civil

10           responsibility in Brazil.  Without a loss,

11           there's no case for any civil -- for any

12           claims, civil responsibility in Brazil.

13           Right?

14                It -- It's a fact, yes, but the --

15           the -- the fact that you're dealing with to

16           define jurisdiction is not the loss itself.

17           But the facts get -- give reason to -- to

18           the loss.

19                What happened -- The loss is a

20           consequence of something that happened.

21           Right.  That's something that the fact that

22           will define Brazilian jurisdiction.

23   BY MR. POYER:

24      Q.   Okay.  Let's talk about defenses a little

25   bit.  Under Brazilian law, is there a defense of
```

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 126

1   statute of limitations?

2       A.   Yes.

3       Q.   What would the statute of limitations be for

4   say a fraud case?

5       A.   It depends on the origin.  But like this, a

6   similar case similar to this one?

7       Q.   Sure, a case similar to ours.  What would

8   that -- What would the statute of limitations be for

9   our Count I, which is fraud?

10      A.   I think would be three years, according to

11  Article -- Article 206, Paragraph 3, Items 4 and 5.

12  Three years, in my opinion.

13      Q.   So under -- under the facts of the case as

14  you know them, if we were to file this count, Count I

15  for fraud, which is on Page 109 of the Complaint, if

16  we were to file Count I, fraud --

17      A.   Which page?  109?

18      Q.   109.

19      A.   109.

20      Q.   I'll let you get there.

21      A.   Okay.

22      Q.   So under the facts of the case as you know

23  them, if we were to file this Count I for fraud today,

24  would it be barred by the Brazilian statute of

25  limitations that you described?

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)                                        8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 127

1              MR. MULLINS:  Objection to form.

2              THE WITNESS:  Could you please so make

3         sure --

4    BY MR. POYER:

5         Q.   Sure.  Sure.

6              Well, let me ask this; is there -- is there

7    a Brazilian equivalent to Count I for fraud?

8         A.   Yes.  I think I have already said that.

9         Q.   Okay.

10             So if we're to file the Brazilian equivalent

11   of Count I for fraud in a Brazilian court today, would

12   it be barred by the statute of limitations?

13             MR. MULLINS:  Objection to form.

14             THE WITNESS:  No.  I don't think it

15         would.  Or at least I think you're going to

16         have very good arguments to say that, to

17         sustain that there wasn't any bar

18         limitations.

19             Because you have already filed the

20         lawsuit to dispute that.  And there is some

21         causes that suspend or interrupt the

22         statutes of limitation, according to the

23         Brazilian law.

24             For instance, if the facts that you are

25         using in your civil claim are also deemed

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 128

1           investigated in a criminal case, the statute

2           of limitation will only begin after a final

3           decision in the criminal case.

4                I know that there is some criminal

5           cases against those persons in Brazil.  I'm

6           not familiarized with them, because you

7           know, we don't do criminal law.  But

8           assuming that if there is some aspect that

9           they're the same, so your statute of

10          limitation would only begin after the end of

11          the criminal case.

12               That is what it says in Article 200 of

13          the Brazilian Civil Code.  Okay.

14               Also, there is Article 202 of one of

15          the Brazilian Civil Code that says if you

16          begin the lawsuit, even by -- even if it's

17          filed in the -- with the judge without

18          jurisdiction, but if the judge accept it,

19          granted leave, if I may, and determine to

20          serve the other party, that fact will

21          interrupt the statutes of limitation.

22               And again, there is a distinction

23          between suspension and interruption.

24          Suspension, you count -- you start counting

25          again where you stopped.  And interruption,

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)                                        8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 129

```
 1            you -- you run the clock since the beginning

 2            again.

 3                 So in our case, I think you have good

 4            arguments to say that your statutes of

 5            limitations is not applicable to you,

 6            because you filed the lawsuit in the -- in

 7            the judge, even if it does not have

 8            jurisdiction.  And when you do that, it will

 9            only start again after the last act of the

10            proceedings that you initiated.

11  BY MR. POYER:

12       Q.   Would a lawsuit filed in Florida suspend or

13  interrupt the statute of limitations?

14       A.   In my opinion, yes.

15       Q.   Do you think that -- So the statute of

16  limitations that you're describing, is there a statute

17  number associated with that?

18                 MR. MULLINS:  Objection.  Asked and

19            answered.  He already responded --

20                 THE WITNESS:  I'm sorry.  What's the

21            question?

22                 MR. POYER:  I apologize.  I forget

23            where --

24                 MR. MULLINS:  He told you no.

25                 THE COURT REPORTER:  One at a time,
```

Worldwide Reporting Service 305-377-3376

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 130

1          please.

2                    MR. MULLINS:  I'm sorry.

3                    MR. POYER:  I apologize.  I don't

4          remember.

5                    MR. MULLINS:  Go ahead.  Go ahead.  Ask

6          it again.

7    BY MR. POYER:

8        Q.   What's the statute -- The statute of

9    limitations that you're describing, where is that --

10       A.   Three years.

11       Q.   -- in the Brazilian law?

12            I'm sorry.  Where is it found.

13       A.   In the Civil Code.

14       Q.   Okay.  What section of the Civil Code?

15       A.   Oh.

16            I mentioned to you three years statute of

17   limitations, that it says in Article 206, Paragraph 3,

18   Items 4 and 5.

19       Q.   You're right.  I do remember that.  I

20   apologize.

21            What law operates to suspend the statute of

22   limitations?

23       A.   The same Civil Code.

24            And I mention two causes of suspension.

25   Actually, in fact, one of suspension and another of

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 131

 1    interruption.

 2            The suspension I mentioned established in

 3    Article 200 of the Civil Code.  The interruption I

 4    mentioned is mentioned -- is established in Article

 5    202, Item 1.

 6        Q.   Could you have a look at Count I for fraud

 7    on Page 109, please.

 8        A.   109.  Let me read it.

 9        Q.   Just have a look at the -- the first

10    paragraph, the unnumbered paragraph right underneath

11    --

12        A.   Right underneath your largest paragraph?

13            THE COURT REPORTER:  One at a time,

14        please.

15            THE WITNESS:  The one with the names?

16    BY MR. POYER:

17        Q.   Yes, sir.

18        A.   Okay.

19            I did.

20        Q.   So I think you mentioned that there are

21    criminal proceedings going on against the Defendants

22    that could operate to interrupt or suspend the statute

23    of limitations.  Is that right?

24        A.   No.  No, I didn't say that.

25

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)                                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 132

1      Q.    Okay.  If there are criminal proceedings

2   proceeding against the defendant, would that operate

3   to interrupt or suspend the statute of limitations?

4      A.    It depends.  What I said is that if there

5   are criminal proceedings investigation, the same facts

6   that you're using in your civil lawsuit, the statute

7   of limitation would be suspended until the final end.

8            And I also said that I'm not a criminal

9   lawyer, and I don't have personal knowledge of the

10  detail of the facts that are being investigated in

11  Brazil.  I know it's public, and there are criminal

12  cases going on against some of the Defendants.

13           So we need to know -- we need to look at

14  the -- the -- the facts investigated there to check if

15  they're the same based on which your claim is based.

16     Q.    To your knowledge, are there criminal

17  proceedings going on against the Defendants in

18  Count I?

19     A.    Yes.  Yes.  At least -- At least two of

20  them, according to -- No, three of them, according to

21  public available information; press, media, and so

22  forth.

23     Q.    And which Defendants are those?

24     A.    I know that Eike Batista is answering to

25  criminal proceedings.  I know that Flavio Godinho is

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)                                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 133

1    also asking -- responding to criminal proceedings.  I

2    know that Luiz Carneiro also responding to criminal

3    proceedings.  Maybe others.  I don't think likely.

4    But I just don't want to guess.

5         Q.   Does your firm represent them in those

6    criminal proceedings?

7         A.   No.  We don't do criminal law.

8         Q.   So, to your knowledge, are there criminal

9    proceedings going on against any of the other

10   Defendants in Count I?

11                MR. MULLINS:  Objection.  Asked and

12            answered.

13                THE WITNESS:  Could you please repeat

14            the question.

15   BY MR. POYER:

16        Q.   To your knowledge in Count I, other than the

17   Defendants that you mentioned, do you know whether

18   there are criminal proceeding going on against any of

19   the other Defendants?

20        A.   I'm not sure.  I don't know.

21        Q.   Okay.  Are there -- Are there other statutes

22   of limitations in Brazil apart from fraud?

23        A.   There isn't specific statute of limitation

24   for fraud.  I mentioned -- The status limitation I

25   mentioned for civil damages.

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 134

1         Q.   Is that regardless of the cause of action or

2    the theory of liability for the damages?

3         A.   Yes.   This is my understanding.   Yes.

4         Q.   Do you know of any other statute of

5    limitations that might apply to the facts of this

6    case?

7         A.   Oh, I didn't make any thought of -- thought

8    of deep research about all possible statutes of

9    limitations applicable to this case.   I just mentioned

10   those.   There's more obvious ones.   There might be

11   some.   I don't remember by heart.

12        Q.   If you were defending this case, would you

13   assert the defense of statute of limitations?

14                  MR. MULLINS:   Objection to form.

15                  THE WITNESS:   It's very hard to

16             anticipate what you're going to use in

17             defense without actually seeing the

18             plaintiff initial pleadings or initial

19             petitions.   I mean, I don't want to guess.

20   BY MR. POYER:

21        Q.   Okay.

22        A.   I would be guessing.

23                  MR. MULLINS:   That's an inappropriate

24             question.   I mean, that's -- that's -- he's

25             not being an expert to be a future advocate

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 135

1            for a case.

2                I mean, if you want to -- I think

3            you've asked your questions on that.  I

4            don't think it's an appropriate question to

5            ask this witness now to speculate on what

6            defenses he would do for the case.  He

7            recognizes there are defenses.  He's

8            answered your questions several times.  I

9            don't think it's an appropriate question.

10   BY MR. POYER:

11       Q.   On the facts of the case as pleaded, what's

12   your opinion as to whether the statute of limitations

13   has run?

14                MR. MULLINS:  Objection to form.  Asked

15            and answered.

16                THE WITNESS:  Could you please repeat

17            the question.

18   BY MR. POYER:

19       Q.   Sure.

20                On the facts -- On the facts of the case as

21   pleaded, what's your opinion as to whether the statute

22   of limitations has run?

23                MR. MULLINS:  Objection to form.  Asked

24            and answered.

25                MR. MILNE:  You can answer.

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)                                                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 136

1              THE WITNESS:  Okay.  You are asking me

2         if based on those facts here the statute of

3         limitation has run.  Right?  Is that what

4         you're asking?

5    BY MR. POYER:

6         Q.   Yes.

7         A.   I think you have good reasons to argue that

8    it has not, based on the Articles that I have just

9    mentioned to you.  Very good arguments to say that it

10   has not.

11        Q.   Okay.  If you go to Paragraph 16 of your

12   Affidavit.

13        A.   Which one?

14        Q.   Of your Second Affidavit, the one that we've

15   marked into evidence.

16        A.   16.

17        Q.   Yes, 16.

18        A.   Okay.

19        Q.   So in Paragraph 16, the first sentence it

20   says, in terms of procedural issues, it must be

21   highlighted that all the potential witnesses of the

22   case reside in Brazil.  Correct?

23        A.   Correct.  That's what's written.

24        Q.   In your mind, what assumptions did you make

25   as to who the potential witnesses of the case would

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 137

1    be?

2        A.   Again, I read the Complaint.  And throughout

3    the Complaint it is mentioned many Brazilian persons,

4    Brazilian companies, meetings that occurred in Brazil.

5    Eike Batista is a Brazilian.  His family, wife, former

6    wife, OGX.  So all those are facts -- Godinho, as far

7    as I understand, lives in Brazil.  Eliezer, Eike's

8    father also.  The EBX -- EBX Group was created in

9    Brazil.

10            So that the material facts that you make

11   reference to in the Complaint that you said that there

12   are false, or that were made with the deliberate

13   intention to deceive and to create harm to other

14   people, there's -- there is one huge part of the

15   Complaint it says about the material fact, they're all

16   issued in Brazil, according to Brazilian rules.

17            The meetings you mentioned in OGX,

18   Schlumberger, occurred in Brazil with OGX employees,

19   OSX employees.  So that's where the facts that I took

20   out of the Complaint, so, in my opinion, all the

21   relevant potential witnesses of this case reside in

22   Brazil.

23       Q.   To your knowledge, does -- is Schlumberger a

24   Brazilian entity?

25       A.   I know that they have an operations in

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 138

```
 1   Brazil and they have offices in Brazil.  I think it's
 2   public information.  If there originally is a
 3   Brazilian company, I don't know.  I would say they are
 4   not.
 5        Q.   When you -- When you say -- When you
 6   reference potential witnesses, are you talking in
 7   terms of a potential trial?
 8        A.   I'm talking about -- Well, what I understand
 9   a witness would be is to be heard to confirm or deny
10   the facts that were mentioned in the Complaint.
11   That's what I basically think that a witness should
12   do.
13             Since all the facts -- Or not all the facts.
14   But almost all the facts, the major -- the vast
15   majority of the facts occurred in Brazil, so my
16   understanding that the vast majority or all the
17   potential relevant witnesses will be in Brazil.
18        Q.   Did you assume that the Plaintiffs might be
19   a witness?
20        A.   Plaintiffs are not witnesses in Brazil.  In
21   Brazil, you have -- you can have testimony of
22   plaintiff and defendant, but it's not witnesses.  It's
23   a difference concept.  They can be heard, but not as
24   witness.
25        Q.   How can they be heard then?
```

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

1      A.   Well, a party can ask.  They'll be, you

2   know, basically the same, they'll -- they will answer

3   questions, the judge will schedule a day, and the

4   hearing, it will be heard.

5            But witnesses have the obligations to tell

6   the truth because they are independent.  They are

7   collaborating with the court.  They're not part --

8   party to the -- to the -- to the case.  So defendant

9   and -- And so if they -- if they lie, if a witness

10   lie, they have the right, they have the obligation to

11   say the truth, or that under penalty of in committing

12   a crime figure that's lying for the judge.  It's not

13   perjury, it's a different issue, but I think that's a

14   crime.

15           That would, for instance, not be applicable

16   for personal testimony for plaintiff nor the defendant

17   in Brazil.  Because they have a direct interest in the

18   case.  But they can be heard.  But they're not called

19   witnesses.

20           So that's why when I refer to witnesses,

21   it's not referring to the plaintiff and the plaintiff.

22      Q.   What would they be referred to if not

23   witnesses?

24      A.   Plaintiff and defendant.

25

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)                8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 140

```
 1        Q.   Okay.  Talk about evidence a little bit.  So
 2   is testimony of a witness considered to be evidence?
 3        A.   In Brazil, yes.
 4        Q.   So then the testimony of a plaintiff would
 5   not be considered evidence?
 6        A.   Yes, it is considered.  It just not called
 7   witnesses.  At different -- slightly different rules.
 8   But it's evidence as well.
 9        Q.   Would the evidence given by a plaintiff be
10   given the same weight as evidence given by a witness?
11        A.   By the judge?
12        Q.   Yes.
13        A.   It's -- It's difficult to -- to assess.  We
14   have -- It depend on the judge.
15             But, I mean, the witness is impartial, and
16   that's why he has the obligation to tell the truth
17   under penal of committing a crime.
18             So there is a partiality more related when
19   you listen to the plaintiff or defendant.  Because of
20   course they will -- they have interest in the case.
21   But that's not -- does not necessarily mean that the
22   judge will ignore whatever they say.  They will -- Of
23   course, they will pay attention.  But it's different.
24   It's just different.
25
```

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

1    Q.   Is there an obligation on the plaintiff to

2    tell the truth?

3    A.   The plaintiff has the obligation to act in

4    good faith throughout the proceedings.  I think that's

5    telling the truth.  It's a good demonstration of -- of

6    good faith.  It's a general rule for all the

7    proceedings.

8    Q.   Is there an explicit part of Brazilian law

9    that says the plaintiff has the duty to tell the

10   truth?

11   A.   Not that I'm aware of.

12   Q.   Is there an explicit part of Brazilian law

13   that says that the defendant has an -- has the --

14   A.   No.  Not that I'm aware of.

15   Q.   I'm sorry.  Let me ask the question.

16   A.   Sorry.  Sorry again.

17   Q.   No worries.

18        Is there a specific part of Brazilian law

19   that says the defendant has the obligation to tell the

20   truth?

21   A.   Other than the fact that they have the

22   obligation to act in good faith, no.  At least not

23   that I'm aware of.

24   Q.   Is there any penalty for not telling the

25   truth?

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 142

1            MR. MULLINS:  Objection to the form.

2            THE WITNESS:  The civil -- The judge

3        has some -- Again, I'm using a legal

4        concept, maybe not necessarily

5        appropriately.

6            But any way, the judge has some tools

7        and fines he can use against the party

8        that's not behaving properly.  There's some

9        specific rules in the Civil Procedure that

10       he can use against party that's not behaving

11       appropriately.

12   BY MR. POYER:

13       Q.   Okay.  So is -- is -- under Brazilian law is

14   perjury a crime?

15       A.   I'm not a criminal lawyer.  So having said

16   that, I'm not aware of any crime figure similar to

17   perjury.

18           I mean, there is a crime figure that as --

19   when you are a witness, you have the -- you have to --

20   have to, must say the truth under -- to the judge.

21   And that can be considered a crime if you do not tell

22   the truth.

23           But we don't swear by the Bible.  We don't

24   tell the whole, nothing but the truth.  It's -- It's a

25   little bit different.  It's not perjury, because

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)                                  8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 143

1    you're not -- I think it's different.  Again, I'm not

2    a criminal expert.  But I don't think there is

3    perjury, as far as I understand, in Brazil.

4         Q.   Would that apply to civil cases as well?

5         A.   Yes.

6              MR. POYER:  Okay.

7              I'm going to give you another exhibit.

8         We'll call this Exhibit --

9              MR. MULLINS:  D.

10             MR. POYER:  -- D.

11             (Whereupon, Plaintiffs' Exhibit D

12        was marked for identification.)

13             (Whereupon, the above-referenced

14        exhibit was handed to the witness.)

15             THE WITNESS:  Okay.

16   BY MR. POYER:

17        Q.   Go ahead and have a look at Exhibit D, and

18   tell me if -- tell me if you recognize it.

19        A.   Okay.  I will read it again.

20             MR. SAMRA:  Counsel, are those the only

21        copies you have?

22             MR. POYER:  I think there's another

23        one.

24             (Whereupon, the above-referenced

25        exhibit was handed to Mr. Samra.)

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 144

1              MR. SAMRA:  Thank you.

2              MR. POYER:  I apologize.

3              MR. SAMRA:  No problem.

4              MR. POYER:  I have one more copy if you

5      want --

6              MR. SAMRA:  We're all right.

7              MR. POYER:  I have one more copy.

8              (Whereupon, the above-referenced

9      exhibit was handed to Ms. McAlpin.)

10             THE WITNESS:  This is the first

11     Affidavit I gave in this case.  That's how I

12     recognize it.

13             MR. POYER:  Give me one second.  I just

14     gave all my copies away.

15             Let me give you what we'll mark as

16     Exhibit E, which is Defendants' Motion to

17     Dismiss Plaintiffs' Claims Based on Comity.

18             (Whereupon, Plaintiffs' Exhibit E

19     was marked for identification.)

20             (Whereupon, the above-referenced

21     exhibit was handed to the witness.)

22             THE WITNESS:  Thank you.

23   BY MR. POYER:

24     Q.   Go ahead and have a look at Exhibit E.  Have

25   you seen that before?  Have you seen Exhibit E before?

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 145

1      A.   Yes.

2      Q.   Which is titled Defendants' Motion to

3  Dismiss Plaintiffs' Claims Based on Comity.

4      A.   Yes.

5      Q.   And you submitted your first Affidavit,

6  Exhibit D, in support of the Motion to Dismiss

7  Plaintiffs' Claims Based on Comity.  Correct?

8      A.   Correct.  That's what's written in Item 1.

9      Q.   Okay.

10         If you look at the first page of Defendants'

11  Motion to Dismiss Plaintiffs' Claims Based on Comity

12  --

13      A.   Could you repeat.  Sorry.

14      Q.   Look at the first page of Exhibit E, the

15  Motion to Dismiss --

16      A.   Okay.

17      Q.   -- Plaintiffs' Claims Based on Comity.

18      A.   Okay.

19      Q.   So the second sentence it says, based on

20  principles of comity, the Complaint should be

21  dismissed in its entirety because the Plaintiffs'

22  claims were discharged and released in a Brazilian

23  judicial reorganization proceeding.

24      A.   Right.

25      Q.   Do you see that?

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 146

1      A.    I see that.

2      Q.    Is that correct?

3      A.    Yes, I think it is.

4            MR. POYER:  Okay.

5            MR. MULLINS:  While you are in this

6            area, so we're clear on the record, we were

7            under the impression that you were here is

8            forum non conveniens.  I think this is going

9            beyond the scope of that.  I recognize,

10           however, that this is a prior motion, he had

11           filed an Affidavit.

12               I want to make it clear, though, that

13           this motion for whatever reason gets

14           renewed, we're not bringing this witness

15           back.  So you can ask your questions now.

16               I recognize he's a client, but I'm not

17           -- You know, I understood that the court's

18           only ordered limited expert discovery of

19           forum non conveniens.  I've understood.  But

20           as long as that's your position, I mean, you

21           have done to date, now you're going into our

22           comity motion, which is not pending

23           currently before the court.  And while I'm

24           going to give you some leeway, just because

25           I want to respect the witness' time, but I

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 147

```
 1          am also taking the position that if you

 2          pursue all these questions on his Second

 3          Affidavit in the comity, that we're not

 4          reproducing this witness on this topic.  So

 5          whatever you want to do.  That's my

 6          position.

 7               MR. POYER:  Sure.  No, I think that --

 8          I think that the questions go to the

 9          availability of the -- of the forum forum.

10          That was all.

11               MR. MULLINS:  What does?

12               MR. POYER:  The questions that I just

13          asked about the -- about his prior Affidavit

14          and the Motion to Dismiss.  The Plaintiffs'

15          claims based on comity, I think that those

16          questions go to the availability of Brazil

17          as a jurisdiction to hear -- to hear our

18          claims.

19               MR. MULLINS:  Okay.  I don't agree with

20          you in any way, shape or form on that.

21               Any defenses raised under Brazilian law

22          could be raised here.  And so I don't think

23          that's an appropriate position.

24               But again, I've made my position clear.

25          If you want to pursue, go ahead.
```

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)                                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

1           I just don't want him have to come back

2       on comity if we file a separate motion.

3       That's all my point is.  And I recognize he

4       filed the Affidavit, so I'll give you some

5       leeway.  But I'm just trying to make my

6       point clear why we're here.

7           MR. POYER:  I understand.  That's the

8       only question I have.

9           MR. MULLINS:  Oh.  Okay.  Well, fair

10      enough then.  That's okay.  You're okay.

11          MR. POYER:  You mind if we get five

12      minutes.

13          MR. MULLINS:  Oh.  Sure.  Go ahead.

14          I apologize.  I went through a whole

15      speech and it turned out to be -- I

16      apologize.

17          MR. POYER:  I didn't want to interrupt.

18          MR. MULLINS:  No.  No.  No.

19          (Thereupon, a recess was taken at

20      3:30 p.m., after which the following

21      proceedings were had:)

22          THE VIDEOGRAPHER:  Back on video

23      record.  The DVD Number 5.  The time is

24      3:54 p.m.

25          MR. MULLINS:  Mr. Carpenter --

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 149

 1              MR. POYER:  Oh.  I concluded my direct

 2         examination.

 3              MR. MULLINS:  Oh.  I had heard that.

 4         Sorry.  Thank you so much.

 5              THE WITNESS:  I didn't.  I'm sorry I

 6         interrupted.

 7              MR. MULLINS:  No problem.  I apologize.

 8         Thank you very much.

 9              MR. POYER:  Sure.

10                  CROSS EXAMINATION

11   BY MR. MULLINS:

12       Q.   Mr. Carpenter, my -- my name is Ed Mullins.

13   For the record, again, I'm one of the defense counsel

14   representing what we have called the Batista

15   Defendants.  I just want to ask you a couple of

16   follow-up questions.

17            First, in terms of the scope of your

18   engagement, have you ascertained all the defenses that

19   might be brought by the Defendants in this action?

20       A.   No, I haven't.

21       Q.   In terms of filing a lawsuit in Brazil, does

22   the fact that a defendant might have a defense, does

23   that prevent the case from being filed?

24       A.   No.

25

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 150

```
 1                    MR. POYER:  Object.  Object to the

 2            form.

 3                    I'm sorry.

 4                    MR. MULLINS:  Okay.  I want to make

 5            sure I'm not leading.

 6    BY MR. MULLINS:

 7        Q.   Please explain for the jury, or for the

 8    judge, rather -- for the judge what the effect, of

 9    any -- if any, of the fact that a defendant has a

10    defense, what the effect of that is on the ability of

11    a plaintiff to file a case.

12        A.   The ability to file a case is independent of

13    the defenses a defendant might have.

14            So the plaintiff will prepare initial

15    pleadings with arguments and reliefs.  The case will

16    be assigned to a judge that will grant leave.

17    Defendants will be served and will file a defense with

18    all the arguments the defendants understand are

19    applicable or reasonable to that case, and the judge

20    will decide.

21            So the fact that there is an argument, a

22    defense, no matter how strong it is, does not prevent

23    the plaintiff from filing a lawsuit, from the loss of

24    being heard.

25
```

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)                                  8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 151

1       Q.   You were asked, for example, about the

2   reorganization order in reference in the motion for

3   comity.  You remember those questions?

4            Showing you Exhibit E.

5       A.   Yeah.  Can you show me.

6       Q.   Exhibit E.

7       A.   E.

8            Yes.

9       Q.   Okay.  And you were asked -- And you

10  understood this to be a defense raised in this case.

11      A.   I understood that this is a defense raised.

12  And I prepared an Affidavit in support --

13      Q.   Okay.

14      A.   -- of this defense.

15      Q.   And you were asked if that defense could be

16  raised in Brazil.  Correct?  Remember those questions?

17      A.   Yes.  Yes.  That's -- Let me -- Always good

18  to check.

19            Yes, I did.  Yes.  That's right.

20      Q.   All right.

21            And you were asked about that in your direct

22  examination.  I guess the question I have for you then

23  is, if the fact, for example, there's a reorganization

24  order that might be a defense to the case, would the

25  existence of that prevent a plaintiff from actually

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 152

1    filing a lawsuit in Brazil?  For example, this

2    particular case.

3         A.   No.  No, it doesn't.

4              Just for the prevent would be the -- the

5    reorganization plan in which there is a discharge.

6    And the reorganization plan was confirmed by a court

7    order, and there is no limitations or -- in the court

8    order, nor in the appeal in relation to the discharge

9    clause.  So that's why it's a defense.

10             Not in the court order exactly, but in the

11   plan confirmed by the court order.  But it wouldn't

12   prevent the filing of the case.

13        Q.   Okay.  If you understand generally what

14   happened here, would it be brought up to the court in

15   Brazil in a similar manner it be brought -- it was

16   brought to this court here in Florida?

17             MR. POYER:  Object to the form.

18   BY MR. MULLINS:

19        Q.   Do you understand my question?

20        A.   Could you please repeat it, sir.

21        Q.   Sure.

22             You understood that there was -- it was

23   filed as part of a Motion to Dismiss, Exhibit E.

24   Correct?

25        A.   Right.

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 153

```
 1       Q.   Would it be raised in Brazil in a similar
 2  manner, or do you know?
 3       A.   The defenses will probably -- The arguments
 4  of the defenses probably will be filed all together in
 5  the motion called contestacao --
 6       Q.   Uh-huh.
 7       A.   -- which is answer, if you us in a general
 8  way.
 9            So it's not separate motions for separate
10  arguments.  So that formally is not exactly the
11  proceedings not the same.  But it will be part of an
12  answer to the initial pleadings.
13       Q.   Could it be raised separately, or would it
14  be all done at the end?
15       A.   No, no, no.  Not at the end.  At the
16  beginning.
17            I mean, you are served, and you have a
18  deadline to answer, a -- a -- a certain time to answer
19  the initial pleadings.  And so -- And you'll file an
20  answer, a defense, if you may.
21       Q.   If -- If any particular defendant chose not
22  to raise the reorganization and could have, what would
23  happen?
24       A.   Well, then you going to have -- here's the
25  thing, whether this is a public order issue or not.
```

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 154

1    There is some defenses that if you don't raise in the

2    proper time, you lose the ability to do it.

3        Q.   Uh-huh.

4        A.   There are other defenses that you -- even if

5    you don't do it, sometimes you can even do it in an

6    Appellate Court.

7        Q.   Uh-huh.

8        A.    If you understand its a public order,

9    defense, something that the court must analyze.

10            I think it's going to be a debate here

11   whether this is going to be a public order defense.

12       Q.   Okay.

13       A.   So --

14       Q.   You haven't figured that out.

15       A.   No, I didn't.

16       Q.   Okay.

17            Now, you were talking about the obligation

18   of good faith by a plaintiff and a defendant.

19   Remember those questions?

20       A.   Yes, I do.

21       Q.   Okay.  And you were asked if a -- I thought

22   you said that a plaintiff and defendant have an

23   obligation to -- to present their case in good faith.

24       A.   That's true.

25

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 155

1      Q.   And I also understood that you said that a

2  plaintiff and a defendant had the opportunity to

3  provide testimony to the court on behalf of their side

4  of the case.

5              MR. POYER:   Objection to form.

6  BY MR. MULLINS:

7      Q.   Am I wrong on that?

8      A.   They -- They will have the possibility to --

9  to testify, yes.

10     Q.   Did I say anything wrong when I -- when I

11  said --

12             MR. POYER:   Object.

13  BY MR. MULLINS:

14     Q.   What I said, was it accurate, sir?  I don't

15  want to lead you.

16     A.   Okay.  So what --

17     Q.   Do it in your own words.

18         Let me put it this way; do the plaintiff and

19  the defense have the opportunity to present testimony

20  or evidence on their own behalf in their -- in the

21  case?

22             MR. POYER:   Object to the form.

23             THE WITNESS:   The court can authorize

24          plaintiff and defendant by request of the

25          court -- or if the judge understand by

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)                                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 156

1              himself that it's necessary, he can

2              authorize the testimony of plaintiff and

3              defendant.

4    BY MR. MULLINS:

5         Q.   Okay.  So if, for example --

6         A.   -- that's what you're asking.

7         Q.   I am.

8              So if, for example, a plaintiff in

9    presenting the testimony as authorized by the court,

10   if that plaintiff lied, would that be considered under

11   Brazilian law good faith?

12        A.   No.

13        Q.   If a defendant, as authorized by the judge,

14   were to lie, would that be considered good faith?

15        A.   No.

16        Q.   If either the plaintiff or defendant were

17   found to not act in good faith in the presenting of

18   their testimony, what would be the ramifications?

19        A.   Well, the judge has sanctions, has fines,

20   and some sanctions in the civil procedural law.  I

21   didn't go into detail.  But the judge has sanctions in

22   relation to this.

23        Q.   Okay.

24        A.   Can sanction the -- the party.

25

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

1      Q.   And can you give us an idea what kind of

2    sanctions we're talking about.

3      A.   Basically fines.  Fines.

4      Q.   Could they throw the case out or --

5      A.   Sorry?

6      Q.   Is it possible the case it be thrown out?

7      A.   What do you mean by thrown out?

8      Q.   In other words --

9      A.   Dismissed?

10     Q.   -- if somebody lied completely, could the

11   judge say I'm going to throw this case out because

12   you've -- you've lied to the court?

13     A.   You mean dismiss the case --

14     Q.   Correct.

15     A.   -- not hear the case?  Thrown out, is that

16   what it means?

17     Q.   Exactly.

18     A.   No, I don't think so.

19     Q.   Just fines.

20     A.   Fines.

21          Well, of course, the judge will consider

22   that when he's taking his decision on the merits or

23   not on the merits.

24     Q.   Uh-huh.

25     A.   So it is in evidence.  So if someone lies,

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

1   the judge -- and the judge comes to that conclusion,

2   of course, that will interfere in his decision.

3   Whether it's --

4        Q.   Sure.

5        A.   -- on the merits or on the dismissal of the

6   case for procedural reasons.  But, of course, it will

7   interfere in the judge understanding.

8             If that's what you're asking.

9             MR. MULLINS:  I understand.

10            I have no further questions.  Thank you

11        so much for your time today.

12            THE WITNESS:  My pleasure.

13            MR. SAMRA:  No questions.

14            MR. POYER:  No questions.

15            MS. McALPIN:  No questions.

16            THE VIDEOGRAPHER:  All right.  This

17        concludes the videotape deposition of

18        Mr. Marcelo Lamego Carpenter, Number DVD

19        used were five.  Going off the record.  The

20        time is 4:02 p.m.

21            THE COURT REPORTER:  If this is

22        ordered, does anybody want a copy?

23            MR. MULLINS:  I take it you're

24        ordering.  You're ordering?

25            MR. POYER:  Yes.

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 159

1               MR. RASILE:  I'll take a copy.

2               MR. MULLINS:  We're going to read.

3          Yes, I'll take a copy.

4               MS. McALPIN:  I want a copy.

5

6    (Thereupon, the video deposition ended at 4:02 p.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)                          8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 160

```
 1

 2                    CERTIFICATE OF REPORTER

 3

     STATE OF FLORIDA    )
 4                       )
     COUNTY OF BROWARD   )

 5

 6            I, RONNI M. KUGLER, being a Notary Public in
     and for the State of Florida at  Large, do hereby
 7   certify that I stenographically reported the
     deposition of MARCELO LAMEGO CARPENTER, a witness
 8   called by the Plaintiff in the above-styled cause;
     that the said witness was duly sworn by me; that the
 9   reading and subscribing of said deposition were not
     waived by the witness and by counsel for the
10   respective parties; and that the foregoing pages,
     numbered from 1 to 160, inclusive, constitute a true
11   and correct transcription of my shorthand report of
     the deposition of said witness.

12

13            I further certify that I am not an attorney
     or counsel of any of the parties, nor relatives or
     employees of any attorney or counsel connected with
14   the action, nor financially interested in the action.

15            The foregoing certification of this
     transcript does not apply to any reproduction of the
16   same by any means, unless under the direct control
     and/or direction of the certifying reporter.

17

18            WITNESS my hand and official seal in the
     City of Coral Springs, County of Broward, State of
     Florida, this 27th day of March, 2018.

19

20            _____
              Ronni M. Kugler
21            Notary Public - State of Florida
              Commission #GG 101154
22            Expires: August 25, 2021

23

24

25
```

Worldwide Reporting Service 305-377-3376

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

```
 1              WORLDWIDE REPORTING SERVICE
                   5379 Lyons Road # 414
 2              Coconut Creek, Florida 33073
                     (305) 377-3376
 3

 4                   March 27th, 2018

 5   MERIDIAN TRUST CO, ET AL. Vs. EIKE BATISTA, ET AL.

 6    MARCELO LAMEGO CARPENTER C/O :

 7   REED SMITH
      BY: EDWARD MULLINS, ESQUIRE
 8   1001 Brickell Bay Drive, Suite 900
     Miami, Florida 33131
 9   (786) 747-0207
        emullins@reedsmith.com
10

11    Dear Mr. Mullins,

12         With reference to the videotaped deposition of
     MARCELO LAMEGO CARPENTER taken on March 15th, 2018 in
13   connection with the above-captioned case, please be
     advised that the transcript of the deposition has been
14   completed and is awaiting signature.

15         Please arrange to have the witness contact our
     office for the purpose of reading and signing the
16   deposition.  Our office hours are 9:00 a.m. to
     4:00 p.m., Monday through Friday.  Please telephone in
17   advance.

18         You may read a copy of the transcript, however,
     denoting any corrections by page and line number on a
19   separate sheet of paper.  This correction to us must
     be signed by you and notarized and returned to us for
20   filing with the original.

21         If this has not been taken care of, however,
     within the next 30 days, or by the time of trial,
22   whichever comes first, I shall then conclude that the
     reading, subscribing and notice of filing have been
23   waived and shall then proceed to file the original
     with the clerk of the court without further notice.

24

25              Sincerely yours,
```

Electronically signed by ronni Kugler (101-355-781-7186)
Electronically signed by ronni Kugler (101-355-781-7186)                    8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 162

```
 1

 2                    ACKNOWLEDGMENT OF DEPONENT

 3

 4    STATE OF FLORIDA

 5    COUNTY OF BROWARD

 6                    I, _____

 7    having been first duly sworn, do hereby acknowledge

 8    that I have read my deposition given in the

 9    above-styled case.

10                    Done and signed this _____ day of

11    _____, 2018.

12

13                    _____
                      NOTARY PUBLIC
14

15

16

17

18

19

20

21

22

23

24

25
```

Worldwide Reporting Service 305-377-3376

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f

Page 163

```
 1

 2                   E R R A T A   S H E E T

 3

 4      RE: MERIDIAN TRUST, ET AL. Vs. EIKE BATISTA, ET AL.
        CASE NO.: 1:17-CV-23051 KMW
 5      VIDEOTAPED DEPOSITION OF:  MARCELO LAMEGO CARPENTER
        DATE TAKEN:  March 15, 2018
 6
        PAGE NO.      LINE NO.         CORRECTION OR CHANGES
 7      _____     _____        _____
        _____     _____        _____
 8      _____     _____        _____
        _____     _____        _____
 9      _____     _____        _____
        _____     _____        _____
10      _____     _____        _____
        _____     _____        _____
11      _____     _____        _____
        _____     _____        _____
12      _____     _____        _____
        _____     _____        _____
13      _____     _____        _____
        _____     _____        _____
14      _____     _____        _____
        _____     _____        _____
15      _____     _____        _____
        _____     _____        _____
16
                                     _____
17                                    MARCELO LAMEGO CARPENTER

18              Sworn to and subscribed before me this
        _____ day of _____ , 2018 by
19      _____who produced _____
        as identification.
20

21

22                              _____

23
                                Notary Public - State of Florida
24                              My Commission No.
                                Expires:
25
```

Electronically signed by ronni kugler (101-355-781-7186)
Electronically signed by ronni kugler (101-355-781-7186)

8d2f7eb9-56ee-45d4-9b96-842d7015438f