UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 17-CV-23051-KMW

MERIDIAN TRUST COMPANY, as
trustee, and AMERICAN ASSOCIATED
GROUP, LTD.,

        Plaintiffs,

v.

EIKE BATISTA, *et al.*

        Defendants.

_____/

# BATISTA DEFENDANTS' AND PAULO MENDONÇA'S
# RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO FILE SUR-REPLY

| **REED SMITH LLP** | **DLA PIPER LLP** |
|---|---|
| 1001 Brickell Bay Drive, 9th Floor<br>Miami, FL 33131<br>Telephone: (786) 747-0200<br>Facsimile: (786) 747-0299 | 200 S. Biscayne Blvd., Suite 2500<br>Miami, FL 33131<br>Telephone: (305) 423-8500<br>Facsimile: (305) 437-8131 |
| Edward M. Mullins (FBN 863920)<br>emullins@reedsmith.com<br>Ana M. Barton (FBN 85721)<br>abarton@reedsmith.com<br>Sujey S. Herrera (FBN 92445)<br>sherrera@reedsmith.com | Craig Rasile (FBN 613691)<br>craig.rasile@dlapiper.com<br>Harout J. Samra (FBN 70523)<br>harout.samra@dlapiper.com |
| *Counsel for Batista Defendants* | *Counsel for Paulo Mendonça* |

Pursuant to S.D. Fla. L.R. 7.1(c), the Batista Defendants and Mendonça oppose Plaintiffs' Motion to File Sur-Reply of 15 Pages on the Motion to Dismiss for *Forum Non Conveniens* (the "Motion for Leave") [ECF No. 123].

The Motion to Dismiss for *Forum Non Conveniens* (the "Motion to Dismiss") [ECF No. 85] has been fully briefed since July 25, 2018, and is ripe for the Court's consideration following Defendants' timely-filed Reply in Support of the Motion to Dismiss (the "Reply") [ECF No. 121]. Several months ago, the Parties agreed to the briefing schedule. Now, Plaintiffs belatedly seek to cloud the issues already framed before the Court by introducing arguments related to an entirely different and **unrelated** ancillary action currently pending before the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") relating to a company – MMX Sudeste Mineracao, S.A. ("MMX") – which was never among the investments at issue in this case. *See In re: MMX Sudeste Mineração S.A.*, Case No. 17-bk-16113 (Bankr. S.D. Fla. filed May 15, 2017) (the "MMX Chapter 15 Case").

The Plaintiffs' arguments are irrelevant to this Court's consideration of the Motion to Dismiss, which is already fully briefed, because they are based upon the MMX Chapter 15 Case – by definition, a United States insolvency proceeding that is ancillary to a Brazilian bankruptcy and intended to allow the foreign creditors of that Brazilian company, through a court-appointed administrator, to identify and marshal assets of MMX that may be located in the United States (the "Brazilian Trustee").

Under Chapter 15 of Title 11 of the U.S. Code (the "Bankruptcy Code"), foreign creditors may initiate insolvency proceedings in the United States to impose an injunction over a debtor's U.S.-based assets to preclude a race by that debtor's foreign creditors to pursue those assets in order to satisfy their unpaid claims. There is no other purpose of a Chapter 15

1

proceeding. Plaintiffs' efforts to conflate the MMX Chapter 15 Case with this case are designed merely to divert this Court's attention from the real issues raised in the Motion to Dismiss. The Court should not be persuaded by this proverbial red herring.

Similarly, Plaintiffs' argument based upon alleged "new evidence" emanating from certain expert depositions taken by Defendants is flawed. Plaintiffs' Motion for Leave does not cite any new evidence or arguments. Indeed, the depositions of Plaintiffs' experts were based upon sworn declarations previously filed before this Court by the very same experts who were deposed, so their testimony already was part of the record for the Motion to Dismiss and Plaintiffs' Response. This is yet another frantic attempt by Plaintiffs to circumvent the briefing schedule agreed to by the Parties and ordered by the Court.

Accordingly, the Court should deny Plaintiff's Motion for Leave to File a Sur-Reply.

## **STANDARD**

Sur-replies are disfavored by the Courts. *DL, et al. v. District of Columbia*, 109 F. Supp. 3d 12, 34 (D.D.C. 2015). Neither the Federal Rules of Civil Procedure nor the Local Rules of this Court authorize them. *Miranda v. NCL (Bahamas) Ltd.*, Case No. No. 12–CV-23790–CIV, 2013 WL 504103, at *3 (S.D. Fla. February 8, 2013) (noting that sur-replies are not "permitted under the Local Rules"). Indeed, courts are loathe to permit such additional briefing precisely because, as in this case, it may "put the court in the position of refereeing an endless volley of briefs." *Garrison v. N.E. Ga. Med. Ctr., Inc.*, 66 F. Supp. 2d 1336, 1340 (N.D. Ga. 1999).

Courts generally have the discretion to decline or accept such additional briefing if they choose, particularly to permit the [Plaintiffs] to respond to "new material raised for the first time in the … reply." *See, e.g., Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1164 (10th Cir.1998); *see also Lewis v. Rumsfeld*, 154 F. Supp. 2d 56, 61 (D.D.C. 2001) ("The standard for granting a

leave to file a surreply is whether the party making the motion [for leave to file a sur-reply] would be unable to contest matters presented to the court for the first time in the opposing party's reply."). Included among the factors the District Court should consider in making this determination are "whether the [Defendants'] reply in fact raises arguments or issues for the first time, whether the [Plaintiffs'] proposed sur-reply would be helpful to the resolution of the pending motion, and whether the [Defendants] would be unduly prejudiced were leave to be granted." *DL*, 109 F. Supp. 3d at 34. None of these factors applies here.

## ARGUMENT

### I. The MMX Bankruptcy Proceeding is Not "New" and is Irrelevant to the Court's Consideration of the Motion to Dismiss

Plaintiffs assert that the "main reason" for their requested sur-reply is to "address" the MMX Chapter 15 Case, which was filed more than a year ago and which involves MMX, a different Brazilian company than the one involved in this case. Plaintiffs further contend that "there is likely to be a substantial overlap of issues and evidence between this case and that." By any measure, however, these arguments are misguided. The MMX Chapter 15 Case – a public proceeding pending here in South Florida – is not new and, apart from the participation of some of the same defendants herein (who have appeared in that case only to object to it), is totally unrelated to the claims asserted by Plaintiffs in this case.

### A. There are No Common Issues between this Case and the MMX Chapter 15 Case

There are absolutely no common issues between this case and the MMX Chapter 15 Case. Plaintiffs are not even interested parties in the MMX Chapter 15 Case insofar as they are not creditors or bondholders of MMX in Brazil or in the United States. Indeed, Plaintiffs never filed an appearance in the Brazilian bankruptcy proceeding for MMX, let alone filed a proof of claim. On August 10, 2018, however, Plaintiffs filed a notice of appearance in the MMX Chapter

3

15 Case, yet they never have appeared in the main MMX bankruptcy case in Brazil. Interestingly, much like they refused to file claims in the OGX bankruptcy in Brazil, where they are purportedly bondholders with standing to be heard and to protect their claims, Plaintiffs have not filed any claims in either of the bankruptcy proceedings related to MMX. As Plaintiffs presumably know, filing claims in U.S. bankruptcy cases does not come without risk. Under Title 18 of the U.S. Code, filing a fraudulent proof of claim is punishable by a fine of up to $500,000, five (5) years' imprisonment, or both. *See* 18 U.S.C. § 152(4); 18 U.S.C. § 3571. Clearly, insofar as the Plaintiffs do not have any claims in the MMX Chapter 15 Case or the underlying main MMX Brazilian bankruptcy proceeding, it defies logic to conflate those independent insolvency proceedings involving MMX with the securities fraud case pending before this Court against Defendants with respect to an investment in an entirely different company.

A more granular analysis of the purpose and scope of Chapter 15 proceedings in the United States further illustrates the absurdity of Plaintiffs' arguments in their Motion for Leave. A Chapter 15 case simply is a judicial recognition of a foreign bankruptcy in which a U.S. bankruptcy court assists in the marshaling and monetization of domestic assets for the foreign proceeding. *In re Condor Ins. Ltd.*, 601 F. 3d 319, 325 (5th Cir. 2010). At best, the MMX Chapter 15 Case is an ancillary matter in aid of a Brazilian bankruptcy initiated by the Brazilian Trustee to obtain the assistance of the Bankruptcy Court to locate assets of MMX in the United States for the benefit of the creditors and interested parties who timely filed proofs of claim or proofs of interest in the Brazilian MMX bankruptcy proceeding.

There is absolutely no reason to authorize additional discovery, investigation, or briefing, as requested in the Motion for Leave, based upon the MMX Chapter 15 Case. *See* Motion for

4

Leave at p. 8. Plaintiffs' assertion that there are "common issues" between this case and the MMX Chapter 15 Case is clearly erroneous. Any claims to MMX assets that the Brazilian Trustee may prosecute before the Bankruptcy Court necessarily emanate from the MMX bankruptcy in Brazil, and not from any of Defendants' roles with OGX, which exclusively form the basis of the Plaintiffs' claims in this case. What Defendants did or did not do at OGX has absolutely no bearing or relevance to the MMX Chapter 15 Case. To suggest that the cases are somehow related because the "MMX Chapter 15 Case involves a supposed parallel fraud allegedly committed by Eike Batista following a similar pattern of misrepresentations over the same time frame against investors in a sister company in the EBX Group, which went bankrupt at the same time as OGX and OSX" is equally inane, misleading, and irrelevant to the instant case where Plaintiffs' admitted that they purportedly invested in bonds issued by OGX, not MMX. *See* Motion for Leave p. 2.

Put simply, Plaintiffs' desperate efforts to find any parallels between the MMX Chapter 15 Case and this case fall miserably short. The MMX Chapter 15 Case is entirely irrelevant to this Court's consideration of the Motion to Dismiss. Plaintiffs assert that they invested in **OGX, an oil exploration company, not MMX, a mining company,** and further that the alleged fraud at the core of their case supposedly relates to false statements made concerning **OGX's** oil production. Hence, there is no overlap between the cases on the merits.

      B.      **The "New Evidence" Offered by Plaintiffs is Irrelevant to the Court's *Forum Non Conveniens* Analysis**

The irrelevance of the MMX Chapter 15 Case is underscored when considering the factors that the Court must balance in its *forum non conveniens* analysis.

First, the private interest factors remain exactly the same. No new witnesses have been identified in Florida. That some Defendants in this case also appeared to object to the unrelated

Chapter 15 bankruptcy proceeding in Florida is not even remotely relevant to this analysis. Plaintiffs cite no cases to the contrary. Further, a finding of ancillary jurisdiction by the Bankruptcy Court in the MMX Chapter 15 Case is not relevant to jurisdiction over Defendants in this case. All that is at issue in the MMX Chapter 15 Case is identifying assets located in the United States as part of an ancillary bankruptcy proceeding; not the assertion of affirmative claims against any of the Defendants, which is at issue here. Moreover, none of the evidence Defendants will utilize to prove their respective defenses, all of which is in Brazil, will be relevant to the outcome of the MMX Chapter 15 Case. The MMX Chapter 15 Case, on the other hand, will focus almost exclusively on U.S.-based assets that may eventually become property of the MMX bankruptcy estate in Brazil. Plaintiffs have not even obtained a judgment against Defendants in this case. Therefore, they are putting the proverbial cart before the horse.

<u>Second</u>, the MMX Chapter 15 Case actually emphasizes the core public interests of Brazil in both cases. After all, the purpose of Chapter 15 of the Bankruptcy Code "reflects its international origin" and "functions through the recognition of a foreign proceeding." *In re Condor Ins. Ltd.*, 601 F. 3d 319, 325 (5th Cir. 2010).[1] Chapter 15 cases are purely ancillary and

---

[1] The purpose and scope of Chapter 15 are set forth clearly in 11 U.S.C. § 1501(a)-(b):

  (a) The purpose of this chapter is to incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency with the objectives of—
  (1) cooperation between—
     (A) courts of the United States, United States trustees, trustees, examiners, debtors, and debtors in possession; and
     (B) the courts and other competent authorities of foreign countries involved in cross-border insolvency cases;
  (2) greater legal certainty for trade and investment;
  (3) fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested … [continued below] entities, including the debtor;
  (4) protection and maximization of the value of the debtor's assets; and

6

derivative of foreign bankruptcy proceedings, as they operate to marshal assets in the U.S. for foreign creditors in the foreign bankruptcy proceeding. If anything, the MMX Chapter 15 Case strengthens the public interest factors in favor of Brazil because the Brazilian court appointed the Brazilian Trustee and authorized him to seek assets in the United States, even piercing the corporate veil, thereby belying any argument by Plaintiffs that they had no recourse for fraudulent acts in the Brazilian reorganization of OGX. There was no similar order entered by the OGX bankruptcy court in Brazil. Instead, that court confirmed a plan of reorganization for OGX that granted general releases in favor of many individuals and parties involved in the OGX restructuring. The impact and effect of these general releases should be analyzed by the courts in the best position to interpret Brazilian bankruptcy law. By the admission of Plaintiffs' own expert, Oliveira, these are the Brazilian courts. *See* Reply at p. 9.

<u>Third</u>, the existence of the MMX Chapter 15 Case in Florida is not evidence of the presence of assets in the United States or anywhere else for that matter. Rather, it is part of a concerted international effort by the court-appointed Brazilian Trustee to seek assets of MMX around the world. That is exactly how the process *should* unfold, in contrast to Plaintiffs' efforts here to make a clear and unadulterated end-run around any and all Brazilian courts of competent

---

      (5) facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment.

(b) This chapter applies where—
    (1) assistance is sought in the United States by a foreign court or a foreign representative in connection with a foreign proceeding;
    (2) assistance is sought in a foreign country in connection with a case under this title;
    (3) a foreign proceeding and a case under this title with respect to the same debtor are pending concurrently; or
    (4) creditors or other interested persons in a foreign country have an interest in requesting the commencement of, or participating in, a case or proceeding under this title.

7

jurisdiction.

Fourth, Plaintiffs, in an effort to justify their own failure to address the irrelevant MMX matter, wrongly suggest that this public matter, pending for over a year, somehow was intentionally concealed from them by Defendants' counsel. *See* Motion for Leave at pp. 10-11. Defendants' counsel never referenced the MMX Chapter 15 Case because it is completely irrelevant to this case.

Consequently, the issues raised by Plaintiffs are immaterial – much less, helpful – to the analysis of whether the United States is the most convenient forum for this case. Like a smoke screen, the Motion for Leave merely attempts to deflect the Court's attention from the real issues raised in the Motion to Dismiss, which at this juncture of the case have been more than adequately briefed. The Motion for Leave and the alleged "new evidence" that Plaintiffs seek to introduce do not in any way rebut Defendants' arguments as to the unsuitability of the United States as a forum for this case.[2]

## II. Plaintiffs do not Present "New Evidence" in Support of their Motion

No new evidence or arguments were asserted in the Reply to support Plaintiffs' request for a sur-reply. As a consequence, no further briefing of the Motion to Dismiss is merited. The purported "new evidence" cited in the Motion for Leave emanates from depositions taken by Defendants of two of Plaintiffs' Brazilian law experts. Both experts were retained by Plaintiffs,

---

[2] Plaintiffs' additional arguments related to the legal opinion of Carpenter and the supposed need for additional discovery are speculative. If anything, it is these very arguments that represent the kind of rabbit hole of endless briefing, additional discovery, and expert testimony that a briefing schedule is intended to circumscribe and that the Northern District of Georgia in *Garrison*, 66 F. Supp. 2d at 1340, warned against. Plaintiffs deposed Carpenter on March 15 of this year, so they had his deposition testimony well before they filed their Response in Opposition to the Motion to Dismiss. They cannot now, through a motion seeking leave to file a sur-reply, seek to attack Mr. Carpenter's credibility using an unrelated public record proceeding, namely the MMX Chapter 15 Case, about which he never was questioned.

8

and both prepared and submitted extensive sworn declarations as part of Plaintiffs' Response in Opposition to the Motion to Dismiss (the "Response in Opposition to the Motion to Dismiss") [ECF No. 118].

Plaintiffs' general complaints concerning the briefing and discovery deadlines in this case, as well as their specific concern that the depositions of their experts took place after they filed their Response in Opposition to the Motion to Dismiss, are meritless insofar as Plaintiffs agreed to the briefing schedule and submitted it jointly with Defendants to the Court. [ECF No. 87 ¶ 2, n.2] (clarifying the reply brief deadline was premised on the assumption that Plaintiffs would make their experts available before 5/11/18, which they failed to do). Plaintiffs knew Defendants would use their experts' testimony in their Reply. Plaintiffs agreed to a briefing schedule in which Plaintiffs' experts would be deposed after their response brief was filed and they understood that Defendants would have the last word, which is exactly what the Local Rules of this Court provide.

In any event, the "new evidence" that Plaintiffs' complain of is hardly new. It simply rebuts the arguments and evidence raised by Plaintiffs in their Response. *Intra-Lock Int'l, Inc. v. Joseph Choukroun*, Case No. 14-CV-80930, 2015 WL 1268278, at *1 (S.D. Fla. March 19, 2015) ("there is a subtle yet noteworthy distinction that exists between 'new arguments and evidence, on the one hand, and rebuttal arguments and evidence, on the other' … reply evidence 'may contain facts not previously mentioned in the opening brief, as long as the facts rebut elements of the opposition memorandum and do not raise wholly new factual issues.'") (citing *Giglio Sub s.n.c. v. Carnival Corp.,* No. 12-21680-CIV, 2012 WL 4477504, at *2 (S.D. Fla. Sept. 26, 2012); *Burger King Corp. v. Ashland Equities, Inc.,* 217 F. Supp. 2d 1266, 1280-81 (S.D. Fla. 2002)). For example, it was the Batista Defendants and Mendonça who disclosed to

9

the Court in their Reply that Plaintiffs' expert, Oliveira, testified that the applicable statutes of limitations in Brazil were not tolled with respect to any Defendants here who were not themselves criminal defendants in Brazil. *See* Reply at 9.

Plaintiffs' Motion for Leave turns the concept of a sur-reply entirely upside down by seeking to introduce new evidence and arguments in the sur-reply itself. Plaintiffs acknowledge that the issues related to the MMX Chapter 15 Case were not addressed in the Reply. Defendants did not do so because the MMX Chapter 15 Case is totally irrelevant to this case.[3] Plaintiffs' novel allegations against Banco Itau also go well beyond anything raised in the Reply.[4] Indeed, Plaintiffs go well beyond extending their arguments by seeking to introduce at this late stage of the case new evidence which has been publicly available for over one year. Such briefing would not only put the Court in the position of "refereeing an endless volley of briefs," but it would

---

[3]  Plaintiffs' allegations concerning candor to the Court are groundless and unsubstantiated. The MMX Chapter 15 Case (relating to identifying, marshalling, and monetizing MMX's assets located in the United States, if any, as part of an ancillary bankruptcy proceeding in support of a main Brazilian bankruptcy proceeding) is unrelated to this case (an action for civil damages premised upon fraudulent inducement to invest in OGX). In any event, Counsel for the Batista Defendants and Mendonça are not involved in the MMX Chapter 15 Case. Mendonça is not even a party to that case, which involves a completely different company than OGX. These allegations are particularly egregious in light of Plaintiffs' recent history of filing dubious *ex parte* proceedings in this very case only to have that relief quashed completely. *See, e.g.,* DE 116, Werner's Objections (discussing Plaintiffs' seeking a temporary injunction in bad faith); *Berto v. Meridian Tr. Co.,* 221 So. 3d 757 (Fla. 3d DCA 2017) (noting that "there was absolutely no evidence actually presented" in support of the *ex parte* injunction).

[4]  Plaintiffs, by their own admission, do not even know what new evidence is available in this regard. *See* Motion for Leave at 9. Based on this admittedly incomplete information obtained in Panama, they allege that a U.S. bank was the hub for banking activities in Paraguay, the Bahamas, New York, and Zurich. These assertions amount to little more than pure speculation and wishful thinking. Even if true, as noted in Defendants' Reply, discovery in the United States in support of a Brazilian proceeding would be available through 28 U.S.C. § 1782, which may be sought even before a Brazilian proceeding is initiated. Additionally, they apparently can obtain this information through the MMX proceedings, diminishing any benefit or convenience from proceedings in this Court to investigate where the assets are, assuming they prevail on their claims.

10

also require further briefing by the Defendants merely to avoid unfair prejudice.

Far from being a "classic situation" in which a sur-reply is rarely permitted, this is exactly the kind of situation in which further briefing should be **denied** because it would "merely extend[] the arguments that [Plaintiffs] originally made" in their Response in Opposition to the Motion to Dismiss. *See Garrison*, 66 F. Supp. 2d at 1340.

### III. The Court May Strike the Plaintiffs' Unauthorized Filings

Plaintiffs have gone far beyond the scope of a simple motion seeking leave to file a sur-reply. Their thirteen (13) page Motion for Leave includes most of the arguments that presumably would be aired in slightly greater detail in the fifteen (15) page sur-reply that they intend to file. The Motion even includes a nineteen (19) page excerpt of a deposition transcript. Plaintiffs have effectively already filed their sur-reply under the guise of their Motion.

Indeed, since briefing on the Motion to Dismiss closed over one month ago, Plaintiffs have filed two additional unauthorized briefs other than the Motion for Leave, namely the Notice of Pending Actions on August 3, 2018 [ECF No. 120], and the Notice of Filing Supplemental Authority on August 15, 2018 [ECF No. 124]. Each of these "Notices" includes substantive arguments intended to supplement the Plaintiffs' Response in Opposition to the Motion to Dismiss. Taken together with their voluminous exhibits, these three unauthorized briefs amount to **443 pages** of additional information presented to the Court without its authorization well *after* briefing on the Motion to Dismiss closed. Even a cursory review of these unauthorized briefs confirms that virtually all of the information that Plaintiffs seek to belatedly present to the Court – in violation of the Court's briefing schedule – was available before they filed their Response.

The Court may strike these unauthorized filings because they: (1) are not permitted by the Federal Rules of Civil Procedure or the Local Rules of the Southern District of Florida; (2) far

11

exceed the twenty (20) page limit permitted by the Court for Plaintiffs' response to the Motion to Dismiss; and (3) are untimely under the briefing schedule agreed to by the Parties and ordered by the Court. *See, e.g., La Gorce Palace Condo Assoc., Inc. v. QBE Insurance Corp.*, 733 F. Supp. 2d 1332, 1334 n.1 (S.D. Fla. 2010) ("Plaintiff filed an 'Instanter' sur-reply … and later realized that such filing requires leave of court, thus filed a motion for leave to file the sur-reply … . The Local Rules, Rule 7.1, do not provide for a sur-reply as of right. The Court will deny the motion to file a sur-reply and will order the unauthorized filing stricken."); *Miranda v. NCL (Bahamas) Ltd.*, No. 12-23790-CIV, 2013 WL 504103, at *3 (S.D. Fla. Feb. 8, 2013) ("The Court agrees that the supplement amounts to a sur-reply, which is not permitted under the Local Rules, and it is therefore stricken.").

Plaintiffs should not be permitted to litigate this matter according to their own set of rules, which directly violate the Court's orders, the Local Rules, and the Federal Rules of Civil Procedure. They unabashedly do so on a grand scale with impunity. If nothing else, briefing on the Motion to Dismiss – which closed on July 25, 2018 pursuant to the Parties' and the Court's schedule – should mercifully be brought to an end.

## **CONCLUSION**

The Batista Defendants and Mendonça respectfully request that this Court:

- Deny Plaintiffs' Motion for Leave;
- Enter an order closing briefing and prohibiting additional filings concerning the Motion to Dismiss; and
- Grant such other and further relief as is just and proper under the circumstances.
- Additionally, the Court has the authority to strike Plaintiff's unauthorized filings. *See, e.g., La Gorce*, 733 F. Supp. 2d at 1334 n.1.

| | |
|---|---|
| August 23, 2018 | Respectfully submitted, |
| REED SMITH LLP<br>1001 Brickell Bay Drive, 9th Floor<br>Miami, FL 33131<br>Telephone: (786) 747-0200<br>Facsimile: (786) 747-0299<br><br>By: */s/ Sujey S. Herrera*<br>Edward M. Mullins (FBN 863920)<br>emullins@reedsmith.com<br>Ana M. Barton (FBN 85721)<br>abarton@reedsmith.com<br>Sujey S. Herrera (FBN 92445)<br>sherrera@reedsmith.com<br><br>*Counsel for Batista Defendants* | DLA PIPER LLP<br>200 S. Biscayne Blvd., Suite 2500<br>Miami, FL 33131<br>Telephone: (305) 423-8500<br>Facsimile: (305) 437-8131<br><br>By: */s/ Harout J. Samra*<br>Craig Rasile (FBN 613691)<br>Craig.rasile@dlapiper.com<br>Harout J. Samra (FBN 70523)<br>harout.samra@dlapiper.com<br><br>*Counsel for Paulo Mendonça* |

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on August 23, 2018, on all counsel or parties of record on the Service List below.

                                              */s/ Harout J. Samra*
                                              Harout J. Samra

**SERVICE LIST**

| | |
|---|---|
| Hendrik G. Milne, Esq.<br>hmilne@aballi.com<br>Craig P. Kalil, Esq.<br>ckalil@aballi.com<br>Carlos Federico Osorio, Esq.<br>cosorio@aballi.com<br>Joshua D. Poyer, Esq.<br>jpoyer@aballi.com<br>Grant S. Smith, Esq.<br>gsmith@aballi.com<br>Renne R. Tischler, Esq.<br>rtischler@aballi.com<br>Matthew R.D. Deblinger, Esq.<br>mdeblinger@aballi.com<br>**ABALLI MILNE KALIL, P.A.**<br>2250 SunTrust International Center<br>One Southeast Third Ave.<br>Miami, Florida 33131<br>Tel: (305) 373-6600<br>Fax: (305) 373-7929<br><br>*Counsel for Plaintiffs Meridian Trust Company, as Trustee, and American Associated Group, Ltd.* | Alvin B. Davis, Esq.<br>Alvin.davis@squirepb.com<br>**SQUIRE PATTON BOGGS (US) LLP**<br>200 South Biscayne Boulevard, Suite 4700<br>Miami, Florida 33131<br>Tel: (305) 577-2835<br>Fax: (305) 577-7001<br><br>*Counsel for Defendant Ben Aziz Ammar* |

| | |
|---|---|
| Jose M. Ferrer, Esq.<br>jferrer@bilzin.com<br>Yasmin Fernandez-Acuna<br>Yfernandez-acuna@bilzin.com<br>**BILZIN SUMBERG BAENA PRICE & AXELROD LLP**<br>1450 Brickell Avenue<br>Suite 2300<br>Miami, Florida 33131<br>Tel: (305) 374-7580<br>Fax: (305) 374-7593<br><br>*Counsel for Defendants Marcus Berto, Erick Magno and Erick Magno, PL* | Edward M. Mullins, Esq.<br>emullins@reedsmith.com<br>Ana M. Barton, Esq.<br>abarton@reedsmith.com<br>Sujey S. Herrera<br>Sherrera@reedsmith.Com<br>**REED SMITH LLP**<br>1001 Brickell Bay Drive<br>Suite 900<br>Miami, FL 33131<br>Tel: (786) 747-0200<br>Fax: (786) 747-0299<br><br>Michael Carlinsky, Esq.<br>michaelcarlinsky@quinnemanuel.com<br>Elinor Sutton, Esq.<br>elinorsutton@quinnemanuel.com<br>Victor Noskov, Esq.<br>victornoskov@quinnemanuel.com<br>**QUINN EMANUEL URQUHART & SULLIVAN, LLP**<br>51 Madison Avenue, 22nd Floor<br>New York, NY 10010<br>Tel: (212) 849-7000<br>Fax: (212) 849-7100<br><br>*Counsel for Defendants Eike Batista; Flavia Sampaio; WernerBatista; Thor Batista; Olin Batista; Luma DeOliveira; Centennial Asset Mining Fund LLC,Centennial Asset Brazilian Equity Fund LLC;63X Investments Ltd; 63X Master Fund; 63X Fund; WRM1 LLC; WRM2 LLC; 3BX Investments, LLC; 3BX Investment Fund I,LLC; and AUX LLC* |

| | |
|---|---|
| Tracy A. Nichols<br>tracy.nichols@hklaw.com<br>Jose A. Casal<br>jose.casal@hklaw.com<br>Louise McAlpin<br>louise.mcalpin@hklaw.com<br>**HOLLAND & KNIGHT LLP**<br>701 Brickell Avenue<br>Suite 3300<br>Miami, Florida 33131<br>Tel: (305) 374-8500<br>Fax: (305) 789-7799<br><br>Jay B. Kasner<br>Jay.kasner@skadden.com<br>Scott D. Musoff<br>Scott.musoff@skadden.com<br>**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP AND AFFILIATES**<br>4 Times Square<br>New York, New York 10036<br>Tel: 212-735-3000<br>Fax: 212-735.2000<br><br>*Counsel for Defendant Banco Itaú International* | Tracy A. Nichols<br>tracy.nichols@hklaw.com<br>Jose A. Casal<br>jose.casal@hklaw.com<br>Louise McAlpin<br>louise.mcalpin@hklaw.com<br>**HOLLAND & KNIGHT LLP**<br>701 Brickell Avenue<br>Suite 3300<br>Miami, Florida 33131<br>Tel: (305) 374-8500<br>Fax: (305) 789-7799<br><br>*Counsel for Defendants EFG Capital International Corp. and EFG Bank AG* |
| Brian J. Stack<br>bstack@stackfernandez.com<br>Sean Santini, of Counsel<br>ssantini@santinilawfirm.com<br>**STACK FERNANDEZ & HARRIS, P.A.**<br>1001 Brickell Bay Drive, Suite 2650<br>Miami, Florida 33131<br>Tel. 305.371.0001<br>Fax. 305.371.0002<br><br>*Counsel for Defendant Flavio Godinho* | Craig V. Rasile<br>Craig.Rasile@dlapiper.com<br>Harout J. Samra<br>Harout.Samra@dlapiper.com<br>**DLA Piper LLP (US)**<br>200 S. Biscayne Blvd. Suite 2500<br>Miami , FL  33131<br>Tel.  305-423-8539<br>Fax.  305-437-8131<br><br>*Counsel for Defendant Paulo Mendonça* |

| | |
|---|---|
| Donald John Hayden<br>Don@markmigdal.com<br>George T. Breur<br>George@markmigdal.com<br>**Mark Migdal & Hayden**<br>80 SW 8th Street, Suite 2185<br>Miami , FL  33130<br>Tel.  305-374-0440<br><br>*Counsel for Defendant Paulo Gouvea* | Rodney Quinn Smith , II<br>Quinn.Smith@gstllp.com<br>John D. Womack<br>Derek.Womack@gommsmith.com<br>**GST, LLP**<br>175 SW 7th Street Suite 2110<br>Miami , FL  33130<br>Tel.  305-856-7723<br>Fax. 786-220-8256<br><br>*Counsel for Defendant Luiz Carneiro* |