UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 17-CV-23051-KMW

MERIDIAN TRUST COMPANY, as
trustee, and AMERICAN ASSOCIATED
GROUP, LTD.,

              Plaintiffs,

v.

EIKE BATISTA, *et al.*

              Defendants.

_____/


**BATISTA DEFENDANTS' AND PAULO MENDONÇA'S
<u>RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE</u>**


**REED SMITH LLP**

1001 Brickell Bay Drive, 9th Floor
Miami, FL 33131
Telephone: (786) 747-0200
Facsimile: (786) 747-0299

Edward M. Mullins (FBN 863920)
emullins@reedsmith.com
Ana M. Barton (FBN 85721)
abarton@reedsmith.com
Sujey S. Herrera (FBN 92445)
sherrera@reedsmith.com

*Counsel for Batista Defendants*


**DLA PIPER LLP**

200 S. Biscayne Blvd., Suite 2500
Miami, FL 33131
Telephone: (305) 423-8500
Facsimile: (305) 437-8131

Craig Rasile (FBN 613691)
craig.rasile@dlapiper.com
Harout J. Samra (FBN 70523)
harout.samra@dlapiper.com

*Counsel for Paulo Mendonça*

Pursuant to S.D. Fla. L.R. 7.1(c), the Batista Defendants and Mendonça file this response in opposition to Plaintiffs' Motion to Strike the Motion to Dismiss for *Forum Non Conveniens* and for Other Sanctions (the "Motion to Strike") [ECF No. 127].

Plaintiffs have gone off the rails. Their frenzied efforts to distract the Court from the issues presented in the Batista Defendants and Mendonça's Motion to Dismiss for *Forum Non Conveniens* (the "Motion to Dismiss") [ECF No. 85] have deteriorated into conspiracy theories, which include frivolous and already debunked accusations of secret meetings and plots hatched by counsel for all of the defendants. Nevertheless, the Batista Defendants and Mendonça will address the myriad accusations and scattershot distortions haphazardly articulated by Plaintiffs in their Motion to Strike. The MMX Chapter 15 proceeding is not a related case to this one, has nothing to do with the factors this Court examines for any pending motion to dismiss including *forum non conveniens*, and Plaintiffs' counsel were clearly aware of the underlying MMX Bankruptcy.[1]

Plaintiffs' Motion to Strike should be denied and attorney's fees awarded to the Defendants. First, Plaintiffs have known about the MMX Bankruptcy, at the very least, since they filed the first complaint in this action on January 12, 2017 in Florida State Court. Plaintiffs' present claims to have been ignorant of the MMX Bankruptcy in Brazil are simply false. The record herein confirms this indisputable fact. Indeed, Plaintiffs mentioned the MMX Bankruptcy on numerous occasions in the Complaint. Worse, Plaintiffs falsely claimed in their Reply in Support of their Motion for Leave to File a Sur-Reply [ECF No. 126 at 7-8] that they were unaware that

---

[1]       For clarity, the Defendants refer to the bankruptcy proceeding currently pending in Brazil as the "MMX Bankruptcy" and its ancillary Chapter 15 proceeding currently pending in the United States Bankruptcy Court for the Southern District of Florida as the "MMX Chapter 15 Proceeding." Repeatedly in their Motion to Dismiss, the Plaintiffs allege that they were not aware of the MMX Bankruptcy and apparently confuse it with the MMX Chapter 15 Proceeding. *See, e.g.,* First Fed. Am. Compl. at pp. 12-17.

Defendants' expert, Marcelo Carpenter, was involved in the MMX Bankruptcy, which is a complete fabrication because Plaintiffs **actually questioned Mr. Carpenter** about this in his deposition. Defendants even tried to remind Plaintiffs of this fact in writing prior to their filing the Motion to Strike, but Plaintiffs nevertheless persisted and repeated this false representation in their most recent frivolous motion. Their lack of candor is inexcusable.

Second, as the Batista Defendants and Mendonça exhaustively set forth in their Response in Opposition to Plaintiffs' Motion for Leave to File a Sur-Reply filed on August 23, 2018 [ECF No. 125], the MMX Chapter 15 Proceeding is an ancillary proceeding to the main MMX Bankruptcy pending in Brazil and involves a completely separate company from this case. Both the MMX Bankruptcy and the MMX Chapter 15 Proceeding are unrelated to the case presently before the Court. Even if they were related in underlying facts, which they are not, the MMX Chapter 15 Proceeding is pending in a separate court – the bankruptcy court.[2] What began as a red herring has now taken the proportions of a sperm whale.

Plaintiffs' recklessness is compounded by their total and obvious disregard for the Federal Rules of Civil Procedure. The mountains of extraneous and untimely filings by Plaintiff since briefing of the Motion to Dismiss closed on July 25, 2018 – amounting now to over 1,000 pages – fill volumes and have caused the Defendants to incur substantial costs to rebut. What is now clear is that Plaintiffs are rightfully concerned that this Court is on the verge of dismissing this case in favor of Brazil, where it should have been filed in the first place, if anywhere.

Plaintiffs' Motion to Strike is essentially a request for sanctions against all Defendants that is designed to conceal their own failure to discover a totally irrelevant ancillary bankruptcy

---

[2]     The Batista Defendants and Mendonça will develop this point further below, but also adopt and incorporate the arguments concerning Chapter 15 ancillary bankruptcy proceedings in the Response in Opposition to the Motion to File Sur-Reply.

proceeding involving one of many EBX companies that filed bankruptcy in Brazil several years ago. It is inherently inconsistent that Plaintiffs never filed an appearance or a proof of claim in the original Brazilian bankruptcy involving MMX, but now claim to have an interest in the MMX Chapter 15 Proceeding, which is merely an accommodation to creditors of MMX that timely filed claims in the foreign main proceeding in Brazil. Any assets that the MMX Trustee may locate in the United States will be marshalled and distributed to creditors of MMX that timely filed claims in Brazil. If Plaintiffs filed claims in Brazil, they would have been notified of the Chapter 15 ancillary case when it was filed in May 2017. Hence, Plaintiffs are not and will never be beneficiaries of the MMX Bankruptcy. Consequently, their newfound interest in the MMX Chapter 15 Proceeding is baseless and difficult to comprehend.

Accordingly, the Batista Defendants and Mendonça respectfully request that the Court deny Plaintiff's Motion to Strike, grant attorney's fees, and enforce the applicable Rules of Civil Procedure, the Local Rules, and its Orders to close briefing on the Motion to Dismiss.

## **STANDARD**

Imposing sanctions under a court's inherent powers requires a finding of bad faith. *See Barnes v. Dalton,* 158 F.3d 1212, 1214 (11th Cir. 1998); *Peer v. Lewis*, 606 F.3d 1306, 1314-15 (11th Cir. 2010). A finding of bad faith is warranted only in cases where an attorney "knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Barnes*, 158 F.3d at 1215. "The bad faith necessary to justify a court using its inherent powers to sanction attorney conduct requires a greater showing of misconduct than the standards of objective unreasonableness under Rule 11." *Green v. Mobis Ala., LLC*, Case No. 2:12–cv–277–MEF, 2014 WL 1239136, *8 (M.D. Ala. 2014); *see also Peer*, 606 F.3d at 1315 ("the threshold of bad faith conduct 'is at least as high as the threshold of bad faith conduct for

3

sanctions under § 1927'") (internal citations omitted).

## ARGUMENT

### I.   Plaintiffs have Known about the MMX Bankruptcy Since this Case Began

Plaintiffs falsely claim throughout the Motion to Strike that they did not know about the

MMX Bankruptcy, but the record is clear that they have known about it at least since January 12,

2017, when they filed the original complaint in the State Court action (the "Original Complaint").

Indeed, Plaintiffs referred to the MMX Bankruptcy in each of the three versions of the complaint

that they have filed in this case:

- "Batista reneged on that billion dollar pledge and OGX declared bankruptcy, *swiftly followed by the bankruptcy of the satellite EBX Group companies OSX and MMX*." Compl. at para. 44, Am. Compl. at ¶ 59, and First Fed. Am. Compl. at ¶ 59.

- "OGX's satellite company, *MMX, filed for bankruptcy on October 22, 2013*." Compl. at ¶ 426, Am. Compl. at ¶ 514, and First Fed. Am. Compl. at ¶ 514.

Plaintiffs also referred to the MMX Bankruptcy in their Response in Opposition to the Motion to

Dismiss [ECF No. 91]:

- "EBX Group's mineral exploration company, *MMX, would crash, simultaneously*, for massive non-payment of taxes." *Id.* at 6.

- "*This was swiftly followed by the bankruptcies of MMX* and OSX." *Id.* at 12.

In light of these repeated references to the MMX Bankruptcy in every version of the Complaint

that they have filed to date, Plaintiffs' claims not to have known about it are utterly inexplicable.

Plaintiffs also falsely claim in their Motion to Strike that Defendants' Brazilian law expert,

Marcelo Carpenter, failed to disclose the existence of the MMX Bankruptcy during his deposition.

*See* Motion to Strike at p. 16. In fact, Carpenter **explicitly referred** to the MMX Bankruptcy during

the deposition when questioned by Plaintiffs' counsel:

Q.      Do you represent Eike in a bankruptcy case?

4

A.      Eike, himself, in a bankruptcy case, no. I guess Eike companies. But not himself.

Q.      So who did you represent in the bankruptcy?

A.      I represent OGX. *I represent MMX in insolvency proceedings.*

*See* Carpenter Deposition at p. 63 (emphasis added).[3] Plaintiffs' counsel intentionally chose not to explore or question Carpenter any further regarding the MMX bankruptcy.[4] This utter lack of interest in the MMX Bankruptcy confirms its irrelevance to this case. Regardless of the reasons for opposing counsel's indifference towards the MMX Bankruptcy during Carpenter's deposition, both counsel and presumably their clients were well aware of the MMX Bankruptcy.

In fact, not only did Plaintiffs know about the MMX Bankruptcy, as evidenced above, but they also had been monitoring it. Plaintiffs – who emphasize that they are "better financed" than the Brazilian trustee[5] – engaged a Brazilian attorney, who is also their Brazilian law expert, Marcelo Oliveira, to monitor matters arising in Brazil, which must include the MMX Bankruptcy.[6]

---

[3]     A true and correct copy of relevant transcript excerpts of the deposition of Marcelo Carpenter (the "Carpenter Deposition") is attached hereto as Exhibit 1. Mr. Carpenter also disclosed in his Second Affidavit that his "law firm represents OGX and other companies of the group in several relevant cases, including, for example, the OGX Judicial Reorganization proceeding." ECF No. 85-1 at ¶ 6.

[4]     Among Plaintiffs' many wholesale fabrications is their assertion that "Batista had lost his independent expert on *forum non conveniens* in the State Court, Professor Stanley Tucci, who was not apparently prepared to support the motion in federal court." *See* Motion to Strike at p. 16. Plaintiffs' bizarre claim that Tucci was "not apparently prepared to support the motion in federal court" is yet another flight of fancy. In fact, Tucci never served as a *forum non conveniens* expert. Tucci's affidavit relates solely to the Batista Defendants' international abstention motion, which has not yet been filed in federal court under the agreed briefing schedule.

[5]     Motion to Strike at p. 13.

[6]     *See* Oliveira Engagement Letter dated March 1, 2016, a true and correct copy of which is attached hereto as Exhibit 2 (setting forth that Mr. Oliveira was engaged to "monitor, identify, classify and report material information in connection with (a) past or current operations OGX GROUP in Brazil, (b) former directors of OGX GROUP, (c) Eike Batista and his relatives, especially for purposes of supporting any potential litigation in Brazil or abroad").

Of course, if Plaintiffs were not monitoring it, then that explains why they did not raise it earlier – it is irrelevant.

The notion that Plaintiffs were somehow deprived of the opportunity to obtain new information by coordinating with the Brazilian Trustee or reviewing filings in the MMX Bankruptcy in Brazil is both implausible and incredible. *See* Motion to Strike at p. 13. As noted above, Plaintiffs' position is directly contradicted by the Record. Plaintiffs have known about the MMX Bankruptcy since they filed the Original Complaint, and likely well before. They paid a Brazilian attorney to monitor it and even asked Defendants' expert about it during his deposition. They may try to distinguish between the MMX Bankruptcy in Brazil and the MMX Chapter 15 Proceeding, but this is a distinction without a difference because the latter is simply a derivative action of the former. Presumably, Plaintiffs never raised the MMX Bankruptcy themselves or pursued it as a line of inquiry because it was not relevant to this case, until of course it became a useful last ditch effort to derail Defendants' Motion to Dismiss.

Plaintiffs' decision to file their frivolous Motion to Strike, even after the Batista Defendants and Mendonça confirmed in writing that Plaintiffs have long known about the MMX Bankruptcy, highlights their recklessness. In a letter sent to Plaintiffs' counsel on the afternoon of September 7, 2018, many hours before they filed the Motion to Strike, counsel for the Batista Defendants and Mendonça specifically raised Plaintiffs' knowledge of the MMX Bankruptcy and their false claims concerning the Carpenter deposition.[7] Nevertheless, Plaintiffs' counsel persisted with these false claims despite referring to the letter in their Certificate of Conference. *See* Motion to Strike at p. 20.

---

[7]     A true and correct copy of the September 7, 2018 correspondence from counsel for the Batista Defendants and Mendonça to Plaintiffs' counsel is attached hereto as Exhibit 3.

## II.     The MMX Chapter 15 Proceeding is Not a "Related" Case

### A.     There are No Common Issues between this Case and the MMX Chapter 15 Proceeding

The Batista Defendants and Mendonça thoroughly addressed Plaintiffs' allegations concerning the supposedly "related" MMX Bankruptcy and MMX Chapter 15 Proceeding in their Response to the Motion for Leave to File a Sur-Reply. It bears repeating here, however, that neither the MMX Bankruptcy nor its ancillary MMX Chapter 15 Proceeding are related or similar cases under Local Rule 3.8. There are no common issues between the matters. The parties and relief available are different. Plaintiffs are not interested parties in the MMX Bankruptcy or the MMX Chapter 15 Proceeding. In fact, Plaintiffs never filed an appearance or a claim in the MMX Bankruptcy in Brazil despite knowing about that case since, at least, January 2017. Presumably, they will not file a claim in the MMX Chapter 15 Proceeding insofar as Under Title 18 of the U.S. Code, filing a fraudulent proof of claim is punishable by a fine of up to $500,000, five (5) years' imprisonment, or both. *See* 18 U.S.C. § 152(4); 18 U.S.C. § 3571.

Plaintiffs efforts to convert the MMX Chapter 15 Proceeding into a substantive matter are simply not in good faith and have evolved during the course of their belated briefing. In their Motion to Strike, they go so far as to label the Chapter 15 case a "related fraud case." *See* Motion to Strike at p. 1. Of course, it is no such thing. The MMX Chapter 15 Proceeding – like all Chapter 15 matters – is nothing more than a judicial recognition of a foreign bankruptcy in which a U.S. bankruptcy court assists in the marshaling and monetization of domestic assets for the benefit of the creditors of that estate. *See In re Condor Ins. Ltd.*, 601 F. 3d 319, 325 (5th Cir. 2010). It will not in any way involve a judicial determination of whether a fraud was committed by Batista, any of his related companies, any company or bank, or anyone else for that matter. Plaintiffs presumably know this, but have chosen to apply misleading labels as a smoke screen.

Plaintiffs fail to cite a single case in which a bankruptcy proceeding – much less, a Chapter 15 proceeding – was held to be a "related case" to a civil action. The courts of this District have held that Local Rule 3.8 is intended for "closely related case[s]." *See Vallecillo v. Wall to Wall Residence Repairs, Inc.*, 595 F. Supp. 2d 1374, 1376 (S.D. Fla. 2009) (referring to two cases filed by employees under the Fair Labor Standards Act both in the Southern District of Florida against the same defendants). Rule 3.8 must be read together with Section 2.15.00 of the Court's Internal Operating Procedures, which provide that the actions should "involve[] subject matter which is a material part of the subject matter of another action or proceeding then pending before this Court." *See* IOP 2.15.00.

Other district courts with similar "related case" rules have applied the same standard and refuse to consider cases involving "different parties making different allegations and asserting different claims, theories and arguments." *See, e.g., In re Zoran Corp. Derivative Litig.*, 511 F. Supp. 2d 986, 1001 (N.D. Cal. 2007) (court refused to take judicial notice of case because although "factually similar … they involve different parties making different allegations and asserting different claims, theories and arguments."). By any measure, like *Zoran Corp.,* the MMX Chapter 15 Proceeding involves different parties and completely different substantive and procedural postures.

Indeed, the MMX Chapter 15 Proceeding does not involve substantive claims at all. Rather, it is essentially a collection action by a Brazilian bankruptcy Trustee for MMX in Brazil whose only estate asset is a judgment against certain insiders of MMX. In fact, the United States Bankruptcy Court for the Southern District of Florida acknowledged that the only asset MMX owned in the United States was the unused portion of the retainer paid to the U.S. law firm that filed the Chapter 15 petition for recognition. *See In re: MMX Sudeste Mineracao S.A., Ch. 15 Case*

*No. 17-16113-RAM, Order Denying Objection to Recognition and Motion to Dismiss Chapter 15 Case (Bankr. S.D. Fla. Nov. 7, 2017).*[8] It was this exceptionally thin connection to South Florida, namely the unused portion of the law firm's retainer, upon which the Bankruptcy Court exclusively relied in determining that it had jurisdiction to preside over the Chapter 15 estate of MMX. Contrary to Plaintiffs' suggestions, the Bankruptcy Court did not undertake a jurisdictional analysis even remotely comparable to the minimum contacts assessment this Court will be required to conduct in this case. There is simply no comparison between the two cases from a jurisdictional standpoint. The MMX Chapter 15 Proceeding is fundamentally different from this case, which arises from the alleged fraud related to OGX, not MMX, against its bondholders.

The two principal cases cited by Plaintiffs in their Motion to Strike only emphasize how unrelated the MMX Chapter 15 Proceeding is to this case. In *Green Dev. Corp. S.A. de C.V.*, a party which sought the same discovery under 28 U.S.C. §1782 before multiple district courts failed to disclose that the same discovery had been denied in one of the other district courts. *See Green Dev. Corp. S.A. de C.V. v. Zamora*, 2016 WL 2745844, at *2 (S.D. Fla. May 10, 2016). Similarly, in *Byrne v. Nezhat*, the plaintiff asserted parallel cases in Federal and State courts and failed to notify the Federal court that its State court action had been dismissed on summary judgment. *Byrne v. Nezhat*, 261 F.3d 1075, 1116 (11th Cir. 2001). Of course, these facts could not be further from the facts presented in the case at bar because the matters are completely separate.

**B.    The MMX Chapter 15 Proceeding is Irrelevant to the Motion to Dismiss for *Forum Non Conveniens***

Plaintiffs reveal the true purpose of their onslaught to attack the Motion to Dismiss (for which briefing has been closed since July 25, 2018) by claiming that the Motion to Dismiss "could

---

[8]    A true and correct copy of the Order Denying Objection to Recognition and Motion to Dismiss Chapter 15 Case is attached to the Motion to Strike as Exhibit "G".

hardly have been put forward with a straight face" had they known about the MMX Chapter 15 Proceeding. *See* Motion to Strike at p. 15. This argument is incomprehensible. Plaintiffs present not a shred of evidence supposedly related to the MMX Chapter 15 Proceeding that is even relevant to the Court's *forum non conveniens* analysis, let alone dispositive. This comes as no surprise because one is a collateral proceeding in support of a foreign bankruptcy proceeding in Brazil involving MMX and the other – this case – involves substantive claims for fraud wrongfully brought here to determine the merits related to a separate company, OGX, asserted by bondholders of OGX.

Defendants' analysis of the *forum non conveniens* interest factors presented originally in the Response to the Motion for Leave to File Sur-Reply merits renewed consideration here. <u>First</u>, Plaintiffs have not argued that the private interest factors have changed in any way. No new witnesses or evidence have been identified in Florida. As explained above, the Bankruptcy Court's finding of ancillary jurisdiction in the MMX Chapter 15 Proceeding is not relevant to jurisdiction over Defendants in this case and will focus almost exclusively on purported U.S.-based assets that may eventually become property of the MMX bankruptcy estate in Brazil. Plaintiffs conveniently failed to disclose to the Court that the jurisdictional challenge in the MMX Chapter 15 Proceeding related to a special jurisdictional rule in the bankruptcy context – §109(a) of the Bankruptcy Code – and was based on whether a Chapter 15 proceeding may be initiated in the United States without the trustee first establishing that the debtor (in that case, MMX) has assets in the United States. *See In re: MMX Sudeste Mineracao S.A.*, Ch. 15 Case No. 17-16113-RAM, Order Denying Objection to Recognition and Motion to Dismiss Chapter 15 Case (Bankr. S.D. Fla. Nov. 7, 2017).[9] This issue was not resolved on appeal because the District Court – sitting in its appellate capacity

---

[9]     *Id.*

– dismissed the appeal because it lacked jurisdiction to review a non-final order. *See In re: MMX Sudeste Mineracao S.A.*, Ch. 15 Case No. 17-16113-RAM, Dist. Case No. 17-24308-Civ, Order Dismissing Appeal for Lack of Jurisdiction (S.D. Fla. Apr. 2, 2018) ("the Court does not view the Order as a final appealable order under 28 U.S.C. §158(a)(1). Accordingly, the Court dismisses this appeal for lack of jurisdiction.").[10] Inexplicably, Plaintiffs represented to this Court that the Bankruptcy Court and the District Court in the MMX Chapter 15 Proceeding made a jurisdictional determination. *See* Motion to Strike at p. 15. This is demonstrably false and intended to mislead this Court.

Of course, because it arises under §109(a) of the Bankruptcy Code, the existence of the MMX Chapter 15 Proceeding itself does not prove that assets belonging to the MMX bankruptcy estate are even present in Florida. Instead, in this instance, it merely represents the Trustee's effort to locate such assets. As a result, Plaintiffs' arguments related to the purported place of enforcement or execution similarly fail. That the Brazilian Trustee initiated a Chapter 15 proceeding that is ancillary to the MMX Bankruptcy does confirm the location of assets in the United States, let alone Florida. Instead, as made clear in the Bankruptcy Court's order, the Trustee is simply engaged in an exercise to locate additional assets that *may be* in the United States to include in the MMX bankruptcy estate in Brazil. In their own pleadings to date, Plaintiffs have asserted that they have been able to trace assets in numerous jurisdictions, including Panama and the Cayman Islands. The nexus and principal location of assets, however, remains Brazil.

Second, as noted previously, the MMX Chapter 15 Proceeding emphasizes the core public interests of Brazil and demonstrates the Brazilian courts' ability to prosecute such actions

---

[10]     A true and correct copy of the Order Dismissing Appeal for Lack of Jurisdiction is attached to the Motion to Strike as Exhibit "L".

effectively. The Brazilian court appointed the Brazilian Trustee and authorized him to seek assets, even piercing the corporate veil, which belies any argument by Plaintiffs that they supposedly had no recourse for fraudulent acts in the Brazilian reorganization of OGX. This case should be analyzed by the courts in the best position to interpret Brazilian law. By the admission of Plaintiffs' own expert, Oliveira, these are the Brazilian courts: "Q: And a Brazilian court would be the best place to interpret this [reorganization or bankruptcy] law? … THE WITNESS: **Yes. I mean it would be the only place**." Dep. Tr., M. Oliveira, 6/8/18 [ECF No. 118-3 at 106:15-107:1] (emphasis added).

It is telling that the Plaintiffs did not even bother to mention the *forum non conveniens* interest factors in their Motion to Strike let alone explain how the MMX Bankruptcy is related to them. Rather, they disingenuously argue that some of the parties in this case have "voluntarily appeared" to "litigate one fraud in court in Miami, in a case which has already withstood jurisdictional challenges at the bankruptcy and district court levels." *See* Motion to Strike at 15. Of course, this is not true because the substantive issue of whether a fraud occurred is not before the Bankruptcy Court in the MMX Chapter 15 Proceeding. Certain defendants appeared in the MMX Chapter 15 Proceeding to contest the jurisdiction of the Bankruptcy Court to address the ancillary proceeding. To use Plaintiffs' words, it is a wonder that they can keep a "straight face" while making such plainly false representations to the Court. *See id.* at 15.

### C. None of the Parties in the MMX Chapter 15 Proceeding Identified this Case as a Related Case

Tellingly, not one of the parties involved in the MMX Chapter 15 Proceeding ever petitioned the Bankruptcy Court for "related case" treatment with this case. *See, e.g., Webb v. Morella*, CIV.A. 10-1557, 2014 WL 3407084, at *6 (W.D. La. July 10, 2014) (court found cases were unrelated when, amongst other things, the plaintiff in the later-filed action did not list the

first-filed action as a related case), *aff'd,* 605 Fed. Appx. 428 (5th Cir. 2015). As Plaintiffs acknowledged, the parties and counsel involved in the MMX Chapter 15 Proceeding, including the Brazilian Trustee and its counsel, apparently have been aware of the existence of this case for some time. Nevertheless, none of these parties has moved pursuant to Bankruptcy Local Rule 1015-1 for joint administration of these purportedly related cases.[11] The reasons for this are obvious: the cases are not in fact related at all and, as discussed further below, the cases cannot be procedurally or administratively consolidated. Notably, Plaintiffs themselves, who only filed their appearances (presumably, to maintain appearances) in the MMX Chapter 15 Proceeding in August 2018,[12] have not sought such relief from the Bankruptcy Court. There is no relief that court can provide them. *See, e.g., In re: Wynne*, 422 B.R. 763, 770-71 (Bankr. M.D. Fla. 2010).

### D. Plaintiffs' Claims Concerning the Possible Consolidation of the Two Cases are Procedurally Absurd

As noted above, Plaintiffs falsely claim that this matter and the MMX Chapter 15 Proceeding somehow could have benefitted from "coordinated management." *See* Motion to Strike

---

[11]    Bankruptcy Local Rule 1015-1(A) provides the following:

**(1) Motion.**

**(a) Where Filed.** A party seeking joint administration of related cases shall file a motion seeking such relief in all affected cases. If all affected cases have not been assigned to the same judge, the party shall file a separate motion in each case assigned to a judge not presiding over the first-filed case, requesting transfer of each such case to the judge presiding over the first-filed case. In matters where joint administration is not at issue, a party seeking transfer of related cases to a single judge may file a motion seeking such relief in the case or cases to be transferred.

**(b) Content.** Motions for joint administration shall include a statement as to whether joint administration will give rise to any conflict of interest among the estates of the cases to be jointly administered. Motions for intra-district transfer will specify with particularity why a case or cases for which transfer is sought is or are related to a case or cases before the judge to whom transfer is requested, and why the transfer should be to that particular judge rather than the judge presiding over the case for which intra-district transfer is sought.

[12]    The reasons for this are unknown, but beg the question of whether Plaintiffs and/or their counsel, who have long known about the MMX Bankruptcy, have been coordinating with the Trustee all along.

at p. 14, n.25 (also admitting that the two cases are "separate"). However, they provide no legal, statutory, or other support for the notion that a multi-party lawsuit pending in Federal District Court can be consolidated with or managed in a coordinated manner with an unrelated Chapter 15 proceeding pending before a United States Bankruptcy Court.[13] None of the cases they cite concerning candor to the court or the "related case" rule involve bankruptcy and civil litigation matters.

Nevertheless, Plaintiffs go so far as to call for a "joint discovery schedule" with the Bankruptcy Court. However, this certainly could not have happened here. The MMX Chapter 15 Proceeding is of a completely different nature from this case. It involves an entirely different company and different parties facing different issues. In any event, the serious threshold questions raised in this case, including *forum non conveniens*, personal jurisdiction, comity, international abstention, as well as the motions to dismiss for failure to state a cause of action still would need to be resolved before discovery should begin in this case.

**III.    Plaintiffs' Egregious and Abusive Practices have Forced the Batista Defendants and Mendonça to Incur Significant Additional and Unwarranted Fees**

Plaintiffs' tactics in this case amount to a serious abuse of process. They have made no fewer than four filings since the briefing on the Motion to Dismiss closed. These filings amount to more than 1,000 pages of new material that they have introduced into the Record without the Court's approval. These tactics are wrong and flatly disregard the Federal Rules of Civil Procedure, the Local Rules, and the Court's Order setting the briefing schedule in this case [ECF No. 89], not to mention tax the Court's and the Parties' resources to address and rebut Plaintiffs' conspiracy theories. Sanctions are "especially appropriate where counsel takes frivolous legal

---

[13]     *See, e.g., In re: Wynne*, 422 B.R. 763, 770-71 (Bankr. M.D. Fla. 2010) (the bankruptcy court lacks subject matter jurisdiction to address state court and other claims that do not arise in or under Title 11 nor are related to the bankruptcy case).

positions supported by scandalous accusations." *In re Walker*, 532 F.3d 1304, 1309 (11th Cir. 2008). Plaintiffs' conduct in this case amply satisfies this test.

Plaintiffs' most recent filings have accused Defendants and their counsel of engaging in a vast conspiracy, which Defendants have denied and which Plaintiffs have no evidence to corroborate. This goes beyond speculation or good faith assumptions. Rather, these allegations are wildly irresponsible and scandalous. They have been roundly debunked, as acknowledged by Plaintiffs' counsel.[14] Rather than evidencing bad faith by Defendants, Plaintiffs make scandalous factual assertions that they fabricated from whole cloth. Plaintiffs' assertions not only fail to meet the bad-faith standard, but rather – as described below – support a finding *against* Plaintiffs for their scandalous allegations and frivolous arguments. The reasons set forth in this Response and the prior responses Defendants have been compelled to file to respond to Plaintiffs' abusive tactics amply demonstrate that good faith grounds exist for Defendants' position.

Accordingly, Plaintiffs and their counsel should be sanctioned by the Court not only for multiplying the proceedings in this case with their vast irrelevant filings in blatant disregard of Court orders and the Federal Rules of Procedure, but also for the recklessness of their conduct. *See* 28 U.S.C. §1927 ("Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and

---

[14]    *See, e.g.,* Plaintiffs' Reply to Limited Opposition of Aziz Ben Amar [ECF No. 129] (noting that Amar's counsel, Alvin Davis, had "stat[ed] [in his response to the Motion to Strike] that he was unaware of the MMX case and is not otherwise in the loop of information known by other defendants on this topic. We take him at his word that he and his client are not involved in this motion."). Every other Defendant who has responded to Plaintiffs' Motion to Strike to date expressly has stated that no meetings or coordinated effort occurred along the lines of Plaintiffs' scurrilous accusation. [ECF Nos. 128, 130-133]. Plaintiffs' flippant reply confirms the emptiness of their allegations.

attorneys' fees reasonably incurred because of such conduct.").

At the very least, granting Defendants their attorney's fees and costs incurred in connection with responding to Plaintiffs' Motion for Leave to File a Sur-Reply, this Motion to Strike, and their other unauthorized filings would make them whole for the significant additional and unwarranted briefing that they have had to support to rebut the Plaintiffs' irresponsible and wrongful assertions which are premised on practically identical allegations as those set forth in support of their motion to file a sur-reply on the *forum non conveniens* motion.[15]

## CONCLUSION

The Batista Defendants and Mendonça respectfully request that this Court:

- Deny Plaintiffs' Motion to Strike;

- Grant the Batista Defendants and Mendonça reasonable attorney's fees associated with this Motion to Strike, Motion for Leave to File a Sur-Reply, and Plaintiffs' other unauthorized filings;

- Enter an order enforcing the Rules of Civil Procedure and Local Rules by closing briefing and prohibiting additional filings by Plaintiffs; and

- Grant such other and further relief as is just and proper under the circumstances.

---

[15]   Indeed, the relief sought here is inconsistent with their request for a sur-reply. No doubt aware that they were not entitled to any such sur-reply under the circumstances, Plaintiffs now seek a second bite at the apple by using the same allegations to support a motion to strike.

September 24, 2018

Respectfully submitted,

REED SMITH LLP
1001 Brickell Bay Drive, 9th Floor
Miami, FL 33131
Telephone: (786) 747-0200
 Facsimile: (786) 747-0299


By: */s/ Sujey S. Herrera*
Edward M. Mullins (FBN 863920)
emullins@reedsmith.com
Ana M. Barton (FBN 85721)
abarton@reedsmith.com
Sujey S. Herrera (FBN 92445)
sherrera@reedsmith.com

*Counsel for Batista Defendants*

DLA PIPER LLP
200 S. Biscayne Blvd., Suite 2500
Miami, FL 33131
Telephone: (305) 423-8500
 Facsimile: (305) 437-8131


By: */s/ Harout J. Samra*
Craig Rasile (FBN 613691)
Craig.rasile@dlapiper.com
Harout J. Samra (FBN 70523)
harout.samra@dlapiper.com

*Counsel for Paulo Mendonça*

17

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on

September 24, 2018, on all counsel or parties of record on the Service List below.

*/s/ Harout J. Samra*
Harout J. Samra

## SERVICE LIST

| | |
|---|---|
| Hendrik G. Milne, Esq.<br>hmilne@aballi.com<br>Craig P. Kalil, Esq.<br>ckalil@aballi.com<br>Carlos Federico Osorio, Esq.<br>cosorio@aballi.com<br>Joshua D. Poyer, Esq.<br>jpoyer@aballi.com<br>Grant S. Smith, Esq.<br>gsmith@aballi.com<br>Renne R. Tischler, Esq.<br>rtischler@aballi.com<br>Matthew R.D. Deblinger, Esq.<br>mdeblinger@aballi.com<br>**ABALLI MILNE KALIL, P.A.**<br>2250 SunTrust International Center<br>One Southeast Third Ave.<br>Miami, Florida 33131<br>Tel: (305) 373-6600<br>Fax: (305) 373-7929<br><br>*Counsel for Plaintiffs Meridian Trust*<br>*Company, as Trustee, and American*<br>*Associated Group, Ltd.* | Alvin B. Davis, Esq.<br>Alvin.davis@squirepb.com<br>**SQUIRE PATTON BOGGS (US) LLP**<br>200 South Biscayne Boulevard, Suite 4700<br>Miami, Florida 33131<br>Tel: (305) 577-2835<br>Fax: (305) 577-7001<br><br>*Counsel for Defendant Ben Aziz Ammar* |

18

| | |
|---|---|
| Jose M. Ferrer, Esq.<br>jferrer@bilzin.com<br>Yasmin Fernandez-Acuna<br>Yfernandez-acuna@bilzin.com<br>**BILZIN SUMBERG BAENA PRICE &**<br>**AXELROD LLP**<br>1450 Brickell Avenue<br>Suite 2300<br>Miami, Florida 33131<br>Tel: (305) 374-7580<br>Fax: (305) 374-7593<br><br>*Counsel for Defendants Marcus Berto, Erick*<br>*Magno and Erick Magno, PL* | Edward M. Mullins, Esq.<br>emullins@reedsmith.com<br>Ana M. Barton, Esq.<br>abarton@reedsmith.com<br>Sujey S. Herrera<br>Sherrera@reedsmith.Com<br>**REED SMITH LLP**<br>1001 Brickell Bay Drive<br>Suite 900<br>Miami, FL 33131<br>Tel: (786) 747-0200<br>Fax: (786) 747-0299<br><br>Michael Carlinsky, Esq.<br>michaelcarlinsky@quinnemanuel.com<br>Elinor Sutton, Esq.<br>elinorsutton@quinnemanuel.com<br>Victor Noskov, Esq.<br>victornoskov@quinnemanuel.com<br>**QUINN EMANUEL URQUHART &**<br>**SULLIVAN, LLP**<br>51 Madison Avenue, 22nd Floor<br>New York, NY 10010<br>Tel: (212) 849-7000<br>Fax: (212) 849-7100<br><br>*Counsel for Defendants Eike Batista; Flavia*<br>*Sampaio; WernerBatista; Thor Batista; Olin*<br>*Batista; Luma DeOliveira; Centennial Asset*<br>*Mining Fund LLC,Centennial Asset Brazilian*<br>*Equity Fund LLC;63X Investments Ltd; 63X*<br>*Master Fund; 63X Fund; WRM1 LLC; WRM2*<br>*LLC; 3BX Investments, LLC; 3BX Investment*<br>*Fund I,LLC; and AUX LLC* |

| | |
|---|---|
| Tracy A. Nichols<br>tracy.nichols@hklaw.com<br>Jose A. Casal<br>jose.casal@hklaw.com<br>Louise McAlpin<br>louise.mcalpin@hklaw.com<br>**HOLLAND & KNIGHT LLP**<br>701 Brickell Avenue<br>Suite 3300<br>Miami, Florida 33131<br>Tel: (305) 374-8500<br>Fax: (305) 789-7799<br><br>Jay B. Kasner<br>Jay.kasner@skadden.com<br>Scott D. Musoff<br>Scott.musoff@skadden.com<br>**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP AND AFFILIATES**<br>4 Times Square<br>New York, New York 10036<br>Tel: 212-735-3000<br>Fax: 212-735.2000<br><br>*Counsel for Defendant Banco Itaú International* | Tracy A. Nichols<br>tracy.nichols@hklaw.com<br>Jose A. Casal<br>jose.casal@hklaw.com<br>Louise McAlpin<br>louise.mcalpin@hklaw.com<br>**HOLLAND & KNIGHT LLP**<br>701 Brickell Avenue<br>Suite 3300<br>Miami, Florida 33131<br>Tel: (305) 374-8500<br>Fax: (305) 789-7799<br><br>*Counsel for Defendants EFG Capital International Corp. and EFG Bank AG* |
| Brian J. Stack<br>bstack@stackfernandez.com<br>Sean Santini, of Counsel<br>ssantini@santinilawfirm.com<br>**STACK FERNANDEZ & HARRIS, P.A.**<br>1001 Brickell Bay Drive, Suite 2650<br>Miami, Florida 33131<br>Tel. 305.371.0001<br>Fax. 305.371.0002<br><br>*Counsel for Defendant Flavio Godinho* | Craig V. Rasile<br>Craig.Rasile@dlapiper.com<br>Harout J. Samra<br>Harout.Samra@dlapiper.com<br>**DLA Piper LLP (US)**<br>200 S. Biscayne Blvd. Suite 2500<br>Miami , FL 33131<br>Tel. 305-423-8539<br>Fax. 305-437-8131<br><br>*Counsel for Defendant Paulo Mendonça* |

| | |
|---|---|
| Donald John Hayden<br>Don@markmigdal.com<br>George T. Breur<br>George@markmigdal.com<br>**Mark Migdal & Hayden**<br>80 SW 8th Street, Suite 2185<br>Miami , FL 33130<br>Tel. 305-374-0440<br><br><br>*Counsel for Defendant Paulo Gouvea* | Rodney Quinn Smith , II<br>Quinn.Smith@gstllp.com<br>John D. Womack<br>Derek.Womack@gommsmith.com<br>**GST, LLP**<br>175 SW 7th Street Suite 2110<br>Miami , FL 33130<br>Tel. 305-856-7723<br>Fax. 786-220-8256<br><br>*Counsel for Defendant Luiz Carneiro* |