IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:17-CV-23051-KMW

MERIDIAN TRUST COMPANY, as trustee,
and AMERICAN ASSOCIATED GROUP, LTD.,

    Plaintiffs,
v.

EIKE BATISTA, WERNER BATISTA, *et al.,*

    Defendants.
_____/

**PLAINTIFFS' REPLY TO OPPOSITION OF MARCUS BERTO, ERICK MAGNO AND ERICK MAGNO, P.L. [D.E. 131] TO MOTION TO STRIKE MOTION TO DISMISS FOR FORUM NON CONVENIENS [D.E. 85] AND FOR OTHER SANCTIONS [D.E. 127]**

Plaintiffs reply to Defendants, Marcus Berto, Erick Magno and Magno, PL, as follows:

**Reply**

Marcus Berto and Erick Magno and their counsel admit that they knew of the Batista (MMX) Miami case. As is obvious, they did not tell the Court. They do not state when they first knew of the case. We should therefore assume that it was early on, or they would make the point in their defense that it was more recent.

This would make sense. Magno is an international asset-protection lawyer. He acted as Batista's attorney after the crash of OGX in setting up the Swiss trust through EFG on Brickell through which many tens of millions of dollars flowed.[1] To the best of our information he continued to be Batista's attorney through the crash of MMX and through the filing of this action. He may still be. As for Berto, he acted as Batista's trustee in regard to that Swiss trust.[2] They are

---

[1] He told us this face-to-face-before he was represented by counsel.
[2] Admitted to us face-to-face by Berto and Magno's joint counsel.

jointly represented, signifying no conflict between their positions. Berto and Magno have jointly pursued most of Batista's litigation initiatives, with pretty much the sole exception of the *forum non conveniens* motion. Joining in that motion would, of course, have been just too preposterous, since both of them live in Miami. That motion they let Batista advance. But they stood by silent and allowed him to do so without informing the Court of the Batista (MMX) Miami case, which was obviously of great importance to its just resolution.

Berto and Magno and their counsel assert that we knew of the fact of the Batista (MMX) Brazil bankruptcy. We agree. Of course we did. They seem to argue by extension that we should therefore, somehow, have known of the entry of the Brazilian freezing order in Minas Gerais in May 2017, predicated on a parallel fraud theory to ours, with all its many references to our own case. So, they appear to argue, by further implicit extension, we should have known of the entry of the United States-wide freezing order by Judge Mark in Miami. And we should have known of the voluntary entry into the Miami case before Judge Mark in September 2017 of substantially the same roster of Batista defendants as are here. Presumably we should have known of Judge Scola's ruling. Presumably we should have also known of the waves of financial discovery that were proceeding pursuant to Judge Mark's orders in order to allow the Brazilian trustee to seek and recover assets in Miami while discovery was stayed in our own case. Presumably we should have known that Magno, Magno, PL, and Banco Itaú were actually responding to such discovery in the bankruptcy court while arguing out of the other side of their mouths in this case that such discovery should be stayed. In fact, they say that they cannot believe that we did not know any of this. As they put it: "it is an incredible assertion for Plaintiffs to now claim that they had no knowledge concerning a matter of public record pending in their own backyard." Response, p. 2. Curious, therefore, that we made absolutely no reference to any of that in our arguments in this case. But

then this was obviously because we had no clue of any of this and the argument to the contrary is (a) ridiculous, (b) dishonest and (c) avoids the issue.

First of all, it is a ridiculous contention because, as they full-well know, we had no claim in the MMX reorganization case in Brazil.[3] We therefore had no means of being automatically advised of developments in that case, nor any reason to believe we would need to be. The MMX bankruptcy documents are in the State of Minas Gerais, not in the State of Rio de Janeiro, where the OGX proceedings were filed. The MMX proceedings are in hard copy and not electronically accessible remotely by either us or our Brazilian counsel.[4] We and they routinely scan the internet and have done so throughout this case. There were no and there ***still*** are no Brazilian press reports about the Brazilian MMX freezing order, let alone the U.S. freezing order, that we can find online. These developments are still apparently unknown to the international financial press and even to the Brazilian public. Discovery has been stayed, so that avenue of exploration was closed off. The first inkling that we had of anything in the MMX bankruptcy tying into our own case was on August 1, 2018 when we learned of Judge Scola's April 2, 2018 denial of the Batista (MMX) Miami case appeal. We followed up immediately and on August 3, 2018 filed our notice to the Court. [D.E. 120].

---

[3] In distinction to the Batista (MMX) Miami case where we could file as a "party-in-interest," which we are, but which does not signify necessarily that we have a direct claim in the estate. The United States Court of Appeals for the Seventh Circuit has described a party in interest as "anyone who has a legally protected interest that could be affected by a bankruptcy proceeding." *In re James Wilson Associates*, 965 F.2d 160, 169 (7th Cir.1992). *See also, In re Irish Bank Resolution Corporation Limited*, 559 B.R. 627 (Bankr. D. Del. 2016) and *In re Zhejiang Topoint Photovoltaic Co., Ltd.*, 2015 WL 2260647 (Bank. D. N.J. May 12, 201), each applying the "party-in-interest" standard of 11 U.S.C. Section 1109(b) in Chapter 15 cases.

[4] Since learning of the relevance of papers filed in those proceedings, our Brazilian counsel have just now secured a complete copy of the filings. They extend to some 58 volumes containing 12,414 pages. We have not yet had a chance to review them or identify further documents of relevance to the proceedings before this Court.

Second, this line of argument is dishonest. It was obvious to Berto and Magno and their counsel that we did *not* in fact know of the Batista (MMX) Miami case. Had we known, we would obviously have argued the fact of its existence in every context where it was relevant. Had we known, how could any advocate possibly ***not*** in the course of this case have made front and center the facts of and the multiple relevant findings in the Brazilian freezing order? How could we possibly ***not*** have discussed the effect of Judge Mark's United States-wide freezing order on Batista's and Centennial (Nevada)'s assets in the context of this case? How could we possibly ***not***, in the course of the *forum non conveniens* argument, have pointed out that Batista, his family members and controlled companies had appeared in that companion case in Miami? How could we possibly ***not***, in that same context, have pointed out that the Brazilian Court had sent the Trustee off to Miami to secure effective relief, since Batista had bankrupted everything in Brazil? How could we possibly ***not***, in arguing against a stay on discovery, have pointed out that Judge Mark had already authorized the sort of discovery we were seeking and such production was underway?

Of course we did not know. And it was very obvious to Berto and Magno and their counsel that we did not, in fact, know. And we can see from the fact that they and Itaú – who alone among the subpoenaed parties in the Batista (MMX) Miami case negotiated confidentiality orders[5] - were doing their best to keep us, and this Court, from finding out about the Batista (MMX) Miami case, and, no doubt, holding their breath that their luck would hold.

## **The Duty of Candor to the Court**

But most of all this sort of "how could you not have known" and "it's your own fault" argument is beside the point. Local Rule 3.8 mandates disclosure of related or similar cases. The Batista (MMX) Miami case is, on any straightforward analysis, a "similar" or "related" case and

---

[5] Which they did in May 2018.

should have been disclosed under that rule alone. Now, we can have a cheese-paring debate over the words of the Rule and on how narrowly that Rule can be construed. It is a hollow argument on their side, but they attempt it.

But there is a much broader duty that lies beyond Rule 3.8 which is at the heart of our motion, which these Defendants have clearly breached, and for which they have absolutely no excuse: their breach of their duty of candor to the Court. This is the main issue on this motion and the one that they fail to make any real attempt to deal with, relegating it to a simple throw-away in the last six lines of their response. The reason why is understandable: there is no defense. As we stated in the motion:

> The Rule 3.8 duty is, however, the narrower duty. It exists alongside a much broader duty: the duty owed by all attorneys, as officers of the court, of absolute candor to the court. This entails a "***continuing duty*** to inform the Court of ***any*** development which may ***conceivably*** affect the outcome of litigation." *Byrne v. Nezhat*, 261 F.3d 1075, 1117 (11th Cir. 2001).[6] This is an extremely broad command. The pendency of the MMX case cuts against the defense positions that Batista and all other defendants in this case wished to take. However, the lawyer's paramount duty, as an officer of the Court in such circumstances is to proactively disclose "*any*" bad information which "*conceivably may*" affect results. *After* such disclosure, the lawyer may, of course, try to spin those bad facts as best he or she can. But failing to disclose such relevant facts to the Court constitutes a misrepresentation by omission to the Court and to the other litigants and it leads to unnecessary effort, delay, expense and wrong and unjust results. Those who make motions without disclosure of relevant facts obviously do so in breach of this duty. But those who know, who stand silent while others speak, are equally culpable. Failing to disclose relevant information means that some litigants are holding cards up their sleeve and the rest of us – and the Court – are playing with less than a full deck. Stated baldly, this is cheating, bad faith and a fraud on the Court, and the Court has the inherent power to check and remedy such abuses.[7]

---

[6] [footnote in the original] *And see, e.g. Green Dev. Corp. S.A. de C.V. v. Zamora*, 2016 WL 2745844, *3 (S.D. Fla. May 10, 2016) ("Quite apart from its continuing duty arising under Local Rule 3.8, counsel is bound by Federal Rule of Civil Procedure 11, the Florida Rules of Professional Conduct, and a general duty of candor to the Court").

[7] [footnote in the original]. *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1545–46 (11th Cir. 1993) (internal quotations and citations omitted) ("[D]eeply rooted in the common law tradition is the power of any court to manage its affairs [which] necessarily includes the authority to impose reasonable and appropriate sanctions upon errant lawyers practicing before it. . . . A court may

5

The sweep of the candor rule is extremely broad. The bar set for mandatory disclosure to the Court is extremely low. And the duty is continuing. The 11th Circuit's formulation is that it is a "***continuing duty*** to inform the Court of ***any development*** which ***may conceivably affect*** the outcome of litigation." This rule is not confined to just the pendency of "similar or related" cases. It extends to every "development." The rule does not require that the "development" have any certain or even probable effect on the outcome of the case. This formulation extends to any development of any kind which stands any possible chance at all of affecting the outcome. If the "development" in question possibly falls under the rule, it must be disclosed. The point of candid disclosure is so that an opposing advocate may make use of all adverse facts and the Court thereby reach a just result. We all have a high duty to the client. But our highest duty, as officers of the Court, is to the Court itself and to assist it in achieving just results. As the 11th Circuit has trenchantly commanded:

> All attorneys, as "officers of the court," owe duties of ***complete candor*** and ***primary loyalty*** to the court before which they practice. An attorney's duty to a client can never outweigh his or her responsibility to see that our system of justice functions smoothly. This concept is as old as common law jurisprudence itself. In England, the first licensed practitioners were called 'Servants at law of our lord, the King' and were absolutely forbidden to "decei[ve] or beguile the Court." In the United States, the first Code of Ethics, in 1887, included one canon providing that "the attorney's office does not destroy ... accountability to the Creator," and another entitled "Client is not the Keeper of the Attorney's Conscience." … [T]oo many attorneys have forgotten the exhortations of these century-old canons. Too many attorneys, like defense counsel in this case, have allowed the objectives of the client to override their ancient duties as officers of the court. In short, they have sold out to the client …. We must return to the original principle that, as officers of the court,

---

appropriately sanction a party or attorney who shows bad faith by delaying or disrupting the litigation"); *Wachovia Bank v. Tien*, 406 Fed.Appx. 378, 382-83 (11th Cir. 2010) ("A finding of bad faith is warranted where the individual knowingly or recklessly raises a frivolous argument, [or] argues a claim . . . [that] delays or disrupts the litigation," and a "district court clearly acts within its discretion when it fashions a sanction which is a direct response to the harm that the bad-faith conduct caused"). This latter case, where we represented a number of Tien-family companies before Judge Gold lead to the entry of a $3.4 million sanction against an opposing defendant.

>  attorneys are servants of the law rather than servants of the highest bidder. We must rediscover the old values of our profession. The integrity of our justice system depends on it.

*Malautea*, 987 F.2d at 1546-47 (internal citations omitted) (emphasis added).

The defendants make no attempt, even now, at candor. They attempt to characterize the Batista (MMX) Miami case as just some routine bankruptcy case pending in Miami, involving another company, totally unconnected to this one, where the Trustee is simply marshalling assets, and is thus of no conceivable moment here. But this is just not accurate or honest. You cannot avoid a duty to disclose by omitting, mischaracterizing and minimizing the facts. This attempt at minimization, in itself, stands the duty of candor on its head. The duty of "complete candor and primary loyalty to the court before which they practice" requires of attorneys much more than this. The standard is not whether an attorney, by emphasizing some facts and hiding others could, as an exercise in advocacy, manage to persuade a Court that some particular development might "conceivably *not*" affect the outcome of a case. What is required is a cold, hard, objective read of all the facts. And if the development might possibly have an effect on the outcome, it should be disclosed. It is really that simple. That is what the duty of "complete candor" and "primary loyalty to the Court" requires.

On a cold hard read, all advocacy aside, the MMX bankruptcy was a fraudulent bankruptcy. A Brazilian judge found that the MMX bankruptcy was the result of a fraudulent scheme to cheat creditors perpetrated by Eike Batista and his controlled companies. She further found that the MMX fraud appeared to be part of an overarching EBX Group fraud, following the same *modus operandi* as in our own case. In her rationale for giving the swingeing relief that she did, she quoted copiously from the facts and evidence in our own case as probative of a parallel fraud. On this basis she took the extraordinary step of piercing the corporate veil of MMX and up through a

7

couple of levels of holding companies, to and including Centennial (Nevada) and ultimately to Eike Batista at the apex. (Both of these, of course, are defendants here). She held them all jointly liable for the $300 million shortfall in the bankruptcy. She froze and attached all their assets in Brazil. Since Batista had stripped the Brazilian company of all its assets, she sent the Trustee off to Miami to chase the assets here and file whatever lawsuits were necessary to hold all involved accountable. Judge Mark then entered an order freezing all assets of Batista and Centennial (Nevada) throughout the United States. Soon after, Eike Batista, and all his relatives and controlled companies who are defendants here, voluntarily piled in to protect their Miami interests. Every one of those developments should have been disclosed to the Court. And every day that went by without disclosure, allowing the opposing parties and the Court to labor in ignorance of those facts, was another day that the continuing duty of candor to the Court was breached.

## **Conclusion**

This was a conscious and coordinated strategy to advance the interests of lawyers' clients at the expense of justice. The plan, in which Berto and the Magno Defendants played their part, was to try to get the case dismissed to Brazil, omit any mention of the Batista (MMX) Miami case, which would probably torpedo any such attempt, if known, and try to cut off discovery in the interim to restrict the information available for any decision. They were quite content to allow this Court to reach such a result in ignorance of the salient facts.

Berto and the Magno defendants, who live and work in Miami, obviously could not plausibly advance the *forum non conveniens* motion. But they would certainly benefit if it succeeded. The best that they could do to help was to stand silently by, making no mention of the Batista (MMX) Miami case, while their Batista co-Defendants and Mendonça attempted the *forum*

8

*non conveniens* motion, letting the movants argue that their co-Defendants' silence stood for acquiescence.

For maximum chances of success on the *forum non conveniens* motion, it was important that the Batista (MMX) Miami case information be "compartmentalized" to the greatest extent possible. Had the Court known of the Batista (MMX) Miami case, not only would the *forum non conveniens* motion have been pointless, the very fact that discovery was proceeding in a companion case in Miami would have destroyed the logical basis for any stay on discovery. To this end, Mr. Berto and the Magno Defendants spearheaded a concerted initiative to stay discovery, which proved successful. [D.E. 55]. In sum, all played their various parts in hiding developments that would have an effect on the outcome of this case from the Court and all should be subject to appropriate sanctions.

As we said in our moving papers, no sanctions motion is a light matter for anyone involved. We believe, strongly, that our clients have been prejudiced by the Defendants' behavior. Apparently, most of the Defendants believe that they were justified in failing to draw the pendency of the Batista (MMX) Miami case to the Court's, and our, attention. We suggest that it would be highly desirable that all counsel involved be able to present their separate reasons directly, in open court, as to why they believe they were justified in their actions, where the Court may direct any question to any attorney which it believes to be material, and thus develop a full record for appropriate relief and further proceedings. The Plaintiffs therefore respectfully emphasize their request for oral argument on this motion.

Respectfully submitted,

ABALLI MILNE KALIL, P.A.
*Counsel for Plaintiffs*
2250 SunTrust International Center
One Southeast Third Ave.
Miami, FL 33131
Phone: (305) 373-6600
Fax: (305) 373-7929

*s/ Hendrik G. Milne*
Hendrik G. Milne
Florida Bar No.: 335886
Craig P. Kalil
Florida Bar No.: 607282
Joshua D. Poyer
Florida Bar No.: 653349

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on this 25th day of September, 2018, a true and correct copy of the foregoing was electronically filed via ECMF filing Portal, which will serve this document on all counsel of record via this Court's e-service system.

*s/ Hendrik G. Milne*
Hendrik G. Milne