UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 17-23051-WILLIAMS

MERIDIAN TRUST COMPANY, as Trustee,
and AMERICAN ASSOCIATED GROUP, LTD.

    Plaintiffs,

vs.

EIKE BATISTA, *et al.*

    Defendants.
_____/

## ORDER

**THIS MATTER** is before the Court on two motions to dismiss Plaintiffs' complaint (the "Complaint") filed by defendants, Marcus Berto, Erick Magno and Erick Magno P.L., (DE 82) and Werner Batista (DE 84) (collectively, the "Miami Defendants") to which Plaintiffs, Meridian Trust Company ("Meridian") and American Associated Group, Ltd. ("AAG") filed a response (DE 91) and the Miami Defendants filed replies (DE 94; DE 95). For the reasons set forth below, the Miami Defendants' motions to dismiss (DE 82; DE 84) are **GRANTED** and the claims against the Miami Defendants are **DISMISSED WITHOUT PREJUDICE.**

I.    **BACKGROUND**[1]

This case arises out of a dispute over several investments that Plaintiffs made in Eike Batista's oil exploration company OGX. Plaintiffs are foreign entities that held investments on behalf of an elderly Floridian and his family members. (DE 75 ¶¶ 3-5).

---

[1] For practical reasons, the Court copies the relevant portions of the Background section in the Court's Order granting the Bank Defendants' motion to dismiss (DE 139).

Defendants are Eike Batista, a Brazilian national and owner of several companies incorporated for the purpose of developing an oil exploration venture in Brazil; Batista's oil-exploration related companies ("EBX Group"); certain of Batista's family members; certain of Batista's business associates; and the two banking entities that held some of Batista's accounts. (DE 75 ¶¶ 6-35). Specifically, Berto was the CEO of LLX (EBX Group member), the Magno Defendants are Florida lawyers who assisted Batista in setting up trust accounts in Miami, and Werner Batista is Eike Batista's brother, who held directorship positions in several EBX Group companies.

In 2007, the Brazilian government announced it would auction off drilling leases to companies that wished to explore for oil in what was promised to be "some of the richest deep-water oil fields" in the Brazilian coast. (DE 75 ¶ 189). According to the Complaint, Batista raised approximately $1.3 billion dollars in private equity to bid for the project but just before the auction the Brazilian government withdrew the deep-water fields from play and, instead, auctioned some old shallow-water fields that were generally viewed as "worthless." (DE 75 ¶¶ 190-191). Nonetheless, Batista moved forward with the bid and was awarded the exploratory concession for twenty-one exploratory blocks. (DE 75 ¶¶ 192-194). In order to carry out this undertaking, Batista, through the EBX Group, had to raise millions of dollars in capital from the investing public through both private and public security offerings. (DE 75 ¶¶ 200, 203, 253, 341, 427, 431, 432, 445, 455). Thus, between 2008 and 2013, Batista and other co-defendants ran a targeted campaign to induce investors (mainly U.S. investors) to invest in OGX, even though they knew that the project would ultimately fail. (DE 75 ¶ 202). Throughout the campaign, Batista and some of his co-defendants made a number of statements that were either misleading or false

to induce investors into financing the project. (*Id.*). Some of these representations included:

- False statements set forth in the "Material Facts"[2] of EBX Group companies, indicating, for example, that (i) OGX was sitting on as much as 4.8 billion barrels of oil; (ii) OGX had struck oil in the Vesuvio oilfield, which was expected to produce between 500 million and 1.5 billion barrels of recoverable oil; (iii) OGX discovered between 400 million and 500 million barrels of oil in the "Pipeline Formation" oilfield; and (iv) OGX set a production target of 1.4 million barrels per day by 2019, based on the discovery of a new oil field. (DE 75 ¶¶ 222, 226, 239, 257).

- Statements made during an appearance on the Charlie Rose TV show that they had discovered "a hundred billion barrels of recoverable oil." (DE 75 ¶ 264).

- Statements made during a broadcasted video interview where Batista claimed that OGX had "the best exploratory blocks in the world" with "one trillion dollars-worth" of oil and that the company was worth up to "$100 billion dollars." (DE 75 ¶ 269).

- Announcement of significant oil discoveries during a private meeting in Miami with a group of high-net-worth investors. (DE 75 ¶ 286).

- Statement made by Batista to reporters (published by Bloomberg) that major Chinese oil companies were bidding for OGX assets. (DE 75 ¶ 289).

- Statement made by defendant Mendonca in a press release that OGX's net potential resources in "recoverable oil" were 10.8 billion barrels. (DE 75 ¶ 303).

Batista and some of his co-defendants knew that these statements were untrue. An internal OGX Joint Task Force had concluded in September 2012 that very little oil was recoverable, and that most of the oil was contaminated, which would make its extraction difficult. (DE 75 ¶ 377). The Task Force had also concluded, "that even in the best-case scenario, the company had a negative value of about one billion dollars." (DE

---

[2] Material Facts are public disclosures required by Brazilian law whereby directors of public companies are required to disclose any events that might affect equity and debt investor decisions to buy or sell stock in that company. (DE 75 ¶ 205).

3

75 ¶ 377). Nevertheless, Defendants failed to disclose this information. Consequently, in 2013, through an investment adviser, Plaintiffs invested in OGX bonds. (DE 75 ¶ 58).

Confronted with this dire economic reality, Batista began to sell chunks of OGX shares in May 2013. (DE 75 ¶ 468). On July 1, 2013, OGX finally announced that a number of its wells were unproductive and that none of its prior projections should be relied upon by prospective investors. (DE 75 ¶ 476). Meanwhile, Batista and some of his co-defendants were moving assets from their EBX Group companies to other companies, through bank accounts held with the Bank Defendants (DE 75 ¶¶ 496, 518):

- On September 24, 2012, defendant 63X Master Fund transferred $1.7 million from its account at Itau to 63X Master Fund at Morgan Stanley & Co. (DE 75 ¶ 476);

- On February 4, 2013, 63X defendant Master Fund transferred $1.5 million from its account at Itau to 63X Master Fund at JP Morgan Chase, N.A. (*Id.*);

- On February 12, 2013, defendant 63X Master Fund transferred $6.4 million from its account at Itau to defendant Aux Luxembourg at Itau Unibanco S.A. – Nassau Branch. (*Id.*);

- On June 24, 2013, defendant 63X Master Fund transferred $30.8 million from its account at Itau to defendant Centennial Delaware also at Itau. (*Id.*); and

- On November 21, 2014, defendant 63X Master Fund transferred $13 million from its account at Itau to defendant Aux LLC also at Itau. (*Id.*).

Additionally, according to the Complaint, in August 2013, Batista and his co-defendant family members set up a family trust in Miami with the assistance of the Miami Defendants. (DE 75 ¶¶ 169-174). More than $70 million flowed through the trust, some of which was transferred to trust accounts at EFG. (DE 75 ¶ 168). Based on these facts, Plaintiffs brought the instant lawsuit against the Miami Defendants.

## II.  LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court's consideration is limited to the allegations presented. *See GSW, Inc. v. Long Cty.*, 999 F.2d 1508, 1510 (11th Cir. 1993). All factual allegations are accepted as true and all reasonable inferences are drawn in the plaintiff's favor. *See Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010); *see also Roberts v. Fla. Power & Light Co.*, 146 F.3d 1305, 1307 (11th Cir. 1998). Nevertheless, while a plaintiff need not provide "detailed factual allegations," the allegations must consist of more than "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted). "[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal.'" *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). The "[f]actual allegations must be enough to raise a right of relief above the speculative level." *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 545).

In addition to the requirements of *Twombly*, *Iqbal*, and Federal Rule of Civil Procedure 12(b), causes of action sounding in fraud are subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b). *See Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007). That rule provides that "[i]n alleging of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake" but that "[m]alice, intent, knowledge, and other conditions

5

of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Consequently, "[t]o satisfy the Rule 9(b) standard, [fraud claims] must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud." *Ambrosia Coal*, 482 F.3d at 1316-17 (citing *Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1380-81 (11th Cir. 1997)).

III. **DISCUSSION**

### A. Common Law Fraud, Florida RICO, and False Advertisement Claims Against Berto and Werner

The elements of Florida common law fraud are: (1) a false statement of material fact; (2) Defendant's knowledge that the statement is false; (3) Defendant's intention that Plaintiffs rely on the statement; and (4) injury to Plaintiffs acting in reliance on the statement. *Bailey v. Trenam Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, P.A.*, 938 F. Supp. 825, 829 (S.D. Fla. 1996). Fraud by omission, however, requires Plaintiffs to prove that defendants (1) concealed or failed to disclose a material fact; (2) knew or should have known the material fact should be disclosed; (3) acted in bad faith; (4) knew the failure to disclose the material fact would induce the Plaintiffs to act; (5) had a duty to disclose the material fact; and (6) the Plaintiffs detrimentally relied on the misinformation. *R.J. Reynolds Tobacco Co. v. Martin*, 53 So.3d 1060, 1068–69 (Fla. 1st DCA 2010) (*citing Friedman v. Am. Guardian Warranty Servs., Inc.*, 837 So.2d 1165, 1166 (Fla. 4th DCA 2003); *Gutter v. Wunker*, 631 So.2d 1117, 1118 (Fla. 4th DCA 1994)). To satisfy Rule 9(b), Plaintiffs need to allege the elements of fraud with particularity, including allegations that they actually relied on the misrepresentations or omissions. *In re Cascade Int'l Sec.*

*Litig.*, 840 F. Supp. 1558, 1571 (S.D. Fla. 1993), on reconsideration, 894 F. Supp. 437 (S.D. Fla. 1995).

The Florida RICO Act makes it "unlawful for any person ... [e]mployed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of criminal activity...." Fla. Stat. § 772.103(3). Thus, to recover under RICO, a civil plaintiff must establish that defendant (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two racketeering acts. *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1348 (11th Cir. 2016).[3] Additionally, plaintiff must show "(1) the requisite injury to 'business or property,' and (2) that such injury was 'by reason of' the substantive RICO violation." *See id*; *O'Malley*, 599 So. 2d at 1000 ("We hold, therefore, that indirect injuries, that is, injuries sustained not as a direct result of predicate acts under the Florida Racketeer Influenced and Corrupt Organizations Act, Chapter 895, Florida Statutes (1991), will not allow recovery under Florida RICO"). "The connection between the racketeering activity and the injury can be neither remote, purely contingent, nor indirect." *Ray*, 836 F.3d at 1349. Thus, to establish proximate cause, the injury involved in fraud cases must be caused by reliance on the defendant's fraudulent misrepresentations. *Super Vision Int'l, Inc. v. Mega Int'l Commercial Bank Co.*, 534 F. Supp. 2d 1326, 1339 (S.D. Fla. 2008). Further, because each of the predicate acts alleged by Plaintiffs requires proof of scienter, in order to survive the motions to dismiss, Plaintiffs must plead the elements of the predicate acts

---

[3] "Since Florida RICO is patterned after federal RICO, Florida courts have looked to the federal courts for guidance in interpreting and applying the act. Therefore, federal decisions should be accorded great weight." *O'Malley v. St. Thomas Univ., Inc.*, 599 So. 2d 999, 1000 (Fla. 3d DCA 1992).

with specificity. *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 949 (11th Cir. 1997) ("A RICO plaintiff's allegations of scienter cannot be merely conclusory and unsupported by any factual allegations.").

Finally, under Florida law "[i]t shall be unlawful for any person to make or disseminate or cause to be made or disseminated before the general public of the state, or any portion thereof, any misleading advertisement." Fla. Stat. Ann. § 817.41 (West). Section 817.40(5) defines "misleading advertising" as follows:

> The phrase "misleading advertising" includes any statements made, or disseminated, in oral, written, electronic, or printed form or otherwise, to or before the public, or any portion thereof, which are known, or through the exercise of reasonable care or investigation could or might have been ascertained, to be untrue or misleading, and which are or were so made or disseminated with the intent or purpose, either directly or indirectly, of selling or disposing of real or personal property, services of any nature whatever, professional or otherwise, or to induce the public to enter into any obligation relating to such property or services.

Fla. Stat. Ann. § 817.40 (West). Additionally, "misleading advertising is a particularized form of fraud. In order to establish their claim for misleading advertising under section 817.41(1) ... the [plaintiffs] will be required to prove each of the elements of common law fraud in the inducement, including reliance and detriment." *Rollins, Inc. v. Butland*, 951 So. 2d 860, 877 (Fla. 2d DCA 2006). Accordingly, a claim for false advertisement under Florida law must be pled with particularity. *See* Fed. R. Civ. P. 9(b); Fla. R. Civ. P. Rule 1.120.

Plaintiffs' claims for common law fraud, RICO violations and false advertisements essentially rely on the same set of facts. Plaintiffs claim that Berto committed fraud by omission; by failing to correct his co-defendants' misrepresentations. In their response to the motions to dismiss, they argue that, as CEO of LLX, Berto knew that OGX was

insolvent and should have disclosed this information. Additionally, Plaintiffs argue that because Werner Batista held multiple board positions with several of the EBX Group companies, he is liable for the misrepresentations made by those companies. Finally, Plaintiffs contend that the EBX Group was a joint venture and, therefore, Berto and Werner are liable for the misrepresentations made by other members of the joint venture. Berto and Werner argue that Plaintiffs have failed to state a claim because they have not pled with particularity that they actually relied on any particular statements. Instead, they argue, Plaintiffs are invoking a fraud on the market theory[4], which is not recognized by Florida law.

As a preliminary matter, Plaintiffs do not respond to several of Berto's and Werner's arguments. For example, Plaintiffs do not respond to Berto's argument that he had no duty of disclosure to Plaintiffs. They also do not respond to Berto's and Werner's argument that Plaintiffs lack RICO standing. *See Hudson v. Norfolk Southern Ry. Co.*, 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001) ("When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim

---

[4] The Eleventh Circuit has described the fraud on the market theory as follows:

> A "fraud on the market" occurs when a material misrepresentation is knowingly disseminated to an informationally efficient market. Just as an efficient market translates all available truthful information into the stock price, the market processes the publicly disseminated falsehood and prices it into the stock as well. The market price of the stock will then include an artificial "inflationary" value—the amount that the market mistakenly attributes to the stock based on the fraudulent misinformation. So long as the falsehood remains uncorrected, it will continue to taint the total mix of available public information, and the market will continue to attribute the artificial inflation to the stock, day after day.

*FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1310 (11th Cir. 2011) (internal citations omitted).

9

abandoned"); *Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n. 1 (5th Cir. 2006) (finding that plaintiff abandoned claim by failing to defend it in response to a motion to dismiss).

In any event, Plaintiffs do not identify in the Complaint the specific misrepresentations made by each particular defendant that Plaintiffs relied upon and caused their injuries, as required to state claims for common law fraud, RICO violations and false advertisement. *See In re Sahlen & Assocs., Inc. Sec. Litig.*, 773 F. Supp. 342, 353 (S.D. Fla. 1991) (dismissing common law fraud claim where the complaint did not specify which document plaintiffs relied upon); *In re Cascade Int'l Sec. Litig.*, 840 F. Supp. at 1571 (same); *Super Vision Int'l, Inc.*, 534 F. Supp. 2d at 1339 (dismissing wire fraud RICO claim where plaintiff failed to allege that the injury was caused by plaintiff's reliance on defendant's alleged misrepresentations); *Palmas Y Bambu, S.A. v. E.I. Dupont De Nemours & Co.*, 881 So. 2d 565, 570 (Fla. 3d DCA 2004) ("[W]hen the alleged predicate act is mail or wire fraud, the plaintiff must have been a target of the scheme to defraud and must have relied to his detriment on misrepresentations made in furtherance of that scheme."); *Rollins, Inc. v. Butland*, 951 So. 2d 860, 877 (Fla. 2d DCA 2006) ("misleading advertising is a particularized form of fraud. In order to establish their claim for misleading advertising under section 817.41(1) ... the [plaintiffs] will be required to prove each of the elements of common law fraud in the inducement, including reliance and detriment."); *AT&T Mobility, LLC v. Digital Antenna, Inc.*, No. 09-60639-CIV, 2010 WL 11506068, at *18 (S.D. Fla. Feb. 9, 2010) (finding that plaintiffs who are not competitors of the advertiser must show reliance on the allegedly false advertising).

The Court agrees that the Complaint, in its current iteration, seems to be pleading a fraud on the market theory. Although Plaintiffs contend that they relied on Defendants'

misrepresentations, Plaintiffs have not alleged actual reliance with sufficient specificity. The Complaint does cite to alleged misleading Material Facts, press releases, interviews and television shows and describes the nature of the statements and, in some instances, the persons who disseminated them. However, the Complaint never identifies which of those statements the Plaintiffs or the Plaintiffs' investment advisor relied upon, or whether they relied on each and all of them. Plaintiffs argue that the claim that their investment advisor, "in reliance on the overall picture painted by BATISTA" and "in continued reliance on the vaunted future profitability of OGX," invested in OGX bonds is sufficient to satisfy the requirements of 9(b). (DE 75 ¶ 427,428, 445, 447, 465, 474). The Court disagrees. This broad-brush characterization, while appropriate in a "fraud on the market" case where reliance is presumed, is insufficient where particular reliance on particular statements or documents is required. See In re Sahlen & Assocs., Inc. Sec. Litig., 773 F. Supp. at 353; In re Cascade Int'l Sec. Litig., 840 F. Supp. at 1571.

Plaintiffs' lack of specificity regarding Berto's and Werner's commission of the predicate RICO acts is similarly fatal. In cases with multiple defendants, it is critical that Plaintiffs specifically identify which statements they relied upon in advancing a RICO claim. See Ambrosia Coal & Const. Co., 482 F.3d at 1317 ("In a case involving multiple defendants ... the complaint should inform each defendant of the nature of his alleged participation in the fraud."); see also Leisure Founders, Inc. v. CUC Int'l, Inc., 833 F. Supp. 1562, 1575 (S.D. Fla. 1993) ("Where multiple parties are charged with fraud, the complaint must distinguish among defendants and specify their respective roles in the fraud. The allegations must alert defendants to the precise misconduct with which they are charged."). Otherwise, Defendants do not have sufficient notice to prepare a proper

response. Therefore, Plaintiffs have not stated a claim for common law fraud, RICO violations or false and misleading advertisement.

## B. Civil Theft Claim against Berto and Werner

To state a claim for civil theft under Florida law, Plaintiffs must allege an injury resulting from a violation of the criminal theft statute. Fla. Stat. § 812.014.11. To do this, Plaintiffs must allege that Berto and Werner (1) knowingly (2) obtained or used, or endeavored to obtain or use, Plaintiffs' property with (3) "felonious intent" (4) either temporarily or permanently to (a) deprive Plaintiffs of its right to or a benefit from the property or (b) appropriate the property to Berto's and Werner's own use or to the use of any person not entitled to the property. *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1270 (11th Cir. 2009). Moreover, "injury can only be established if it is shown that the victim has a legally recognized property interest in the items stolen." *Balcor Prop. Mgmt., Inc. v. Ahronovitz*, 634 So. 2d 277, 279 (Fla. 4th DCA 1994). Finally, "[f]or money to be the object of conversion there must be an obligation to keep intact or deliver the specific money in question, so that money can be identified." *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1056 (Fla. 3d DCA 2008).

Berto and Werner argue that Plaintiffs' civil theft claim must fail because Plaintiffs did not allege that they ever gave Berto or Werner "an identifiable sum of money to keep in a separate account" or that Defendants were "required to keep Plaintiffs' investment intact." (DE 82 at 17). Werner also argues that the Complaint contains no allegations as to the requisite element of criminal intent. Berto's and Werner's argument relies primarily on *Gasparini*, where a Florida appellate court found the defendant was not liable for conversion or civil theft.

12

The Court finds, however, that *Gasparini* is inapposite; the decision was predicated on a contractual relationship between the parties and, in this case, there is no allegation of any contract between Plaintiffs and the Miami Defendants. In cases that do not involve a contractual relationship, Florida appellate courts have found that investments made in reliance on fraudulent representations are sufficiently identifiable to constitute the basis of a claim for civil theft. *See Zinn v. Zinn*, 549 So.2d 1141 (Fla. 3d DCA 1989) (affirming damages for civil theft and finding that Plaintiffs' investment in oil drilling operation, which defendants knew was futile, was identifiable property).

Nonetheless, the Court finds that Plaintiffs have failed to state a claim. Although Plaintiffs allege that Berto and Werner participated in the fraudulent misrepresentations and that based on the "overall picture painted by BATISTA," Plaintiffs invested in OGX bonds, they have not alleged or explained how Berto and Werner, who had no role in OGX, "obtained" or "used" their property. Therefore, Plaintiffs' allegations are insufficient to state a claim. *See Rogers v. Nacchio*, No. 05-60667-CIV, 2006 WL 7997562, at *12 (S.D. Fla. June 6, 2006), aff'd in part, appeal dismissed in part, 241 F. App'x 602 (11th Cir. 2007) (dismissing claim where "Plaintiffs make no allegation that the [ ] Defendants obtained or used their property.").

### C. Claims for FUFTA Violations against the Miami Defendants

The Florida Uniform Fraudulent Transfers Act (FUFTA) provides, in part:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> > (a) With actual intent to hinder, delay, or defraud any creditor of the debtor; or

13

> (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation ...

Fla. Stat. § 726.105. "Thus, the statute provides two theories by which a present or future creditor may recover fraudulent transfers: an actual fraud theory, under subsection (a), and a constructive fraud theory, under subsection (b). *Oginsky v. Paragon Properties of Costa Rica LLC*, 784 F. Supp. 2d 1353, 1369 (S.D. Fla. 2011). "To state a claim for actual fraud under FUFTA, a plaintiff must allege (1) there was a creditor sought to be defrauded; (2) a debtor intending fraud; and (3) a conveyance of property which could have been available to satisfy the debt." *Id.* at 1369-70. To state a claim for constructive fraud, a plaintiff must allege that a debtor made a transfer or incurred an obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor: (1) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (2) intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his ability to pay as they became due. Fla. Stat. 726.105(1)(b).

Under any of these theories of liability, Plaintiffs' claim for FUFTA violations must be dismissed because Plaintiffs have not identified the debtor and the recipients of the fraudulent transfers. While Plaintiffs have clearly identified themselves as the creditors, it is unclear from the face of the Complaint who the debtor and the recipients are. Indeed, the Complaint states that "[t]he foregoing Defendants, in ways, upon dates and in places that are unknown before discovery, beyond what is set forth herein, made fraudulent transfers of assets, cash, and property[.]" (DE 75 ¶ 583). But the "Defendants" are over 20 separate entities and individuals and Plaintiffs do not explain which of them are debtors

14

under the statute. *See Oginsky*, 784 F. Supp. 2d at 1370 (dismissing FUFTA claims where Plaintiff did not specify which of the 16 defendants was a debtor under the statute).

Additionally, while the Complaint sets forth a list of alleged fraudulent transfers, it does not identify any of the Miami Defendants as a recipient or transferee in those transfers. (*See* DE 75 ¶¶ 395-396). And, although the Complaint asserts in conclusory fashion that Erick Magno, Magno PL and Marcus Berto were recipients of fraudulent transfers, it does not specify which transfers they received that Plaintiffs seek to set aside. *See Feldkamp v. Long Boy P'ners*, LLC, 773 F. Supp. 2d 1273 (M.D. Fla. 2011) (dismissing FUFTA claims where Plaintiffs had failed to specify which transfer they sought to set aside). For these reasons, Plaintiffs have failed to state a claim for FUFTA violations against the Miami Defendants.

### D. Conspiracy Claims Against the Miami Defendants

To state a claim for civil conspiracy Plaintiffs must allege: "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1271 (11th Cir. 2009). "Conspiracy claims [based in fraud] must also meet Rule 9(b)'s heightened particularity requirements." *Cont'l 332 Fund, LLC v. Albertelli*, 317 F. Supp. 3d 1124 (M.D. Fla. 2018). "General allegations of conspiracy are inadequate. A complaint must "set forth clear, positive, and specific allegations of civil conspiracy." *Eagletech Commc'ns, Inc. v. Bryn Mawr Inv. Grp., Inc.*, 79 So. 3d 855, 863 (Fla. 4th DCA 2012).

First, because the Court has found that Plaintiffs failed to state a claim for common law fraud, RICO violations, false and misleading advertisements and FUFTA violations, the conspiracy claims based on those counts must be dismissed as well. *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997) (an actionable conspiracy requires an actionable underlying tort or wrong); *Rebman v. Follett Higher Educ. Grp., Inc.*, 575 F. Supp. 2d 1272, 1280 (M.D. Fla. 2008) (dismissing civil conspiracy claim where underlying FDUTPA claim was defeated).

Second, aside from Plaintiffs' conclusory and unsupported assertions of an agreement, the allegations in the Complaint do not provide any factual basis showing that the Miami Defendants "agreed" with other defendants to defraud Plaintiffs. As with the Bank Defendants, many of Plaintiffs allegations against the Miami Defendants are based "upon information and belief," which the Court need not take as true. *See Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 551, 557, 127 S. Ct. 1955, 1962-63, 1966, 167 L. Ed. 2d 929 (2007)). Nevertheless, even taking all allegations as true, Plaintiffs failed to specify the "numerous times," "various dates" and "various places" that the Miami Defendants allegedly agreed and conspired with other defendants to commit the underlying torts. (*See* DE 75 ¶¶ 544, 569, 574, 579, 605). Although Plaintiffs consistently state throughout the Complaint that the facts supporting their claims are "detailed above," in reality such "details" are nowhere to be found. Thus, Plaintiffs conspiracy counts against the Miami Defendants must also be dismissed.

### E. Aiding and Abetting Claims Against Berto and Werner

A cause of action for aiding and abetting under Florida law requires "(1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying violation by alleged aider and abetter [*sic* ]; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor." *Wiand v. Wells Fargo Bank, N.A.*, 938 F. Supp. 2d 1238, 1244 (M.D. Fla. 2013). "In order for a claim of aiding and abetting to survive a motion to dismiss, the plaintiff must allege that the defendant had actual knowledge of the underlying wrongdoing." *Lamm v. State St. Bank & Tr. Co.*, 889 F. Supp. 2d 1321, 1332 (S.D. Fla. 2012), aff'd sub nom. *Lamm v. State St. Bank & Tr.*, 749 F.3d 938 (11th Cir. 2014). "[W]hile the element of actual knowledge may be alleged generally, the plaintiff still must accompany that general allegation with allegations of specific 'facts that give rise to a strong inference of actual knowledge regarding the underlying fraud.'" *Id.*

Because the Court has found that Plaintiffs failed to state a claim for common law fraud and for civil theft, the aiding and abetting claim based on those counts must be dismissed. *See Rogers v. Nacchio*, 241 F. App'x 602, 609 (11th Cir. 2007) ("[T]o be liable for aiding and abetting a crime, there must be an underlying crime to aid and abet.").

### IV. CONCLUSION

For the reasons set forth above, the Miami Defendants' motions to dismiss (DE 82; DE 84) are **GRANTED** and Plaintiffs' claims against the Miami Defendants are **DISMISSED WITHOUT PREJUDICE.** Plaintiffs may cure the deficiencies in the Complaint by filing an amended complaint that complies with Federal Rules of Civil Procedure 8(a) and 9(b) within 14 days from the date of this Order.

**DONE AND ORDERED** in chambers in Miami, Florida, this 30 day of September 2018.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE